Laurence D. King (SBN 206423)
Kathleen A. Herkenhoff (SBN 168562)
KAPLAN FOX & KILSHEIMER LLP
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
Emails: *lking@kaplanfox.com*
        *kherkenhoff@kaplanfox.com*

[Additional Counsel on Signature Page]

*Counsel for Movant Stadium Capital LLC and
Proposed Lead Counsel for the Proposed Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>     v.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, and VIDUL PRAKASH,<br><br>               Defendants. | Case No.: 5:21-cv-06374-BLF<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**<br><br>Judge:  Hon. Beth L. Freeman<br>Courtroom:  3, 5th Floor<br>Date:  January 6, 2022<br>Time:  9:00 a.m. |

Case No. 5:21-cv-06374-BLF

## I.   PRELIMINARY STATEMENT

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), the Court is to appoint the investor that has the largest financial interest in the relief sought by the class and that otherwise satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  Of the two pending motions for appointment as lead plaintiff, Stadium Capital LLC ("Stadium Capital"), has the largest financial interest, is not subject to any disqualifying unique defenses, and therefore is the presumptive lead plaintiff.[1]

Where, as here, the Complaint alleges a single corrective disclosure, the recoverable loss method should be used to calculate each movant's financial interest.  *See Hurst v. Enphase Energy, Inc.*, No. 20-CV-04036-BLF, 2020 WL 7025085, at *4 (N.D. Cal. Nov. 30, 2020) (Freeman, J.) (finding that "that the recoverable loss method [was] the most appropriate method to apply [t]here in appointing lead plaintiff [where Plaintiffs alleged a single, discrete, corrective disclosure].");  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 343 (2005) (recoverable losses are those deemed to have been caused by the fraud, not by "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price").  As discussed below, under this method, Stadium Capital has recoverable losses that are more than ***fifteen times*** Sweta Sonthalia's ("Sonthalia") recoverable losses.  Specifically, Stadium Capital has recoverable losses of **$56,964** whereas Sonthalia has recoverable losses of just **$3,625.44**.

With recoverable losses greater than any other applicant, Stadium Capital has the largest financial interest in the relief sought by the class and thus is the presumptive lead plaintiff.  The presumption that Stadium Capital is the "most adequate plaintiff" can only be rebutted "upon proof" that Stadium Capital is inadequate or atypical. 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II). No such proof exists, nor are there any grounds to challenge Stadium Capital's typicality and adequacy. *See* ECF No. 31 at 6-7 (discussing Stadium Capital's typicality and adequacy).

---

[1] On October 18, 2021, six lead plaintiff motions were filed.  ECF Nos. 14, 18, 22, 26, 27, 31.  On November 1, 2021, Larry Lin withdrew his motion.  ECF No. 43.  On November 1, 2021 Majdi Mojahed, FirstFire Global Opportunities Fund, LLC, and Feng Li each filed a notice of non-opposition.  ECF Nos. 42, 44, 45.

Because Stadium Capital is the "most adequate plaintiff," the Court should grant Stadium Capital's motion and deny all competing motions.

## II.    ARGUMENT

The PSLRA sets forth a three-step process to select the lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *Enphase*, 2020 WL 7025085, at \*2.  In the first step, the plaintiff who filed the action must "publiciz[e] the pendency of the action, the claims made and the purported class period."  15 U.S.C. § 78u-4(a)(3)(A)(i); *Cavanaugh*, 306 F.3d at 729.  It is undisputed that the first step has been satisfied.  *See* Declaration of Laurence D. King in Support of Stadium Capital LLC's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (the "King Decl."), Ex. 1 (ECF No. 31-2).

The second step requires the Court to identify the presumptive lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i); *Cavanaugh*, 306 F.3d at 729-30.  This requires the Court to compare the potential lead plaintiffs' financial stakes by calculating each one's financial interest in the litigation using "accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4.  The Court then focuses solely on the plaintiff with "the most to gain from the lawsuit" and must "determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*.  Once the Court identifies the person with the largest financial interest in the relief sought by the class that satisfies the adequacy and typicality requirements of Rule 23, that movant is the presumptively most adequate plaintiff.  *Id*. at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status…"); *Mulligan v. Impax Labs.*, No. C-13-1037 EMC, 2013 WL 3354420, at \*3 (N.D. Cal. July 2, 2013) ("[t]he potential plaintiff with the greatest financial interest is presumptively the most adequate plaintiff.").

At the third step, the most adequate plaintiff presumption can only be overcome by proof that "the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The PSLRA limits rebuttal evidence to

- 2 -

proof that shows the presumptively lead plaintiff "[1] will not fairly and adequately protect the interests of the class; or [2] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

Here, Stadium Capital possesses the largest financial interest in this litigation and satisfies the requirements of Rule 23.  Therefore, Stadium Capital is entitled to the presumption that it is the most adequate plaintiff.

### A.     Stadium Capital Has the Largest Financial Interest

In determining which movant should be appointed lead plaintiff, courts "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730.  While the PSLRA does not specify how to calculate financial interests, the Court must select a method that is "both rational and consistently applied." *Id.* at 730, n.4.  The methods used in this District primarily fall into two categories: "those that 'equate financial interest with actual economic losses suffered' and those that 'equate[ ] largest financial interest with potential recovery.'" *Enphase*, 2020 WL 7025085, at \*3 (citing *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at \*3 (N.D. Cal. Feb. 15, 2011)) (brackets in original).

Although the Ninth Circuit has not yet endorsed a specific method to calculate the largest interest, it has provided guidance.  Specifically, it requires "the district court [to] compare the financial stakes of the various plaintiffs and determine which one ***has the most to gain from the lawsuit***." *Cavanaugh*, 306 F.3d at 730 & n.4 (emphasis added).  This strongly implies that the second method, tying the "loss" to the amount that can be "gain[ed] from the lawsuit," is the preferred method.  *See, e.g.*, *Perlmutter*, 2011 WL 566814, at \*6 ("[w]hat a plaintiff has to gain from a lawsuit is much more directly tied to what a plaintiff can recover from that lawsuit than what a plaintiff may have lost trading in the stock that is the subject of that lawsuit"); *Eichenholtz*, 2008 WL 3925289, at \*4 ("no reason to include losses in its calculations that would later be considered uncompensable"); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999) ("[o]ne's 'interest' in a litigation is rather directly tied to what one might recover").

This Court's analysis in *Hurst v. Enphase Energy, Inc.* is instructive.  There, in "[c]onsidering the guidance of *Dura*, *Metzler* [*Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008)], and *In Re Oracle Securities Litigation*[, 627 F.3d 376, 392 (9th Cir. 2010)] that recoverable losses must be traceable to the alleged fraud instead of ordinary market forces . . . the Court [was] satisfied that the recoverable loss method [was] the most appropriate method to apply [t]here in appointing lead plaintiff [where Plaintiffs alleged a single, discrete, corrective disclosure]." *Enphase*, 2020 WL 7025085, at \*4.  So too is the case here.

Here, where "a single disclosure reveals a purported fraud, there is a constant fraud premium across the class period, meaning that the artificial inflation of the price of the security did not dissipate." *Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at \*6 (N.D. Cal. May 13, 2016); *Enphase*, 2020 WL 7025085, at \*4 (same).  "In these situations, methods focusing on recoverable loss are preferable to economic loss methods 'because [they] exclude[ ] losses incurred during the class period that are likely attributable to normal market fluctuations rather than fraud.'" *Enphase*, 2020 WL 7025085, at \*4 (internal citation omitted); *see also Marjanian v. Allied Nevada Gold Corp.*, No. 2:14-CV-0650-JCM-VCF, 2014 WL 12769810, at \*5 (D. Nev. Nov. 7, 2014) ("To calculate [each movant's] losses under *Dura*, the Court only considers (1) the depreciated value of the shares retained by [movant], and (2) losses realized on the sale of shares that occurred after [defendant] revealed its misrepresentations").  In fact, in *Enphase*, Sonthalia's counsel, Roche Freedman LLP, endorsed this recoverable loss method as the appropriate measure of a movants' financial interest in cases such as this.  *See Enphase*, 2020 WL 7025085 at \*3.

Using the recoverable loss method ensures losses accounted for in calculating the largest loss are *recoverable losses*, thereby ensuring compliance with the Ninth Circuit's preference that the plaintiff with the largest loss be the one who "***has the most to gain from the lawsuit***" and is not simply someone who has lost more money due to market forces unrelated to the fraud. *See Cavanaugh*, 306 F.3d at 730 & n.4 (emphasis added); *see also Enphase*, 2020 WL 7025085, at \*4 ("the recoverable loss method most accurately establishes the prospective lead plaintiffs' financial interest" in case involving a single corrective disclosure); *Mulligan*, 2013 WL 3354420, at \*6 (finding that recoverable loss "most closely approximates the financial interest of the potential

- 4 -

plaintiffs").

In order to determine each movant's recoverable losses, the court must first determine the number of each movant's retained shares. *Mulligan*, 2013 WL 3354420, at \*5; *see also Markette* 2016 WL 2902286, at \*6 (same).  Next, the court calculates the total value of those shares by applying the price of the stock at the time immediately before disclosure of the purported fraud. *Mulligan*, 2013 WL 3354420, at \*5; *see also Markette*, 2016 WL 2902286, at \*6 (same).  Finally, the court calculates each movant's loss based on the following formula:

> if a share was not sold within 90 days subsequent to [the date of the corrective disclosure], the loss is to be measured using an average of the daily closing price of [the] stock during the 90–day period [following the corrective disclosure]. If a share was sold within 90 days subsequent to [the date of the corrective disclosure], the loss is to be measured using the higher of the actual sale price or an average of the daily closing price from [the first date following the corrective disclosure] to the date of sale.

*Mulligan*, 2013 WL 3354420, at \*5 (quoting *Eichenholtz*, 2008 WL 3925289, at \*4); *Marjanian*, 2014 WL 12769810, at \*5-6 (same).  This method "has the advantage of looking to losses experienced due to the shares that the plaintiff was holding at the time the fraud was disclosed, and thus focusing on losses caused when stock purchased at artificially inflated prices decreases in value due to the disclosure of the fraud.  This metric thereby excludes losses caused by normal market fluctuations prior and [un]related to the disclosure of the fraud." *Mulligan*, 2013 WL 3354420, at \*6.

Here, Stadium Capital retained a total of 60,000 shares, while Sonthalia retained 60,424 shares at the close of the class period.  The total value of the retained shares at the close of the class period, applying the pre-disclosure price of $5.18 when the market closed on August 16, 2021, was $310,800 for Stadium Capital and $312,996.32 for Sonthalia.  Stadium Capital sold all 60,000 of its retained shares on August 17, 2021 at $4.2306 per share for proceeds of $253,836, ***resulting in a net loss of $56,964***.  *See* Stadium Capital Loss Chart, ECF No. 31-4.  As of October 18, 2021, Sonthalia continued to hold all 60,424 of her retained shares, and the average trading price during the 90-day period following the disclosure of the fraud was $5.12.  *See* Sonthalia Loss Chart, ECF No. 30-2.  Thus, the value of Sonthalia's retained shares is $309,370.88, ***resulting in a net loss of $3,625.44***.

MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD
PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

While Sonthalia claims the largest estimated "economic loss", as discussed above, this estimate significantly overstates her "financial interest" and includes losses that are not recoverable under *Dura* and its progeny, and therefore should not be counted when determining which movant has the greatest financial interest. *See Enphase*, 2020 WL 7025085, at \*4; *Perlmutter*, 2011 WL 566814, at \*6; *Eichenholtz*, 2008 WL 3925289, at \*4; *In re McKesson*, 97 F. Supp. 2d at 997.

Accordingly, Stadium Capital has the most to gain from this lawsuit and has the largest financial interest in the outcome of this litigation.

### B.     Stadium Capital Meets the Requirements of Rule 23

As demonstrated in Stadium Capital's opening motion and supporting papers, Stadium Capital meets the typicality and adequacy requirements of Rule 23. ECF Nos. 31 at 6-7, 31-3. Because, as demonstrated above, Stadium Capital has also demonstrated that it possesses the largest financial interest, it is entitled to the presumption of most adequate plaintiff. In order to rebut the presumption, the competing movant must submit ***proof*** that Stadium Capital is subject to unique defenses or cannot adequately represent the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Because there is no such proof, the presumption of most adequate plaintiff which lies in favor of Stadium Capital cannot be rebutted.

### III.    CONCLUSION

For all of the foregoing reasons, Stadium Capital respectfully requests that the Court: (1) appoint it as Lead Plaintiff; (2) approve its choice of Kaplan Fox as Lead Counsel; (3) deny all competing motions; and (4) grant such other relief as the Court may deem just and proper.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED: November 1, 2021          By:   /s/  *Laurence D. King*
                                              Laurence D. King

Laurence D. King (SBN 206423)
Kathleen A. Herkenhoff (SBN 168562)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
*lking@kaplanfox.com*

MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

*kherkenhoff@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice* to be filed)
Donald R. Hall (*pro hac vice* to be filed)
Jason A. Uris (*pro hac vice* to be filed)
850 Third Avenue
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*juris@kaplanfox.com*

*Counsel for Movant Stadium Capital LLC and Proposed
Lead Counsel for the Proposed Class*

MEMO OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF STADIUM CAPITAL LLC'S MOT. TO APPT. LEAD
PLAINTIFF AND APPROVAL LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS