**ROCHE FREEDMAN LLP**
Ivy T. Ngo (249860)
Constantine P. Economides (*pro hac vice* forthcoming)
Velvel (Devin) Freedman (*pro hac vice* forthcoming)
1 SE 3rd Avenue
Suite 1240
Miami, Florida 33131
T: (305) 971-5943
ingo@rochefreedman.com
ceconomides@rochefreedman.com
vel@rochefreedman.com

*Counsel for Movant Sweta Sonthalia*
*and Proposed Lead Counsel for the Class*

**LABATON SUCHAROW LLP**
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
T: (212) 907-0870
F: (212) 883-7070
dschwartz@labaton.com

*Additional Counsel for Sweta Sonthalia*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, and VIDUL PRAKASH,<br><br>Defendants. | No. 5:21-cv-06374-BLF<br><br>**SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>Hon. Beth Labson Freeman<br>Hearing Date: Thursday, January 6, 2022<br>Time: 9 a.m.<br>Courtroom 3 – 5th Floor (San Jose) |

Movant Sweta Sonthalia ("Sonthalia") respectfully submits this Reply in Support of her Motion for Appointment as Lead Plaintiff and for Approval of her Selection of Counsel.[1]

## I. PRELIMINARY STATEMENT

Sonthalia has demonstrated that she has the largest financial interest in the Action and meets Rule 23's typicality and adequacy requirements. Thus, the Court need only look to her to appoint lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B). Sonthalia asserts a larger approximate loss of $390,084, **15.4% more** than Stadium Capital, as well as a larger recoverable loss. Further, Sonthalia has shown her commitment and ability to vigorously prosecute this matter, and her interests are typical of the Class. Competing against a movant with significantly higher losses and no issues as to adequacy or typicality, Stadium Capital challenges Sonthalia's financial interest with a misguided *Dura* loss calculation. *See* Memorandum of Points and Authorities in Further Support of Stadium Capital's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel, and in Opposition to Competing Motions (ECF No. 46). The movants agree that the recoverable loss method is an acceptable method to analyze the financial interest in this Action, but they disagree on the proper application of that method. Stadium Capital's calculation is not supported by fact or law. Thus, the Court should grant Sonthalia's Motion in its entirety.

## II. SONTHALIA HAS THE LARGEST FINANCIAL INTEREST

Neither the PSLRA, the Ninth Circuit nor the Supreme Court have endorsed a particular formula for calculating financial interest. *See Hurst v. Enphase Energy*, *Inc.*, 2020 WL 7025085, at *6 (N.D. Cal. Nov. 30, 2020). The only guidance offered is that the method be "rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). Thus, district courts have used several methods to calculate financial interest, mainly those that "equate financial interest with actual economic losses suffered" ("Actual Loss") and those that "equate largest financial interest with potential recovery" ("Recoverable Loss"). *See Enphase*, 2020 WL 7025085, at *6. As Judge Koh observed in *Perlmutter v. Intuitive Surgical, Inc.*, "the distinction between these two

---

[1] Capitalized terms shall have the meanings ascribed in Sonthalia's Motion and supporting documents. ECF No. 27. Unless noted, all emphasis is added, and internal citations were omitted.

1

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF

categories is an artificial one" insofar as "both categories should yield the same result." 2011 WL 566814, at *4 (N.D. Cal. Feb. 15, 2011).

Courts throughout the Ninth Circuit have repeatedly applied the *Lax* Factors to calculate Actual Losses suffered, considering the approximate loss suffered to be the "most determinative in identifying the plaintiff with the largest financial loss." *See In re Cheetah Mobile, Inc. Sec. Litig.*, 2021 WL 99635, at *3 (C.D. Cal. Jan. 12, 2021) (collecting cases). Two different accounting methods exist for calculating Actual Losses: (1) the first in, first out method ("FIFO") and (2) the last in, first out method ("LIFO"). *Perlmutter*, 2011 WL 566814, at *10. "Under FIFO, stocks which were acquired first are assumed to be sold first for loss calculation purposes, and under LIFO, stocks which were acquired most recently are assumed to be sold first." *Id.* "Most courts in this district use the LIFO method to calculate a movant's estimated losses." *Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) (collecting cases). Sonthalia suffered an approximate loss of $390,084 under the LIFO method – **15.4%** greater than Stadium Capital's loss.

Courts in this district have also distinguished between a movant's Actual and Recoverable Loss when, as here, "a single disclosure reveals a purported fraud." *See Enphase*, 2020 WL 7025085, at *4. In such cases, courts "have chosen not to consider losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud" when evaluating movants' financial interests since "a purchaser of stock at fraudulently inflated prices may suffer economic losses that are not caused by a defendant's misrepresentations" and thus are not recoverable. *See Perlmutter*, 2011 WL 566814, at *4 (quoting *Dura v. Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)).

Under the Recoverable Loss method, courts have accepted several different approaches. *Saint Jermain v. Fluidigm Corp.*, 2020 WL 7342717, at *3 (N.D. Cal. Dec. 14, 2020). Some courts "determine the number of net shares purchased during the class period and then supplement this calculation with losses suffered as a result of selling shares during the class period[,]" perceiving losses resulting from in-and-out trades made during the class period as potentially recoverable ("Net Shares" method). *Perlmutter*, 2011 WL 566814, at *6 (citing *In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246, at *21-*22 (N.D. Cal. May 3, 2005); *In re Critical Path Inc. Sec. Litig.*, 156 F.Supp.2d 1102, 1107-08 (N.D. Cal. 2001)); *see also In re Network Associates, Inc., Sec. Litig.*,

2

76 F.Supp.2d 1017, 1027 (N.D.Cal.1999) (noting that the Net Shares method is less accurate when "the amount of the 'fraud premium' varied over the course of the class period").

Other courts determine financial interest based on the "shares bought during the class period that are retained at the end of the class period" ("Retained Shares" or "*Dura* LIFO"). *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008); *see also Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) ("The Dura LIFO method utilizes the LIFO method but removes the losses from securities bought and sold before the corrective disclosure occurred when calculating approximate losses."). This method requires three steps.

First, a court must determine the number of shares bought during the class period that were retained on the last day of the class period. *Eichenholtz*, 2008 WL 3925289, at *4. Second, a "court must [] determine what purchase price to use when calculating the losses suffered due to the retained shares." *Id.* While the purchase price may be based on the shares purchased "most recently, but within the class period" (*i.e.,* LIFO) or "at the beginning of the class period" (*i.e.,* FIFO), the *Eichenholtz* Court applied LIFO, finding that "this measure will ***maximize the potential damages***." *Id.* Third, consistent with the PSLRA, a court calculates losses according to the following formula:

> if a share was not sold within 90 days subsequent to [the end of the Class Period], the loss is to be measured using an average of the daily closing price of [the company's] stock during the 90–day period beginning [on the date of the corrective disclosure]. If a share was sold within 90 days subsequent to [the end of the Class Period], the loss is to be measured using the higher of the actual sale price or an average of the daily closing price from [the date of the corrective disclosure] to the date of sale.

*Id.*; *see also* 15 U.S.C. § 78u-4(e). This method has been consistently applied throughout the Circuit. *See Applestein v. Medivation Inc.*, 2010 WL 3749406, at *2 (N.D. Cal. Sept. 20, 2010); *Schueneman v. Arena Pharms., Inc.*, 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011); *Mulligan v. Impax Labs, Inc.*, 2013 WL 3354420, at *6 (N.D. Cal. July 2, 2013); *Saint Jermain,* 2020 WL 7342717, at *4.

Applied here, Sonthalia has a recoverable loss of $390,804 (*see* ECF No. 30-2), while Stadium Capital has a recoverable loss of $127,048. Stadium Capital: (1) retained 60,000 shares at the end of the Class Period; (2) bought and sold throughout the Class Period, zeroing out its retained shares three times before the end of the Class Period (on March 9, 2021, June 2, 2021, and July 7, 2021), so its purchase price is based on shares bought between July 19, 2021 and August 12, 2021,

3

which equals $380,884; and (3) sold its 60,000 retained shares within the 90-day look back period, on August 17, 2021, at a price of $4.23; because its actual sale price is higher than the average of the daily closing price from the date when the correcting information was disseminated to the date of the sale ($3.92), the actual sale price must be used to calculate the losses for its retained shares.[2]

Stadium Capital relies on a narrow interpretation of the Retained Shares method, formulated in *Markette v. XOMA Corp.*, 2016 WL 2902286 (N.D. Cal. May 13, 2016), to claim the largest financial interest in the Action. *See* ECF No. 46 at 4-5. Its calculation, however, contradicts the intent to "maximize the potential damages" when calculating financial interest (*see Eichenholtz*, 2008 WL 3925289, at *4) and has not been consistently applied, as required by the Ninth Circuit (*see Cavanaugh*, 306 F.3d at 730 n.4). The *Markette* Court (1) determined the number of shares retained at the end of the class period, (2) "calculate[d] the total value of those shares applying the price of the [company's] stock at the time immediately before disclosure of the purported fraud[,]" rather than the movants' actual purchase price, and (3) subtracted the theoretical value of those shares against "the average share price over the 90 days that followed the fraud disclosure" to arrive at the recoverable losses. *See* 2016 WL 2902286, at *5. Notably, in *Markette*, since the company's stock price increased throughout the class period—*i.e.,* maintained a "constant fraud premium"— the theoretical purchase price was higher than the actual purchase price for most of the retained shares at issue. *Id.* at ECF Nos. 11-4, 14-3. Further, no movant sold their retained shares during the 90 days following the class period, so the same abstract "sale price" was used for all movants. *Id.*

Here, the actual purchase price of movants' retained shares should be used because that price was **higher** than the stock price immediately preceding the alleged corrective disclosure. *See* ECF Nos. 30-2, 31-4. Next, Stadium Capital's calculation does not follow the *Markette* Court's pursuit of consistency as it partially applies the theoretical calculation for its own benefit. In *Markette*, the Court not only used the same purchase price for all competing movants, but also applied the same

---

[2] Due to clerical error, Sonthalia's Opposition (ECF No. 47) incorrectly concluded that Stadium Capital's recoverable loss was $6,302. This error has been rectified, and the losses stated herein are properly based on the data Stadium Capital has provided to-date.

4

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF

sale price. In contrast, Stadium Capital asks this Court to ignore the movants' actual purchase price, and since it sold its shares at a price lower than the 90-day average, seeks to use its actual sale price to increase its recoverable losses over Sonthalia, who did not sell. Thus, Stadium Capital's artificial reduction of the actual purchase price of the movants' retained shares to the stock price just before the corrective disclosure, and its inconsistent sale price of movants' shares, does not accurately compare movants' financial interest.[3] *See In re Wrap Tech., Inc. Sec. Litig.*, 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021) (rejecting a similar "*Dura* loss" calculation, presented for the first time in the Opposition, which "multipl[ied] the number of shares the movant held over a corrective disclosure by the price drop following the corrective disclosure, as bounded by the retained share average price", in finding that, "when calculating loss, a higher purchase price will *sometimes* play a role in bringing about a future loss.") (emphasis in original) (quoting *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 275-76 (S.D.N.Y. 2015) (rejecting the same *Dura* loss calculation)). "Because both *Dura* and the PSLRA contemplated consideration of the purchase price, [ ] *Dura* does not require a loss calculation that ignores purchase price." *Id.*

The Recoverable Loss method this Court relied upon in *Enphase* is inapplicable. There, since the class period ended on the same day as the single, **intraday** corrective disclosure, and both competing movants sold that day, the movants represented by Roche Freedman urged this Court to accept a hybrid of the methods described herein. *See* 2020 WL 7025085, at ECF No. 29. The competing movant did not contest the hybrid calculation, so this Court did not opine on it and simply found that the Recoverable Loss method applied. *Id.* at *5, *8. Here, the Court should apply the more widely accepted Retained Shares method because the Class Period ends on August 16, 2021, then a single, **post-market** corrective disclosure caused View's stock price to drop $1.26 from the August 16 close of $5.18. Moreover, Sonthalia continues to retain her Class Period shares.

Accordingly, Sonthalia respectfully asks that the Court grant her Motion in its entirety.

---

[3] If the Court is inclined to accept this calculation, when applied properly, Sonthalia still has a greater financial interest (60,424 x $5.18 = $312,996.32 – (60,424 x $5.12) = $3,625.44 loss) than Stadium Capital (60,000 x $5.18 = $310,800 – (60,000 x $5.12) = $3,600 loss).

| | | |
|---|---|---|
| 1 | DATED: November 8, 2021 | Respectfully Submitted, |
| 2 | | **ROCHE FREEDMAN LLP** |
| 3 | | */s/ Ivy T. Ngo* |
| 4 | | Ivy T. Ngo (249860)<br>Constantine P. Economides (*pro hac vice* forthcoming) |
| 5 | | Velvel (Devin) Freedman (*pro hac vice* forthcoming)<br>1 SE 3rd Avenue, Suite 1240 |
| 6 | | Miami, Florida 33131 |
| 7 | | T: (305) 971-5943<br>ingo@rochefreedman.com |
| 8 | | ceconomides@rochefreedman.com<br>vel@rochefreedman.com |
| 9 | | |
| 10 | | *Counsel for Movant Sweta Sonthalia and Proposed Lead Counsel for the Class* |
| 11 | | **LABATON SUCHAROW LLP** |
| 12 | | David J. Schwartz (*pro hac vice* forthcoming) |
| 13 | | 140 Broadway<br>New York, New York 10005 |
| 14 | | T: (212) 907-0870<br>F: (212) 883-7070 |
| 15 | | dschwartz@labaton.com |
| 16 | | *Additional Counsel for Movant Sweta Sonthalia* |

6

SWETA SONTHALIA'S REPLY IN SUPPORT OF HER MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF COUNSEL
CASE NO. 5:21-cv-06374-BLF

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on November 8, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

By:   */s/ Ivy T. Ngo*
      Ivy T. Ngo