JOHN W. BERRY (SBN 295760)
john.berry@mto.com
JOHN M. GILDERSLEEVE (SBN 284618)
john.gildersleeve@mto.com
LAUREN C. BARNETT (SBN 304301)
lauren.barnett@mto.com
BRIAN R. BOESSENECKER (SBN 331409)
brian.boessenecker@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendants*
*View, Inc. f/k/a CF Finance Acquisition Corp. II,*
*Rao Mulpuri, Nigel Gormly, Toby Cosgrove,*
*Lisa Picard, Tom Cheung, Tom Patterson, and Bill Veghte*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, TOM LEPPERT, HAROLD HUGHES, NIGEL GORMLY, TOBY COSGROVE, LISA PICARD, TOM CHEUNG, TOM PATTERSON, BILL VEGHTE, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., CF GROUP MANAGEMENT, INC., AND PRICEWATERHOUSECOOPERS LLP, <br><br> Defendants. | Case 5:21-cv-06374-BLF <br><br> <u>CLASS ACTION</u> <br><br> VIEW DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES <br><br> Filed concurrently: <br><br> - Declaration of Brian R. Boessenecker <br> - [Proposed] Order <br><br> Judge:   Hon. Beth Labson Freeman <br> Date:    April 20, 2023 <br> Time:    9:00 a.m. <br> Ctrm:    3 |

VIEW DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT - No. 5:21-CV-06374-BLF

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 20, 2023, at 9:00 a.m., before the Honorable Beth Labson Freeman in Courtroom 3 of the United States District Court, 280 South 1st Street, San Jose, CA 95113, Defendants View, Inc., f/k/a CF Finance Acquisition Corp. II ("View"), Rao Mulpuri, Nigel Gormly, Toby Cosgrove, Lisa Picard, Tom Cheung, Tom Patterson, and Bill Veghte ("View Defendants") will and hereby do move for an order dismissing the Amended Complaint under Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(6) and 23.1, and the Private Securities Litigation Reform Act ("PSLRA"). The Motion is based on the Memorandum of Points and Authorities, the Declaration of Brian R. Boessenecker and its exhibits, the Reply Memorandum, the files and records in this action, and such other matters as may be presented at the hearing.

All paragraph references in the Memorandum are to the Amended Complaint; all exhibit references are to the exhibits attached to Mr. Boessenecker's Declaration.

## ISSUES TO BE DECIDED

1. Whether counts 6 and 7 under Section 10(b) of the Securities Exchange Act ("Exchange Act") against View and Mulpuri should be dismissed because Plaintiff fails to plead scienter, loss causation, and falsity with particularity, because the "scheme" allegations are insufficiently pled, and because certain alleged misstatements are inactionable forward-looking statements.

2. Whether count 1 under Section 14(a) of the Exchange Act against all View Defendants should be dismissed because Plaintiff fails to plead with particularity knowing or negligent conduct and transaction and loss causation, and because the claim is derivative and Plaintiff fails to plead demand futility.

3. Whether count 3 under Section 11 of the Securities Act against all View Defendants except former directors Patterson and Veghte should be dismissed because Plaintiff fails to plead the traceability of Plaintiff's share purchases to the allegedly misstated registration statement.

4. Whether counts 2 and 8 under Section 20(a) of the Exchange Act against all View Defendants except View, Inc. should be dismissed for failure to plead the primary violations and the required elements of the claims.

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................1

        A.      The SPAC Merger...................................................................................1

        B.      The Restatement......................................................................................2

III.    ARGUMENT ..........................................................................................................3

        A.      The Section 10(b) Claim Fails for Lack of Scienter and Loss Causation.................3

                1.      No Specific Pleaded Facts Raise a "Strong Inference" of Scienter ..............3

                2.      No Specific Pleaded Facts Establish Loss Causation ...................................6

                3.      The Claim About the March 2022 Statement Fails for Additional Reasons ...................................................................7

                4.      The Scheme Liability Claim Fails ...............................................................8

        B.      The Section 14(a) Claim Fails for Multiple Reasons.................................................9

                1.      Plaintiff Fails to Plead a Strong Inference of Culpable Conduct...................9

                2.      No Specific Pleaded Facts Show Transaction or Loss Causation................11

                3.      Plaintiff's Damages Theory Is Fundamentally Derivative .........................12

        C.      The Section 11 Claim Fails Because Plaintiff Cannot Show Traceability ..............13

        D.      The Control-Person Claims Also Fail.......................................................................15

IV.     CONCLUSION......................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*In re Acadia Pharms. Inc. Sec. Litig.*,
  2022 WL 36493 (S.D. Cal. Jan. 3, 2022)............................................................................5

*In re AGNC Inv. Corp.*,
  2018 WL 3239476 (D. Md. July 3, 2018)......................................................................11, 12

*In re Aqua Metals, Inc. Sec. Litig.*,
  2019 WL 3817849 (N.D. Cal. Aug. 14, 2019) ...................................................................8

*In re Bare Escentuals, Inc. Sec. Litig.*,
  745 F. Supp. 2d 1052 (N.D. Cal. 2010) ............................................................................6

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ............................................................................................6

*Burgess v. Premier Corp.*,
  727 F.2d 826 (9th Cir. 1984) ..........................................................................................15

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ..................................................................................13, 14

*City of Birmingham Relief & Ret. Sys. v. Hastings*,
  2019 WL 3815722 (N.D. Cal. Feb. 13, 2019) .......................................................9, 10, 11, 12

*City of Pontiac Gen. Emps.' Ret. Sys. v. Bush*,
  2022 WL 1467773 (N.D. Cal. Mar. 1, 2022)..................................................................11, 12

*Desaigoudar v. Meyercord*,
  223 F.3d 1020 (9th Cir. 2000) ........................................................................................11

*Garcia v. J2 Glob., Inc.*,
  2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) ....................................................................3

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ........................................................................................15

*Hurst v. Enphase Energy, Inc.*,
  2021 WL 3633837 (N.D. Cal. Aug. 17, 2021) ..................................................................3

*Hutton v. McDaniel*,
  264 F. Supp. 3d 996 (D. Ariz. 2017) ..............................................................................10

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964)........................................................................................................12

-ii-

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Jedrzejczyk v. Skillz Inc.*,
2022 WL 2441563 (N.D. Cal. July 5, 2022)...........................................................................14

*In re JPMorgan Chase Deriv. Litig.*,
2014 WL 5430487 (E.D. Cal. Oct. 24, 2014)..........................................................................10

*Kang v. PayPal Holdings, Inc.*,
2022 WL 3155241 (N.D. Cal. Aug. 8, 2022) ............................................................................8

*Knollenberg v. Harmonic, Inc.*,
152 F. App'x 674 (9th Cir. 2005) ...........................................................................................10

*Krieger v. Atheros Commc'ns, Inc.*,
2012 WL 1933559 (N.D. Cal. May 29, 2012).............................................................10, 11, 12

*Lacey v. Maricopa Cnty.*,
693 F.3d 896 (9th Cir. 2012) ...................................................................................................9

*In re Leapfrog Enter., Inc. Sec. Litig.*,
200 F. Supp. 3d 987 (N.D. Cal. 2016) ......................................................................................8

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ..................................................................................................7

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ................................................................................................6, 7

*Mendoza v. HF Foods Grp. Inc.*,
2021 WL 3772850 (C.D. Cal. Aug. 25, 2021)........................................................................10

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..................................................................................................7

*N.Y.C. Emps.' Ret. Sys. v. Jobs*,
593 F.3d 1018 (9th Cir. 2010) .............................................................................................9, 12

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) .....................................................................................................7

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ....................................................................................................6

*Okla. Firefighters Pension & Ret. Sys. v. IXIA*,
50 F. Supp. 3d 1328 (C.D. Cal. 2014) ...............................................................................4, 5, 6

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ................................................................................................6,7

-iii-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Pirani v. Slack Techs., Inc.*,
  13 F.4th 940 (9th Cir. 2021) ................................................................................................14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ...............................................................................................5

*Prodanova v. H.C. Wainwright & Co.*,
  993 F.3d 1097 (9th Cir. 2021) ...........................................................................................5, 6

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ....................................................................................4, passim

*In re Romeo Power Inc. Sec. Litig.*,
  2022 WL 1806303 (S.D.N.Y. June 2, 2022) ........................................................................13

*SEC v. Mercury Interactive, LLC*,
  2009 WL 2984769 (N.D. Cal. Sept. 15, 2009) ...............................................................11, 12

*In re Shoretel Inc., Sec. Litig.*,
  2009 WL 248326 (N.D. Cal. Feb. 2, 2009) ..........................................................................15

*Simpson v. AOL Time Warner Inc.*,
  452 F.3d 1040 (9th Cir. 2006), *vacated on other grounds*, 519 F.3d 1041 (9th Cir.
  2008) ......................................................................................................................................9

*Taormina v. Annie's, Inc.*,
  2015 WL 1743585 (N.D. Cal. Apr. 16, 2015) .......................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..............................................................................................................4, 6

*Towers v. Iger*,
  912 F.3d 523 (9th Cir. 2018) ...............................................................................................12

*Veal v. LendingClub Corp.*,
  2020 WL 3128909 (N.D. Cal. June 12, 2020)........................................................................4

*Webb v. SolarCity Corp.*,
  884 F.3d 844 (9th Cir. 2018) ....................................................................................3, 4, 5, 6

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 167708 (N.D. Cal. Jan. 17, 2017)........................................................................14

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ...............................................................................................7

VIEW DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT - No. 5:21-CV-06374-BLF

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Zoran Corp. Deriv. Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal. 2007) ................................................................................ 10

*Zucco P'rs, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ....................................................................................... 4, 5

*In re Zynga Inc. Sec. Litig.*,
    2014 WL 721948 (N.D. Cal. Feb. 25, 2014) .................................................................. 14

**STATE CASES**

*Brookfield Asset Mgmt., Inc. v. Rosson*,
    261 A.3d 1251 (Del. 2021) ............................................................................................ 12

*Feldman v. Cutaia*,
    951 A.2d 727 (Del. 2008) ............................................................................................. 13

**FEDERAL STATUTES**

15 U.S.C. § 78u–4(b)(1)(B) ................................................................................................. 8

15 U.S.C. § 78u-4(b)(2)(A) .................................................................................................. 3

15 U.S.C. § 78u-5(c)(1)(A)(i) .............................................................................................. 8

15 U.S.C. § 78u-5(c)(1)(B)(i) .............................................................................................. 8

Exchange Act, § 10(b) ............................................................................................. 1, 3, 6, 9

Exchange Act, § 14(a) ................................................................................................. 1, passim

Exchange Act, § 20(a) ........................................................................................................ 15

Securities Act, § 11 .................................................................................................... 1, passim

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ................................................................................................... 1, 3, 10

Rule 10b-5(a), (c) ................................................................................................................ 8

Rule 10b-5(b) ...................................................................................................................... 8

Fed. R. Civ. P. 23.1 ..................................................................................................... 12, 13

## I.    <u>INTRODUCTION</u>

View is a "smart window" company that restated its past financial statements to correct an accounting error regarding its warranty accrual—an estimate of the future costs View would incur to replace defective products over its 10-year warranty period.  There were two offsetting errors: one that excluded costs related to installation labor and freight for replaced products (increasing the accrual), and one that overestimated the future failure rate (decreasing the accrual).  In the end, the revised accrual increased View's net loss for the relevant year by approximately 7%.

Plaintiff claims that due to the error, the View Defendants—View, its CEO, and its former and current directors—defrauded investors by misstating View's financial results.  Plaintiff exhaustively catalogs each appearance of the error in View's financials, but fails to meet the heightened standards of Rule 9(b) and the PSLRA.  Plaintiff pleads no specific facts showing that the View Defendants knew or should have known about this error, or were involved in the accrual calculation.  And Plaintiff ignores facts supporting a countervailing inference—that the error was a mistake in applying complex accounting rules to difficult estimates of future costs and failure rates.  Nor does Plaintiff plead harm causally connected to the error.  These defects require dismissal of the Section 10(b) and 14(a) claims.

Plaintiff's Section 11 claim also fails.  That claim is based on a registration statement issued for the "SPAC" merger that formed View as a public company.  But Plaintiff has not pleaded (and can never plead) that its shares can be traced to that registration statement, because 50 million shares were already trading under an earlier registration statement.  That defect requires dismissal.

## II.    <u>BACKGROUND</u>

View makes electrochromic glass panels, or "smart windows."  ¶¶ 3, 62.  From 2007 until 2021, it was a private company ("Legacy View").  On March 8, 2021, Legacy View was acquired by a special purpose acquisition company ("SPAC"), CF Finance Acquisition Corp. II ("CF II"), through a reverse merger, after which CF II was renamed "View, Inc."  ¶ 5.  Mulpuri is View's current CEO and a director; he was also CEO and a director of Legacy View.  ¶ 24.  Gormly, Cosgrove, and Picard are current directors of View, while Cheung, Patterson, and Veghte are former directors.  ¶¶ 28-33.

### A.    <u>The SPAC Merger</u>

On September 1, 2020, CF II completed its IPO as a SPAC, selling 50 million units, each

-1-

comprising one share of CF II stock and 1/3 of a warrant to purchase shares of CF II stock. ¶ 64. As a SPAC, CF II was formed for the purpose of raising capital to acquire a private company. Ex. 1 at 8. The CF II units, shares, and warrants were registered with CF II's registration statement for its IPO ("SPAC Registration Statement"), and began trading on Nasdaq on August 27, 2020. ¶ 63; Ex. 2 at 190. Plaintiff asserts no claims as to this registration statement.

After CF II identified Legacy View as a target, the parties negotiated the terms of the acquisition and, on November 30, 2020, announced their definitive agreement to merge. ¶ 66. On December 23, 2020, CF II filed a second registration statement ("De-SPAC Registration Statement") to register additional CF II shares to be issued to Legacy View's shareholders as consideration for the merger. Ex. 2 at 2, 18-19, 166; *see* ¶ 72 (registration statement declared effective February 17, 2021).

On February 16, 2021, CF II issued a proxy statement ("Proxy Statement") to solicit votes for the merger from holders of its shares as of January 27, 2021 ("Record Date"). ¶¶ 72-73; Ex. 4. CF II shareholders approved the merger by a 9:1 margin, and the merger closed on March 8. ¶ 75; Ex. 5 at 3. Legacy View merged into a subsidiary of CF II, CF II was renamed View, Inc., and CF II's shares and warrants trading were renamed "VIEW" and "VIEWW." ¶ 76; Ex. 6 at 27; Ex. 4 at 39-40.

### B.    The Restatement

View recorded in its FY 2019 financial statements a $24.5 million warranty accrual relating to defects in its insulated glass units ("IGUs"). Ex. 7 at 38. A warranty accrual is a contingent liability booked to estimate the future costs to cover warranty obligations, if those costs are probable and reasonably estimable. ¶¶ 58-59; *see* Ex. 8 (ASC 460-10-25-5); Ex. 9 (ASC 450-20-25-2). To calculate the accrual, View used two projections—an estimate of failure rate for affected IGUs, and an estimate of the cost to replace them over the 10-year warranty period. Ex. 2 at 329; Ex. 4 at 88-89. View disclosed the accrual in the De-SPAC Registration Statement and Proxy Statement, noting the "uncertainty inherent in ... projected costs" and that actual costs "could be materially different." *Id.*

On August 16, 2021, five months after the merger, View disclosed that its Audit Committee was investigating "the adequacy of the Company's previously disclosed warranty accrual." ¶ 117. The next day, View's stock price fell 24%. ¶ 118. On November 9, 2021, View announced that the investigation was complete and that the accrual had been materially misstated and would be restated.

-2-

Ex. 12 at 3.  View noted that the restated accrual would be between $46 and $70 million.  Ex. 11 at 2.

On June 15, 2022, View filed its restated financial statements.  ¶ 127, Ex. 12.  View explained it had "inappropriately excluded from the warranty obligation the installation labor and freight costs that it had incurred, [and] expected to continue to incur."  ¶ 58.  View also explained that it had *over*estimated the IGU failure rate, which had a "partially offsetting" effect.  *Id.*  The misstated accrual increased View's 2019 net loss by 7%, from $290 million to $311 million.  Ex. 12 at 109.  It did not affect View's revenue, or cause View to report a profit rather than a loss, for any period.

The View Defendants (and the other Defendants, except for Prakash) request judicial notice and consideration as incorporated by reference of relevant SEC filings, accounting standards, and historical stock prices, all exhibits to the accompanying declaration.  *See Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837, at *2 (N.D. Cal. Aug. 17, 2021) (Freeman, J.) (SEC filings and stock prices); *Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at *10 (C.D. Cal. Mar. 5, 2021) (accounting standards).

## III.    ARGUMENT

### A.    The Section 10(b) Claim Fails for Lack of Scienter and Loss Causation

Plaintiff asserts Section 10(b) claims against View and its CEO Mulpuri.  *See* ¶¶ 266-286.  These claims focus on disclosures about the warranty accrual in the November 2020 announcement of the merger, the December 2020 De-SPAC Registration Statement (and its January 2021 amendment), and the SEC filings View filed after the merger.  Plaintiff also alleges that View's March 7, 2022 statements regarding its cash balance and expected future cash burn were "materially false."  ¶¶ 120-121.  Both sets of allegations fail because no particularized pleaded facts create a strong inference of scienter or establish loss causation, and the "scheme liability" theory lacks supporting allegations.  In addition, the March 2022 statements were not false and are protected by the PSLRA's safe harbor.

**1.    No Specific Pleaded Facts Raise a "Strong Inference" of Scienter.**  Rule 9(b) and the PSLRA require a plaintiff to allege "with particularity facts giving rise to a strong inference that the defendants acted" with scienter.  15 U.S.C. § 78u-4(b)(2)(A).  Scienter is the "'intent to deceive, manipulate, or defraud' or 'deliberate recklessness.'"  *Webb v. SolarCity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018).  "To qualify as 'strong' … an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of

-3-

nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007); *see Webb*, 884 F.3d at 855 ("[t]he bar set by *Tellabs* is not easy to satisfy").

Plaintiff pleads no specific facts regarding the scienter of View or Mulpuri. No allegations show "*what* each Defendant knew" or "*when* each Defendant became aware of those details." *Veal v. LendingClub Corp.*, 2020 WL 3128909, at *14 (N.D. Cal. June 12, 2020) (Freeman, J.). Plaintiff asserts that Defendants "knew" the disclosures "were materially false and/or misleading" "by virtue of their receipt of information reflecting the true facts," ¶ 224, but fails to allege what that information was, when it was received, or who received it. Although Plaintiff's case is about mistaken accounting for a warranty accrual, no allegations show that View or Mulpuri "believed at the time that the methodology used to account for [warranty obligations] was inappropriate." *Taormina v. Annie's, Inc.*, 2015 WL 1743585, at *4 (N.D. Cal. Apr. 16, 2015) (Freeman, J.).

The Amended Complaint lacks other hallmarks of scienter as well. It contains no allegations sourced to confidential witnesses. Nor does it allege that any individual defendant sold View stock while its price allegedly was artificially inflated, which "does not support an inference of scienter" and instead "supports the opposite inference." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012); *see also Webb*, 884 F.3d at 856 (similar).

Lacking specific facts showing scienter, Plaintiff belabors that View's financial results were misstated due to the erroneous warranty accrual. But "the mere publication of a restatement is not enough to create a strong inference of scienter." *Zucco P'rs, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009). In a similar case where a "restatement merely increased the company's stated losses," the Ninth Circuit affirmed dismissal for failure to plead scienter because the allegations were not "specific" or "particularized." *Webb*, 884 F.3d at 856. And here there are no allegations showing that the accounting standards at issue, which require a complex judgment of future costs over a 10-year period, were "so basic that a court can infer scienter from the mere fact [that the accrual] was reported improperly" and had to be restated. *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1361-63 (C.D. Cal. 2014). Similarly, allegations that Mulpuri signed View's March 2021 SOX certification, ¶¶ 24, 114-115, "add nothing substantial to the scienter calculus." *Zucco*, 552 F.3d at 1004; *see Webb*, 884 F.3d at 854-55 (similar).

The Amended Complaint's generalized allegations about SPACs do not cure its defects. *See* ¶¶ 216-265. Plaintiff cites speeches, testimony, and articles criticizing SPACs, asserting that "CF II and View exemplify SPAC conflicts of interests" because SPACs are "incentivized" to complete mergers. ¶¶ 216-221. These allegations add nothing to any strong inference of scienter. Again, *Webb* is instructive. The Ninth Circuit held that allegations of a desire to report favorable financial results "in the months surrounding [a] company's IPO" are "precisely the 'routine corporate objectives such as the desire to obtain good financing and expand' that [the Ninth Circuit has] rejected in the past." *Webb*, 884 F.3d at 856; *see Rigel*, 697 F.3d at 884 (allegations that company "[was] seeking a partner and were planning to raise capital in a stock offering" are "routine corporate objectives" that do not show scienter); *see also Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1103 (9th Cir. 2021) ("fail[ure] to plead a plausible motive" creates a "substantial hurdle in establishing scienter").

Nor do Plaintiff's allegations that four directors and one officer (Prakash) resigned during the 13-month period when Legacy View became part of a public company support scienter. ¶¶ 225-228. "[P]laintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one." *Zucco*, 552 F.3d at 1002; *see In re Acadia Pharms. Inc. Sec. Litig.*, 2022 WL 36493, at *10 (S.D. Cal. Jan. 3, 2022) (no scienter absent allegations "explaining the reasons for [directors'] departure[] or connecting them to a purported kickback scheme"). Plaintiff fails to do so, alleging only that resignations occurred and so were "suspicious." Specific pleading requires more. *See Webb*, 884 F.3d at 857 ("corporate reshuffling allegations" fail unless plaintiff "rebut[s] the 'reasonable assumption' that the reshuffling 'occurred as a result of [a] restatement's issuance itself'").

Nor can Plaintiff invoke the "core operations theory of scienter." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014). Sustaining this theory is "not easy" because it requires "specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations ... or witness accounts demonstrating that executives had actual involvement in creating false reports." *Id*. The Amended Complaint has no admissions or witnesses, and makes only general allegations about View's "single production line" and customer and supplier base. ¶¶ 229-235. That is insufficient for this "very narrow exception to the scienter requirement." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1077 (N.D. Cal. 2010);

*see Prodanova*, 993 F.3d at 1112 (similar).

Finally, Plaintiff's only scienter allegation for View is that the scienter of individuals should be "imputed" to it.  ¶ 264.  But Plaintiff pleads no specific facts raising a strong inference of any individual's scienter.  *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607-08 (9th Cir. 2014) (to hold company liable, plaintiff must plead scienter for each individual defendant).

Therefore, viewed holistically, the "opposing inference of nonfraudulent intent" is far more "cogent" and "compelling."  *Tellabs*, 551 U.S. at 314.  "At best, [the allegations] paint a picture of a mismanaged organization in need of closer financial oversight that made a minute error at a critical stage in its development."  *Webb*, 884 F.3d at 856.  View erred in accounting for a 10-year warranty accrual that was "inherent[ly]" "uncertain[]."  Ex. 2 at 238, 329; Ex. 4 at 89.  As Plaintiff alleges, View also made a "partially offsetting*"* error in the accrual by *over*estimating IGU failure rates.  ¶ 58.  Plaintiff's theory that View sought to defraud investors by excluding costs to *decrease* the accrual, while making errors with opposite effect of *increasing* the accrual, "has no basis in logic or common experience."  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020); *see IXIA*, 50 F. Supp. 3d at 1369 (accounting errors that *understated*, then *overstated*, revenue undercut scienter inference).

**2.    No Specific Pleaded Facts Establish Loss Causation.**  The Section 10(b) claims also fail because Plaintiff fails to plead loss causation.  Plaintiff must allege "that after purchasing [its] shares and before selling ... (1) 'the truth became known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated."  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020).

Plaintiff fails to allege loss causation for the alleged misstatements concerning the warranty accrual.  For these statements, Plaintiff claims "the truth" "emerge[d]" on August 16, 2021, when View announced that its Audit Committee "recently began an independent investigation concerning the adequacy of the company's previously disclosed warranty accrual."  ¶ 117.  But the mere start of an investigation "cannot form the basis of a viable loss causation theory" because "the market cannot possibly know what the investigation will ultimately reveal."  *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014); *see also Apollo*, 774 F.3d at 608 ("a company's announcement of an internal investigation, by itself … is insufficient to establish loss causation").

-6-

In *Loos*, the Ninth Circuit affirmed dismissal for failure to plead loss causation based on a disclosure much like View's—that a company's audit committee was "conducting an internal investigation into certain previous revenue transactions" that "could raise issues with respect to its previously-reported financial information." 762 F.3d at 885.  Although an investigation "is certainly an ominous event," any stock-price decline "can only be attributed to market speculation about whether fraud has occurred."  *Id.* at 890.  Here, no specific pleaded facts show that the market "perceived the [investigation] to be related to [the] alleged misstatements." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210-11 (9th Cir. 2016).  Plaintiff thus cannot "correlate [its] losses to anything other than the announcement of an internal investigation." *Loos*, 762 F.3d at 883.

Moreover, the "quick and sustained price recovery" in View's stock "refutes the inference" that the alleged misstatements "caused any material drop in the stock price." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021).  Despite dropping from $5.18 to $3.92 after the investigation was announced on August 16, ¶ 118, View's stock price rebounded to $5.24 by September 2, and later increased to $6.08. *See* Ex. 13.  That View's stock price "quickly recovered" refutes the loss causation allegations. *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1065 (9th Cir. 2008).

In addition, Plaintiff fails to plead loss causation as to the March 2022 statements about View's cash balance and cash spend. *See* ¶¶ 120-121.  Plaintiff alleges that View's disclosure in May 2022 was a corrective disclosure for the March 2022 statements, ¶¶ 122-123, but in May View announced only a possibility that management would later disclose substantial doubt about View's ability to continue as a going concern and said nothing about View's cash balance or spend as of March 2022. Plaintiff fails to "trac[e] the loss back to the very facts about which the defendant [allegedly] lied." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022) (quotation omitted).

**3.**    **The Claim About the March 2022 Statement Fails for Additional Reasons.**

Allegations about View's March 2022 statements, ¶¶ 120-124, fail as well.  In that disclosure, View "announced its cash balance of $281 million as of December 31, 2021 with no substantial debt on the balance sheet" and that it "expects to improve cash burn through 2022 on higher volumes and revenues combined with associated improvements in operational efficiencies." Ex. 10 at 1.

First, Plaintiff fails to allege the first sentence was false.  Plaintiff must "specify … the reason

-7-

or reasons why the statement is misleading, and ... state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B). But Plaintiff does not allege how or why the statements that View's cash balance was "$281 million as of December 31, 2021" or that View had "no substantial debt" were false. Nor could it—the subsequent restatement disclosed that exact cash balance and confirmed View was carrying no substantial debt. Ex. 12 at 73, 111.

Second, the press release's second sentence ("View expects to improve cash burn …") is protected by the PSLRA's safe harbor. It is forward-looking because it is a projection, and therefore cannot be actionable if it *either* (a) is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements," *or* (b) is not "made with actual knowledge … that [it] was false or misleading." 15 U.S.C. §§ 78u-5(c)(1)(A)(i), (1)(B)(i). Here both are true. The press release expressly identified its statements about "cash expenditures" as "forward-looking statements," warned that "[t]here can be no assurance that these forward-looking statements will be achieved," and directed investors to the "risks ... described more fully" in View's proxy statement. Ex. 10 at 1; *see, e.g.*, *In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 996, 1010-11 (N.D. Cal. 2016) ("we expect to see improved results for the remaining two quarters" protected by safe harbor). And, no specific pleaded facts show "actual knowledge" of alleged falsity. 15 U.S.C. § 78u-5(c)(1)(B)(i). Plaintiff relies on View's May 10, 2022 statement that without additional financial resources, it "anticipates [it] will be disclosing substantial doubt about the Company's ability to continue as a going concern," ¶¶ 122, 123, but fails to explain how that shows anyone at View *actually knew* its March statement about cash burn and spend was false when made.

**4.    The Scheme Liability Claim Fails.** Plaintiff's attempt to plead a "scheme liability" claim under Rule 10b-5(a) and (c), ¶¶ 273-281, fails for the same reasons as the Rule 10b-5(b) claim. *See In re Aqua Metals, Inc. Sec. Litig.*, 2019 WL 3817849, at *8 (N.D. Cal. Aug. 14, 2019) (scheme liability requires all "the same elements as a Rule 10b-5(b) claim"); *see also Kang v. PayPal Holdings, Inc.*, 2022 WL 3155241, at *12-13 (N.D. Cal. Aug. 8, 2022) (dismissing claim where "alleged scheme consists entirely of ... misstatements analyzed above"). Plaintiff pleads no additional facts showing scienter or loss causation as to scheme liability. Its conclusory allegation of Defendants' collective "suppression and concealment of View's true financial condition and the amount of the

-8-

understatement of the warranty accrual," ¶ 277, fails to show "manipulative or deceptive act[s] in the furtherance of a scheme to defraud." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds*, 519 F.3d 1041 (9th Cir. 2008).

### B.   The Section 14(a) Claim Fails for Multiple Reasons

Plaintiff alleges that the View Defendants violated Section 14(a) because the misstated warranty accrual appeared in the Proxy Statement provided to CF II shareholders before the merger vote. ¶ 132. Plaintiff claims that absent the error, CF II shareholders "would have voted against [the merger] and/or sold their CF II securities," ¶ 161, and that they "were damaged … when the truth was disclosed, and the value of their View securities decreased in value." ¶ 169; *see* ¶ 162.

Section 14(a) requires Plaintiff to allege "a material misrepresentation or omission in a proxy statement" that is "made with the requisite level of culpability" and that the misstated proxy "was an essential link in the accomplishment of a transaction proposed in the proxy solicitation." *City of Birmingham Relief & Ret. Sys. v. Hastings*, 2019 WL 3815722, at *13 (N.D. Cal. Feb. 13, 2019) (Freeman, J.). Plaintiff also must allege loss causation, that is, facts "connect[ing] the proxy misstatements with an actual economic harm." *N.Y.C. Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). Because Plaintiff fails to allege the requisite culpability or causation and the claim in any event is derivative, the Section 14(a) claim must be dismissed.

**1.   Plaintiff Fails to Plead a Strong Inference of Culpable Conduct.** Plaintiff's Section 14(a) claim sounds in fraud because it alleges the exact same fraud and misrepresentations for its Section 14(a) claim as it does for its Section 10(b) claim. *See* ¶ 91 (proxy statement "contained substantially the same statements" alleged to be false in De-SPAC Registration Statement); see also ¶¶ 224, 247, 279 (alleging "fraudulent scheme"); *cf. Rigel*, 697 F.3d at 886 (finding Section 11 claim sounds in fraud because complaint "relie[d] on the same alleged misrepresentations"). Thus, Plaintiff must plead "specific facts demonstrating that the [View Defendants] acted knowingly and deliberately," which, as discussed above, Plaintiff has not done. *Hastings*, 2019 WL 3815722, at *13. Plaintiff's "nominal" attempt to "disclaim allegations of fraud," ¶ 131, is "unconvincing" because "the gravamen of the complaint is fraud." *Rigel*, 697 F.3d at 885.

-9-

Even if, as Plaintiff urges, it needs only plead negligence, Plaintiff "must plead particularized facts that give rise to a strong inference of negligence" for its Section 14(a) claim under the PSLRA. *Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1016 (D. Ariz. 2017); *see also Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683 (9th Cir. 2005). Plaintiff also must "plead particular facts as to each defendants' negligence." *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1015 (N.D. Cal. 2007). Plaintiff cannot "rely on conclusory labels or boilerplate references to corporate executive duties." *Mendoza v. HF Foods Grp. Inc.*, 2021 WL 3772850, at *11 (C.D. Cal. Aug. 25, 2021).

Other than a lone conclusory allegation that "Defendants" collectively "acted negligently," ¶ 160, Plaintiff makes no allegations explaining how any View Defendant was negligent or failed to exercise reasonable care as to the Proxy Statement. No allegations describes any specific conduct by any View Defendant that was unreasonable, or even any conduct at all specifically related to View's warranty accounting. This total lack of pleaded facts alone requires dismissal.

Moreover, Plaintiff fails to allege that any View Defendants were involved in the complex accounting judgments necessary to calculate the warranty accrual, much less how any of them acted unreasonably. Under the accounting rules, whether to include particular estimated costs to replace IGUs turns on whether the costs were probable and reasonably estimable, Ex. 9 (ASC 450-20-25-2), and there are no allegations as to why or how the View Defendants were negligent in making those estimates. Nor do any pleaded facts show that the individual View Defendants participated in drafting or revising the Proxy Statement *issued by CF II* or how their participation was negligent. *See Mendoza*, 2021 WL 3772850, at *11 (generalized allegations of defendants' role in proxy disclosures insufficient); *Hastings*, 2019 WL 3815722, at *14 (similar).

Plaintiff further fails to show how the individual View Defendants, who were not directors or officers of CF II with duties to its shareholders at the time of the vote, "breached any duty [to CF II shareholders], a necessary element of a negligence claim." *Krieger v. Atheros Commc'ns, Inc.*, 2012 WL 1933559, at *8 (N.D. Cal. May 29, 2012). Indeed, as to the View Defendants who were Legacy View directors, Plaintiff fails to "allege[] individual directors' duties that would allow the Court to infer negligence" as to this accounting matter. *Hastings*, 2019 WL 3815722, at *14; *see In re JPMorgan Chase Deriv. Litig.*, 2014 WL 5430487, at *25 (E.D. Cal. Oct. 24, 2014) (dismissing

-10-

Section 14(a) claim that failed to "describe with sufficient detail what [defendants] knew or did not know or how they were negligent in failing to discover what they should have").

Plaintiff's negligence allegations against View—which was CF II at the time of the Proxy Statement—fare no better. No specific pleaded facts show why or how CF II should have detected and corrected the misstated accrual in Legacy View's financial statements. As Plaintiff pleads, View's restatement correcting the error in the warranty accrual took over ten months, and the investigation into the accrual was not announced until over five months after the merger. ¶¶ 58, 94, 117. To the extent Plaintiff contends post-merger View is responsible for Legacy View's conduct, no particularized allegations articulate Legacy View's duty to CF II shareholders, let alone show how Legacy View was negligent. *See Atheros*, 2012 WL 1933559, at *8.

**2.   No Specific Pleaded Facts Show Transaction or Loss Causation.** A Section 14(a) claim requires a plaintiff to allege both transaction and loss causation. *Hastings*, 2019 WL 3815722, at *15. The Amended Complaint fails to plead either.

Transaction causation requires that the allegedly misstated proxy statement "was an essential link in the accomplishment of the transaction" that causes the alleged loss. *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). "The essential link requirement can 'only be established when the proxy statement at issue *directly authorizes the loss-generating corporate action*.'" *SEC v. Mercury Interactive, LLC*, 2009 WL 2984769, at *4 (N.D. Cal. Sept. 15, 2009) (emphasis added); *see City of Pontiac Gen. Emps.' Ret. Sys. v. Bush*, 2022 WL 1467773, at *4 (N.D. Cal. Mar. 1, 2022) (same); *see also In re AGNC Inv. Corp.*, 2018 WL 3239476, at *3-4 (D. Md. July 3, 2018) (Section 14(a) claim must "be based on … statements in proxy materials disseminated to secure shareholder votes to authorize the corporate decision that allegedly caused the economic harm").

Here, Plaintiff claims the alleged misstatements in the Proxy Statement were the "essential links in the accomplishment" of the March 2021 merger vote, but never alleges how that corporate decision caused the alleged harm. ¶¶ 161, 169. The vote approved CF II's decision to merge with Legacy View; it did not approve the misstatements that Plaintiff alleges caused its harm. The alleged misstatements were made months *before* the vote, and Plaintiff alleges it suffered harm five months *after* the vote when the stock price fell on news that the accrual was being investigated. ¶¶ 81-83.

-11-

Thus, as a matter of law and fact, Plaintiff cannot show that the Proxy Statement "directly authorize[d] the loss-generating corporate action." *Mercury Interactive*, 2009 WL 2984769, at *4; *see Bush*, 2022 WL 1467773, at *5 ("multi-step theory that false proxy statements" led to later harm "too tenuous to rise to the level of 'essential link'"); *AGNC*, 2018 WL 3239476, at *6 (similar).

The Section 14(a) claim also fails to allege loss causation—"an actual economic harm" stemming from the misstated accrual in the Proxy Statement. *Jobs*, 593 F.3d at 1023. Plaintiff held 80,000 CF II shares on the Record Date. ¶¶ 1, Sch. A at 2. But it sold this entire position on March 9, 2021, five months before the stock-price decline constituting its alleged damages. *See id*. Although Plaintiff later bought more View stock, any economic harm from those purchases was not caused by the Proxy Statement because the purchases occurred well after the vote solicited by the proxy. *See Hastings*, 2019 WL 3815722, at *15 (finding "damages to corporate image and goodwill" inadequate and not "allegedly caused by the proxy statements themselves"); *Atheros*, 2012 WL 1933559, at *7 (dismissing Section 14(a) claim where complaint "does not connect any proxy misstatements or omissions with an actual economic harm"). Also, loss causation cannot be established given the "quick and sustained price recovery" of View's stock. *See supra*.

**3.     Plaintiff's Damages Theory Is Fundamentally Derivative.**   Even if the Amended Complaint were read to plead that the merger approval resulted in CF II shareholders receiving a worse bargain than they thought at the time of the vote, such a claim is derivative under Delaware law. Plaintiff must therefore plead demand futility under Rule 23.1, which it has not done. *See Towers v. Iger*, 912 F.3d 523, 528 (9th Cir. 2018).

A Section 14(a) claim can be asserted either directly, or derivatively on behalf of a company. *J. I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964). Under the law of Delaware, where View is incorporated, ¶ 23, whether a claim is derivative depends on "'(1) who suffered the alleged harm (the corporation or the stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?'" *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1263 (Del. 2021) (citation omitted). Under Delaware law, a Section 14(a) claim that a shareholder received less value in a merger than disclosed in a proxy statement is derivative because any harm was suffered by the company as a whole. *See Feldman v. Cutaia*, 951

-12-

A.2d 727, 733 (Del. 2008) ("Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature."). The claim therefore should be dismissed. *See In re Romeo Power Inc. Sec. Litig.*, 2022 WL 1806303, at \*5 (S.D.N.Y. June 2, 2022) (dismissing similar claim involving SPAC merger under Rule 23.1 because the "essence of Plaintiffs' § 14(a) claim is that the proxy statements overstated the value of [the SPAC target], and as a result, [SPAC shareholders] received less in value from the merger than they expected when they approved it").

### C.      The Section 11 Claim Fails Because Plaintiff Cannot Show Traceability

Section 11 of the Securities Act "provides a cause of action to any person who buys a security issued under a materially false or misleading registration statement." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013). Under Section 11, a plaintiff must show it "can trace [its] shares back to" the allegedly false registration statement. *Id.* "Failure to plead the traceability of [a plaintiff's] shares" means a plaintiff "lack[s] statutory standing under Section 11." *Id.* at 1109.

Plaintiff fails to allege that *any* of its own shares are traceable to the De-SPAC Registration Statement that is the sole basis of its Section 11 claim. *See* ¶ 180 (alleging Section 11 violated for purchases "traceable to the De-SPAC Registration Statement"). The sole, conclusory allegation of traceability is that "[a]ll investors who purchased or otherwise acquired the registered securities after the Business Combination are traceable to the De-SPAC Registration Statement." ¶ 188. Absent specific allegations as to Plaintiff's purchases, Plaintiff fails to establish Section 11 standing. *See Century Aluminum*, 729 F.3d at 1107 (affirming dismissal of complaint lacking the "greater level of factual specificity ... needed before a court can reasonably infer that shares purchased in the aftermarket are traceable to a particular offering").

This is not just a pleading flaw. It is a defect in the Section 11 claim that cannot be cured with an amended pleading because two registration statements are at play here—the SPAC Registration Statement that registered the initial offering of the SPAC's shares when it went public, and the later De-SPAC Registration Statement that registered additional SPAC shares to be provided to Legacy View's former shareholders in connection with the merger. *See* Exs. 1, 2. When "a company has issued shares under more than one registration statement, the plaintiff must prove that her shares were

-13-

issued under the allegedly false or misleading registration statement, rather than some other registration statement"—something a plaintiff "usually will not be able to" do. *Century Aluminum*, 729 F.3d at 1106, 08. Courts, therefore, routinely dismiss Section 11 claims in cases involving multiple registration statements given the "significant possibility that the shares purchased originated from the prior offering." *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at \*7 (N.D. Cal. July 5, 2022) (dismissing complaint for lack of traceability); *see Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at \*15 (N.D. Cal. Jan. 17, 2017) (Freeman, J.) (same); *In re Zynga Inc. Sec. Litig.*, 2014 WL 721948, at \*3-4 (N.D. Cal. Feb. 25, 2014) (same); *see also Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 947 (9th Cir. 2021) ("successive registrations" pose "traceability problem" at pleading stage).

Plaintiff faces the same intractable problem here. Indeed, 100,000 of Plaintiff's share purchases were made *before* the merger. Am. Compl., Sch. A at 2. Those shares could only have been registered with the SPAC Registration Statement, not the De-SPAC Registration Statement that is the basis of the Section 11 claim. *Id.* ¶¶ 64, 74, 76; Ex. 2 at 18, 166; *see also* Ex. 6 at 2, 27.

Plaintiff's post-merger purchases cannot be traced to the De-SPAC Registration Statement either. There were 50 million CF II securities registered under the SPAC Registration Statement in public circulation before and after the merger. ¶¶ 64, 74. Given that volume, and the fact that brokers typically hold shares in "street name," Plaintiff will never be able to say whether its holdings came from the shares registered with the De-SPAC Registration Statement or from the 50 million shares already trading and registered under the earlier registration statement. *Century Aluminum*, 729 F.3d at 1107-09 (to trace shares to a secondary offering, plaintiff must "trace the chain of title," which is "often impossible, because most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares").

Moreover, although 151 million additional CF II shares were registered with the De-SPAC Registration Statement (*see* Ex. 2 at 18), only a small fraction of those shares could be traded after the merger: 123 million were issued to former Legacy View shareholders (who are excluded from the class, ¶ 1), and about 120 million were subject to lock-up agreements and could not be sold until September 2021—*after* the alleged corrective disclosure in August 2021. *See* Ex. 7 at 63, 132; ¶¶ 117-118. The other 28 million shares registered with the De-SPAC Registration Statement were not in

-14-

public circulation as they were "reserved for potential future issuance" to Legacy View shareholders. Ex. 7 at 148.  Thus, for traceability, Plaintiff must allege that its purchases trace to the 3 million shares registered with the De-SPAC Registration Statement not subject to lock-up, rather than the 50 million shares registered with the SPAC Registration Statement—which Plaintiff will never be able to do.

The Section 11 claim also fails because the absence of loss causation is apparent from the face of the pleading.  *See In re Shoretel Inc., Sec. Litig.*, 2009 WL 248326, at *4-6 (N.D. Cal. Feb. 2, 2009).

### D.     The Control-Person Claims Also Fail

The Section 20(a) claims fail because no primary violation of the securities laws is pleaded. *See Rigel*, 697 F.3d at 886.  Nor does Plaintiff plead that a View Defendant exercised actual authority or actually participated in alleged misconduct.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 (9th Cir. 2000) (authority); *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984) (participation).

## IV.     CONCLUSION

For the reasons above, the Amended Complaint should be dismissed with prejudice.

Dated:  October 6, 2022

MUNGER, TOLLES & OLSON LLP
    John W. Berry
    John M. Gildersleeve
    Lauren C. Barnett
    Brian R. Boessenecker


By:      */s/ John W. Berry*
    John W. Berry

*Attorneys for Defendants*
*View, Inc. f/k/a CF Finance Acquisition Corp. II, Rao Mulpuri, Nigel Gormly, Toby Cosgrove, Lisa Picard, Tom Cheung, Tom Patterson, and Bill Veghte*

-15-