Jeffrey L. Steinfeld (State Bar No. 294848)
JLSteinfeld@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, California 90071
Telephone:     (213) 615-1700
Facsimile:      (213) 615-1750

James P. Smith III (*pro hac vice*)
JPSmith@winston.com
Thania Charmani (*pro hac vice* forthcoming)
ACharmani@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone:     (212) 294-6700
Facsimile:      (212) 294-4700

Attorneys for Defendants Howard W. Lutnick,
Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg,
Charlotte S. Blechman, CF Finance Holdings II, LLC,
Cantor Fitzgerald & Co., Cantor Fitzgerald, L.P., and
CF Group Management, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, TOM LEPPERT, HAROLD HUGHES, NIGEL GORMLY, TOBY COSGROVE, LISA PICARD, TOM CHEUNG, TOM PATTERSON, BULL VEGHTE, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., CF GROUP MANAGEMENT, INC., AND PRICEWATERHOUSECOOPERS LLP,<br><br>Defendants. | Case No. 5:21-cv-06374-BLF<br><br>**CLASS ACTION**<br><br>**THE CF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE CF DEFENDANTS' MOTION TO DISMISS**<br><br>Concurrently filed with [Proposed] Order<br><br>Hearing:      April 20, 2023<br>Time:        9:00 a.m.<br>Judge:       Hon. Beth Labson Freeman<br>Court:       Courtroom 3 – 5th Floor<br>              (San Jose) |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND JOINDER ....................................................................................ii

ISSUES TO BE DECIDED ....................................................................................................ii

PRELIMINARY STATEMENT AND BACKGROUND.......................................................1

ARGUMENT ..........................................................................................................................2

    I.   THE AC FAILS TO STATE A CLAIM UNDER SECTION 14(A)......................................2

        A.  No Solicitation..........................................................................................................2

        B.  The AC Fails to Plead Knowledge or Negligence for any CF Defendant..........................3

        C.  The Section 14(a) Claim Against the CF Individuals Is Exculpated .............................5

    II.  THE AC FAILS TO STATE A CLAIM UNDER SECTION 11..........................................6

    III. THE AC FAILS TO STATE A CLAIM UNDER SECTION 12(A)(2)...............................6

        A.  Standing....................................................................................................................6

        B.  The CF Entities Are Not Sellers .................................................................................7

    IV. THE AC FAILS TO STATE CONTROL PERSON CLAIMS............................................8

CONCLUSION ......................................................................................................................10

**NOTICE OF MOTION AND JOINDER**

**TO THE COURT, CLERK, AND ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on April 20, 2023, at 9:00 a.m., or at such other time as the matter may be heard, in the courtroom of the Honorable Beth Labson Freeman, at the San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113, defendants Howard W. Lutnick, Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg and Charlotte S. Blechman (Hochberg and Blechman, the "Former Outside Directors" and, collectively with the other individual defendants enumerated above, the "CF Individuals"), and CF Finance Holdings II, LLC ("Sponsor"), Cantor Fitzgerald & Co. ("CF&Co."), Cantor Fitzgerald, L.P. ("Cantor") and CF Group Management, Inc. ("CFGM" and, collectively with Sponsor, CF&Co. and Cantor, the "CF Entities"), together, the "CF Defendants," will, and hereby do, move to dismiss the Amended Complaint ("AC") under Fed. R. Civ. P. 8(a), 9(b), 12(b)(6), and 23.1, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The motion is based on the accompanying memorandum of points and authorities, the motions and supporting papers filed by other defendants to the extent incorporated in the accompanying memorandum, including the View Defendants' request for judicial notice and exhibits thereto, the papers on file, the CF Defendants' forthcoming reply brief and portions of other Defendants' reply briefs incorporated therein, arguments of counsel, and such other matters as may be considered.

**ISSUES TO BE DECIDED**

(1)    Should Count 1, alleging violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against the CF Defendants be dismissed for failure to plead: (i) solicitation (as to the CF Entities); (ii) negligence; (iii) loss causation; (iv) derivative standing; and/or (v) non-exculpated claims?

(2)    Should Count 3, alleging violation of Section 11 of the Securities Act of 1933 (the "Securities Act") against the CF Individuals be dismissed: (i) for lack of standing; and/or (ii) because the absence of loss causation and/or the CF Individuals' due diligence/reliance defense appear on the face of the AC?

(3)    Should Count 4, alleging violation of Section 12(a)(2) of the Securities Act against the

CF Entities be dismissed because: (i) Plaintiff lacks standing; and/or (ii) the CF Entities are not statutory sellers?

(4)    Should Counts 2, 5 and 8, alleging control person liability under Section 15 of the Securities Act and Section 20 of the Exchange Act against all CF Defendants (except as to the Former Outside Directors in Count 8) be dismissed because the AC fails to adequately plead: (i) primary violations of the securities laws; and/or (ii) that any, let alone each, of the CF Defendants were controlling persons?

Dated: October 6, 2022                         WINSTON & STRAWN LLP


By:/s/ James P. Smith III
    James P. Smith III (*pro hac vice*)
    WINSTON & STRAWN LLP
    200 Park Avenue
    New York, NY 10166
    Telephone: 212-294-6700

    Jeffrey L. Steinfeld
    WINSTON & STRAWN LLP
    333 S. Grand Avenue
    Los Angeles, CA 90071
    Telephone: 213-615-1700

    Attorneys for Defendants Howard W. Lutnick,
    Paul Pion, Alice Chan, Anshu Jain, Robert J.
    Hochberg, Charlotte S. Blechman, CF Finance
    Holdings II, LLC, Cantor Fitzgerald & Co., Cantor
    Fitzgerald, L.P., and CF Group Management, Inc.

CF Defendants' Motion to Dismiss the Amended Complaint – Case No. 5:21-cv-06374-BLF

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Deriv., and Empl. Income Sec. Act (ERISA) Litig.*,
757 F. Supp. 2d 260 (S.D.N.Y. 2010) ................................................................. 3

*Birmingham Relief & Ret. Sys. v. Hastings*,
2019 WL 3815722 (N.D. Cal. Feb. 13, 2019) .................................................. 3, 4

*Britton v. Parker*,
2009 WL 3158133 (D. Colo. Sept. 23, 2009) ................................................... 5

*In re Century Aluminum Co. Sec. Litig.*,
749 F. Supp. 2d 964 (N.D. Cal. 2010) .............................................................. 7, 8

*Costanzo v. DXC Tech. Co.*,
2020 WL 4284838 (N.D. Cal. July 27, 2020) ................................................... 3, 9

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................ 6

*In re Daou Sys., Inc. Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005) ........................................................................... 7

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*,
238 F. Supp. 3d 799 (S.D. Tex. 2017) .............................................................. 3

*Feyko v. Yuhe Int'l, Inc.*,
2013 WL 816409 (C.D. Cal. Mar. 5, 2013) ...................................................... 6

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
855 F. App'x 902 (5th Cir. 2021) ...................................................................... 9

*In re Gupta Corp. Sec. Litig.*,
900 F. Supp. 1217 (N.D. Cal. 1994) ................................................................. 9

*In re Harmonic, Inc. Sec. Litig.*,
2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) .................................................. 8

*Jedrzejczyk v. Skillz, Inc.*,
2022 WL 2441563 (N.D. Cal. July 5, 2022) ..................................................... 6, 7

*Kalin v. Xanboo, Inc.*,
526 F. Supp. 2d 392 (S.D.N.Y. 2007) ............................................................... 3, 9

*Kelley v. Rambus, Inc.*,
2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) .................................................... 2

*Krieger v. Atheros Commc'ns, Inc.*,
2012 WL 1933559 (N.D. Cal. May 29, 2012) .................................................. 4

CF Defendants' Motion to Dismiss the Amended Complaint – Case No. 5:21-cv-06374-BLF

*Lapiner v. Camtek, Ltd.*,
    2011 WL 445849 (N.D. Cal. Feb. 2, 2011)........................................................................8

*Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
    690 F. Supp. 2d 959 (D. Ariz. 2010)...............................................................................10

*May v. KushCo Holdings, Inc.*,
    2020 WL 6587533 (C.D. Cal. Sept. 25, 2020)...................................................................8

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000)......................................................................2, 4, 5

*Mendell v. Greenberg*,
    612 F. Supp. 1543 (S.D.N.Y. 1985).................................................................................3

*O'Sullivan v. Trident Microsystems, Inc.*,
    1994 WL 124453 (N.D. Cal. 1994)...................................................................................9

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
    2018 WL 7019481 (N.D. Cal. Oct. 16, 2018)................................................................ 3, 4

*Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*,
    50 F. Supp. 3d 1328 (C.D. Cal. 2014).............................................................................10

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ..........................................................................................9

*Pino v. Cardone Capital, LLC*,
    2021 WL 3502493 (C.D. Cal. Apr. 27, 2021)....................................................................8

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    432 F. Supp. 3d 1095 (N.D. Cal. 2020)............................................................................9

*S.E.C. v. Todd*,
    642 F.3d 1207 (9th Cir. 2011).........................................................................................10

*Bao v. SolarCity Corp.*,
    2015 WL 1906105 (N.D. Cal. Apr. 27, 2015)..................................................................10

*Special Situations Fund III QP, L.P. v. Brar*,
    2015 WL 1393539 (N.D. Cal. Mar. 26, 2015) ..................................................................9

*State Treasurer of Michigan v. Countrywide Fin. Corp.*,
    2011 WL 13220150 (C.D. Cal. Aug. 22, 2011) .................................................................6

*In re TrueCar, Inc. S'holder Deriv. Litig.*,
    2020 WL 5816761 (Del. Ch. Sept. 30, 2020)....................................................................5

*In re Violin Memory Sec. Litig.*,
    2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)................................................................ 7, 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*,
    2017 WL 66281 (N.D. Cal. Jan. 4, 2017)....................................................................... 8, 9

v

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 167708 (N.D. Cal. Jan 17, 2017) .......................................................................... 7, 8

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ................................................................... 6, 7, 9

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
  2022 WL 345066 (N.D. Cal. Feb. 4, 2022) ............................................................................. 5

*Yamamoto v. Omiya*,
  564 F.2d 1319 (9th Cir. 1977) ............................................................................................ 2, 3

**Statutes**

15 U.S.C. §77k(b)(3) ................................................................................................................ 6

15 U.S.C. §78n(a)(1) ................................................................................................................ 2

8 Del. Code §102(b)(7) ............................................................................................................. 5

**Other Authorities**

17 C.F.R. §240.14a-1(*l*)(1) ....................................................................................................... 2

**PRELIMINARY STATEMENT AND BACKGROUND**

Plaintiffs' claims against the CF Defendants, none of whom were named in the original complaint, relate to a merger between a special purpose acquisition company ("SPAC"), CF Finance Acquisition Corp. II ("CFII"), and a private operating company, View, Inc. ("View"). AC ¶¶3-5. Such mergers are known colloquially as "de-SPAC" transactions. To be clear, CFII is not a CF Defendant and the CF Defendants are not officers, directors or affiliates of View. *Id*. ¶¶36-48. Rather, the CF Individuals served on the board of CFII – which was View's arm's-length merger counterparty – prior to the de-SPAC and did not join View's board or management post-merger. *Id*. ¶¶36-41, 66. The CF Entities likewise had no relationship with View. CF&Co. served as financial adviser to CFII – across the table from View – in connection with the de-SPAC (*id*. ¶68), Sponsor was a minority shareholder of CFII prior to the de-SPAC, and CFGM and Cantor are affiliates of Sponsor. *Id*. ¶¶45-46.

Yet all have been named in this action on behalf of *View* stockholders. The claims against the CF Defendants are based solely on accounting errors discovered *after* the de-SPAC in *View's* financial statements, which View's auditor, PricewaterhouseCoopers ("PwC"), had concluded prior to the de-SPAC "present[ed] [View's financial condition] fairly in all material respects," were "in conformity with [GAAP]" and were "free of material misstatement, whether due to error or fraud." *Id*. ¶93.

Thus, Plaintiff's Section 14(a) claim, alleging that the registration statement filed with the SEC in connection with the de-SPAC ("de-SPAC Registration Statement") was false and misleading, must be dismissed against the CF Entities because they never engaged in any proxy solicitation. And that claim must also be dismissed against all CF Defendants because the AC fails to plead how any CF Defendant was negligent as to the statements therein. Nor could it. The allegedly misleading View financials were expressly included in the de-SPAC Registration Statement "in reliance on the report of" PwC "given on the authority of said firm as experts in auditing and accounting." *Id*. ¶159; Ex. 4 at 284. Indeed, the AC alleges that View management prevented outsiders, including PwC, from discovering these alleged misstatements (AC ¶236) and nowhere alleges that the CF Defendants had reason to question PwC's audit or ignored any "red flags." This also establishes the CF Individuals' due diligence defense under Section 11 as a matter of law, requiring dismissal of that claim, as well. The Section 11 claim also fails because Plaintiff cannot trace its shares to the Registration Statement,

1

as detailed in the brief in support of View's motion to dismiss ("View's Brief"), relevant portions of which are incorporated by reference herein.  Both claims also fail because Plaintiff has not adequately pled loss causation and, as is apparent from the face of the AC, could never do so.

Plaintiff's Section 12 claim is also incurably defective because (a) Plaintiff lacks standing, not having purchased directly in the offering, and (b) the CF Entities are not "statutory sellers."  Plaintiff does not attempt to plead that it purchased shares from any of the CF Entities, nor could it: the shares registered belonged solely to legacy View and its stockholders. Ex. 2 at 2.  Finally, Plaintiff's "control person" claims must be dismissed because (a) the AC fails to plead an underlying violation, and (b) this District consistently rejects the type of boilerplate "control" allegations Plaintiff puts forth. Accordingly, the Court should dismiss the AC against the CF Defendants in its entirety with prejudice.

## **ARGUMENT**

### I.    THE AC FAILS TO STATE A CLAIM UNDER SECTION 14(a)

Plaintiff's Section 14(a) claims against the CF Defendants must be dismissed for all of the reasons set forth in View's Brief (including that it is derivative in nature) and because (1) as to the CF Entities, they did not solicit proxies, (2) as to all CF Defendants, Plaintiff has not adequately pled that any of the CF Defendants were negligent, and (3) the CF Individuals are exculpated by CFII's charter.

**A.    <u>No Solicitation</u>**.  Section 14(a) applies only to those who "solicit" or "permit the use of [their] name to solicit" stockholder votes.  15 U.S.C. §78n(a)(1); 17 C.F.R. §240.14a-1(*l*)(1) ("solicit" means to request, execute, or furnish a proxy).  Thus, Plaintiff must plead facts showing each CF Entity permitted the use of its name to solicit proxies and, "at the very least," a "substantial connection between the use of [defendant's] name and the solicitation effort." *Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977); *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *5 (N.D. Cal. Dec. 9, 2008) ("mere appearance of a party's name in a proxy" does not form "the basis for [§14] liability").

Here, Plaintiff does not credibly allege that the CF Entities "solicited" proxies.  Rather, the AC alleges only that the Proxy was permitted to be distributed "By Order of the CF II Board." AC ¶141. The bald allegation that the CF Entities "permitted the use of [their] name[s] in the [Proxy], and solicited the votes of shareholders in the Proxy" (AC ¶¶148-50) is insufficient.  *In re McKesson HBOC, Inc.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) (allegation of "distributing, or causing to

be distributed, the Joint Proxy Statement … fails"); *Mendell v. Greenberg*, 612 F. Supp. 1543, 1551-52 (S.D.N.Y. 1985) (allegation that defendant "permitted the use of its name to solicit proxies" is "legally insufficient").  Plaintiff does not explain how any, much less each, CF Entity permitted the use of its name to solicit proxies and a substantial connection therewith.  Nor could it.  The 278-page Proxy mentions CFGM only four times, stating that CFGM is Cantor's general partner and disclaiming beneficial ownership of Sponsor's CFII shares.  *See* Ex. 4 at 204, 263.  Similarly, CF&Co. – CFII's financial advisor – is only mentioned in disclosing the fees it was to receive (AC ¶44; Ex. 4 at 18, 21, 25, 44, 100), which is a far cry from solicitation.  *See Mendell*, 612 F. Supp. at 1552 (even financial advisor's "participat[ion] in drafting proxy" is "insufficient to constitute solicitation" under §14(a)); *In re Bank of Am. Corp.*, 757 F. Supp. 2d 260, 295 n.6 (S.D.N.Y. 2010) (financial advisors "cannot be subject to liability under Section 14(a)").  Plaintiff also fails to plead any facts establishing a "substantial connection" between Cantor (which disclaimed beneficial ownership of CFII shares), Sponsor and CFII's solicitation of proxies.  *See Yamamoto*, 564 F.2d at 1322-23.  Finally, allegations of "affiliation" between Cantor, Sponsor and CFII – all distinct legal entities – gets Plaintiff nowhere. *See Costanzo v. DXC Tech. Co.*, 2020 WL 4284838, at *8 (N.D. Cal. July 27, 2020) (declining to treat "two legally distinct entities – as one"); *In re Enron Corp.*, 238 F. Supp. 3d 799, 839-40 (S.D. Tex. 2017) ("separate corporate forms will not be disregarded merely upon a showing of common management or whole ownership"); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 407 (S.D.N.Y. 2007).

        **B.**        **The AC Fails to Plead Knowledge or Negligence for any CF Defendant**.  Even if the AC had sufficiently pled solicitation by any CF Defendant, the Section 14(a) claim would still fail because the AC does not adequately plead knowledge or negligence.  As outlined in View's Brief, because Plaintiff's claims sound in fraud, Plaintiff must plead that defendants "acted knowingly and deliberately" for its Section 14(a) claim, with the particularity required by Rule 9(b) and the PSLRA. *Birmingham Relief & Ret. Sys. v. Hastings*, 2019 WL 3815722, at *13 (N.D. Cal. Feb. 13, 2019). Even if knowing or deliberate conduct were not required, Plaintiff's negligence claim must still satisfy the PSLRA "by [1] clearly articulating the duty each [CF] Defendant had to [Plaintiff,] and [2] how their failure to satisfy that duty gave rise to negligence." *In re Ocera Therapeutics, Inc.*, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018).  Plaintiff must plead facts creating a "strong inference" of negligence

3

and "lumping together of Defendants will not be accepted." *Id.* Here, Plaintiff has not adequately pled that any CF Defendant owed Plaintiff a duty, which is "a necessary element of a [Section 14(a)] claim." *Krieger v. Atheros Commc'ns, Inc.*, 2012 WL 1933559, at *8 (N.D. Cal. May 29, 2012); *see Birmingham*, 2019 WL 3815722, at *14 (dismissing where plaintiff had "not sufficiently alleged [defendants'] duties"). Indeed, the word "duty" is used just once in the AC, generically in a conclusory paragraph that is not even incorporated into Count 1 and merely states that "Defendants" owed a duty (AC ¶200), without any attempt to explain how any CF Defendant owed one.

Moreover, even if some cognizable duty had been pled (and it was not), the AC fails to plead how any, much less each, CF Defendant was negligent. Plaintiff's sole boilerplate allegation – that "Defendants … acted negligently" regarding the alleged misstatements (*id.* ¶160), "permitted use of their names in solicitations … and/or participated in the drafting of the Proxy Statement/Prospectus" (*id.* ¶133) – has been expressly rejected in this District. *McKesson*, 126 F. Supp. 2d at 1267 (allegation that defendant "acted negligently … in distributing … the [proxy] … fail[s] under the Reform Act").

This is especially true where, as here, the alleged misstatements are ***audited financials*** of an unaffiliated target company in a merger proxy. (Notably, Messrs. Lutnick and Jain's media comments referred to in the AC are not alleged to be misleading, two of the three interviews referenced do not mention View at all (AC ¶¶136-38) and the third does not discuss View's financials. *Id.* ¶135.)

*McKesson* dismissed Section 14(a) claims against an acquiror and its officers/directors in this exact scenario, finding that "[w]hile [target's auditor] may or may not have been negligent in failing to uncover the improprieties, there is no suggestion in the complaint that … [acquiror] could have known, even with reasonable diligence, that [target] was engaged in massive accounting fraud." 126 F. Supp. 2d at 1267-68. Exactly. *McKesson* further rejected as insufficient an allegation that "an investigation conducted with even the slightest care would have uncovered the [] accounting improprieties" because there were "facts pleaded in the complaint" that "negate[d] an inference of negligence," i.e., the acquiror could have "relied on accounting done by [an auditor]." *Id.*

Here, as in *McKesson*, the AC negates any inference of the CF Defendants' negligence. As alleged, PwC, View's auditor "since 2013," was required to "have a sufficient understanding of [View] and its environment, to identify areas that might represent specific risks relevant to the audit, and [to]

4

gather sufficient appropriate audit evidence necessary to support its" report. *Id.* ¶263. And PwC's audit report stated that View's "financial statements present [its financial condition] fairly, in all material respects" and "are in conformity with [GAAP]" and "free of material misstatement, whether due to error or fraud." AC ¶93. That dispositively negates any "negligence" by the CF Defendants.

Further, as in *McKesson*, the AC alleges that management of the target (View) actively prevented others – including PwC – from discovering its misstatements. *Compare* AC ¶236 ("View masked the Company's true financial condition") *with McKesson*, 126 F. Supp. 2d at 1267 (target "kept [others] in the dark about the improprieties"). Indeed, the AC relies heavily on View's Audit Committee investigation (AC ¶117), which (a) was not even commenced until ***five months after the de-SPAC closed*** and (b) concluded that certain former View personnel "negligently failed to properly record" the warranty-related liabilities that led to the restatement and "***intentionally failed to disclose*** certain information ***to [View's] Board and [PwC]*** regarding … the warranty-related obligations." Ex. 12 at 107 (emphasis added). Given that finding, it is impossible for the AC ever to allege that ***the CF Defendants*** (at most, directors or affiliates of View's arm's-length counterparty) had reason to question PwC's audit or ignored "red flags." "[I]n the absence of facts that would specifically demonstrate" why each CF Defendant "knew or should have known" of the improprieties, the Section 14(a) claim must be dismissed. *Britton v. Parker*, 2009 WL 3158133, at *11 (D. Colo. Sept. 23, 2009).

**C.      The Section 14(a) Claim Against the CF Individuals Is Exculpated**. As to the CF Individuals (CFII's former directors), the Section 14(a) claim also fails because CFII's certificate of incorporation contained an exculpation provision pursuant to 8 Del. Code §102(b)(7) that shields its directors from liability for negligence (Ex. 3 §8.1) and Plaintiff expressly pled its Section 14(a) claim based "solely on negligence," disclaiming "any allegation … sounding in fraud or intentional or reckless conduct." AC ¶131. This is fatal. "Numerous courts, in considering … claims brought under [§]14(a), have upheld application of exculpation clauses adopted pursuant to [§]102(b)(7)." *In re Wells Fargo & Co.*, 2022 WL 345066, at *4, n.3 (N.D. Cal. Feb. 4, 2022) (collecting cases and noting that "to the Court's knowledge, [there are] no cases holding to the contrary). The exculpatory provision applies equally to direct and derivative claims, as it shields directors from actions by "the corporation or its stockholders." Ex. 3 §8.1; *In re TrueCar, Inc.*, 2020 WL 5816761, at *21 (Del. Ch. Sept. 30,

5

2020) (given the "exculpatory charter provision and the absence of scienter-based claims … in the Securities Class Action, [defendants] would not face a substantial likelihood of personal liability").

## II.   THE AC FAILS TO STATE A CLAIM UNDER SECTION 11

As shown in View's Brief, Plaintiff's Section 11 claim fails because (a) Plaintiff lacks standing, as it cannot trace its shares, and (b) the absence of loss causation is plain on the face of the AC.  In addition, the Section 11 claim against the CF Individuals fails because it is premised solely on expertised portions of the de-SPAC Registration Statement and, as shown above, the AC "does not adequately allege that [the CF Defendants'] reliance on [PwC] and [View] management accounting related statements … was unreasonable." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1181-82 (C.D. Cal. 2008).  Because Plaintiff has not pled any "red flags that the [CF Individuals] were in a position to see," the CF Individuals were entitled to "reasonably rely on [View's] auditors' statements," and the "due diligence defense [appears] on the face of the [AC] as a matter of law." *Id.* 1174-15, 1181-82 (dismissing §11 claim based on due diligence/reliance on auditor); *see Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *8 (C.D. Cal. Mar. 5, 2013) (dismissing §11 claim against outside defendants "because they are allowed to rely on auditors' work, absent red flags.").  Absent "alleg[ations] that the [CF Individuals] had actual knowledge of any red flag, Plaintiff may not proceed." *State Treasurer of Michigan v. Countrywide Fin. Corp.*, 2011 WL 13220150, at *6 (C.D. Cal. Aug. 22, 2011) (dismissing §11 claim against former directors and outsider directors, because "the due diligence defense applies equally to [them and underwriters]"); *see* 15 U.S.C. §77k(b)(3).

## III.   THE AC FAILS TO STATE A CLAIM UNDER SECTION 12(a)(2)

Plaintiff's Section 12(a)(2) claim fails because (a) Plaintiff lacks standing, insofar as it did not purchase directly in the offering, and (b) the CF Entities are not statutory sellers.

**A.   Standing**.  As established in View's Brief, Plaintiff lacks Section 11 standing because it did not purchase shares traceable to the de-SPAC Registration Statement.  Plaintiff similarly lacks Section 12 standing because it did not purchase shares directly "in [the] public offering" at issue, "as opposed to the secondary market." *Welgus v. TriNet Grp.*, 2017 WL 6466264, at *26 (N.D. Cal. Dec. 18, 2017); *see Jedrzejczyk v. Skillz*, 2022 WL 2441563, at *8 (N.D. Cal. July 5, 2022).  Plaintiff's PSLRA certification demonstrates that it did not purchase in the offering because Plaintiff purchased

6

no shares on March 9, 2021, the day after the merger closed, or on September 9, 2021, when additional shares that were locked up under the merger agreement became available (or at any time in September 2021) (AC, Sch. A).  Ex. 7 at 132.  This disposes Plaintiff's Section 12 claim.  *In re Century Aluminum Co.*, 749 F. Supp. 2d 964, 976 (N.D. Cal. 2010) (dismissing §12 claim because certification "show[s] that none of the named plaintiffs purchased any shares on the date of the secondary offering").

Plaintiff's conclusory allegations that it "purchased or otherwise acquired View securities pursuant and/or traceable to the De-SPAC Registration Statement" (AC ¶¶180, 207) are of the kind routinely rejected in this District.  *See, e.g.*, *Welgus v. TriNet Grp.*, 2017 WL 167708, at *18 (N.D. Cal. Jan 17, 2017) (allegations of "pursuant to and traceable to" are "not sufficient to allege standing" for §12 claim); *Skillz*, 2022 WL 2441563, at *8; *Century Aluminum*, 749 F. Supp. 2d at 976.

**B.      The CF Entities Are Not Sellers**.  The Section 12 claim also fails because the CF Entities are not "statutory sellers."  Section 12 "may be asserted only against a defendant who offers or sells a security." *TriNet*, 2017 WL 6466264, at *28.  A "seller" must (a) pass title of securities to plaintiff or (b) solicit plaintiff's purchase.  *In re Violin Memory*, 2014 WL 5525946, at *18 (N.D. Cal. Oct. 31, 2014).  Defendants "must be alleged to have had some direct role in the solicitation of the plaintiff" (*TriNet*, 2017 WL 6466264, at *28) because Section 12 "contemplates only an action by a buyer against ***his or her immediate seller***." *Violin*, 2014 WL 5525946, at *18 (emphasis in original).

Here, Plaintiff does not (and cannot) allege that it purchased shares from any CF Entity because the CF Entities did not sell in the offering and Plaintiff did not buy in it.  The shares registered under the de-SPAC Registration Statement were transferred to legacy View stockholders in the merger.  Ex. 2 at 2.  Cantor and CFGM never owned CFII/View securities and Sponsor and CF&Co. have not had their shares registered.  To the contrary, while View's April 7, 2021 Shelf Registration Statement sought to register Sponsor and CF&Co.'s View securities (Ex. 7 at 2), View withdrew it before it went effective.  Ex. 15.  It is thus legally impossible that any CF Entity was Plaintiff's "immediate seller."

Likewise, the CF Entities are not alleged to have solicited Plaintiff's purchase.  In this regard, Plaintiff "must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005); *see Pino v. Cardone*

Memorandum in Support of the CF Defendants' Motion to Dismiss – Case No. 5:21-cv-06374-BLF

*Capital, LLC*, 2021 WL 3502493, at *16 (C.D. Cal. Apr. 27, 2021). Plaintiff "must allege that the defendants had some direct role in the solicitation of" its purchase. *Violin*, 2014 WL 5525946, at 18. Plaintiff's sole allegation in this regard – that the CF Entities "promoted, offered or sold View securities to Lead Plaintiff and other members of the Class" – AC ¶199 – is contradicted by incorporated or judicially noticeable documents showing that the CF Entities did not offer/sell (Ex. 4), and in any event fails as a matter of law. *See Century Aluminum*, 749 F. Supp. 2d at 976 ("If plaintiffs did in fact purchase [] directly from defendants, they should have said so.").

Plaintiff also "improperly groups all of the [CF Entities] together, with no particularized facts alleged as to each Defendant," which is "insufficient to satisfy the particularized pleading required of the PSRLA." *May v. KushCo Holdings, Inc.*, 2020 WL 6587533, at *7 (C.D. Cal. Sept. 25, 2020); *see Lapiner v. Camtek, Ltd.*, 2011 WL 445849, at *3 (N.D. Cal. Feb. 2, 2011) ("group pleading is no longer viable under the PSLRA."). Plaintiff offers no particularized allegations about how each CF Entity played a "direct role in the solicitation of" its purchases. *Violin*, 2014 WL 5525946, at 18. No CF Entity was the issuer (that was CFII, now View) or signed the Prospectus. And even if they did, "signing a prospectus provides an insufficient legal basis for relief." *TriNet Grp.*, 2017 WL 167708, at *19; *In re Harmonic, Inc.*, 2006 WL 3591148, at *14 (N.D. Cal. Dec. 11, 2006). Furthermore, the AC is devoid of allegations regarding the CF Entities' financial benefit other than the generalized, conclusory allegation that Plaintiff's purchases were for the benefit of "Defendants." AC ¶199.

## IV.   THE AC FAILS TO STATE CONTROL PERSON CLAIMS

Plaintiff's "control person" claims are similarly defective. To establish "control person" liability under Section 15 of the Securities Act or Section 20 of the Exchange Act, Plaintiff must plead with particularity for *each* CF Defendant that there was "(1) a primary violation of federal securities laws and (2) that the defendant exercised actual power or control over the primary violator." *TriNet*, 2017 WL 6466264, at *27; *see In re Volkswagen*, 2017 WL 66281, at *19 (N.D. Cal. Jan. 4, 2017) (applying "Rule 9(b)'s heightened pleading standard" to controller claims). The AC does neither.

*First*, the claims "must[] be dismissed for failure to allege a primary violation" (for the reasons herein and in View's Brief). *TriNet*, 2017 WL 6466264, at *27. Count 5, alleging controller liability based on CFII/View's primary violation of Section 12(a)(2) (AC ¶¶207-13), also fails because the

Memorandum in Support of the CF Defendants' Motion to Dismiss – Case No. 5:21-cv-06374-BLF

underlying violation (Count 4) is not pled against CFII/View, the allegedly "controlled" person (AC ¶¶196-205). *Id.* (dismissing because "no underlying violation alleged against the controlled person").

**Second**, boilerplate assertions that the CF Defendants are controllers "[b]y virtue of their high-level positions," "ownership and contractual right, participation in and/or awareness of the companies' operations" and "their positions as senior officers, or members of CF II's board, or their status as signatories of the De-SPAC Registration Statement" (AC ¶¶173, 211-12, 283) are routinely rejected. *See, e.g.*, *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106–07 (N.D. Cal. 2020) (dismissing claim that "by virtue of their positions and their power to control public statements," defendants controlled the company); *Volkswagen*, 2017 WL 66281, at *19 (dismissing claim premised on defendant's board positions and allegations he was "involved in the day-to-day operations of, and exercised power and control over" companies including "directing their public statements"); *Special Situations Fund III QP, L.P. v. Brar*, 2015 WL 1393539, at *10 (N.D. Cal. Mar. 26, 2015) (dismissing despite allegations that defendants "had the power, influence and authority to cause … others to engage in the wrongful conduct … including the content and dissemination of the various [mis]statements").

These holdings apply with special force as to the Former Outside Directors, as to whom there are no additional allegations. *O'Sullivan v. Trident Microsystems,* 1994 WL 124453, at *13 (N.D. Cal. 1994) (allegations that outside directors "controlled the contents … of the annual reports, press releases and presentations" insufficient); *In re Gupta Corp.*, 900 F. Supp. 1217, 1242 (N.D. Cal. 1994).

The allegations against the CF Entities fare no better. CF&Co. is not alleged to have held any CFII shares before the de-SPAC or to have had a board seat or any day-to-day involvement with CFII. *See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996) (no "traditional indicia of control" where defendant "did not own stock … prior to closing and did not have a seat on its Board"). Cantor and CFGM are not alleged to have had any direct ownership interest or governance rights in CFII (*see id.*), and are named only as the sole member of Sponsor and managing partner of Cantor, respectively. This is insufficient to establish controller liability. *Firefighters' Ret. Sys. v. Citco Grp*, 855 F. App'x 902, 906 (5th Cir. 2021); *see Xanboo*, 526 F. Supp. 2d at 407; *Costanzo*, 2020 WL 4284838, at *8. The AC does not allege Sponsor held a controlling interest in CFII; being "a minority shareholder … does not establish control person liability." *Gupta*, 900 F. Supp. at 1243.

9

The allegations against former CFII officers/directors Lutnick, Jain, Chan and Pion are likewise insufficient. Being a "CEO or other high-ranking officer … does not create a presumption" of control. *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011); *see Bao v. SolarCity Corp.*, 2015 WL 1906105, at *5 (N.D. Cal. Apr. 27, 2015) (dismissing §20 claim where alleged controller owned 30% of company's stock, was chairman, was related to officers and signed misleading statements). Further, Mr. Pion resigned on January 31, 2021, did not sign the final Registration Statement or Proxy/Prospectus (AC ¶37; Ex. 4) and could, even theoretically, "be held liable only for misrepresentations [] made before that time." *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1370 (C.D. Cal. 2014). Conversely, Ms. Chan joined CFII's board on January 31, 2021, and cannot be liable "for alleged violations that took place before" then. *Local 617 Pension and Welfare Funds v. Apollo Group,* 690 F. Supp. 2d 959, 979 (D. Ariz. 2010).

***Finally***, the CF Defendants are not alleged to have had any involvement with View or its public statements after the de-SPAC closed on March 8, 2021 (e.g., AC ¶95), and cannot have controller (or any other) liability for statements thereafter. *IXIA*, 50 F. Supp. at 1370.

## CONCLUSION

For the foregoing reasons, the Court should grant the CF Defendants' motion with prejudice.

Dated: October 6, 2022                   WINSTON & STRAWN LLP

By:/s/ James P. Smith III
   James P. Smith III (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: 212-294-6700

Jeffrey L. Steinfeld
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213-615-1700

Attorneys for Defendants Howard W. Lutnick, Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg, Charlotte S. Blechman, CF Finance Holdings II, LLC, Cantor Fitzgerald & Co., Cantor Fitzgerald, L.P., and CF Group Management, Inc.

10