JOHN W. BERRY (SBN 295760)
john.berry@mto.com
JOHN M. GILDERSLEEVE (SBN 284618)
john.gildersleeve@mto.com
LAUREN C. BARNETT (SBN 304301)
lauren.barnett@mto.com
BRIAN R. BOESSENECKER (SBN 331409)
brian.boessenecker@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendants*
*View, Inc. f/k/a CF Finance Acquisition Corp. II,*
*Rao Mulpuri, Nigel Gormly, Toby Cosgrove,*
*Lisa Picard, Tom Cheung, Tom Patterson, and Bill Veghte*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, TOM LEPPERT, HAROLD HUGHES, NIGEL GORMLY, TOBY COSGROVE, LISA PICARD, TOM CHEUNG, TOM PATTERSON, BILL VEGHTE, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., CF GROUP MANAGEMENT, INC., AND PRICEWATERHOUSECOOPERS LLP, <br><br> Defendants. | Case 5:21-cv-06374-BLF <br><br> <u>CLASS ACTION</u> <br><br> VIEW DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS <br><br><br> Judge:   Hon. Beth Labson Freeman <br> Date:    April 20, 2023 <br> Time:    9:00 a.m. <br> Ctrm:   3 |

## I.   INTRODUCTION

The Opposition fails to address or justify the Amended Complaint's inability to trace Plaintiff's shares to the De-SPAC Registration Statement, its complete lack of detailed scienter or negligence allegations, and its failure to allege viable loss causation theories.  Plaintiff tries to overcome these defects by offering new theories not pleaded in its Amended Complaint and asking the Court to ignore judicially noticeable facts about Plaintiff's trading history.  Dismissal, therefore, is warranted.

## II.   PLAINTIFF'S SECTION 11 CLAIM SHOULD BE DISMISSED

Plaintiff does not dispute the incurable defect in its Section 11 claim—that 50 million shares circulating under a prior registration statement disable Plaintiff from ever pleading statutory standing by tracing its shares to the later De-SPAC Registration Statement that is the basis of its claim.  *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107-08 (9th Cir. 2013); View Br. at 13-15.

Plaintiff argues its bare allegation that its shares are "traceable" to the De-SPAC Registration Statement (¶ 180) should suffice—but that same argument was rejected in *Century Aluminum*, the controlling decision on pleading traceability with multiple registration statements, as here.  The Ninth Circuit held that "[w]hen a company has issued shares in multiple offerings," a plaintiff must plead that its shares were issued under the challenged registration statement, not an earlier one, and must do so with a "greater level of factual specificity" than in single offering cases because it "usually will *not* be able to trace [its] shares" when there are multiple registered offerings.  729 F.3d at 1107-08.  The Amended Complaint lacks this specificity.  The Opposition never addresses this flaw and, in arguing that detail is not required, cites cases that pre-date *Century Aluminum* (Opp. at 14-15, citing *Immune Response* and *SeeBeyond Techs.*) or involve a single registration statement (*id*. at 15, citing *Ubiquiti Networks*), and so are irrelevant.  *See* View Br. at 14 (cases involving multiple registration statements).

Plaintiff also argues it can still assert Section 11 claims on behalf of absent class members even if it has no statutory standing through traceability.  Opp. at 15.  That argument is at odds with *Century Aluminum*, and Plaintiff again cites inapt cases pre-dating that ruling or involving single registration statements.  *Id*., citing *In re Juniper Networks Sec. Litig.*, 542 F. Supp. 2d 1037, 1052 (N.D. Cal. 2008) (no analysis of statutory standing); *In re VeriSign Sec. Litig.*, 2005 WL 88969, at *4-5 (N.D. Cal. Jan. 13, 2005) (class standing only for Section 10(b), not Section 11); *NECA-IBEW Health & Welfare Fund*

-1-

*v. Goldman Sachs*, 693 F.3d 145, 149, 158 (2d Cir. 2012) (lead plaintiff that *had statutory standing* could represent purchasers of other tranches of securities under *single registration statement*).

Nor does Plaintiff address judicially noticeable facts rendering amendment futile. First, only three million of the 151 million shares traceable to the De-SPAC Registration Statement were publicly circulating when Plaintiff purchased its shares, because the other 148 million shares had been locked-up or reserved for later issuance; second, 50 million of the 53 million shares circulating after the Merger were registered under the prior registration statement and so cannot be traced to the De-SPAC Registration Statement. These irrefutable facts require dismissal with prejudice.

Plaintiff asks the Court to ignore these facts, calling them "outside the complaint." Opp. at 15. That is not true. The Amended Complaint specifically acknowledges an earlier registered offering of 50 million shares and a later registered offering for the Merger. *E.g.*, ¶¶ 63, 80. These facts, and the details of those offerings, are all disclosed in the De-SPAC Registration Statement cited and quoted throughout Plaintiff's pleading. *See*, *e.g.*, Dkt. 136, Ex. 2 at 203, 302; *id.*, Ex. 1 (earlier registration statement). *Century Aluminum* expressly endorsed taking judicial notice of such facts when assessing traceability of a plaintiff's shares at the pleading stage. *See* 729 F.3d at 1110.

## III.   THE SECTION 10(b) CLAIMS SHOULD BE DISMISSED

**A.   Plaintiff Alleges No "Strong Inference" of Scienter.** Plaintiff fails to identify "detailed and specific allegations" showing "a nexus between wrongful behavior and Individual Defendants' knowledge." *Curry v. Yelp*, 875 F.3d 1219, 1227-28 (9th Cir. 2017). Although Plaintiff alleges vaguely that Defendants "knew" View's disclosures were "false" "by virtue of their receipt of information reflecting the true facts," the Opposition never explains what that "information" was, when it was received, or who received it. *See* View Br. at 4 (citing ¶ 224).

The Opposition fails to correct this defect. First, Plaintiff argues that scienter is pleaded through so-called "admissions" that View management knew about the product defect and costs "already" "incurred" to fix it. Opp. at 23-25. But knowledge of a publicly-disclosed defect and its costs is not the same as knowledge of an accounting error for the warranty covering that defect. The PSLRA requires Plaintiff to bridge that gap. Plaintiff also suggests the View Defendants "admitted" that the accrual did not involve "complex accounting judgments" (*id*. at 24), but misstates their brief,

which said "Plaintiff fails to allege that any View Defendants were involved in the complex accounting judgments necessary to calculate the warranty accrual." View Br. at 10. There are no allegations that the accounting was so simple that scienter may be strongly inferred from an error.

Second, Plaintiff argues that mere allegations about resignations support a strong inference of scienter (Opp. at 26-27), but fails to rebut, as it must, the "reasonable assumption" that the resignations occurred for ordinary business reasons. *Webb v. SolarCity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018). Plaintiff alleges two directors resigned shortly after the Merger—an ordinary event after a major change in the lifecycle of the company. ¶¶ 227-228. It also alleges two other directors resigned almost a year later (well after the alleged August corrective disclosure). ¶ 119. But those resignations were over a disagreement about the scope of "responsibilities" of one resigning director's role "as Executive Chair"—not about the accuracy of financial statements. *Id.* As for Prakash, he resigned as CFO on the day View announced that financial statements he was in charge of would be restated. ¶¶ 25, 226. Plaintiff argues, for the first time, that this resignation is suspicious given findings from an internal investigation. Opp. at 24. But the Amended Complaint has *no* allegations about those findings.

Third, Plaintiff fails to justify application of the "core operations" theory. It suggests the theory is "frequently" used (*id.* at 27), but only an "exceedingly rare category of cases" allow it. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008). The theory requires pleading specific admissions, witness accounts, or facts that make it "'absurd' to suggest that management was without knowledge" of fraud. *Id*. at 786. The Amended Complaint has no allegations like that. Instead, Plaintiff argues it needs only to allege that smart glass was View's "core product." Opp. at 27. That is not correct. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014) (no core operations despite defect in "flagship product"); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 817 (N.D. Cal. 2019) (Freeman, J.) (that fees were main revenue source "does not make every piece of information … that relates to those fees critical to the business's core operations").

Fourth, Plaintiff bundles issues frequently at play in public company restatements (GAAP violations, SOX certifications, and SEC investigations) as sufficient to plead scienter. Opp. at 27-28, 32. But the cases it cites make clear that these allegations must be coupled with additional, stronger allegations of scienter—like confidential witness statements or insider trading—which the Amended

-3-

Complaint lacks. *See id.*, citing *Mulderrig*, *Croker*, *Zamir*, *Lowry*, and *Washtenaw*. Plaintiff thus seeks to circumvent binding precedent holding that "mere publication of a restatement" fails to raise a strong inference of scienter. *Zucco P'rs, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009).

**B.     Plaintiff Fails to Plead Loss Causation.** Plaintiff is wrong. Rule 9(b), not Rule 8, applies to loss causation. *Or. Pub. Emps. Ret. Fund v. Apollo Grp.*, 774 F.3d 598, 605 (9th Cir. 2014).

Plaintiff tries to show loss causation through View's August 2021 announcement of an internal investigation, when the "truth" allegedly "emerged" (¶ 117), despite precedent that an investigation announcement alone cannot support loss causation. View Br. at 6 (citing *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014)). Citing *Lloyd v. CVB Financial Corp.*, Plaintiff argues that *Loos* does not apply because View's warranty accrual—the subject of the investigation—was later determined to be incorrect. Opp. at 34. That misses the point of *Lloyd*, where disclosure of an SEC subpoena sufficed as a corrective disclosure because it provided so much detail that analysts said it "validate[s] our overall concerns" about whether the bank "misled the Street." 811 F.3d 1200, 1204-05 (9th Cir. 2016); *see Rok v. Identiv*, 2017 WL 35496, at \*20 (N.D. Cal. Jan. 4, 2017) ("in *Lloyd*, it was far more clear … that the market had already understood the fraud to have been revealed"), *aff'd*, 716 F. App'x 663 (9th Cir. 2018). In contrast, Plaintiff alleges a corrective disclosure based on the very "type of speculation" the Ninth Circuit rejects. *Loos*, 762 F.3d at 890; *see Curry*, 875 F.3d at 1225 (loss causation not pleaded by "asserting that where there is smoke, there must be fire"). Plaintiff also disregards that it alleges no "subsequent corrective disclosure[s]" tying back to the investigation announcement, such as the Audit Committee's conclusions, the news that View would restate financials, or the ultimate Restatement. *Lloyd*, 811 F.3d at 1210.

**C.     Plaintiff's Claim About the March 7, 2022 Statement Fails.** Plaintiff concedes "there is no dispute" that View accurately reported its cash balance in March 2022, but argues View's disclosure of its cash balance and future cash burn was misleading because it omitted "an undisclosed going concern risk." Opp. at 35-36. This omission theory is not in the Amended Complaint, nor is the Opposition's napkin math about an "implied cash burn" of $80 million. *Id.* at 35. Indeed, the Amended Complaint pleads *no* facts showing that, as of March 7, 2022, View had determined it needed to disclose a going concern risk because it "did not have enough cash to last 12 months." *Id.* at 36.

-4-

Plaintiff's new theory also ignores basic timing. Plaintiff asserts View knew on March 7 that it would not last 12 months based on two post-March 7 events in View's May release: (a) a low quarter-end cash balance as of March 31 and (b) a projection that View would have insufficient cash to operate for 12 months starting in June (when the Restatement was expected to issue). *Id*. at 32-33. But neither of these shows what View knew on March 7, when it issued the release Plaintiff alleges was false.

Plaintiff also does not deny that View's March 7 statement that it "expects to improve cash burn through 2022" was forward-looking (*id*. at 35-36), and ignores that it was "accompanied by meaningful cautionary statements." View Br. at 8. This is yet another reason to dismiss Plaintiff's claim about the March 7 statement, as the statement is non-actionable under the PSLRA safe harbor. *See id*. The only portion of the statement not protected by the safe harbor (View's cash balance) is concededly accurate and said nothing about View's future expenditures or solvency.

## IV.    THE SECTION 14(a) CLAIM SHOULD BE DISMISSED

**A.    Plaintiff Can Never Plead Causation.** The Amended Complaint alleges "the truth was disclosed and the value of [its] View securities decreased in value" in August 2021. ¶¶ 117, 169. But Plaintiff does not deny that it sold all the shares it held the day of the Merger vote well *before* August or that the shares it held in August were all bought *after* the Merger vote. *See* ¶¶ 91, 94; Sched. A at 2. This makes pleading loss causation impossible—Plaintiff cannot plead the alleged proxy fraud harmed it through the shares it held when the Merger was voted on because it no longer owned those shares in August when it alleges the harm occurred, and it cannot allege it was harmed through its post-Merger purchases because it did not own those shares back when the Merger vote took place. *See* View Br. at 12. In response, Plaintiff calls it "premature" for the Court to consider this trading history (Opp. at 13), but the PSLRA *mandates* its inclusion with the Amended Complaint, and Plaintiff was chosen as lead plaintiff based on this very same history.

Plaintiff also fails to plead transaction causation, which exists only "when the proxy statement at issue directly authorizes the loss-generating corporate action." View Br. at 11. Plaintiff simply repurposes its deficient Section 10(b) allegations regarding the August 2021 stock-price decline as its alleged loss for its Section 14(a) claim. ¶ 169. But that alleged loss of value in View reflected by the stock-price decline would have occurred *with or without* the allegedly false proxy. *See* ¶ 77 (alleged

-5-

misstatement *before* proxy); ¶ 98 (alleged misstatement *after* proxy).  Therefore, the alleged loss was not generated by the authorized corporate action, and transaction causation is not pleaded.  The Opposition reinforces this point.  *See* Opp. at 13, citing *Baum v. Harman Int'l Indus., Inc.*, 408 F. Supp. 3d 70, 92 (D. Conn. 2019) (alleged harm adequate because it was based on lower share price received *in the merger itself* as direct result of merger approval solicited by allegedly false proxy).

**B.    The Section 14(a) Claim Sounds in Fraud.**  When a Section 14(a) claim sounds in fraud, "the plaintiff must allege specific facts demonstrating that the defendant acted knowingly and deliberately."  *City of Birmingham Relief & Ret. Sys. v. Hastings*, 2019 WL 3815722, at *13 (N.D. Cal. Feb. 13, 2019).  Plaintiff does not deny that its Amended Complaint has no allegations like this for its Section 14(a) claim and, as discussed above, Plaintiff's scienter allegations are insufficient.  Instead, ignoring that this claim rests on the *exact same* misstatements and conduct as its Section 10(b) claim, Plaintiff argues the claim does not sound in fraud because the Amended Complaint "disclaim[s]" fraud and "separate[s]" its Section 10(b) and 14(a) claims.  Opp. at 10.  But a nominal disclaimer of fraud is insufficient where, as here, "[t]he Section 14(a) claim rests on all of the same representations as the Section 10(b) fraud claim, and plaintiffs' allegations, despite the disclaimers, pleads a culpability that indicates the Section 14(a) claim is based on fraud."  *Zhou v. Faraday Future Intelligent Elec.*, 2022 WL 13800633, at *13 (C.D. Cal. Oct. 20, 2022); *see also In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *14 (N.D. Cal. Oct. 1, 2015) (similar).  Even Plaintiff admits *all* of its claims are "based on the same improper conduct."  Opp. at 15.

**C.    Plaintiff Has Not Alleged Negligence.**  Even if the Section 14(a) claim did not sound in fraud, Plaintiff must plead a strong inference of negligence.  Plaintiff ignores the ample precedent in the Ninth Circuit requiring this enhanced pleading for Section 14(a) negligence claims.  *In re Ocera Therapeutics Sec. Litig.*, 2018 WL 7019481, at *10 (N.D. Cal. Oct. 16, 2018); *Brown v. Papa Murphy's Holdings*, 2020 WL 3055488, at *6 (W.D. Wash. May 20, 2020); View Br. at 10.  Regardless of the standard, Plaintiff's conclusory allegation of negligence falls short. ¶ 160.  Plaintiff argues it suffices simply to allege a false statement in proxy materials (Opp. at 6), but that is not the law, and even Plaintiff's cases reject that proposition.  *See* CF Defs.' Reply Br. at 2.

Dated:  December 14, 2022

MUNGER, TOLLES & OLSON LLP
John W. Berry
John M. Gildersleeve
Lauren C. Barnett
Brian R. Boessenecker


By:   _____/s/ John W. Berry_____
John W. Berry

*Attorneys for Defendants*
*View, Inc. f/k/a CF Finance Acquisition Corp. II, Rao Mulpuri, Nigel Gormly, Toby Cosgrove, Lisa Picard, Tom Cheung, Tom Patterson, and Bill Veghte*

-7-