```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN JOSE DIVISION


 4
       MEHEDI, ET AL,                   )   CV-21-6374-BLF
 5                                       )
                      PLAINTIFF,         )   SAN JOSE, CALIFORNIA
 6                                       )
              VS.                        )   APRIL 20, 2023
 7                                       )
       VIEW, INC. F/K/A CF FINANCE       )   PAGES 1-64
 8     ACQUISITION CORP. II, ET AL,      )
                                         )
 9                    DEFENDANT.         )
                                         )
10     _____

11                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE BETH LABSON FREEMAN
12               UNITED STATES DISTRICT JUDGE

13                    A P P E A R A N C E S

14

15     FOR THE PLAINTIFF:     BY:  KATHLEEN A. HERKENHOFF
                              KAPLAN FOX & KILSHEIMER LLP
16                            1999 HARRISON STREET, SUITE 1560
                              OAKLAND, CA 94612
17

18

19     FOR THE PLAINTIFF:     BY:  JASON ARON URIS
                              KAPLAN FOX & KILSHEIMER LLP
20                            800 THIRD AVENUE, 38TH FLOOR
                              NEW YORK, NY 10022
21

22           APPEARANCES CONTINUED ON THE NEXT PAGE

23     OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        APPEARANCES CONTINUED:

 2        FOR THE DEFENDANT:      BY:  JOHN WILLIS BERRY
          VIEW, INC.              MUNGER, TOLLES & OLSON LLP
 3                                350 S. GRAND AVENUE, 50TH FLOOR
                                  LOS ANGELES, CA 90071
 4

 5        FOR THE DEFENDANT:      BY:  JEFFREY STEINFELD
          CF DEFENDANTS           WINSTON & STRAWN/CHICAGO
 6                                333 SOUTH GRAND AVENUE
                                  STE 38TH FLOOR
 7                                LOS ANGELES, CA 90071

 8

 9        FOR THE DEFENDANT:      BY:  JOHN C. TANG
          LEPPERT, HUGHES         JONES DAY
10                                555 CALIFORNIA STREET, 26TH FLOOR
                                  SAN FRANCISCO, CA 94104
11

12        FOR THE DEFENDANT:      BY:  ANNA ERICKSON WHITE
          PRAKASH                 MORRISON & FOERSTER LLP
13                                425 MARKET STREET
                                  SAN FRANCISCO, CA 94105
14

15        FOR THE DEFENDANT:      BY:  MICHAEL PURPURA
          PWC                     HUESTON HENNIGAN LLP
16                                620 NEWPORT CENTER DR., STE 1300
                                  NEWPORT BEACH, CA 92660
17

18

19

20

21

22

23

24

25
```

```
1          SAN JOSE, CALIFORNIA                 APRIL 20, 2023

2                    P R O C E E D I N G S

3          (COURT CONVENED AT 9:00 A.M.)

4               THE COURT:  GOOD MORNING, EVERYONE.  THANK YOU FOR

5     JOINING ON ZOOM.  LET'S CALL THE CASE AND GET YOUR APPEARANCES.

6               THE CLERK:  CALLING CASE 21-6374.  MEHEDI, ET AL

7     VERSUS VIEW, INC., ET AL.

8          COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES, AND

9     IF WE COULD BEGIN WITH PLAINTIFF COUNSEL AND THEN MOVE TO

10    DEFENDANTS.

11              MS. HERKENHOFF:  GOOD MORNING, YOUR HONOR.

12         KATHLEEN HERKENHOFF, COUNSEL OF THE KAPLAN FOX &

13    KILSHEIMER LAW FIRM.  THANK YOU.

14              MR. URIS:  GOOD MORNING, YOUR HONOR.

15         JASON URIS OF KAPLAN FOX & KILSHEIMER, FOR LEAD PLAINTIFF

16    AND THE PROPOSED CLASS.

17              THE COURT:  GOOD MORNING.

18              MR. BERRY:  GOOD MORNING, YOUR HONOR.

19         JOHN BERRY OF MUNGER, TOLLES & OLSON ON BEHALF OF THE VIEW

20    DEFENDANTS.

21              THE COURT:  GOOD MORNING.

22              MR. STEINFELD:  GOOD MORNING, YOUR HONOR.

23         JEFFREY STEINFELD OF WINSTON & STRAWN, ON BEHALF OF THE CF

24    DEFENDANTS.

25              MR. TANG:  GOOD MORNING, YOUR HONOR.
```

```
 1              JOHN TANG OF JONES DAY, ON BEHALF OF DEFENDANTS LEPPERT
 2   AND HUGHES.
 3              THE COURT:  GOOD MORNING, MR. TANG.
 4              MS. ERICKSON WHITE:  GOOD MORNING, YOUR HONOR.
 5         ANNA ERICKSON WHITE ON BEHALF OF DEFENDANT PRAKASH.
 6              THE COURT:  GOOD MORNING.
 7              MR. PURPURA:  GOOD MORNING, YOUR HONOR.
 8         MICHAEL PURPURA FROM HUESTON HENNIGAN ON BEHALF OF
 9   PRICEWATERHOUSECOOPERS.  AND ALSO, I BELIEVE IN THE OTHER ROOM,
10   ARE MICHAEL ENGLISH AND ANNE-MARIE VITALE FROM
11   PRICEWATERHOUSECOOPERS AS GENERAL COUNSEL.
12              THE COURT:  GOOD MORNING.
13         TELL ME YOUR NAME AGAIN.  YOUR NAME PLATE JUST HAS YOUR
14   FIRM NAME.
15              MR. PURPURA:  YES, IT'S MICHAEL PURPURA.
16         P AS IN PETER, U-R, P AS IN PETER, U-R-A.
17              THE COURT:  THANK YOU.
18         ALL RIGHT.  WELCOME TO EVERYONE.  IT'S A LOT OF PEOPLE ON
19   ZOOM.  AND I WILL JUST SAY NOW, THAT SHOULD THERE BE ANOTHER
20   MOTION TO DISMISS, I'M GOING TO LET YOU ALL BUY AIRPLANE
21   TICKETS, BECAUSE THIS IS GOING TO BE NEXT TO IMPOSSIBLE FOR ME
22   TO MANAGE ON ZOOM.  BUT THAT WAS ON ME, BECAUSE I COULD HAVE
23   ASKED YOU A MONTHS AGO TO PLAN AND I DIDN'T.  SO THANK YOU FOR
24   BEING ON ZOOM, AND WE WILL MAKE THE BEST OF IT.
25         THIS IS OBVIOUSLY A VERY COMPLEX LAWSUIT.  THERE ARE MANY
```

 1    PARTIES AND MANY CLAIMS.  I THINK IT IS FAIR TO SAY THAT

 2    THROUGH THIS PROCESS OF MOTIONS TO DISMISS, THIS CASE IS GOING

 3    TO GET A MAJOR HAIRCUT.  BUT FROM WHAT I CAN TELL NOW,

 4    SOMETHING IS GOING TO GET THROUGH THE CHUTE, IS THE WAY I SEE

 5    THIS, BUT I'VE GOT TO PICK IT APART, MINUTIA BY MINUTIA, AND

 6    THAT MAKES THE ARGUMENT DIFFICULT.

 7         SO UNLIKE MY NORMAL CASES, WHERE I LIKE TO HAVE A GOOD

 8    GIVE AND TAKE, I'M GOING TO GIVE YOU SOME INITIAL THOUGHTS, I'M

 9    GOING TO GIVE EACH OF YOU YOUR OPPORTUNITY TO SAY WHAT YOU WANT

10    TO SAY, AND THEN WE WILL BE DONE.

11         I DON'T KNOW ANY BETTER WAY, I THINK THE BRIEFING WAS

12    EXCELLENT, I WANT TO REALLY THANK YOU ALL.

13         FOR THE DEFENDANTS, I THINK YOU MADE GOOD USE OF THE

14    PAGES, YOU HIGHLIGHTED YOUR CLIENT'S UNIQUE CIRCUMSTANCES UNDER

15    THE LAW, AND THAT WAS VERY HELPFUL.

16         MS. HERKENHOFF, I REALLY APPRECIATED YOU REORGANIZING THE

17    ARGUMENT CLAIM-BY-CLAIM, AND THAT HELPED ME GET A DIFFERENT

18    VIEW OF THE WAY I SHOULD DEAL WITH IT.  OBVIOUSLY I HAVE TO

19    ULTIMATELY REVERT TO EACH DEFENDANT HAS A RIGHT TO HAVE THEIR

20    CLAIMS EVALUATED, BUT IT WAS ACTUALLY VERY HELPFUL FOR YOU TO

21    REDO IT THAT WAY.  AND NORMALLY, I DON'T LIKE THAT BECAUSE IT'S

22    HARD TO READ, BUT I THOUGHT IT WAS A GOOD APPROACH, SO THANK

23    YOU FOR THAT.

24         ALL RIGHT.  SO LET ME START WITH A COUPLE OF VERY

25    HIGH-LEVEL OBSERVATIONS.  IT IS NECESSARY FOR THE COMPLAINT TO

1    MAKE ALLEGATIONS AS TO ALL THE ESSENTIAL ELEMENTS OF EVERY

2    CLAIM AGAINST EACH INDIVIDUAL DEFENDANT WHO IS NAMED, AND

3    LUMPING OF DEFENDANTS TOGETHER WILL NEVER BE SUCCESSFUL, SO

4    THAT'S A NOTE.  AND IT'S GOING TO BE -- I'M NOT GOING TO RETURN

5    TO THAT ISSUE OF LUMPING, BECAUSE IT'S RAISED IN THE PAPERS AND

6    I THINK YOU UNDERSTAND THAT.

7         JUMPING AHEAD TO THE 10(B) CLAIM, I DO THINK THAT SCIENTER

8    IS WOEFULLY DEFICIENT.  I WILL SAY THAT I DON'T KNOW WHAT TO

9    MAKE OF, AT THE PLEADING STAGE, THE 2021 10-K WHERE THE

10   COMPANY, I THINK IT WAS SAID IN THE PAPERS, MAY HAVE THROWN THE

11   CFO UNDER THE BUS, BUT I HAVE A STATEMENT IN THE 10-K THAT THE

12   COMPANY'S FORMER CFO, AND CERTAIN FORMER ACCOUNTING STAFF,

13   INTENTIONALLY FAILED TO DISCLOSE CERTAIN INFORMATION TO THE

14   BOARD OF DIRECTORS, AND THE ACCOUNTANTS, PRICEWATERHOUSE.

15        THIS 10-K IS MENTIONED IN THE PLEADING, IT'S NOT REALLY

16   ARGUED.  I CAN CERTAINLY -- I THINK IT'S INCORPORATED BY

17   REFERENCE, BECAUSE IT'S MENTIONED.  AND I DON'T THINK THAT THE

18   COMPLAINT ACTUALLY PICKS UP ON THIS STATEMENT BY THE COMPANY

19   ABOUT INTENTIONAL CONCEALMENT.

20        AND SO I WANT TO HEAR A LITTLE BIT MORE ABOUT HOW THAT

21   PLAYS IN.  BUT ACTUALLY, FOR ALL OF THE PARTIES, ALL OF THE

22   DEFENDANTS, I JUST DON'T HAVE ENOUGH ON SCIENTER.  SO I WILL

23   LET YOU ARGUE THAT.  EVEN THE HOLISTIC VIEW, TAKING ALL OF

24   THESE OTHER ISSUES INTO ACCOUNT, THE RESIGNATIONS, CORE

25   OPERATIONS, AND THE SUPPOSED VIOLATIONS OF GAAP AND SOX, I JUST

1    DON'T SEE ENOUGH THERE.

2         OKAY.  SO THAT'S KIND OF AT A HIGH LEVEL, WE ARE NOT

3    SURPRISED BY THE SCIENTER PLEADINGS NOT BEING UP TO WHAT'S

4    REQUIRED UNDER THE PSLRA.  IN A CERTAIN SENSE, THAT'S THE

5    EASIER PART OF THIS MOTION, BUT THE NITPICKING COMES IN THE

6    OTHER CLAIMS.

7         SO I'M GOING TO START WITH THE 14(A) CLAIM ON THE PROXY

8    STATEMENT, AND I AM PARTICULARLY PERSUADED BY THE ARGUMENT, I

9    THINK VIEW PUT THIS OUT, MR. BERRY, I THINK THIS WAS YOUR

10   ARGUMENT, THAT LOSS CAUSATION CAN NEVER BE ESTABLISHED UNDER

11   SECTION 14(A).  YOU CLAIM THAT THE PLAINTIFFS SOLD THE SHARES

12   BEFORE THE AUGUST 2021 DISCLOSURE, AND THE SHARES THAT

13   PLAINTIFF HELD IN AUGUST OF 2021 WERE BOUGHT AFTER THE MERGER,

14   THEREFORE THERE COULD BE NO LOSS CAUSATION FROM THE PROXY

15   STATEMENT.  I THINK I'VE SAID THAT RIGHT, YOU CAN CORRECT ME IF

16   I HAVEN'T.

17        I FIND THAT QUITE PERSUASIVE, AND THAT WOULD THEN BE AN

18   END TO THE 14(A) CLAIM AGAINST ALL DEFENDANTS, IS THE WAY I

19   READ THAT.

20        THERE'S SOME SUGGESTION OF TRANSACTION CAUSATION.  I DON'T

21   ACTUALLY EVEN KNOW WHAT THAT MEANS, AND SO IF THAT'S IMPORTANT,

22   YOU WILL HELP ME OUT ON THAT, I JUST DIDN'T UNDERSTAND THAT

23   ARGUMENT.

24        THERE ARE ISSUES UNDER 14(A) REGARDING THE PLEADING

25   STANDARD.  AND MS. HERKENHOFF, THANK YOU FOR THE MOST RECENT

1    CASE YOU SENT ME FROM THE NINTH CIRCUIT.  I CERTAINLY AGREE

2    THAT IT SUMMARIZES THE STANDARD, I DON'T THINK IT -- WELL, IT

3    MIGHT -- I THINK THE COURT I FELT IT WAS CLARIFYING THE

4    STANDARD WHERE IT HAD NOT NECESSARILY BEEN CLEAR BEFORE, BUT I

5    CERTAINLY WOULD BE HONING TO THE NINTH CIRCUIT'S MOST RECENT

6    DECISION THERE.

7         I DON'T ACTUALLY THINK THIS IS THE MOST PERSUASIVE

8    ARGUMENT BY THE DEFENDANTS.  I CERTAINLY AGREE THAT IF THE

9    CLAIM SOUNDS IN FRAUD, THEN THE FRAUD PLEADING REQUIREMENTS ARE

10   NECESSARY.  BUT WHEN THERE'S A NEGLIGENCE CLAIM, WE NEED A

11   PLEADING SHOWING A STRONG INFERENCE OF NEGLIGENCE.

12        I THINK SOME OF THE CLAIMS DO SOUND IN FRAUD, THEY MIGHT

13   BE REDRAFTED TO BE PURELY NEGLIGENCE, AND I THINK THERE WILL

14   NEED TO BE SOME WORK ON THAT.

15        MOVING ON SEPARATELY TO MR. LEPPERT AND MR. HUGHES, I

16   DON'T KNOW WHY THEY ARE IN THIS CASE.  THEY DON'T KNOW WHY THEY

17   ARE IN THIS CASE.  IT LOOKS LIKE THEY WERE THE GOOD GUYS HERE,

18   THEY WERE THE ONES THAT RANG THE BELL.  I'M JUST NOT GETTING

19   IT.

20        AND SO I JUST DON'T FEEL THERE ARE ANY ALLEGATIONS OF

21   WRONGDOING AGAINST THEM, OTHER THAN THAT THEY WERE ON THE

22   BOARD.  THEY ARE OUTSIDE DIRECTORS.  I JUST DON'T SEE IT.

23        ON THE 14(A) CLAIM AGAINST THE CF DEFENDANTS, I'M GOING TO

24   NEED -- EVEN ASSUMING THAT IT'S A NEGLIGENCE STANDARD, I'M

25   GOING TO NEED TO SEE AS TO EACH AND EVERY ONE OF THE CF

1    DEFENDANTS, WHAT DUTY THAT DEFENDANT HAD AND HOW THE DEFENDANT

2    BREACHED THAT DUTY.

3        I THINK SOME OF THAT WAS FAR-FETCHED, BUT I WILL CERTAINLY

4    GIVE YOU A CHANCE TO REPLEAD IT.  AND IN FACT, I'M GOING TO

5    GIVE YOU A CHANCE TO REPLEAD EVERYTHING, I THINK IN THESE CASES

6    IT'S PRETTY STANDARD, BUT I HAVE SOME REAL DOUBTS WHETHER SOME

7    OF THEM WILL MAKE IT THROUGH.

8        MOVING ON TO THE SECTION 11 CLAIM.  SO UNDER SECTION 11,

9    THERE CAN BE SHARES PURCHASED IN THE INITIAL OFFERING OR SHARES

10   TRACEABLE TO THE INITIAL OFFERING.  THIS ONE IS PROBABLY GOING

11   TO BE IMPOSSIBLE TO MAKE OUT BECAUSE THERE WERE SO FEW SHARES

12   THAT EMANATED FROM THIS OFFERING.

13       THERE WERE 15 MILLION -- 50 MILLION RATHER, 50 MILLION

14   SHARES ALREADY FLOATING OUT IN THE MARKET, SO THAT'S GOING TO

15   BE DIFFICULT.  I DON'T KNOW HOW YOU DO THAT.  BUT I WILL SAY

16   THAT I DISAGREE WITH YOU, THE FACT THAT THERE MAY BE SOME

17   MYTHICAL, UNNAMED PLAINTIFF OUT THERE WHO, IF THE CASE IS

18   CERTIFIED AS A CLASS, WOULD QUALIFY, DOESN'T MATTER TO ME NOW,

19   I'M LOOKING AT THE NAMED PLAINTIFF, THE NAMED PLAINTIFF HAS TO

20   HAVE STANDING, AND I DON'T ACTUALLY CARE ABOUT THE OTHERS ON

21   THE STANDING ISSUE.

22       ON THE SECTION 12 CLAIM, IT APPEARS TO BE CORRECT THAT

23   THERE'S NO TRACEABILITY FOR STANDING, YOU HAVE TO HAVE

24   PURCHASED DIRECTLY, AND I DON'T THINK I HAVE ANYTHING THERE.

25   BUT IT'S THE SAME ISSUE ON SECTIONS 11 AND 12, IT'S JUST

```
1    DIFFERENT STATUTORY REQUIREMENTS.  FOR STATUTORY STANDING.

2    IT'S NOT ARTICLE III STANDING.  AND SO I DON'T THINK THOSE

3    CLAIMS CAN GET ANY FURTHER.  AND AGAIN, JUST LIKE THE LOSS

4    CAUSATION ISSUE WITH THE SECTION 14 CLAIM, I THINK THAT'S A BIG

5    PROBLEM.

6        LET'S SEE, THERE WAS A LOT HERE.  I WILL JUST -- I FORGOT

7    TO MENTION, I WAS TALKING ABOUT THE 10(B) CLAIM, THE MAIN ISSUE

8    IS SCIENTER.  I'M NOT PERSUADED THAT THERE'S A FAILURE OF LOSS

9    CAUSATION ALLEGATIONS HERE FOR THE DEFENDANTS.  IN THE LLOYD

10   CASE, THERE WAS ONLY THE ANNOUNCEMENT OF AN INVESTIGATION.

11   HERE WE DO HAVE MORE.  SO I THINK IT'S PROBABLY FINE, I DON'T

12   THINK THAT'S THE BIGGEST PROBLEM, THAT WON'T PREVENT THE 10(B)

13   CLAIM FROM GOING FORWARD.

14       IT WAS A LITTLE UNCLEAR FOR ME IN THE PLEADING, IT APPEARS

15   THAT THERE MAY BE A SEPARATE CLAIM BASED ON THE MARCH 7, 2022

16   STATEMENT OF CASH ON HAND.  I WASN'T EXACTLY CLEAR WHETHER THAT

17   WAS A SEPARATE CLAIM UNDER 10(B), BUT TO THE EXTENT IT IS, IT

18   APPEARS THAT THE STATEMENT ON MARCH 7TH ABOUT THE CASH ON HAND

19   ON DECEMBER 31ST WAS TRUE.

20       NOW IT CAN STILL BE MISLEADING, BUT I JUST DON'T HAVE THE

21   DOTS CONNECTED ON THIS CLAIM, AND I BELIEVE YOU WOULD HAVE TO

22   ARGUE THAT AS OF MARCH 7TH WHEN THE STATEMENT WAS MADE AND THE

23   PREDICTION ABOUT CASH FLOW IMPROVING, THAT THE -- I CAN'T

24   REMEMBER WHO MADE THIS STATEMENT, ALREADY KNEW THAT THE TREND

25   WAS AWAY FROM THE PREDICTION MADE AND THAT IT WOULD BE
```

1    IMPOSSIBLE.

2         SO I DON'T THINK THAT -- IF THAT'S A CLAIM AT ALL, I DON'T

3    THINK IT'S PROPERLY ALLEGED.  I THINK THAT PROBABLY CAN BE

4    FIXED.

5         AND LET'S SEE, I DO THINK THAT THE CONTROL PERSON,

6    SECTION 20(A), IS -- I THINK IT'S DEFICIENT.  I THINK IT HAS TO

7    BE DONE DEFENDANT-BY-DEFENDANT.  THIS IS WHERE THE

8    LEPPERT/HUGHES ALLEGATIONS I THINK ALSO FALL APART.

9         AND AS TO THE CF DEFENDANTS, THERE ARE A LOT OF THEM, AND

10   I JUST NEED TO KNOW EACH ONE SEPARATELY.  I JUST DON'T SEE

11   SUFFICIENT ALLEGATIONS THAT THEY ARE CONTROL PERSONS.

12        AND THEN I'VE LEFT FOR LAST, THE PRICEWATERHOUSECOOPERS'

13   CLAIMS.  I DO BELIEVE THAT THEIR OPINIONS COME UNDER OMNICARE.

14   AND THIS IS -- THIS ONE GETS TIED UP IN WHAT THE ALLEGATIONS

15   ABOUT MR. PRAKASH ARE, ASSUMING HE IS THE FORMER CEO REFERENCED

16   IN THE 2021 10-K OF INTENTIONAL CONCEALMENT, BECAUSE WE'VE GOT

17   TWO SETS OF FACTS WORKING AGAINST EACH OTHER.

18        IF THIS INFORMATION WAS INTENTIONALLY CONCEALED FROM

19   PRICEWATERHOUSECOOPERS, THEN I DON'T KNOW HOW THEIR OPINION CAN

20   BE ACTIONABLE.  BUT I'M JUST NOT -- I'M NOT SATISFIED WITH THE

21   THEORY THAT THEY WERE ON NOTICE THAT THEY NEEDED TO LOOK FOR

22   THESE PARTICULAR EXPENSES.  AND SO THAT'S GOING TO HAVE TO BE

23   FLESHED OUT AGAIN.

24        AND I GUESS -- AND I AM GOING TO APPLY OMNICARE, I DON'T

25   SEE ANY STATEMENT OF FACT.  I DON'T BUY THE THEORY THAT SAYING,

1    THAT WE APPLIED GAAP AND THE -- I CAN'T REMEMBER THE --

2    STANDARDS IS A STATEMENT OF FACT.  AND IN FACT, YOU DON'T HAVE

3    ANY ALLEGATIONS THAT THEY DIDN'T APPLY THOSE STANDARDS.  THEY

4    MIGHT NOT HAVE, IN THEIR PROFESSIONAL OPINION, THOUGHT THAT A

5    PARTICULAR ASPECT OF THE STANDARDS WAS APPLICABLE IN A

6    PARTICULAR WAY TO THE FACTS OF THIS CASE, THAT COMES UNDER

7    OMNICARE THOUGH, AS OPPOSED TO THEM PUTTING THE STANDARDS IN

8    THE GARBAGE AND JUST SAYING, WHAT DO YOU WANT, IN YOUR OPINION.

9    THAT'S NOT WHAT WE HAVE.

10        OKAY.  THAT WAS A LOT TO GO OVER.  SO FOR -- I'M SURE THAT

11   I HAVE EITHER GLOSSED OVER OR COMPLETELY MISSED SOME OF THE

12   ARGUMENTS THAT YOU ALL HAVE MADE IN YOUR PAPERS.  IT WAS A LOT,

13   AND I TRIED TO HIT THE HIGHLIGHTS HERE.  BUT WHAT I WOULD

14   REALLY LIKE TO DO AT THIS POINT IS TO SAY I'M DONE, I MIGHT

15   HAVE SOME QUESTIONS, AND THEN LET EACH OF YOU ARGUE YOUR

16   POSITION.

17        MS. HERKENHOFF, I THINK WE ARE GOING TO LET ALL THE

18   DEFENDANTS HAVE THEIR -- SAY THEIR PIECE, AND THEN I WILL LET

19   YOU RESPOND.  FORTUNATELY, BECAUSE I KNEW THIS WAS GOING TO BE

20   BIG, YOU ARE THE ONLY CASE THAT I HAVE ON THE CALENDAR UNTIL

21   11:00, SO I THINK WE HAVE AMPLE TIME.

22        SO MR. BERRY, I READ YOUR BRIEF FIRST, IT SEEMS LIKE THAT

23   WAS KIND OF THE LEAD OVERVIEW.  WERE YOU THE ONE WHO WANTED TO

24   START WITH THE ARGUMENT?

25             MR. BERRY:  YES, YOUR HONOR.

```
 1        I THINK WE TALKED BEFORE, AND I THINK WE WANTED TO HAVE US

 2    START FIRST AND THEN FOLLOW WITH SOME OF THE OTHER DEFENDANTS'

 3    COUNSEL.

 4            THE COURT:  GOOD.  GO AHEAD, PLEASE.

 5            MR. BERRY:  SO IT SOUNDS LIKE, I THINK, FROM WHAT I

 6    HEARD, YOUR HONOR, THAT YOU ARE INCLINED TO DISMISS THE

 7    COMPLAINT AND GIVE THE PLAINTIFF LEAVE TO AMEND, WHICH WE

 8    OBVIOUSLY AGREE WITH.  SO I DON'T WANT TO SAY TOO MUCH THEN.

 9    BUT I DO WANT TO HONE IN ON A COUPLE OF THINGS THAT YOU

10    ADDRESSED.

11        ONE IS, I ACTUALLY THINK THERE ARE SOME CLAIMS THAT CAN

12    ACTUALLY BE DISMISSED WITH PREJUDICE AT THIS POINT.  AND ONE OF

13    THEM YOU ALREADY ADDRESSED AND POINTED OUT, THE SECTION 14(A)

14    CLAIM HAS NOT JUST A PLEADING PROBLEM WITH THE LOSS CAUSATION

15    ASPECT THAT THEY HAVE GOT TO ESTABLISH IN THEIR COMPLAINT, IT

16    IS A FATAL FLAW THAT THEY CAN'T OVERCOME.

17        THEY CAN'T CHANGE THE FACT THAT THE LEAD PLAINTIFF DIDN'T

18    OWN ITS SHARES, THAT IT VOTED WITH, WHEN THE ALLEGED HARM

19    HAPPENED.

20        THEY VOTED IN MARCH, THEY HAD 80,000 SHARES ON THE RECORD

21    DATE, THEY SOLD THEIR SHARES, ALL OF THEM, THE VERY NEXT DAY ON

22    MARCH 9TH AFTER THE VOTE.  AND THEN THEY ALLEGED THEY WERE

23    HARMED IN AUGUST 2021 WHEN THE STOCK PRICE WENT DOWN.

24        THE FACT THAT THEY DON'T HAVE THOSE SHARES WHEN THAT HARM

25    HAPPENED, MEANS THAT THE CAUSAL CONNECTION BETWEEN THE HARM AND
```

1    THEIR VOTING SHARES IS BROKEN, AND NO MATTER WHAT THEY DO, NO

2    MATTER WHAT ARTFUL PLEADING THEY DO, THEY CAN'T OVERCOME THAT.

3    SO I THINK THAT CLAIM, JUST THAT REASON ALONE, SHOULD BE

4    DISMISSED WITH PREJUDICE.

5        ON THE SECTION 11 CLAIM, YOU POINT OUT THE STATUTORY

6    STANDING, I THINK YOU WERE ALLUDING PROBABLY TO THE CENTURY

7    ALUMINUM CASE, WHICH IS OBVIOUSLY DIRECTLY ON POINT.

8            THE COURT:  YES.

9            MR. BERRY:  I THINK YOU CORRECTLY POINTED OUT, AS THE

10   NINTH CIRCUIT DID, IT'S VIRTUALLY IMPOSSIBLE TO TRACE, IN THIS

11   DAY AND AGE, WHEN EVERYTHING IS HELD IN STREET NAME, WHEN YOU

12   HAVE TWO REGISTRATION STATEMENTS.

13       THE COMPLAINT HAS ONE SINGLE ALLEGATION ABOUT TRACING, AND

14   IT DOESN'T EVEN SAY THAT THE LEAD PLAINTIFF CAN TRACE ITS

15   SHARES TO THE REGISTRATION STATEMENT ISSUE, IT JUST SAYS IT

16   HOPES TO BE ABLE TO TRACE SOME OTHER PEOPLE IN THE CLASS.  AND

17   THAT, ALONE, ISN'T ENOUGH.

18       BUT AGAIN, I DON'T THINK THAT'S A PLEADING FLAW.  AS YOU

19   POINTED OUT, THEY HAVE GOT THE 50 MILLION SHARES THAT ARE

20   REGISTERED BY THE REGISTRATION STATEMENT THAT IS NOT AT ISSUE

21   IN THIS CASE, WHICH IS THE REGISTRATION STATEMENT FOR THE SPAC

22   IN SEPTEMBER 2020.

23       THEN THEY HAVE THE REGISTRATION STATEMENT THAT ACTUALLY IS

24   AT ISSUE, THAT REGISTERED 151 MILLION SHARES OF STOCK.  NOW 28

25   MILLION OF THEIR SHARES WERE NOT PUT IN THE PUBLIC MARKET, THEY

1    WERE RESERVED.  SO THAT LEAVES 123 MILLION SHARES THAT COULD BE

2    POSSIBLY TRACED TO, FOR THE REGISTRATION STATEMENT THAT'S AT

3    ISSUE.

4         THOSE 123 MILLION SHARES ARE ALL REGISTERED FOR THE OLD

5    VIEW SHAREHOLDERS, THE PRIVATE SHAREHOLDERS, BEFORE IT WAS

6    TURNED INTO A PUBLIC COMPANY.  120 MILLION OF THOSE SHARES WERE

7    LOCKED UP.

8         SO THAT MEANS WHEN THIS MERGER HAPPENED, ONLY 3 MILLION,

9    LIKE TWO PERCENT OF THE SHARES OUT THERE, WERE ACTUALLY

10   IMMEDIATELY AVAILABLE FOR PURCHASE.  AND THOSE COULD BE TRACED

11   BACK, AS A CHAIN OF TITLE, AS THE STATUTORY SECTION 11 STANDING

12   REQUIRES.  THE PLAINTIFF DOESN'T ALLEGE THEY CAN TRACE IN THE

13   COMPLAINT, THEY DON'T ALLEGE THAT THE LEAD PLAINTIFF CAN TRACE

14   THEIR SHARES IN THE OPPOSITION.  I GUESS I WILL LEAVE IT TO MS.

15   HERKENHOFF TO SAY WHETHER OR NOT SHE CAN NOW, BUT IF THEY

16   CANNOT, THAT IS AN INCURABLE FLAW IN THEIR COMPLAINT AND I

17   THINK IT SHOULD BE DISMISSED WITH PREJUDICE.

18        I'M JUST SORT OF TICKING THROUGH THE ISSUES THAT I THINK I

19   WANT TO HIGHLIGHT.  YOU MENTIONED THE FINJAN NINTH CIRCUIT

20   RULING THAT PLAINTIFF CIRCULATED YESTERDAY, IT CAME OUT IN

21   JANUARY.  I DON'T THINK THAT THAT IMPACTS OUR ARGUMENTS AT ALL.

22   FINJAN WAS A MERGER CASE, FORTRESS BOUGHT THIS COMPANY, SUB

23   SECURITY COMPANY, IT WAS A TENDER OFFER CASE, THEY ALLEGED A

24   14(E) CLAIM, AND THAT COURT I THINK DID TWO IMPORTANT THINGS:

25        ONE, THE NINTH CIRCUIT AFFIRMED THE DISTRICT COURT'S

1    RULING THAT THE ENTIRE CASE SOUNDS IN FRAUD.  AND THEY DID THAT

2    BECAUSE THE COMPLAINT MADE VERY CLEAR THAT THE DEFENDANTS ACTED

3    KNOWINGLY.

4        WELL THAT'S EXACTLY WHAT THIS COMPLAINT DOES HERE.  THE

5    COMPLAINT ALLEGES, I BELIEVE IT'S PARAGRAPH 224, ALLEGES THAT

6    THE DEFENDANTS WERE ACTING KNOWINGLY.

7        NOW, IT'S VERY SPARSE, AS YOU POINTED OUT, THE SCIENTER

8    ALLEGATION, IT'S THE ONLY SCIENTER ALLEGATION IN THE COMPLAINT,

9    SO IT'S GOT ITS OWN ISSUES FOR THE 10(B) CLAIM, BUT THEY DO SAY

10   THAT THERE WAS KNOWING CONDUCT, AND THAT WAS ENOUGH FOR THE

11   BOTH THE DISTRICT COURT AND THE NINTH CIRCUIT, TO SAY THAT THIS

12   SOUNDS IN FRAUD.

13       BUT THE COMPLAINT ALSO GOES FURTHER AND ACTUALLY CONFIRMS

14   THAT THE ALLEGED MISSTATEMENTS THAT SUPPORT ITS 10(B) CLAIM,

15   ARE THE EXACT SAME MISSTATEMENTS THAT MAKE UP ITS SECTION 14(A)

16   CLAIM.  AND THAT ALL HAS TO DO WITH THE WARRANTY ACCRUAL.

17       SO I THINK THE FINJAN CASE AND THE NINTH CIRCUIT RULING

18   JUST REAFFIRMS OUR POSITION THAT THIS CASE SOUNDS IN FRAUD.

19       THE SECOND PART OF THE FINJAN DECISION HAS TO DO WITH THE

20   PLEADING STANDARD, WHICH YOU ALLUDED TO.  NOW A NORMAL TYPICAL

21   FRAUD CASE SORT OF HAS THREE PILLARS OF HEIGHTENED PLEADING

22   STANDARDS THAT APPLY, RIGHT.  YOU'VE GOT THE RULE 9(B)

23   PARTICULARITY, YOU'VE GOT THE PSLRA PARTICULARITY REQUIREMENTS

24   UNDER SECTION 4(B)(1), AND THEN YOU'VE GOT THE STRONG INFERENCE

25   STANDARD UNDER SECTION 4(B)(2) OF THE PSLRA.

1    ALL THAT FINJAN DID WAS SAY WHEN A SECTION 14 CLAIM,

2    TECHNICALLY WAS A 14(E), AND I DON'T HAVE TO ARGUE FOR THIS

3    PURPOSE WHETHER OR NOT THAT ALSO APPLIES TO 14(A), ASSUMING IT

4    DOES, AND ALL THAT FINJAN NINTH CIRCUIT DECISION DID WAS SAY

5    THAT THIRD PILLAR OF STRONG INFERENCE DOESN'T APPLY WHEN THE

6    NEGLIGENT CLAIM SOUNDS IN FRAUD, WHEN THE 14(A) CLAIM SOUNDS IN

7    FRAUD.

8    THAT STILL LEAVES TWO IMPORTANT PILLARS HERE, RULE 9(B)

9    AND THE PARTICULARITY REQUIREMENT UNDER THE PSLRA.  AND HERE,

10    JUST LIKE THE SCIENTER CLAIM, THEY ONLY HAVE ONE ALLEGATION IN

11    THE ENTIRE COMPLAINT THAT HAS TO DO WITH NEGLIGENCE.  AND I

12    BELIEVE IT'S IN PARAGRAPH -- I'M LOOKING FOR IT --

13    PARAGRAPH 119, IF I HAVE THAT RIGHT -- I'M SORRY, 160.

14    IT'S ONE ALLEGATION, AND ALL THEY SAY IS THE PROSPECTUS,

15    THROUGH THE DEFENDANT'S NEGLIGENCE, AND IT'S NOT PARTICULARIZED

16    IN ANY ONE DEFENDANT, THERE ARE OVER A DOZEN INDIVIDUAL

17    DEFENDANTS HERE, THROUGH THE DEFENDANT'S COLLECTIVE NEGLIGENCE,

18    WAS MISLEADING.

19    SO I DON'T CARE WHAT KIND OF STANDARD YOU APPLY, TO ME

20    IT'S VERY CLEAR THAT UNDER RULE 9(B) AND THE PARTICULARITY

21    REQUIREMENTS OF THE PSLRA, WHICH FINJAN DID SAY APPLY, THAT

22    CAN'T BE ENOUGH.

23    SO I DON'T THINK FINJAN CHANGES THE DYNAMIC HERE, THAT

24    THEY HAVEN'T PLEAD WITH PARTICULARITY, THEIR NEGLIGENCE CLAIM.

25    THE OTHER POINT YOU MADE, OR ISSUE YOU POINTED OUT,

1    YOUR HONOR, IS THIS FACT THAT THE 10-K MENTIONS THE FINDINGS OF

2    THE AUDIT COMMITTEE.  AND ONE OF THOSE FINDINGS WAS THAT -- I

3    THINK YOU SAID THE CEO, IT'S THE CFO, MR. VIDOL PRAKASH, IT

4    DISCLOSED MR. PRAKASH INTENTIONALLY WITHHELD UNSPECIFIED

5    INFORMATION FROM THE BOARD AND THE PWC AUDITORS.

6        IT ALSO SHOWS UP, THAT SAME FINDING WAS ANNOUNCED IN

7    NOVEMBER 2021, WHICH IS AN AK, AND AS YOU POINT OUT, I MEAN,

8    NOVEMBER 2021 WHEN THEY FIRST ANNOUNCED THE AUDIT COMMITTEE

9    FINDINGS, IS IN AN AK THAT IS NOT QUOTED, CITED, REFERENCED AT

10   ALL IN THE COMPLAINT.

11       THE PLAINTIFFS MADE THEIR STRATEGIC DECISION NOT TO ALLEGE

12   ANYTHING ABOUT THIS FINDING.  AND WE SEE THE TENSION IN THEIR

13   PAPERS ON PAGE 24, I BELIEVE, THEY TRY TO EMBRACE THIS FINDING,

14   EVEN THOUGH IT'S NOT IN THE COMPLAINT, TO SUPPORT THEIR

15   SCIENTER ALLEGATIONS.  AND THEN FIVE PAGES LATER, THEY ARGUE,

16   YOU CAN'T TAKE IT FOR THE TRUTH OF THE MATTER ASSERTED, WHICH I

17   ACTUALLY THINK IS THE PROPER STANDARD UNDER JUDICIAL NOTICE AND

18   UNDER THE NINTH CIRCUIT'S DECISION IN KHOJA.

19       IT'S THERE TO SHOW THAT THE JUDICIAL NOTICE OF THESE

20   DOCUMENTS IS THAT THESE THINGS WERE DISCLOSED AT A CERTAIN

21   TIME.  THE JUDICIAL NOTICE STANDARD IN KHOJA IS THAT IF

22   SOMETHING IS BEYOND REASONABLE DISPUTE, THE COURT CAN'T TAKE

23   JUDICIAL NOTICE OF IT.

24       AND I KNOW MS. WHITE MAY WANT TO PIPE IN, BUT THERE'S AT

25   LEAST ONE DEFENDANT WHO OBVIOUSLY DISPUTES THIS FINDING, AND

1    THAT'S HER CLIENT, MR. PRAKASH.

2        SO THE PLAINTIFFS, AS I SAID, MADE THE CHOICE NOT TO

3    INCLUDE IT.  IF THEY WANT TO INCLUDE THIS THEORY IN THEIR

4    COMPLAINT, THEY NEED TO PLEAD IT, BUT I THINK IT'S GOING TO

5    GIVE THEM SOME TENSION ABOUT WHAT TO DO WITH A LOT OF THESE

6    DEFENDANTS, AS YOU POINTED OUT.

7        BUT I DON'T THINK THEY CAN USE JUDICIAL NOTICE TO TRY TO

8    BOOTSTRAP THEIR COMPLAINT, BECAUSE THAT WOULD LEAVE US NOT

9    KNOWING WHICH THEORY ARE THEY CHOOSING AS WE WOULD GO THROUGH

10   DISCOVERY.  THE COMPLAINT HAS GOT TO BE AMENDED SO WE KNOW

11   WHICH ONE ARE THEY CHOOSING.  DID MR. PRAKASH INTENTIONALLY

12   WITHHOLD INFORMATION OR DID HE NOT?  THEY'VE GOT TO CHOOSE.

13       AND I GUESS THE LAST POINT I WANTED TO ADDRESS,

14   YOUR HONOR, UNLESS YOU HAVE ANY MORE QUESTIONS FROM ME, WAS THE

15   MARCH 2022 POINT.

16       I DO THINK -- I WANT TO MAKE ONE THING CLEAR, MAYBE YOU

17   WERE GETTING TO THIS, BUT I JUST WANT TO BE CLEAR, THEIR

18   SCIENTER ALLEGATIONS, YOU POINT OUT, ARE WOEFULLY DEFICIENT,

19   BUT THEY ARE ALSO ESPECIALLY WOEFULLY DEFICIENT FOR THIS ONE.

20       I HAVE NO IDEA FROM READING THE COMPLAINT, WHO THEY THINK

21   COMMITTED THIS ALLEGED FRAUD WITH RESPECT TO THE MARCH 2022.

22   THEY'VE GOT A LOT OF DEFENDANTS IN HERE, AND I DON'T KNOW WHICH

23   ONES THEY THINK DID OR DID NOT, BECAUSE THEY DON'T SAY WHO KNEW

24   WHAT, WHEN, WHERE OR HOW, IN MARCH, ABOUT THE CASH DISCLOSURE

25   AND THE OTHER DISCLOSURES IN THE MARCH STATEMENT.

1          THE OTHER THING, THERE ARE TWO DISCLOSURES HERE, THERE'S

2     MARCH 2022, AND THIS IS ISSUED IN THE MIDDLE OF THE QUARTER,

3     AND VIEW COMES OUT AND REPORTS ITS FISCAL YEAR-END, 2021

4     YEAR-END CASH BALANCE OF $281 MILLION.  AND THEY DISCLOSE THAT

5     THEY DON'T HAVE ANY SUBSTANTIAL DEBT, BOTH FACTUALLY TRUE, AND

6     THEN THEY HAVE A SENTENCE THAT SAYS THEY EXPECT TO IMPROVE CASH

7     BURN FORWARD LOOKING THROUGH 2022.  SO THAT'S THEIR MARCH

8     DISCLOSURE THAT THE PLAINTIFFS APPEAR TO BE ATTACKING.

9          GO FORWARD TWO MONTHS, MAY 10TH, 2022, THEY MAKE ANOTHER

10    $8K, AND THIS TIME -- THE QUARTER HAS ENDED BY THIS TIME, SO

11    THEY CAN ACTUALLY REPORT THE QUARTER END CASH BALANCE OF

12    $201 MILLION, SO THEY REPORT THAT.

13         THEN THEY ALSO REPORT THAT WHEN THEY FILED -- THEY HAVEN'T

14    FILED THEIR K YET, BECAUSE THEY ARE STILL DOING THEIR

15    STATEMENT, WHEN THEY FILE THEIR K IN JUNE AND FILE THIS

16    RESTATEMENT, THEY ANTICIPATE THAT THEY MIGHT ISSUE A GOING

17    CONCERN DISCLOSURE.  AND THEIR GOING CONCERN DISCLOSURE, AS YOU

18    KNOW, IT'S A DISCLOSURE THAT FOR THE NEXT 12 MONTHS, IT'S

19    LOOKING 12 MONTHS FORWARD FROM JUNE, THAT THEY MIGHT NOT BE

20    ABLE TO CONTINUE AS A GOING CONCERN.  SO THAT'S CLEARLY A

21    FORWARD LOOKING PROGNOSIS.

22         AS I UNDERSTAND THEIR THEORY, BUT AGAIN IT'S DIFFICULT TO

23    UNDERSTAND IT WITH THEIR COMPLAINT.  WHAT THEY ARE SAYING IS ON

24    MARCH 7TH, SOME UNNAMED DEFENDANTS KNEW WHAT WAS DISCLOSED ON

25    MAY 10TH.  THEY KNEW ON MARCH 7TH WHAT WAS DISCLOSED ON

1    MAY 10TH.  AND THIS IS A FUNDAMENTAL FLAW.

2         ONE IS, AS I MENTIONED, THE SCIENTER PROBLEM.  THEY DON'T

3    KNOW WHO THEY ARE TALKING ABOUT, WHAT, WHEN, HOW OR WHY THEY

4    KNEW ANYTHING.  BUT THERE'S ANOTHER ONE, SAFE HARBOR, CLEARLY

5    APPLIES TO THESE FORWARD LOOKING STATEMENTS, AND I DON'T THINK

6    PLAINTIFF'S OPPOSITION ADDRESSES THAT ENOUGH.

7         THE COURT:  SO MR. BERRY, THAT'S WHAT I WAS GETTING

8    AT.  YES, THE SAFE HARBOR WOULD APPLY, UNLESS IT CAN BE

9    FACTUALLY PLED THAT AT THE TIME THIS PREDICTION WAS MADE, THE

10   CIRCUMSTANCES THAT WOULD MAKE IT IMPOSSIBLE WERE ALREADY KNOWN

11   TO THE SPEAKER.  SO THAT'S THE WAY TO PLEAD AROUND IT.

12        I DON'T KNOW THAT THAT CAN BE PLED OR NOT, BUT THE CASH

13   BURN IS SOMETHING THAT MAYBE CAN BE ALLEGED TO HAVE ALREADY

14   BEEN KNOWN ON A WEEKLY BASIS THROUGH, ON MARCH 7TH WHEN THE

15   DISCLOSURE WAS MADE, WAS ALMOST OVER, EVEN THOUGH THE

16   ACCOUNTING OF IT IS NOT REQUIRED FOR ANOTHER FEW MONTHS.

17        MR. BERRY:  WELL, ONE THING IS FOR CERTAIN, THE

18   COMPLAINT DOES NOT DO ANY OF THAT.

19        THE COURT:  IT DOES NOT DO ANY OF THAT, THAT'S RIGHT.

20   AS I SAID, I WASN'T EVEN SURE WHAT TO MAKE OF THAT.

21        MR. BERRY:  OKAY.

22        AND I THINK WHAT YOU ARE GETTING AT, JUST TO ADDRESS,

23   THERE'S A TIMING PROBLEM, AND I POINT THIS OUT IN THE PAPERS,

24   BUT I DO WANT TO UNDERSCORE.  THEY DO SOME MATH HERE, THEY

25   CALCULATE THE CASH BURN, THAT'S NOT IN THE COMPLAINT.

```
 1                    THE COURT:  RIGHT.
 2                    MR. BERRY:  BUT A COUPLE POINTS ON THAT.
 3               ONE, THIS CASH BURN MATH THAT THEY DO IN THEIR OPPOSITION
 4          PAPERS IS BASED ON ONE OF THE CASH -- THEY FIGURED OUT THE
 5          QUARTERLY CASH BURN BASED ON THE Q1 QUARTER-END CASH BALANCE.
 6               AND SO IF THEY ARE SAYING THAT THAT SHOWS THAT THERE WAS
 7          SOME FRAUD HERE, THERE'S NO WAY TO DO THAT CASH BURN MATH THAT
 8          THEY DO ON MARCH 7TH.
 9                    THE COURT:  OKAY.
10                    MR. BERRY:  AND THAT'S A PROBLEM.
11                    THE COURT:  COULD BE.
12                    MR. BERRY:  SO I THINK THAT'S ALL I WANT TO ADDRESS,
13          YOUR HONOR.
14                    THE COURT:  OKAY.
15                    MR. BERRY:  BUT I AM HAPPY TO ANSWER ANY QUESTIONS
16          YOU HAVE.
17                    THE COURT:  THAT'S BEEN VERY HELPFUL.
18               WHO DID YOU FEEL WAS NEXT UP FOR ME?
19                    MR. BERRY:  I THINK IT'S MR. STEINFELD, BUT I THINK
20          THAT'S HOW WE DO IT.
21                    MR. STEINFELD:  YOUR HONOR, I'M HAPPY TO GO NEXT.
22               GOOD MORNING, YOUR HONOR.  JEFF STEINFELD OF
23          WINSTON STRAWN FOR THE CF DEFENDANTS.
24                    THE COURT:  OKAY.
25               SO LET ME TELL YOU THAT I FIND THIS INCREDIBLY
```

1    COMPLICATED, BECAUSE I HAVE NO WAY OF GETTING A HANDLE ON WHO

2    THESE VARIOUS PARTIES ARE, BECAUSE THEIR NAMES ARE MEANINGLESS

3    TO ME, OTHER THAN CANTOR FITZGERALD.  I MEAN, THERE ARE SOME

4    THAT ARE KNOWN, BUT A LOT OF THEM ARE MADE UP NAMES FROM THESE

5    ENTITIES.  SO HELP ME OUT.

6            MR. STEINFELD:  YEAH, OF COURSE.  AND THAT'S A GREAT

7    POINT, AND THAT'S ACTUALLY WHAT I WANTED TO START WITH.

8        WHAT WE ARE CALLING THE CF II DEFENDANTS, OR THE CANTOR

9    DEFENDANTS, THESE ARE INDIVIDUALS AND ENTITIES THAT WERE IN

10   SOME WAY ASSOCIATED WITH THE SPAC CF II.  THE SPAC THAT ENGAGED

11   IN AN ARM'S LENGTH MERGER PROCESS EVENTUALLY MERGED WITH THE

12   LEGACY VIEW, INC. PRIVATE OPERATING COMPANY.

13       IMPORTANTLY, THE CF DEFENDANTS, MY CLIENTS DO NOT INCLUDE

14   THE SPAC.  THEY DO NOT INCLUDE CF II OR -- WHO THEY ARE, ARE

15   THE OFFICERS AND DIRECTORS OF SPAC WHEN IT WAS A SPAC, AND NONE

16   OF THOSE OFFICERS AND DIRECTORS JOINED THE POST-MERGER, THEY

17   ARE STRICTLY ON THE PRE-MERGER SPAC SIDE.  IN OUR BRIEFING, WE

18   CALL THEM THE CF INDIVIDUALS, AND THEY ARE OUTSIDE DIRECTORS OF

19   CF II AND THEN THE INSIDE DIRECTORS AS WELL.

20       THE CF ENTITIES, AS WE TERMED IN OUR BRIEFING, AGAIN DON'T

21   INCLUDE CF II, CONFUSINGLY, I ADMIT.  WHO THEY ARE, ARE CF AND

22   CO, THAT IS THE FINANCIAL ADVISOR TO CF II IN THE MERGER.  AND

23   THERE IS THE ENTITY THAT WE HAVE CALLED SPONSOR, WHICH IS

24   TECHNICALLY -- THEY ARE CF FINANCE HOLDINGS II, LLC, WHICH WE

25   REFER TO AS SPONSOR.  SPONSOR WAS A MINORITY SHAREHOLDER IN CF

1    II, THE SPAC, HELD ABOUT 21 PERCENT OF THE PRE-MERGER SHARES OF

2    THE SPAC.  AND THE OTHER TWO ENTITIES ARE CANTOR FITZGERALD LLP

3    AND CF GM, WHICH IS CF GROUP MANAGEMENT.  AND THOSE ARE

4    ENTITIES THAT ARE AFFILIATED WITH SPONSOR.

5        AND SO THOSE ARE THE DEFENDANTS THAT I REPRESENT, AND

6    SIMPLY PUT, THEY ARE INDIVIDUALS THAT SAT ON THE CF II BOARD,

7    AND THEN THERE ARE ENTITIES THAT ARE ASSOCIATED WITH CF II, BUT

8    THEY HAD NO PRIOR RELATIONSHIP WITH VIEW, AND THE CF

9    INDIVIDUALS DID NOT CONTINUE IN ANY WAY WITH THE COMPANY

10   POST-MERGER, IF THAT HELPS ANSWER YOUR HONOR'S QUESTION.

11            THE COURT:  THANK YOU.

12            MR. STEINFELD:  AND SO I DON'T HAVE MUCH TO SAY,

13   GIVEN YOUR HONOR'S TENTATIVE AT THE BEGINNING OF THIS HEARING.

14   I'M HAPPY TO ANSWER ANY SPECIFIC QUESTIONS THAT YOUR HONOR HAS.

15   I WOULD LIKE TO RESERVE MOST OF MY TIME TO RESPOND TO ANYTHING

16   THAT PLAINTIFF HAS TO SAY.  BUT I DO HAVE A COUPLE ADDITIONAL

17   POINTS THAT I HAVE JUST TO EMPHASIZE.

18        AND AS MR. BERRY WAS SAYING ON SECTION 11 AND HOW THE

19   STANDING ISSUE ON SECTION 11 IS UNCURABLE, WE JOIN COMPLETELY

20   IN THAT ARGUMENT.  AND WE BELIEVE THE SAME IS TRUE, IN FACT

21   EVEN STRONGER, AS TO SECTION 12.

22            THE COURT:  YES.

23            MR. STEINFELD:  AS YOUR HONOR NOTED, SECTION 12 DOES

24   NOT ALLOW FOR TRACING.  SECTION 12 REQUIRES THAT THE PLAINTIFF

25   PURCHASE SHARES IN THE OFFERING AT ISSUE.

1          AND HERE -- AND IF I COULD, I CAN DISPLAY MY SCREEN, BUT

2     IT'S SCHEDULE A, THE PSLRA CERTIFICATION, SHOWS AS A MATTER OF

3     FACT, THAT THE PLAINTIFF DID NOT PURCHASE IN THIS OFFERING.

4     PLAINTIFFS'S COMPLAINT IN PARAGRAPH 76, ALLEGES THAT THE VIEW

5     SHARES STARTED TRADING ON MARCH 9TH, WHICH IS THE DAY AFTER THE

6     MERGER CLOSED, WHICH WAS MARCH 8TH, AND PLAINTIFF'S PSLRA

7     CERTIFICATION SHOWS THEIR LAST PURCHASE BEFORE THEN WAS ON

8     FEBRUARY 5TH, AND THEN THEY ACTUALLY SOLD SHARES ON

9     FEBRUARY 25TH.  AND ON MARCH 9TH, THE DAY AFTER THE MERGER

10    CLOSED, THEY SELL ALL THE REMAINING SHARES, 80,000 SHARES, AND

11    SO THEY DID NOT, AS A MATTER OF FACT, PURCHASE IN THE OFFERING.

12         AND WE BELIEVE THAT THOSE FACTS, WHICH ARE IN THE PSLRA

13    CERTIFICATION, CAN NOT BE AMENDED TO GET PAST THE STANDING

14    ISSUE.  AND THE DISTRICT COURT IN IN RE CENTURY ALUMINUM, HELD

15    SIMILARLY THAT THEY DISMISSED SECTION 12 CLAIMS BECAUSE IT

16    FAILS, "AS A FACTUAL MATTER, THAT PLAINTIFFS DID NOT PURCHASE

17    DIRECTLY IN THE OFFERING."  AND WE BELIEVE THAT THE SAME IS

18    TRUE HERE.

19         AS TO THE OTHER ARGUMENTS, AGAIN, I DON'T HAVE A LOT TO

20    SAY, GIVEN YOUR HONOR'S TENTATIVE.  WE DID PUT FORTH SOME

21    ADDITIONAL ARGUMENTS THAT YOUR HONOR DID NOT DISCUSS, SUCH AS

22    SECTION 14, WE AGREE WITH WHAT YOUR HONOR SAID THAT THERE'S NO

23    FACTUAL PLEADING HERE AND THAT EACH OF THE CF DEFENDANTS,

24    INDIVIDUALS ENTITIES, NEEDS TO BE DESCRIBED, WHAT DUTY THEY

25    HAVE, WHAT DUTY WAS BREACHED.  BUT AS TO THE CF INDIVIDUALS, WE

1    BELIEVE THAT A DISMISSAL WITH PREJUDICE IS ALSO WARRANTED

2    BECAUSE THEY ARE EXCULPATED UNDER CF II'S 102(B)(7) EXCULPATION

3    PROVISION.

4        HERE, PLAINTIFF'S COMPLAINT IN SECTION 14 EXPRESSLY

5    DISCLAIMS ANY FRAUD, ANY RECKLESSNESS OR ANY INTENTIONAL

6    WRONGDOING, AND THE 102(B)(7) PROVISION PREVENTS THESE

7    DIRECTORS, CF INDIVIDUALS, FROM BEING LIABLE FOR NEGLIGENCE

8    CLAIMS.  AND THIS DISTRICT, AND EVERY OTHER CASE THAT I'M AWARE

9    OF, HAS HELD THAT 102(B)(7) PROVISIONS APPLY TO SECTION 14(A),

10   AND SECTION 14(A) CLAIMS.

11       AND FOR THAT REASON, WE BELIEVE THAT THE CF INDIVIDUALS

12   SHOULD ALSO BE DISMISSED WITH PREJUDICE AS TO SECTION 14.

13       AND WITH THAT, I'M HAPPY TO ANSWER ANY QUESTIONS, AND I

14   WILL RESERVE THE REST OF MY TIME FOR POTENTIAL REBUTTAL.

15           THE COURT:  ALL RIGHT.  GOOD.  THANK YOU.

16       ALL RIGHT.  AND WHO WOULD LIKE TO MAKE THE NEXT ARGUMENT?

17   WHO WAS LINED UP NEXT?  I'M GOING TO LET YOU ALL CHOOSE WHO

18   SHOULD GO NEXT.  I'VE STILL GOT PRICEWATERHOUSE, AND

19   MR. PRAKASH, AND MR. LEPPERT AND HUGHES.

20           MR. TANG:  YOUR HONOR, IT'S JOHN TANG FROM JONES DAY.

21   I WILL GO NEXT ON BEHALF OF DEFENDANTS LEPPERT AND HUGHES.

22       AND I WILL BE VERY BRIEF.  I SIMPLY WANTED TO FIRST THANK

23   YOU FOR THE OPPORTUNITY TO ADDRESS THE COURT ON BEHALF OF OUR

24   TWO CLIENTS.  CERTAINLY, IN LIGHT OF YOUR HONOR'S TENTATIVE,

25   WITH WHICH WE WHOLEHEARTEDLY AGREE, AND THE OBSERVATION THAT

1     YOU DON'T SEE WHY THEY ARE IN THIS CASE AND THERE ARE NO

2     ALLEGATIONS OF WRONGDOING AGAINST THEM, I WILL NOT GILD THE

3     LILY, I WILL SAY THAT -- DIRECT YOUR HONOR TO THE VARIOUS

4     OBSERVATIONS IN OUR PAPERS, AND I'M HAPPY TO ANSWER ANY OTHER

5     QUESTIONS YOUR HONOR MAY HAVE, BUT OTHERWISE I WILL RESERVE OUR

6     TIME TO RESPOND TO ANY ARGUMENT THAT THE PLAINTIFF MAY PUT

7     FORWARD AS TO DEFENDANT'S LEPPERT AND HUGHES.

8              THE COURT:  THANK YOU.

9         AND IT CERTAINLY MAKES SENSE FOR YOUR CLIENTS TO TAKE A

10    BACK BENCH IN THIS, HOPING TO GET OUT THE BACK DOOR BEFORE

11    ANYBODY ELSE, RIGHT?

12             MR. TANG:  YES.  THANK YOU, YOUR HONOR.

13             THE COURT:  ALL RIGHT.  WELL WE WILL SEE, BECAUSE AS

14    I SAID, I'M GOING TO GIVE LEAVE TO AMEND, BUT FOR RIGHT NOW,

15    I'M NOT FEELING THE CLAIMS AGAINST THEM.

16        SO LET ME THEN MOVE ON TO MS. WHITE, MR. PURPURA, WHICH OF

17    YOU WOULD LIKE TO GO NEXT?

18             MS. ERICKSON WHITE:  YOUR HONOR, THIS IS ANNA

19    ERICKSON WHITE, AND I WILL GO NEXT.  AND I WILL ALSO BE BRIEF,

20    GIVEN THE COMMENTS YOU MADE, AND ALSO GIVEN MR. BERRY'S

21    ARGUMENT BEFORE.

22        I THINK THE SPECIFIC ISSUE FOR MR. PRAKASH, REALLY, IS

23    RIGHT NOW, THE 10-K, AND WHAT YOU DO WITH THE 10-K.  AND AS

24    MR. BERRY EXPLAINED, UNDER KHOJA, WHICH I THINK IS CONTROLLING

25    HERE, THE COURT CANNOT CONSIDER IT FOR THE TRUTH OF THE MATTER

1    ASSERTED.  AND THAT IS BECAUSE THE FACTS THAT IT'S TRYING TO BE

2    USED FOR ARE IN DISPUTE, THERE'S NO QUESTION ABOUT THAT.  AND

3    UNDER KHOJA, VERY CLEARLY, THE COURT SAYS THAT IN THAT

4    SITUATION, THE COURT CANNOT CONSIDER IT FOR THE TRUTH OF THE

5    MATTER.

6         AND WITH THAT, UNLESS YOU HAVE ANY OTHER QUESTIONS FOR ME,

7    YOUR HONOR, I WILL JUST LEAVE IT.

8         THE COURT:  OKAY.

9         CERTAINLY THAT KIND OF DISCLOSURE OFTEN CAUSES THE

10   PLAINTIFF TO THEN ALLEGE FACTS, IF THEY HAVE THEM UNDER

11   RULE 11, THAT WOULD BE CONSISTENT WITH THE REPORTING IN THE

12   10-K, BUT I DON'T SEE IT HERE YET.  AND MAYBE AS MR. BERRY

13   POINTS OUT, THERE ARE SOME TENSIONS IN THE THEORIES OF

14   LIABILITY THAT ARE COMPLICATED HERE, CERTAINLY.

15        MS. WHITE, THANK YOU.

16        ALL RIGHT.  MR. PURPURA, WE ARE LEAVING THIS TO YOU, AND

17   OF COURSE YOUR CLIENT, PRICEWATERHOUSE, STANDS IN A QUITE A

18   DIFFERENT POSITION THAN THE OTHERS HERE.

19        MR. PURPURA:  IT DOES, YOUR HONOR.

20        AND THE FIRST POINT THAT I WILL MAKE, IS THAT WE AGREE

21   WITH YOUR TENTATIVE RULING.  WE THINK THAT IT'S ENTIRELY

22   APPROPRIATE THAT THE OMNICARE STANDARD APPLY.  IT'S CLEAR FROM

23   THE WEIGHT OF THE AUTHORITY, THAT OMNICARE -- THAT OUR REPORTS

24   ARE STATEMENTS OF OPINION NOT STATEMENTS OF FACT.  I WON'T

25   BELABOR THE POINT, YOUR HONOR HAS INDICATED HER RULING ON THAT

1    DIRECTION.  I, OF COURSE, FOUND THAT THE <u>BLOOM ENERGY</u> CASE BY

2    JUDGE GILLIAM WAS ALMOST, I WON'T USE HYPERBOLE AND SAY

3    IDENTICAL, BUT IT WAS GREATLY ANALOGOUS.

4         THE COURT:  YES.

5         MR. PURPURA:  AND ALSO USED THE SAME LANGUAGE OF THE

6    OPINION THAT IS CITED HERE.  AND JUDGE GILLIAM THOUGHTFULLY

7    WENT THROUGH AND APPLIED THE <u>OMNICARE</u> FRAMEWORK AND DISMISSED.

8         LIKE THE OTHERS, BECAUSE OF THAT, FROM OUR PERSPECTIVE, WE

9    THINK THIS IS ONE WHERE IT SHOULD BE DISMISSED WITH PREJUDICE,

10   BECAUSE IF <u>OMNICARE</u> APPLIES, NUMBER ONE, THEN AS YOUR HONOR IS

11   AWARE, THERE'S ONLY THREE WAYS IN WHICH THIS CAN SURVIVE.  FOR

12   ANY OF THE CLAIMS AGAINST PWC, NONE OF THAT EXISTS, AS FAR AS

13   OBJECTIVE AND SUBJECTIVE FALSITY.

14        AS OTHERS HAVE MENTIONED, THE AMENDED COMPLAINT EXPRESSLY

15   EXCLUDES, AND DESPITE THE ALLEGATION, THAT CAN BE CONSTRUED AS

16   ALLEGING OR SOUNDING IN FRAUD OR INTENTIONAL OR RECKLESSNESS

17   MISCONDUCT.  AND THAT'S THE AMENDED COMPLAINT AT PARAGRAPHS 131

18   AND 179.  AND AS THE SUPREME COURT ITSELF SAID IN <u>OMNICARE</u>,

19   THAT DISCLAIMER IS SUFFICIENT TO DEFEAT SUBJECTIVE FALSITY.

20        THE IMBEDDED FACTS THAT ARE ALLEGED HERE ARE SIMPLY THAT

21   THE AUDITOR OPINIONS ARE ASSERTIONS OF GAAS AND GAAP

22   COMPLIANCE.  JUDGE GILLIAM ANALYZED THE EXACT SAME LANGUAGE,

23   AND THE QUOTE ON THAT WAS VERY STRAIGHTFORWARD.  THE COURT

24   REJECTS PLAINTIFF'S ATTEMPT TO CAST ANY ALLEGED ERRORS IN THE

25   FINANCIAL STATEMENTS AS IMBEDDED STATEMENTS OF FACTS.  AND WE

1    HAVE CITED MANY OTHER CASES THERE.

2         AND THEN THE FINAL WAY IS OMISSION, AN OMITTED FACT.  AND

3    WHAT'S INTERESTING IS THE COMPLAINT, WHICH OF COURSE THE

4    AMENDED COMPLAINT WHICH IS THE OPERATIVE AND CONTROLLING

5    DOCUMENT HERE, CONTAINS NO ALLEGATION OF AN AMENDED FACT.

6         IN THEIR BRIEFING, WHICH IS INAPPLICABLE HERE,

7    PLAINTIFFS -- THEY SAID ON PAGE 19 THAT PWC ALSO AMENDED

8    MATERIAL FACTS CONCERNING THE TRUE MATTER OF THE WARRANTY

9    ACCRUAL.

10        THE SUPREME COURT IN OMNICARE HAS MADE CLEAR THAT THE

11   PLAINTIFF CANNOT PLEAD AN OMISSION BY ALLEGING ONLY THAT AN

12   OPINION WAS WRONG.

13        SO THE OMNICARE FRAMEWORK APPLYING IS CORRECT.  APPLYING

14   THE OMNICARE FRAMEWORK, THERE'S NO WAY THAT PWC CAN BE LIABLE

15   HERE.

16        SO THAT THEN TAKES -- I WILL SPEND A BRIEF MOMENT, BECAUSE

17   OTHERS HAVE TALKED ABOUT THE SCIENTER PORTION IN 10(B)(5).

18   AGAIN, NOT NECESSARY.  AGAIN, THE ALLEGATIONS IN THE COMPLAINT

19   ARE WOEFULLY SHORT OF A STRONG INFERENCE OF SCIENTER BY PWC.

20   BUT I DO WANT TO TALK A MOMENT, BECAUSE I RESPECTFULLY DISAGREE

21   WITH MY COLLEAGUES, MR. BERRY AND MS. WHITE, ON THE PROPER USE

22   OF THE 10-K.

23        FIRST OF ALL, I THINK YOUR HONOR INDICATED, BUT IT CLEARLY

24   IS INCORPORATED BY REFERENCE HERE, AND WHAT'S INTERESTING ABOUT

25   KHOJA IS KHOJA ADDRESSED THE PROBLEM OF THE DEFENDANT'S LARDING

 1    THE FILE WITH PUBLIC DOCUMENTS IN ORDER TO ADVANCE THEIR COSTS.

 2    THIS DOCUMENT THAT IS REFERENCED AND UTILIZED BY THE

 3    PLAINTIFFS, AND THE AMENDED COMPLAINT REPEATEDLY REFERENCES THE

 4    2021 10-K AT PARAGRAPHS 15, 58, 60 TO 61, AND 128 TO 129.  AND

 5    WHAT'S ALSO -- I WANT TO POINT OUT FOR YOUR HONOR, I'M GOING TO

 6    READ PAGE 1 OF THAT 10-K, WHICH IS ACTUALLY EXHIBIT 12 TO

 7    VIEW'S BRIEFING.  THE VERY BEGINNING OF THE DOCUMENT, AND IT'S

 8    HIGHLIGHTED BY VIEW, THE SECOND PARAGRAPH SAYS, ROMAN F1,

 9    "BASED ON THE INDEPENDENT INVESTIGATION, THE AUDIT COMMITTEE

10    CONCLUDED THAT THE COMPANY'S PREVIOUSLY REPORTED LIABILITIES

11    ASSOCIATED WITH WARRANTY RELATED OBLIGATIONS, AND THE COST OF

12    REVENUE ASSOCIATED WITH THE RECOGNITION OF THOSE LIABILITIES

13    WERE MATERIALLY MISSTATED."

14         ROMAN F2, "THE COMPANY'S FORMER CHIEF FINANCIAL OFFICER

15    AND CERTAIN FORMER ACCOUNTING STAFF NEGLIGENTLY FAILED TO

16    PROPERLY REPORT THE LIABILITIES FOR WARRANTY RELATED

17    OBLIGATIONS AND COST OF REVENUE."

18         AND ROMAN F3, "THE COMPANY'S FORMER CHIEF FINANCIAL

19    OFFICER AND CERTAIN FORMER ACCOUNTING STAFF INTENTIONALLY

20    FAILED TO DISCLOSE CERTAIN INFORMATION TO THE BOARD OF

21    DIRECTORS IN THE COMPANY'S INDEPENDENT REGISTERED PUBLIC

22    ACCOUNTING FIRM, PRICEWATERHOUSECOOPERS LLC (PWC) REGARDING THE

23    APPLICABLE COSTS INCURRED AND EXPECTED TO BE INCURRED IN

24    CONNECTION WITH THE WARRANTY RELATED OBLIGATIONS."

25         AND AGAIN, THERE WAS A COMMENT EARLIER ABOUT THROWING

1    UNDER THE BUS, AND OF COURSE AS YOUR HONOR RECOGNIZES, MY FIRM

2    AND I REPRESENT PRICEWATERHOUSECOOPERS.  WE HAVE TO ADVANCE

3    ARGUMENTS ON THEIR BEHALF.  I ALSO POINT OUT THAT THAT

4    STATEMENT THAT I JUST READ TO YOU WAS NOT FROM

5    PRICEWATERHOUSECOOPERS, THAT WAS FROM VIEW, IN THEIR FILE.

6    IT'S A PUBLIC DOCUMENT THEY FILED.

7         I ALSO READ YOU THAT DOCUMENT, BECAUSE I WANT TO POINT OUT

8    IN THE AMENDED COMPLAINT, PARAGRAPHS 227 AND 240.  AND I WILL

9    LOOK AT -- YOU KNOW, IT'S BASICALLY THE SAME CONCEPT, BUT I

10   WILL LOOK AT 240.  "AS SET FORTH IN CONNECTION WITH THE

11   ISSUANCE OF THE RESTATEMENTS, THE COMPANY WAS CAUSED TO STATE

12   THAT ONE, ITS PREVIOUSLY REPORTED LIABILITIES ASSOCIATED WITH

13   WARRANTY RELATED OBLIGATIONS AND THE COST OF REVENUE ASSOCIATED

14   WAS A RECOGNITION OF THOSE LIABILITIES, WERE MATERIALLY

15   MISSTATED.

16        TWO, THERE WAS A FAILURE TO PROPERLY REPORT THE

17   LIABILITIES FOR WARRANTY RELATED OBLIGATIONS AND COST OF

18   REVENUE."  AND THEN THE SENTENCE CONTINUES.

19        WHAT'S NOTICEABLE ABOUT THAT IS THE FIRST TWO PORTIONS OF

20   THAT PARAGRAPH CORRESPOND IDENTICALLY TO THE 10-K PARAGRAPH

21   THAT I JUST READ YOU.  THEY OMITTED THE THIRD ROMAN F.

22        THE COURT:  UH-HUH.

23        MR. PURPURA:  SO EXACTLY AS WE TALKED ABOUT OF TRYING

24   TO PLAY IT BOTH WAYS.  IT'S IMPROPER.  THE ENTIRE DOCUMENT IS

25   INCORPORATED BY REFERENCE, SAME THING IN PARAGRAPH 227, YOUR

1    HONOR.

2          AND THEN, YOU KNOW, ONE THING THAT'S ALSO INTERESTING, IS

3    I THINK EVERYONE IS SLIGHTLY MISREADING KHOJA ON THIS.  THIS IS

4    NOT A HEARSAY ISSUE, OKAY.  WHAT KHOJA IS SAYING, AND

5    JUDGE DAVILA IN IN RE EVENTBRITE, WHICH IS 2020 WESTLAW

6    2042078, IN 2020, WROTE AN OPINION INTERPRETING KHOJA.  AND HE

7    SAYS -- FIRST HE SAYS, IF THE PLAINTIFF REFERS EXTENSIVELY TO

8    THE DOCUMENT, WHERE THE DOCUMENT FORMS THE BASIS OF COMPLAINTS

9    OF PLAINTIFF'S CLAIM, THAT'S U.S. V. RICHEY, IT MAY BE

10   INCORPORATED BY REFERENCE.

11         THEN HE SAYS, ONCE A DOCUMENT IS DEEMED INCORPORATED BY

12   REFERENCE, THE ENTIRE DOCUMENT IS ASSUMED TO BE TRUE FOR

13   PURPOSES OF A MOTION TO DISMISS, AND BOTH PARTIES AND THE COURT

14   ARE FREE TO REFER TO ANY OF ITS CONTENTS.  AND THAT'S CITING IN

15   RE NVIDIA CORP SECURITIES LITIGATION, THAT'S A NINTH CIRCUIT

16   CASE FROM 2014.

17         WE ARE NOT SAYING IT'S A HEARSAY TRUTH OF THE MATTER, WE

18   ARE SAYING THE STATEMENTS ARE TO BE TREATED, AT THE MOTION TO

19   DISMISS STAGE, ASSUMED TO BE TRUE.

20         AND IT'S ASSUMED TO BE TRUE.  AND AGAIN, THE DISPUTE HERE

21   IS NOT BETWEEN MR. PRAKASH AND PWC, THE DISPUTE IS BETWEEN THE

22   PLAINTIFFS AND PWC.  THE PLAINTIFFS HAVE INCORPORATED THIS

23   DOCUMENT, AND TO THE EXTENT THEY GET THE BENEFIT OF HAVING

24   THEIR OTHER ALLEGATIONS DEEMED TO BE TRUE FOR PURPOSES OF THE

25   MOTION TO DISMISS, THE SAME APPLIES FOR A DOCUMENT INCORPORATED

1    BY REFERENCE.

2         NOW AGAIN, I DON'T THINK WE NEED TO GET THERE, BUT IF WE

3    ARE TALKING ABOUT DISMISSAL WITH PREJUDICE, WITH THAT STATEMENT

4    OUT THERE, THERE'S NO POSSIBLE WAY WE WILL EVER BE ABLE TO

5    SATISFY THE SCIENTER REQUIREMENT.  AND THAT'S EVEN STEP TWO,

6    BECAUSE ONCE THE OMNICARE FRAMEWORK APPLIES, FOR THE REASONS WE

7    SAID, THEY CAN'T GET PAST THE OMNICARE FRAMEWORK, ELIMINATING

8    ALL THE COUNTS AGAINST PWC.

9         I WILL RESERVE THE REST OF MY TIME, YOUR HONOR, UNLESS YOU

10   HAVE QUESTIONS FOR ME, BUT THANK YOU VERY MUCH FOR THE

11   OPPORTUNITY.

12        THE COURT:  SO AS I SAID, IT'S A GOOD ARGUMENT ON THE

13   DIFFERENCE BETWEEN KHOJA, WHICH IS A JUDICIAL NOTICE ISSUE

14   ONLY, AND AN INCORPORATION BY REFERENCE.  AND OF COURSE WE

15   ASSUME THE PLEADINGS ARE TRUE, IT DOESN'T MEAN THEY CAN BE

16   PROVED, BUT IF IT'S FACTUAL PLEADING, THEN THAT'S THE BASIS ON

17   WHICH WE EVALUATE IT.

18        ALL RIGHT.  THANK YOU.

19        MS. ERICKSON WHITE:  YOUR HONOR, MAY I JUST RESPOND

20   TO THAT QUICKLY ON THE KHOJA POINT.

21        ACTUALLY, KHOJA ALSO ADDRESSES "INCORPORATED BY

22   REFERENCE."  AND I WOULD POINT THE COURT TO KHOJA AT 1003,

23   WHERE THE COURT SAYS, "WHILE IT'S GENERALLY TRUE THAT IF THE

24   DOCUMENT HAS BEEN INCORPORATED BY REFERENCE, THE CONTENTS ARE

25   CONSIDERED TRUE FOR PURPOSES OF A MOTION TO DISMISS, IT IS

1    IMPROPER TO ASSUME THE TRUTH OF AN INCORPORATED DOCUMENT, AS

2    SUCH ASSUMPTIONS ONLY SERVE TO DISPUTE FACTS STATED IN A

3    WELL-PLEADED COMPLAINT."

4         SO IT GOES TO THE SAME ISSUE IF WHAT IT'S BEING USED FOR

5    IS TO DISPUTE THE FACTS IN THE COMPLAINT, WHICH IS WHAT'S

6    HAPPENING HERE, THEN IT CAN BE USED FOR THE TRUTH OF THE MATTER

7    ASSERTED.  AND THAT'S UNDER THE INCORPORATION BY REFERENCE RULE

8    AS WELL AS JUDICIAL NOTICE.

9         THE COURT:  OKAY.  I WILL TAKE A LOOK AT THAT,

10   MS. WHITE.  THANK YOU, THAT'S HELPFUL.

11        MS. ERICKSON WHITE:  THANK YOU.

12        THE COURT:  ALL RIGHT.  LET ME TURN NOW TO THE

13   PLAINTIFFS.  IT'S A LOT.  YOU HAD A LOT TO DEAL WITH HERE, SO I

14   WILL TURN THIS OVER TO YOU.

15        MS. HERKENHOFF:  ALL RIGHT.  THANK YOU, YOUR HONOR.

16        AND AGAIN, IT'S KATHLEEN HERKENHOFF FROM KAPLAN FOX &

17   KILSHEIMER.  AND AS I NOTED, OR AS MR. URIS INTRODUCED HIMSELF

18   TODAY, HE'S FROM OUR NEW YORK OFFICE.  HE'S IN THE MIDDLE OF MY

19   SCREEN, I DON'T KNOW WHERE HE FALLS ON YOURS.

20        THE COURT:  I SEE HIM.

21        MS. HERKENHOFF:  AND WE VERY NICELY SPLIT UP THE

22   SECTIONS HERE.  I'M HANDLING 11 AND 12, HE'S HANDLING THE

23   EXCHANGE ACT, INCLUDING 10(B) CLAIMS.

24        AND WHILE I HAVE A FEW POINTS ON THE 11 AND 12 THAT I

25   WOULD LIKE TO MAKE, THE BULK OF THE ARGUMENT HAS BEEN ON THE

1    EXCHANGE ACT, AND I WANT HIM TO BE ABLE TO ADDRESS IT WHILE

2    IT'S FRESH IN HIS MIND.  SO IF THAT'S ACCEPTABLE TO YOUR HONOR,

3    I WILL YIELD TO MR. URIS.

4          THE COURT:  OKAY.  MR. URIS.  THANK YOU.  GOOD

5    MORNING.

6          MR. URIS:  THANK YOU.  GOOD MORNING.

7          AND I WOULD LIKE TO THANK YOUR HONOR FOR YOUR COMMENTS AT

8    THE BEGINNING OF THE HEARING PROVIDING YOUR THOUGHTS.  SO I

9    WILL TRY TO TAILOR MY ARGUMENTS AS BEST I CAN TO TAKE THAT INTO

10   ACCOUNT.

11         I WOULD LIKE TO STATE AT THE OUTSET, THAT PLAINTIFFS DO

12   BELIEVE THAT OUR NON-FRAUD CLAIMS ARE SUBJECT TO THE RULE 8

13   PLEADING STANDARD.  SO THAT WOULD INCLUDE OUR

14   SECTION 14(A)AND --

15         THE COURT:  THE REAL ISSUE IS -- YOU ARE RIGHT,

16   NON-FRAUD CLAIMS ARE SUBJECT TO SECTION 8, NO ONE DISPUTES

17   THAT.  THE ISSUE IS IT DOESN'T LOOK LIKE YOU HAVE ANY NON-FRAUD

18   CLAIMS.  YOU CAN'T JUST TAKE YOUR FAIRY WAND AND TAP IT AND

19   EXPECT THE SPRINKLES TO MAKE IT INTO A NEGLIGENCE CLAIM.

20         IT SEEMS TO ME AS THOUGH YOU'VE GOT ONE SET OF ALLEGATIONS

21   THAT SOUND IN FRAUD, AND YOU ARE SIMPLY TRYING TO RECAST THEM

22   AS NEGLIGENCE.

23         IF YOU HAVE SEPARATE FACTS THAT SOUND IN NEGLIGENCE, I

24   WOULD BE WITH YOU, BUT I THINK THE FINJAN CASE MAKES IT CLEAR

25   THAT IF YOU ALLEGE FRAUD, THEN YOU ARE UNDER THE FRAUD

1    REQUIREMENTS.  IF YOU ACTUALLY ALLEGE FACTS THAT SOUND IN

2    NEGLIGENCE, WE WILL GO THERE.

3        SO THAT'S WHAT YOU NEED TO ADDRESS TO ME IS, WHAT ARE YOUR

4    NEGLIGENCE CLAIMS, NOT YOUR DISCLAIMER, LET'S PUT THAT ASIDE,

5    THE PROOF IS IN THE PUDDING.

6        MR. URIS:  SO YOUR HONOR, OUR NEGLIGENCE CLAIMS ARE

7    ALL OF THE ALLEGATIONS THAT WE HAVE MADE THROUGH THE 14(A)

8    CAUSE OF ACTION, WHICH IS THE FIRST COUNT.

9        AND JUST TO BACK UP A LITTLE BIT, SO YOU ARE RIGHT, I

10    MEAN, SO DEFENDANTS' PRIMARY ARGUMENT AGAINST THE SECTION 14(A)

11    NEGLIGENCE CLAIM IS THAT FIRST, THAT PLAINTIFFS HAVE NOT PLED A

12    STRONG INFERENCE OF CULPABLE CONDUCT, WHICH DEFENDANTS SEEM TO

13    BELIEVE RISES TO SOMETHING REASSEMBLING SCIENTER.

14        AND THIS STRONG INFERENCE STANDARD IS NOT SUPPORTED BY

15    NINTH CIRCUIT LAW AND IT'S NOT SUPPORTED BY THE FACTS OF THIS

16    CASE.  THIS STRONG INFERENCE PLEADING REQUIREMENT IS CRIBBED

17    FROM THE PSLRA, WHICH EXPLICITLY APPLIES ONLY WHEN THE CLAIM AT

18    ISSUE REQUIRES "PROOF THAT THE DEFENDANT ACTED WITH A

19    PARTICULAR STATE OF MIND."

20        BUT AS WE SAW IN THE FINJAN CASE, THE NINTH CIRCUIT HAS

21    ALREADY HELD THAT NEGLIGENCE IS NOT A STATE OF MIND.

22        THE COURT:  OKAY.  I'M LOOKING AT CLAIM ONE.  SHOW ME

23    A FACTUAL ALLEGATION THAT IS ONLY ALLEGED AS NEGLIGENCE.  I

24    JUST WOULD LIKE IT SEE IT.

25        MR. URIS:  SO THE ENTIRE CLAIM HERE RELATES TO THE --

1      THE COURT:  JUST POINT TO ONE.  JUST SHOW ME ONE.

2  WHEN YOU SAY THE WHOLE CLAIM, YOU SAY NOTHING.

3      MR. URIS:  WELL, I BELIEVE DEFENDANTS LIKE TO POINT

4  OUT, I THINK IT WAS PARAGRAPH 114, WAS IT -- I DON'T HAVE THE

5  SPECIFIC PARAGRAPH THE DEFENDANTS REFER TO THAT THEY SAY IS

6  BASICALLY THE ONLY NEGLIGENCE ALLEGATION WE MAKE, BUT --

7      THE COURT:  BUT YOU WROTE THIS COMPLAINT, MR. URIS,

8  ALL I'M ASKING YOU TO DO IS HELP ME OUT HERE, BECAUSE IF YOU

9  ARE ALLEGING NEGLIGENCE, THEN YOU ARE RIGHT, THEN THE

10  NEGLIGENCE STANDARD AND THE 8(A) STANDARD WILL DEFINITELY BE

11  APPLIED.

12      I'M JUST LOOKING FOR IT, AND I APOLOGIZE IF I DIDN'T READ

13  YOUR PLEADING CAREFULLY ENOUGH, BUT HELP ME, SHOW ME WHERE YOU

14  PLEAD FACTUAL NEGLIGENCE.

15      MR. URIS:  I MEAN -- SO, I DON'T BELIEVE WE USED THE

16  TERM "NEGLIGENCE" THROUGHOUT THE COMPLAINT.

17      THE COURT:  YOU DON'T NEED TO USE -- JUST SHOW ME

18  WHERE THE FACTUAL ALLEGATION IS THAT YOU ARE DEEMING

19  NEGLIGENCE, THAT YOU DIDN'T CALL FRAUD WHEN YOU GOT TO YOUR

20  10(B) CLAIM.  THAT'S THE PROBLEM.

21      YOU CAN'T PUT A BIRTHDAY HAT ON IT AND CALL IT NEGLIGENCE

22  IN ONE CLAIM AND THEN PUT A DIFFERENT HAT ON IT AND CALL THE

23  SAME CONDUCT FRAUD.  THAT'S THE DIFFERENCE IN THE PLEADING

24  STANDARD, AS I UNDERSTAND IT, AND I JUST WANT TO GIVE YOU THE

25  OPPORTUNITY TO SHOW ME THAT YOU'VE PLED NEGLIGENCE, BECAUSE I

1      WILL DEFINITELY APPLY THE 8(A) STANDARD TO ANY FACTUAL PLEADING

2      YOU HAVE THAT IS ABOUT NEGLIGENCE.

3            THEN WE GET TO THE ISSUE OF, WHAT WAS THE DUTY?

4      ESPECIALLY FOR THE CF DEFENDANTS, AND WHAT DID THEY DO TO

5      BREACH THE DUTY?  BUT I'M NOT EVEN THERE YET.

6            AND IF YOU WOULD LIKE, I'M GOING TO GIVE YOU LEAVE TO

7      AMEND.  ON THIS PARTICULAR ISSUE, THIS IS NOT FATAL AS TO

8      WHETHER YOU CAN PLEAD FACTS THAT EQUAL NEGLIGENCE THAT ARE

9      SEPARATE FROM THE ONES THAT YOU DENOMINATED FRAUD LATER ON IN

10     THE PLEADING.

11            MR. URIS:  RIGHT.

12            WELL -- SO I WON'T BELABOR THE POINT, BUT CLEARLY THE

13     ALLEGATIONS RELATE TO THESE -- THE MISSTATED WARRANTY.  AND

14     IT'S OUR ALLEGATION THAT THESE DEFENDANTS WERE ALL ON NOTICE OF

15     THIS QUALITY ISSUE DATING BACK TO 2019, OR RATHER, THEY BECAME

16     AWARE OF IT IN 2019.  THEY WERE ON NOTICE OF THAT QUALITY ISSUE

17     WHICH LEAD TO THE WARRANTY ACCRUAL.

18            SO OUR ALLEGATION IS THAT THEY WERE NEGLIGENT IN NOT BEING

19     AWARE OF WHAT THOSE WARRANTY ACCRUAL COSTS WERE.

20            THE COURT:  WHAT WERE THEY ON NOTICE OF?

21            MR. URIS:  IN DEFENDANT'S SEC FILINGS, THEY DISCLOSED

22     THAT THEY BECAME AWARE IN 2019 OF SEVERE QUALITY ISSUES RELATED

23     TO THEIR IGU'S.

24            THE COURT:  RIGHT.

25            SO LET'S JUST BE CLEAR HERE THOUGH, MR. URIS, WHAT

1    HAPPENED HERE AFTER THE INVESTIGATION, IS THAT THE COMPANY

2    SEEMED TO HAVE BEEN HYPER AWARE OF THE WARRANTY PROBLEMS AND

3    ACTUALLY OVERESTIMATED THE NUMBER OF WARRANTY CLAIMS THAT WOULD

4    BE MADE.  SO THERE'S NO NEGLIGENCE THERE, THEY MADE A WORSE

5    CASE SCENARIO THAN ACTUALLY TURNED OUT.

6         THE PROBLEM IS THAT YOU IDENTIFY -- IS THAT WHEN THE

7    OPINION LETTER CAME OUT, IT WAS BASED UPON AN INCOMPLETE

8    ASSEMBLY OF ALL OF THE COSTS ASSOCIATED WITH ADDRESSING THE

9    WARRANTY PROBLEM.

10        SO THAT'S WHERE I'M LOOKING TO SEE WHERE THE NEGLIGENCE

11   WAS.  SO WE HAVE A MISLEADING STATEMENT THAT X DOLLARS WOULD BE

12   NECESSARY FOR ADDRESSING THE WARRANTY WORK.  AND IT LOOKS LIKE

13   THE ISSUE HERE IS THE LABOR COSTS AND THE FREIGHT COSTS, AND

14   MAYBE THEY WERE CONCEALED INTENTIONALLY, OR MAYBE THEY JUST --

15   SOMEBODY DIDN'T KNOW THAT THOSE HAD TO GO INTO THE EQUATION,

16   THOSE ARE FACTUAL ISSUES.  BUT I'M JUST TRYING TO UNDERSTAND

17   WHAT THEY WERE ON NOTICE OF.

18        ARE YOU SAYING THEY WERE ON NOTICE THAT THEY HAD NEVER

19   INCORPORATED FREIGHT AND LABOR COSTS?  BECAUSE YOU DON'T ALLEGE

20   IT IN YOUR COMPLAINT.

21        MR. URIS:  NO, THAT'S NOT WHAT WE ARE SAYING.  I

22   THINK IF THAT'S WHAT WE WERE ALLEGING, THEN YOU WOULD BE RIGHT

23   THAT THAT ALLEGATION SOUNDS IN FRAUD.  BUT --

24        THE COURT:  OKAY.  SO THEY KNOW THEY'VE GOT A

25   WARRANTY PROBLEM, AND THEY HAVE AN ENTIRE AUDITOR'S OPINION

1    THAT GIVES AN OPINION ON HOW MANY WARRANTY CLAIMS ARE

2    ANTICIPATED AND WHAT IT WILL COST TO PAY THEM.  WHAT MORE IS

3    THERE?

4        THERE'S A HUGE ERROR, AND IT MAY BE CAUSED BY FRAUD, IT

5    MAY BE CAUSED BY NEGLIGENCE, IT MAY BE A SIMPLE MISTAKE AND NOT

6    BE ACTIONABLE, I'M NOT THERE YET.  I JUST DON'T KNOW WHAT THEY

7    WERE ON NOTICE OF THAT THEY DIDN'T ADDRESS, BECAUSE YOU ARE AT

8    A PRETTY HIGH LEVEL ON NOTICE.  SO I'M GOING TO -- THAT'S THE

9    PROBLEM.  YOU NEED TO DRILL DOWN ON WHAT THEY WERE ON NOTICE

10   OF.

11           MR. URIS:  OKAY.  THANK YOU, YOUR HONOR.

12       I WON'T BELABOR IT ANY FURTHER.  WE WILL ADDRESS THOSE

13   DEFICIENCIES WITH AMENDMENT.

14           THE COURT:  OKAY.

15           MR. URIS:  THERE WERE A FEW OTHER ISSUES I WANTED TO

16   ADDRESS, PARTICULARLY ON THE LOSS CAUSATION ISSUE.  EXCUSE ME

17   ONE MOMENT.

18           THE COURT:  SO ON -- YEAH, I WAS ONLY CONCERNED ABOUT

19   THE LOSS CAUSATION ON THE OTHER CLAIMS, THE ONES -- I DON'T

20   THINK YOU ARE ARGUING THEM.  I'M GLAD TO HEAR FURTHER ARGUMENT

21   ON LOSS CAUSATION RELATED TO THE 10(B) CLAIM, THAT'S NOT -- I

22   WASN'T ACTUALLY FOCUSING ON THAT AS A DEFICIT.

23           MR. URIS:  RIGHT.  SO MAYBE LOSS CAUSATION IS NOT

24   QUITE SPECIFIC ENOUGH.

25       THE STANDING ARGUMENT THAT THEY HAVE MADE THAT BASICALLY

1      THE PLAINTIFF HAD SOLD THEIR STOCK, AND THEREFORE --

2               THE COURT:  SO STANDING, AS TO WHICH OF THE CLAIMS?

3      SORRY.

4               MR. URIS:  AS TO THE 14(A) CLAIM.

5               THE COURT:  OH, 14(A).  SO AS TO 14(A), THERE IS A

6      LOSS CAUSATION PROBLEM, SORRY.  I THOUGHT WE WERE STILL ON

7      10(B).  SO ON 14(A), YES, PLEASE DO ADDRESS THE LOSS CAUSATION

8      ON 14(A).  I APOLOGIZE.

9               MR. URIS:  YES.

10        LOSS CAUSATION ON THE 14(A).  SO I WOULD LIKE TO NOTE THAT

11     MANY OF THE CASES THEY CITE ARE DERIVATIVE CLAIMS WHICH WE

12     DON'T BRING HERE.  MANY OF THOSE DERIVATIVE CLAIMS, THE

13     DAMAGES, OR THE THEORY THAT WAS ALLEGED THERE WOULD BE, FOR

14     EXAMPLE, THAT THE COMPANY, ITSELF, DID NOT RECEIVE THEIR FAIR

15     SHARE OF THE VALUE OF THE ASSETS AND BUSINESS OF THE COMBINED

16     ENTITY.

17        THAT'S NOT WHAT WE HAVE ALLEGED HERE.  HERE WE HAVE

18     ALLEGED THAT PLAINTIFF AND CLASS MEMBERS THAT WERE ENTITLED TO

19     VOTE ON THE BUSINESS COMBINATION, WERE DENIED THE OPPORTUNITY

20     TO MAKE A FULLY INFORMED DECISION IN VOTING WITHOUT BEING

21     ADVISED OF HAVING MATERIAL FACTS, AND WERE DAMAGED AS A DIRECT

22     AND PROXIMATE RESULT OF THE UNTRUE STATEMENTS AND OMISSIONS

23     WHEN THEY WERE DISCLOSED.

24               THE COURT:  HOW WERE THEY DAMAGED IF THEY DIDN'T

25     SELL -- IF THEY SOLD THEIR STOCK WITH THIS ARTIFICIALLY

```
1    INFLATED VALUE?

2            MR. URIS:  RESPECTFULLY, YOUR HONOR, THAT'S JUST NOT

3    THE STANDING REQUIREMENT FOR A 14(A) CLAIM.

4            THE COURT:  I'M NOT SURE THAT'S ACCURATE.  I WILL LET

5    THE DEFENDANTS COME BACK --

6            MR. URIS:  I THINK THE ONLY QUESTION THAT'S RELEVANT

7    TO WHETHER OR NOT THERE'S STANDING FOR A 14(A) CLAIM, IS

8    WHETHER PLAINTIFF HELD STOCK AS OF THE RECORD DATE AND WAS

9    ENTITLED TO VOTE ON THE MERGER.

10       AND PLAINTIFF HELD STOCK AS OF THE RECORD DATE AND WAS

11   ENTITLED TO VOTE, DEFENDANTS DON'T DISPUTE THIS.  AND THE

12   INQUIRY SHOULD END THERE.

13           THE COURT:  AND THANK YOU.

14       WHICH CASE WILL YOU POINT ME TO THAT SAYS STANDING IS ONLY

15   BASED ON HOLDING STOCK ON THE RECORD DATE?

16           MR. URIS:  SO I WOULD POINT YOU TO THE NINTH CIRCUIT

17   DECISION IN STAHL V. GIBRALTAR, THAT'S 967 F.2D, 335.  AND

18   THERE, THE NINTH CIRCUIT NOTED, QUOTING THE SUPREME COURT IN

19   MILLS, THAT USE OF A SOLICITATION THAT IS MATERIALLY MISLEADING

20   IS, ITSELF, A VIOLATION OF LAW.  THE TOUCHSTONE OF A 14(A)

21   VIOLATION IS A MATERIAL MISSTATEMENT, SOMETHING THAT A

22   REASONABLE SHAREHOLDER WOULD CONSIDER IMPORTANT IN DECIDING HOW

23   TO VOTE.  AS MATERIALITY IS AN OBJECTIVE STANDARD, IT SHOULD

24   NOT MATTER WHETHER ANY PARTICULAR SHAREHOLDER WAS ACTUALLY

25   MISLEAD BY THE CHALLENGED MISREPRESENTATIONS.
```

1      AND THE COURT THERE WENT ON TO STATE AGAIN, UNDER VIRGINIA

2    BANK SHARERS, SHAREHOLDERS, SUCH AS PLAINTIFF, WHO DO NOT VOTE

3    THEIR PROXIES IN RELIANCE ON THE ALLEGED MISSTATEMENTS, HAVE

4    STANDING TO SUE UNDER SECTION 14(A), BOTH BEFORE AND AFTER THE

5    VOTE IS TAKEN.

6        THE COURT:  OKAY.

7        MR. URIS:  THANK YOU, YOUR HONOR.

8        THE COURT:  AND DID YOU -- I JUST WANTED TO PULL YOUR

9    OPP HERE.  DID YOU CITE THE STAHL CASE?

10       MR. URIS:  THAT CASE WAS NOT CITED IN OUR BRIEFING,

11   BUT I THINK IT WAS KIND OF IN THE REPLY PAPERS OF -- I BELIEVE

12   IT WAS THE VIEW DEFENDANTS, THEY KIND OF FURTHER ELABORATED ON

13   THIS THEORY THAT BECAUSE PLAINTIFF ZEROED OUT, THAT THEY DIDN'T

14   HAVE STANDING.

15      THE COURT:  I DO THINK -- I THINK THAT'S RIGHT, THAT

16   THEY DID DRAW OUT THAT ARGUMENT A LITTLE BIT MORE.  BECAUSE IT

17   DOESN'T LOOK AS THOUGH YOU ACTUALLY -- OH, YES, YOU DID HERE,

18   PAGE 13, I JUST WANT TO SEE.

19     SO I'M JUST LOOKING AT PAGE 13, LINE 20 OF YOUR BRIEF, AND

20   YOU SAY, YOU ARE QUOTING CITY OF BIRMINGHAM, MY CASE, AGAINST

21   NETFLIX.  "IN ADDITION, A PLAINTIFF MUST ESTABLISH THAT THE

22   ALLEGEDLY MISLEADING PROXY CAUSED THE PLAINTIFF INJURY IN THE

23   FORM OF ECONOMIC LOSS."

24      MR. URIS:  YEAH.  SO I THINK A LOT OF THE CONFUSION

25   HERE IS THAT THAT WAS A DERIVATIVE CASE.  AND SO IN THAT CASE,

1    THE ALLEGATION IS GENERALLY THAT, UPON THE CLOSING OF THAT

2    MERGER, THE COMPANY, ITSELF, WAS DAMAGED BECAUSE THEY BASICALLY

3    DIDN'T GET THE FAIR SHARE OF THE VALUE THAT THEY THOUGHT THEY

4    WERE GETTING.

5        BUT HERE, REALLY, WE JUST HAVE TO SHOW THAT HERE, THE LOSS

6    CAUSATION IS NOT THAT, IT'S THAT WHEN THE TRUTH WAS ULTIMATELY

7    DISCLOSED, THAT SHAREHOLDERS WERE DAMAGED FROM THE DROP IN THE

8    VALUE OF THE SHARE PRICE AT THAT TIME.

9        AND THERE'S A SEPARATE QUESTION THAT'S A TRANSACTION

10    CAUSATION.  SO AS TO THAT PRONG, ALL WE NEED TO PLEAD IS THAT

11    THE PROXY STATEMENT ITSELF, NOT THE MISSTATEMENT IN THE PROXY

12    STATEMENT, JUST THAT THE PROXY STATEMENT, ITSELF, WAS AN

13    ESSENTIAL LINK IN THE CLOSING OF THAT TRANSACTION.

14        AND I DON'T KNOWLEDGE THERE'S ANY DISPUTE HERE THAT THE

15    PROXY STATEMENT WAS REQUIRED IN ORDER FOR THE --

16        THE COURT:  OKAY.  SO LET'S MOVE ON.  AND I'M GOING

17    TO ASK THE DEFENDANTS TO COME BACK AND ADDRESS THIS PARTICULAR

18    ISSUE THAT WAS RAISED AND EXPANDED ON IN THE REPLY BRIEF.

19    BECAUSE THIS IS -- THIS WAS THE KEY TO YOUR STANDING ISSUE ON

20    14(A).

21        OKAY.  LET'S GO ON.  DID YOU WANT TO TALK ABOUT THE

22    STANDING ISSUE ON SECTION 11?

23        MS. HERKENHOFF:  YES, YOUR HONOR.

24        THE COURT:  OKAY.  LET ME JUST LET MR. URIS FINISH.

25        MR. URIS, DID YOU HAVE OTHER ISSUES THAT WERE ON YOUR

1    SIDE?

2            MR. URIS:  YEAH, THERE WERE A FEW.

3            THE COURT:  OKAY.

4            MR. URIS:  THEY PROBABLY DON'T WARRANT TOO MUCH

5    DISCUSSION GIVEN YOUR COMMENTS EARLIER, BUT I DID WANT TO NOTE

6    ON THE SEC FILING THAT EVERYONE HAS POINTED TO WHERE VIEW

7    STATES THAT DEFENDANT PRAKASH INTENTIONALLY WITHHELD

8    INFORMATION.

9            THE COURT:  THE 2021 10-K.

10            MR. URIS:  RIGHT.

11        AND SO IT IS CORRECT THAT WE DO NOT INCLUDE THAT IN OUR

12    COMPLAINT'S ALLEGATIONS.  IT WAS OUR VIEW THAT THAT'S KIND OF

13    VIEW'S AND PWC'S DEFENSE IN THIS CASE, AND WE THOUGHT THAT THE

14    FACTS THAT WE HAVE PLED WERE SUFFICIENT TO PLEAD AN INFERENCE

15    OF NEGLIGENCE, AND FOR THE 10(B) CLAIM, TO PLEAD A STRONG

16    INFERENCE OF SCIENTER.  AND I KNOW YOU DISAGREE WITH THAT, BUT

17    THAT WAS THE REASON WHY WE DIDN'T INCLUDE THAT, BECAUSE WE

18    DIDN'T THINK IT WAS OUR AFFIRMATIVE OBLIGATION TO PLEAD WHAT WE

19    VIEW AS THEIR OUT-OF-COURT DEFENSE.

20            THE COURT:  OKAY.

21        ALL RIGHT.  OTHER ISSUES BEFORE I TURN TO MS. HERKENHOFF?

22            MR. URIS:  I THINK I WILL LEAVE IT THERE FOR NOW.

23            THE COURT:  OKAY.  ALL RIGHT.  MS. HERKENHOFF?

24            MS. HERKENHOFF:  THANK YOU FOR YOUR TIME, YOUR HONOR.

25        ON SECTION 11, WE TAKE WHAT YOUR HONOR HAS SAID TO HEART,

1    AND WE UNDERSTAND THE TRACING BURDEN THAT PLAINTIFFS DO HAVE IN

2    THESE CASES AND WHY IT IS VERY DIFFICULT.  SO WE WOULD

3    RESPECTFULLY REQUEST LEAVE TO AMEND ON THAT TO SEE IF WE CAN

4    PROVIDE A BETTER BACKGROUND FOR YOUR HONOR, EVEN IT IS ONLY THE

5    3 MILLION SHARES, WE WOULD LIKE THE OPPORTUNITY.

6             THE COURT:  RIGHT.

7             MS. HERKENHOFF:  AND I SAY THAT IF, BECAUSE I'M -- AT

8    THIS POINT, I DON'T HAVE ANYTHING TO DISPUTE WITH WHAT THE

9    DEFENSE HAS PUT IN, BUT I'M NOT ENDORSING IT EITHER.

10            THE COURT:  OKAY.

11            MS. HERKENHOFF:  IF I MAY ALSO BRIEFLY NOTE, WHILE

12   NOT THE SAME SORT OF SECTION 11 CASE, YOU ARE PROBABLY AWARE

13   THAT THE SUPREME COURT IS LOOKING AT SECTION 11 TRACING IN THE

14   SLACK V. PIRANI DECISION.  THEY JUST HEARD ORAL ARGUMENT ON

15   MONDAY, I THINK THE DECISION MIGHT BE OUT IN LATE JUNE.  SO

16   CERTAINLY WE WILL BE INTERESTED WITH WHAT THEY DO WITH THE

17   SITUATION THERE.  AND WHAT I HEARD THE JUSTICES SAY ON MONDAY

18   AND I READ IN CENTURY ALUMINUM, IS THE TRACING JUST HAS TO BE

19   PLAUSIBLE.

20       SO WHETHER 3 MILLION SHARES, IF THAT'S WHAT IT IS, IS

21   PLAUSIBLE, WE WILL BRIEF IN THE NEXT ROUND.

22       AND I UNDERSTAND WHY THE PLAINTIFF HAS TO HAVE STANDING

23   DIRECTLY, BUT WE WOULD APPRECIATE THE OPPORTUNITY SO WE DON'T

24   DENY THE CLASS MEMBERS WHO DO HAVE THOSE CLAIMS THE OPPORTUNITY

25   TO GIVE IT ONE LAST REVIEW BY YOUR HONOR.

```
 1          THE COURT:  OKAY.  AND IF WE HAVE GUIDANCE FROM THE

 2     SUPREME COURT BY THE TIME YOU GET MY ORDER AND ACTUALLY AMEND,

 3     YOU SHOULD HAVE THE SUPREME COURT RULING.

 4          MS. HERKENHOFF:  THAT WOULD BE GREAT.  THAT WOULD BE

 5     WONDERFUL.

 6          YOU KNOW, THERE'S MORE TO BE SAID ON SECTION 11, BUT

 7     BECAUSE IT TIES INTO ALL THE OTHER ARGUMENTS WE HAVE ALREADY

 8     HEARD, I WON'T BELABOR THAT, BUT WE APPRECIATE LEAVE ON THE

 9     FULL CLAIM.

10          ON THE 12(A)(2) ISSUE, THAT'S ALSO IRONICALLY BEFORE THE

11     SUPREME COURT, NOT ON THE SAME PARTICULAR ISSUE WE HAVE HERE,

12     BUT MORE ABOUT WHETHER I THINK IT APPLIES BEYOND PUBLIC

13     OFFERINGS.  THAT WAS A BIG TOPIC OF DISCUSSION, FROM WHAT I

14     HEARD.

15          AND IT KIND OF TIES A BIT TO MY VIEW THAT I DON'T THINK

16     12(A)(2) HAS A "TRACING" ISSUE, IT'S MORE OF A PRIVITY ISSUE.

17     AND THERE ARE TWO WAYS THAT ARE DISCUSSED UNDER PINTER V. DAHL

18     FOR SOMEBODY TO BE A STATUTORY SELLER, AND ONE IS, I AM

19     DIRECTLY SOLICITING YOU.  AND THE SECOND, WHICH WE HAVE BRIEFED

20     IN OUR PAPERS, IS PEOPLE WHO SOLICIT BASICALLY FOR THEIR OWN

21     PERSONAL GAIN.

22          AND IT'S NOT IN OUR BRIEFING BECAUSE WE DID NOT HAVE THE

23     DECISION, BUT THE NINTH CIRCUIT RECENTLY CAME OUT WITH -- I

24     THINK IT'S PINO V. CARDONE, AND I CAN PROVIDE THE CITE IF

25     NEEDED, BUT IT DEALS WITH ONE OF THESE SITUATIONS THAT FALLS
```

1    UNDER THAT SECOND PRONG WHERE THERE'S SOLICITATION OR

2    INFORMATION BEING PUT OUT IN MASS MEDIA ABOUT AN OFFERING, AND

3    THE NINTH CIRCUIT, UNDER THAT PRONG, HOLDS IN A DEFENDANT.

4         BUT AGAIN, IT WOULD BE MORE APPROPRIATELY BRIEFED NEXT

5    TIME, I AGREE, BUT I JUST WANT TO, FOR THAT REASON, IN

6    ADDITION, INDICATE THAT I THINK LEAVE TO AMEND SHOULD BE

7    PROVIDED.

8         THE COURT:  OKAY.

9    DO YOU HAVE OTHER ARGUMENTS THAT YOU WANTED TO MAKE?

10        MS. HERKENHOFF:  TODAY I DREW THE LUCKY END OF THE

11   STRAW AND I HAD THE SHORT END OF THE STICK, AND THAT WAS THE

12   MAIN PRESENTATION.

13        I KNOW OMNICARE IS A BIG PART OF BOTH OUR 11 AND 10(B).  I

14   THINK ON THE 11 SIDE OF IT, WHILE I DISAGREE, OMNICARE, IT'S AN

15   11 CASE, AS WE ALL KNOW, IT DIDN'T HAVE AN AUDITOR IN IT, THERE

16   HAVE BEEN CASES THAT HAVE COME OUT SINCE THEN THAT TRY TO DEAL

17   WITH AUDITORS.  I DO FEEL THAT THEY ARE IN A VERY DIFFERENT

18   SITUATION THAN TRYING TO SELL A TELEVISION SET, WHICH IS ONE OF

19   THE EXAMPLES GIVEN, I THINK, IN THE OMNICARE CASE.  AUDITORS

20   ARE PAID TO GIVE AN OPINION AND UNDERTAKE CERTAIN ACTIVITIES.

21        BUT IN THE SECOND 11 AND 12 OR THE 33 ACT NON-FRAUD PART

22   OF OUR CASE, WHICH IS WHAT I'M PRESENTING ON, WE DO ALLEGE AT

23   PARAGRAPH 186 THAT THEY DIDN'T HAVE THE NECESSARY BELIEFS UNDER

24   OMNICARE, BUT I UNDERSTAND YOUR HONOR'S POINT THAT WE NEED SOME

25   ADDITIONAL FACTS, AND I'M HAPPY TO TRY TO PROVIDE THEM NEXT

```
1       TIME.

2                   THE COURT:  OKAY.  SO I APPRECIATE THAT.

3               AND YOU KNOW, I DON'T THINK I KNOW OF A CASE AFTER THE

4       PSLRA, SO THAT'S NOW GOING BACK A LONG TIME, WHERE THE CASE

5       JUST GOT THROUGH A MOTION TO DISMISS WITH THE COURT SAYING, IT

6       LOOKS GOOD TO ME, LET'S MOVE ON.

7               SO THIS IS PART OF WHAT WE DO, BECAUSE CONGRESS HAS

8       MANDATED A VERY HIGH PLEADING STANDARD.  AND IT'S INTENTIONALLY

9       DIFFICULT TO MEET.  I DO BELIEVE THE NINTH CIRCUIT IS CLEAR

10      THAT LEAVE TO AMEND IS EXPECTED IN VIRTUALLY ALL CIRCUMSTANCES,

11      BUT I'VE HAD SOME REQUESTS TO CONSIDER IT DIFFERENTLY.

12              LET ME TURN BACK TO THE DEFENDANTS FOR ANY CLOSING

13      COMMENTS.  IT IS YOUR MOTION, AND SO I CERTAINLY WANT YOU TO

14      HAVE THE LAST WORD.

15              MR. BERRY, ARE YOU GOING TO START AGAIN?

16                  MR. BERRY:  YES.  THANK YOU, YOUR HONOR.

17              AND I WILL BE VERY BRIEF, I JUST WANT TO HIT ON TWO POINTS

18      THAT CAME UP AS PLAINTIFF'S COUNSEL WAS DISCUSSING SOME OF THE

19      ISSUES.  ONE IS THE 14(A) ISSUE, AND THE OTHER ONE IS THE SLACK

20      POINT THAT WAS MADE ABOUT THE PIRANI CASE.

21              ON 14(A), I THINK WHAT MR. URIS WAS TALKING ABOUT WAS A

22      STANDING ISSUE.  I'VE QUICKLY LOOKED AT STAHL BECAUSE THEY

23      DIDN'T CITE IT IN THEIR BRIEF, BUT AS I UNDERSTAND IT, STAHL IS

24      ONLY ABOUT ARTICLE III STANDING.

25              WHAT WE WERE TALKING ABOUT, AND WE MADE IT VERY CLEAR, I
```

1    THOUGHT, IN OUR BRIEFING, IS WE ARE TALKING ABOUT LOSS

2    CAUSATION, THAT IS A REQUIRED ELEMENT OF A SECTION 14(A) CLAIM.

3    AND IT'S EVEN IN THE PSLRA.

4         THE COURT:  WELL, THAT'S WHAT LOSS WOULD INDICATE,

5    WOULDN'T IT.

6         MR. BERRY:  RIGHT.

7         SO PSLRA SECTION 4(B)(4) REQUIRES THE PLAINTIFF TO PROVE

8    LOSS CAUSATION, AND IT INCLUDES IT FOR THE 14(A) CLAIMS.

9         BUT YOUR BIRMINGHAM CASE, THE NETFLIX CASE, IT HAS A

10   DERIVATIVE COMPONENT TOO, BUT IT'S TALKING ABOUT THE

11   SECTION 14(A) CLAIM AS A DIRECT CLAIM, AND IT REQUIRES PROOF OF

12   LOSS CAUSATION.

13        AND I THINK YOU ARE CORRECT, YOUR HONOR, THAT THERE IS NO

14   LOSS CAUSATION HERE BECAUSE THEY SOLD THEIR SHARES BEFORE THE

15   ECONOMIC HARM THAT THEY ALLEGE HAPPENED.  AND SO I THINK THAT'S

16   FATAL.

17        SO YOU SUGGESTED MAYBE LEAVE TO AMEND TO CLEAN UP THEIR

18   NEGLIGENCE, I DON'T THINK LEAVE TO AMEND CAN CLEAN UP THEIR

19   TRADING ACTIVITY.  SO I THINK THAT'S A FATAL FLAW THAT MAKES IT

20   FUTILE FOR AMENDMENT ON THE 14(A) CLAIM.

21        THE SLACK CASE WAS MENTIONED.  YES, THEY ARE BEFORE THE

22   SUPREME COURT, BUT THE NINTH CIRCUIT WAS VERY CLEAR, AND I

23   DON'T THINK IT'S BEFORE THE COURT, THAT WAS A DIRECT LISTING

24   CASE, AND IN THE NINTH CIRCUIT, IT'S AT PIN CITE 947, SLACK IS

25   13 F.4D, 940.  AND AT PIN CITE 947, THE NINTH CIRCUIT SAID,

1   "BECAUSE THIS CASE INVOLVES ONLY ONE REGISTRATION STATEMENT, IT

2   DOES NOT PRESENT THE TRACEABILITY PROBLEM IDENTIFIED BY THIS

3   COURT IN CASES WITH EXCESSIVE REGISTRATION STATEMENTS."  AND OF

4   COURSE IT CITES CENTURY ALUMINUM.

5        SO OBVIOUSLY WE ARE GOING TO WAIT AND SEE HOW THE SUPREME

6   COURT RULING COMES OUT, BUT I JUST WANTED TO MAKE CLEAR AND PUT

7   IT IN CONTEXT, THAT'S A DIRECT LISTING CASE AND NOT A MULTIPLE

8   REGISTRATION CASE, IT DOESN'T HAVE THE ISSUES DIRECTLY ON POINT

9   HERE.

10            THE COURT:  OKAY.

11            MR. BERRY:  SO THAT'S ALL I HAVE, UNLESS THE COURT

12   HAS ANY MORE QUESTIONS FOR ME.

13            THE COURT:  NO.  YOU DID ADDRESS THE ONE QUESTION

14   THAT I HAD, OR THE ONE ISSUE THAT MR. URIS RAISED THAT WAS OF

15   SURPRISE TO ME.  SO I WILL READ THOSE CASES CAREFULLY,

16   MR. URIS, SO THAT I CAN BE CERTAIN ON THAT.

17        OKAY.  ANY OTHER DEFENDANTS -- MS. HERKENHOFF, DID YOU

18   HAVE --

19            MS. HERKENHOFF:  I'M SORRY, I WILL WAIT UNTIL THEY

20   ARE DONE, I APOLOGIZE.

21            THE COURT:  OKAY.  THAT WOULD BE GREAT.

22        ANY OTHER DEFENDANTS LIKE TO HAVE A LITTLE BIT OF REBUTTAL

23   TIME?

24            MR. STEINFELD:  YES, YOUR HONOR, JUST VERY BRIEFLY.

25        JEFF STEINFELD AGAIN ON BEHALF OF THE CF DEFENDANTS.

1    I'M JUST BUILDING ON WHAT MR. BERRY SAID REGARDING THE

2    LOSS CAUSATION ARGUMENT, SECTION 14, AS CITED IN VIEW'S PAPERS,

3    ACTUALLY THE JOBS CASE, WHICH IS A -- I WILL JUST QUOTE FROM

4    THE CASE:  "TREATING THE CLAIM AS A DIRECT CLAIM UNDER

5    SECTION 14(A), PRIVATE PLAINTIFFS HAVE TO ALLEGE LOSS

6    CAUSATION.  LOSS CAUSATION MUST BE PROVEN IN THE CONTEXT OF A

7    PRIVATE ACTION, AND IT REQUIRES A SHOWING THAT THE DEFENDANT

8    'CAUSED THE LOSS FOR WHICH THE PLAINTIFF SEEKS TO RECOVER

9    DAMAGE'.  AND IN WELL PLEADED SECTION 14(A) CLAIMS, LOSS

10    CAUSATION CONNECTS THE PROXY WITH THE 'ACTUAL ECONOMIC HARM.'"

11    SO THE ARGUMENT HERE, AS MR. BERRY SAID, IS NOT ONE OF

12    STANDING, IT'S ONE OF LOSS.  AND BECAUSE THE PLAINTIFF SOLD ALL

13    OF ITS SHARES BEFORE THE CORRECTED DISCLOSURE, IT ACTUALLY ADDS

14    $10, WHICH WAS THE LOWEST DEAL PRICE, THERE IS NO LOSS

15    CAUSATION AS A MATTER OF LAW.

16    THE SECOND POINT I WOULD LIKE TO MAKE VERY QUICKLY, IS ON

17    SECTION12.

18    FIRST, I THINK THE SLACK CASE WAS MENTIONED, BUT AS

19    MR. BERRY SAID, THE SLACK CASE IS A DIRECT LISTING CASE, AND

20    THE SECTION 12 ISSUE THAT'S UP IS NOT CONSIDERING WHETHER YOU

21    HAVE TO PURCHASE IN THE OFFERING, IT'S NOT TALKING ABOUT

22    WHETHER AFTERMARKET PURCHASES QUALIFY WITH THE LOSS, AND

23    WHATEVER UNREGISTERED SHARES IN THE DIRECT LISTING ARE ACTUALLY

24    PART OF THAT SAME OFFERING.  AND SO WE WILL WAIT TO SEE WHAT

25    HAPPENS, BUT THAT'S THE ISSUE THAT'S PRESENTED.

1       AND OUR ARGUMENT IS ACTUALLY THAT THERE'S TWO DISTINCT AND

2   INDEPENDENT REASONS THAT THIS COURT SHOULD DISMISS SECTION 12.

3   THE FIRST IS, AS I TALKED ABOUT IN OUR OPENING PRESENTATION, IS

4   A STANDING ISSUE WHERE THE PLAINTIFF HAS TO ALLEGE THAT IT

5   PURCHASED IN THE OFFERING AT ISSUE.  HERE, THEIR PSLRA

6   CERTIFICATION CONCLUSIVELY DEMONSTRATES THAT IT DID NOT.

7       AND THE SECOND INDEPENDENT REASON, WHICH I DIDN'T DISCUSS

8   BUT IS HEAVILY BRIEFED IS ONLY A SELECT GROUP OF DEFENDANTS

9   COUNT AS A "STATUTORY SELLER" SECTION 12 CAN ONLY BE BROUGHT

10  AGAINST CERTAIN DEFENDANTS.

11      THE FIRST ONE IS IF SOMEBODY TRANSFERS TITLE.  AND I THINK

12  IT'S UNDISPUTED HERE THAT NONE OF THE CF ENTITY DEFENDANTS

13  TRANSFERRED TITLE, BECAUSE THE REGISTRATION STATEMENT AT ISSUE

14  ONLY INVOLVED SHARES THAT WERE GIVEN OR TRANSFERRED TO VIEW AND

15  LEGACY VIEW SHAREHOLDERS AS PART OF THE MERGER.  TO GET TO A

16  STATUTORY SELLER, PLAINTIFFS WOULD HAVE TO SATISFY THE

17  SOLICITATION ELEMENT.  AND PINO, NOT TO BELABOR THE POINT

18  THAT'S IN OUR BRIEFING, PINO IS A MORE RECENT CASE, BUT IT

19  DOESN'T MOVE THE NEEDLE HERE, BECAUSE UNDER THE SUPREME COURT'S

20  PINTER DECISION, AND UNDER PINO THAT FOLLOWS, IT STILL REQUIRED

21  THE DEFENDANT TO ENGAGE IN A SOLICITATION, IT'S STILL REQUIRED

22  TO HAVE SOME TYPE OF COMMUNICATION TO THE POTENTIAL INVESTORS.

23      PINO HOLDS THAT IT DOESN'T HAVE TO BE DIRECTED TO A

24  SPECIFIC INVESTOR, BUT THAT MASS COMMUNICATIONS TO POTENTIAL

25  INVESTORS COUNT.  AND IT HELD, AT THE END OF THE DAY, THAT IN

1    THAT CASE THE SELLERS WERE STATUTORY SELLERS BECAUSE THEY

2    "DISSEMINATED MATERIAL INFORMATION TO WOULD-BE INVESTORS."

3            THE COURT:  WHAT ABOUT MATERIALS DISSEMINATED IN

4    WHICH THEIR NAME IS PROMINENT?  BECAUSE I THINK THAT'S WHAT THE

5    ALLEGATION IS.

6            MR. STEINFELD:  CORRECT, YOUR HONOR.

7        PINO DOESN'T SPEAK TO THAT BECAUSE PINO IS VERY DIFFERENT.

8    THE ALLEGATION IN PINO WAS THE DEFENDANT SAID ON ITS SOCIAL

9    MEDIA, IT DOESN'T MATTER WHETHER THE INVESTORS ARE CREDITED OR

10   NOT ACCREDITED, YOU ARE GOING TO WALK AWAY WITH 15 PERCENT

11   ANNUALIZED RETURNS, AND IT GOES ON, AND ON, AND ON, VERY

12   DETAILED ALLEGATIONS.

13       TO YOUR QUESTION, MERELY HAVING ONE'S NAME IN A PROXY

14   STATEMENT DOES NOT COUNT OR IN THE PROSPECTUS, DOES NOT COUNT

15   AS SOLICITATION.  THERE NEEDS TO BE A SUBSTANTIAL CONNECTION

16   BETWEEN THE USE OF ONE'S NAME AND THE SOLICITATION.

17       AND HERE, FOR EXAMPLE, CF GM, THEIR NAME IS MENTIONED FOUR

18   TIMES IN THE 278-PAGE PROSPECTUS, AND IT'S MERELY TO DISCLAIM

19   OWNERSHIP OF SHARES.  CF AND CO. IS MENTIONED TO DESCRIBE AND

20   TO DISCLOSE THE FEES THAT THEY WERE GOING TO RECEIVE.

21       BUT AS PINTER V. DAHL, WHICH IS THE SUPREME COURT ON THIS,

22   THE SUPREME COURT REJECTED A SUBSTANTIAL FACTOR FOR

23   PARTICIPATION TEST.  IT HELD THAT THE SECURITIES PROFESSIONALS

24   WERE NOT LIABLE UNDER SECTION 12 BECAUSE THE PLAINTIFF DOES NOT

25   PURCHASE FROM THAT PERSON, EVEN UNDER THE SOLICITATION PRONG.

1        AND IMPORTANTLY, THE COURT EMPHASIZED THAT SECTION 12

2    LIABILITY DOES NOT ATTACH TO "COLLATERAL PARTICIPANTS, OR ONE

3    WHO MERELY ASSISTS IN THE SOLICITATION OF OTHERS."  AND AS FAR

4    AS THIS COMPLAINT GOES, THEY DON'T EVEN ALLEGE THAT, BUT EVEN

5    THAT WOULD BE INSUFFICIENT.

6        AGAIN, YOUR HONOR, WE DON'T EVEN THINK THE COURT NEEDS TO

7    REACH THIS ISSUE BECAUSE THE STANDING ISSUE IS DISPOSITIVE, BUT

8    EITHER ONE WOULD REQUIRE DISMISSAL WITH PREJUDICE.

9        AND UNLESS THE COURT HAS ANY ADDITIONAL QUESTIONS, THOSE

10   ARE THE ONLY POINTS I HAD ON REBUTTAL.

11            THE COURT:  THANK YOU.

12            MR. STEINFELD:  THANK YOU, YOUR HONOR.

13            THE COURT:  ALL RIGHT.

14       THEN LET ME TURN MR. TANG.  DID YOU HAVE ANYTHING ELSE YOU

15   WOULD LIKE TO SAY?

16            MR. TANG:  ONE BRIEF COMMENT, YOUR HONOR.  THANK YOU.

17       WITH RESPECT TO PLAINTIFF'S PRESENTATION A MOMENT AGO,

18   GIVEN THE ABSENCE OF COMMENTS RESPONDING TO YOUR HONOR'S

19   TENTATIVE CONCERNING DEFENDANT'S LEPPERT AND HUGHES, WE WILL

20   SUBMIT ON THE PAPERS ON THEIR BEHALF AT THIS TIME, AND THANKS

21   AGAIN FOR YOUR TIME.

22            THE COURT:  ALL RIGHT.  MAYBE YOU AND MS. HERKENHOFF

23   WOULD LIKE TO HAVE A CONVERSATION OFFLINE ABOUT WHAT THE FUTURE

24   OF THAT IS.  I'M NOT ASKING FOR ANY ACKNOWLEDGEMENT OF THAT

25   HERE.

1           MS. HERKENHOFF:  I THINK I WAS MORE ADMIRING HIS

2    EXUBERANCE, BECAUSE THEY ARE IN THE SECTION 11 CLAIM, AND THAT

3    ONE DOESN'T REQUIRE THEM TO HAVE KNOWLEDGE, FROM MY STANDPOINT.

4           SO SORRY, I THINK THAT WE WILL KEEP THEM IN IF THE COURT

5    IS ALLOWING US LEAVE TO AMEND, BUT WE CAN EVALUATE YOUR HONOR'S

6    THOUGHTFUL DECISION WHEN IT ISSUES.

7           THE COURT:  OKAY.

8           MS. HERKENHOFF:  AND YOU KNOW, WITH REGARD TO THE

9    12(A)(2)SELLER ISSUE, I HAD SAID AT THE OUTSET OF MY COMMENTS

10   THAT THE TRANSACTION IN SLACK WAS DIFFERENT.  I DON'T THINK IT

11   NEEDS TO BE BELABORED.  THE RECORD THERE IS WHAT IT IS.

12          I HAVE READ BOTH OF YOUR HONOR'S DECISIONS IN WELGUS, I

13   MAY BE MISPRONOUNCING THAT NAME, SO IT'S NOT ANY SURPRISE TO

14   US.  HOWEVER, AS YOUR HONOR NOTED, I FEEL OUR COMPLAINT DOES

15   PROVIDE INFORMATION ABOUT THE CF II DEFENDANTS' ROLE IN THE

16   SOLICITATION PROCESS, AND IF MR. URIS HAD PROVIDED, I THINK THE

17   PRESENTATION WE INTENDED TO TODAY ON 14(A), IN TERMS OF MORE OF

18   THE DEPTH, THERE ARE SOME ORAL PRESENTATIONS IN CONNECTION WITH

19   THE ISSUANCE OF THE PROXIES THAT ARE LISTED THERE BY

20   MR. LUTNICK, AND I BELIEVE MR. JAIN.

21          SO JUST LOOKING BACK, AND I'M NOT GOING TO MAKE A LONG

22   SPEECH ABOUT THIS, BUT PINO DOES SPECIFICALLY TARGET DEFENDANTS

23   AS STATUTORY SELLERS WHO ENGAGE IN MASS COMMUNICATIONS.  AND I

24   THINK THE OPINION IS PRETTY CLEAR, AND YOUR HONOR HAS -- IN OUR

25   COMPLAINT, WE CITED THE NOVEMBER 30, 2020 INVESTOR

1    PRESENTATION.  IT'S AT ECF 149-7, PAGE 176 IS WHERE IT STARTS.

2    AND I THINK THAT'S PROBABLY WHAT YOUR HONOR MAY HAVE IN MIND.

3    THERE'S THIS LOVELY STATEMENT ON VIEW LETTERHEAD, "CANTOR

4    FITZGERALD BELIEVES VIEW, INC. REPRESENTS A UNIQUE OPPORTUNITY

5    TO REVOLUTIONIZE THE PROPERTY TECHNOLOGY INDUSTRY WITH A PROVEN

6    PRODUCT AND STRONG MANAGEMENT TEAM."

7         NOW SURE, THAT DOESN'T STATE WARRANTY ACCRUAL, BUT IF YOU

8    LOOK AT THE ENTIRE PACKET, THE CANTOR FITZGERALD NAME AND LOGO

9    ARE PROMINENTLY DISPLAYED.

10        SO I THINK THAT WE ACTUALLY HAVE THE FACTS IN THE

11   COMPLAINT ALREADY TO ASSERT LIABILITY AGAINST THEM AS STATUTORY

12   SELLERS.  I BELIEVE IT'S PARAGRAPH 43 AND 44 OF THE COMPLAINT

13   THAT DETAIL THEIR SORT OF FINANCIAL BENEFIT IN CONNECTION WITH

14   THE TRANSACTION, BUT I WILL LEAVE IT AT THAT.

15             THE COURT:  OKAY.

16             MS. HERKENHOFF:  I'M HAPPY TO TRY TO AMEND THE

17   COMPLAINT TO PLEAD IT IN A STRONGER FASHION, IF NEEDED.

18             THE COURT:  OKAY.  LET ME THEN WRAP THIS UP WITH

19   FINAL COMMENTS.

20        MS. WHITE, DID YOU HAVE ANYTHING YOU WOULD LIKE TO ADD?

21             MS. ERICKSON WHITE:  NOTHING, YOUR HONOR.  THANK YOU

22   VERY MUCH.

23             THE COURT:  OKAY.  AND MR. PURPURA, FOR

24   PRICEWATERHOUSECOOPERS?

25             MR. PURPURA:  YES, YOUR HONOR.  JUST VERY BRIEFLY.

1          I WANT TO COME BACK TO CLOSE THE LOOP ON THE COMMENTS THAT

2     MS. WHITE MENTIONED ABOUT THE JUDICIAL NOTICE PREVIOUSLY.

3          AGAIN, THE POINT THAT WE ARE TRYING TO MAKE IS THIS IS A

4     DISPUTE BETWEEN PLAINTIFFS AND PWC.  AND PWC -- I'M SORRY --

5     PLAINTIFFS OBVIOUSLY DO NOT DISPUTE WHAT WAS IN THE 10-K.  IN

6     FACT, IN THEIR BRIEF ON PAGE 24, THEY SAY, "OF COURSE, THIS

7     ADMISSION ALONE IS SUFFICIENT TO SUPPORT A STRONG INFERENCE OF

8     SCIENTER AS TO PRAKASH AND VIEW, AS PRAKASH'S SCIENTER AS CFO

9     IS IMPUTED TO THE COMPANY."  ON PAGE 36 THEY SAY THAT "THERE

10    CAN BE NO REASONABLE DISPUTE OF THEIR PURPORTED FAILURE TO

11    DISCLOSE CERTAIN INFORMATION TO VIEW'S AUDITOR IS A

12    MANIPULATIVE OR DECEPTIVE ACT."

13         THERE ARE MANY, MANY THINGS, IN FACT ALMOST EVERY

14    PARAGRAPH, THAT I WOULD SUGGEST THE DEFENDANTS DISAGREE WITH,

15    THAT WE DO NOT ACCEPT.  BUT THAT'S NOT THE ISSUE HERE.  IF IT'S

16    INCORPORATED BY REFERENCE, WHICH IT IS, THEN THE COURT IS TO

17    ASSUME, AND HAS THE ABILITY TO ASSUME THE TRUTH OF IT, JUST AS

18    IT DOES OUR OTHER ALLEGATIONS.

19         AND I ALSO POINT, AND THIS HAS COME UP, FOOTNOTE ONE IN

20    FINJAN, SAYS, "WHEN A GENERAL CONCLUSION IN A COMPLAINT" -- AND

21    REMEMBER, THERE ARE NO SPECIFIC ELECTIONS IN THIS COMPLAINT

22    REGARDING PWC.  "WHEN A GENERAL CONCLUSION IN A COMPLAINT

23    CONTRADICTS SPECIFIC FACTS INCORPORATED BY REFERENCE IN THE

24    COMPLAINT OR SUBJECT TO JUDICIAL NOTICE, THOSE SPECIFIC FACTS

25    ARE CONTROLLING."

1          THAT'S PRECISELY THE SITUATION WE HAVE HERE IN THE DISPUTE

2     BETWEEN THE PLAINTIFFS AND PWC.

3          AGAIN, THANK YOU FOR YOUR TIME, YOUR HONOR.

4          THE COURT:  ALL RIGHT.  GOOD.  THANK YOU.

5          ALL RIGHT.  WELL, THANK YOU.  THIS HAS BEEN VERY HELPFUL,

6     AND YOUR ARGUMENT WAS AS WELL ORGANIZED AS YOUR BRIEFING WAS,

7     SO I'M APPRECIATIVE OF THAT.

8          I WILL CERTAINLY BE GIVING LEAVE TO AMEND.  WHETHER I FIND

9     CERTAIN CLAIMS SIMPLY CAN'T GO FORWARD, I WILL LOOK AT THAT

10    CAREFULLY.  SO AS IN ALL SECURITIES CASES, I'M PRETTY SURE WE

11    ARE GOING TO COME BACK TOGETHER ON ANOTHER MOTION TO DISMISS.

12         SO MS. HERKENHOFF, LET ME ASK YOU, I KNOW A LOT OF WORK

13    GOES INTO DOING AN AMENDED PLEADING, AND I KNOW ADDITIONAL

14    INVESTIGATION IS REQUIRED.  SO IT'S GOING TO TAKE ME SOME TIME

15    TO GET OUT THIS ORDER, BUT FROM THE DATE MY ORDER COMES OUT,

16    HOW MUCH TIME DO YOU NEED TO PREPARE AN AMENDED PLEADING?  IT

17    WILL PROBABLY BE YOUR LAST OPPORTUNITY, SO I'M GENEROUS WITH

18    REASONABLE REQUESTS.

19         MS. HERKENHOFF:  ALL RIGHT.

20         WELL, YOUR HONOR, I DON'T THINK I'VE EVER ASKED FOR

21    ANYTHING OVER 60 DAYS, BUT HERE, I ACTUALLY THINK IT MAY BE

22    WARRANTED BECAUSE WE WOULD LIKE TO RECEIVE THE DECISION THAT'S

23    GOING TO COME OUT IN SLACK, HAVE AN OPPORTUNITY TO LOOK AT YOUR

24    DECISION, GO BACK TO OUR CLIENT, OBVIOUSLY, TO MAKE SURE WE

25    HAVEN'T MISSED ANYTHING, HIS INFORMATION.  SO IF IT COULD BE

1    MORE THAN 60 DAYS, WE WOULD CERTAINLY APPRECIATE THAT, BUT I

2    LEAVE THAT TO YOU.

3            THE COURT:  IS THERE ANY ONE OF THE DEFENDANTS

4    OBJECTING TO 90 DAYS?  IT COULD TAKE ME 60 DAYS TO GET OUT AN

5    ORDER.  SO -- AND I KNOW IT'S ALWAYS BETTER TO RESPOND TO MY

6    WRITTEN RULING THAN YOU THINK YOU HEARD ME SAY TODAY.  I

7    MEANDER A LITTLE BECAUSE I HAVEN'T MADE UP MY MIND EXACTLY.  IS

8    THERE ANY OBJECTION TO THAT 90-DAY REQUEST?

9            MR. BERRY:  YOUR HONOR, THIS IS JOHN BERRY FOR THE

10   VIEW DEFENDANTS.

11       I UNDERSTAND MS. HERKENHOFF'S REQUEST, YOU KNOW, THEY HAVE

12   ALREADY HAD QUITE A BIT OF TIME TO COME UP WITH THIS AMENDED

13   COMPLAINT.

14           THE COURT:  YEAH.

15           MR. BERRY:  I THINK THEY TOOK ALMOST FOUR OR FIVE

16   MONTHS TO GET THIS AMENDED COMPLAINT DONE.  OUR CLIENT IS

17   STRUGGLING RIGHT NOW WITH THE ECONOMY, THEY REALLY WOULD LIKE

18   TO SEE THIS CASE GET RESOLVED, SO WE WOULD PREFER IT TO HAPPEN

19   ON A MORE EXPEDITED SCHEDULE.  I WOULD PREFER 60 DAYS, BUT I

20   UNDERSTAND IF YOU ARE LEANING TOWARDS NOT, BUT FROM OUR

21   CLIENT'S PERSPECTIVE, A MUCH MORE EXPEDITED SCHEDULE WOULD BE

22   MUCH APPRECIATED.

23           THE COURT:  ANY OTHER DEFENDANTS COMMENTS?

24           MR. STEINFELD:  WE WOULD JUST JOIN IN WHAT MR. BERRY

25   SAID.

1              THE COURT:  OKAY.

2          WELL, I MEAN, THIS CASE HAS BEEN AROUND FOR A REALLY LONG

3      TIME, IT'S BEEN TO THE NINTH CIRCUIT ALREADY, FOR GOODNESS

4      SAKES.

5              MS. HERKENHOFF:  WELL, IT HAS, YOUR HONOR, AND I

6      GUESS THE OTHER THING I HAVEN'T THROWN INTO THE MIX, BECAUSE I

7      DON'T HAVE IT RIGHT IN MY PRESENTATION HERE, BUT I BELIEVE THE

8      COMPANY HAS ALSO PUT OUT REPRESENTATIONS THAT NOT ONLY IS THERE

9      AN SEC INVESTIGATION, BUT I BELIEVE I HEARD THAT THE JUSTICE

10     DEPARTMENT OR THE DOJ BACK IN NEW YORK WAS LOOKING.  AND SO WE

11     ALSO THINK THE ADDITIONAL TIME IS BENEFICIAL TO SEE WHAT COMES

12     OF THAT.

13             THE COURT:  OKAY.

14             MS. HERKENHOFF:  SO I WOULD DEFINITELY APPRECIATE THE

15     90 DAYS.

16             THE COURT:  ALL RIGHT.

17             MS. HERKENHOFF:  THANK YOU.

18             THE COURT:  ALL RIGHT.  WELL, I WILL ALLOW 90 DAYS.

19     I WILL NOT ALLOW ANY FURTHER CONTINUANCE THOUGH.  THAT'S IT.

20         AND YOU KNOW, OBVIOUSLY STIPULATIONS COME IN AND I DON'T

21     DENY STIPULATIONS, BUT YOU CAN BE PRETTY SURE THAT IF IT'S NOT

22     AGREED BY ALL OF YOUR OPPONENTS HERE THAT MORE TIME IS

23     NECESSARY, THEN I PROBABLY WILL DENY IT.

24         ALL RIGHT.  I WILL GRANT 90 DAYS.  THAT'S FROM THE DATE

25     THAT I FILE MY ORDER, IT'S NOT FROM TODAY.  SO IT COULD BE AN

1    EXPANSIVE AMOUNT OF TIME, BECAUSE IT TOOK ME A LONG TIME JUST

2    TO FIGURE OUT WHO EVERYBODY WAS, AND YOU HELPED ME FURTHER MY

3    UNDERSTANDING, IT IS MORE COMPLICATED THAN MANY OF THE CASES.

4         SO THANK YOU ALL.  AND AS I SAY, SHOULD WE COME TOGETHER

5    AGAIN, THIS WASN'T BAD, I MAY RECONSIDER DOING IT ON ZOOM

6    BECAUSE I KNOW SOME OF YOU WOULD TRAVEL QUITE A DISTANCE, AND

7    IT WOULD TAKE YOU THREE DAYS AS OPPOSED TO THREE HOURS, AND

8    THAT'S A BIG DIFFERENCE FOR YOUR CLIENTS.  SO BECAUSE YOU DID

9    SUCH A GOOD JOB, I MIGHT BE MORE WILLING TO DO IT ON ZOOM, SO

10   THANK YOU ALL FOR THAT.

11        ALL RIGHT.  I WILL SEE YOU AT THE NEXT MOTION.

12        MS. HERKENHOFF:  THANK YOU VERY MUCH, YOUR HONOR.

13        MR. TANG:  THANK YOU, YOUR HONOR.

14        MR. PURPURA:  THANK YOU, YOUR HONOR.

15        MR. BERRY:  THANK YOU, YOUR HONOR.

16        (THE PROCEEDINGS WERE CONCLUDED AT 10:33 A.M.)

17

18

19

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185        DATED: 4/24/23