JOHN W. BERRY (State Bar No. 295760)
John.Berry@mto.com
JOHN M. GILDERSLEEVE (State Bar No. 284618)
John.Gildersleeve@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

*Attorneys for Defendants View, Inc., f/k/a CF
Finance Acquisition Corp. II, and Rao Mulpuri*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., and CF GROUP MANAGEMENT, Inc.,<br><br>        Defendants. | Case No. 5:21-cv-06374-BLF<br><br>CLASS ACTION<br><br>**DEFENDANTS VIEW, INC.'S AND RAO MULPURI'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT AND TO STRIKE ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Filed concurrently:<br><br>- Declaration of John W. Berry<br>- [Proposed] Order<br><br>Date:    March 14, 2024<br>Time:    9:00 a.m.<br>Crtrm.:    3<br><br>Judge:    Hon. Beth Labson Freeman |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on March 14, 2024, at 9:00 a.m., before the Honorable Beth Labson Freeman in Courtroom 3 of the United States District Court, 280 South 1st Street, San Jose, CA 95113, Defendants View, Inc., f/k/a CF Finance Acquisition Corp. II ("View") and Rao Mulpuri ("Mulpuri") will and hereby do move for an order (a) dismissing the Second Amended Complaint ("SAC") with prejudice under Fed. R. Civ. P. 8(a), 9(b), 12(b)(1), and 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA"), (b) striking certain allegations under Fed. R. Civ. P. 11(b) and 12(f), and (c) taking judicial notice of and considering the relevant SEC filings and releases, accounting standards, and historical stock prices, all exhibits to the accompanying declaration. The Motion is based on the Memorandum of Points and Authorities, the Declaration of John W. Berry and its exhibits, the Reply Memorandum, the files and records in this action, and such other matters as may be presented at the hearing.

**ISSUES TO BE DECIDED**

1. Whether count I under Section 14(a) of the Securities Exchange Act ("Exchange Act") against View and Mulpuri should be dismissed because Lead Plaintiff has failed to plead causation, negligence, and falsity with particularity.

2. Whether count III under Section 10(b) of the Exchange Act against View and Mulpuri should be dismissed because Lead Plaintiff has failed to plead loss causation, scienter, and falsity with particularity.

3. Whether counts II and IV under Section 20(a) of the Exchange Act against Mulpuri should be dismissed for failure to plead the primary violations and the claim's required elements.

4. Whether the allegations at ¶¶ 74-83, 207-228 of the SAC should be stricken because their inclusion violates Fed. R. Civ. P. 11(b), as they are copied, verbatim and without any identified reasonable investigation by Lead Plaintiff, from the complaint in *SEC v. Prakash*, No. 3:23-cv-03300 (N.D. Cal. July 3, 2023) (Dkt. No. 1 ¶¶ 24-33, 34-64).

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................. 1

II.     THE SECOND AMENDED COMPLAINT ........................................................ 1

III.    ARGUMENT ...................................................................................................... 3

        A.      The Section 10(b) Claim Fails .................................................. 3

                1.      Loss causation cannot be pled for the alleged accounting fraud ………..…. 3

                2.      No causation is pled for Lead Plaintiff's second theory .………………. 5

                3.      The scienter allegations fail and the copied allegations should be stricken ... 5

                4.      There was no duty to disclose View's warranty contract practices ............... 8

        B.      The Section 14(a) Claim Fails ................................................................. 8

                1.      Lead Plaintiff lacks loss causation for its Section 14(a) claim ...................... 8

                2.      The SAC fails to plead transaction causation ……………………………. 9

                3.      Lead Plaintiff's negligence theory lacks specificity and plausibility ……... 10

                4.      The SAC fails to plead solicitation for View and Mulpuri ……………….. 11

        C.      The Control Person Claims Also Fail ................................................... 12

        D.      Lead Plaintiff's Attempt to Deputize Another Plaintiff Should Be Rejected .......... 12

IV.     CONCLUSION ................................................................................................. 13

VIEW, INC.'S AND RAO MULPURI'S MOTION TO DISMISS AND TO STRIKE

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re AGNC Inv. Corp.*,
  2018 WL 3239476 (D. Md. July 3, 2018) ................................................................................9

*In re Apollo Grp., Inc. Sec. Litig.*,
  2011 WL 5101787 (D. Ariz. Oct. 27, 2011) ............................................................................6

*Attia v. Google LLC*,
  2018 WL 2971049 (N.D. Cal. June 13, 2018) ..........................................................................6

*Bajjuri v. Raytheon Techs. Corp.*,
  2023 WL 3650554 (D. Ariz. May 25, 2023)..............................................................................5

*Barr v. Matria Healthcare, Inc.*,
  324 F. Supp. 2d 1369 (N.D. Ga. 2004) ....................................................................................4

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020)....................................................................................................3

*Burgess v. Premier Corp.*,
  727 F.2d 826 (9th Cir. 1984)..................................................................................................12

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002)..................................................................................................12

*In re Connetics Corp. Sec. Litig.*,
  542 F. Supp. 2d 996 (N.D. Cal. 2008) ....................................................................................6

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010)..................................................................................................8

*Desaigoudar v. Meyercord*,
  223 F.3d 1020 (9th Cir. 2000)..................................................................................................9

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002)....................................................................................................8

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ..................................................................................................................4

*In re Exodus Comm'ns, Inc. Sec. Litig.*,
  2006 WL 2355071 (N.D. Cal. Aug. 14, 2006)........................................................................13

*Glaser v. Enzo Biochem, Inc.*,
  464 F.3d 474 (4th Cir. 2006).................................................................................................3, 4

*Gru v. Axsome Therapeutics, Inc., et al.*,
  2023 WL 6214581 (S.D.N.Y. Sept. 25, 2023) .........................................................................4

VIEW, INC.'S AND RAO MULPURI'S MOTION TO DISMISS AND TO STRIKE

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000)................................................................................................12

*Hulliung v. Bolen*,
  548 F. Supp. 2d 336 (N.D. Tex. 2008)......................................................................................9

*In re Impax Labs., Inc. Sec. Litig.*,
  2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) .......................................................................13

*In re Infineon Techs. AG Sec. Litig.*,
  266 F.R.D. 386 (N.D. Cal. 2009)............................................................................................13

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
  998 F.3d 397 (9th Cir. 2021)....................................................................................................3

*Kelley v. Rambus, Inc.*,
  2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) ...........................................................................9

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003)................................................................................................13

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
  2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013) ...........................................................................5

*MacPhee v. MiMedx Grp., Inc.*,
  73 F.4th 1220 (11th Cir. 2023)............................................................................................4, 5

*Maple v. Costco Wholesale Corp.*,
  649 F. App'x 570 (9th Cir. 2016)............................................................................................13

*Masters v. GlaxoSmithKline*,
  271 F. App'x 46 (2d Cir. 2008)................................................................................................5

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ...................................................................................................................8

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013)................................................................................................4

*Moreno v. AutoZone, Inc.*,
  410 F. App'x 24 (9th Cir. 2010)..............................................................................................13

*In re Nutanix, Inc. Sec. Litig.*,
  2021 WL 783579 (N.D. Cal. Mar. 1, 2021) ...........................................................................12

*Okla. Firefighters Pension & Ret. Sys. v. IXIA*,
  50 F. Supp. 3d 1328 (C.D. Cal. 2014)......................................................................................7

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
  2023 WL 4418886 (N.D. Cal. May 24, 2023) ..........................................................................6

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014)..................................................................................................8

*Ret. Sys. v. Bush*,
    2022 WL 1467773 (N.D. Cal. Mar. 1, 2022) ................................................................................10

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ....................................................................................................12

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ....................................................................................................13

*SEC v. Hurgin*,
    2022 WL 4448561 (S.D.N.Y. Sept. 23, 2022) .........................................................................11

*SEC v. Leslie*,
    2008 WL 3876169 (N.D. Cal. Aug. 19, 2008) .........................................................................10

*SEC v. Mercury Interactive, LLC*,
    2009 WL 2984769 (N.D. Cal. Sept. 15, 2009) ...........................................................................9

*Sheet Metal Workers Loc. 32 Pension Fund v. Terex Corp.*,
    2018 WL 1587457 (D. Conn. Mar. 31, 2018) ............................................................................5

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    2010 WL 199717 (N.D. Cal. Jan. 13, 2010) ............................................................................13

*In re Snap Inc. Sec. Litig.*,
    394 F. Supp. 3d 1156 (C.D. Cal. 2019) ...................................................................................12

*Taormina v. Annie's, Inc.*,
    2015 WL 1743585 (N.D. Cal. Apr. 16, 2015) ............................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...................................................................................................................6

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) .......................................................................................6

*In re Verisign, Inc., Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) .....................................................................................5

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ......................................................................................................7

*Wehlage v. EmpRes Healthcare Inc.*,
    821 F. Supp. 2d 1122 (N.D. Cal. 2011) ...................................................................................12

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) .......................................................................................................8

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ....................................................................................................5

*Yamamoto v. Omiya*,
    564 F.2d 1319 (9th Cir. 1977) ..................................................................................................11

VIEW, INC.'S AND RAO MULPURI'S MOTION TO DISMISS AND TO STRIKE

*Zucker v. Zoran Corp.*,
  No. C 06-04843 WHA (N.D. Cal. Feb. 21, 2007) .......................................................................12

**RULES - OTHER**

Fed. R. Civ. P. 9 ..........................................................................................................................10

Fed. R. Civ. P. 11 ...............................................................................................................1, 6, 10

Fed. R. Civ. P. 15 ........................................................................................................................12

Fed. R. Civ. P. 24 ........................................................................................................................12

VIEW, INC.'S AND RAO MULPURI'S MOTION TO DISMISS AND TO STRIKE

## I.      INTRODUCTION

Lead Plaintiff had three months to address its many pleading flaws, but fixed none of them. To be sure, the Second Amended Complaint ("SAC") narrows the case by dropping several claims and defendants, including all of View's former and current non-management directors, so that only two primary claims remain—a Section 10(b) intentional fraud claim and a Section 14(a) proxy fraud claim. But the SAC adds no new substantive facts, confidential witness accounts, or allegations of insider profits. As before, it continues to allege fraud based on a technical accounting error made when View booked its warranty accrual for the "smart" windows it sells.

View and its CEO, Rao Mulpuri, now move to dismiss the SAC because it is still saddled with the same defects in its causation, scienter, and negligence allegations. On causation, nothing has changed. Lead Plaintiff's losses cannot be causally connected to any alleged fraud because it sold its View stock before the allegedly concealed "truth" was revealed. As for scienter, Lead Plaintiff just repeats allegations the Court already rejected, and copies allegations from the SEC's parallel case against View's former CFO. But the SEC allegations concern only negligence and so cannot establish scienter. And these lifted allegations—the sole basis of Lead Plaintiff's negligence claim—do not identify any duty any person had or violated, and do not even mention Mulpuri. In any event, they should be stricken. Lead Plaintiff copied and pasted them word-for-word from the SEC's complaint, with no apparent "independent investigation" of its own, in violation of Rule 11.

Lead Plaintiff attempts to resurrect its claims by inserting an "additional plaintiff" who never sold his shares like Lead Plaintiff did. But Lead Plaintiff spent almost a year arguing in this Court and the Ninth Circuit that it should lead the putative class because its over 420,000 shares of View stock generated the "greatest financial loss." Having secured that role, Lead Plaintiff cannot shirk its obligation to plead the element of causation by deputizing a small-time shareholder (who owned only 1,000 shares) to substitute in as the lead for the whole class. Lead Plaintiff must plead causation for itself, which it cannot do. The SAC should be dismissed—this time with prejudice.

## II.     THE SECOND AMENDED COMPLAINT

The SAC no longer asserts Securities Act claims, and no longer alleges View's cash burn in March 2022 was misstated. It also drops as defendants all of View's former and current directors

VIEW, INC.'S AND RAO MULPURI'S MOTION TO DISMISS AND TO STRIKE

except Mulpuri, and shortens the class period by seven months. *See* SAC ¶¶ 1-2.

The SAC's core allegations are unchanged, however. It continues to focus on the fact that View "identified a quality issue" in 2019 in a component for some of its "smart" windows, or "insulated glass units" ("IGUs"). *Id.* ¶¶ 104, 109, 123. Although View "stopped using" that component, it disclosed at the time that it decided to "replace[]," and "expect[ed] to continue to replace," the "affected IGUs for the remainder of the period covered by the warranty." *Id.*

View also disclosed that it provides a 10-year "standard assurance type warranty." *Id.* ¶¶ 93, 107, 121. Under GAAP, View (like any company with a warranty) books an accrual that estimates the costs to cover the warranty obligations over the warranty period. *See id.* ¶ 208; Declaration of John W. Berry ("Berry Decl.") Exs. 11, 12. Calculating a warranty accrual is complex and involves significant judgment under GAAP. *See id.* To calculate its warranty accrual, View estimated the failure rate for the affected IGUs, along with the costs to replace them over the 10-year warranty period. *See* Berry Decl. Ex. 2 (CF II S-4 2020) at 329; Ex. 4 (CF II proxy stmt. 2021) at 88-89.

On August 16, 2021, View disclosed that its Audit Committee had begun investigating "the adequacy of [its] previously disclosed warranty accrual." SAC ¶ 128. Nothing else about the accrual or the investigation was reported at that time. On November 9, 2021, View reported that (a) its internal investigation had concluded, (b) its warranty accruals "were materially misstated" and so it would "be restating" its financial statements, (c) the investigation concluded that View's finance team had withheld information about "applicable costs" related to the warranty accrual from View's board and its auditors, and (d) the CFO, Prakash, resigned "in connection with the internal investigation findings." *Id.* ¶¶ 28, 84, 129, 142. View also disclosed that its previously reported $22 million warranty accrual would be restated to between $40 and $58 million. *Id.* ¶ 129.

View filed its restated financial statements in June 2022. There, it disclosed the reason for the error: it had "inappropriately excluded from the warranty obligation the installation labor and freight costs that it had incurred, [and] expected to continue to incur." *Id.* ¶ 47. View explained that it had also *over*estimated the IGU failure rate, which had a "partially offsetting" effect on the error. *Id.* The misstated accrual increased View's 2019 net loss by 7%, from $289 million to $312 million. Berry Decl. Ex. 10 (View 10-K 2022) at 109. It did not affect View's revenue, or cause

VIEW, INC.'S AND RAO MULPURI'S MOTION TO DISMISS AND TO STRIKE

Case 5:21-cv-06374-BLF   Document 181   Filed 10/02/23   Page 10 of 21

View to report a profit rather than a loss, for any period. *See id.*

The SAC appears to assert two fraud theories. First, as before, it alleges View misstated its warranty accrual accounting because the costs to install and ship replacement windows were not included. *See e.g.*, SAC ¶¶ 87, 92, 94, 98, 106, 108, 111. Second, it seems to assert a new theory—that View failed to disclose that it had gone "above and beyond" its warranty contracts by paying these installation and freight costs when it was contractually not required to do so. *Id.* ¶¶ 7, 134.

In considering their motion, View and Mulpuri ask the Court to take judicial notice of, and consider as incorporated by reference, the relevant SEC filings, accounting standards, and historical stock prices, attached as exhibits to the Berry Declaration. *See* Dkt. No. 168 ("Order") at 7-9.

## III.   ARGUMENT

### A.   The Section 10(b) Claim Fails

**1.   Loss causation cannot be pled for the alleged accounting fraud.** Lead Plaintiff cannot plead loss causation for its main fraud theory—that View's warranty accounting was purposefully misstated. To plead loss causation, a "'plaintiff must show that after purchasing her shares *and before selling*, the following occurred: (1) "the truth became known," and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated.'" *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (quoting *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020)) (emphasis added). "It is only after the fraudulent conduct is disclosed to the investing public, followed by a drop in the value of the stock, that the hypothetical investor has suffered a 'loss' that is actionable." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 479 (4th Cir. 2006); *see* Order at 33.

Lead Plaintiff can never make this showing because it did not own View stock when the alleged truth became known. According to the SAC, that "truth" was not disclosed until November 2021 when View's stock price fell almost 14% after it reported, for the first time, its need to restate its financial statements due to the "'materially misstated'" warranty accruals, as well as the internal investigation's findings and the CFO's resignation. SAC ¶¶ 28, 84, 129, 142. But Lead Plaintiff had already sold all of its View shares before this November disclosure. *See* Dkt. No. 175-2 at 3 (trading history showing sale of all stock by September 24). Lead Plaintiff thus cannot show that it

-3-    Case No. 5:21-cv-06374-BLF

VIEW, INC.'S AND RAO MULPURI'S MOTION TO DISMISS AND TO STRIKE

suffered a loss causally connected to the alleged fraud. *See MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1248 (11th Cir. 2023) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)); *Glaser*, 464 F.3d at 479 (affirming dismissal for failure to plead loss causation because plaintiffs "had already sold all their [] shares" by time alleged truth was revealed).

Although Lead Plaintiff calls the earlier August 2021 disclosure of an internal investigation a "partial" corrective disclosure—presumably because Lead Plaintiff still owned View stock at that time (*see* SAC ¶¶ 128-129)—that does not solve Lead Plaintiff's causation problem. To plead loss causation, Lead Plaintiff must have still owned shares when the November disclosure was made because only that later disclosure revealed the allegedly concealed "truth."

The Eleventh Circuit's holding earlier this year in *MacPhee* addressed this exact issue. There, the lead plaintiff alleged an accounting fraud came to light through "a series of partial corrective disclosures," which, as here, began with disclosures about investigations and ended with an announcement that the company had to restate its financials and that its CFO and other officers had resigned. 73 F.4th at 1230, 1234. The Eleventh Circuit held that, even though the lead plaintiff owned stock when the investigations were first reported in the earlier so-called "partial" disclosures, loss causation could not be pled because plaintiff sold its shares before that key, final announcement. *See id.* at 1248 (whether earlier "announcement of … investigation" could "qualify as partial corrective disclosure" did not matter because plaintiff sold stock before disclosure of "'finding of fraud or wrongdoing'") (quoting *Meyer v. Greene*, 710 F.3d 1189, 1201 n.13 (11th Cir. 2013)).

The same is true here. Lead Plaintiff may have owned shares in August 2021, but its sale of its stock before the truth was allegedly revealed in November means its losses cannot be causally connected to the alleged fraud. *See Gru v. Axsome Therapeutics, Inc., et al.*, 2023 WL 6214581, at *5 (S.D.N.Y. Sept. 25, 2023) (no loss causation where lead plaintiff sold stock before last corrective disclosure); *Barr v. Matria Healthcare, Inc.*, 324 F. Supp. 2d 1369, 1380 (N.D. Ga. 2004) (similar).

The August 2021 "partial" disclosure has another problem. Although View's stock price dropped from $5.18 to $3.92 on August 17 (SAC ¶ 128), it quickly rebounded to $5.24 by September 2, and then to $6.08. *See* Berry Decl. Ex. 13. That "quick and sustained price recovery … refutes the inference" that the August disclosure was a corrective disclosure of any alleged misstatement.

-4-    Case No. 5:21-cv-06374-BLF

*Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021); *see also Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *15 (D. Ariz. May 25, 2023) (no "loss causation because [company's] stock … recovered quickly"). Indeed, the price recovery was so substantial that Lead Plaintiff made a tidy profit on the rebound, buying 30,000 shares on August 19 at $3.52-3.57 per share, and then selling those shares at a higher price ($4.58 per share) seven days later. *See* Dkt. No. 175-2 at 3.

**2.    No causation is pled for Lead Plaintiff's second theory.**    Causation is also lacking for Lead Plaintiff's apparent new theory that View failed to disclose its "above-and-beyond" warranty practice. Lead Plaintiff alleges this practice was revealed in May 2022 when Mulpuri "admitted" that View was "voluntarily" going "above and beyond" its contractual obligations. SAC ¶ 134. But even though Lead Plaintiff bought more shares after the November 2021 disclosure, it sold all of those shares before the so-called "admission" in May 2022. *See* Dkt. No. 96 (trading history showing sale of all stock by May 10). That alone defeats loss causation. *See supra.*

Loss causation also cannot be pled because the May 2022 announcement is the only alleged disclosure of View's "above-and-beyond" practice, and View's stock price "did not fall, but rather increased" by over 33% after the announcement. SAC ¶ 145; *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1208 (N.D. Cal. 2007) (no loss causation as "VeriSign's stock price went up, not down" after alleged corrective disclosures); *Sheet Metal Workers Loc. 32 Pension Fund v. Terex Corp.*, 2018 WL 1587457, at *10 (D. Conn. Mar. 31, 2018) (no loss causation as "stock price went up"). And the announcement "cannot be relied upon for loss causation" because it occurred "after the close of the class period." *Masters v. GlaxoSmithKline*, 271 F. App'x 46, 51 (2d Cir. 2008); *see Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 2013 WL 4405538, at *10 (S.D.N.Y. Aug. 5, 2013) (similar), *aff'd*, 783 F.3d 383 (2d Cir. 2015). Also, Lead Plaintiff's claim that the stock price increase in May 2022 "confirm[ed]" the August and November 2021 disclosures (SAC ¶ 145) does not solve this problem because, as *MacPhee* instructs, those disclosures said nothing about View's warranty practices, much less what specific costs it was or was not paying. *See supra*.

**3.    The scienter allegations fail and the copied allegations should be stricken.** As the Court explained in rejecting Lead Plaintiff's scienter allegations in its previous complaint, scienter is "adequately pled when 'all of the facts alleged, taken collectively, give rise to a strong

inference of scienter.'"  Order at 29 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)).  "To qualify as 'strong' … an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.

The SAC does not meet this standard.  Because the Court rejected the previous scienter allegations, Lead Plaintiff adds a new subsection in the SAC.  *See* SAC, § XIV.A.1 at pp. 62-65. But these new allegations are copied and pasted, verbatim, from the SEC's complaint against View's former CFO, Prakash.  *Compare* SAC ¶¶ 74-83, 207-228 *with* Berry Decl. Ex. 14 (Compl., *SEC v. Prakash*) ¶¶ 24-33, 34-64.  This violates Rule 11(b)'s requirement that a plaintiff conduct a "reasonable investigation" of its case.  Fed. R. Civ. P. 11(b).  Therefore, these new, second-hand allegations cannot support scienter and should be stricken.  *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1004-06 (N.D. Cal. 2008) (striking allegations in securities complaint copied from related SEC complaint); *see also Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2023 WL 4418886, at *4-5 (N.D. Cal. May 24, 2023) (striking allegations "lift[ed]" from other complaint because, as here, plaintiffs "could have corroborated" them with confidential witnesses but did not); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 817 (N.D. Cal. 2019) (Freeman, J.) (dismissing complaint where scienter based on "second-hand allegations" from related FTC action); *Attia v. Google LLC*, 2018 WL 2971049, at *15 (N.D. Cal. June 13, 2018) (Freeman, J.) (striking allegations based on allegations of other cases); *In re Apollo Grp., Inc. Sec. Litig.*, 2011 WL 5101787, at *10 n.5 (D. Ariz. Oct. 27, 2011) (similar).

Once these improper allegations are stricken, the only scienter allegations left are the same ones, unchanged, from the prior complaint.  *Compare* SAC ¶¶ 206, 229-252 *with* Dkt. No. 96 (Am. Compl.) ¶¶ 224, 225-246, 264-265.  But the Court already found those allegations about officer/director resignations, core products, GAAP compliance, investigations and financial restatements to be insufficient both "standing alone" and "holistically."  Order at 30-33.

And even if the new, copied-and-pasted SEC allegations are considered, scienter is not pled. To start, those second-hand allegations are, as the SEC itself explains, negligence-based.  Berry Decl. Ex. 15 (SEC release explaining SEC "charged" Prakash for his "negligent failure").  They

therefore say nothing about whether anyone *intended* to defraud investors.  Indeed, this case is not about a company intentionally hiding a product defect or the costs to deal with the defect.  As the SAC acknowledges, the defect was disclosed, and, although installation and freight costs were mistakenly not added to the warranty accrual, those costs were booked and reported, each financial period, in View's income statement.  *See* SAC ¶ 83.

The SAC thus lacks the allegations needed to plead scienter.  There are no allegations of confidential-witness accounts, suspicious stock sales, or other hallmarks of scienter.  *See Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).  Nor does the SAC allege that anybody knew GAAP required the installation and freight costs to be included in the accrual calculation, or knew these costs were left out of that calculation.  There are also no allegations that the applicable GAAP standards are so straightforward that scienter may be implied from the failure to include these costs.  *See, e.g., id.* at 857.  The absence of such allegations requires dismissal.  Indeed, these pleading omissions are the same ones the Court identified before.  *See* Order at 30, 33; *see also Taormina v. Annie's, Inc.*, 2015 WL 1743585, at *4 (N.D. Cal. Apr. 16, 2015) (Freeman, J.) (dismissing complaint that did "not allege any contemporaneous facts suggesting that the Individual Defendants believed at the time that the methodology used to account for promotional costs was inappropriate"); *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1361 (C.D. Cal. 2014) (dismissing complaint that did "not plead facts demonstrating that defendants knew of the principles or knew they were being incorrectly interpreted and applied").

The SAC also continues to lack allegations to establish View's alleged scienter through its officers.  Other than saying CEO Mulpuri was present in a meeting, the new "negligence-based" allegations copied from the SEC do not even mention him.  *See* SAC ¶¶ 74-83, 207-228.  The rest of the SAC just says what the prior complaint alleged—alleging only that he knew View had decided to "cover all Installation Costs." *Id.* ¶¶ 7-8, 73, 134.  But as this Court held before, alleging he knew View would pay installation costs is far from alleging the CEO knew the accrual was misstated under complex GAAP accounting rules by not including those costs.  *See* Order at 30.  Scienter, therefore, is not pled for Mulpuri.

Nor can the SAC impute the alleged scienter of its former CFO, Prakash, to View.  The only

-7-                          Case No. 5:21-cv-06374-BLF

individualized allegations about Prakash are the "negligence-based" allegations copied from the SEC, but they only allege the CFO was "aware of the installation costs" and "failed to ensure" they "were included in View's warranty liability." SAC at p. 62. That is insufficient for scienter. *See DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) (allegation of "[n]egligence, even gross negligence, does not rise to the level" of scienter).

**4.    There was no duty to disclose View's warranty contract practices.** Finally, the SAC's apparent new theory that View should have disclosed it was going "above and beyond" what its contracts require is not an actionable omission theory. The securities laws "'do not create an affirmative duty to disclose any and all material information.'" *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)). The Ninth Circuit has "expressly declined to require a rule of completeness for securities disclosures," *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014), because "[o]ften, a statement will not mislead even if it is incomplete or does not include all relevant facts," *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1109 (9th Cir. 2010).

Here, the only allegedly misleading statement was a paragraph in View's SEC filings titled "Product Warranties," which merely stated that View has "a standard assurance type warranty that our IGUs will be free from defects … for 10 years." SAC ¶¶ 93, 107, 121. This statement says nothing about View's specific contract obligations, much less what costs it was obligated to pay. While Lead Plaintiff calls this a disclosure about "View's warranty policy" (*e.g.*, *id.* ¶ 93), nowhere does it describe View's policies as to its warranty. So when View decided to "go above and beyond" and pay installation costs, it had no duty to disclose that decision because that practice did not make its "Product Warranties" disclosure (or any other disclosure) misleading. *See, e.g.*, *Intuitive Surgical*, 759 F.3d at 1061 (affirming dismissal of claim that company had to disclose difficulties with "market saturation," "economic downturn," "higher utilization rates," or declines in growth because those disclosures "do not purport to speak to any trends in … growth or revenues").

**B.    The Section 14(a) Claim Fails**

**1.    Lead Plaintiff lacks loss causation for its Section 14(a) claim.** The Section 14(a) claim still has a basic defect. As the Court explained, under Section 14(a), "a plaintiff must

establish that the allegedly misleading proxy caused the plaintiff injury in the form of economic loss." Order at 24.  But Lead Plaintiff sold the 80,000 shares it owned as of the January 2021 record date *before* the proxy vote on the merger in March 2021.  Therefore, it could not have suffered a loss caused by any alleged misstatements in the proxy.  *See id.* at 24-25.  The SAC offers no new allegations to cure this defect.

**2.    The SAC fails to plead transaction causation.**  Given the loss causation defect in the prior complaint, the Court did not need to address Lead Plaintiff's inability to plead transaction causation.  But that defect remains and also justifies dismissal.  To plead transaction causation under Section 14(a), the SAC must allege an "essential link" between the alleged false proxy and its loss.  *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).  That "can only be established when the proxy statement at issue *directly authorizes* the loss-generating corporate action."  *SEC v. Mercury Interactive, LLC*, 2009 WL 2984769, at *4 (N.D. Cal. Sept. 15, 2009) (quotations omitted).  That is, the proxy must have sought "votes to authorize the corporate decision that allegedly caused the economic harm."  *In re AGNC Inv. Corp.*, 2018 WL 3239476, at *3-4 (D. Md. July 3, 2018).

Here, the SPAC's proxy statement did not "*directly authorize*[] the loss-generating corporate action," namely, misstating the accrual.  *Mercury Interactive*, 2009 WL 2984769, at *4 (quotations omitted).  That error was first made in April 2020 for View's 2019 fiscal year (SAC ¶¶ 137, 212)—long before the vote in March 2021—and did not require any vote of the SPAC shareholders.  The damages the SAC seeks under Section 14(a)—the loss of value in View "when the truth was disclosed" (*id.* ¶ 196)—would have occurred *with or without* the allegedly false proxy.  The "essential link" requirement therefore is not met.  *See AGNC*, 2018 WL 3239476, at *6 (no transaction causation as alleged loss was due to decision that "was not itself put to a vote of the shareholders through" proxy); *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *7 (N.D. Cal. Dec. 9, 2008) (Section 14(a) claim "illogically postulates an 'essential link' between the allegedly false proxy statements and corporate actions that occurred years earlier"), *aff'd*, 384 F. App'x 570, 573 (9th Cir. 2010); *Hulliung v. Bolen*, 548 F. Supp. 2d 336, 340 (N.D. Tex. 2008) ("simply illogical to suggest that Proxies could be an 'essential link' to—i.e., directly authorize—corporate actions that were taken three years or more *before* any of the proxies were distributed").

VIEW, INC.'S AND RAO MULPURI'S MOTION TO DISMISS AND TO STRIKE

In short, Lead Plaintiff's theory is that the proxy misled the SPAC's shareholders into authorizing a merger that made them View shareholders, only to be in the position of *potentially* being harmed months later, if they happened still to be View shareholders, by conduct that *preceded* and occurred *independently* of their vote.  That "multi-step theory" is "too tenuous to rise to the level of 'essential link.'"  *City of Pontiac Gen. Emps.' Ret. Sys. v. Bush*, 2022 WL 1467773, at *5 (N.D. Cal. Mar. 1, 2022).

**3.    Lead Plaintiff's negligence theory lacks specificity and plausibility.**  The SAC's generalized allegations of negligence continue to be deficient.  Other than a single, conclusory allegation that Defendants collectively "acted negligently" (SAC ¶ 183), the prior complaint lacked any "individualized allegations of negligence."  Order at 24.  So the SAC adds negligence-styled allegations copied from the SEC's complaint against Prakash.  *Compare* SAC, Ex. A (chart identifying negligence allegations at SAC ¶¶ 74, 76-79, 81-83) *with* Berry Decl. Ex. 14 (Compl., *SEC v. Prakash*) ¶¶ 24, 26-29, 31-33).  Those allegations should be stricken under Rule 11(b), *see supra*, and without them, no other allegations address negligence.  The Section 14(a) claim therefore should be dismissed.

Even if the allegations taken from the SEC's case were considered, they are not pled with particularity.  While the SEC does not need to comply with the PSLRA's pleading standards, the Lead Plaintiff does.  *See SEC v. Leslie*, 2008 WL 3876169, at *6 (N.D. Cal. Aug. 19, 2008).  And because its Section 14(a) claim continues to turn on the same alleged misstatements and underlying conduct as its Section 10(b) claim, and so sounds in fraud, the Lead Plaintiff's negligence-styled Section 14(a) claim is subject to Rule 9(b) and the PSLRA.  *See* Order at 23-24; SAC, Ex. A (identifying same disclosures and conduct for each claim).

The new allegations, however, do not meet these heightened pleading requirements.  The Court instructed Lead Plaintiff to "make individualized allegations" and "allege[] the duty [each defendant] owed to the Plaintiff and how that duty was breached."  Order at 24.  But the word "duty" is found nowhere in the SAC.  As for View's CEO Mulpuri, the SAC only alleges, in conclusory fashion, that he "was negligent" because he "was responsible for ensuring that financial information … was both accurate and not misleading."  SAC ¶ 193.  There are no allegations about how he acted

negligently, what he should or should not have done, or how he acted unreasonably with respect to accounting judgments he is not even alleged to have been involved in. The negligence allegations identified by Lead Plaintiff in its chart accompanying the SAC do not even mention his name. *See* SAC, Ex. A. Thus, negligence for View and its CEO Mulpuri has not been pled.

To the extent the SAC seeks to plead View's alleged negligence through its former CFO Prakash, that fails as well. To do so, the SAC relies only on the allegations copied from the SEC's complaint. But these allegations merely plead that Prakash "failed to ensure" that his finance team was made aware of the installation costs and "considered" View's practice of going "above and beyond" the warranty contracts. SAC ¶¶ 209-210, 218. The SAC never alleges those team members actually did not know or do those things. To the contrary, the finance team were the ones booking and entering the installation costs, and those costs were fully disclosed in View's income statement. *See id.* ¶¶ 9, 79, 190, 191. The SAC just presumes—improperly—that an accounting error made when costs of this nature are not included in a balance-sheet accrual must be fraud. Yet the SAC does not even allege that Prakash (or any other Defendant) was involved in that warranty accrual calculation, much less that he was negligent in performing it.

**4. The SAC fails to plead solicitation for View and Mulpuri.** Because a Section 14(a) claim only "applies to those who 'solicit'" shareholder votes, Lead Plaintiff must, "at the very least," allege a "substantial connection between the use of [each defendant's] name and the solicitation effort." *Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977); *see also* Order at 26. Here, the allegedly false proxy statement was issued by the SPAC, CF II, to convince CF II shareholders to vote in favor of the de-SPAC acquisition of View. View and Mulpuri, as the target company and CEO, were not soliciting shareholders to vote on anything. Nor does the SAC allege they were. The SAC also never alleges CF II used View or Mulpuri's names to solicit CF II shareholder votes. In fact, other than alleging Mulpuri's name appears in the proxy statement, the SAC never explains how he could have had a "substantial connection" to CF II's solicitation of CF II shareholders. *See, e.g., SEC v. Hurgin*, 2022 WL 4448561, at *12 (S.D.N.Y. Sept. 23, 2022) (rejecting argument that founder/officer of target company in de-SPAC merger could be liable under Section 14(a) because court was "not prepared to rule that a person's position of authority in a

private company establishes a 'substantial connection' to a solicitation effort as a matter of law").

## C.    The Control Person Claims Also Fail

The Section 20(a) claims fail because no primary violation is pled and the SAC fails to allege with particularity how CEO Mulpuri exercised actual authority over or participated in the alleged accounting misconduct. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 (9th Cir. 2000) (authority); *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984) (participation).

## D.    Lead Plaintiff's Attempt to Deputize Another Plaintiff Should Be Rejected

In a transparent attempt to address the fact that Lead Plaintiff has no viable claims because it cannot plead loss causation, the SAC adds a so-called "additional" plaintiff, David Sherman, who only owned 1,000 shares. *See* Dkt. No. 175-3. But as Judge Alsup recognized in *Zucker v. Zoran Corp.*, No. C 06-04843 WHA (N.D. Cal. Feb. 21, 2007) (Dkt. No. 79), a new plaintiff "may not willy-nilly and unilaterally jump into this action without a proper motion to intervene or to be added as a party." Berry Decl. Ex. 16 at 1. Mr. Sherman cannot enter this case midstream without first obtaining Court permission under Rule 15 (amendment) or Rule 24 (intervention), which was never done. *See Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1125-26 (N.D. Cal. 2011).

In any event, unilaterally inserting a new plaintiff would improperly end-run the PSLRA's lead plaintiff-selection process. When a court appoints a lead plaintiff, it does not "authorize [the lead plaintiff] to invite others into the case as additional plaintiffs" without court approval. Berry Decl. Ex. 16 (*Zucker v. Zoran Corp.*) at 1. The purpose of the PSLRA's lead plaintiff selection process is to ensure that class claims are directed by the shareholder with the largest stake—typically, institutional investors, not small-scale individual investors like Mr. Sherman. *In re Cavanaugh*, 306 F.3d 726, 729, 738 (9th Cir. 2002). Nothing in the PSLRA permits a lead plaintiff or its counsel to handpick a successor. *Accord In re Nutanix, Inc. Sec. Litig.*, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021) (rejecting withdrawing lead plaintiff's proposed new plaintiff because "it is the court's role to appoint a substitute lead plaintiff, not [lead plaintiff's] or his counsel's"); *In re Snap Inc. Sec. Litig.*, 394 F. Supp. 3d 1156, 1157-58 (C.D. Cal. 2019) (similar).

That is especially true where, as here, Lead Plaintiff has no viable claim because, given its

VIEW, INC.'S AND RAO MULPURI'S MOTION TO DISMISS AND TO STRIKE

trading history, it cannot plead loss causation. *See supra*. "When a named plaintiff has no cognizable claim for relief, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010). In that situation, the named plaintiff's claims must be dismissed, and there is no basis for allowing other potential plaintiffs to join the case through amendment, intervention, or otherwise. *Id.* at 560-61; *Moreno v. AutoZone, Inc.*, 410 F. App'x 24, 25 (9th Cir. 2010) (similar); *Maple v. Costco Wholesale Corp.*, 649 F. App'x 570, 572 (9th Cir. 2016) (similar).

This rule applies with particular force here, where Lead Plaintiff not only cannot plead claims, it also lacks standing to pursue them. *See, e.g.*, *In re Exodus Comm'ns, Inc. Sec. Litig.*, 2006 WL 2355071, at *1 (N.D. Cal. Aug. 14, 2006). Because it owned no View stock before the alleged corrective disclosures in November 2021 and May 2022, Lead Plaintiff suffered no actionable injuries and so has no standing to pursue the SAC's claims. *See In re Impax Labs., Inc. Sec. Litig.*, 2008 WL 1766943, at *7 (N.D. Cal. Apr. 17, 2008) (shareholder did not "suffer[] any loss" and "does not have standing to bring suit" because it sold shares before corrective disclosure); *see also In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 394 (N.D. Cal. 2009) (plaintiff unable to show loss causation lacks standing).

Because the Lead Plaintiff lacks standing, the Court has no subject matter jurisdiction over this case and so it must be dismissed. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (directing dismissal with prejudice of putative class action where named plaintiff lacked standing); *Skilstaf, Inc. v. CVS Caremark Corp.*, 2010 WL 199717, at *6 (N.D. Cal. Jan. 13, 2010), *aff'd*, 669 F.3d 1005 (9th Cir. 2012) ("when the named plaintiff's claim is dismissed at the pleading stage, there is no longer an Article III 'case or controversy' between the parties, and the action must be dismissed"); *Exodus Comm'ns*, 2006 WL 2355071, at *1 ("where the named plaintiffs in a class action lack standing, the action must be dismissed and new named plaintiffs with standing may not intervene"). Therefore, Lead Plaintiff cannot preserve its case by "willy-nilly" adding a putative class member to take over.

## IV.    CONCLUSION

The SAC should be dismissed with prejudice.

Dated:  October 2, 2023

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: _____/s/ John W. Berry_____
            John W. Berry

*Attorneys for View, Inc., f/k/a CF Finance
Acquisition Corp. II, and Rao Mulpuri*