Jeffrey L. Steinfeld (State Bar No. 294848)
JLSteinfeld@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, California 90071
Telephone:     (213) 615-1700
Facsimile:     (213) 615-1750

James P. Smith III (*pro hac vice*)
JPSmith@winston.com
Thania Charmani (*pro hac vice forthcoming*)
ACharmani@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone:     (212) 294-6700
Facsimile:     (212) 294-4700

Attorneys for Defendants Howard W. Lutnick,
Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg,
Charlotte S. Blechman, CF Finance Holdings II, LLC,
Cantor Fitzgerald & Co., Cantor Fitzgerald, L.P., and
CF Group Management, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., CF GROUP MANAGEMENT, INC.,<br><br>Defendants. | Case No. 5:21-cv-06374-BLF<br><br>**CLASS ACTION**<br><br>**THE CF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE CF DEFENDANTS' MOTION TO DISMISS**<br><br>Concurrently filed with [Proposed] Order<br><br>Hearing:     March 14, 2024<br>Time:        9:00 a.m.<br>Judge:       Hon. Beth Labson Freeman<br>Court:       Courtroom 3 – 5th Floor<br>             (San Jose) |

## TABLE OF CONTENTS

NOTICE OF MOTION AND JOINDER ...................................................................................ii

ISSUES TO BE DECIDED ......................................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………..1

   I.  Preliminary Statement and Background ................................................................. 1

   II.  The SAC Fails to State a Claim Under Section 14(a) ........................................... 3

      A.  The SAC Fails to Plead Negligence for Any CF Defendant ................................ 3

      B.  The Section 14(a) Claim Against the CF Individuals Is Exculpated ............................ 6

      C.  No Solicitation ...................................................................................................... 7

      D.  The SAC Fails to Sufficiently Plead Loss Causation ........................................... 9

   III. The SAC Fails to State Control Person Claims under Section 20 ......................... 9

   IV. Conclusion............................................................................................................ 10

**NOTICE OF MOTION AND JOINDER**

**TO THE COURT, CLERK, AND ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on March 14, 2024, at 9:00 a.m., or at such other time as the matter may be heard, in the courtroom of the Honorable Beth Labson Freeman, at the San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113, defendants Howard W. Lutnick, Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg and Charlotte S. Blechman (Hochberg and Blechman, the "Former Outside Directors" and, collectively with the other individual defendants enumerated above, the "CF Individuals"), and CF Finance Holdings II, LLC ("Sponsor"), Cantor Fitzgerald & Co. ("CF&Co."), Cantor Fitzgerald, L.P. ("Cantor") and CF Group Management, Inc. ("CFGM" and, collectively with Sponsor, CF&Co. and Cantor, the "CF Entities") (together, the "CF Defendants") will, and hereby do, move to dismiss the Second Amended Complaint ("SAC") under Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The motion is based on the accompanying memorandum of points and authorities, the motions and supporting papers filed by other defendants to the extent incorporated in the accompanying memorandum, including the View Defendants' request for judicial notice and exhibits thereto, the papers on file, the CF Defendants' forthcoming reply brief, and portions of other Defendants' reply briefs incorporated therein, arguments of counsel, and such other matters as may be considered.

**ISSUES TO BE DECIDED**

(1)    Should Count 1, alleging violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against the CF Defendants be dismissed for failure to plead: (i) negligence; (ii) non-exculpated claims (as to the CF Individuals); (iii) solicitation (as to the CF Entities and Defendant Pion); and/or (iv) loss causation?

(2)    Should Counts 2 and 4, alleging control person liability under Section 20 of the Exchange Act against the CF Defendants (except as to the Former Outside Directors in Count 4) be dismissed because the SAC fails to adequately plead: (i) primary violations of the securities laws; and/or (ii) that any, let alone each, of the CF Defendants were controlling persons?

Dated: October 2, 2023                          WINSTON & STRAWN LLP

By: _____

Jeffrey L. Steinfeld
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213-615-1700

James P. Smith III (*pro hac vice*)
Thania ("Athanasia") Charmani
(*pro hac vice forthcoming*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: 212-294-6700


Attorneys for Defendants Howard W. Lutnick,
Paul Pion, Alice Chan, Anshu Jain, Robert J.
Hochberg, Charlotte S. Blechman, CF Finance
Holdings II, LLC, Cantor Fitzgerald & Co., Cantor
Fitzgerald, L.P., and CF Group Management, Inc.

CF Defendants' Motion to Dismiss the Second Amended Complaint – Case No. 5:21-cv-06374-BLF

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. AllianceOne, Inc.*,
  2010 WL 11508282 (S.D. Cal. Mar. 22, 2010) ................................................................9

*Almeida v. Google, Inc.*,
  2009 WL 3809808 (N.D. Cal. Nov. 13, 2009) ...............................................................9

*Bajjuri v. Raytheon Techs. Corp.*,
  2023 WL 3650554 (D. Ariz. May 25, 2023) ...................................................................9

*In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*,
  757 F. Supp. 2d 260 (S.D.N.Y. 2010) ...........................................................................8

*Bao v. SolarCity Corp.*,
  2015 WL 1906105 (N.D. Cal. Apr. 27, 2015) ...............................................................10

*Britton v. Parker*,
  2009 WL 3158133 (D. Colo. Sept. 23, 2009) .................................................................6

*Cahen v. Toyota Motor Corp.*,
  147 F. Supp. 3d 955 (N.D. Cal. 2015) ...........................................................................9

*Costanzo v. DXC Tech. Co.*,
  2020 WL 4284838 (N.D. Cal. July 27, 2020) ................................................................8

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) .......................................................................................................3

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  238 F. Supp. 3d 799 (S.D. Tex. 2017) ...........................................................................8

*Falat v. Sacks*,
  2021 WL 1558940 (C.D. Cal. Apr. 8, 2021) ..................................................................7

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
  855 F. App'x 902 (5th Cir. 2021) .................................................................................10

*In re Gupta Corp. Sec. Litig.*,
  900 F. Supp. 1217 (N.D. Cal. 1994) .............................................................................10

*Jackson v. Loews Hotels, Inc.*,
  2019 WL 6721637 (C.D. Cal. July 24, 2019) ................................................................5

*Jaiyeola v. Rivian*,
  2023 WL 4914977 (N.D. Cal. Aug. 1, 2023) (Freeman, J.) ..........................................5

iv

*In re Kraft Heinz S'holder Derivative Litig.*,
  2023 WL 2745118 (N.D. Ill. Mar. 31, 2023) ...................................................................7

*Krieger v. Atheros Commc'ns, Inc.*,
  2012 WL 1933559 (N.D. Cal. May 29, 2012) ..................................................................4

*Lapiner v. Camtek, Ltd.*,
  2011 WL 445849 (N.D. Cal. Feb. 2, 2011) ......................................................................2

*May v. KushCo Holdings, Inc.*,
  2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) .................................................................4

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................ *passim*

*In re MedCision, LLC*,
  2021 WL 4142283 (N.D. Cal. Aug. 5, 2021) ....................................................................7

*Mendell v. Greenberg*,
  612 F. Supp. 1543 (S.D.N.Y. 1985) .............................................................................7, 8

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) .........................................................................................9

*O'Sullivan v. Trident Microsys., Inc.*,
  1994 WL 124453 (N.D. Cal. 1994) .................................................................................10

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) .........................................................................................10

*Purple Mountain Tr. v. Wells Fargo & Co.*,
  432 F. Supp. 3d 1095 (N.D. Cal. 2020) .........................................................................10

*S.E.C. v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) .......................................................................................10

*SEC v. Prakash*,
  Case 3:23-cv-03300 (N.D. Cal. 2023) ..............................................................................1

*Special Situations Fund III QP, L.P. v. Brar*,
  2015 WL 1393539 (N.D. Cal. Mar. 26, 2015) ................................................................10

*In re TrueCar, Inc. S'holder Derivative Litig.*,
  2020 WL 5816761 (Del. Ch. Sept. 30, 2020) ...................................................................7

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL
  66281, at *19 (N.D. Cal. Jan. 4, 2017) ...........................................................................10

CF Defendants' Motion to Dismiss the Second Amended Complaint – Case No. 5:21-cv-06374-BLF

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  2022 WL 345066 (N.D. Cal. Feb. 4, 2022)......................................................................7

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) .......................................................................................9

*Yamamoto v. Omiya*,
  564 F.2d 1319 (9th Cir. 1977) .......................................................................................8

*Zucker v. Zoran*,
  No. C 06-04843 (N.D. Cal. Feb. 21, 2007) (Dkt. 79)..................................................3, 9

**Statutes**

8 Del. Code § 102(b)(7)...................................................................................................3, 6

Private Securities Litigation Reform Act of 1995 ...................................................... 2, 3, 4, 9

Securities Exchange Act of 1934, Section14 (15 U.S.C. §78n) ............................................ *passim*

Securities Exchange Act of 1934, Section 20 (15 U.S.C. §78t) .......................................1, 3

Securities Act of 1933(15 U.S.C. §77 et seq.)...................................................................1

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................................................3

Fed. R. Civ. P. 11(b) ....................................................................................................1

CF Defendants' Motion to Dismiss the Second Amended Complaint – Case No. 5:21-cv-06374-BLF

## I.    PRELIMINARY STATEMENT AND BACKGROUND

This Court dismissed Plaintiff's claims against the CF Defendants and provided strict instructions on what Plaintiff must do to survive dismissal. Dkt.168 (the "Order"). Plaintiff did not attempt to comply with the Court's Order, and the SAC fails to cure the deficiencies recognized by the Court.

Plaintiff's allegations relate to a merger between CF Finance Acquisition Corp. II ("CFII") and a private operating company, View, Inc. ("View"). SAC ¶¶3-5. Plaintiff's claims are based on accounting errors in *View's audited financials* discovered *after* the merger, which View's auditor, PricewaterhouseCoopers ("PwC"), had concluded prior to the merger "present[ed] [View's financial condition] fairly in all material respects," were "in conformity with [GAAP]" and were "free of material misstatement, whether due to error or fraud." Am. Compl. ("AC") ¶93. The AC attempted to plead claims against View, its officers/directors (including outside directors), PwC, and individuals and entities associated with View's arm's-length merger party (CFII), the CF Defendants.

Recognizing the myriad incurable deficiencies of the AC, Plaintiff abandoned the strict liability Securities Act claims. The SAC also does not replead claims against View's outside directors or its auditor, but, oddly, the SAC (futilely) attempts to replead Section 14 and 20 claims against the CF Defendants, who are further removed from the alleged accounting errors than the dismissed defendants. The CF Defendants are not officers, directors, or affiliates of View. SAC ¶¶31-41. The CF Individuals served on the board of CFII prior to the merger and did not join View's board or management post-merger. *Id*. ¶¶31-36, 102. The CF Entities likewise had no relationship with View. CF&Co. served as financial adviser to CFII – across the table from View (*id*. ¶56) – Sponsor was a minority shareholder of CFII prior to the merger, and CFGM and Cantor are affiliates of Sponsor.

The SAC's amendments do not save Plaintiff's claims, as they relate almost exclusively to other defendants and leave the claims against the CF Defendants substantively unchanged. *Id*. ¶¶160-98, 199-205. Indeed, in violation of FRCP 11(b), most of the amendments are copied nearly verbatim from the complaint in *SEC v. Prakash*, Case 3:23-cv-03300 (N.D. Cal. 2023), a SEC Action that asserts no liability or wrongdoing against the CF Defendants. *See* View Br. at 5-6. Simply put, the SAC fails for all the reasons recognized in the Court's Order and falls far short of the requirements therein.

*First*, the Court found that Plaintiff's Section 14 claim failed because it did not "make

individualized allegations of negligence." Order at 24. The Court ordered that for "[f]or each Defendant, Plaintiff must allege the duty that they owed to the Plaintiff and how that duty was breached." *Id.* Yet the SAC fails to plead how each (let alone any) CF Defendant was negligent as to View's alleged accounting errors. Once again, the SAC improperly lumps the CF Defendants together without any individualized allegations. *See, e.g.*, SAC ¶183 ("Defendants named in this Count acted negligently"); *Lapiner v. Camtek*, 2011 WL 445849, at *3 (N.D. Cal. Feb. 2, 2011) ("group pleading is no longer viable under the PSLRA"). Plaintiff failed to do so because the CF Defendants were not negligent: View's allegedly misleading audited financials were included in the Proxy pursuant to the report of PwC "given on the authority of said firm as experts in auditing and accounting," certifying that View's financial statements were "in conformity with [GAAP]" and were "free of material misstatement, whether due to error or fraud." AC ¶¶ 93, 159; Ex. 4 at 284; *see In re McKesson HBOC*, 126 F. Supp. 2d 1248, 1267-68 (N.D. Cal. 2000) (dismissing 14(a) claim because defendant not negligent where the misstatements are audited financials of target company in a merger proxy).

The SAC, like the AC, alleges that View "masked" the truth about its alleged accounting misstatements (SAC ¶240), preventing outsiders from discovering the error, and goes even further, alleging that View's former "[CFO and] accounting staff intentionally failed to disclose certain information to the Board of Directors" and PwC "regarding the applicable costs incurred and expected to be incurred in connection with the warranty-related obligations." *Id.* ¶84; *see id.* ¶225 (information View's CFO told PwC "was not true"). The SAC does not allege that the CF Defendants had reason to question PwC's audit or ignored "red flags."

***Second***, the Court found that Plaintiff failed to adequately allege that the CF Entities solicited shareholder votes because the AC included only conclusory allegations that the CF Entities permitted the use of their name in the Proxy, participated in meetings, reviewed diligence materials, or earned fees relating to the merger. Order at 26-27. The Court emphasized that these allegations failed to "identify the role of the individual Entity Defendants." *Id*. at 27. The SAC does nothing to bolster these barebones allegations, repeating – in some instances verbatim – the AC's conclusory allegations.

***Third***, the Court found that the AC failed to allege loss causation because Plaintiff sold all its stock before the alleged corrective disclosure. *Id*. at 25. Accordingly, the Proxy did not cause Plaintiff

2

any economic harm. *Dura Pharms. v. Broudo*, 544 U.S. 336, 342 (2005) (if plaintiff sells "before the relevant truth begins to leak out, the misrepresentation will not have led to any loss"). The SAC does nothing to cure this fatal defect with respect to Plaintiff. Instead, years after the PSLRA lead plaintiff process – and after an entire round of briefing – the SAC improperly attempts to add a second plaintiff holding a small number of shares. As Judge Alsup said in an analogous securities case, a "[new proposed plaintiff] may not willy-nilly and unilaterally jump into this action" and "all claims purportedly asserted by [new plaintiff] are stricken and [new plaintiff] is not a party to this action." Ex. 16 (*Zucker v. Zoran*, No. C 06-04843 (N.D. Cal. Feb. 21, 2007) (Dkt. 79)).

*Fourth*, the Section 14(a) claim against the CF Individuals also fails because CFII's charter contained an exculpation provision pursuant to 8 Del. Code §102(b)(7) that shields its directors from liability for negligence (Ex. 3 §8.1) and Plaintiff expressly pled the Section 14(a) claim based "solely on negligence," disclaiming "any allegation … sounding in fraud." SAC ¶161.

*Finally*, Plaintiff's Section 20(a) "control person" claims must be dismissed because the SAC fails to: (i) plead an underlying violation, and (ii) individually allege that each CF Defendant was a controller of View (none were). The Court instructed that "[i]n an amended pleading, Plaintiff must plead control violations Defendant by Defendant." Order at 42. Plaintiff completely failed to do so.

Accordingly, the Court should dismiss the SAC against the CF Defendants with prejudice.

## II.     THE SAC FAILS TO STATE A CLAIM UNDER SECTION 14(a)

Plaintiff's Section 14(a) claim against the CF Defendants must be dismissed for the reasons in View's Brief and because (1) Plaintiff has not pled that the CF Defendants were negligent, (2) the CF Individuals are exculpated by CFII's charter, and (3) the CF Entities did not solicit proxies.

**A.   The SAC Fails to Plead Negligence for Any CF Defendant**. The Section 14(a) claim fails because the SAC, like the AC, fails to adequately plead each CF Defendant's negligence with particularity. As in the AC, the amended Section 14 claim "sounds in fraud because it is based on the same course of conduct as the Section 10(b) claim" (Order at 23), namely the alleged misstatements in View's audited financials incorporated into the Proxy. Thus, Plaintiff's Section 14 claim "must be pled in accordance with Rule 9(b)'s heightened pleading standards." *Id.* at 24.

Moreover, the Court ordered Plaintiff to "make individualized allegations of negligence" and

allege "for each Defendant … the duty that they owed to the Plaintiff and how that duty was breached." *Id.* Despite the Court's Order, such pleading is entirely absent from the SAC. The word "duty" is not used even once in the SAC. *See Krieger v. Atheros*, 2012 WL 1933559, at *8 (N.D. Cal. May 29, 2012) (duty is "a necessary element of" §14(a)). Similarly, Count 1 does not mention the CF Defendants individually other than to generically allege that each "signed the Proxy Statement" (SAC ¶¶169-180), and to note that Messrs. Lutnick and Jain spoke about SPACs generally. *Id.* ¶¶165-168. These allegations say nothing of the CF Defendants' alleged negligence.

In direct contravention of this Court's Order, the SAC discusses negligence in generic terms. *See, e.g., id.* ¶183 ("Each of the Defendants named in this Count acted negligently"), ¶187 ("The Defendants named in this Count violated Section 14(a)"), ¶188 ("Defendants named in this Count … solicited and/or permitted use of their names in solicitations"), ¶¶189-190 (similar). Such improper group pleading fails to satisfy this Court's Order and is legally insufficient. *See In re Ocera Therapeutics*, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018) (Plaintiff must "clearly articulat[e] the duty each Defendant had to [Plaintiff] and how their failure to satisfy that duty gave rise to negligence … lumping together of Defendants will not be accepted."); *McKesson*, 126 F. Supp. 2d at 1267 (allegation that defendant "acted negligently … in distributing … the [proxy] … fail[s] under the Reform Act"); *May v. KushCo*, 2020 WL 6587533, at *7 (C.D. Cal. Sept. 25, 2020) ("[Plaintiff] impermissibly groups all [defendants] together, with no particularized facts alleged as to each [d]efendant," which is "insufficient to satisfy the particularized pleading required of the PSRLA.").

This is especially true where, as here, the alleged misstatements are ***audited financials*** of an unaffiliated target company in a merger proxy. *McKesson* is on point. There, the court dismissed Section 14(a) claims against an acquiror and its officers/directors in this exact scenario, finding that "[w]hile [target's auditor] may or may not have been negligent in failing to uncover the improprieties, there is no suggestion … [acquiror] could have known, even with reasonable diligence, that [target] was engaged in massive accounting fraud." 126 F. Supp. 2d at 1267-68. *McKesson* also rejected an allegation that "an investigation conducted with even the slightest care would have uncovered the [] accounting improprieties" because "facts pleaded in the complaint tend to negate an inference of negligence," i.e., the acquiror properly "relied on accounting done by [target's auditor]." *Id.*

4

Here, as in *McKesson*, Plaintiff's pleadings negate any inference of the CF Defendants' negligence. First, the AC alleged that PwC, View's auditor "since 2013," was required to "have a sufficient understanding of [View] and its environment, to identify areas that might represent specific risks relevant to the audit, and [to] gather sufficient appropriate audit evidence necessary to support its" report. AC ¶263. And PwC's audit report stated that View's "financial statements present [its financial condition] fairly, in all material respects" and "are in conformity with [GAAP]" and "free of material misstatement, whether due to error or fraud." *Id*. ¶93. Plaintiff cannot escape these admissions just because they are omitted from the SAC. *Jackson v. Loews Hotels*, 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019) ("Plaintiff's decision to remove [allegations from a prior pleading] does not simply erase those allegations from the case" and holding that omitted, previously pled allegations "are ... more appropriately characterized as judicial admissions that Plaintiff has not cured"); *see Jaiyeola v. Rivian*, 2023 WL 4914977, at *4 (N.D. Cal. Aug. 1, 2023) (Freeman, J.) (assertions in original pleading are "conclusively binding" on plaintiff).

Second, as in *McKesson*, the SAC alleges that the target (View) prevented others from discovering its misstatements by "mask[ing] the Company's true financial condition." *Compare* SAC ¶240 *with McKesson*, 126 F. Supp. 2d at 1267 (target "kept [others] in the dark about the improprieties"); *see also* SAC ¶215 ("All information regarding View in the publicly-available Form S-4 was supplied by View"), ¶243 ("During the Class Period, View, through its management/directors [and View's external auditor PwC], repeatedly assured" that "the Company's consolidated financial statements … were fairly presented in accordance with U.S. GAAP"). Indeed, the SAC relies on View's Audit Committee investigation and findings (*id*. ¶84), which (a) was not commenced until ***five months after the merger closed*** and (b) concluded that certain former View personnel "negligently failed to properly record" the warranty-related liabilities that led to the restatement and "***intentionally failed to disclose*** certain information ***to [View's] Board and [PwC]*** regarding … the warranty-related obligations." *Id*. And the SAC explains that View's CFO "led View's effort to prepare a response" to the SEC Comment Letter and failed to disclose information regarding warranty costs from the SEC and PwC. *Id*. ¶¶221-25.

Finally, the SAC's amended allegations ***support*** the conclusion that the CF Defendants were not negligent in failing to uncover errors in an arm's-length merger counterparty's audited financials. The

5

Memorandum in Support of the CF Defendants' Motion to Dismiss – Case No. 5:21-cv-06374-BLF

SAC details the CF Defendants' actions in ensuring that the information presented in the Proxy was accurate, including a lengthy due diligence process. *Id.* ¶¶57-60, 64. For instance:

- "on September 18, 2020 and continuing [for] several weeks, the CF II management team and its advisors continued its due diligence of View, including reviewing all materials in the Data Room, requesting additional documentation, reviewing additional information [], and holding various due diligence [] conferences with View's management team, employees, and advisors."

- "the CF II Board reviewed the results of the due diligence conducted … includ[ing]: (1) *extensive* meetings and calls with the management team and advisors of View regarding, among other things, operations and forecasts … (5) *review of historical financial performance of View (including audited and unaudited financials)* and View's management projections for View's business." *Id.*

The SAC does not allege that this diligence was insufficient or should have revealed View's accounting errors, and any such allegation would be insufficient. *See McKesson*, 126 F. Supp. 2d at 1267-68. Plaintiff acknowledges that View and its CFO hid the warranty information from outsiders, including its auditor. Indeed, Plaintiff has not repled claims against View's outside directors or PwC, even though they are admittedly closer to the alleged accounting errors than any CF Defendant.

In assessing Plaintiff's now-dismissed strict liability claims, this Court found that Plaintiff had "not made any allegations indicating it was unreasonable for the [CF Defendants] to rely on the statements of PWC or View." Order at 15. Nothing changed. If Plaintiff's allegations are insufficient for strict liability, they are insufficient for negligence. "[I]n the absence of facts that would specifically demonstrate" why each CF Defendant "knew or should have known" of the improprieties, the Section 14(a) claim must be dismissed. *Britton v. Parker*, 2009 WL 3158133, at *11 (D. Colo. Sept. 23, 2009).

Finally, the SAC's assertion that "View's leadership" knew View would cover warranty installation costs adds nothing as it is part of the previously alleged theory that View's warranty-related financials were misleading. *E.g.*, SAC ¶6. In any event, the assertion says nothing of the CF Defendants and is nonactionable for the reasons in View's brief, including immateriality and loss causation. View Br. at 3, 8.

**B.  <u>The Section 14(a) Claim Against the CF Individuals Is Exculpated</u>**. The Section 14 claim against the CF Individuals also fails because CFII's charter had an exculpation provision pursuant to 8 Del. Code §102(b)(7) that shields its directors from liability for negligence (Ex. 3 §8.1) and Plaintiff expressly pled the Section 14(a) claim based "solely on negligence," disclaiming "any allegation … sounding in fraud or intentional or reckless conduct." SAC ¶161. This is fatal. "[N]umerous courts, in

6

considering … claims brought under [§]14(a), have upheld application of exculpation clauses adopted pursuant to [§]102(b)(7)." *In re Wells Fargo*, 2022 WL 345066, at *5 (N.D. Cal. Feb. 4, 2022); *see In re Kraft*, 2023 WL 2745118, at *9 (N.D. Ill. Mar. 31, 2023) (under §14, if "plaintiffs have not pleaded that defendants acted knowingly, intentionally, or in bad faith, then the claim" does not "exceed[] the protection of the exculpatory provision"); *Falat v. Sacks*, 2021 WL 1558940, at *5 (C.D. Cal. Apr. 8, 2021) (similar). The exculpatory provision applies equally to direct and derivative claims, shielding directors from actions by "the corporation or its stockholders." Ex. 3 §8.1; *In re TrueCar*, 2020 WL 5816761, at *21 (Del. Ch. Sept. 30, 2020) (given the "exculpatory charter provision and the absence of scienter-based claims … in the Securities Class Action, [defendants] would not face a substantial likelihood of personal liability"); *see In re MedCision*, 2021 WL 4142283, at *4 (N.D. Cal. Aug. 5, 2021) (affirming dismissal of duty-of-care claim based on exculpatory provision).

**C. No Solicitation**. Section 14(a) applies only to those who "solicit" or "permit the use of [their] name to solicit" stockholder votes. Order at 26 (citing 15 U.S.C. §78n(a)(1)). At the very least, Plaintiff must plead facts showing a "substantial connection between the use of [each defendant's] name and the solicitation effort." Order at 26 (citing *Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977)). This Court previously found that Plaintiff had "not alleged solicitation by the [CF Entities]" because, inter alia, "conclusory allegations are insufficient" and Plaintiff failed to "identify the role of the individual Entity Defendants." Order at 26-27. The SAC fails to remedy the pleading deficiencies.

Despite the Court's Order, the SAC offers no more than the AC and does not show a ***substantial connection*** between the use of each defendant's name and the solicitation. Rather, the SAC repeats allegations that this Court already rejected, including that (i) the Proxy was permitted to be distributed "[b]y Order of the CF II Board" (SAC ¶171); (ii) the CF Entities "permitted the use of [their] name[s] in the [Proxy], and solicited the votes of shareholders in the Proxy" (*id.* ¶¶177-80); and (iii) they "solicited and/or permitted the use of its name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement" (*id.* ¶¶38-41). Order at 26; *see McKesson*, 126 F. Supp. 2d at 1267 (allegation of "distributing, or causing to be distributed, the Joint Proxy Statement" fails); *Mendell v. Greenberg*, 612 F. Supp. 1543, 1551-52 (S.D.N.Y. 1985) (allegation that defendant "permitted the use of its name to solicit proxies" is "legally insufficient").

Memorandum in Support of the CF Defendants' Motion to Dismiss – Case No. 5:21-cv-06374-BLF

Indeed, with respect to CFGM, the SAC repeats the identical dismissed allegation that it "solicited and/or permitted the use of its name to solicit consent … by issuing the Proxy Statement." *Compare* AC ¶46 *with* SAC ¶41. Similarly, as to CF&Co – CFII's financial advisor – the SAC repeats rejected conclusory allegations, adding only that its role was "to assist CFII with arranging stockholder meetings, introduce CFII to potential investors, assist CFII's efforts to obtain any stockholder approval for the proposed Business Combination, and assist with press releases and/or filings related to the Business Combination." SAC¶39. This generic description of a financial advisor's role – copied from a summary of CF&Co.'s engagement letter (Ex. 4 at 267) – does not describe any actions actually undertaken by CF&Co. nor plead a "substantial connection between the use of [defendant's] name and the solicitation effort." *Yamamoto*, 564 F.2d at 1323; *see Mendell*, 612 F. Supp. at 1552 (financial advisor's "participat[ion] in drafting the proxy … is insufficient to constitute a solicitation" under §14(a)); *In re Bank of Am.*, 757 F. Supp. 2d 260, 295 n.6 (S.D.N.Y. 2010) (noting authority that financial advisors "cannot be subject to liability under Section 14(a)"). The dearth of particularized allegations is not surprising given that the 278-page Proxy mentions CFGM only four times (Ex. 4 at 201, 263) and CF&Co. is only mentioned in disclosing its fees. SAC ¶39; Ex. 4 at 18, 21, 25, 44, 100.

The SAC, like the AC, fails to establish a "substantial connection" between Cantor (which disclaimed beneficial ownership of CFII shares), Sponsor, and CFII's solicitation of proxies. *See* Order at 26 (citing *Yamamoto*, 564 F.2d at 1323). Allegations of "affiliation" between Cantor, Sponsor and CFII – distinct legal entities – do not support Plaintiff's claim. *See Costanzo v. DXC Tech. Co.*, 2020 WL 4284838, at *8 (N.D. Cal. July 27, 2020) (declining to treat "two legally distinct entities – as one"); *In re Enron Corp.*, 238 F. Supp. 3d 799, 839-40 (S.D. Tex. 2017) (similar). The SAC makes no additional allegations regarding Sponsor's solicitation. SAC ¶38. The only additional allegation about Cantor is that its name also appeared in an investor presentation issued when the deal was announced in November 2020 (*id.* ¶40), which says nothing of the solicitation effort occurring ***months*** later.

Finally, Paul Pion cannot have solicited proxies. Plaintiff concedes Pion resigned from the Board prior to the Proxy being issued (SAC ¶32) and the Proxy does not mention Pion at all (his name only appears a few times in earlier documents attached as exhibits). Thus, Plaintiff's Section 14(a) claim against Pion and the CF Entities should be dismissed because they did not solicit proxies.

8

**D. The SAC Fails to Sufficiently Plead Loss Causation**. The Court's Order found that Plaintiff could not establish loss causation because it sold its shares in March 2021 before the alleged corrective disclosure in August. Order at 24-25. Accordingly, the Proxy did not cause Plaintiff economic harm, and Plaintiff lacks standing. *Cahen v. Toyota*, 147 F. Supp. 3d 955, 971–72 (N.D. Cal. 2015) ("Without [] an 'injury in fact' … plaintiffs cannot establish Article III standing."); *see also* View Br. at 8-10.

The SAC does nothing to cure this fatal defect with respect to Plaintiff. Instead, years after the PSLRA lead plaintiff process, and after an entire round of briefing, the SAC improperly attempts to add a second plaintiff who held a small number of shares. As Judge Alsup found in an analogous securities case, a "[new proposed plaintiff] may not willy-nilly and unilaterally jump into this action" and "all claims purportedly asserted by [new plaintiff] are stricken and [new plaintiff] is not a party to this action." Ex. 16 (*Zucker*, No. C06-04843 (N.D. Cal. Feb. 21, 2007)); *see Adams v. AllianceOne*, 2010 WL 11508282, at *1 (S.D. Cal. Mar. 22, 2010) (where "plaintiff never had standing, Ninth Circuit case law is clear that a new plaintiff with standing cannot step in to save the lawsuit from dismissal"); *Almeida v. Google*, 2009 WL 3809808, at *2-3 (N.D. Cal. Nov. 13, 2009) (similar).

In any event, neither Plaintiff can establish loss causation because, as detailed in View's brief, View's stock had a "quick and sustained price recovery," which "refutes the inference" that the alleged misrepresentation "caused any material drop in the stock price." *Wochos v. Tesla*, 985 F.3d 1180, 1198 (9th Cir. 2021) (affirming dismissal); *Metzler v. Corinthian*, 540 F.3d 1049, 1065 (9th Cir. 2008) (loss causation not pled where "stock quickly recovered"). *Bajjuri v. Raytheon*, 2023 WL 3650554, at *15 (D. Ariz. May 25, 2023) (no "loss causation because [company's] stock … recovered quickly").

## III.   THE SAC FAILS TO STATE CONTROL PERSON CLAIMS UNDER SECTION 20

This Court dismissed the "controller" claims, ordering that "Plaintiff must plead control violations Defendant by Defendant." Order at 42. Plaintiff did not. The control claims must be dismissed for failure to allege a primary violation (*id.*) (at most, the CF Defendants could only have control liability for the Section 14 claim) and because the SAC's control allegations remain defective. The SAC also negates any inference that the CF Defendants did not act in good faith or were culpable participants.

*First*, in violation of this Court's Order, the SAC does not alter the AC's deficient control allegations. The control allegations do not refer to any CF Defendant individually and speak only of

9

Memorandum in Support of the CF Defendants' Motion to Dismiss – Case No. 5:21-cv-06374-BLF

"the Control Defendants" or the "CF II Defendants" generically. SAC ¶¶263-65, 200-03.

**Second**, the SAC's boilerplate allegations that the CF Defendants are controllers "[b]y virtue of their high-level positions," "ownership and contractual right, participation in and/or awareness of the companies' operations" and "their positions as controlling persons" (SAC ¶¶200, 203, 263) are routinely rejected. *See, e.g.*, *Purple Mountain v. Wells Fargo*, 432 F. Supp. 3d 1095, 1106-07 (N.D. Cal. 2020) (dismissing claim that "[b]y virtue of their positions and their power to control public statements," defendants controlled the company); *In re Volkswagen*, 2017 WL 66281, at *19 (N.D. Cal. Jan. 4, 2017) (dismissing claim premised on board positions and allegations defendant was "involved in the day-to-day operations … of, and exercised power and control over" companies including "directing their public statements"); *Special Situations Fund v. Brar*, 2015 WL 1393539, at *10 (N.D. Cal. Mar. 26, 2015) (similar). These holdings apply with special force to the Former Outside Directors, as to whom there are no additional allegations. *O'Sullivan v. Trident*, 1994 WL 124453, at *13 (N.D. Cal. 1994) (allegations that outside directors "controlled the contents … of the annual reports, press releases and presentations" insufficient); *In re Gupta*, 900 F. Supp. 1217, 1242 (N.D. Cal. 1994). As to the other individuals, being a "CEO or other high-ranking officer … does not create a presumption" of control. *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011); *see Bao v. SolarCity*, 2015 WL 1906105, at *5 (N.D. Cal. Apr. 27, 2015) (dismissing where alleged controller was chairman, owned 30% of company, and signed statements). Further, Pion resigned before the Proxy was issued (SAC ¶32) and could not possibly have any liability (controller or otherwise) after his resignation.

The allegations against the CF Entities fare no better. CF&Co. did not own CFII shares before the merger, have a board seat, or day-to-day involvement with CFII. *Paracor v. Gen. Elec.*, 96 F.3d 1151, 1162 (9th Cir. 1996) (no "indicia of control" where defendant "did not own stock … prior to [] closing" or have a board seat). Same for CFGM, which is named only as the managing partner of Cantor. *Firefighters' v. Citco*, 855 F. App'x 902, 906 (5th Cir. 2021) ("assertion that [defendant] is a 'wholly owned subsidiary of [controller]'" insufficient). And Cantor and Sponsor are, at most, minority shareholders, which "does not establish control person liability." *Gupta*, 900 F. Supp. at 1243.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the CF Defendants' motion with prejudice.

Memorandum in Support of the CF Defendants' Motion to Dismiss – Case No. 5:21-cv-06374-BLF

Dated: October 2, 2023                    WINSTON & STRAWN LLP


By: _____

Jeffrey L. Steinfeld
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213-615-1700

James P. Smith III (*pro hac vice*)
Thania ("Athanasia") Charmani
(*pro hac vice forthcoming*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: 212-294-6700

Attorneys for Defendants Howard W. Lutnick,
Paul Pion, Alice Chan, Anshu Jain, Robert J.
Hochberg, Charlotte S. Blechman, CF Finance
Holdings II, LLC, Cantor Fitzgerald & Co.,
Cantor Fitzgerald, L.P., and CF Group
Management, Inc.

Memorandum in Support of the CF Defendants' Motion to Dismiss – Case No. 5:21-cv-06374-BLF