Jeffrey L. Steinfeld (State Bar No. 294848)
JLSteinfeld@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, California 90071
Telephone:    (213) 615-1700
Facsimile:    (213) 615-1750

James P. Smith III (*pro hac vice*)
JPSmith@winston.com
Thania Charmani (*pro hac vice* forthcoming)
ACharmani@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone:    (212) 294-6700
Facsimile:    (212) 294-4700

Attorneys for Defendants Howard W. Lutnick,
Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg,
Charlotte S. Blechman, CF Finance Holdings II, LLC,
Cantor Fitzgerald & Co., Cantor Fitzgerald, L.P., and
CF Group Management, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., CF GROUP MANAGEMENT, INC.,<br><br>Defendants. | Case No. 5:21-cv-06374-BLF<br><br>**CLASS ACTION**<br><br>**THE CF DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE CF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Hearing:    March 14, 2024<br>Time:    9:00 a.m.<br>Judge:    Hon. Beth Labson Freeman<br>Court:    Courtroom 3 – 5th Floor<br>    (San Jose) |

## TABLE OF CONTENTS

PAGE

I.    THE SECTION 14 CLAIM MUST BE DISMISSED................................................................ 1

    A.    The SAC Sounds In Fraud ................................................................................. 1

    B.    The SAC Fails To Allege Each CF Defendant's Negligence ....................................... 2

    C.    The CF Individuals Are Exculpated .................................................................... 4

    D.    The AC Fails To Allege Solicitation .................................................................. 5

    E.    The SAC Fails To Plead Loss Causation ............................................................ 5

II.   THE CONTROLLER CLAIMS MUST BE DISMISSED ....................................................... 6

III.  CONCLUSION ........................................................................................................ 7

i

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Bajjuri v. Raytheon Techs. Corp.*,
    No. CV-20-00468-TUC-JCH, 2023 WL 3650554 (D. Ariz. May 25, 2023) ........................ 7

*Bao v. SolarCity Corp.*,
    No. 14-cv-01435-BLF, 2015 WL 1906105 (N.D. Cal. Apr. 27, 2015) ................................ 7

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........................................................................ 3

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982) ........................................................................................................ 5

*Foote v. Mehrotra*,
    No. 21-00169, 2023 WL 7214728 (D. Del. Nov. 2, 2023) ........................................... 4

*In re Glob. Crossing, Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003) ........................................................................... 6

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004) .............................................................................................. 6

*Hunt v. Bloom Energy Corp.*,
    No. 19-cv-02935-HSG, 2021 WL 1110260 (N.D. Cal. Mar. 23, 2021) .......................... 6

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ....................................................................................... 6

*May v. KushCo Holdings, Inc.*,
    No. 8:19-cv-00798-JLS-KES, 2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) ..................... 2

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........................................................................ 3

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
    No. 17-cv-06687-RS, 2018 WL 7019481 (N.D. Cal. Oct. 16, 2018) ................................... 2

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ....................................................................................... 7

*Purple Mtn. Tr. v. Wells Fargo & Co.*,
    432 F. Supp. 3d 1095 (N.D. Cal. 2020) ........................................................................ 7

*Special Situations Fund III QP, L.P. v. Brar*,
    No. 14-cv-04717-SC, 2015 WL 1393539 (N.D. Cal. Mar. 26, 2015) ................................... 7

*In re Volkswagen "Clean Diesel" Prods. Liability Litig.*,
    No. 3:15-md-02672-CRB, 2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ................................... 7

*Welgus v. TriNet Grp., Inc.*,
    No. 15-cv-03625-BLF, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ................................ 7

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
    No. 20-cv-08750-MMC, 2022 WL 345066 (N.D. Cal. Feb. 4, 2022) ................................... 4

*Williams v. Gaylord*,
    186 U.S. 157 (1902) ................................................................................................. 5

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ................................................................................. 6

*Yamamoto v. Omiya*,
    564 F.2d 1319 (9th Cir. 1977) ................................................................................. 5

*Zapien v. Wash. Mut., Inc.*,
    No. 07-cv-00385-DMS-CAB, 2008 U.S. Dist. LEXIS 67137 (S.D. Cal. June 17, 2008) ..... 6

**STATUTES**

Securities Exchange Act of 1934, Section 14 (15 U.S.C. §78n) ........................................... *passim*

8 Del. Code §102(b)(7) ............................................................................................... 5

**OTHER AUTHORITIES**

Fed. R. Civ. P.  9(b) ............................................................................................... 1, 2

The SAC failed to comply with this Court's Order (Dkt. 168) or correct the AC's deficiencies. The substantially unchanged claims against the CF Defendants should be dismissed with prejudice.

## I.    THE SECTION 14 CLAIM MUST BE DISMISSED

The Section 14(a) claim against the CF Defendants must be dismissed because: (1) Plaintiff failed to make "individualized allegations of negligence;" (2) the CF Individuals are exculpated by CFII's charter; (3) the CF Entities did not solicit proxies; and (4) Plaintiff failed to plead loss causation.

**A. <u>The SAC Sounds In Fraud</u>**. This Court previously found that Plaintiff's Section 14 claim "sounds in fraud because it is based on the same course of conduct as the Section 10(b) claims" and therefore "must be pled in accordance with Rule 9(b)'s heightened pleading standards." Order 23-24. As with the AC, the SAC's Section 14 and 10(b) claims are based on ***the same conduct and the same allegedly misleading statements***. *See* Ex. A (comparing alleged misstatements and reasons for falsity); Order 23 (where "a complaint employs the exact same factual allegations to allege violations of [§]14 as it uses to allege fraudulent conduct under [§]10(b) … [the Court] can assume that it sounds in fraud"). The Opposition's assertion that "there is not a single overlapping misstatement between the 14(a) claim … and the 10(b) claim" (Opp. 10) is demonstratively wrong. Exhibit A shows that the alleged Section 14 misstatements are repeated throughout the Section 10 claim.

The Opposition's nominal attempt to disclaim fraud by purporting that the Proxy does not make up the §10(b) claim is also legally wrong and contradicted by the SAC. Order 24 ("The Ninth Circuit has held that a plaintiff's nominal efforts to disclaim allegations of fraud with respect to its section [14] claims are unconvincing"). The 10(b) count "repeat[s] and re-allege[s] each and every allegation," including the Section 14/Proxy allegations (SAC ¶256), and the Section 14 claim incorporates conduct and filings underlying the Section 10(b) claim (*id*. ¶160). Under the heading "XIV. Additional Factual Allegations Relating to Claims Under Section 10B," the SAC asserts alleged deficiencies and conduct with respect to the Proxy. *See*, *e.g.*, *id*. ¶216 ("Proxy Statement stated that View recognized $24.5 million in warranty liabilities" and "did not disclose … that View had also decided to cover Installation Costs"), ¶218 (Proxy failed to disclose "information regarding View's decision to pay … Installation Costs"), *id*. at 67 ("View's Proxy … Included Statements Not In Conformity With GAAP"), ¶¶215-25, 234, 240-44 (proxy misconduct).  Plaintiff must satisfy Rule 9(b)'s heightened pleading standard.

**B. The SAC Fails To Allege Each CF Defendant's Negligence**. Despite this Court's Order, the SAC fails to "make individualized allegations of negligence" and does not allege "[f]or each Defendant … the duty … owed to the Plaintiff and how that duty was breached." Order 24. The SAC impermissibly group pleads (*e.g.*, SAC ¶183 ("each of the defendants … acted negligently")), and the Opposition erroneously argues that using the phrase "***each*** of the CF Defendants" somehow satisfies this Court's Order and Rule 9(b)'s particularized pleading standard. Opp. 5. It does not.

Specifically, Plaintiff argues that "each of [the CF] Defendants" (i) "signed the Proxy," "permitted the use of their names in the Proxy," and "solicited shareholder votes;" and (ii) "was provided reasonable access to" View's books and "permitted access to a virtual data room." *Id.* at 3, 5. These allegations are nearly identical to those the Court already rejected in the AC. *See, e.g.*, AC ¶¶139-50 (each defendant "signed the Proxy," "permitted the use of its name in the Proxy," and "solicited the votes of shareholders"), ¶174 ("the CF II Defendants participated in meetings and conference calls, reviewed the Business Combination and all of the underlying due diligence materials"), ¶175 ("each of these defendants had access to information regarding the circumstances surrounding the [Merger] and View, including … analysis of View's operating results and financial condition, the valuation of View, and the due diligence"). The allegations say nothing as to what any individual defendant did or did not do and are legally insufficient. *See In re Ocera*, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018) (must "clearly articulate" how each defendant "fail[ed] to satisfy th[eir] duty … lumping together Defendants" insufficient); *May v. KushCo*, 2020 WL 6587533, at *7 (C.D. Cal. Sept. 25, 2020) (dismissing because "no particularized facts alleged as to each Defendant").

The Opposition baselessly argues that had the "14(a) Defendants" "properly reviewed information that they were provided access to, they would have uncovered" the accounting violations. Opp. 7. But this says nothing of any of the ***CF Defendants***, nor could it. The argument is belied by the extensive diligence conceded in SAC ¶¶57-60, 64, and the SAC's core theory that View personnel "***intentionally failed to disclose***" certain information regarding "warranty-related obligations" to View's Board and its auditor, PwC. SAC ¶84. Plaintiff asserts that View's CFO "***intentionally lied***" to PwC (Opp. 22; SAC ¶¶225-26), View's Warranty Liability Team excluded the installation costs from View's warranty accrual (Opp. 11; SAC ¶211), "[a]ll information regarding View" in the Proxy

Reply Memorandum in Support of the CF Defendants' Motion to Dismiss – No. 5:21-cv-06374-BLF

"was supplied by View," and "View, through its management/directors (the Individual View Defendants) repeatedly assured investors that the Company's consolidated financial statements as filed with the SEC were fairly presented in accordance with U.S. GAAP." SAC ¶¶215, 243. Further, ***PwC certified that View's "financial statements present [its financial condition] fairly, in all material respects," "are in conformity with [GAAP]" and "free of material misstatement, whether due to error or fraud***." AC ¶93. It is not plausible (to say the least) that additional diligence would have discovered intentional accounting misstatements of a merger counterparty that the company's auditors did not discover despite nearly a decade of work and that the company itself took months to investigate. The CF Defendants were not obligated to challenge their merger counterparty's financial statements, especially given PwC's certification. *See* Order 14-15 (defendants "may reasonably rely on auditors' statements, absent red flags that [defendants were] in a position to see") (citing *Countrywide*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008)). Plaintiff failed to "plead red flags that the [] CF Defendants were in a position to see and that made it unreasonable to rely on the statements of PwC [or] View." *Id.* at 15.

*McKesson* is on all fours. Despite plaintiffs' allegation that diligence "with even the slightest care would have uncovered … the accounting improprieties," the court dismissed the §14 claim because acquirer-defendants "relied on accounting done by [target's auditor]," which was "kept in the dark about the improprieties by … [target] executives." 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000). Same here. Plaintiff alleges View personnel concealed errors and "intentionally lied." SAC ¶¶84, 225.

Plaintiff's primary response to *McKesson* is that the *McKesson* plaintiffs did not allege that further diligence would have "revealed" the accounting error. Wrong. This is exactly what *McKesson* plaintiffs alleged. 126 F. Supp. 2d at 1267 (alleging diligence "with even the slightest care would have uncovered the scope of the accounting improprieties"). Plaintiff also argues that there is no allegation that the "books and records" of View "were not accurate." Nonsense. The core of the complaint is that View's past financial statements were wrong. Similarly, Plaintiff confoundingly argues it has not alleged that the View personnel who lied to PwC also lied to the CF Defendants. Again, nonsense. Plaintiff's argument implies that View personnel lied to PwC and View's Board but were truthful in diligence and admitted the company's financial statements were wrong. This is not plausible. Unsurprisingly, neither the SAC nor the Opposition makes the argument that the CF Defendants were

3

Reply Memorandum in Support of the CF Defendants' Motion to Dismiss – No. 5:21-cv-06374-BLF

aware of the concealed information, as that would transform the claim into one of fraud, which Plaintiff has purported to disclaim as to the CF Defendants. SAC ¶161. *McKesson* controls.

Plaintiff also argues the CF Defendants were negligent because View's financial statements "were only audited through 2019" and the Proxy provided "[t]here was no significant change in the warranty accrual in the nine months ended September 30, 2020." Opp. 9. At most, this allegation suggests that View represented nothing had changed since the audited financials. It does not suggest there were red flags, nor could it, given PwC's certifications. Despite the AC pleading near-identical allegations regarding the same 2019 time period (AC ¶¶78-79, 81-84), this Court found "it was [not] unreasonable for the [] CF Defendants to rely on the statements of PwC or View." Order 15.

Finally, Plaintiff's argument regarding the purported failure to disclose the decision to cover the Installation Costs does not move the needle. Opp. 9-10. Such allegations are mere support for why the warranty accrual was misleading. Plaintiff admits it is not a "new theory," and Plaintiff's "theory has always been" that View's financial statements were misleading because they failed to "disclose to investors the Installation Costs it intended to incur when replacing the IGUs." *Id.* at 1, 26.

**C. The CF Individuals Are Exculpated**. Plaintiff does not dispute that CFII's charter exculpates the CF Individuals from negligence. Nor does Plaintiff meaningfully address the plethora of case law upholding the "application of exculpation clauses adopted pursuant to [§]102(b)(7)" to "claims brought under [§]14(a)." *See*, *e.g.*, *In re Wells Fargo*, 2022 WL 345066, at *5 (N.D. Cal. Feb. 4, 2022); *Foote v. Mehrotra*, 2023 WL 7214728, at *9-10 (D. Del. Nov. 2, 2023) (dismissing §14(a) claim "based solely on negligence" where the company's certificate of incorporation "exculpates Defendants from liability for negligence claims"). Rather, the Opposition merely states, without relevant authority, that exculpation provisions only apply to "internal corporate affairs" and derivative matters (Opp. 17-18). Not so. CFII's exculpation provision applies equally to direct and derivative claims, expressly shielding directors from actions by "the corporation *or its stockholders*." Ex. 3 §8.1; *see Foote*, 2023 WL 7214728, at 9 ("Under [§]102(b)(7) … a corporation may adopt a charter provision eliminating board members' personal liability to the corporation *or stockholders*"). Plaintiff's reliance on *Williams v. Gaylord*, 186 U.S. 157 (1902) and *Edgar v. MITE Corp.*, 457 U.S. 624 (1982) (Opp. 17) is also inapposite, as neither discusses §102(b)(7), §14(a), or analogous statutes.

Reply Memorandum in Support of the CF Defendants' Motion to Dismiss – No. 5:21-cv-06374-BLF

**D. The AC Fails To Allege Solicitation**. The Court previously found that Plaintiff failed to "allege[] solicitation by the [CF Entities]" because the AC's "allegations are insufficient" and do "not identify the role of the individual Entity Defendants" in soliciting shareholder votes. Order 26-27. The SAC adds nothing. The Opposition's lead argument that the "CF Individual Defendants signed the Proxy" (as Board members of CFII) (Opp. 12) is irrelevant because the CF Individuals (other than Pion) do not contest solicitation. The Opposition points to no individualized allegations as to Sponsor or CFGM. As to CF&Co., Plaintiff cites SAC ¶39, which is identical to AC ¶44 aside from a list of potential tasks financial advisors routinely perform, without alleging any actions actually undertaken by CF&Co. As to Cantor, Plaintiff cites SAC ¶¶165-67, which are identical to AC ¶¶135-37. The only other citation is to SAC ¶31 alleging Lutnick and Cantor appeared on a couple of slides in View's November 30, 2020 Investor Presentation, which was released months before the Proxy and shareholder vote. These allegations do not show, as they must, a "substantial connection between the use of the person's name [in the Proxy] and the solicitation effort." *Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977). Finally, the allegation that the CF Entities "were provided access" to View's records and "advised" CFII (Opp. 14) is irrelevant to solicitation.

**E. The SAC Fails To Plead Loss Causation**. Plaintiff cannot plead Section 14 loss causation because: (i) Lead Plaintiff sold its shares before the alleged corrective disclosure; (ii) the SAC improperly attempts to add a new plaintiff; and (iii) View's stock had a "quick and sustained price recovery" "refut[ing] the inference" that the alleged misstatement caused a material drop in the stock price. Mot. 9. The Opposition incorrectly claims that the CF Defendants' "only loss causation argument … mischaracterize[s] Plaintiff's damages theory as derivative in nature." Opp. 17. The CF Defendants make no such argument. Plaintiff does not address the CF Defendants' arguments but unpersuasively argues that it has pled loss causation for Section 10(b) against View and Prakash. *Id.* at 23-24. The arguments do not salvage Section 14 loss causation (and fail as to §10(b)).

First, as the Court explained, because Plaintiff sold all its record-date shares before the alleged August 2021 corrective disclosure, any harm "was not caused by the Proxy." Order 24-25.

Second, Plaintiff's 25th-hour attempt to add a new plaintiff to save its failed claims is improper. *Zapien* and *Zucker* are on point. *See Zapien v. Wash.*, 2008 U.S. Dist. LEXIS 67137, at *10 (S.D. Cal.

5

Reply Memorandum in Support of the CF Defendants' Motion to Dismiss – No. 5:21-cv-06374-BLF

June 17, 2008) (granting motion to dismiss securities class action because "Plaintiffs may not substitute [new plaintiff]" to cure plaintiff's defects) (citing *Lierboe v. State Farm*, 350 F.3d 1018, 1023 (9th Cir. 2003) (where "plaintiff never had standing," the "case must be" dismissed)); Ex. 16 (*Zucker v. Zoran*, No. C06-04843 (N.D. Cal. Feb. 21, 2007) ("[New plaintiff] may not willy-nilly and unilaterally jump into this action.")); *see also* View Reply 7. The Opposition's authority is inapposite. *Hunt v. Bloom Energy* allowed plaintiffs to name "additional plaintiffs who, as purchasers of different categories of securities, have standing to bring claims on behalf of the various potential subclasses of securities purchasers." 2021 WL 1110260, at \*2 (N.D. Cal. Mar. 23, 2021); *see Glob. Crossing*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) (same). There is no need here. Similarly, *Hevesi v. Citigroup* addressed whether the court should "adopt a per se rule that a class may not be certified where a lead plaintiff does not have standing to bring every available claim and none of the named plaintiffs who have standing to bring the additional claims has been vetted under the PSLRA." 366 F.3d 70, 82 (2d Cir. 2004). Not the case here. Plaintiff's last-ditch argument that a new plaintiff is proper under the Court's Order also fails. Plaintiff never sought leave to add another named plaintiff, and the Order does not speak to it. *See Zapien*, 2008 U.S. Dist. LEXIS 67137, at \*10 (dismissing with prejudice and rejecting argument that order granting leave to amend allowed new plaintiff or intervention).

Finally, as to View's stock price recovery, Plaintiff quibbles over how many days passed in each case until the price started to recover (as opposed to fully bouncing back), ignoring the proposition that a "quick and sustained price recovery" "refutes the inference" that the alleged misrepresentation "caused any material drop in the stock price." Wochos **v**. *Tesla*, 985 F.3d 1180, 1198 (9th Cir. 2021). The cases do not set a bright line as to how "quick" the recovery need be, but where, as here, the stock recovered in a short period of time, it is evident that the market did not view the alleged corrective disclosure as misconduct. *See Bajjuri v. Raytheon Techs.*, 2023 WL 3650554, at \*15-18 (D. Ariz. May 25, 2023). Regardless, in just three trading days after the alleged disclosure, View's price began to substantially increase, and it fully regained its pre-disclosure price in less than two weeks. Ex. 13.

## II.    THE CONTROLLER CLAIMS MUST BE DISMISSED

Plaintiff's "control person" claims fail because: (i) there are no primary violations; and (ii) the CF Defendants are not "controllers" of CFII/View. The Opposition, like the SAC, completely ignores

6

the Court's Order that Plaintiff must "plead control violations Defendant by Defendant." Order 42.

The SAC speaks only of "Control Defendants" or the "CF Defendants" generically. SAC ¶¶263-65, 200-03. As to the CF Individuals, the Opposition refers to the SAC's introductory paragraphs (¶¶31-36), which merely describe their background and qualifications and recite that the CFII directors signed the Proxy/approved the merger. The other allegations (¶¶58, 63) fare no better, as ¶58 merely cites the "Background of the Business Combination" section of the Proxy, and ¶63 incorrectly states that the "CFII Individual Defendants" (listing Chan) recommended the merger. These allegations are effectively unchanged from the AC, are insufficient to plead control liability, and fail to show, Defendant by Defendant, how each CF Individual "exercised actual power or control over" View. *Welgus v. TriNet*, 2017 WL 6466264, at *27 (N.D. Cal. Dec. 18, 2017); *compare* SAC ¶¶32, 33, 34, 35, 36, 63 *with* AC ¶¶37, 38, 39, 40, 41, 70, respectively. The Opposition ignores that the SAC's allegations of "high-level positions," "ownership," and "signing" SEC filings are routinely rejected. *Purple Mtn. v. Wells Fargo*, 432 F. Supp. 3d 1095, 1106-07 (N.D. Cal. 2020); *Volkswagen*, 2017 WL 66281, at *19 (N.D. Cal. Jan. 4, 2017); *Special Situations Fund v. Brar*, 2015 WL 1393539, at *10 (N.D. Cal. Mar. 26, 2015); *Bao v. SolarCity*, 2015 WL 1906105, at *5 (N.D. Cal. Apr. 27, 2015) (30% owner, chairman, and signing statements insufficient).

As to the CF Entities, the SAC describes their role assigned in the Business Combination but is silent as to how each "controlled" View. Opp. 27-28; SAC ¶¶38-41. As to CF&Co., Plaintiff does not dispute that there is "no indicia of control" because CF&Co. did not own stock, have a board seat, or have day-to-day involvement with CFII. *Paracor v. Gen. Elec.*, 96 F.3d 1151, 1162-63 (9th Cir. 1996).

Finally, Plaintiff concedes that the sole purported basis for controller liability on Count IV (control for the §10(b) claim) is a November 30, 2020 Press Release (attached to an 8-K), since none of the CF Defendants were involved with the other statements underlying the claim. However, the 8-K (signed only by Lutnick) did not contain any alleged misstatement, nor did the Press Release (not signed by any CF Defendant). Rather, the alleged misstatement was in *View's* investor presentation (SAC ¶¶86-87), which was not signed by any CF Defendant and did not mention anyone but Lutnick.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant the CF Defendants' Motion with prejudice.

7

Reply Memorandum in Support of the CF Defendants' Motion to Dismiss – No. 5:21-cv-06374-BLF

Dated:  December 8, 2023                           WINSTON & STRAWN LLP


By:   /s/ Jeffrey L. Steinfeld
     Jeffrey L. Steinfeld
     WINSTON & STRAWN LLP
     333 S. Grand Avenue
     Los Angeles, CA 90071
     Telephone: 213-615-1700

     James P. Smith III (*pro hac vice*)
     Thania Charmani (*pro hac vice forthcoming*)
     WINSTON & STRAWN LLP
     200 Park Avenue
     New York, NY 10166
     Telephone: 212-294-6700


     Attorneys for Defendants Howard W. Lutnick, Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg, Charlotte S. Blechman, CF Finance Holdings II, LLC, Cantor Fitzgerald & Co., Cantor Fitzgerald, L.P., and CF Group Management, Inc.

8

Reply Memorandum in Support of the CF Defendants' Motion to Dismiss – No. 5:21-cv-06374-BLF