JOHN W. BERRY (State Bar No. 295760)
John.Berry@mto.com
JOHN M. GILDERSLEEVE (State Bar No. 284618)
John.Gildersleeve@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

*Attorneys for Defendants View, Inc., f/k/a CF
Finance Acquisition Corp. II, and Rao Mulpuri*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., and CF GROUP MANAGEMENT, Inc., <br><br> Defendants. | Case No. 5:21-cv-06374-BLF <br><br> <u>CLASS ACTION</u> <br><br> **DEFENDANTS VIEW, INC.'S AND RAO MULPURI'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND TO STRIKE** <br><br> Date:       March 14, 2024 <br> Time:       9:00 a.m. <br> Crtrm.:    3 <br><br> Judge:     Hon. Beth Labson Freeman |

DEFENDANTS VIEW, INC.'S AND RAO MULPURI'S REPLY BRIEF

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................................1

II.     ARGUMENT ......................................................................................................................1

    A.      The Copied Allegations Should Be Disregarded .........................................................1

    B.      The Section 10(b) Claim Should Be Dismissed ...........................................................3

        1.      Lead Plaintiff cannot plead loss causation ........................................................3

        2.      No scienter was adequately pled .......................................................................4

        3.      Lead Plaintiff did not rebut the lack of a duty to disclose................................6

    C.      The Section 14(a) Claim Should Be Dismissed ...........................................................7

        1.      Causation has not been, and cannot be, pled.....................................................7

        2.      Negligence is not sufficiently pled ...................................................................8

    D.      The "Additional Plaintiff" Should Be Rejected ..........................................................8

DEFENDANTS VIEW, INC.'S AND RAO MULPURI'S REPLY BRIEF

## I.    <u>INTRODUCTION</u>

Lead Plaintiff cannot plead causation for its §§ 10(b) and 14(a) claims because it sold its stock before the "truth was revealed" about the alleged fraud.  And its scienter and negligence allegations—mostly copied from the SEC's case against View's ex-CFO—continue to lack the specificity required by the PSLRA and Rule 9(b).

Lead Plaintiff nonetheless argues its so-called "additional plaintiff" and its copied-and-pasted allegations should be allowed to save its case.  They should not.  While PSLRA lead plaintiffs may have some latitude to add a plaintiff, courts have allowed that only if lead plaintiffs have standing to pursue *at least one* of the claims in their case.  Lead Plaintiff does not cite a single case where a court allowed a lead plaintiff to add a new plaintiff to revive a lawsuit when the lead plaintiff cannot bring *any* of the claims.  But that is exactly what Lead Plaintiff seeks to do here.  Lead Plaintiff also offers no justification for copying allegations verbatim from another case and including them in the SAC without any independent investigation.  The "additional plaintiff" and copied-and-pasted allegations, therefore, should be rejected.  Without either, Lead Plaintiff has no viable case.  For that reason, and given its many other flaws, the SAC should be dismissed with prejudice.

## II.    <u>ARGUMENT</u>

**A.    <u>The Copied Allegations Should Be Disregarded</u>.**  Most of the SAC's new scienter and negligence allegations were copied, word-for-word, from the parallel SEC action against View's former CFO.  But these are unproven allegations, subject to a different pleading standard, and were never independently investigated by Lead Plaintiff.  Therefore, they should be disregarded.  *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 817 (N.D. Cal. 2019) (Freeman, J.) (disregarding "second-hand allegations" from FTC complaint); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1004-06 (N.D. Cal. 2008) (striking allegations copied from SEC complaint); View Mot. at 6.

Rather than address this head-on, Lead Plaintiff argues that View's request to strike these second-hand allegations is "procedurally improper" because View did not file a separate Rule 11 motion.  Dkt. No. 185 ("Opp.") at 18-19.  But this is not a Rule 11 motion, and View is not seeking sanctions.  View is asking the Court, under Rule 12(f), to disregard the allegations because Lead Plaintiff's counsel did not satisfy "the nondelegable duty imposed on attorneys under Rule 11" to

investigate allegations before putting them before the Court. *Attia v. Google LLC*, 2018 WL 2971049, at *15 (N.D. Cal. June 13, 2018) (Freeman, J.).

View's request is procedurally sound. In fact, this Court faced the same situation in *Attia*. There, the Court "disregarded" allegations "regurgitate[d]" from other lawsuits because plaintiffs failed to conduct their own independent assessment, as Rule 11 requires. *Id.* The Court did so without requiring a separate Rule 11 motion; the noticed motion to dismiss, including a request to strike the allegations, was sufficient. *See Attia*, No. 17-CV-06037-BLF, Dkt. No. 30 at 15. The Court should do the same here. *See Maine St. Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *19-20 (C.D. Cal. May 5, 2011) (without separate Rule 11 motion, striking allegations that "quote[] and cite[] ... unproven, untested allegations … in separate lawsuits" because "[l]ifting allegations from other complaints does not constitute reasonable investigation as required by [Rule] 11(b)"); *Bennett v. H&R Block Fin. Advisors, Inc.*, 2005 WL 8178042, at *4 (N.D. Cal. June 1, 2005) (same, disregarding allegations lifted from "unadjudicated NASD administrative complaint"). None of the cases Lead Plaintiff cites supports a different result. *See* Opp. at 18 (citing *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (party sought monetary sanctions), *Baertschiger v. Lopez*, 2021 WL 4555613, at *7 (C.D. Cal. June 11, 2021) (same)).

Notably, Lead Plaintiff never says in its Opposition whether its counsel actually investigated the copied allegations. Instead, it argues that its filing of earlier complaints somehow shows there was an "independent investigation." Opp. at 18. But the copied allegations were not in those earlier pleadings, and so their filing says nothing about whether counsel investigated them before including them in the SAC. Lead Plaintiff also argues that the copied allegations are somehow "corroborated by" the SAC's "other allegations," yet never identifies what those "other" allegations could be. *Id.* at 19. Lead Plaintiff further cites the SAC's footnotes as proof of an investigation, but those notes just state that the allegations are "based on the pleadings and other filings in the SEC Action." SAC p. 19 n.1, p. 62 n.2. That is exactly what this Court held a plaintiff cannot do. *See Attia*, 2018 WL 2971049, at *15 ("allegations that rely exclusively on the analysis and investigation of different attorneys in different actions" violate the duty imposed by Rule 11). Again, none of Lead Plaintiff's cases supports its position. *See* Opp. at 19 (citing *Erickson v. Corinthian Colls., Inc.*, 2015 WL

12732435, at *5 n.5 (C.D. Cal. Apr. 22, 2015) (single allegation from parallel AG complaint allowed because it merely quoted one email), *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 593 (N.D. Cal. 2019) (allowing incorporation of AG complaint but not addressing whether they were independently corroborated), *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1083 (N.D. Cal. 2001) (plaintiff conducted its own investigation, filed its own complaint, and only referred to SEC complaint)); *compare Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2023 WL 4418886, at *5 (N.D. Cal. May 24, 2023) (*Evanston* "did not discuss whether allegations from the cited complaint had independent corroboration").

### B.    The Section 10(b) Claim Should Be Dismissed

**1.    Lead Plaintiff cannot plead loss causation.**  Lead Plaintiff does not deny that it sold all of its View stock before November 2021, when View reported—for the first time—the findings from its internal investigation, its plan to restate its financial statements due to a "'materially misstated'" warranty accrual, and the resignation of its CFO.  SAC ¶¶ 129, 142. Because Lead Plaintiff sold its holdings before that "corrective disclosure," loss causation can never be pled for its § 10(b) claim about the misstated warranty accrual.  *See* View Mot. at 3-5.

Lead Plaintiff's only rebuttal is to argue that View's earlier August 2021 announcement of its internal investigation should somehow count as "at least a partial" corrective disclosure for loss causation because Lead Plaintiff owned some View stock back then.  Opp. at 25.  Lead Plaintiff relies on *Lloyd v. CVB Fin. Corp.*, which held that a bank's initial disclosure of an investigation of its loan practices, coupled with a later disclosure of a large write-down of its loan portfolio, could establish loss causation.  811 F.3d 1200, 1204-05, 1210 (9th Cir. 2016).  But in *Lloyd*, the bank's initial report of an SEC subpoena was so detailed that analysts said it "validate[d] [their] overall concerns" about whether the bank had "misled the Street," and so when the later, more fulsome disclosure was made, "the market reacted hardly at all."  *Id*. at 1204-05, 1210; *see Rok v. Identiv, Inc.*, 2017 WL 35496, at *20 (N.D. Cal. Jan. 4, 2017) ("in *Lloyd*, it was far more clear … that the market had already understood the fraud to have been revealed"), *aff'd*, 716 F. App'x 663 (9th Cir. 2018).  Nothing like that happened here—View merely announced in August that it was investigating its warranty accrual and would delay its quarterly filing.  *See* SAC ¶ 128.

More importantly, the plaintiff in *Lloyd* owned stock when the two sets of corrective disclosures were made. As a result, both disclosures in that case were in play and could be "viewed together" for loss causation. 811 F.3d at 1210. Here, the August and November disclosures are not both in play because whatever stock Lead Plaintiff owned in August was sold by November. *See* View Mot. at 3; Dkt. No. 175-2. *Lloyd* does not address this situation.

But *MacPhee v. MiMedx Grp., Inc.* does. 73 F.4th 1220 (11th Cir. 2023). There, just like here, the lead plaintiff owned stock when the company first disclosed the investigations, but sold all of its stock by the time the company later reported it was restating its financials and its CFO had resigned. *See id*. at 1234, 1248. Because the lead plaintiff no longer owned stock when that more fulsome disclosure was made, it could not plead loss causation. *See id.* As the Eleventh Circuit explained, it "need not decide the question [of] … whether it is possible for the announcement of an investigation 'to qualify as a partial corrective disclosure'"—the question in *Lloyd*—"because [plaintiff] sold all of its MiMedx stock" before the restatement and resignation were announced. *Id*. at 1248. This is exactly the situation here, yet Lead Plaintiff does nothing to distinguish *MacPhee* beyond incorrectly claiming the first disclosures in *MacPhee* and the final disclosure about the restatement and resignation "were not related." Opp. at 24. They were, and so *MacPhee* is on point.

As for the SAC's other fraud theory—that View failed to disclose its "above-and-beyond" warranty practice to pay installation and freight costs—Lead Plaintiff has seemingly dropped that theory. And for good reason. The SAC does not allege the "truth" of this practice was revealed during the class period and instead alleges this "above and beyond" practice was first disclosed in May 2022. SAC ¶¶ 7, 134. But that was after the class period, and the stock price increased on this news. *See id*. ¶ 145. As a result, there is no loss causation for this alleged omission, and the Opposition does not dispute this point. *See* View Mot. at 8. Instead, it argues that Lead Plaintiff's theory "has always been" that View "failed to disclose to investors the Installation Costs it intended to incur"—that is, that "View inappropriately excluded the Installation Costs" when calculating its warranty accrual. Opp. at 26. As discussed above, there is no loss causation for that theory.

**2.    No scienter was adequately pled.** Even if the copied-and-pasted allegations from the SEC's negligence complaint against former CFO Prakash are considered, they do not plead

scienter for View.  Lead Plaintiff argues these allegations "describe what people (including Prakash and Mulpuri) knew, and when they knew it."  Opp. at 20 (citing SAC).  But these allegations do not even mention View's CEO, Mulpuri, much less allege what he knew or when he knew it.  *See id*.  Indeed, Lead Plaintiff's § 10(b) claim is not even asserted against Mulpuri.  Therefore, Lead Plaintiff can only try to allege View's scienter through its former CFO, Prakash.

But the allegations of Prakash's scienter are insufficient.  These copied allegations might be sufficient for the SEC, but the PSLRA does not apply to SEC cases.  *See SEC v. Leslie*, 2008 WL 3876169, at *6 (N.D. Cal. Aug. 19, 2008).  It does apply here, and the copied allegations come well short of the PSLRA's pleading requirements.  They are negligence-based allegations that say nothing about Prakash's fraudulent intent or motive; they do not even allege he knew the warranty accounting was incorrect or what the applicable accounting rules were.  *See* View Mot. at 6-7.

And if those allegations are properly stricken, the SAC is left with only two sets of scienter allegations for Prakash (and thus View).  The first repeats, word-for-word, the allegations from the prior FAC (*see* View Mot. at 6), which the Court already rejected.  *See* Dkt. No. 168 ("Order") at 30-33.  The second set is a single new allegation that quotes one sentence in View's November 2021 press release announcing the audit committee finding that the former CFO had "'intentionally failed to disclose certain information'" to its board and auditors "'regarding the applicable costs incurred and expected … in connection with the warranty-related obligations.'"  SAC ¶ 84.

This single, conclusory allegation cannot establish scienter for Prakash or View.  It states only that Prakash withheld information about costs.  It does not say he lied about the warranty accounting, much less that he purposefully misstated the accrual or knew the accounting was wrong.  Nor does this allegation say when or how Prakash "failed to disclose" the cost information to the board and the auditors.  The PSLRA requires much more than this to plead scienter.  *See Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748-49 (9th Cir. 2008) (rejecting scienter allegations based on company's admissions of wrongdoing after DOJ investigation as "largely legal conclusions, rather than particularized facts giving rise to a strong inference of scienter"); *In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *6-7 (N.D. Ill. July 12, 2006) (rejecting argument

that corporation "admitted its own scienter" through press release admitting wrongdoing because "[n]one of the alleged errors [in the press release] … constitute particularized allegations").

Also, this single-sentence allegation is only about Prakash's failure to disclose certain, unidentified information to the board and auditors, not the shareholders. To plead fraud under § 10(b), the SAC must allege that Prakash acted with the "intent to mislead *investors*." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) (emphasis added). The audit committee's finding does not say he was trying to defraud shareholders when he withheld cost information from View's board and its auditors. *See Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) (distinguishing "intent to defraud" an acquiring company from "intent to defraud the shareholders"); *ECA Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (allegations "must support an inference of an intent to defraud the plaintiffs rather than some other group"); *SEC v. Straub*, 921 F. Supp. 2d 244, 268 (S.D.N.Y. 2013) (distinguishing fraud on investors from fraud on auditors when misstatements never "communicated to an investor").

Regardless, even if these allegations could establish Prakash's scienter, it cannot be imputed to View. The SAC alleges Prakash lied to View's board about installation and freight costs. *See* SAC ¶ 84. So, as alleged, View was the victim of Prakash's alleged fraud. Therefore, his scienter cannot be imputed to View, because, under the "adverse interest" exception to the general imputation rule, "a rogue agent's" knowledge is not imputed to his principal if he "acts adversely to the principal." *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015). Although this exception may not apply if third-parties relied on the rogue agent's misstatements (*see id.*), the SAC never alleges View shareholders relied on anything Prakash said. *See Barrett v. PJT Partners Inc.*, 2017 WL 3995606, at *8 (S.D.N.Y. Sept. 8, 2017) (no imputation of managing partner's scienter to firm because he "defraud[ed]" the firm and "made no statements to the market").

**3.    Lead Plaintiff did not rebut the lack of a duty to disclose.** To the extent Lead Plaintiff is still pursuing the SAC's theory that View failed to disclose its "above-and-beyond" warranty practice (*see* SAC ¶¶ 7, 134), that theory fails because View had no duty to disclose that alleged practice given what its prior warranty disclosures said. *See* View Mot. at 8. The Opposition does not address this argument at all and concedes the point. *See*, *e.g.*, *Digby Adler Grp., LLC v.*

DEFENDANTS VIEW, INC.'S AND RAO MULPURI'S REPLY BRIEF

*Mercedes-Benz U.S.A., LLC*, 2015 WL 5138080, at *2 (N.D. Cal. Sept. 1, 2015) (granting motion to dismiss on element of claim because plaintiff did not respond to argument in motion).

### C.    The Section 14(a) Claim Should Be Dismissed

**1.    Causation has not been, and cannot be, pled.**  The SAC fails to plead both economic loss and transaction causation for its § 14(a) claim.  *See City of Birmingham Relief & Ret. Sys. v. Hastings*, 2019 WL 3815722, at *13 (N.D. Cal. Feb. 13, 2019); View Mot. at 8-10.

The Opposition wrongly suggests that View is arguing that economic loss causation is not pled because the § 14(a) claim is "derivative."  Opp. at 17.  But View is not arguing that.  Rather, economic loss causation is not pled because Lead Plaintiff sold the stock it had held on the record date before any alleged corrective disclosures were made.  That is exactly what this Court held when it dismissed the FAC, and the SAC offers nothing new to change this result.  *See* Order at 24-25.

This alone defeats the § 14(a) claim.  But Lead Plaintiff cannot plead transaction causation either.  Section 14(a) claims are permitted only when a false proxy statement "was an essential link in the accomplishment of the proposed transaction," *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000), so that the alleged false proxy "directly authorizes the loss-generating corporate action."  *SEC v. Mercury Interactive, LLC*, 2009 WL 2984769, at *4 (N.D. Cal. Sept. 15, 2009).  But as the Opposition describes it, Lead Plaintiff's theory is *not* that the alleged fraud allowed the de-SPAC merger transaction to go forward.  Rather, Lead Plaintiff says its causation theory is that shareholders were "damaged … when the truth was disclosed and the value of their View securities decreased."  Opp. at 17.  Because Lead Plaintiff no longer owned its record-date stock when the "truth was revealed," its losses cannot have been caused by the allegedly false proxy.

The cases cited in the Opposition underscore this point.  *See id*. (citing *Brown v. Brewer*, 2008 WL 6170885, at *2 (C.D. Cal. July 14, 2008), and *In re Bank of America Corp.*, 757 F. Supp. 2d 260, 280-81 (S.D.N.Y. 2010)).  Those cases pled transaction causation by directly linking the alleged fraud with the transaction the shareholders voted on.  In *Brown*, a false proxy allegedly misled shareholders into voting for a merger by not disclosing that the merger would wipe out the target's valuable assets; and in *Bank of America*, a false proxy allegedly caused shareholders to miss their chance to halt the proposed merger.  Nothing like that happened here.  The Opposition does

not say the alleged fraud is "linked" to the de-SPAC transaction or losses from that merger.  While there are merger cases where transaction causation can be pled, this is not one of them.

**2.    Negligence is not sufficiently pled.**  The Opposition says the § 14(a) "negligence-based" allegations copied from the SEC's case are the same allegations that establish scienter for the § 10(b) claim.  *See* Opp. at 20.  Therefore, the §§ 14(a) and 10(b) claims involve the same allegedly fraudulent conduct.  The § 14(a) claim thus sounds in fraud, and so its allegations must satisfy the particularity and plausibility requirements of Rule 9(b) and the PSLRA.  *See* Order at 23.

They do not.  The SAC continues to lack the "individualized allegations of negligence" and duty the Court required.  *Id*. at 24.  Lead Plaintiff argues it pled negligence by alleging Mulpuri and Prakash knew View had decided to pay installation and freight costs for the defective windows.  *See* Opp. at 4, 6.  But knowing these costs were being paid is a far cry from knowing that the complex warranty accounting rules required them to be included in the accrual—a fundamental distinction the Opposition ignores.  And, as for CEO Mulpuri, there are no individualized allegations that he should have made that accounting leap, or that he should have known about the warranty calculation or that it was wrong.  Nor does the SAC allege that Prakash (or anyone else) should have known what the proper accounting was, or was even involved in the warranty accrual calculation.  Instead, the SAC just alleges Prakash "failed to ensure" his finance team knew about the costs.  These are glaring omissions for a negligence-based accounting fraud claim.  The § 14(a) claim against View and Mulpuri, therefore, lacks the particularity and plausibility required under the PSLRA.

**D.    <u>The "Additional Plaintiff" Should Be Rejected.</u>**  Lead Plaintiff's argument that it can add the so-called "additional plaintiff" to save its case relies on one critical presumption—that Lead Plaintiff has standing to pursue at least one of its claims.  It does not.  Lead Plaintiff sold all of its proxy record-date holdings and any additional stock it later acquired before the alleged corrective disclosures were allegedly made.  *See supra*.  Therefore, it could not have suffered any losses for the alleged § 14(a) fraud or the § 10(b) fraud, and so has no standing to pursue either claim.  *See In re Impax Lab'ys, Inc. Sec. Litig.*, 2008 WL 1766943, at *7 (N.D. Cal. Apr. 17, 2008).

This alone is fatal to Lead Plaintiff's arguments for its "additional plaintiff."  Lead Plaintiff nonetheless insists it should be allowed to add the new plaintiff because courts routinely allow lead

plaintiffs to add plaintiffs in order to better represent a shareholder class. *See* Opp. at 29. But in each case cited by the Opposition, the lead plaintiff had standing to pursue *at least one* of the claims in the case, and in some of the cases, a new plaintiff was not even being added. *See id*. (citing *Hunt*, *Hevesi*, *Bos. Ret. Sys.*, *Glob. Crossing*, *Initial Pub. Offering*, *Tanne*). Here, however, Lead Plaintiff has tried to add an "additional plaintiff" to "breathe life" into claims it cannot bring on its own—which are the only claims in this case. *In re Exodus Commc'ns, Inc. Sec. Litig.*, 2006 WL 2355071, at *1 (N.D. Cal. Aug. 14, 2006).

Lead Plaintiff does not cite a single case where a court permitted a lead plaintiff, with no viable claims and thus no standing, to add a plaintiff to save its case. In fact, the Ninth Circuit has repeatedly rejected class counsels' efforts to do just that. *See Maple v. Costco Wholesale Corp.*, 649 F. App'x 570, 572 (9th Cir. 2016) (affirming dismissal without leave to add plaintiffs where lead plaintiff "cannot establish causation" and thus had no claims); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560-61 (9th Cir. 2010) (similar); *Exodus*, 2006 WL 2355071, at *1-2 (affirming denial of intervention of new plaintiff when "named plaintiffs lacked standing"); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (instructing district court to dismiss case and not offer lead plaintiff opportunity to add plaintiffs to represent class because lead plaintiff had no viable claim); *see also Zapien v. Wash. Mut., Inc.*, 2008 WL 11509012, at *2-3 (S.D. Cal. June 17, 2008) (dismissing securities action where lead plaintiff had no standing and denying attempt to add plaintiff with standing in amended complaint, citing *Lierboe* and *Exodus*).

As a last resort, Lead Plaintiff argues that the Court's dismissal Order somehow permitted it to add the new plaintiff. But Lead Plaintiff cannot just "willy-nilly" add a plaintiff. *Zucker v. Zoran Corp.*, No. C 06-04843 WHA (N.D. Cal. Feb. 21, 2007), Dkt. No. 79. And nothing in the Court's Order suggested that Lead Plaintiff was authorized to swap in a new plaintiff to cure the deficiencies in its claims. *See Aikins v. St. Helena Hosp.*, 1994 WL 794759, at *2 (N.D. Cal. Apr. 4, 1994) (dismissing added plaintiff because named plaintiffs "did not request leave to name a new plaintiff, and the Court's order [granting leave to amend complaint] cannot reasonably be construed as having granted plaintiffs such leave"); *Zapien*, 2008 WL 11509012, at *3 (rejecting argument that dismissal order with leave to amend allowed lead plaintiff to add new plaintiff to revive case).

Dated:  December 8, 2023

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By:  _____/s/ John W. Berry_____
              John W. Berry

*Attorneys for View, Inc., f/k/a CF Finance Acquisition Corp. II, and Rao Mulpuri*

DEFENDANTS VIEW, INC.'S AND RAO MULPURI'S REPLY BRIEF