Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
Emails: *lking@kaplanfox.com*
          *breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
Emails:  *ffox@kaplanfox.com*
          *dhall@kaplanfox.com*
          *juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium
Capital LLC, Plaintiff David Sherman and the
Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., AND CF GROUP MANAGEMENT, INC., <br><br> Defendants. | Case No.: 5:21-cv-06374-BLF <br><br> <u>**CLASS ACTION**</u> <br><br> **LEAD PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE OF NEWLY-AVAILABLE INFORMATION** <br><br> Judge:  Hon. Beth L. Freeman <br> Courtroom:  3, 5th Floor |

Defendants do not dispute the authenticity of the Due Diligence Presentation which was excerpted throughout the Deriv. Compl. and was produced by CF II (k/n/a View) in response to the derivative plaintiffs' demands for inspection of books and records under 8 Del. C. §220.  As such, Defendants' joint opposition leaves untouched a key pillar of Lead Plaintiff's Request for Judicial Notice of Newly-Available Information (ECF No. 193, the "RJN") – that it is an "indisputable fact" that in addition to the "$24.5M liability for an issue identified in IGU's manufactured and sold prior to June'19" recorded in 2019 (the warranty accrual) for the "Type II Spacer" (the Defect), Cantor and CF&Co. "ha[d] identified an additional $59mm of potential debt-like items at July '20" requiring "[a]djustments [that] are mainly comprised of the Type II loss contingency noted above ($24.5M)" and other items.  Deriv. Compl. ¶53; *Perez v. DXC Tech. Servs. LLC*, No. 17-CV-06066-BLF, 2020 WL 5517276, at \*2 (N.D. Cal. Sept. 14, 2020) (Freeman, J.) ("Indisputable facts are those that are 'generally known' or that 'can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.'") (citing Fed. R. Evid. 201(b)).

## I.   THE DUE DILIGENCE PRESENTATION WAS INCORPORATED BY REFERENCE

Under controlling Ninth Circuit case law, the Due Diligence Presentation was incorporated by reference into the SAC because, in addition to being adequately referenced in the SAC, the 14(a) claim against the CF Defendants necessarily relies upon the results of their due diligence (or lack thereof), and Defendants do not dispute the authenticity of the Due Diligence Presentation.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (noting that that Ninth Circuit has "affirmed the incorporation of materials that the complaint did not reference at all" because "even though the complaint did not 'allege or describe the contents of the surrounding pages,' it was proper to incorporate them because the claim necessarily depended on them.") (internal citation omitted); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (the Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance.").  In light of these controlling authorities, each of

Defendants' arguments against incorporation by reference can be rejected out of hand.

***First***, Defendants do not offer any cogent explanation as to why the CF Defendants' due diligence, including the Due Diligence Presentation, is not "integral" to Plaintiffs' claims against them. ECF No. 194 (the "Opp.") at 3-4 (implying that the Due Diligence Presentation is not integral to Plaintiffs' claim without explication); *but see, e.g., Coto*, 593 F.3d at 1038 (incorporating by reference billing agreement "not explicitly refer[red] to" in amended complaint where "[a]ppellees do not contend that the Billing Agreement provided in the record is not authentic[ and] [w]hether or not [appellee] converted the reserves it received from the EPV entities' customers (for purposes of triggering the statute of limitations) depends in large part on its authorization to do so and whether it asserted ownership over the funds at that time—suggesting that the Billing Agreement is integral to the Amended Complaint."); *see also* RJN at 2-3 (collecting cases). Moreover, the mere insinuation that the Due Diligence Presentation is not integral to Plaintiffs' claims against the CF Defendants is wrong. The sufficiency and results of their due diligence (or lack thereof), of which the Due Diligence Presentation is the ultimate product, is highly relevant to Plaintiffs' 14(a) claim against the CF Defendants. *See, e.g.*, ¶ 64 ("Before reaching its decision, the CF II Board reviewed the results of the due diligence conducted by its management, employees of Cantor and CF II's advisors. . ."); ¶191 ("the Installation Cost information that was excluded from the Company's warranty accruals was available from numerous sources. . . . For example, had Defendants reviewed the Installation Cost information (e.g., the purchase requisitions), Defendants would have uncovered that View *was covering the Installation Costs for all customers* with windows containing the Defect, meaning they were probable and reasonably estimable. Therefore, an estimated loss from the Installation Costs should have been included in View's warranty accrual"); *id.* (". . . having been provided reasonable access to all of View's books, contracts, and records, . . . Defendants named in this Count were negligent in failing to ensure that the Proxy Statement and all other proxy solicitation materials fully and fairly disclosed the Installation Costs and all other proxy solicitation materials fully and fairly disclosed all material facts to allow an investor to make an informed investment decision."); ¶201 ("the CF II Defendants participated in meetings and conference calls, reviewed the Business Combination and all of the underlying due

diligence materials (as noted in the Proxy Statement) . . . ."); ¶202 ("each of [the Individual View Defendants and Individual CFII Defendants] had access to information regarding the circumstances surrounding the Business Combination and View, including the terms of the Business Combination, analysis of View's operating results and financial condition, the valuation of View, and the due diligence that had and had not been performed.").

*Second*, Defendants argue that "Plaintiff's request fails because the SAC does not refer to the *Siseles* Complaint or the PowerPoint Excerpt *at all*". Opp. at 4 (emphasis in original). As set forth in the RJN and above, while materials can be incorporated by reference even when not referenced at all, Defendants' assertion is not accurate. As Defendants appear to admit, the SAC *does* allege that "[Before reaching its decision,] the CF II Board reviewed *the results of the due diligence* conducted by its management, employees of Cantor and CF II's advisors . . . ." Opp. at 4 (referencing ¶64); *see also* ¶201 (similar). As set forth in the RJN, the SAC also alleges additional details regarding the due diligence efforts. *See* RJN at 2 (citing ¶¶ 57-60, 39-40); *see also* ¶64 (further describing in detail the due diligence conducted). That the SAC does not refer to the results of the due diligence as the "Due Diligence Presentation" or as Defendants refer to it, "the PowerPoint", is inconsequential. *See, e.g.*, *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 218 (D.D.C. 2012) ("a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint.") (internal citation omitted). As such, Defendants' citations to *Khoja*, *Ritchie*, and *Estorga* (Opp. at 4) are unpersuasive because, unlike in those cases, the SAC specifically alleges that the CF II Board reviewed the results of the CF Defendants' due diligence. *See Khoja*, 899 F.3d at 1007 ("the Complaint d[id] not refer to the particular "USPTO file history" that [defendant] presented to the court. Although the Complaint alleges facts that may appear there, those facts could have come from other sources."); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("mere mention of the existence of document" insufficient where document "was not integral to her claim") (internal citations omitted); *Estorga v. Santa Clara Valley Transportation Auth.*, No. 16-CV-02668-BLF, 2016 WL 11523668, at *1 (N.D. Cal. Sept. 12, 2016) (Freeman, J.) (pre-*Khoja* decision where plaintiff's opposition brief "proffered additional facts not referenced in the complaint" and "request[ed] judicial notices of exhibits evidencing prior

disputes with VTA" while the complaint's "bare-bones allegations contain[ed] little to no factual details beyond legal conclusions.").

*Third*, Defendants argue that "allowing incorporation by reference here would flip the doctrine on its head" because incorporation by reference "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting [harmful] portions". Opp. at 3 (citing *Khoja*, 899 F.3d at 1002-03). But Lead Plaintiff has not done so. Although Lead Plaintiff requests that the Court consider a particular slide from the Due Diligence Presentation that is consistent with and supports the SAC's allegations, Lead Plaintiff submitted the entire Deriv. Compl., which contains all of the publicly-available slides from the Due Diligence Presentation. Moreover, to the extent Defendants were concerned that Lead Plaintiff omitted portions of the Due Diligence Presentation that are "harmful" to its claims, Defendants could have, but chose not to, "offer [the] document" to the Court for consideration. *Ritchie*, 342 F.3d at 908.

## II. EVEN IF NOT INCORPORATED BY REFERENCE, JUDICIAL NOTICE OF THE DUE DILIGENCE PRESENTATION IS PROPER

For similar reasons, even if the results of Cantor and CF&Co.'s due diligence were not incorporated by reference (they were), the Due Diligence Presentation is judicially noticeable because Defendants do not dispute its authenticity and do not offer any cogent explanation as to why the CF Defendants' due diligence, including the Due Diligence Presentation, is not "integral" to Plaintiffs' claims against them. *See* RJN at 3 (collecting cases). What's more, given that Defendants do not dispute the Due Diligence Presentation's authenticity, the fact that Cantor and CF&Co. informed CF II's Board that in addition to the "$24.5M liability for an issue identified in IGU's manufactured and sold prior to June'19" recorded in 2019 (the warranty accrual) for the "Type II Spacer" (the Defect), Cantor and CF&Co. "have identified an additional $59mm of potential debt-like items at July '20" requiring "[a]djustments [that] are mainly comprised of the Type II loss contingency noted above ($24.5M)" and other items (Deriv. Compl. ¶53) is an adjudicative fact because it is "not subject to reasonable dispute." *Khoja*, 899 F.3d at 999 (9th Cir. 2018) (a court may take judicial notice of "an adjudicative fact if it is 'not subject to reasonable dispute.'") (quoting Fed. R. Evid. 201(b)); *Perez*, 2020 WL 5517276, at *2 (similar). Instead,

Defendants distract from the issue with a red herring argument that "[because] the subject document is an unadjudicated complaint, *the Court may take judicial notice only of the fact that the complaint was filed, not [the truth] of its contents*." Opp. at 2 (emphasis in original). This argument misses the mark.

*First*, unlike the cases cited by Defendants (Opp. at 2), Lead Plaintiff is not asking Court to assume truth of unadjudicated *allegations* in a complaint or other court filings that were subject to reasonable dispute. Rather, Lead Plaintiff has specifically requested that the Court consider language within a slide of the Due Diligence Presentation itself, as opposed to any allegations concerning the slide. RJN at 1. Again, Defendants have not disputed the authenticity of the slide at issue.

*Second*, even assuming, *arguendo*, Defendants were correct that the adjudicative facts contained within a slide of the Due Diligence Presentation somehow cannot be considered for their truth simply by virtue of the fact that they were made public through the filing of a derivative complaint (they are wrong), whether or not such facts can be considered for their truth is a red herring because courts may "take[] judicial notice of the existence of [judicially noticeable documents] and the facts contained therein, [even if] not for the truth of the matters stated in them." *Valley Invs.-Redwood LLC v. City of Alameda*, No. 22-CV-06509-DMR, 2023 WL 2868838, at *6 (N.D. Cal. Apr. 10, 2023) (taking judicial notice of meeting minutes and agendas); *see also Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1233 (N.D. Cal. 2018) (taking judicial notice of "a compilation of excerpts from the trial testimony of [persons]" for "the existence of the documents and the existence of the facts contained therein, and not the truth of the matters stated in them."); *Richardson v. Kinsale Ins. Co.*, No. 18-CV-02962-DMR, 2019 WL 2300376, at *1 (N.D. Cal. May 30, 2019) (where party seeking judicial notice "d[id] not identify which specific facts contained therein are allegedly 'not subject to reasonable dispute' under Rule 201(b)", taking judicial notice of brief filed in state court "only as to the existence of the document and the existence of the facts contained therein, and not the truth of the matters stated in it"). For purposes of Defendants' motions to dismiss the SAC it is inconsequential whether or not Cantor and CF&Co. actually "ha[d] identified an additional $59mm of potential debt-like items at July '20" requiring "[a]djustments

[that] are mainly comprised of the Type II loss contingency noted above ($24.5M)" and other items. Deriv. Compl. ¶53.  Rather, whether or not true, it remains a judicially noticeable fact that Cantor and CF&Co. made a presentation to the CF II Board which **stated that they had**.  *See, e.g., Parent v. Millercoors LLC*, No. 3:15-CV-1204-GPC-WVG, 2016 WL 3348818, at \*4 (S.D. Cal. June 16, 2016) (taking judicial notice "of the limited fact that Mr. Pease made the statements contained in his written testimony"); *Alvarez v. AutoZone, Inc.*, No. 514CV02471VAPSPX, 2019 WL 13074680, at \*4 (C.D. Cal. Oct. 8, 2019) ("To the extent the parties dispute the contents of the transcript, they disagree as to the significance of what was said, not that the recorded statements were, in fact, made. The Court takes judicial notice of the contents of the transcript, but not the truth of the matters stated therein."); *cf.  Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009) (holding that courts "may take judicial notice of [information in publications] to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true") (citation and internal quotation marks omitted).  This fact is relevant to the Court's assessment of the plausibility of Plaintiffs' claims.

### III.     PLAINTIFF IS NOT AMENDING THE SAC THROUGH JUDICIAL NOTICE

In a last-ditch effort to avoid the Court's consideration of the Due Diligence Presentation, Defendants argue that Lead Plaintiff somehow "acknowledges" it is seeking to amend the SAC by stating that information in the Due Diligence Presentation "is consistent with and supports the SAC's allegations". Opp. at 5.  Not so.  Stating that information in the Due Diligence Presentation is consistent with and supports the **existing allegations in the SAC** in no way suggests that that the existing allegations, which already allege the conduct underlying the claims, are insufficient in their own right.  *See infra* at 2 (citing, e.g., ¶¶64, 190-91, 201, 202); *see also* ¶¶ 57-60, 39-40.  Unlike Defendants' cited cases in which plaintiffs sought to introduce additional facts to cure omitted allegations or support theories not plead in the complaint (Opp. at 5), the SAC **already alleges** that proper due diligence "would have uncovered that View *was covering the Installation Costs for all customers* with windows containing the Defect, meaning they were probable and reasonably estimable [and [t]herefore], an estimated loss from the Installation Costs should have been included in View's warranty accrual."  ¶191.

LEAD PLAINTIFF'S REPLY BRIEF ISO ITS REQUEST FOR JUDICIAL NOTICE OF NEWLY-AVAILABLE INFORMATION

## IV.   CONCLUSION

For all of the foregoing reasons, Lead Plaintiff respectfully requests that the Court consider Exhibit 1 to the King Decl. when deciding defendants' motions to dismiss the SAC.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED: December 29, 2023

By:   /s/   *Laurence D. King*
          Laurence D. King

Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:  415-772-4707
*lking@kaplanfox.com*
*breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium Capital LLC, Plaintiff David Sherman and the Proposed Class*

LEAD PLAINTIFF'S REPLY BRIEF ISO ITS REQUEST FOR JUDICIAL NOTICE OF NEWLY-AVAILABLE INFORMATION