1
2
3                   **UNITED STATES DISTRICT COURT**
4                 **NORTHERN DISTRICT OF CALIFORNIA**
5                         **SAN JOSE DIVISION**
6
7    ASIF MEHEDI, et al.,                    Case No.  21-cv-06374-BLF
8                    Plaintiffs,
9            v.                              **ORDER GRANTING MOTIONS TO**
                                             **DISMISS SECOND AMENDED**
10   VIEW, INC., et al.,                     **COMPLAINT**
11                   Defendants.             [Re:  ECF No. 181, 183, 184]
12
13        This is a putative class action for securities fraud against View, Inc. and various
14   individuals connected to View's SEC filings.  Before the Court are Defendants' motions to
15   dismiss Plaintiffs' second amended complaint.  ECF No. 181 ("View Mot."); ECF No. 183 ("CF II
16   Mot."); ECF No. 184 ("Prakash Mot.").  Plaintiffs oppose the motion.  ECF No. 185 ("Opp.").
17   Defendants have filed replies.  ECF Nos. 188 ("Prakash Reply"); ECF No. 189 ("CF II Reply");
18   ECF No. 190 ("View Reply").  The Court held a hearing on the motions on March 14, 2024.  ECF
19   No. 197.
20        For the following reasons, the Court GRANTS the motions to dismiss.
21   **I.    BACKGROUND**
22        View is a technology company that manufactures smart building products, including a
23   "smart" glass panel ("smart panels") that adjusts in response to the sun.  ECF No. 175 ("SAC")
24   ¶¶ 3, 51.  On March 8, 2021, View became a publicly traded company through a merger with
25   CF II, a special purpose acquisition company ("SPAC").  *Id.* ¶¶ 5, 52, 71.  Plaintiffs allege that
26   Defendants made material misrepresentations to investors concerning a materially misstated and
27   understated warranty accrual related to Legacy View's "smart panels."  *See, e.g.*, *id.* ¶¶ 87, 92.
28   Defendants made these misstatements in a November 20, 2020 Form 8-K filed by CF II, *id.* ¶¶ 85–

86; View's December 23, 2020 De-SPAC Registration Statement, including the two amendments thereto (collectively the "De-SPAC Registration Statement"), *id.* ¶¶ 88–103; a March 12, 2021 Form 8-K, *id.* ¶¶ 104–11; an April 7, 2021 Form S-1, *id.* ¶¶ 112–15; a May 12, 2021 press release filed on Form 8-K, *id.* ¶¶ 116–117; and a May 17, 2021 Form 10-Q, *id.* ¶¶ 118–27.  Plaintiff alleges that the De-SPAC Registration Statement and Proxy were jointly prepared by Legacy View and CF II.  *Id.* ¶ 88.

On August 16, 2021, five months after going public, View announced that its Audit Committee "began an independent investigation concerning the adequacy of the company's previously disclosed warranty accrual" and that View would not file its Form 10-Q for the second fiscal quarter of 2021.  SAC ¶ 128.  The following day, View's stock price fell $1.26, or over 24%, to close at $3.92.  *Id.*  On November 9, 2021, View announced that the Audit Committee "has now substantially completed its independent investigation and has concluded that the Company's previously reported liabilities associated with all warranty-related obligations and the cost of revenue associated with the recognition of those liabilities were materially misstated."  *Id.* ¶ 129.  View also announced that it would "be restating its previously issued 2019 and 2020 annual and certain unaudited interim financial statements and its Q1 2021 and 2020 unaudited interim financial statements."  *Id.*  Finally, View announced that Defendant Vidul Prakash resigned as CFO of View, effective November 8, 2021.  *Id.*  The following day on November 10, 2021, View's stock price fell $0.77, or 13.68%, to close at $5.63.  *Id.* ¶ 130.  On November 11, 2021, View's stock price fell an additional $0.22, or 3.9%, to close at $5.41.  *Id.*

On May 31, 2022, View reported that its yet-to-be restated warranty-related accruals would be $53, $48, and $42 million as of December 31, 2019, 2020, and 2021 respectively.  SAC ¶ 132.  Ultimately, on June 15, 2022, View filed its December 31, 2021 Form 10-K, setting forth the View's restated financial information and stating that the SEC was investigating the warranty accrual.  *Id.* ¶¶ 135–37.

On August 18, 2021, the initial complaint was filed in this case.  *See* ECF No. 1 ("Compl.").  The initial complaint brought claims on behalf of a putative class of investors who bought View securities between November 30, 2020 and August 16, 2021 and allegedly suffered

losses based on View's making materially false or misleading statements and failing to disclose material adverse facts about the company's business, including warranty costs and internal controls. *See id.* ¶¶ 36–41. On February 8, 2022, the Court appointed Stadium Capital LLC as Lead Plaintiff. ECF No. 67. On July 15, 2022, Stadium Capital filed the first amended complaint. *See* ECF No. 96 ("FAC"). The first amended complaint extended the end of the class period to May 10, 2022 and asserted 8 claims against View, current and former officers and directors of View and CF II, CF II entities, and PricewaterhouseCoopers LLP. *Id.* ¶¶ 1, 130–286. On May 2, 2023, the Court granted Defendants' motions to dismiss and dismissed all of Stadium Capital's claims with leave to amend. *See* ECF No. 168. On August 21, 2023, Stadium Capital filed the second amended complaint. *See* SAC.

The second amended complaint changes the end of the class period to November 9, 2021 and brings claims against: View, Inc. ("View"), f/k/a CF Finance Acquisition Corp. II ("CF II"); current and former officers and directors of View and CF II; and entities related to CF II (collectively "Defendants"). SAC ¶¶ 26–44. The individual View Defendants include: Rao Mulpuri, View's Chief Executive Officer at all relevant times, and Vidul Prakash, View's Chief Financial Officer at all relevant times (collectively "View Individual Defendants"). *Id.* ¶¶ 27–30. The individual CF II Defendants include: Howard Lutnick, CEO and chairman of the board of CF II; Paul Pion, CFO and a director of CF II; Alice Chan, CFO and a director CF II; Anshu Jain, President and a director of CF II; Robert J. Hochberg, a director of CF II; Charlotte S. Blechman, a director CF II (collectively "CF II Individual Defendants"). *Id.* ¶¶ 31–37. The entity CF II Defendants include: CF Finance Holdings II, LLC ("CF Holdings II," CF II's "Sponsor"); Cantor Fitzgerald & Co. ("CF&Co.", CF II's advisor); Cantor Fitzgerald, L.P. ("Cantor," an affiliate of CF II, the Sponsor, and of Cantor, as well as the Sponsor's sole member); and CF Group Management, Inc. ("CFGM," Cantor's managing general partner) (collectively "CF II Entity Defendants" and collectively, with Individual CF II Defendants, "CF II Defendants"). *Id.* ¶¶ 43–48.

Additionally, the second amended complaint adds David Sherman as a named Plaintiff. *See* SAC ¶ 25. Plaintiffs assert four claims:

3

| Claim | Section | Defendants | SAC ¶¶ |
|---|---|---|---|
| 1 | § 14(a); Rule 14a-9 | All Defendants | 160–98 |
| 2 | § 20(a) | View Individual Defendants and CF II Defendants | 199–205 |
| 3 | § 10(b); Rule 10b-5(b) | View and Prakash | 256–61 |
| 8 | § 20(a) | View Individual Defendants and CF II Defendants *except* Blechman and Hochberg | 262–66 |

On October 2, 2023, Defendants filed motions to dismiss.  There are three separate motions, each brought by a different Defendant or Group of Defendants: (1) a motion to dismiss brought by Defendants View and Mulpuri, *see* View Mot.; (2) a motion to dismiss brought by Defendant Prakash, *see* Prakash Mot.; and (3) a motion to dismiss brought by the CF II Defendants, *see* CF II Mot.  The motions are now before the Court.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v.*

United States District Court
Northern District of California

1  *Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578,

2  581 (9th Cir. 1983).

3  **B.      Rule 9(b) and the Private Securities Litigation Reform Act of 1995**

4  In addition to the pleading standards discussed above, a plaintiff asserting a private

5  securities fraud action must meet the heightened pleading requirements imposed by Federal Rule

6  of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *In*

7  *re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).  Rule 9(b) requires a

8  plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see*

9  *also In re VeriFone Holdings*, 704 F.3d at 701.  That is, "the complaint must allege specific facts

10  regarding the fraudulent activity, such as the time, date, place, and content of the alleged

11  fraudulent representation, how or why the representation was false or misleading, and in some

12  cases, the identity of the person engaged in the fraud."  *In re Bare Escentuals, Inc. Sec. Litig.*, 745

13  F. Supp. 2d 1052, 1065 (N.D. Cal. 2010).

14  Similarly, under the PSLRA "the complaint shall specify each statement alleged to have

15  been misleading, the reason or reasons why the statement is misleading, and, if an allegation

16  regarding the statement or omission is made on information and belief, the complaint shall state

17  with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  The PSLRA

18  further requires that "in any private action arising under this chapter in which the plaintiff may

19  recover money damages only on proof that the defendant acted with a particular state of mind, the

20  complaint shall, with respect to each act or omission alleged to violate this chapter, state with

21  particularity facts giving rise to a strong inference that the defendant acted with the required state

22  of mind."  *Id.* § 78u-4(b)(2)(A).  "To satisfy the requisite state of mind element, 'a complaint must

23  allege that the defendant[ ] made false or misleading statements either intentionally or with

24  deliberate recklessness.'"  *In re VeriFone Holdings*, 704 F.3d at 701 (alteration in original)

25  (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)).  The

26  scienter allegations must give rise not only to a plausible inference of scienter, but to an inference

27  of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent

28  intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

United States District Court
Northern District of California

5

United States District Court
Northern District of California

## III.    REQUEST FOR JUDICIAL NOTICE

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).  Under the incorporation by reference doctrine, courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

View and Mulpuri request that the Court take judicial notice of the relevant SEC filings, accounting standards, and historical stock prices.  *See* View Mot. at 3; ECF No. 182 ("Berry Decl.").  In particular, View and Mulpuri seek judicial notice of the following exhibits:

1.  View Exhibit 1, a document attached as Exhibit 99.2 to View's Form 8-K, filed on November 30, 2020.  ECF No. 182-1.

2.  View Exhibit 2, View's Form S-4, filed on December 23, 2020.  ECF No. 182-2.

3.  View Exhibit 3, CF II's Amended and Restated Certificate of Incorporation dated August 26, 2020 and attached as Exhibit 3.1 to View's Form S-4, filed on December 23, 2020.  ECF No. 182-3.

4.  View Exhibit 4, View's Proxy Statement, filed on February 16, 2021.  ECF No. 182-4.

5.  View Exhibit 5, View's Form S-1, filed on April 7, 2021.  ECF No. 182-5.

6.  View Exhibit 6, View's Form 8-K, filed on August 16, 2021.  ECF No. 182-6.

7. View Exhibit 7, View's Form 8-K, filed on November 9, 2021.  ECF No. 182-7.

8. View Exhibit 8, View's Form 8-K, filed on May 31, 2022.  ECF No. 182-8.

9. View Exhibit 9, View's FY 2021 earnings call transcript from May 21, 2022.  ECF No. 182-9.

10. View Exhibit 10, View's Form 10-K, filed on June 15, 2022.  ECF No. 182-10.

11. View Exhibit 11, Section 460-10-25 of the Financial Accounting Standards Board's ("FASB") publicly available Accounting Standards Codification ("ASC"), which include GAAP rules governing warranty accounting.  ECF No. 182-11.

12. View Exhibit 12, Section 450-20-25 of the FASB's ASC, which include GAAP rules governing warranty accounting.  ECF No. 182-12.

13. View Exhibit 13, a table of daily share price data for View from August 13, 2021 to June 2, 2022 from Yahoo! Finance.  ECF No. 182-13.

14. View Exhibit 14, the complaint in *SEC v. Prakash*, No. 5:23-cv-03300-BLF (N.D. Cal. July 3, 2023) (Dkt. No. 1).  ECF No. 182-14.

15. View Exhibit 15, the SEC's publicly available litigation release concerning *SEC v. Prakash*, dated July 3, 2023.  ECF No. 182-15.

16. View Exhibit 16, a copy of an order in *Zucker v. Zoran Corp.*, No. C 06-04843 WHA (N.D. Cal. Feb. 21, 2007) (Dkt. No. 79).  ECF No. 182-16.

Plaintiffs have not objected to any of View or Mulpuri's requests for judicial notice.

Plaintiffs request that the Court take judicial notice of Plaintiffs Exhibit 1, CF II's Amendment No. 2 to Form S-1 Registration Statement, which was filed with the SEC on August 18, 2020.  Opp. at 13–14; ECF No. 185-2.  Defendants do not object to this request for judicial notice.

Plaintiffs also request that the Court take judicial notice of Supplemental Exhibit 1, a derivative complaint filed in *Siseles v. Lutnick, et al.*, No. 2023-1152-JTL (Del. Ch.).  ECF No. 193.  Plaintiffs note that the derivative complaint contains a slide from a Cantor and CF&Co. presentation on the results of their due diligence to CF II's Board and that the contents of this slide support the SAC's allegations.  *Id.* at 1.  Plaintiffs argue that the due diligence presentation is

1   admissible under the incorporation by reference doctrine and as a document on which Plaintiffs'

2   allegations necessarily rely.  *Id.* at 2–4.  Defendants object to this request for judicial notice,

3   arguing that the Court cannot take judicial notice of the contents of the complaint to establish facts

4   stated therein.  ECF No. 194 at 1–3.  Defendants also argue that the incorporation by reference

5   doctrine does not apply because Plaintiffs did not reference the due diligence document

6   extensively in the second amended complaint.  *Id.* at 3–4.

7        The Court takes judicial notice of View Exhibits 1–8 and 10 and Plaintiffs Exhibit 1

8   because these documents are judicially noticeable as SEC filings, which are matters of public

9   record not subject to reasonable dispute.  *See In re Calpine Corp. Sec. Litig.*, 288 F.Supp.2d 1054,

10  1076 (N.D. Cal. 2003) ("[T]he Court may properly take judicial notice of SEC filings and

11  documents expressly referenced in the [complaint].").  The Court takes judicial notice of View

12  Exhibit 9 because transcripts of earnings calls are publicly available documents and thus are

13  matters of public record not subject to reasonable dispute.  *See In re Facebook, Inc. Sec. Litig.*,

14  477 F.Supp.3d 980, 1009 (N.D. Cal. 2020) (taking judicial notice of transcripts of earnings calls).

15  The Court takes judicial notice of View Exhibits 11–12 because they are accounting rules, which

16  "are 'capable of accurate and ready determination by resort to sources whose accuracy cannot be

17  reasonably questioned.'"  *Garcia v. J2 Glob., Inc.*, No. 220CV06096FLAMAAX, 2021 WL

18  1558331, at *10 (C.D. Cal. Mar. 5, 2021) (quoting *In re Yahoo! Inc. Sec. Litig.*, No. C 11-02732

19  CRB, 2012 WL 3282819, at *2 (N.D. Cal. Aug. 10, 2012)).  The Court takes judicial notice of

20  View Exhibit 15 because information on government agency websites and agency filings are

21  matters of public record and not subject to reasonable dispute.  *See In re Ethereummax Inv.*, No.

22  CV2200163MWFSKX, 2023 WL 6787827, at *39 (C.D. Cal. June 6, 2023) (taking judicial notice

23  of an SEC press release).  The Court takes judicial notice of View Exhibit 13 because historical

24  stock price data are incorporated by reference in the second amended complaint and such data are

25  capable of accurate and ready determination by resort to sources whose accuracy cannot

26  reasonably be questioned.  *See In re Regulus Therapeutics Inc. Sec. Litig.*, 406 F.Supp.3d 845, 855

27  (S.D. Cal. 2019) (taking judicial notice of historic stock price data).

28        The Court takes judicial notice of View Exhibits 14 and 16 and Supplemental Exhibit 1

United States District Court
Northern District of California

because they are court filings from other cases, which are matters of public record and not subject to reasonable dispute. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of other court filings). However, the Court will not take judicial notice of any facts contained in these documents. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F.Supp.2d 1052, 1067 (N.D. Cal. 2010). To the extent that Plaintiffs request that the Court consider the contents of the due diligence presentation alleged in the *Siseles* complaint, the Court will not do so. The contents of the due diligence presentation are not incorporated by reference in the second amended complaint nor is the presentation a document on which allegations in the second amended complaint necessarily rely. A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The second amended complaint merely states that "the CF II Board reviewed the results of the due diligence conducted by its management." SAC ¶ 64. It does not refer to the due diligence presentation, let alone refer to the document extensively, nor is the document central to Plaintiffs' claims.

Accordingly, View and Mulpuri's request for judicial notice of View Exhibits 1–16 is GRANTED and Plaintiffs' request for judicial notice of Plaintiffs Exhibit 1 is GRANTED. Plaintiffs' request for judicial notice of Supplemental Exhibit 1 is GRANTED, but to the extent that Plaintiffs request that the Court consider the contents of Supplemental Exhibit 1, the request is DENIED.

## IV.   DISCUSSION

Defendants move to dismiss each of Plaintiffs' four claims. The Court finds that Plaintiffs' claims must be dismissed because Plaintiffs cannot plead loss causation, and thus fail to show standing, with respect to Lead Plaintiff Stadium Capital. Because the Court's analysis of Plaintiffs' § 14(a) claim turns in part on the Court's analysis of Plaintiffs' § 10(b) claim, the Court

United States District Court
Northern District of California

1   will address the § 10(b) claim first.  Finally, the Court will address whether the addition of

2   Plaintiff David Sherman can cure the deficiencies in standing.

3       **A.   Exchange Act § 10(b) Claim (Count 3)**

4       Plaintiffs allege a claim under § 10(b) and Rule 10b-5(a) against Defendants View and

5   Prakash.  *See* SAC ¶¶ 256–61.  Section 10(b) makes it unlawful "for any person . . . [t]o use or

6   employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive

7   device or contrivance in contravention of such rules and regulations as the Commission may

8   prescribe[.]"  15 U.S.C. § 78j(b).  Rule 10b-5, promulgated by the SEC under the authority of

9   Section 10(b), in turn makes it unlawful for any person:

10         (a) To employ any device, scheme or artifice to defraud,

11         (b) To make any untrue statement of a material fact or to omit to state
12         a material fact necessary in order to make the statements made, in
            light of the circumstances under which they were made, not
13         misleading, or

14         (c) To engage in any act, practice, or course of business which
            operates or would operate as a fraud or deceit upon any person, in
15         connection with the purchase or sale of any security.

16   17 C.F.R. § 240.10b-5.

17       To state a securities fraud claim, a plaintiff must plead: "(1) a material misrepresentation or

18   omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or

19   omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or

20   omission; (5) economic loss; and (6) loss causation."  *City of Dearborn Heights Act 345 Police &*

21   *Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017) (quoting *Oregon Pub. Emps.*

22   *Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014)).

23       View and Prakash argue that Plaintiffs have failed to adequately plead loss causation and

24   scienter.  *See* View Mot. at 3–8; Prakash Mot. at 2–4.  The Court need only address loss causation.

25   Loss causation, "i.e., a causal connection between the material misrepresentation and the loss"

26   experienced by the plaintiff, is a necessary element of pleading a securities fraud claim under

27   § 10(b) of the Exchange Act.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  "The

28   burden of pleading loss causation is typically satisfied by allegations that the defendant revealed

United States District Court
Northern District of California

the truth through 'corrective disclosures' which 'caused the company's stock price to drop and investors to lose money.'" *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2406 (2014)).  To be corrective, the disclosure must "relate back to the misrepresentation and not to some other negative information about the company." *In re Nuveen Funds/City of Alameda Sec. Litig.*, No. 08-cv-4575-SI, 2011 WL 1842819, at *10 (N.D. Cal. May 16, 2011) (*In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1139–40 (10th Cir. 2009)).  Federal Rule of Civil Procedure 9(b) requires a plaintiff to state with particularity the elements of a securities fraud claim, including loss causation.  *Apollo*, 774 F.3d at 605.

    View argues that Lead Plaintiff Stadium Capital cannot plead loss causation under § 10(b) because it did not own View stock in November 2021, when the alleged truth became known.[1] *See* View Mot. at 3.  View further argues that even if the August 2021 disclosure of an internal investigation is a "partial" corrective disclosure, the fact that Lead Plaintiff did not own View stock in November 2021 is dispositive.  *Id.* at 4.  Finally, View argues that the August 2021 disclosure was not a partial corrective disclosure because the price of View stock rebounded by September 2, 2021.  *Id.* at 4–5.  Prakash joins in View's argument.  Prakash Mot. at 4.  Plaintiffs respond that the August 2021 disclosure of an internal investigation was a partial corrective disclosure because it explicitly stated that the investigation related to View's previously disclosed warranty accrual.  *See* Opp. at 24 (citing SAC ¶ 140).  Plaintiffs also argue that the price recovery after the August 2021 disclosure occurred over 17 days, which sets this case apart from other price recovery cases, in which prices recovered after 1 to 4 days.  *Id.* at 25–26.  Although Lead Plaintiff owned View stock in August 2021, Lead Plaintiff had sold all of its shares as of September 24, 2021.  ECF No. 175-2 ("SAC Ex. B").

    In support of their argument that the August 2021 disclosure of an internal investigation

---

[1] View also argues that Plaintiffs' second theory—that View failed to disclose its "above-and-beyond" warranty practice—fails because this practice was not revealed until May 2022 and View had no duty to disclose this practice.  View Mot. at 5, 8.  In opposition, Plaintiffs concede that the Class Period ends before the May 2022 "above-and-beyond" warranty disclosures and thus implicitly concede that they are not pursuing this theory.  *See* Opp. at 26.  As such, the Court need not address this theory or View's arguments regarding it.

United States District Court
Northern District of California

was a partial corrective disclosure, Plaintiffs point the Court to *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014), and *Lloyd v. CBF Financial Corp.*, 811 F.3d 1200 (9th Cir. 2016).  In *Loos*, the Ninth Circuit held that "the announcement of an investigation, without more, is insufficient to establish loss causation."  *Loos*, 762 F.3d at 890.  In doing so, the Ninth Circuit agreed with the Eleventh Circuit's reasoning in *Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013), and concluded that the mere announcement of an investigation does not reveal fraudulent practices and instead "simply puts investors on notice of a *potential* future disclosure of fraudulent conduct."  *Loos*, 762 F.3d at 890.  Consistent with *Meyer*, the Ninth Circuit made clear that it did "not mean to suggest that the announcement of an investigation can never form the basis of a viable loss causation theory."  *Id.* at 890 n.3.  Instead, the Ninth Circuit "merely [held] that the announcement of an investigation, 'standing alone and without any subsequent disclosure of any wrongdoing, does not reveal to the market the pertinent truth of anything, and therefore does not qualify as a corrective disclosure.'"  *Id.* (quoting *Meyer*, 710 F.3d at 1201 n.13).  The Ninth Circuit addressed the question again in *Lloyd*, which held that "an investigation can 'form the basis for a viable loss causation theory' if the complaint also alleges a subsequent corrective disclosure by the defendant."  *Lloyd*, 811 F.3d at 1210.  The Ninth Circuit further held that, under the facts of that case, loss causation was sufficiently pled.  *Id.*  *Lloyd* involved the announcement of an SEC subpoena, after which the company's stock price dropped 22%.  *Id.* at 1204, 1210.  The factual allegations revealed that market analysts perceived the SEC subpoena as related to the alleged misstatements.  *Id.* at 1204–05, 1210–11.  A month later, the company confirmed the market's fears, and the company's stock price dropped only slightly.  *Id.* at 1205, 1211.  The Ninth Circuit found that the later market reaction confirmed that investors understood the announcement of the SEC subpoena as a partial disclosure of the alleged misstatements.  *Id.* at 1210.

However, neither *Loos* nor *Lloyd* addressed the issue of whether the initial disclosure of an investigation can qualify as a corrective disclosure where, as here, the plaintiff sold its stock before the truth was finally revealed.  On this question the Court finds instructive the Eleventh Circuit's decision in *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023).  In *MacPhee*, the lead plaintiff argued that the announcements of lawsuits and investigations into the defendants'

fraudulent practices were corrective disclosures. *See id.* at 1247. The lead plaintiff sold its stock after the announcements of lawsuits and investigations but before the truth was finally revealed to the market. *See id.* at 1230–34, 1248. The Eleventh Circuit held that the announcements of lawsuits and investigations did not qualify as corrective disclosures because the lead plaintiff sold its shares before the relevant truth was revealed. *See id.* at 1248. The Eleventh Circuit explained that once the truth is revealed, "the market will digest the new information and cease attributing the artificial inflation to the price" and investors that purchased stock at the inflated price "*and who still hold their stock* will suffer economic loss." *Id.* (parenthesis omitted) (quoting *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1315 (11th Cir. 2011)); *see also Dura*, 544 U.S. at 342 ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). In reaching this conclusion, the Eleventh Circuit acknowledged that, in *Meyer*, it had left open the possibility that the announcement of an investigation could constitute a corrective disclosure, but found that it did not need to decide the question because the lead plaintiff did not own stock by the time the fraud or wrongdoing was revealed. *See MacPhee*, 73 F.4th at 1248. For the same reason, the Eleventh Circuit found *Lloyd* distinguishable. *See id.* at 1248 n.12.

      The Court finds that this case is analogous to *MacPhee*. Plaintiffs allege that on August 16, 2021, View announced that its Audit Committee began an independent investigation and would not file its Form 10-Q for the second fiscal quarter of 2021. SAC ¶ 128. Similarly, among the lawsuits and investigations alleged to be partial corrective disclosures in *MacPhee* was the defendant's announcement of an audit committee investigation and that it would postpone its Form 10-K. *See MacPhee*, 73 F.4th at 1233. In *MacPhee* and this case, the lead plaintiffs sold their shares after the announcements but before the truth was revealed to the market. *See* SAC Ex. B (showing that Lead Plaintiff sold all of its stock by September 24, 2021; SAC ¶ 129 (alleging that on November 9, 2021, View announced that the Audit Committee "concluded that the Company's previously reported liabilities associated with all warranty-related obligations and the cost of revenue associated with the recognition of those liabilities were materially misstated"). Plaintiffs emphasize that the August 16 announcement explicitly stated that it related to View's

United States District Court
Northern District of California

1    previously disclosed warranty accrual.  Opp at 24.  But that fact does not distinguish this case

2    from *MacPhee*, in which the announcements alleged to be corrective disclosures also included

3    statements about the subject matter of the lawsuits and investigations.  *See MacPhee*, 73 F.4th at

4    1231–33.  Finally, Plaintiffs argue that the August 16, 2021 disclosure is a partial corrective

5    disclosure and to hold otherwise would lead to absurd results.  Opp at 25.  However, Plaintiffs

6    have failed to point the Court to any authority under which a plaintiff can show loss causation

7    despite selling its shares before the truth was revealed.

8         The Court holds that Lead Plaintiff Stadium Capital cannot attribute its losses to the

9    August 2021 announcement—and thus fails to allege loss causation—because Stadium Capital

10   sold its stock before the truth of the underlying falsehood was revealed.[2]  Put differently, because

11   Stadium Capital sold its shares before the truth was revealed, Stadium Capital was not injured by

12   the alleged misrepresentations.  *See MacPhee*, 73 F.4th at 1243 ("[W]here a purchaser of stock

13   sells its shares 'before the relevant truth begins to leak out, the misrepresentation will not have led

14   to any loss.'" (quoting *Dura*, 544 U.S. at 342)).

15        Because Stadium Capital cannot show injury, it follows that Stadium Capital lacks

16   standing to pursue the § 10(b) claim alleged in the second amended complaint.  Constitutional

17   standing requires the plaintiff to show (1) an injury in fact (2) that is fairly traceable to the

18   defendant's actions and (3) that will likely be redressed by a favorable decision.  *See Lujan v.*

19   *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  "In a class action, a lead plaintiff must show

20   that it personally has been injured."  *In re Impax Lab'ys, Inc. Sec. Litig.*, No. C 04-04802 JW,

21   2008 WL 1766943, at *6 (N.D. Cal. Apr. 17, 2008).  In similar cases, where the lead plaintiff sold

22   all of its shares before the truth was revealed, courts have found that the lead plaintiff was not

23   injured and thus did not have and never had standing to bring suit.  *See, e.g.*, *id.* at *7; *In re*

24   *Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 394 (N.D. Cal. 2009).  Thus, the Court finds that

25   Stadium Capital does not have and never had standing to pursue the § 10(b) claim.  This

26

27   ─────────────────────

28   [2] Because the Court finds that Plaintiffs have failed to allege loss causation based on Lead Plaintiff's sale of stock before the November 2021 disclosure, the Court need not address Defendants' price recovery argument.

14

1    deficiency is fatal Plaintiffs' § 10(b) claim because, as will be discussed below, Ninth Circuit

2    precedent is clear that a new plaintiff such as Sherman cannot be added to save a lawsuit from

3    dismissal where the sole named plaintiff never had standing.  *See infra* Part IV.D.  As such, the

4    Court need not address Defendants' scienter arguments.

5         Accordingly, the Court GRANTS Defendants' motions to dismiss Plaintiffs' § 10(b) claim.

6    **B.    Exchange Act § 14(a) Claim (Count 1)**

7         Plaintiffs allege a claim under § 14(a) and Rule 14a-9 against all Defendants.  *See* SAC

8    ¶¶ 160–98.  "To state a claim under § 14(a) and Rule 14a-9, a plaintiff must establish that '(1) a

9    proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff

10   injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation

11   materials, was an essential link in the accomplishment of the transaction.'"  *New York City Emps.'*

12   *Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled on the other grounds by Lacey v.*

13   *Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502

14   F.3d 212, 228 (3d Cir. 2007)).  Section 14(a) and Rule 14a-9 also include a loss causation

15   requirement.  *Id.*

16        View and Mulpuri argue that the second amended complaint fails to adequately allege loss

17   causation, transaction causation, negligence, and solicitation.  View Mot. at 8–11.  Prakash joins

18   in View's arguments regarding loss and transaction causation and, in addition, argues that the

19   second amended complaint fails to allege that Prakash acted with the requisite negligence or that

20   he engaged in solicitation.  Prakash Mot. at 4–6.  The CF II Defendants also argue that the second

21   amended complaint fails to adequately allege negligence, solicitation, and loss causation and, in

22   addition, that the § 14(a) claims against the CF II Individual Defendants are exculpated under

23   Delaware law.  CF II Mot. at 3–9.

24        As stated above, a plaintiff must establish that the allegedly misleading proxy caused the

25   plaintiff injury in the form of economic loss.  *New York City Emps.' Ret. Sys.*, 593 F.3d at 1022.

26   Defendants argue that the § 14(a) claim has the same defect as the § 10(b) claim—namely that

27   Lead Plaintiff Stadium Capital sold all of the CF II shares that it held as of the January 2021

28   Record Date, before the any of the alleged drops in stock price.  View Mot. at 8–9.  The Court

United States District Court
Northern District of California

agrees.  On January 27, 2021—that is, the Record Date on which holders of CF II Class A common stock were entitled to vote to approve the merger between View and CF II, *see* SAC ¶ 1—Stadium Capital held 80,000 shares of CF II stock.  *See* SAC Ex. B.  However, Stadium Capital sold all of these shares on March 9, 2021, well before the truth of any alleged misstatements was revealed.  *See id.*  Although Plaintiff bought more View stock, any alleged economic harm from those purchases was not caused by the Proxy Statement because those purchases occurred after the vote solicited by the Proxy Statement.  Thus, Stadium Capital does not have and never had standing for the § 14(a) claim alleged in the second amended complaint.  *See In re Impax Lab'ys*, 2008 WL 1766943, at *6.  For the same reasons as the § 10(b) claim, Stadium Capital's lack of standing is fatal to Plaintiffs § 14(a) claim because, as will be discussed below, Sherman cannot be added to cure this deficiency.  *See infra* Part IV.D.  As such, the Court need not address Defendants' arguments regarding transaction causation, the adequacy of the allegations regarding negligence, solicitation, and exculpation.

Accordingly, the Court GRANTS Defendants' motions to dismiss Plaintiffs' § 14(a) claim.

### C.     Exchange Act § 20(a) Claims (Counts 2 and 4)

Plaintiffs allege a claim under § 20(a) in connection with their § 14(a) claim against the View Individual Defendants and the CF II Defendants and a claim under § 20(a) in connection with their § 10(b) claim against the View Individual Defendants and the CF II Defendants *except* Blechman and Hochberg.  *See* SAC ¶¶ 199–205, 262–66.  Section 20(a) claims require an underlying primary violation of the securities laws.  *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012).  Because Stadium Capital does not have standing to pursue its § 10(b) and § 14(a) claims, it follows that Stadium Capital does not have standing to pursue its § 20(a) claims.

Accordingly, the Court GRANTS Defendants' motions to dismiss Plaintiffs' § 20(a) claims.

### D.     Addition of Plaintiff David Sherman

Finding that Stadium Capital cannot plead loss causation, and thus does not have standing to bring any of the claims alleged in the second amended complaint, the Court must now address

16

United States District Court
Northern District of California

1   whether Plaintiffs can add David Sherman to this case to cure the deficiency.  Sherman purchased

2   1000 shares of then–CF II stock on January 22, 2021 and, unlike Stadium Capital, there are no

3   records of Sherman selling his shares during the Class Period.  *See* ECF No. 175-3 ("SAC Ex. C").

4        View argues that Lead Plaintiff cannot unilaterally insert Sherman as a new plaintiff into

5   the action because Plaintiffs failed obtain Court permission under Federal Rules of Civil

6   Procedure 15 or 24.  *See* View Mot. at 12.  View also argues that allowing a new plaintiff would

7   serve as an end-run around the PSLRA's selection process, and that the case should be dismissed

8   because Lead Plaintiff does not have standing to pursue its claims.  *Id.* at 12–13.  Prakash joins in

9   View's arguments.  Prakash Mot. at 7.  Similarly, the CF II Defendants argue that the addition of a

10  new plaintiff is improper because Stadium Capital does not have standing.  *See* CF II Mot. at 9.

11  Plaintiffs argue that the Court granted Stadium Capital leave to amend under Rule 15, and that

12  courts routinely allow amendment to add additional named plaintiffs.  Opp. at 29–30.  Plaintiffs

13  also argue that the case need not be dismissed because Sherman is a named plaintiff who has

14  standing to pursue the claims in the second amended complaint.  *Id.* at 30.

15       As an initial matter, the Court finds that, contrary to View's arguments, the addition of a

16  named plaintiff or the appointment of a new lead plaintiff is not an end-run around the PSLRA's

17  requirements.  *See In re Impax Lab'ys*, 2008 WL 1766943, at *8 (noting that "[t]he PSLRA's lead

18  plaintiff provision is designed only to get cases off on the right foot" and holding that substitution

19  of the lead plaintiff was not contrary to the PSLRA); *Hunt v. Bloom Energy Corp.*, No. 19-CV-

20  02935-HSG, 2021 WL 1110260, at *1 (N.D. Cal. Mar. 23, 2021) ("[T]he PSLRA does not in any

21  way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class."

22  (quoting *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82–83 (2d Cir. 2004))).

23       Instead, whether the addition of Sherman is appropriate turns on Stadium Capital's

24  standing.  The Ninth Circuit has held that where the sole named plaintiff "never had standing," and

25  thus was "never a member of the class [it] was named to represent," the district court must dismiss

26  the action.  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003)

27  (quoting *Foster v. Ctr. Township of LaPorte Cnty.*, 798 F.2d 237, 244–45 (7th Cir. 1986)).

28  Following *Lierboe*, district courts in the Ninth Circuit have uniformly rejected substitution of the

United States District Court
Northern District of California

17

class representative in order to cure the class representative's lack of standing. *See, e.g.*, *Skilstaf, Inc. v. CVS Caremark Corp.*, No. C 09-02514 SI, 2010 WL 199717, at *6 (N.D. Cal. Jan. 13, 2010) (denying substitution of class representative and dismissing an action where the class representative did not have standing), *aff'd*, 669 F.3d 1005 (9th Cir. 2012); *In re Exodus Commc'ns, Inc. Sec. Litig.*, No. C-01-2661 MMC, 2006 WL 2355071, at *1 (N.D. Cal. Aug. 14, 2006) (noting that an additional plaintiff may intervene only if one of the named plaintiffs had standing); *Zapien v. Washington Mut., Inc.*, No. 07CV385 DMS (CAB), 2008 WL 11509012, at *3 (S.D. Cal. June 17, 2008) ("When the sole named plaintiff in a class action lawsuit lacks standing, intervention or substitution of another named plaintiff is not permissible, and the court must dismiss the claim."); *Adams v. AllianceOne, Inc.*, No. 08-CV-248-JAH(WVG), 2010 WL 11508282, at *1 (S.D. Cal. Mar. 22, 2010) ("Where a plaintiff never had standing, Ninth Circuit case law is clear that a new plaintiff with standing cannot step in to save the lawsuit from dismissal."); *cf. In re Impax Lab'ys*, 2008 WL 1766943, at *8 (allowing substitution of the Lead Plaintiff where at least one named plaintiff had standing).

As noted above, Stadium Capital never had standing to pursue the § 10(b) claim because it sold all of its View stock in September 2021, before the truth was ultimately revealed in November 2021.  Similarly, Stadium Capital never had standing to pursue the § 14(b) claim because although it held 80,000 shares of CF II stock on the Record Date, it sold those shares in March 2021, again before any truth regarding the alleged misstatements in the proxy statement was revealed.  Thus, Stadium Capital does not have standing and was never a member of the class it was named to represent.  It follows that Stadium Capital's claims must be dismissed.  Under *Lierboe* and the approach followed by the other district courts in the Ninth Circuit, this action must also be dismissed because "when the named plaintiff's claim is dismissed at the pleading stage, there is no longer an Article III 'case or controversy' between the parties." *Skilstaf*, 2010 WL 199717, at *6.  Plaintiffs cannot add a plaintiff who has standing to cure Stadium Capital's lack of standing. *See id.* (rejecting the plaintiff's request to substitute a class representative with standing prior to class certification).

Plaintiffs' arguments to the contrary are unavailing.  Plaintiffs argue that the Court granted

Stadium Capital leave to amend under Rule 15.  *See* Opp. at 29.  However, the Court's prior order dismissing the first amended complaint granted leave to amend the claims—it did not grant Stadium Capital *carte blanche* to add an additional plaintiff.  *See* ECF No. 168.  Regardless, amendment under Rule 15 or intervention under Rule 24 cannot cure the sole named plaintiff's lack of standing.  "When the sole named plaintiff in a class action lawsuit lacks standing, intervention or substitution of another named plaintiff is not permissible, and the court must dismiss the claim." *Zapien*, 2008 WL 11509012, at *3 (rejecting an attempt to substitute the sole named plaintiff, who lacked standing, for a new plaintiff); *see also Almeida*, 2009 WL 3809808, at *3 (noting that "*Lierboe* would seem to apply with equal force whether intervention of a new plaintiff is achieved by Rule 15 amendment or Rule 24," and rejecting a plaintiff's attempt to substitute a new plaintiff with standing).  Plaintiffs suggest that authorities relating to the class certification stage are inapposite, Opp. at 30, but *Lierboe*'s holding does not depend on class certification.  *See Adams*, 2010 WL 11508282, at *2 ("[*Lierboe*'s] holding does not change regardless of class certification status.").  Finally, Plaintiffs argue that this case is distinguishable from the district court cases following *Lierboe* because Sherman is a named plaintiff with standing.  Opp. at 30.  This argument puts the cart before the horse.  The question before the Court is whether Plaintiffs may add Sherman as a named plaintiff to cure Stadium Capital's lack of standing, and this inquiry requires the Court to examine the standing of the named plaintiff *absent* Sherman.  *See, e.g.*, *In re Exodus Commc'ns*, 2006 WL 2355071, at *1 (examining the standing of existing plaintiffs, rather than the plaintiffs seeking to intervene); *Zapien*, 2008 WL 11509012, at *3 (same).

Accordingly, because Stadium Capital lacks standing to pursue any of the claims, Plaintiffs may not add Sherman to cure this deficiency, and the Court DISMISSES the case.

**V.     ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.     Defendants View, Inc., and Rao Mulpuril's Motion to Dismiss (ECF No. 181) is GRANTED WITHOUT LEAVE TO AMEND.

2.     Defendants Howard Lutnick, Paul Pion, Alice Chan, Anshu Jain, Robert J.

Hochberg, Charlotte S. Blechman, CF Finance Holdings II, LLC, Cantor Fitzgerald & Co., Cantor Fitzgerald, L.P., and CF Group Management, Inc.'s Motion to Dismiss (ECF No. 183) is GRANTED WITHOUT LEAVE TO AMEND.

       3.      Defendant Vidul Prakash's Motion to Dismiss (ECF No. 184) is GRANTED WITHOUT LEAVE TO AMEND.

Dated: April 9, 2024

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California