Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
Emails: *lking@kaplanfox.com*
        *breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
Emails:  *ffox@kaplanfox.com*
        *dhall@kaplanfox.com*
        *juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium
Capital LLC, Plaintiff David Sherman and the
Proposed Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., AND CF GROUP MANAGEMENT, INC., <br><br> Defendants. | Case No.: 5:21-cv-06374-BLF <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 59(e) AND 60(b); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Judge:  Hon. Beth L. Freeman <br> Courtroom:  3, 5th Floor <br> Date:  September 5, 2024 <br> Time: 9:00 a.m. |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on September 5, 2024, at 9:00 a.m., before the Honorable Beth Labson Freeman in Courtroom 3 of the United States District Court, 280 South 1st Street, San Jose, CA 95113, Lead Plaintiff Stadium Capital LLC ("Stadium Capital") and named plaintiff David Sherman ("Sherman") will and hereby do move the Court to set aside the Judgment (ECF No. 201) and correct its Order Granting Motions to Dismiss Second Amended Complaint (ECF No. 200, the "Order") because its finding that Stadium Capital did not have constitutional standing was "clear error" under Federal Rule of Civil Procedure 59(e) or "mistake [or] inadvertence" under Fed. R. Civ. P. 60(b) because it failed to apply the correct standard – Rule 12(b)(1) – and improperly conflated constitutional standing (a jurisdictional issue) with statutory standing (failure to state a claim). The Motion is based on the accompanying Memorandum of Points and Authorities, the Reply Memorandum, the files and records in this action, and such other matters as may be presented at the hearing.

**ISSUES TO BE DECIDED**

1.     Whether the Court's finding that Stadium Capital did not have constitutional standing for both its 14(a) claim and its 10(b) claim was "clear error" under Federal Rule of Civil Procedure 59(e) or "mistake [or] inadvertence" under Fed. R. Civ. P. 60(b).

2.     Whether the Court's analysis of constitutional standing under Federal Rule of Civil Procedure 12(b)(6) was "clear error" under Federal Rule of Civil Procedure 59(e) or "mistake [or] inadvertence" under Fed. R. Civ. P. 60(b) for failure to apply the correct pleading standard under Federal Rule of Civil Procedure 12(b)(1).

3.     Whether, upon consideration of named plaintiff Sherman for purposes of assessing whether at least one named plaintiff has statutory standing for the 14(a) claim and the 10(b) claim, the Order should be corrected to find that because no loss causation arguments were made with respect to Sherman, the Court need not reach the question of loss causation with respect to Stadium Capital, and amended in order to address any other remaining issues necessary to render a decision on defendants' motions to dismiss.

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION ................................................................................................................. i

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     MOTIONS FOR RECONSIDERATION .......................................................................... 3

III.    IN OVERLOOKING CONTROLLING SUPREME COURT AND NINTH CIRCUIT AUTHORITY THE COURT FAILED TO ASSESS CONSTITUTIONAL STANDING UNDER THE PROPER RULE 12(B)(1) STANDARD ....................................................... 4

      A.      Controlling Supreme Court and Ninth Circuit Law Requires a Finding of Article III (Constitutional) Standing ...................................................................... 5

            1.      "Loss Causation" and "Causation" Arguments Relate to *Statutory* Standing, *Not* Constitutional Standing ........................................................ 6

            2.      Stadium Capital Has Article III (Constitutional) Standing ......................... 7

IV.     UPON FINDING STADIUM CAPITAL HAS ARTICLE III STANDING, THE COURT SHOULD HAVE CONSIDERED ADDITIONAL PLAINTIFF SHERMAN ................. 10

V.      CONCLUSION ................................................................................................................. 12

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Ironworks & Erectors v. N. Am. Constr. Corp.*,
248 F.3d 892 (9th Cir. 2001)..................................................................................................3

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016)...................................................................................................5

*Am. Signature, Inc. v. Moody's Invs. Servs., Inc.*,
No. 10 CIV. 5095 (PGG), 2023 WL 6661054 (S.D.N.Y. Oct. 12, 2023)..............................7, 8

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006)...............................................................................................................2

*B.C. v. Plumas Unified Sch. Dist.*,
192 F.3d 1260 (9th Cir. 1999).................................................................................................2

*Bardo v. Clark*,
No. 19-00759 BLF (PR), 2021 WL 2778532 (N.D. Cal. July 2, 2021)..................................3

*Bear River Band of Rohnerville Rancheria v. California Dep't of Soc. Servs.*,
No. 23-CV-01809-HSG, 2024 WL 1055849 (N.D. Cal. Mar. 11, 2024) ..............................11

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
683 F.3d 1083 (9th Cir. 2012).................................................................................................3

*Ctr. for Env't Health v. Perdue*,
No. 18-CV-01763-RS, 2018 WL 9662437 (N.D. Cal. Aug. 21, 2018) .................................11

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*,
246 F. Supp. 3d 52 (D.D.C. 2017), *aff'd*, 894 F.3d 339 (D.C. Cir. 2018) .................................8

*Fleming v. Charles Schwab Corp.*,
878 F.3d 1146 (9th Cir. 2017)................................................................................................10

*FW/PBS, Inc. v. Dallas*,
493 U.S. 215 (1990)................................................................................................................2

*Hunt v. Bloom Energy Corp.*,
No. 19-cv-02935-HSG, 2021 WL 1110260 (N.D. Cal. Mar. 23, 2021) .................................10

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
390 F. Supp. 3d 432 (S.D.N.Y. 2019)...................................................................................5, 8

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
390 F. Supp. 3d 916, 928 (N.D. Ill. 2019), *aff'd sub nom. Barry v. Cboe Glob. Markets, Inc.*,
42 F.4th 619 (7th Cir. 2022) ...................................................................................................8

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014)............................................................................................12

*In re Glob. Crossing, Ltd. Sec. Litig.*,
313 F. Supp. 2d 189 (S.D.N.Y. 2003)..................................................................................... 10

*In re Impax Lab'ys, Inc. Sec. Litig.*,
No. C 04-04802 JW, 2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ........................................... 9

*In re Infineon Techs. AG Sec. Litig.*,
266 F.R.D. 386 (N.D. Cal. 2009) .............................................................................................. 9

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................................ 2, 7

*In re VeriSign, Inc.*,
No. C 02-02270 JW(PVT), 2005 WL 88969 (N.D. Cal. Jan. 13, 2005)................................... 5, 8

*Jewel v. Nat'l Sec. Agency*,
673 F.3d 902 (9th Cir. 2011)............................................................................................ 5, 6, 9

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ................................................................................................... 4

*Leonard v. Clark*,
12 F.3d 885 (9th Cir. 1993).................................................................................................... 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ............................................................................................................ 5, 6

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003)................................................................................................ 10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................... 6, 9, 10

*MacPhee v. MiMedx Grp., Inc.*,
73 F.4th 1220 (11th Cir. 2023) ......................................................................................... 6, 7, 8

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011).......................................................................................... passim

*Merrimon v. Unum Life Ins. Co. of Am.*,
758 F.3d 46 (1st Cir. 2014) ..................................................................................................... 3

*Morrison v. Nat'l Australia Bank*,
561 U.S. 247 (2010) ................................................................................................................ 7

*Mountain States Legal Found. v. Glickman*,
92 F.3d 1228 (D.C. Cir. 1996) ............................................................................................... 12

*Naruto v. Slater*,
888 F.3d 418 (9th Cir. 2018)................................................................................................. 4, 5

**Page(s)**

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
926 F.3d 528 (9th Cir. 2019) ............................................................................................... 5

*Oklahoma Firefighters Pension & Ret. Sys. v. Student Loan Corp.*,
951 F. Supp. 2d 479 (S.D.N.Y. 2013) ................................................................................. 12

*Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*,
219 F.3d 895 (9th Cir. 2000) ................................................................................................ 2

*Poder in Action v. City of Phoenix*,
506 F. Supp. 3d 725 (D. Ariz. 2020) .................................................................................. 11

*Reyes v. Checksmart Fin., LLC*,
701 F. App'x 655 (9th Cir. 2017) ..................................................................................... 4, 6

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1999) ............................................................................................................. 2

*Shulman v. Kaplan*,
58 F.4th 404 (9th Cir. 2023) ................................................................................................ 2

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ............................................................................................................. 6

*Stahl v. Gibraltar Fin. Corp.*,
967 F.2d 335 (9th Cir. 1992) ............................................................................................... 9

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ............................................................................................................... 4

*Tanne v. Autobytel, Inc.*,
226 F.R.D. 659 (C.D. Cal. 2005) ................................................................................. 11, 12

*TSC Industries, Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) ............................................................................................................. 9

*United States v. Hays*,
515 U.S. 737 (1995) ............................................................................................................. 2

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ........................................................................................................... 11

**Page(s)**

# RULES

Federal Rules of Civil Procedure
    Rule 12(b)(1) .................................................................................................................... 1, 2, 4
    Rule 12(b)(6) ....................................................................................................................... 2, 5
    Rule 59(e) .......................................................................................................................... 1, 3, 5
    Rule 60(a) ................................................................................................................................ 3
    Rule 60(b) ....................................................................................................................... 1, 3, 4, 5

Case No. 5:21-cv-06374-BLF
PLAINTIFFS' MOTION FOR RECONSIDERATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Court's Order finding that Stadium Capital did not have constitutional standing was "clear error" under Fed. R. Civ. P. 59(e) or "mistake [or] inadvertence" under Fed. R. Civ. P. 60(b) because it failed to apply the correct standard – Rule 12(b)(1) – and improperly conflated constitutional standing (a jurisdictional issue) with statutory standing (failure to state a claim).  As discussed below, because threshold issues of constitutional standing are jurisdictional, they must be addressed whenever raised and cannot be waived.

I.      **Introduction and Summary of Argument**

The issue of constitutional standing is not one that was explicitly raised by Defendants as a basis for dismissal in their motions to dismiss plaintiffs' Second Amended Complaint. *See* ECF No. 181 ("View Br.") (in Issues To Be Decided section stating that the Section 14(a) claim should be dismissed for failure to plead "causation . . . with particularity" and Section 10(b) claim should be dismissed for failure to plead "loss causation . . . with particularity"); ECF No. 183 ("CF Br.") (similar); ECF No. 184 ("Prakash Br.") (similar).  In the bodies of their briefs, Defendants vaguely and confusingly argued that Stadium Capital "cannot plead loss causation" and therefore "lacks standing . . . because it owned no View stock before the alleged corrective disclosures in November 2021 and May 2022."  View Br. at 12-13; CF II Br. at 9 (similar).  But their only "standing" argument solely concerns loss causation issues (which relate to the question of *statutory* standing).  Moreover, to the extent Defendants' passing references to Article III in parentheticals can be interpreted as specifically arguing that Stadium Capital does not have constitutional standing, Defendants' argument failed to even address the relevant legal standard: Rule 12(b)(1).  *See* View Br. at 13; CF Br. at 9.

By confusingly citing to cases that either refer to "standing" generically, do not reference constitutional standing at all, or similarly conflated the distinct concepts of constitutional and statutory standing, Defendants have walked the Court into clear error.  View Br. at 13; CF II Br. at 9 (similar).  Relying on these faulty cases cited by Defendants, the Court's Order incorrectly determined that a purported failure to plead loss causation (which relates to the question of statutory standing) meant that Stadium Capital had not plead "an injury in fact" sufficient to confer

constitutional standing. Order at 14 ("In similar cases, where the lead plaintiff sold all of its shares before the truth was revealed, courts have found that the lead plaintiff was not injured and thus did not have and never had standing to bring suit."); *id*. at 16 ("Finding that Stadium Capital cannot plead loss causation, and thus does not have standing to bring any of the claims alleged in the second amended complaint. . . ."); *see also* View Br. at 13 (arguing that "[b]ecause the Lead Plaintiff lacks standing, the Court has no subject matter jurisdiction over this case and so it must be dismissed."). In doing so, the Court failed to apply the correct Rule 12(b)(1) standard for jurisdictional issues such as Article III standing, instead incorrectly applying the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067-68 (9th Cir. 2011) ("because the district court treated the motion as a 12(b)(6) motion, it inappropriately applied the standards of [*Twombly* and *Iqbal*]" "in the constitutional standing context"); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1054 (N.D. Cal. 2012) ("In other words "[a] plaintiff may satisfy the injury-in-fact requirements to have standing under Article III, and thus may be able to 'bring a civil action without suffering dismissal for want of standing to sue,' without being able to assert a cause of action successfully.").

In any event, "federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *United States v. Hays*, 515 U.S. 737, 742 (1995) (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 230–231 (1990)); *Arbaugh v. Y&H Corp*., 546 U.S. 500, 514 (2006) ("courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.") (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999)); *Shulman v. Kaplan*, 58 F.4th 404, 407 n.1 (9th Cir. 2023) ("Indeed, 'federal courts are required to examine sua sponte jurisdictional issues such as standing.'") (citing *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999)).

Finally, "[b]ecause issues of constitutional standing are jurisdictional, they must be addressed whenever raised." *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000), *as amended* (Aug. 11, 2000). Similarly, the question of constitutional standing cannot be waived. *Hays*, 515 U.S. at 742 ("The question of standing is not subject to

waiver") (citation omitted); *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1090 (9th Cir. 2012) ("Unlike constitutional standing, which is jurisdictional, we presume that statutory standing may be waived.") (internal citations omitted); *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 53 n.3 (1st Cir. 2014) ("One way in which the two concepts differ is that arguments based on statutory standing, unlike arguments based on constitutional standing, are waivable.").

## II.    Motions for Reconsideration

"Where the court's ruling has resulted in a final judgment or order (e.g., after dismissal or summary judgment motion), a motion for reconsideration may be based either on Rule 59(e) (motion to alter or amend judgment) or Rule 60(b) (motion for relief from judgment) of the Federal Rules of Civil Procedure." *Bardo v. Clark*, No. 19-00759 BLF (PR), 2021 WL 2778532, at *1 (N.D. Cal. July 2, 2021) (Freeman, J.) (citing *Am. Ironworks & Erectors v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001)). "'[T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Bardo*, 2021 WL 2778532, at *1 (internal citations omitted).

"A motion for reconsideration under Rule 59(e) should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the law." *Id*. at *1 (internal citations and quotations omitted). "Rule 60(b) of the Federal Rules of Civil Procedure provides for reconsideration where one or more of the following is shown: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) voiding of the judgment; (5) satisfaction of the judgment; (6) any other reason justifying relief." *Id*. at *2 (citing Fed. R. Civ. P. 60(b)). Moreover, under Rule 60(a) "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." Fed. R. Civ. P. 60(a).

As set forth herein, the Court's Order finding that Stadium Capital did not have

constitutional standing was "clear error" under Federal Rule of Civil Procedure 59(e) or "mistake [or] inadvertence" under Fed. R. Civ. P. 60(b) because it failed to apply the correct standard – Rule 12(b)(1) – and improperly conflated constitutional standing (a jurisdictional issue) with statutory standing (failure to state a claim).

## III.   In Overlooking Controlling Supreme Court and Ninth Circuit Authority the Court Failed to Assess Constitutional Standing Under the Proper Rule 12(b)(1) Standard

"It is incumbent upon federal courts to determine whether Article III standing exists before turning to the question of statutory standing." *Reyes v. Checksmart Fin., LLC*, 701 F. App'x 655, 658 (9th Cir. 2017) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)). "It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Steel*, 523 U.S. at 89 (emphasis in original). As such, "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in determining whether plaintiff states a claim under 12(b)(6), the court necessarily assesses the merits of plaintiff's case. But the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim." *Maya*, 658 F.3d at 1068. "Rather, '[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits.'" *Id*. at 1068 (internal citation omitted).

"To establish the constitutional minimum for Article III jurisdiction, a plaintiff must plead an injury-in-fact; this creates a pleading floor. A particular cause of action may require more—for instance, a particular type of injury or a threshold magnitude of injury—without raising the constitutional pleading floor. A failure to plead the more-specific or more-demanding statutory injury shows a failure to state a claim, not a failure to establish standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 573–74 (9th Cir. 2023). As such, "'[T]hough lack of statutory standing requires dismissal for failure to state a claim, lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Naruto v. Slater*, 888 F.3d 418, 425 n.7 (9th Cir. 2018) (quoting *Maya*, 658 F.3d at 1067) (brackets in original). "The

former is a determination on the merits, while the latter is purely jurisdictional." *Naruto*, 888 F.3d at 425 n.7.

Here, the Court never addressed the "threshold question of whether plaintiff has standing (and the court has jurisdiction) [which] is distinct from the merits of his claim." *Maya*, 658 F.3d at 1068.  Instead, the Court (in its reliance on cases cited by Defendants which suffered from the same infirmity) conflated constitutional standing with statutory standing, and conducted a single analysis under Rule 12(b)(6).  Order at 4-5, 10-19.  This was both "clear error" under  Fed. R. Civ. P. 59(e) and "mistake [or] inadvertence" under Fed. R. Civ. P. 60(b).  *See Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 n.4 (9th Cir. 2011) (reversing district court's dismissal of complaint for lack of standing and noting that "[s]tatutory standing, unlike constitutional standing, is not jurisdictional.") (internal quotation and citation omitted). As explained by the Ninth Circuit, "[t]he question whether a plaintiff states a claim for relief typically relates to the merits of a case, not to the dispute's justiciability, and conflation of the two concepts often causes confusion."  *Id.*; *see also In re VeriSign, Inc.*, No. C 02-02270 JW(PVT), 2005 WL 88969, at *4 (N.D. Cal. Jan. 13, 2005) ("The presence of individual standing is sufficient to confer the right to assert issues that are common to the class, speaking from the perspective of any standing requirements. Whether the class representatives may then represent the claims of the class is a separate inquiry.") (internal citation and quotation omitted); *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 446 (S.D.N.Y. 2019) ("Courts now recognize that 'what has been called 'statutory standing' in fact is not a standing issue' in the Article-III-jurisdiction sense, 'but simply a question of whether the particular plaintiff has a cause of action under the statute'") (citing *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-28 (2014)).

## A.     Controlling Supreme Court and Ninth Circuit Law Requires a Finding of Article III (Constitutional) Standing

"To establish Article III standing, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates*

*Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Moreover, "the Supreme Court instructs that a concrete 'injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Jewel*, 673 F.3d at 908 (quoting *Lujan,* 504 U.S. at 578 (internal quotation marks, citation, and alteration omitted)).

### 1.    "Loss Causation" and "Causation" Arguments Relate to *Statutory* Standing, *Not* Constitutional Standing

Here, the Court found that Stadium Capital "cannot show injury", and therefore has no constitutional standing, because it "cannot plead loss causation". Order at 4-5, 10-19.  This was clear error under Supreme Court and Ninth Circuit law.  *Lexmark*, 572 U.S. at 133 ("Proximate-cause analysis is controlled by the nature of the statutory cause of action."); *Reyes v. Checksmart Fin., LLC*, 701 F. App'x 655, 657 (9th Cir. 2017) (traceability arguments "go[] to whether [plaintiff] can state a claim under . . . not to whether she has Article III standing").

In finding that Stadium Capital had not plead loss causation, the Court relied on the Eleventh Circuit case, *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023).  But even the *MacPhee* court held that finding a lack of constitutional standing based on loss causation is error:

> We conclude that that the district court erred in finding that Carpenters lacked standing at the time it filed its suit as to its § 10(b) claims. The district court appears to have equated a failure to adequately allege an element of a cause of action and thus a failure to state a claim with the nonexistence of a "Case" or "Controversy" for purposes of Article III standing. But they are not the same. And while a plaintiff may both lack standing and fail to state a claim, it is also true that a plaintiff can meet the requirement for constitutional standing but nonetheless fail to state a claim. For example, in *Meyer*

- 6 -

[*v. Greene*, 710 F.3d 1189 (11th Cir. 2013)], despite concluding that the plaintiff failed to adequately allege loss causation—a conclusion we reach here as well—we did not dismiss for lack of standing, but instead for failure to state a claim. 710 F.3d at 1196-202.

*MacPhee*, 73 F.4th at 1240.  This is black-letter law.  *See, e.g.*, *Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 254 (2010) ("to ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question"); *Maya*, 658 F.3d at 1067 ("The district court erroneously concluded that lack of Article III standing was grounds for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Though lack of *statutory* standing requires dismissal for failure to state a claim, lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).") (emphasis in original); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d at 1054 ("In other words '[a] plaintiff may satisfy the injury-in-fact requirements to have standing under Article III, and thus may be able to 'bring a civil action without suffering dismissal for want of standing to sue,' without being able to assert a cause of action successfully.'") (internal citation omitted); *Am. Signature, Inc. v. Moody's Invs. Servs., Inc.*, No. 10 CIV. 5095 (PGG), 2023 WL 6661054, at *4 (S.D.N.Y. Oct. 12, 2023) ("the standard for determining [Article III] standing at the pleading stage is lenient, and while Defendants dispute the causal link between Plaintiffs' alleged injury and Defendants' alleged actions, the standard for determining standing is not the same as that applicable for determining loss causation.") (internal citations and quotation omitted).

### 2.    Stadium Capital Has Article III (Constitutional) Standing

Here, Stadium Capital has constitutional standing.  Again, *MacPhee* is instructive:

> Put very broadly, for purposes of a standing analysis, a court will generally accept the allegations that a defendant's actions were wrong and then ask whether a particular plaintiff's rights were violated by them. While there are certainly nuances and exceptions to this broad characterization, when Carpenters filed its complaint, it

had standing to bring its § 10(b) claims. Carpenters alleged it suffered a decrease in the value of its MiMedx shares that was caused by—or fairly traceable to—Defendants' allegedly misleading statements and actions about MiMedx. Taken as true, the allegations sufficiently satisfy our test for Article III's traceability requirement. And Carpenters's loss would likely be redressed by a ruling in its favor.

*MacPhee*, 73 F.4th at 1240.  As in *MacPhee*, here, taken as true, the second amended complaints' allegations satisfy the test for Article III standing for its 10(b) claim.  *See also In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 390 F. Supp. 3d 916, 928 (N.D. Ill. 2019), *aff'd sub nom. Barry v. Cboe Glob. Markets, Inc.*, 42 F.4th 619 (7th Cir. 2022) ("Plaintiffs have alleged that Cboe and the Does manipulated the VIX, causing plaintiffs—who purchased and sold VIX-related products—to lose money. Damages would remedy that injury, and at this stage, this is enough."); *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 69 (D.D.C. 2017), *aff'd*, 894 F.3d 339 (D.C. Cir. 2018) ("In [the § 10(b)] context, it is well established that a plaintiff suffers legal injury [for purposes of Article III standing] at the moment she makes her investment, not when she suffers actual losses."); *In re VeriSign, Inc.*, No. C 02-02270 JW(PVT), 2005 WL 88969, at *5 (N.D. Cal. Jan. 13, 2005) (allegations that lead plaintiffs "relied upon Defendants' misrepresentations, acquired VeriSign stock at artificially inflated prices, and were damaged thereby" were "sufficient to establish [Article III] standing."); *Am. Signature, Inc.*, 2023 WL 6661054, at *4 ("This Court concludes that Plaintiffs – who acquired the allegedly improperly rated and now valueless securities – have adequately pled [Article III] standing."); *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 444 (S.D.N.Y. 2019) ("although Plaintiffs may face an uphill battle in proving any harm at all, in confirming its Article III jurisdiction at the pleading stage, the Court's task is to evaluate the allegations of injury in fact in Plaintiffs' complaint, not to predict the viability of their ultimate claim for damages.").

The cases cited by Defendants, which the Court relied upon, were similarly victim of this "conflation of the two concepts [of constitutional and statutory standing that] often causes

- 8 -                                    Case No. 5:21-cv-06374-BLF

confusion." *Jewel*, 673 F.3d at 907 n.4; *see In re Impax Lab'ys, Inc. Sec. Litig.*, No. C 04-04802 JW, 2008 WL 1766943, at *6–7 (N.D. Cal. Apr. 17, 2008) (failing to distinguish between constitutional and statutory standing, and finding no "injury in fact" on loss causation grounds without citing any legal support); *In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 394 (N.D. Cal. 2009) (failing to distinguish between constitutional and statutory standing, finding lead plaintiff "lacks standing because it purchased and sold Infineon stock before . . . the first date that Infineon released corrective information . . . [and therefore] cannot show loss causation" without citing any legal support).

Similarly, Stadium Capital also has Article III standing for its 14(a) claim. The Court in its Order found that Stadium Capital "does not have and never had standing for the § 14(a) claim" for the same loss causation reasons as the Section 10(b) claim. Order at 15-16. But again, this conflates constitutional standing with statutory standing.

As the Ninth Circuit stated in *Stahl v. Gibraltar Fin. Corp.*, 967 F.2d 335, 337 (9th Cir. 1992), regarding Article III standing for a Section 14(a) claim, "[a]s the Supreme Court noted in *Mills* [*v. Elec. Auto-Lite Co.*, 396 U.S. 375, 383 (1970)], "[u]se of a solicitation that is materially misleading *is itself* a violation of law." *Stahl v. Gibraltar Fin. Corp.*, 967 F.2d 335, 337 (9th Cir. 1992) (emphasis in original); *Jewel*, 673 F.3d at 908 ("the Supreme Court instructs that a concrete 'injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'") (quoting *Lujan,* 504 U.S. at 578 (internal quotation marks, citation, and alteration omitted)). Indeed, "[t]he touchstone of a section 14(a) violation is a material misstatement—something "that a reasonable shareholder would consider . . . important in deciding how to vote." *Stahl*, 967 F.2d at 337 (citing *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)). "As materiality is an objective standard, it should not matter whether any particular shareholder was actually misled by the challenged misrepresentations." *Stahl*, 967 F.2d at 337.

Therefore, because there is no dispute that Stadium Capital held stock as of the record date and was entitled to vote on the merger, Stadium Capital has Article III standing for its 14(a) claim. *Stahl*, 967 F.2d at 338 ("Under *Virginia Bankshares,* [even] shareholders such as Stahl who do not

vote their proxies in reliance on the alleged misstatements have standing to sue under section 14(a)—both before *and* after the vote is taken.") (emphasis in original).

## IV.   Upon Finding Stadium Capital Has Article III Standing, the Court Should Have Considered Additional Plaintiff Sherman

As stated above, the Article III determination precedes any analysis of the merits. *Maya*, 658 F.3d at 1068 ("[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits.") (internal citation and quotation omitted).   Had the Court correctly found that Stadium *does* have Article III standing, the Court should have then found that Sherman's addition in the second amended complaint was appropriate.   As the Court's Order recognized, "whether the addition of Sherman is appropriate turns on Stadium Capital's standing."   Order at 17. The correct statement of the rule, however, is that it turns on "Stadium Capital's [Article III] standing."   Indeed, as held by the Ninth Circuit in *Lierboe*, which the Court cited on this point, a lead plaintiff "never had standing," and thus was "never a member of the class [it] was named to represent" where it did not "establish[] the requisite of a case or controversy with the defendants", i.e., Article III standing. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003); *see also Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 (9th Cir. 2017) (rejecting defendant's argument "that Article III is not satisfied because Plaintiffs have not identified particular trades that caused them losses" because "[w]hether the Plaintiffs can identify those trades at a later stage of litigation does not deprive them of standing to sue. At the motion to dismiss stage, 'we presume[ ] that general allegations embrace those specific facts that are necessary to support the claim.'") (citing *Lujan*, 504 U.S. at 561).

As stated in plaintiffs' Opposition Brief, ECF No. 185 at 29, "Lead Plaintiffs have a ***responsibility*** to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims." *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) (emphasis added); *see also Hunt v. Bloom Energy Corp.*, No. 19-cv-02935-HSG, 2021 WL 1110260, at *2 (N.D. Cal. Mar. 23, 2021) ("the additions [of new named plaintiffs in the SAC] are permissible and consistent with the Lead Plaintiff's duties").   Moreover, "[i]rrespective

of the lead plaintiff's standing to pursue a [specific] claim, the class may pursue any claim that at least one named plaintiff has standing to pursue." Opposition Brief at 30 (quoting *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 669 (C.D. Cal. 2005); *see also* Opposition Brief at 29-30 (distinguishing cases cited by Defendants and the Court).

"The Supreme Court has instructed that where there are multiple plaintiffs in a suit, '[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint.'" *Bear River Band of Rohnerville Rancheria v. California Dep't of Soc. Servs.*, No. 23-CV-01809-HSG, 2024 WL 1055849, at *4 (N.D. Cal. Mar. 11, 2024). "The principle – frequently reiterated by the Ninth Circuit – obviates the need to analyze whether each named plaintiff has standing for each form of requested relief if at least *one* plaintiff can properly proceed on each." *Id.* (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977) ("Because of the presence of this plaintiff [with standing], we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit."); *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) ("The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others."); *Poder in Action v. City of Phoenix*, 506 F. Supp. 3d 725, 728 (D. Ariz. 2020) ("The Ninth Circuit has repeatedly stated that it is unnecessary to address the standing of each plaintiff in a multi-plaintiff case, at least where all plaintiffs seek the same form of relief, so long as one of the plaintiffs has standing.")); *Ctr. for Env't Health v. Perdue*, No. 18-CV-01763-RS, 2018 WL 9662437, at *4 (N.D. Cal. Aug. 21, 2018) ("Because at least one plaintiff organization, CFS, has alleged facts sufficient to support standing on behalf of its members, the other standing arguments raised in the briefing need not be addressed."). With Sherman having entered the case as a named plaintiff, the Court should have proceeded to assess whether at least one named plaintiff had statutory standing to pursue each of the claims.

Moreover, because it is only necessary for at least one named plaintiff to have statutory standing with respect to each claim, and no loss causation arguments were made with respect to Sherman, the Court need not reach a loss causation analysis with respect to Stadium Capital in any amended Order the Court may issue. *See* Order at 10-19; *see Bear River Band*, 2024 WL 1055849,

at *5 ("Since Defendants do not argue that Plaintiff [Sherman] lacks standing to seek damages, and since the Court does not independently identify any defect with its jurisdiction over Plaintiff [Sherman]'s damages claims, the Court concludes that it need not consider whether the [Stadium Capital] also has standing to pursue damages. At this stage of the litigation, it is enough that Plaintiff [Sherman] does."); *see also Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996) ("For each claim, if constitutional and prudential standing can be shown for at least one plaintiff, we need not consider the standing of the other plaintiffs to raise that claim."); *Tanne*, 226 F.R.D. at 669; *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 685 n.17 (D. Colo. 2014) ("district courts allow putative class suits to proceed so long as there is at least one named plaintiff with standing to sue as to every claim alleged") and (rejecting argument "that the [lead plaintiff] is not a class member because it sold all of its Crocs' common stock before Crocs made corrective disclosures", and holding that "[b]ecause the addition of plaintiffs Babbitt and Lundberg to this action cures concerns regarding the class representatives' purchases of Crocs' common stock, the Court need not address this argument in resolving the instant motion [for final approval of proposed partial settlement and plan of allocation, and for final certification of settlement class]."); *Oklahoma Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 494 (S.D.N.Y. 2013) ("While lead plaintiffs appointed pursuant to the PSLRA need not satisfy all the elements of standing with respect to the entire lawsuit in order to defeat a motion to dismiss, at least one named plaintiff must have standing to pursue each claim alleged.").

## V.    Conclusion

Respectfully, the Court should set aside the Judgement and correct its Order to (1) find that Stadium has Article III standing, (2) clarify that Sherman entered the case as a named plaintiff; (3) find that because no loss causation arguments were made with respect to Sherman, the Court need not reach the question of loss causation with respect to Stadium Capital; and (4) address any other remaining issues necessary to render a decision on defendants' motions to dismiss the Second Amended Complaint.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED: April 17, 2024

By: /s/ *Laurence D. King*
       Laurence D. King

Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium Capital LLC,*
*Plaintiff David Sherman and the Proposed Class*