Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
Emails: *lking@kaplanfox.com*
         *breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
Emails:  *ffox@kaplanfox.com*
         *dhall@kaplanfox.com*
         *juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium
Capital LLC, Plaintiff David Sherman and the
Proposed Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., AND CF GROUP MANAGEMENT, INC., <br><br> Defendants. | Case No.: 5:21-cv-06374-BLF <br><br> <u>**CLASS ACTION**</u> <br><br> **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 59(e) AND 60(b)** <br><br> Judge:  Hon. Beth L. Freeman <br> Courtroom:  3, 5th Floor |

**TABLE OF CONTENTS**

**Page**

I.      Introduction and Summary of Argument ........................................................ 1

II.     Article III Standing Analysis Precedes Any Analysis of the Merits of A Cause of
        Action ........................................................................................................... 4

III.    Defendants Ignore Cases Addressing Art. III Standing in the 10(b) and 14(a)
        Contexts ........................................................................................................ 6

IV.     Defendants' Attempts to Distinguish Controlling Authority Fall Flat ............... 9

V.      The Court Need Not Reach Loss Causation With Respect to Stadium Capital ........... 13

VI.     Plaintiffs' Reconsideration Motion Is Procedurally Proper ................................ 15

PLAINTIFFS' REPLY BRIEF ISO THEIR MOTION FOR RECONSIDERATION

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adedipe v. U.S. Bank, Nat'l Ass'n*,
No. CV 13-2687 (JNE/JJK), 2015 WL 11217175 (D. Minn. Dec. 29, 2015), *aff'd on other grounds sub nom. Thole v. U.S. Bank, Nat'l Ass'n*, 873 F.3d 617 (8th Cir. 2017), *aff'd sub nom. Thole v. U. S. Bank N.A*, 590 U.S. 538, 140 S. Ct. 1615, 207 L. Ed. 2d 85 (2020)...................... 6

*Am. Signature, Inc. v. Moody's Invs. Servs., Inc.*,
No. 10 CIV. 5095 (PGG), 2023 WL 6661054 (S.D.N.Y. Oct. 12, 2023)................................... 7

*Aspenlind v. Spartan Mortg. Servs.*,
No. CIV. S-11-0366 MCE, 2011 WL 3490480 (E.D. Cal. Aug. 9, 2011)................................ 15

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012)........................................................................... 8, 12

*Brown v. Medtronic*,
628 F.3d 451 (8th Cir. 2010)............................................................................... 2, 3, 7, 8

*Doran v. 7-Eleven, Inc.*,
524 F.3d 1034 (9th Cir. 2008)...................................................................................... 11

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ......................................................................................... 4, 14, 15

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011)......................................................................... 4, 14, 15

*Fleming v. Charles Schwab Corp.*,
878 F.3d 1146 (9th Cir. 2017).............................................................................. 10, 12

*Forte v. U.S. Pension Comm.*,
No. 15-CV-4936 (PKC), 2016 WL 5922653 (S.D.N.Y. Sept. 30, 2016) .................................. 9

*In re Bear Sterns Mortg. Pass-Through Certs. Litig.*,
851 F. Supp. 2d 746 (S.D.N.Y. 2012)............................................................................... 5

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020)......................................................................................... 14

*In re Bos. Sci. Corp. ERISA Litig.*,
254 F.R.D. 24 (D. Mass. 2008).......................................................................................... 9

*In re MiMedx Grp., Inc. Sec. Litig.*,
No. 1:18-CV-00830-WMR, 2021 WL 7210372 (N.D. Ga. Mar. 25, 2021), *aff'd in part, vacated in part sub nom. MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023)........ 2

*In re Willis Towers Watson PLC Proxy Litig.*,
No. 117CV1338AJTJFA, 2020 WL 5361582  (E.D. Va. Sept. 4, 2020)................................... 9

*In re Wilmington Tr. Corp. ERISA Litig.*,
943 F. Supp. 2d 478 (D. Del. 2013)................................................................................... 8

**Page(s)**

*Jewel v. Nat'l Sec. Agency*,
673 F.3d 902 (9th Cir. 2011)................................................................................................. 13

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ................................................................................................... 3

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) ............................................................................................ 1, 6

*Levine v. AtriCure, Inc.*,
508 F. Supp. 2d 268 (S.D.N.Y. 2007)..................................................................................... 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)................................................................................................................ 1

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016)................................................................................... 4, 14, 15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................................ 10, 11

*MacPhee v. MiMedx Grp., Inc.*,
73 F.4th 1220 (11th Cir. 2023) ...................................................................................... passim

*Magadia v. Wal-Mart Assocs., Inc.*,
999 F.3d 668 (9th Cir. 2021)................................................................................................ 11

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
No. 210CV0302MRPMANX, 2011 WL 13127544 (C.D. Cal. Sept. 13, 2011) ........................ 9

*Mauss v. NuVasive, Inc.*,
No. 13CV2005 JM (JLB), 2016 WL 3681831 (S.D. Cal. July 12, 2016).................................. 15

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)................................................................................................. 5

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013)..................................................................................... 14, 15

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
926 F.3d 528 (9th Cir. 2019)................................................................................................... 5

*New York City Employees' Ret. Sys. v. Jobs*,
593 F.3d 1018 (9th Cir. 2010), *overruled by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir.
2012) ..................................................................................................................................... 12

*Plymouth Cnty. Ret. Sys. v. Carter's Inc.*,
No. 1:08-CV-02940-JOF, 2011 WL 13124501 (N.D. Ga. Mar. 17, 2011) ................................ 3

*Reyes v. Checksmart Fin., LLC*,
701 F. App'x 655 (9th Cir. 2017) ............................................................................... 1, 5, 7, 10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..................................................................................................... 1, 5, 13

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Stahl v. Gibraltar Fin. Corp.*,
  967 F.2d 335 (9th Cir. 1992)............................................................................... 6, 12, 13

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................... 5

*Taylor v. KeyCorp*,
  680 F.3d 609 (6th Cir. 2012)................................................................................... 8

*Thole v. U. S. Bank N.A*,
  590 U.S. 538 (2020) ............................................................................................. 5, 6

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................................................. 9

*Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*,
  843 F.3d 561 (2d Cir. 2016).................................................................................... 9

*Vermeylen v. ProQuest Co.*,
  No. 06-12327, 2007 WL 1218713 (E.D. Mich. Apr. 23, 2007).............................. 8

*Williams v. Sisolak*,
  No. 22-16859, 2024 WL 194180 (9th Cir. Jan. 18, 2024) .............................. 1, 5, 10

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
  62 F.4th 517 (9th Cir. 2023) ....................................................................... 10, 11, 12

### RULES

Federal Rules of Civil Procedure
  Rule 60(a)................................................................................................................ 4

## I.    Introduction and Summary of Argument

From the get-go, Defendants brazenly misstate black-letter law to argue that "a plaintiff who cannot clearly and plausibly allege ***loss causation*** for any of its claims has no Article III standing."  Opp. at 1 (emphasis added).  Even in opposition to the Reconsideration Motion (the "Motion"), Defendants continue to conflate Article III standing (a jurisdictional issue) with statutory standing (failure to state a claim) in their attempt to smuggle loss causation arguments into the threshold assessment of Article III standing for which loss causation ***is not an element***. *See Williams v. Sisolak*, No. 22-16859, 2024 WL 194180, at *1 (9th Cir. Jan. 18, 2024) (Article III traceability "does not require a showing of proximate cause"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) (same).  Similarly, Defendants refuse to acknowledge that the Article III question ***precedes*** assessment of the statutory cause of action because it is fatal to their argument which relies on loss causation concepts.  *Reyes v. Checksmart Fin., LLC*, 701 F. App'x 655, 658 (9th Cir. 2017) ("It is incumbent upon federal courts to determine whether Article III standing exists before turning to the question of statutory standing.").

The element of Article III standing requiring that the alleged injury "is fairly traceable to the challenged conduct of the defendant" requires a different and independent analysis than that of "loss causation", which is an element of a 10(b) cause of action. As the Ninth Circuit explained earlier this year, "to meet [the Article III traceability] requirement, plaintiffs must allege that their injuries are "fairly traceable" to the defendants' conduct and "not the result of the independent action of some third party not before the court." *Sisolak*, 2024 WL 194180, at *1 (internal citations omitted).  Moreover, "at the pleadings stage, the plaintiff must allege sufficient facts that, taken as true, 'demonstrat[e] each element' of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Here, Stadium Capital has alleged that it and the Class suffered decreases in the value of their shares that were fairly traceable to Defendants' allegedly misleading statements about View's warranty accrual, and that the stock price dropped when the truth about View's warranty accrual began to be revealed on August 16, 2021. ¶¶ 10-13, 24-25, 128-30, 162, 138-48, 185-87, 189, 195-96, 257-59.  Stadium Capital sold its stock ***after*** the alleged August 16, 2021 disclosure announcing

an internal investigation into the adequacy of the company's previously disclosed warranty accrual. Plaintiff has cited numerous cases holding that allegations similar to those here, i.e., that plaintiff suffered a decrease in the value of its shares that was fairly traceable to Defendants' allegedly misleading statements (the August 16, 2021 disclosure was explicitly related to the alleged misstatements), meet the Article III traceability requirements in the 10(b) context, each of which Defendants completely ignored in their Opposition (except for *MacPhee*). Motion at 7-8.

Even the cases Defendants rely on are in accord. In *MacPhee*, the district court found that plaintiff's allegation that the defendants' disclosure of an internal investigation, which occurred before plaintiff sold all of its stock, "w[as not] corrective as a matter of law", and therefore plaintiff did not have injury-in-fact because "to fairly trace Lead Plaintiff's injury to the Defendants' alleged fraudulent conduct – Lead Plaintiff must sufficiently allege, *inter alia*, that the fraud-induced inflation that was baked into the purchase price of the MiMedx stock was subsequently removed from the stock's price by a corrective disclosure, thereby causing the loss." *In re MiMedx Grp., Inc. Sec. Litig.*, No. 1:18-CV-00830-WMR, 2021 WL 7210372, at *3-5 (N.D. Ga. Mar. 25, 2021), *aff'd in part, vacated in part sub nom. MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023). The Eleventh Circuit found that the district court's finding overstepped the bounds of the Article III standing analysis because it "equated a failure to adequately allege an element of a cause of action and thus a failure to state a claim with the nonexistence of a "Case" or "Controversy" for purposes of Article III standing." *MacPhee*, 73 F.4th at 1240. Rather than jump ahead to assessing loss causation, the district court needed to "generally accept the allegations that a defendant's actions were wrong and then ask whether a particular plaintiff's rights were violated by them." *Id*. That is exactly what the Court needs to do there.

*Brown v. Medtronic*, which Defendants rely heavily on, also supports Plaintiffs. 628 F.3d 451, 459 (8th Cir. 2010). In *Brown*, defendants argued (and the district court agreed), that "because [plaintiff] sold all of his shares in Spring 2008, prior to the one most dramatic drop in share price that occurred in Fall 2008, [plaintiff]'s sale price reflected the purported artificial price inflation, and he therefore suffered no injury." *Id*. The Eighth Circuit held this was error. There, "[plaintiff] clearly alleged that a share price drop of 10–12% in Fall 2007 was fairly traceable to Medtronic's

PLAINTIFFS' REPLY BRIEF ISO THEIR MOTION FOR RECONSIDERATION

product recall and the company's broad acknowledgment of adverse data. [Plaintiff] *allege[d]* that at least part of this price decline was due to the market's purported realization that Medtronic may have been concealing negative information prior to the recall." *Id.* (emphasis added). *Brown* explained that because for Article III purposes "we are neither analyzing damages nor requiring a plaintiff to prove proximate cause", "we ask only whether [plaintiff] has alleged an injury that is fairly traceable to the allegedly wrongful act" (i.e., the misstatements). *Id*. As such, "[g]iven the actual October 2007 share-price drop, the timing of [plaintiff]'s sales in May and June 2008, *and the allegation that the drop was at least in part due to the market's response to the alleged wrongdoing*, we conclude [plaintiff] has articulated a traceable and redressable injury sufficient to show standing" and "[w]e make no comment on the sufficiency of such allegations to prove damages or establish causation in other contexts . . . ." *Id*. That is exactly what is alleged here. *See* ¶¶145, 148 ("investors understood the earlier August 16 and November 9, 2021 announcements as at least partial disclosures of the inaccuracy of the previously reported warranty accruals").

To find no Article III standing at the pleading stage based on a purported failure to meet the separate and more demanding "loss causation" element of the 10(b) cause of action would be clear error, as it runs afoul of clear Supreme Court and Ninth Circuit law that the elements of the cause of action do not raise the "constitutional pleading floor [that the alleged injury be fairly traceable to defendants' conduct]." *Jones v. Ford Motor Co.*, 85 F.4th 570, 573–74 (9th Cir. 2023) ("A particular cause of action may require more—for instance, a particular type of injury or a threshold magnitude of injury—*without raising the constitutional pleading floor*. A failure to plead the more-specific or more-demanding statutory injury shows a failure to state a claim, not a failure to establish standing.") (emphasis added); *see also, e.g., Plymouth Cnty. Ret. Sys. v. Carter's Inc.*, No. 1:08-CV-02940-JOF, 2011 WL 13124501, at *10 (N.D. Ga. Mar. 17, 2011) ("Plaintiffs sufficiently allege that the October press release was a partial disclosure and corrected some of the artificial inflation of [defendant]'s stock. Although it was not until November 9, 2009, that [defendant] announced that it would actually be restating its financials for fiscal years 2004-2008 and the first two quarters of 2009, the October 27th press release made it clear that there might be problems pertaining to margin profit accounting. Even if not a partial corrective disclosure for the purposes

of loss causation, the court finds that Plaintiff Mylroie has sufficiently pled facts showing that he suffered harm that can be fairly traced to his purchase of [defendant]'s stock at prices that were allegedly inflated by the Accommodations Fraud.").

Stadium Capital has Article III standing and therefore Sherman's addition was appropriate. Moreover, because Defendants have not contested loss causation with respect to Sherman, and because it is only necessary for at least one named plaintiff to have statutory standing with respect to each claim, the Court need not reach a loss causation analysis with respect to Stadium Capital in any amended Order the Court may issue. Motion at 10-12. Defendants do not respond at all to this argument, conceding that such an approach is proper. Contrary to Defendants' continued insistence, *MacPhee*'s approach to loss causation is not "entirely consistent with Supreme Court and Ninth Circuit precedent." Opp. at 11. Rather, *MacPhee* misinterpreted language from the Eleventh Circuit's single-corrective disclosure decision in *FindWhat* concerning "when the truth underlying the falsehood [was] finally revealed"—language never used by the Ninth Circuit—in a way that is inconsistent with the Supreme Court's holding in *Dura* and as foreclosing the *MacPhee* panel from following the Ninth Circuit's decision in *Lloyd*. *See infra* at 13-15. Given loss causation is unchallenged as to Sherman, there is no reason to weigh in on this contested issue at this stage.

Finally, the Motion is procedurally proper. Defendants fault Plaintiffs for not making these arguments previously, but Defendants never argued that the alleged injury was not "fairly traceable" to Defendants' allegedly misleading statements about View's warranty accrual. Plaintiffs' reasonable interpretation of Defendants' arguments was that they concerned statutory standing (failure to plead a cause of action), as loss causation is not an element of Article III standing. In any event, arguments regarding Article III standing cannot be waived, the court has an independent duty to assess Article III standing, and the Court may correct such a mistake "on motion or on its own, with or without notice." Fed. R. Civ. P. 60(a); Motion at 1-3.

**II.      Article III Standing Analysis Precedes Any Analysis of the Merits of A Cause of Action**

Defendants' centerpiece assertion that Plaintiffs' argument is "based on *Maya v. Centex*" which is "no longer good law" is false and sidesteps the actual issue raised in the Motion. Opp. at 1. Defendants resort to mischaracterizing Plaintiffs' argument as "rest[ing] on the flawed premise

that Article III standing is subject to less stringent pleading requirements than other aspects of Plaintiff's claims." Nowhere did Plaintiffs argue that less stringent *pleading requirements* apply to the question of Article III standing. Rather, Plaintiff argued, as noted by *Maya*, that *Iqbal* and *Twombly* are "ill-suited" to the question of Article III standing because those cases concerned whether plaintiffs *failed to state a claim* under Rule 12(b)(6), which is a wholly separate and more demanding inquiry to that of Article III standing which "precedes, and does not require, analysis of the merits.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011); *see also Reyes*, 701 F. App'x at 658 (same) (*citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)).

"To establish Article III standing, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (citing *Spokeo*, 578 U.S. at 338). As stated by the Ninth Circuit in *Sisolak*, "[t]o meet [the Article III traceability] requirement, plaintiffs must allege that their injuries are 'fairly traceable' to the defendants' conduct and 'not the result of the independent action of some third party not before the court.'" *Sisolak*, 2024 WL 194180, at *1 (citations omitted); *see also, e.g., In re Bear Sterns Mortg. Pass-Through Certs. Litig.*, 851 F. Supp. 2d 746, 776-77 (S.D.N.Y. 2012) (Article III standing exists where "at least one named Plaintiff purchased securities" from the offerings that contained "alleged misrepresentations and omissions," and where the securities' decline in value was traceable to the alleged misrepresentations and omissions). For example, "[i]n cases where a chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and this court have found the causal chain too weak to support standing at the pleading stage." *Sisolak.*, 2024 WL 194180 at *1 (quoting *Maya*, 658 F.3d at 1070).

Rather than address the actual standard to plead traceability for Article III purposes, Defendants instead hone in on the requirement set forth in *Spokeo* that a plaintiff "plausibly and clearly" allege a "concrete" injury. Opp. at 4 (citing *Thole v. U. S. Bank N.A*, 590 U.S. 538 (2020)). In the context of Article III traceability, the question becomes whether plaintiff "plausibly and clearly" alleged harm fairly traceable to defendants' conduct. And as *Thole* itself acknowledges,

"the cause of action does not affect the Article III standing analysis." *Thole*, 590 U.S. at 544.

In *Thole*, the plaintiffs failed to "plausibly and clearly" allege injury-in-fact where, by their own allegations, "plaintiffs ha[d] not sustained any monetary injury", but rather alleged injury based on "alleged mismanagement of the defined-benefit plan . . . and poorly invest[ed] the assets of the plan." *Thole*, 590 U.S. at 541; *Adedipe v. U.S. Bank, Nat'l Ass'n*, No. CV 13-2687 (JNE/JJK), 2015 WL 11217175, at *6 (D. Minn. Dec. 29, 2015), *aff'd on other grounds sub nom. Thole v. U.S. Bank, Nat'l Ass'n*, 873 F.3d 617 (8th Cir. 2017), *aff'd sub nom. Thole v. U. S. Bank N.A*, 590 U.S. 538, 140 S. Ct. 1615, 207 L. Ed. 2d 85 (2020) ("Plaintiffs in this case have not alleged such an 'actual, individualized' harm, because no one asserts that the Plan has failed to pay any of his or her benefits. Rather, they assert a more general increased risk of Plan default."). Here, Plaintiffs have "plausibly and clearly" alleged that they suffered decreases in the value of their shares that were fairly traceable to Defendants' allegedly misleading statements about View's warranty accrual, and that the stock price dropped when the truth about View's warranty accrual began to be revealed on August 16, 2021, when they each held the stock.

Additionally, as set forth below in Section IV, Defendants have not cited any Ninth Circuit authority contrary to *Stahl* on the question of Article III standing for a 14(a) claim.

**III.    Defendants Ignore Cases Addressing Art. III Standing in the 10(b) and 14(a) Contexts**

The key question is this: What allegations, taken as true, satisfy the test for Article III standing for a 10(b) or 14(a) claim? Plaintiff cited numerous cases directly on point, yet, other than *MacPhee*, Defendants failed to address a single one of them. Motion at 7-8 (collecting cases).

Moreover, it is worth emphasizing that Plaintiffs' allegation is that the August 16, 2021 disclosure was the first corrective disclosure, i.e., the date upon which the truth began to leak out concerning the adequacy of View's previously disclosed warranty accrual, and Class members suffered damages as a result thereof. ¶¶10-11, 128, 140-41, 145, 148. This allegation must be accepted as true for purposes of the Article III analysis. *Jones*, 74 F.4th at 1057 ("at the pleadings stage, the plaintiff must allege sufficient facts that, taken as true, 'demonstrat[e] each element' of Article III standing"). There is no dispute that the August 16, 2021 disclosure explicitly related to View's previously disclosed warranty accrual, or that the stock dropped on that date. That the

Court's Order (ECF No. 200), in assessing *loss causation* (which analysis must occur *consequent* to the determination of Article III standing), found that it could not be the basis of a *loss causation* theory is irrelevant to the Article III standing question which precedes any such finding. *Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 275 (S.D.N.Y. 2007) ("There is no compelling reason why the factual presumption that a decline in value is caused by the misrepresentation in the registration statement does not apply with equal force in a constitutional standing inquiry. A contrary ruling would render nugatory the entire loss causation jurisprudence").  As the Ninth Circuit has held, the elements of a cause of action, such as loss causation, "go[] to whether [plaintiff] can state a claim under . . . not to whether she has Article III standing." *Reyes*, 701 F. App'x at 657; *see also Am. Signature, Inc. v. Moody's Invs. Servs., Inc.*, No. 10 CIV. 5095 (PGG), 2023 WL 6661054, at *4 (S.D.N.Y. Oct. 12, 2023) ("while Defendants dispute the causal link between Plaintiffs' alleged injury and Defendants' alleged actions, the standard for determining standing is not the same as that applicable for determining loss causation.").

In contrast, Defendants' cited cases involve scenarios where the plaintiff's own allegations, taken as true, undermined their own claim that the alleged loss was fairly traceable *to the challenged conduct of the defendant*.  For example, if a plaintiff alleges they were harmed by Defendants' conduct, but have also affirmatively alleged facts indicating that some other third party was actually responsible for the harm, such injury cannot be said to be fairly traceable to Defendants' conduct.  So too, in an investment-related case, if a plaintiff alleges they were injured as a result of relying on Defendants' misstatements and were damaged when the truth began to leak out, but sold stock *before the date that they themselves alleged the truth began to be disclosed, or before the price of the stock actually dropped*, such an injury cannot be said to be fairly traceable to Defendants' misrepresentations.

Defendants' primary case in support of their argument that Stadium Capital has not plead Article III standing is the Eighth Circuit case, *Brown*. 628 F.3d at 457.  *Brown* specifically noted that "[b]y [Plaintiff's] *own allegations*, negative information regarding Infuse-related business practices did not reach the public until September 2008, months after he had completely liquidated his ESOP account." *Id.* at 458.  But here, Plaintiffs' allegations, which must be taken as true for

purposes of the Article III standing analysis, and which precedes any assessment of loss causation, *do plead* that the negative information regarding View's warranty accrual began reaching the public on August 16, 2021, when Stadium Capital (and Sherman) still held stock.

*Brown* further supports Plaintiffs.  In *Brown*, the court went on to assess an earlier alleged corrective disclosure (concerning a different category of misleading statements) that occurred when plaintiff still held shares.  *Brown*, 628 F.3d at 459.  As discussed *supra* at 2-3, as here, since for Article III standing purposes "we are neither analyzing damages nor requiring a plaintiff to prove proximate cause", "[g]iven the actual October 2007 share-price drop, the timing of [plaintiff]'s sales in May and June 2008, and the allegation that the drop was at least in part due to the market's response to the alleged wrongdoing, we conclude Brown has articulated a traceable and redressable injury sufficient to show standing." *Id.*  Again, this is what was alleged here.  *See, e.g.*, ¶¶145, 148 ("investors understood the earlier August 16 and November 9, 2021 announcements as at least partial disclosures of the inaccuracy of the previously reported warranty accruals").

The string of cases cited by Defendants all suffer from similar issues where, by the complaints' own allegations, the alleged loss was not traceable to defendants' conduct.  Opp. at 7 (citing *Taylor v. KeyCorp*, 680 F.3d 609, 613 (6th Cir. 2012)) (plaintiff "earn[ed] a net profit" from "s[elling] over 80% of her KeyCorp holdings at a time she claims the stock was artificially inflated). Accordingly, if the allegations in the complaint are true, Taylor sold the majority of her KeyCorp holdings for *more money* than it was worth, thereby *benefitting* from defendants' alleged breach of fiduciary duty") (emphasis in original); *In re Wilmington Tr. Corp. ERISA Litig.*, 943 F. Supp. 2d 478, 487 (D. Del. 2013) (relying on *Brown* and *KeyCorp*, finding no constitutional standing where "plaintiffs allege[d] that defendants breached their fiduciary duties by withholding information" but "the fluctuations  [in net asset values of the Stock Fund at issue] *included increases in the [net asset value] after each of the negative events*" alleged in the complaint) (emphasis added); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 237 (S.D.N.Y. 2012) (no Article III standing where, even taking the complaint's allegations as true, plaintiff did not retain shares through what it alleged was the earliest corrective disclosure); *Vermeylen v. ProQuest Co.*, No. 06-12327, 2007 WL 1218713, at *5 (E.D. Mich. Apr. 23, 2007)

PLAINTIFFS' REPLY BRIEF ISO THEIR MOTION FOR RECONSIDERATION

("plaintiff does not allege that she failed to receive the true value of her ProQuest stock when she sold it in May 2003 or that she did not receive 'everything due to [her]' under the Plan. . . . She does not allege that defendants' conduct caused losses to the Plan before she took all of her benefit payouts or that her vested benefits should be higher."); *Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 568 (2d Cir. 2016) (Ponzi scheme where plaintiff alleged loss was "loss of fictitious profits" and where plaintiffs "d[id] not allege that had *this* money been withdrawn and invested elsewhere, the profits earned would have exceeded the Plan's BLMIS profits") (emphasis in original); *Forte v. U.S. Pension Comm.*, No. 15-CV-4936 (PKC), 2016 WL 5922653, at *9 (S.D.N.Y. Sept. 30, 2016) ("Of the three disclosures [plaintiff] alleges contributed to the drop in Sanofi's stock price, . . . only the press coverage of Ponte's whistleblower action has any connection with the defendants' alleged concealment of the kickback scheme. Yet, rather than depressing the stock price, the price of Sanofi stock actually increased from on the day the kickback allegations came to light."); *Maine State Ret. Sys. v. Countrywide Fin. Corp.,* No. 210CV0302MRPMANX, 2011 WL 13127544, at *5 (C.D. Cal. Sept. 13, 2011) ("Where, as there, a plaintiff makes its purchase decision without any possible regard for later-filed misrepresentations, it cannot possibly be said that the misrepresentation caused the loss.")).

Nor do Defendants' cites to cases at the class certification or trial stages (and therefore past the pleading stage) help them. *In re Willis Towers Watson PLC Proxy Litig.*, No. 117CV1338AJTJFA, 2020 WL 5361582, at *12 (E.D. Va. Sept. 4, 2020) (excluding from the class stockholders who sold before the date of the merger, because "the class for whom damages have been calculated [i.e., the damages alleged] are those who retained their share of Towers stock through the Merger's close"); *In re Bos. Sci. Corp. ERISA Litig.*, 254 F.R.D. 24, 30 (D. Mass. 2008) (addressing scenario where "participant in an ERISA fund both purchases and sells ERISA plan stock during a period of alleged inflation" and simply noting that "[a]s long as the undisclosed information remains nonpublic, the fiduciary's failure to disclose cannot harm the participant's investment."); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (case *at trial*, discussing the "degree of evidence required [for Article III standing] at the successive stages of litigation").

**IV.     Defendants' Attempts to Distinguish Controlling Authority Fall Flat**

Defendants' leading argument against *MacPhee* is their unsupported assertion that the "fairly traceable" element of Article III standing "is particularly lenient in the Eleventh Circuit." Opp. at 8.  But Defendants are mistaken – the Eleventh Circuit standard is in line with the Ninth Circuit as well as the litany of cases Plaintiff cited on this point which Defendants wholly ignored. *Compare Sisolak*, 2024 WL 194180, at *1 (Article III traceability "does not require a showing of proximate cause") *with MacPhee* at 1239 ("In examining the traceability of plaintiff's injury to the defendant's conduct, 'we are concerned with something less than the concept of 'proximate cause,'' as, 'for standing purposes,' a plaintiff 'is not required to prove causation beyond a reasonable doubt or by clear and convincing evidence.'"); *see also* Motion at 7-8 (collecting cases).  And as discussed above, the allegations concerning whether the alleged injury is fairly traceable to defendants' conduct must be taken as true.  *See, e.g., Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 (9th Cir. 2017) (rejecting defendant's argument "that Article III is not satisfied because Plaintiffs have not identified particular trades that caused them losses" because "[w]hether the Plaintiffs can identify those trades at a later stage of litigation does not deprive them of standing to sue. At the motion to dismiss stage, 'we presume[ ] that general allegations embrace those specific facts that are necessary to support the claim.'") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *Reyes*, 701 F. App'x at 657 (9th Cir. 2017) ("if the allegations in her complaint are taken as true, she resigned because of the stress of participating in Checksmart's illegal conduct, making her injury "fairly traceable" to Checksmart's actions.").  Plaintiffs' allegations, taken as true, easily satisfy the Article III traceability element.

In an effort to distract from this clear standard, Defendants cite to *Winsor v. Sequoia Benefits & Ins. Servs.*, *LLC*, 62 F.4th 517, 525 (9th Cir. 2023) to incorrectly argue that the Ninth Circuit follows a different standard.  Opp. at 8 (arguing that in the Ninth Circuit a complaint must plead a "substantial probability" that the defendants caused the harm they claim to have suffered).  But it's not a different standard.  In *Winsor*, the Court held that there was not a "substantial probability" that Defendant caused the harm claimed because plaintiffs' allegations there, taken as true, "directly undermine[d] their argument."  *Winsor*, 62 F.4th at 524 (plaintiff asserted that "employee contributions are calculated as a *pro rata* share of the total benefits costs" but "as

alleged, [defendant] determined those contributions based not on a 'specific formula or set of factors,' but on various factors and discussion'—which in some instances resulted in employees paying nothing."). As such, "[e]ven assuming plaintiffs' factual allegations [were] true, plaintiffs ha[d] not 'clearly ... allege[d] facts demonstrating' a concrete injury." *Id*. at 523 (citation omitted). Here, there is no allegation that the August 16, 2021 stock price drop was due to anything other than Defendants' disclosure that View's Audit Committee began an independent investigation concerning the adequacy of the company's previously disclosed warranty.  ¶¶10, 140.

In yet another misdirection, Defendants also argue that "*MacPhee* relied only on what appears to be erroneous circuit precedent stating that 'standing[] is 'determined at the time the plaintiff's complaint is filed."  Opp. at 8 (brackets in original) (omitting that *MacPhee* was explicitly referring to Article III standing) (citing *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 674 (9th Cir. 2021)) (addressing Article III standing *at trial*).  Contrary to Defendants' misleading assertion, the same is true in the Ninth Circuit.  *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041–42 (9th Cir. 2008) ("We concluded above that [plaintiff's] encounters with and knowledge of those barriers gave him Article III standing at the time he filed his complaint. This standing gets him inside the courthouse door and brings his Article III case forward for our judicial evaluation.") (internal citations omitted); *Lujan*, 504 U.S. at 569 n.4 (1992) ("The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*.") (emphasis in original).

Finally, Defendants' attempt to distinguish *MacPhee* based on the timing of when different versions of the complaint were filed in relation to the alleged corrective disclosures makes no sense and is wrong on the facts.  First, the language Defendants cite, that "when Carpenters filed its complaint, it had standing to bring its § 10(b) claims" was referring to the district court's mistake when it "equated a failure to adequately allege an element of a cause of action and thus a failure to state a claim with the nonexistence of a "Case" or "Controversy for purposes of Article III standing." 73 F.4th at 1240.  Second, just as here, the Lead Plaintiff of *MacPhee*, Carpenters (who was not the plaintiff that filed in initial complaint), was eventually appointed Lead Plaintiff and then "filed [a] Consolidated Complaint *after* the corrective disclosures were issued." Opp. at 9.

Moreover, Defendants fail to substantively address the controlling Supreme Court and

Ninth Circuit procedural framework requiring the Article III question to **precede** any loss causation analysis.  Instead, Defendants attempt to brush it aside, misleadingly stating that it simply "state[s] the truism that standing questions are separate from merits questions and constitutional standing is separate from statutory standing" (ignoring that it *precedes* merits questions).  Opp. at 9.

Recognizing that two cases cited by Plaintiffs are particularly apt here, Defendants spend much time attempting to distinguish *Fleming* and *Stahl*.  Defendants argue that *Fleming*, which rejected defendants' argument "that Article III is not satisfied because Plaintiffs have not identified particular trades that caused them losses", is distinguishable because here "Plaintiff *has* identified its particular trades, and those allegations affirmatively demonstrate that Plaintiff lacks standing."  Opp. at 10.  But when scrutinized, this argument runs afoul of the requirement that in assessing Article III standing the allegations must be taken as true.  Despite what the Court here found as a result of its previous **loss causation analysis**, Plaintiffs' allegation is that the August 16, 2021 disclosure was a corrective disclosure upon which investors began to understand the truth regarding View's warranty accrual to begin leaking out.  Thus, in assessing Article III standing (which **precedes any consideration of loss causation**), there is nothing about these allegations, taken as true, that "undermine" their traceability to defendants' misstatements.  *Winsor*, 62 F.4th at 524.

Defendants' attempt to distinguish *Stahl*, which addressed Article III standing in the 14(a) context actually proves Plaintiffs' point.  Their argument that "plaintiffs must allege 'cognizable economic loss' to recover under Section 14(a)" is a **loss causation** argument.  Opp. at 10.  The only Ninth Circuit case cited by Defendants dismissed the 14(a) claim at issue for **failure to state a claim** for failure to plead **loss causation**, not for lack of Article III standing.  *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1021, 1023 (9th Cir. 2010), *overruled by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).  In *Bricklayers*, a Southern District of New York case, the court noted that one plaintiff had plead *both* constitutional and statutory standing by pleading it was entitled to vote in the merger and sold its shares at a loss.  866 F. Supp. 2d at 237.  The other plaintiff was dismissed "for lack of standing" because it "failed to proffer any facts showing that it was eligible to vote or that it retained its Transocean shares after the corrective disclosures began."  *Id*.

As set forth in *Spokeo*, "the violation of a procedural right granted by statute can be

sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo,* 578 U.S. at 342 (emphasis in original); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 908 (9th Cir. 2011) ("the Supreme Court instructs that a concrete 'injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'"). Here, Plaintiff has alleged that "[m]embers of the Class eligible to vote on the Business Combination were misled by the false and misleading statements and omissions made by Defendants named in this Count, were denied the opportunity to make a fully informed decision in voting on the Business Combination with CF II without having been advised of material facts." ¶196. Such an injury is "'concrete and particularized' and 'actual or imminent', not conjectural or hypothetical." *Spokeo*, 578 U.S. at 330; *see also Stahl v. Gibraltar Fin. Corp.*, 967 F.2d 335, 337 (9th Cir. 1992) (internal quotations omitted) ("[t]he touchstone of a section 14(a) violation is a material misstatement—something that a reasonable shareholder would consider . . . important in deciding how to vote."). Indeed, such an injury is nothing like *Spokeo*'s example of an injury that would not be concrete: "[a]n example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Spokeo*, 578 U.S. at 342.

As such, Stadium has Article III standing for both its 10(b) claim and its 14(a) claim.

## V.    The Court Need Not Reach Loss Causation With Respect to Stadium Capital

Defendants note that "Plaintiff does not ask the Court to reconsider its ruling that Plaintiff failed to plead loss causation." Opp. at 11. Defendants are only partially correct. While Plaintiff did not ask the Court to reconsider its analysis, Plaintiff did explain that because it is only necessary for at least one named plaintiff to have statutory standing with respect to each claim, and no loss causation arguments were made with respect to Sherman, the Court need not reach a loss causation analysis with respect to Stadium Capital in any amended Order the Court may issue. Motion at 11-12. Defendants do not respond at all to this argument, conceding that such an approach is proper.

Moreover, although not necessary to address, Plaintiffs reiterate that contrary to Defendants' insistence, *MacPhee*'s approach to loss causation is not "entirely consistent with Supreme Court and Ninth Circuit precedent." Opp. at 11. As discussed at the hearing on the

motions to dismiss, in *Lloyd*, the Ninth Circuit held that the announcement of an investigation can form the basis for a viable loss causation theory "if the complaint also ***alleges*** a subsequent corrective disclosure by the defendant." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (emphasis added) (noting that the Eleventh Circuit in *Meyer* reserved the same question). *Lloyd* answered that question in the affirmative, and found the plaintiff had plead loss causation without knowing whether the plaintiff had held stock through the subsequent corrective disclosure (which occurred after the class period). Rather, it was enough that the market's reaction to subsequent disclosures "confirm[ed] that investors understood the SEC announcement as at least a partial disclosure of the inaccuracy of the previous [misleading] statements." *Lloyd*, 811 F.3d at 1210. Put another way, the earlier disclosure qualified as a corrective disclosure upon which the market understood the truth to begin leaking out. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005); *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020) (to be a "corrective disclosure", "[i]t is enough if the disclosure reveals new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading.").

*MacPhee*, on the other hand, specifically rejected *Lloyd*, and concluded that the same question that was reserved in *Meyer* "is foreclosed by our decision in *FindWhat*, as [Lead Plaintiff] sold its stock before 'the truth underlying [Defendants'] falsehood' was finally revealed." *MacPhee*, 73 F.4th 1220, 1248 (quoting *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1315 (11th Cir. 2011)). But *FindWhat* was a case involving a single corrective disclosure and was just reiterating—in different words but without intending to change *Dura's* meaning—the well-accepted proposition that artificial inflation in a stock price does not leave the stock until the relevant truth finally begins to leak out. *FindWhat*, 658 F.3d at 1315-16 (using the phrase "[w]hen the truth underlying the falsehood is finally revealed" in connection with, and citing to, *Dura's* description of when "the relevant truth begins to leak out") (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)). The Ninth Circuit has never used the "when the truth underlying the falsehood" was revealed language, which the *FindWhat* panel seems to have created. Nor was there any suggestion in *FindWhat* that the market's ***understanding at the time of the disclosure*** of an investigation "as at least a partial disclosure of the inaccuracy of the previous [misstatements]" can

only be so as long as any given class member continued to hold stock through a subsequent corrective disclosure. *See Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2016 WL 3681831, at *11 (S.D. Cal. July 12, 2016) (following the logic of *Lloyd*, "[t]he important consideration is the market's understanding of a given disclosure at the time it was made. Here, the announcement, followed by a significant drop in [price] and . . . the nature of the subpoena, sufficiently rendered this a partial disclosure under *Lloyd* and *Amedisys*."); *see also Lloyd*, 811 F.3d at 1210. *MacPhee*, therefore, seemed to misinterpret the language in *FindWhat* in a way that was inconsistent with *Lloyd* (and *Dura*), and foreclosed it from agreeing with *Lloyd* that the earlier disclosure could be treated as the date upon which the market understood the truth to begin leaking out ***even when the complaint alleges a later confirmation of the wrongdoing***. *See Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013) ("It may be possible, in a different case, for the disclosure of an SEC investigation to qualify as a partial corrective disclosure for purposes of opening the class period when the investigation is coupled with a later finding of fraud or wrongdoing.").

## VI.     Plaintiffs' Reconsideration Motion Is Procedurally Proper

Defendants argue the Reconsideration Motion is procedurally improper "because Plaintiff is raising new arguments despite having extensive opportunities to raise these issues earlier." Opp. at 2. Defendants similarly claim that their "motions to dismiss specifically attacked Plaintiff's standing and explicitly argued that the Court has no subject matter jurisdiction because Plaintiff lacked standing." However, as set forth in the Motion at 1-2, and as Defendants seem to concede, the only specific arguments ever made for why the Court lacked jurisdiction were those related to *loss causation*. *See* Opp. at 2 ("because the Lead Plaintiff owned no View stock before the alleged corrective disclosures in November 2021 and May 2022, Lead Plaintiff suffered no actionable injuries and so has no standing to pursue the SAC's claims"); View MTD at 13 (similar). Defendants ignore that the SAC alleges that the August 16, 2021 disclosure was the first corrective disclosure and Defendants never argued that the alleged injury was not "fairly traceable" to Defendants' allegedly misleading statements about View's warranty accrual. *Aspenlind v. Spartan Mortg. Servs.,* No. CIV. S-11-0366 MCE, 2011 WL 3490480, at *2 (E.D. Cal. Aug. 9, 2011) ("Bare contentions, unsupported by explanation or authority, are deemed waived.") (collecting cases).

DATED: May 8, 2024

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

By: /s/ *Laurence D. King*
Laurence D. King

Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
*lking@kaplanfox.com*
*breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium Capital LLC,*
*Plaintiff David Sherman and the Proposed Class*

Case No. 5:21-cv-06374-BLF