**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ASIF MEHEDI, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>VIEW, INC., et al.,<br><br>        Defendants. | Case No. 21-cv-06374-BLF<br><br>**ORDER GRANTING MOTION TO ALTER OR AMEND THE JUDGMENT AND FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING AND VACATING JUDGMENT**<br><br>[Re: ECF No. 203] |

Before the Court is Lead Plaintiff Stadium Capital LLC and named Plaintiff David Sherman's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) and for relief from a final judgment, order, or proceeding under Federal Rule of Civil Procedure 60(b). ECF No. 203 ("Mot."). Defendants other than View, Inc.[1] filed an opposition to the motion. ECF No. 208 ("Opp."). Plaintiffs filed a reply. ECF No. 211 ("Reply"). The Court took the motion under submission without oral argument. ECF No. 207; Civ. L.R. 7-1(b).

For the reasons below, the Court GRANTS the motion and VACATES the judgment.

**I.    BACKGROUND**

The background of this case is laid out in detail in the Court's Order granting the motion to dismiss Plaintiffs' second amended complaint. ECF No. 200 ("MTD SAC"). The Court will provide an abbreviated version here.

This is a putative class action for securities fraud against View, Inc. and various individuals connected to View's SEC filings. Plaintiffs allege that, in various public filings from

---

[1] Plaintiffs withdrew their motion with respect to View, Inc. in light of View's filing for Chapter 11 bankruptcy. ECF No. 205.

1   November 20, 2020 to May 17, 2021, Defendants made material misrepresentations to investors
2   concerning a materially misstated and understated warranty accrual related to View's "smart
3   panels." *See, e.g.*, ECF No. 175 ("SAC") ¶¶ 87, 92.
4       On August 18, 2021, the initial complaint was filed in this case. *See* ECF No. 1
5   ("Compl."). On February 8, 2022, the Court appointed Stadium Capital LLC as Lead Plaintiff.
6   ECF No. 67. On July 15, 2022, Stadium Capital filed the first amended complaint. *See* ECF No.
7   96 ("FAC"). On May 2, 2023, the Court granted Defendants' motions to dismiss and dismissed all
8   of Stadium Capital's claims with leave to amend. *See* ECF No. 168. On August 21, 2023,
9   Stadium Capital filed the second amended complaint. *See* SAC. In addition to narrowing the
10  claims to a Section 14(a) claim, a Section 10(b) claim, and their Section 20(a) counterparts, the
11  second amended complaint changed the end of the class period from May 10, 2022 to November
12  9, 2021 and sought to add an additional Named Plaintiff: David Sherman. SAC ¶¶ 26–44.
13      On April 9, 2024, the Court granted Defendants' motions to dismiss without leave to
14  amend. *See* MTD SAC at 19–20. The Court found that, because Stadium Capital sold its shares
15  before the truth of the underlying falsehood was revealed, Stadium Capital was not injured by the
16  alleged misrepresentations and thus lacked standing to pursue any of its claims. *Id.* at 10–16.
17  Because the Court found that Stadium Capital did not have and never had standing to pursue its
18  claims, the addition of David Sherman was not permitted under established law. *See id.* at 16–19.

19  **II.   LEGAL STANDARD**

20      Under Federal Rule of Civil Procedure 59(e), a party may file a motion to alter or amend
21  judgment within 28 days after entry of the judgment. *See* Fed. R. Civ. P. 59(e). The Ninth Circuit
22  has identified "four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such
23  motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if
24  such motion is necessary to present newly discovered or previously unavailable evidence; (3) if
25  such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an
26  intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.
27  2011).
28      "Although Rule 59(e) permits a district court to reconsider and amend a previous order, the

rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bisho*p, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks and citation omitted). Rule 59(e) relief "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *See Kona*, 229 F.3d at 890 (emphasis in original).

Under Federal Rule of Civil Procedure 60(b), the Court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Mere dissatisfaction with the Court's order, or belief that the Court is wrong in its decision, are not grounds for relief under Rule 60(b). *Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981); *Beckway v. DeShong*, No. C07-5072 TEH, 2012 WL 1355744, at *2 (N.D. Cal. Apr. 18, 2012).

### III. DISCUSSION

Plaintiffs argue that the Court's finding that Stadium Capital did not have standing was "clear error" under Fed. R. Civ. P. 59(e) or "mistake [or] inadvertence" under Fed. R. Civ. P. 60(b) because the Court conflated constitutional standing with statutory standing. Mot. at 1. More precisely, Plaintiffs argue that a failure to plead loss causation is an issue of statutory standing and, because Stadium Capital has constitutional standing, the addition of Sherman as a named plaintiff is appropriate. Mot. at 4–12. Defendants respond that Plaintiffs' motion is

3

procedurally improper because Plaintiffs failed to raise their standing arguments in their opposition to the motion to dismiss. Opp. at 2–3. Defendants also argue that the order dismissing the second amended complaint was correct and that Plaintiffs mischaracterized the law. *Id.* at 3–11.

### A. Whether Plaintiffs' Motion Is Procedurally Improper

Defendants argue that Plaintiffs' motion is procedurally improper because it raises new arguments for the first time that could have reasonably been raised in Plaintiffs' opposition to the motions to dismiss. Opp. at 2–3. Plaintiffs respond that Defendants' arguments were related to loss causation and that Defendants never argued that the August 2021 disclosure was not "fairly traceable" to the alleged misstatements. Reply at 15.

"Reconsideration motions may not be used to raise new arguments or introduce new evidence if, with reasonable diligence, the arguments and evidence could have been presented during consideration of the original ruling." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 859 (9th Cir. 2022). To the extent that Defendants raised issues with standing, Defendants' arguments were directed at loss causation and Defendant discussed standing in the last two paragraphs of View's motion to dismiss, in a section arguing that David Sherman cannot be added as a named plaintiff. *See* ECF No. 13. In considering the ambiguity in how the issue was raised and the fact that Plaintiffs were tasked with responding to three separate motions to dismiss raising a significant number of issues, a party exercising reasonable diligence may not have been sufficiently on notice that View's loss causation arguments were directed at Stadium Capital's standing to raise it to the Court in the opposition. Accordingly, the Court will consider Plaintiffs' motion on the merits.

### B. Whether the Order Dismissing the Second Amended Complaint Conflated Constitutional Standing and a Merits Inquiry

Plaintiffs first argue that the standing inquiry under Fed. R. Civ. P. 12(b)(1) is distinct from a statutory standing inquiry under Fed. R. Civ. P. 12(b)(6). Mot. at 4. Next, Plaintiffs argue that loss causation is a merits inquiry that requires only dismissal for failure to state a claim rather than a lack of standing. Mot. at 6–7. Defendants respond that Plaintiffs mischaracterize the relevant

4

1  standard for assessing Article III standing at the pleading stage.  Opp. at 4–5.  Defendants also
2  argue that many courts have held that a shareholder that fails to allege loss causation fails to meet
3  the injury-in-fact and causation requirements for Article III standing.  *Id.* at 6–8.  Finally,
4  Defendants argue that Plaintiffs' reliance on *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220 (11th
5  Cir. 2023), is misplaced because the Eleventh Circuit's analysis of the causation prong of Article
6  III standing is inconsistent with the Ninth Circuit's standard.  *Id.* at 8–9.
7      "To establish standing under Article III of the Constitution, a plaintiff must demonstrate
8  (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent,
9  (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed
10 by the requested judicial relief."  *Thole v. U. S. Bank N.A*, 590 U.S. 538, 540 (2020) (citing *Lujan*
11 *v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "To establish injury in fact, a plaintiff
12 must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and
13 particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*,
14 578 U.S. 330, 339 (2016), as revised (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560).  The
15 second element requires the plaintiff to "demonstrat[e] that her injury-in-fact is . . . fairly traceable
16 to the challenged action."  *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) (quoting
17 *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)).
18     As an initial matter, the Court observes that Plaintiffs' invocation of statutory standing in
19 this context is inaccurate.  A "statutory" or "prudential" standing inquiry asks "whether the statute
20 grants the plaintiff the cause of action that he asserts.  In answering that question, we presume that
21 a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the
22 zone of interests protected by the law invoked.'"  *Bank of Am. Corp. v. City of Miami, Fla.*, 581
23 U.S. 189, 196–97 (2017) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S.
24 118, 127 (2014)).  Analysis of a plaintiff's statutory standing requires a court to "determine, using
25 traditional tools of statutory interpretation" whether a plaintiff "falls within the class of plaintiffs
26 whom Congress has authorized to sue [under a particular statute]."  *Lexmark*, 572 U.S. at 127–28.
27 A failure to plead statutory standing "shows a failure to state a claim, not a failure to establish
28 standing."  *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023).  In this case, Defendants

did not challenge, nor did the Court determine, whether Stadium Capital is a plaintiff authorized to sue under the Securities Exchange Act. In arguing that loss causation should not be considered in analyzing Article III standing, Plaintiffs appear to have conflated a merits inquiry with a statutory standing inquiry. Although statutory standing is a merits inquiry, not every merits inquiry is a question of statutory standing. Plaintiffs have not pointed the Court to any authority that treats loss causation for Sections 10(b) and 14(a) claims as a question of statutory standing. In fact, the few cases that the Court could find discussing statutory standing and loss causation treat the two as distinct issues. *See, e.g.*, *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F.Supp.3d 432, 446 (S.D.N.Y. 2019); *Zapien v. Washington Mut., Inc.*, No. 07CV385 DMS (CAB), 2008 WL 11509010, at *2 (S.D. Cal. Jan. 17, 2008). It is more accurate to characterize Plaintiffs' position as arguing that loss causation is a merits inquiry that requires an analysis distinct from that of Article III standing. *See* Opp. at 6–7 (discussing cases that distinguish between Article III standing and loss causation as a merits inquiry, rather than a statutory standing inquiry) (citing *MacPhee*, 73 F.4th at 1240; *Am. Signature, Inc. v. Moody's Invs. Servs., Inc.*, No. 10 CIV. 5095 (PGG), 2023 WL 6661054, at *4 (S.D.N.Y. Oct. 12, 2023)). Accordingly, the Court must analyze whether Article III standing and loss causation require distinct analyses.

   Plaintiffs distinguish Article III standing and loss causation in two ways. First, Plaintiffs' opening brief argues that the *Twombly* and *Iqbal* pleading standard applied in motions under Rule 12(b)(6) is inapplicable to a motion challenging Article III standing under Rule 12(b)(1). Mot. at 4 (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)). However, this position has been expressly rejected by the Ninth Circuit. Defendants raised a facial challenge to Stadium Capital's standing, in which Defendants accepted as true Plaintiffs' allegations but asserted that they were insufficient to invoke federal jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (distinguishing between a facial and factual challenge to jurisdictional allegations in a complaint). The Ninth Circuit has held that "[t]he district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)." *Id.*; *see also TransUnion*, 594 U.S. at 431 ("A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" (quoting *Lujan*, 504 U.S. at 561)). In fact, the Ninth Circuit

has acknowledged that the portion of *Maya v. Centex* on which Plaintiffs rely is no longer good law. *See Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056 n.1 (9th Cir. 2023). It follows that the Court did not err in applying the *Twombly* and *Iqbal* pleading standard in assessing whether Stadium Capital has standing to pursue its Sections 10(b) and 14(a) claims.

Second, Plaintiffs refine their argument in their reply brief to state that loss causation is a "separate and more demanding" standard than the "fairly traceable" element of Article III standing. Reply at 3. On this ground, the Court agrees with Plaintiffs. Whether a plaintiff's injury is "fairly traceable" to the defendant's conduct requires less than a showing of proximate cause. *See Bennett v. Spear*, 520 U.S. 154, 168 (1997) (noting that proximate cause is not equivalent to whether an injury is "fairly traceable" to the defendant); *Maya*, 658 F.3d at 1070 (noting that to establish causation for Article III standing, the plaintiff is not required to bear the "heavy . . . burden" of demonstrating proximate cause); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2008) (noting that, while the plaintiff could not show proximate cause, the plaintiff adequately alleged causation for Article III standing); *Williams v. Sisolak*, No. 22-16859, 2024 WL 194180, at *1 (9th Cir. Jan. 18, 2024) ("Although [Article III causation] does not require a showing of proximate cause, it does require plaintiffs to establish a line of causation between defendants' action and their alleged harm that is more than attenuated." (internal quotation marks omitted) (quoting *Maya¸* 658 F.3d at 1070)). The loss causation requirement of the Securities Exchange Act "requires no more than the familiar test for proximate cause." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (same); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (discussing loss causation as a question of proximate cause). It follows that the loss causation elements of Sections 10(b) and 14(a) claims require a distinct and more demanding analysis than that of the causation prong of Article III standing.

The Court pauses to observe that other courts have appropriately relied on the loss causation analysis in *Dura Pharmaceuticals* to determine whether a plaintiff has Article III standing to bring a claim. *See, e.g.*, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F.Supp.2d

7

223, 237 (S.D.N.Y. 2012); *In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 398 (N.D. Cal. 2009); *In re Impax Lab'ys, Inc. Sec. Litig.*, No. C 04-04802 JW, 2008 WL 1766943, at *7 (N.D. Cal. Apr. 17, 2008). It is not error to rely on *Dura Pharmaceuticals* to analyze Article III standing because that case announced a rule of "pure logic" by which courts may evaluate fraud-on-the-market theories of economic loss. *Dura Pharms.*, 544 U.S. at 342. Under that rule, if a plaintiff purchases shares at a price artificially inflated by a misrepresentation and sells those shares before the relevant truth begins to leak out, then the plaintiff will not have suffered any loss as a result of the misrepresentation because the plaintiff both purchased and sold the shares at the inflated rate. *Id.* In such a situation, the fact that the plaintiff's loss cannot be attributable to the alleged misrepresentation is sufficient to show that the plaintiff's injury is not fairly traceable to the defendant's conduct for Article III standing *and* to show that the plaintiff fails to adequately allege loss causation and thus fails to state a claim. *See Impax Lab'ys*, 2008 WL 1766943, at *7 (applying *Dura Pharmaceuticals* in analyzing loss causation and standing); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund*, 866 F.Supp.2d at 236 (same). However, as the Court discusses in more detail in the following section, this case illustrates why loss causation and the Article III standing analysis should be treated distinctly. This case includes factual allegations that may establish an injury that is fairly traceable to Defendants' conduct for Article III purposes but are not sufficient to plead loss causation. *See Brown*, 628 F.3d at 457 (acknowledging that "[i]n most cases . . . a plaintiff's standing tracks his cause of action" but noting the importance of not conflating standing with the plaintiff's cause of action because "the concepts are not coextensive" (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009))); *MacPhee*, 73 F.4th at 1240 ("[W]hile a plaintiff may both lack standing and fail to state a claim, it is also true that a plaintiff can meet the requirement for constitutional standing but nonetheless fail to state a claim.").

Accordingly, the Court finds that its prior order granting the motions to dismiss Plaintiffs' second amended complaint for lack of Article III standing clearly erred or was the product of mistake or inadvertence because it analyzed only whether Plaintiffs had adequately alleged loss

causation but not whether Stadium Capital had Article III standing.[2]

### C. Whether Stadium Capital Has Article III Standing

The Court next addresses whether Stadium Capital has Article III standing under the appropriate "fairly traceable" standard. Plaintiffs argue that Stadium Capital has Article III standing for Plaintiffs Section 10(b) claim because they have alleged that Stadium Capital held View stock on August 16, 2021, the date that View announced that its Audit Committee began an investigation into the adequacy of View's previously disclosed warranty accrual, and that View's stock price fell the following day. *See* Reply at 6, 15. Plaintiffs also argue that Stadium Capital has Article III standing for Plaintiffs' Section 14(a) claim because they have alleged that Stadium Capital held stock as of January 27, 2021, the record date on which it was entitled to vote on the merger. *See* Mot. at 9–10. Defendants do not directly address these facts.

"To establish causation, plaintiffs must allege that their injuries are 'fairly traceable' to [the defendant's] conduct and 'not the result of the independent action of some third party not before the court.' Plaintiffs must thus allege a 'substantial probability' that [the defendant] caused the harm they claim to have suffered." *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 525 (9th Cir. 2023) (first quoting *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020); then quoting *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 452–53 (9th Cir. 2021)). "A causation chain does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausib[le].'" *Maya*, 658 F.3d at 1070 (alteration in original) (quoting *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir.2002)).

The Court finds that the facts alleged in this case with respect to Stadium Capital, although not sufficient to allege loss causation, are sufficient to demonstrate that Stadium Capital has Article III standing to pursue its Sections 10(b) and 14(a) claims. The second amended complaint alleges that Stadium Capital held 80,000 shares of CF II stock on January 27, 2021—the Record Date on which holders of CF II class A common stock were entitled to vote on the proposed

---

[2] Because the Court relies on binding Ninth Circuit and Supreme Court authority to reach this conclusion, it need not address Defendants' argument that the Eleventh Circuit applies a different standard than the Ninth Circuit. *See* Opp. at 8–9.

merger between View and CF II.  *See* SAC ¶ 1; ECF No. 175-2 ("SAC Ex. B").  Stadium Capital sold its 80,000 shares on March 9, 2021, but it purchased more shares prior to August 16, 2021.  SAC Ex. B.  On August 16, 2021, View announced that its Audit Committee "began an independent investigation concerning the adequacy of the company's previously disclosed warranty accrual" and that View would not file its Form 10-Q for the second fiscal quarter of 2021.  SAC ¶ 128.  The following day, View's stock price fell $1.26, or over 24%, to close at $3.92.  *Id.*  Although Stadium Capital sold all of its shares on September 24, 2021—prior to the November 9, 2021 announcement that View's warranty accruals were materially misstated— Stadium Capital held View stock as of the August 16, 2021 announcement.  SAC Ex. B.  Accepting the facts in the second amended complaint as true, the Court finds that Plaintiffs have adequately alleged that Stadium Capital suffered a loss and that the injury can be traced to the announcement of the investigation on August 16, 2021.  The Court finds *Brown v. Medtronic* instructive.  In *Brown*, the plaintiff alleged that in Fall 2007, shortly after the defendant issued a product recall, stopped marketing the product, and instructed physicians to cease new uses of the product, the stock price dropped.  *Brown*, 628 F.3d at 454.  The plaintiff sold his shares in May and June 2008, prior to a more dramatic price drop in Fall 2008.  *Id.* at 459.  The Eighth Circuit, emphasizing that it was not requiring the plaintiff to prove proximate cause, found that these allegations were sufficient to establish an injury that is fairly traceable to the wrongful act.  *Id.*  Consistent with *Brown*, Court holds that the facts above, when accepted as true and all reasonable inferences are drawn in Plaintiffs' favor, are sufficient to establish Article III standing because they show that Stadium Capital suffered a loss and identify plausible links in a chain of causation linking showing that Defendants' wrongful conduct is at least a part of the cause of the injury.  In reaching this conclusion, the Court notes that it did not determine whether the August 16, 2021 disclosure is a corrective or partial corrective disclosure for loss causation and whether Stadium Capital's losses for shares it purchased after the January 27, 2021 Record Date were caused by misrepresentations in the proxy.  These are questions of proximate cause, and while answering them in the negative would show that Stadium Capital cannot state a claim under Sections 10(b) and 14(a), it is not necessary to reach these questions to determine whether Stadium Capital has

Article III standing.

Because the Court finds that Stadium Capital has Article III standing to bring its Sections 10(b) and 14(a) claims, the Court also finds that *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) is inapplicable.  Accordingly, the Court will issue an amended order addressing the other arguments raised in Defendants' motions to dismiss.

## IV.	ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.	Plaintiff Stadium Capital LLC and named Plaintiff David Sherman's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) and for reconsideration under Federal Rule of Civil Procedure 60(b) is GRANTED.

2.	The Judgment at ECF No. 201 is hereby VACATED.

3.	The Court will issue an Amended Order on Defendants' motions to dismiss that addresses the other arguments for dismissal.

Dated:  June 12, 2024

_____
BETH LABSON FREEMAN
United States District Judge

11