**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| ASIF MEHEDI, et al., <br><br>                    Plaintiffs, <br><br>          v. <br><br> VIEW, INC., et al., <br><br>                    Defendants. | Case No.  21-cv-06374-BLF <br><br> **AMENDED ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS SECOND AMENDED COMPLAINT** <br><br> [Re:  ECF No. 181, 183, 184] |

        This is a putative class action for securities fraud against View, Inc. and various individuals connected to View's SEC filings.  Before the Court are Defendants' motions to dismiss Lead Plaintiff Stadium Capital's second amended complaint.  ECF No. 181 ("View Mot."); ECF No. 183 ("CF II Mot."); ECF No. 184 ("Prakash Mot.").  Plaintiffs oppose the motion.  ECF No. 185 ("Opp.").  Defendants have filed replies.  ECF Nos. 188 ("Prakash Reply"); ECF No. 189 ("CF II Reply"); ECF No. 190 ("View Reply").  The Court held a hearing on the motions on March 14, 2024.  ECF No. 197.  The Court's prior order on the motions to dismiss is hereby WITHDRAWN and SUPERSEDED by this Order.  *See* ECF No. 200.

        For the following reasons, the Court GRANTS WITH LEAVE TO AMEND IN PART, GRANTS WITHOUT LEAVE TO AMEND IN PART, and DENIES IN PART the motions to dismiss.

## I.    BACKGROUND

        View is a technology company that manufactures smart building products, including a "smart" glass panel ("smart panels") that adjusts in response to the sun.  ECF No. 175 ("SAC") ¶¶ 3, 51.  On March 8, 2021, View became a publicly traded company through a merger with CF II, a special purpose acquisition company ("SPAC").  *Id.* ¶¶ 5, 52, 71.  Plaintiffs allege that

Defendants made material misrepresentations to investors concerning a materially misstated and understated warranty accrual related to Legacy View's "smart panels." *See, e.g.*, *id.* ¶¶ 87, 92. Defendants made these misstatements in a November 20, 2020 Form 8-K filed by CF II, *id.* ¶¶ 85–86; View's December 23, 2020 De-SPAC Registration Statement, including the two amendments thereto (collectively the "De-SPAC Registration Statement"), *id.* ¶¶ 88–103; a March 12, 2021 Form 8-K, *id.* ¶¶ 104–11; an April 7, 2021 Form S-1, *id.* ¶¶ 112–15; a May 12, 2021 press release filed on Form 8-K, *id.* ¶¶ 116–117; and a May 17, 2021 Form 10-Q, *id.* ¶¶ 118–27. Plaintiffs allege that the De-SPAC Registration Statement and Proxy were jointly prepared by Legacy View and CF II. *Id.* ¶ 88.

On August 16, 2021, five months after going public, View announced that its Audit Committee "began an independent investigation concerning the adequacy of the company's previously disclosed warranty accrual" and that View would not file its Form 10-Q for the second fiscal quarter of 2021. SAC ¶ 128. The following day, View's stock price fell $1.26, or over 24%, to close at $3.92. *Id.* On November 9, 2021, View announced that the Audit Committee "has now substantially completed its independent investigation and has concluded that the Company's previously reported liabilities associated with all warranty-related obligations and the cost of revenue associated with the recognition of those liabilities were materially misstated." *Id.* ¶ 129. View also announced that it would "be restating its previously issued 2019 and 2020 annual and certain unaudited interim financial statements and its Q1 2021 and 2020 unaudited interim financial statements." *Id.* Finally, View announced that Defendant Vidul Prakash resigned as CFO of View, effective November 8, 2021. *Id.* The following day on November 10, 2021, View's stock price fell $0.77, or 13.68%, to close at $5.63. *Id.* ¶ 130. On November 11, 2021, View's stock price fell an additional $0.22, or 3.9%, to close at $5.41. *Id.*

On May 31, 2022, View reported that its yet-to-be restated warranty-related accruals would be $53, $48, and $42 million as of December 31, 2019, 2020, and 2021 respectively. SAC ¶ 132. Ultimately, on June 15, 2022, View filed its December 31, 2021 Form 10-K, setting forth the View's restated financial information and stating that the SEC was investigating the warranty accrual. *Id.* ¶¶ 135–37.

On August 18, 2021, the initial complaint was filed in this case.  *See* ECF No. 1 ("Compl.").  The initial complaint brought claims on behalf of a putative class of investors who bought View securities between November 30, 2020 and August 16, 2021 and allegedly suffered losses based on View's making materially false or misleading statements and failing to disclose material adverse facts about the company's business, including warranty costs and internal controls.  *See id.* ¶¶ 36–41.  On February 8, 2022, the Court appointed Stadium Capital LLC as Lead Plaintiff.  ECF No. 67.  On July 15, 2022, Stadium Capital filed the first amended complaint.  *See* ECF No. 96 ("FAC").  The first amended complaint extended the end of the class period to May 10, 2022 and asserted 8 claims against View, current and former officers and directors of View and CF II, CF II entities, and PricewaterhouseCoopers LLP.  *Id.* ¶¶ 1, 130–286.  On May 2, 2023, the Court granted Defendants' motions to dismiss and dismissed all of Stadium Capital's claims with leave to amend.  *See Mehedi v. View, Inc.*, No. 21-CV-06374-BLF, 2023 WL 3592098, at *25 (N.D. Cal. May 22, 2023) ("MTD FAC Order").  On August 21, 2023, Stadium Capital filed the second amended complaint.  *See* SAC.

The second amended complaint ("SAC") changes the end of the class period to November 9, 2021 and brings claims against: View, Inc. ("View"), f/k/a CF Finance Acquisition Corp. II ("CF II"); current and former officers and directors of View and CF II; and entities related to CF II (collectively "Defendants").  SAC ¶¶ 26–44.  The individual View Defendants include: Rao Mulpuri, View's Chief Executive Officer at all relevant times, and Vidul Prakash, View's Chief Financial Officer at all relevant times (collectively "View Individual Defendants").  *Id.* ¶¶ 27–30.  The individual CF II Defendants include: Howard Lutnick, CEO and chairman of the board of CF II; Paul Pion, CFO and a director of CF II; Alice Chan, CFO and a director CF II; Anshu Jain, President and a director of CF II; Robert J. Hochberg, a director of CF II; Charlotte S. Blechman, a director CF II (collectively "CF II Individual Defendants").  *Id.* ¶¶ 31–37.  The entity CF II Defendants include: CF Finance Holdings II, LLC ("CF Holdings II," CF II's "Sponsor"); Cantor Fitzgerald & Co. ("CF&Co.", CF II's advisor); Cantor Fitzgerald, L.P. ("Cantor," an affiliate of CF II, the Sponsor, and of Cantor, as well as the Sponsor's sole member); and CF Group Management, Inc. ("CFGM," Cantor's managing general partner) (collectively "CF II Entity

3

Defendants" and collectively, with Individual CF II Defendants, "CF II Defendants").  *Id.* ¶¶ 43–48.

Additionally, the SAC seeks to add David Sherman as a Named Plaintiff.  *See* SAC ¶ 25. The SAC asserts four claims:

| Claim | Section | Defendants | SAC ¶¶ |
|---|---|---|---|
| 1 | § 14(a); Rule 14a-9 | All Defendants | 160–98 |
| 2 | § 20(a) | View Individual Defendants and CF II Defendants | 199–205 |
| 3 | § 10(b); Rule 10b-5(b) | View and Prakash | 256–61 |
| 4 | § 20(a) | View Individual Defendants and CF II Defendants *except* Blechman and Hochberg | 262–66 |

On October 2, 2023, Defendants filed motions to dismiss.  There are three separate motions, each brought by a different Defendant or Group of Defendants: (1) a motion to dismiss brought by Defendants View and Mulpuri, *see* View Mot.; (2) a motion to dismiss brought by Defendant Prakash, *see* Prakash Mot.; and (3) a motion to dismiss brought by the CF II Defendants, *see* CF II Mot.  On April 9, 2024, the Court issued an order granting the motions to dismiss without leave to amend, finding that because Stadium Capital sold its shares before the truth of the underlying falsehood was revealed, Stadium Capital was not injured by the alleged misrepresentations and thus lacked standing to pursue any of its claims.  ECF No. 200 at 10–16. Plaintiffs filed a motion to alter or amend the judgment and for relief from a final judgment.  ECF No. 203.  The Court granted Plaintiffs' motion, finding that, although Plaintiffs failed to allege loss causation with respect to Stadium Capital, these allegations are sufficient to establish Article III standing.  *See Mehedi v. View, Inc.*, No. 21-CV-06374-BLF, 2024 WL 2969982, at *5–6 (N.D. Cal. June 12, 2024) ("Rule 59/60 Order").  The Court now reevaluates the merits of Defendants' motions to dismiss.[1]

_____

[1] On May 20, 2024, the United States Bankruptcy Court for the District of Delaware entered an order approving the disclosure statement and confirming the Second Amended Joint Prepackaged Chapter 11 Plan or Reorganization of View, Inc., and its debtor affiliates.  *See* ECF No. 213-1. The Prepackaged Plan became effective, enforceable, and binding on May 22, 2024.  *Id.*  Pursuant to the Prepackaged Plan, Plaintiff's claims against View are no longer stayed pursuant to the automatic stay.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### B.   Rule 9(b) and the Private Securities Litigation Reform Act of 1995

In addition to the pleading standards discussed above, a plaintiff asserting a private securities fraud action must meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).  Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see also In re VeriFone Holdings*, 704 F.3d at 701.  That is, "the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some

cases, the identity of the person engaged in the fraud." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1065 (N.D. Cal. 2010).

Similarly, under the PSLRA "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The PSLRA further requires that "in any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A). "To satisfy the requisite state of mind element, 'a complaint must allege that the defendant[ ] made false or misleading statements either intentionally or with deliberate recklessness.'" *In re VeriFone Holdings*, 704 F.3d at 701 (alteration in original) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)). The scienter allegations must give rise not only to a plausible inference of scienter, but to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

## III.  REQUEST FOR JUDICIAL NOTICE

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under

the incorporation by reference doctrine, courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

View and Mulpuri request that the Court take judicial notice of the relevant SEC filings, accounting standards, and historical stock prices. *See* View Mot. at 3; ECF No. 182 ("Berry Decl."). In particular, View and Mulpuri seek judicial notice of the following exhibits:

1. View Exhibit 1, a document attached as Exhibit 99.2 to View's Form 8-K, filed on November 30, 2020. ECF No. 182-1.

2. View Exhibit 2, View's Form S-4, filed on December 23, 2020. ECF No. 182-2.

3. View Exhibit 3, CF II's Amended and Restated Certificate of Incorporation dated August 26, 2020 and attached as Exhibit 3.1 to View's Form S-4, filed on December 23, 2020. ECF No. 182-3.

4. View Exhibit 4, View's Proxy Statement, filed on February 16, 2021. ECF No. 182-4.

5. View Exhibit 5, View's Form S-1, filed on April 7, 2021. ECF No. 182-5.

6. View Exhibit 6, View's Form 8-K, filed on August 16, 2021. ECF No. 182-6.

7. View Exhibit 7, View's Form 8-K, filed on November 9, 2021. ECF No. 182-7.

8. View Exhibit 8, View's Form 8-K, filed on May 31, 2022. ECF No. 182-8.

9. View Exhibit 9, View's FY 2021 earnings call transcript from May 21, 2022. ECF No. 182-9.

10. View Exhibit 10, View's Form 10-K, filed on June 15, 2022. ECF No. 182-10.

11. View Exhibit 11, Section 460-10-25 of the Financial Accounting Standards Board's ("FASB") publicly available Accounting Standards Codification ("ASC"), which include GAAP rules governing warranty accounting. ECF No. 182-11.

12. View Exhibit 12, Section 450-20-25 of the FASB's ASC, which include GAAP rules governing warranty accounting. ECF No. 182-12.

13. View Exhibit 13, a table of daily share price data for View from August 13, 2021 to June

2, 2022 from Yahoo! Finance.  ECF No. 182-13.

14. View Exhibit 14, the complaint in *SEC v. Prakash*, No. 5:23-cv-03300-BLF (N.D. Cal. July 3, 2023) (Dkt. No. 1).  ECF No. 182-14.

15. View Exhibit 15, the SEC's publicly available litigation release concerning *SEC v. Prakash*, dated July 3, 2023.  ECF No. 182-15.

16. View Exhibit 16, a copy of an order in *Zucker v. Zoran Corp.*, No. C 06-04843 WHA (N.D. Cal. Feb. 21, 2007) (Dkt. No. 79).  ECF No. 182-16.

Stadium Capital has not objected to any of View or Mulpuri's requests for judicial notice.

Stadium Capital requests that the Court take judicial notice of Plaintiffs Exhibit 1, CF II's Amendment No. 2 to Form S-1 Registration Statement, which was filed with the SEC on August 18, 2020.  Opp. at 13–14; ECF No. 185-2.  Defendants do not object to this request for judicial notice.

Stadium Capital also requests that the Court take judicial notice of Supplemental Exhibit 1, a derivative complaint filed in *Siseles v. Lutnick, et al.*, No. 2023-1152-JTL (Del. Ch.).  ECF No. 193.  Plaintiffs note that the derivative complaint contains a slide from a Cantor and CF&Co. presentation on the results of their due diligence to CF II's Board and that the contents of this slide support the SAC's allegations.  *Id.* at 1.  Plaintiffs argue that the due diligence presentation is admissible under the incorporation by reference doctrine and as a document on which Plaintiff's allegations necessarily rely.  *Id.* at 2–4.  Defendants object to this request for judicial notice, arguing that the Court cannot take judicial notice of the contents of the complaint to establish facts stated therein.  ECF No. 194 at 1–3.  Defendants also argue that the incorporation by reference doctrine does not apply because Plaintiffs did not reference the due diligence document extensively in the second amended complaint.  *Id.* at 3–4.

The Court takes judicial notice of View Exhibits 1–8 and 10 and Plaintiffs Exhibit 1 because these documents are judicially noticeable as SEC filings, which are matters of public record not subject to reasonable dispute.  *See In re Calpine Corp. Sec. Litig.*, 288 F.Supp.2d 1054, 1076 (N.D. Cal. 2003) ("[T]he Court may properly take judicial notice of SEC filings and documents expressly referenced in the [complaint].").  The Court takes judicial notice of View

8

Exhibit 9 because transcripts of earnings calls are publicly available documents and thus are matters of public record not subject to reasonable dispute.  *See In re Facebook, Inc. Sec. Litig.*, 477 F.Supp.3d 980, 1009 (N.D. Cal. 2020) (taking judicial notice of transcripts of earnings calls).  The Court takes judicial notice of View Exhibits 11–12 because they are accounting rules, which "are 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'"  *Garcia v. J2 Glob., Inc.*, No. 220CV06096FLAMAAX, 2021 WL 1558331, at \*10 (C.D. Cal. Mar. 5, 2021) (quoting *In re Yahoo! Inc. Sec. Litig.*, No. C 11-02732 CRB, 2012 WL 3282819, at \*2 (N.D. Cal. Aug. 10, 2012)).  The Court takes judicial notice of View Exhibit 15 because information on government agency websites and agency filings are matters of public record and not subject to reasonable dispute.  *See In re Ethereummax Inv.*, No. CV2200163MWFSKX, 2023 WL 6787827, at \*39 (C.D. Cal. June 6, 2023) (taking judicial notice of an SEC press release).  The Court takes judicial notice of View Exhibit 13 because historical stock price data are incorporated by reference in the second amended complaint and such data are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *See In re Regulus Therapeutics Inc. Sec. Litig.*, 406 F.Supp.3d 845, 855 (S.D. Cal. 2019) (taking judicial notice of historic stock price data).

The Court takes judicial notice of View Exhibits 14 and 16 and Supplemental Exhibit 1 because they are court filings from other cases, which are matters of public record and not subject to reasonable dispute.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of other court filings).  However, the Court will not take judicial notice of any facts contained in these documents.  *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F.Supp.2d 1052, 1067 (N.D. Cal. 2010).  To the extent that Plaintiffs request that the Court consider the contents of the due diligence presentation alleged in the *Siseles* complaint, the Court will not do so.  The contents of the due diligence presentation are not incorporated by reference in the second amended complaint nor is the presentation a document on which allegations in the second amended complaint necessarily rely.  A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "[A] court may

consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  The second amended complaint merely states that "the CF II Board reviewed the results of the due diligence conducted by its management."  SAC ¶ 64.  It does not refer to the due diligence presentation, let alone refer to the document extensively, nor is the document central to Plaintiff's claims.

Accordingly, View and Mulpuri's request for judicial notice of View Exhibits 1–16 is GRANTED and Plaintiff's request for judicial notice of Plaintiffs Exhibit 1 is GRANTED. Plaintiff's request for judicial notice of Supplemental Exhibit 1 is GRANTED, but to the extent that Plaintiffs request that the Court consider the contents of Supplemental Exhibit 1, the request is DENIED.

## IV.    DISCUSSION

The Court will first address the propriety of the addition of Named Plaintiff David Sherman and then address Defendants' arguments for dismissal of each of Plaintiffs' four claims. Because the Court's analysis of Plaintiffs' § 14(a) claim turns in part on the Court's analysis of Plaintiffs' § 10(b) claim, the Court will address the § 10(b) claim before the § 14(a) claim.

### A.    Addition of Plaintiff David Sherman

When Lead Plaintiff Stadium Capital filed the SAC, it added Named Plaintiff David Sherman without first seeking leave of the Court to do so.  View argues that Stadium Capital cannot unilaterally insert Sherman as a new plaintiff into the action because Stadium Capital failed obtain Court permission under Federal Rules of Civil Procedure 15 or 24.  *See* View Mot. at 12. View also argues that allowing a new plaintiff would serve as an end-run around the PSLRA's selection process, and that the case should be dismissed because Stadium Capital does not have standing to pursue its claims.  *Id.* at 12–13.  Prakash joins in View's arguments.  Prakash Mot. at 7.  Similarly, the CF II Defendants argue that the addition of a new plaintiff is improper because Stadium Capital does not have standing.  *See* CF II Mot. at 9.  Stadium Capital argues that the Court granted leave to amend under Rule 15, and that courts routinely allow amendment to add

1   additional named plaintiffs.  Opp. at 29–30.  Stadium Capital also argues that the case need not be

2   dismissed because Sherman has standing to pursue the claims in the second amended complaint.

3   *Id.* at 30.

4       As an initial matter, Defendants are correct that under *Lierboe v. State Farm Mut. Auto.*

5   *Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003), if the sole named plaintiff did not have and never had

6   standing to pursue its claims, the Court must dismiss the case.  *Id.* at 1023.  However, *Lierboe* is

7   not applicable because the Court has found that Stadium Capital has Article III standing.  *See* Rule

8   59/60 Order at *5–6.

9       Next, the Court finds that, contrary to View's arguments, the addition of a named plaintiff

10  or the appointment of a new lead plaintiff is not an end-run around the PSLRA's requirements.

11  *See In re Impax Lab'ys, Inc. Sec. Litig.*, No. C 04-04802 JW, 2008 WL 1766943, at *8 (N.D. Cal.

12  Apr. 17, 2008) (noting that "[t]he PSLRA's lead plaintiff provision is designed only to get cases

13  off on the right foot" and holding that substitution of the lead plaintiff was not contrary to the

14  PSLRA); *Hunt v. Bloom Energy Corp.*, No. 19-CV-02935-HSG, 2021 WL 1110260, at *1 (N.D.

15  Cal. Mar. 23, 2021) ("[T]he PSLRA does not in any way prohibit the addition of named plaintiffs

16  to aid the lead plaintiff in representing a class." (quoting *Hevesi v. Citigroup, Inc.*, 366 F.3d 70,

17  82–83 (2d Cir. 2004))).  View appears to be arguing that the addition of Sherman is a de facto

18  substitution of the lead plaintiff that requires reopening of the lead plaintiff selection process.  *See*

19  View Mot. at 12 (first citing *In re Nutanix, Inc. Sec. Litig.*, No. 19-CV-01651-WHO, 2021 WL

20  783579, at *2 (N.D. Cal. Mar. 1, 2021); then citing *In re Snap Inc. Sec. Litig.*, 394 F.Supp.3d

21  1156, 1158 (C.D. Cal. 2019)).  However, *Nutanix* and *Snap* are distinguishable because they

22  involved a lead plaintiff that withdrew from the case and sought to choose the successor lead

23  plaintiff.  *See Nutanix*, 2021 WL 783579, at *2; *Snap*, 394 F.Supp.3d at 1158.  Stadium Capital

24  has not withdrawn from this case, and although Sherman seeks to represent the same class and

25  bring the same claims as Stadium Capital, this fact alone does not make the addition of a named

26  plaintiff inappropriate or an end-run around the PSLRA.  *See Hunt*, 2021 WL 1110260, at *2

27  (rejecting an argument that additional plaintiffs were "duplicative," in that they brought the same

28  claims on behalf of the same class, because the lead plaintiff concluded that the additional

United States District Court
Northern District of California

11

plaintiffs would benefit the interests of the absent class members).

Although the Court agrees with Defendants that it would have been more appropriate for Stadium Capital to move for leave to amend to add an additional named plaintiff, the Court finds that striking Sherman would "simply generate a motion for leave, which the Court would grant under the liberal standard governing such motions." *Hunt*, 2021 WL 1110260, at *2. Accordingly, the Court will permit the addition of David Sherman as a named plaintiff. In the future, Plaintiffs are instructed that they must submit a motion for leave to amend for any amendments that go beyond addressing the deficiencies identified in an order granting a motion to dismiss.

### B.   Exchange Act § 10(b) Claim (Count 3)

Plaintiffs bring a claim under § 10(b) and Rule 10b-5(a) against Defendants View and Prakash. *See* SAC ¶¶ 256–61. Section 10(b) makes it unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated by the SEC under the authority of Section 10(b), in turn makes it unlawful for any person:

> (a) To employ any device, scheme or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To state a securities fraud claim, a plaintiff must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017) (quoting *Oregon Pub. Emps.*

United States District Court
Northern District of California

*Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014)).

View and Prakash argue that Plaintiffs have failed to adequately plead loss causation and scienter. *See* View Mot. at 3–8; Prakash Mot. at 2–4. View also argues that Plaintiffs have failed to allege a duty to disclose View's warranty contract practices. *See* View Mot. at 8.

###### i. Loss Causation

Loss causation, "i.e., a causal connection between the material misrepresentation and the loss" experienced by the plaintiff, is a necessary element of pleading a securities fraud claim under § 10(b) of the Exchange Act. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Loss causation is a statutory requirement, rather than a requirement to establish Article III standing. *See Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018); Rule 59/60 Order at *3–5. "The burden of pleading loss causation is typically satisfied by allegations that the defendant revealed the truth through 'corrective disclosures' which 'caused the company's stock price to drop and investors to lose money.'" *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2406 (2014)). To be corrective, the disclosure must "relate back to the misrepresentation and not to some other negative information about the company." *In re Nuveen Funds/City of Alameda Sec. Litig.*, No. 08-cv-4575-SI, 2011 WL 1842819, at *10 (N.D. Cal. May 16, 2011) (*In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1139–40 (10th Cir. 2009)). Federal Rule of Civil Procedure 9(b) requires a plaintiff to state with particularity the elements of a securities fraud claim, including loss causation. *Apollo*, 774 F.3d at 605.

View argues that Stadium Capital cannot plead loss causation under § 10(b) because it did not own View stock on November 9, 2021, when the alleged truth became known. *See* View Mot. at 3. Although Stadium Capital owned View stock at the time of the August 16, 2021 announcement of the internal investigation, Stadium Capital had sold all of its shares as of September 24, 2021. ECF No. 175-2 ("SAC Ex. B"). View further argues that even if the August 2021 disclosure of an internal investigation is a "partial" corrective disclosure, the fact that Stadium Capital did not own View stock in November 2021 is dispositive. View Mot. at 4. Finally, View argues that the August 2021 disclosure was not a partial corrective disclosure

1   because the price of View stock rebounded by September 2, 2021.  *Id.* at 4–5.  Prakash joins in

2   View's argument.  Prakash Mot. at 4.  Stadium Capital responds that the August 2021 disclosure

3   of an internal investigation was a partial corrective disclosure because it explicitly stated that the

4   investigation related to View's previously disclosed warranty accrual.  *See* Opp. at 24 (citing SAC

5   ¶ 140).  Stadium Capital also argues that the price recovery after the August 2021 disclosure

6   occurred over 17 days, which sets this case apart from other price recovery cases, in which prices

7   recovered after 1 to 4 days.  *Id.* at 25–26.

8           Notably, View and Prakash do not challenge Named Plaintiff David Sherman's ability to

9   allege loss causation, having focused only on the impropriety of adding Sherman as a named

10   plaintiff.  *Cf.* View Mot. at 12–13; Prakash Mot. 7.  Exhibit C to the SAC shows that Sherman

11   purchased 1,000 shares of CF II stock on January 22, 2021 and did not sell any shares.  *See* ECF

12   No. 175-3 ("SAC Ex. C") at 3.  Insofar as this exhibit shows that Sherman continued to own View

13   stock on the date of the November 9, 2021 corrective disclosure, Sherman has alleged sufficient

14   facts to establish loss causation.

15           The Court first addresses View's argument that Plaintiffs' "second theory"—that View

16   failed to disclose its "above-and-beyond" warranty practice—fails because this practice was not

17   revealed until May 2022.  *See* View Mot. at 5.  Plaintiffs clarify that "Plaintiffs' theory has always

18   been that Defendants' Class Period statements were misleading because they failed to fully and

19   fairly disclose to investors the Installation Costs it intended to incur when replacing IGUs."  Opp.

20   at 26 (citing SAC ¶¶ 6, 87, 92, 98, 106, 111, 117, 120, 124).  Plaintiffs continue that the full extent

21   and impact of View's failure to account for Installation Costs was disclosed on November 9, 2021.

22   *See id.*; ECF No. 182-7 ("Berry Decl. Ex. 7") at 2 ("[T]he Company's now former Chief Financial

23   Office and certain former accounting staff intentionally failed to disclose certain information . . .

24   regarding the applicable costs incurred and expected to be incurred in connection with the

25   warranty-related obligations.").  The Court agrees with Plaintiffs.  Plaintiffs' theory is that

26   Defendants failed to disclose that they intended to incur Installation Costs and that such disclosure

27   would have been reflected in View's warranty accruals.  Thus, Plaintiffs allege the relevant truth

28   for both of their theories emerged on November 9, 2021, and the loss causation analysis for both

United States District Court
Northern District of California

14

theories is the same.

In support of its argument that the August 2021 disclosure of an internal investigation was a partial corrective disclosure, Stadium Capital points the Court to *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014), and *Lloyd v. CBF Financial Corp.*, 811 F.3d 1200 (9th Cir. 2016).  In *Loos*, the Ninth Circuit held that "the announcement of an investigation, without more, is insufficient to establish loss causation."  *Loos*, 762 F.3d at 890.  In doing so, the Ninth Circuit agreed with the Eleventh Circuit's reasoning in *Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013), and concluded that the mere announcement of an investigation does not reveal fraudulent practices and instead "simply puts investors on notice of a *potential* future disclosure of fraudulent conduct."  *Loos*, 762 F.3d at 890.  Consistent with *Meyer*, the Ninth Circuit made clear that it did "not mean to suggest that the announcement of an investigation can never form the basis of a viable loss causation theory."  *Id.* at 890 n.3.  Instead, the Ninth Circuit "merely [held] that the announcement of an investigation, 'standing alone and without any subsequent disclosure of any wrongdoing, does not reveal to the market the pertinent truth of anything, and therefore does not qualify as a corrective disclosure.'"  *Id.* (quoting *Meyer*, 710 F.3d at 1201 n.13).  The Ninth Circuit addressed the question again in *Lloyd*, which held that "an investigation can 'form the basis for a viable loss causation theory' if the complaint also alleges a subsequent corrective disclosure by the defendant."  *Lloyd*, 811 F.3d at 1210.  The Ninth Circuit further held that, under the facts of that case, loss causation was sufficiently pled.  *Id.*  *Lloyd* involved the announcement of an SEC subpoena, after which the company's stock price dropped 22%.  *Id.* at 1204, 1210.  The factual allegations revealed that market analysts perceived the SEC subpoena as related to the alleged misstatements.  *Id.* at 1204–05, 1210–11.  A month later, the company confirmed the market's fears, and the company's stock price dropped only slightly.  *Id.* at 1205, 1211.  The Ninth Circuit found that the later market reaction confirmed that investors understood the announcement of the SEC subpoena as a partial disclosure of the alleged misstatements.  *Id.* at 1210.

However, neither *Loos* nor *Lloyd* addressed the issue of whether the initial disclosure of an investigation can qualify as a corrective disclosure where, as here, the plaintiff sold its stock before the truth was finally revealed.  On this question the Court finds instructive the Eleventh

15

Circuit's decision in *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023).  In *MacPhee*, the lead plaintiff argued that the announcements of lawsuits and investigations into the defendants' fraudulent practices were corrective disclosures.  *See id.* at 1247.  The lead plaintiff sold its stock after the announcements of lawsuits and investigations but before the truth was finally revealed to the market.  *See id.* at 1230–34, 1248.  The Eleventh Circuit held that the announcements of lawsuits and investigations did not qualify as corrective disclosures because the lead plaintiff sold its shares before the relevant truth was revealed.  *See id.* at 1248.  The Eleventh Circuit explained that once the truth is revealed, "the market will digest the new information and cease attributing the artificial inflation to the price" and investors that purchased stock at the inflated price "*and who still hold their stock* will suffer economic loss." *Id.* (parenthesis omitted) (quoting *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1315 (11th Cir. 2011)); *see also Dura*, 544 U.S. at 342 ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").  In reaching this conclusion, the Eleventh Circuit acknowledged that, in *Meyer*, it had left open the possibility that the announcement of an investigation could constitute a corrective disclosure but found that it did not need to decide the question because the lead plaintiff did not own stock by the time the fraud or wrongdoing was revealed.  *See MacPhee*, 73 F.4th at 1248.  For the same reason, the Eleventh Circuit found *Lloyd* distinguishable.  *See id.* at 1248 n.12.

The Court finds that this case is analogous to *MacPhee*.  Stadium Capital alleges that on August 16, 2021, View announced that its Audit Committee began an independent investigation and would not file its Form 10-Q for the second fiscal quarter of 2021.  SAC ¶ 128.  Similarly, among the lawsuits and investigations alleged to be partial corrective disclosures in *MacPhee* was the defendant's announcement of an audit committee investigation and that it would postpone its Form 10-K.  *See MacPhee*, 73 F.4th at 1233.  In *MacPhee* and this case, the lead plaintiffs sold their shares after the announcements but before the truth was revealed to the market.  *See* SAC Ex. B (showing that Lead Plaintiff sold all of its stock by September 24, 2021); SAC ¶ 129 (alleging that on November 9, 2021, View announced that the Audit Committee "concluded that the Company's previously reported liabilities associated with all warranty-related obligations and the

cost of revenue associated with the recognition of those liabilities were materially misstated"). Stadium Capital emphasizes that the August 16 announcement explicitly stated that it related to View's previously disclosed warranty accrual.  Opp at 24.  But that fact does not distinguish this case from *MacPhee*, in which the announcements alleged to be corrective disclosures also included statements about the subject matter of the lawsuits and investigations.  *See MacPhee*, 73 F.4th at 1231–33.  Finally, Stadium Capital argues that the August 16, 2021 disclosure is a partial corrective disclosure and to hold otherwise would lead to absurd results.  Opp at 25.  However, Stadium Capital has failed to point the Court to any authority under which a plaintiff can show loss causation despite selling its shares before the truth was revealed.

The Court holds that Stadium Capital cannot attribute its losses to the August 16, 2021 announcement—and thus fails to allege loss causation—because Stadium Capital sold its stock before the truth of the underlying falsehood was revealed.  Put differently, because Stadium Capital sold its shares before the truth was revealed, Stadium Capital was not injured by the alleged misrepresentations and fails to state a claim under § 10(b).  *See MacPhee*, 73 F.4th at 1243 ("[W]here a purchaser of stock sells its shares 'before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.'" (quoting *Dura*, 544 U.S. at 342)).

Because the Court finds that Stadium Capital has failed to allege loss causation based on Stadium Capital's sale of stock before the November 9, 2021 disclosure, the Court need not address Defendants' price recovery argument.  *See* View Mot. at 4–5.  Moreover, this price recovery argument is inapplicable to Sherman's ability to plead loss causation because it concerns only the August 16, 2021 announcement.  Sherman's ability to plead loss causation does not turn on the August 16, 2021 announcement because Exhibit C to the SAC shows that Sherman continued to hold View stock through the November 9, 2021 disclosure.  *See* SAC Ex. C.

### ii.   Scienter

Scienter is a "mental state embracing intent to deceive, manipulate, or defraud."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  To plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  Scienter is adequately pled when "all of the facts

alleged, taken collectively, give rise to a strong inference of scienter." *Tellabs*, 551 U.S. 323. This means that "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. The facts alleged "must not only be particular, but also must 'strongly imply [the defendant's] contemporaneous knowledge that the statement was false when made.'" *In re Infonet Servs. Corp. Sec. Litig.*, 310 F.Supp.2d 1080, 1102 (C.D. Cal. 2003) (alteration in original) (quoting *In re Read-Rite*, 335 F.3d 843, 847 (9th Cir. 2003)). "Where, as here, the Plaintiffs seek to hold individuals and a company liable on a securities fraud theory, we require that the Plaintiffs allege scienter with respect to each of the individual defendants." *Apollo*, 774 F.3d at 607.

View argues that Plaintiffs' new allegations in support of scienter should be stricken because they were copied from the SEC's complaint against Prakash. View Mot. at 6. View further argues that even if the Court were to consider the copied allegations, they are insufficient to plead scienter because the SAC fails to allege sufficient facts regarding Mulpuri and its allegations against Prakash are based on the SEC's claims of negligence. *Id.* at 7–8. Prakash joins in View's argument. Prakash Mot. at 2–3. Prakash further argues that the Audit Committee's conclusions regarding Prakash's negligence or intent are vague and do not show that Prakash acted with scienter. *Id.* at 3. Plaintiffs respond that the motion to strike is procedurally improper because Defendants did not comply with Rule 11. Opp. at 18. Plaintiffs also argue that they conducted an independent investigation into its claims, and it is not improper to use the SEC allegations to supplement its claims. *Id.* at 19. Plaintiffs also argue that their allegations are sufficient to support scienter. *Id.* at 20–23.

The Court will address each allegation in support of scienter in turn, and then all of them holistically.

### a. SEC Allegations

As an initial matter, the Court will consider the allegations in the SAC that are based on the allegations in the SEC action. *See* SAC ¶¶ 77–83, 207–28 & nn.1–2. Contrary to Plaintiffs' assertion, View's motion is not procedurally improper. Upon a motion made by a party or "upon

18

the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Given the nondelegable duty imposed on attorneys under Rule 11, courts routinely strike allegations that rely exclusively on the analysis and investigation of different attorneys in different actions." *Attia v. Google LLC*, No. 17-CV-06037-BLF, 2018 WL 2971049, at *15 (N.D. Cal. June 13, 2018) (collecting cases).  Rule 11 requires that attorneys have sufficient knowledge of the factual allegations in their pleadings to justify signing the document and thereby attesting, among other things, that their claims and other legal contentions are warranted by existing law or by a nonfrivolous argument, and that their factual contentions have evidentiary support or will likely have evidentiary support after discovery.  Fed. R. Civ. P. 11 (b); *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) ("An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' (or proposes a good faith extension of the existing law) and that it is not filed for an improper purpose.").  The Ninth Circuit and courts in this District have considered allegations in SEC complaints in combination with a plaintiff's other well-pleaded allegations in deciding motions to dismiss.  *See, e.g.*, *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 706–07 (9th Cir. 2012) (relying on allegations in an SEC complaint incorporated into the plaintiff's pleadings); *Evanston Police Pension Fund v. McKesson Corp.*, 411 F.Supp.3d 580, 593 (N.D. Cal. 2019) (same); *In re Cylink Secs. Litig.*, 178 F.Supp.2d 1077, 1083 (N.D. Cal. 2001) (same).  However, courts have granted motions to strike complaints that rely entirely on complaints from other actions as the sole basis for a plaintiff's allegations.  *See, e.g.*, *Attia*, 2018 WL 2971049, at *15; *In re Connetics Corp. Sec. Litig.*, 542 F.Supp.2d 996, 1005 (N.D. Cal. 2008).  Plaintiffs do not rely on the allegations in the SEC complaint as the sole basis for their allegations.  Thus, Defendants' motion to strike is DENIED and the Court will consider the merits of these additional allegations in evaluating whether Plaintiffs have shown a strong inference of scienter.

The Court finds that the additional allegations from the SEC Complaint, although sufficient for the SEC to allege negligence, are not sufficient on their own for Plaintiffs to allege a strong inference of scienter under the PSLRA.  For the most part, the new allegations merely

1    confirm that Prakash was aware that View would cover Installation Costs and that Prakash failed

2    to ensure that Installation Costs were recorded as part of View's warranty liabilities.  *See, e.g.*,

3    SAC ¶¶ 75, 80, 211, 218, 220, 226.  The fact that Prakash may have been aware of the decision to

4    cover Installation Costs is not sufficient to establish a strong inference that Prakash knew that the

5    warranty accruals were misstated or that he acted with deliberate recklessness.  *See City of*

6    *Dearborn Heights*, 856 F.3d at 619 (noting that deliberate recklessness is "an *extreme* departure

7    from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers

8    that is either known to the defendants or is so *obvious* that the actor must have been aware of it"

9    (quoting *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016)).  The SAC does

10   not allege any facts that would show that Prakash was aware that the omission of Installation

11   Costs constituted a misstatement or that it constituted an extreme departure from the standards of

12   ordinary care.  Plaintiffs argue that Prakash knew that the Installation Costs should have been

13   accrued under GAAP.  Opp. at 21.  However, it is well established in the Ninth Circuit that "a

14   failure to follow GAAP, without more, does not establish scienter."  *City of Dearborn Heights*,

15   856 F.3d at 621 (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994)).

16   The SAC again does not include any allegations that the accounting standards were "so basic that

17   a court can infer scienter from the mere fact [that the accrual] was reported improperly."

18   *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1362 (C.D. Cal. 2014).

19                          b.   Audit Committee Determination

20          The SAC alleges that, on November 9, 2021, View announced in a press release that its

21   Audit Committee had concluded its investigation concerning the adequacy of View's previously

22   reported warranty accrual.  SAC ¶ 84.  The press release stated that View's warranty accrual was

23   materially misstated, that Prakash and certain former accounting staff negligently failed to record

24   the liabilities of warranty-related obligations and cost of revenue, and "the Company's former

25   Chief Financial Officer and certain former accounting staff intentionally failed to disclose certain

26   information to the Board of Directors and the Company's independent registered public

27   accounting firm, PricewaterhouseCoopers LLP ("PwC") regarding the applicable costs incurred

28   and expected to be incurred in connection with the warranty-related obligations."  *Id.*; *see also*

United States District Court
Northern District of California

SAC ¶ 225 (alleging that Prakash falsely told PwC that View only paid Installation Costs for some customers, based on a case-by-case determination by View's CEO and CBO).

To the extent that the Audit Committee's determination might be an admission of View's scienter, the Court finds that it is not sufficient to support a strong inference of scienter because it does not show Prakash's intent to mislead investors. "'Scienter' as used in the federal securities laws means the 'intent to mislead *investors*' or deliberate recklessness to 'an obvious danger of misleading *investors*." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) (emphasis added) (quoting *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053, 1059 (9th Cir. 2014)); *see also ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("[T]he facts alleged must support an inference of an intent to defraud the plaintiffs rather than some other group."). The SAC is not clear about which of its allegations, to the extent they support scienter, relate to Prakash's intent to mislead investors as opposed to his intent to mislead the Board of Directors and PwC. Moreover, the SAC does not include any allegations that would allow the Court to infer that the Audit Committee's Determination regarding Prakash's intent with respect to the Board of Directors and PwC could also be attributed to his intent with respect to shareholders. In fact, the Audit Committee's determination directly undermines Stadium Capital's attempt to conflate intent to defraud the Board of Directors and PwC with intent to defraud investors. The Audit Committee came to two distinct conclusions regarding Prakash's intent: (1) with respect to the recording of View's warranty accruals, including in View's public-facing filings, Prakash acted *negligently*; and (2) with respect to the Board of Directors and PwC, Prakash acted *intentionally*. SAC ¶ 84. Thus, this allegation does not support a strong inference of scienter because it does not show that Prakash intended to deceive investors, as opposed to some other group.

### c. Resignations, Core Operations, Restatement, SEC Investigation, GAAP Violations, and SOX Certifications

The SAC's allegations regarding suspiciously timed resignations, the core operations theory, the restatement of View's warranty accruals, the SEC investigation, violations of GAAP, and Mulpuri's and Prakash's signatures on SOX certifications are identical to the allegations in the

United States District Court
Northern District of California

1   FAC that the Court previously found inadequate to allege a strong inference of scienter.  *See* ECF

2   No. 176-1 ("SAC Ex. A") at 91–101 (a redline comparing the FAC and SAC); *Mehedi*, 2023 WL

3   3592098, at *17–19.  For the reasons stated in its order dismissing the FAC, the Court again finds

4   these allegations insufficient.

5                    d.   Holistic Review

6        After having determined that none of Plaintiffs' allegations, standing alone, is sufficient to

7   create a strong inference of scienter, the Court now considers the allegations holistically.  *See*

8   *Zucco*, 552 F.3d at 992.  The Court finds that taken together, the facts do not evince such

9   fraudulent intent or deliberate recklessness as to make the inference of scienter cogent.  *Tellabs*,

10  551 U.S. at 323.  Because Plaintiffs have not alleged scienter as to any individual, they also have

11  not alleged scienter as to View.  *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 705 (9th Cir.

12  2021) ("Because [View] is a corporation, it can only act through its employees and agents and can

13  likewise only have scienter through them." (quotation marks omitted) (quoting *In re ChinaCast*

14  *Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015))).

15           **iii.   Duty to Disclose View's Warranty Practices**

16       View argues that the SAC's second theory that View should have disclosed that it was

17  going "above and beyond" its warranty policy should be dismissed because there is no duty to

18  disclose such a decision.  View Mot. at 8.  Plaintiffs did not respond to this argument and appear

19  to suggest that any theory related to View's warranty policy is part and parcel to Plaintiffs'

20  original theory.  *See* Opp. at 26 (arguing what "Plaintiffs' theory has always been").

21       The Court agrees with View.  The only allegedly misleading statement that pertains to

22  View's product warranties is a statement in View's SEC filings that states that View "provides a

23  standard assurance type warranty that its IGUs will be free from defects in materials and

24  workmanship for 10 years from the date of delivery to customers."  *See* SAC Ex. A at 6; SAC

25  ¶¶ 93, 107, 121.  To the extent that Plaintiffs allege that the failure to disclose View's practice of

26  paying Installation Costs relative to its warranty policy is a materially misleading statement or

27  omission, Plaintiffs have not alleged why this statement is a material misrepresentation or

28  omission.  *See Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022)

United States District Court
Northern District of California

("Section 10(b) and Rule 10b-5 'do not create an affirmative duty to disclose any and all material information.'" (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011))).

### iv.    Conclusion

For the reasons stated above, View's and Prakash's motions to dismiss Plaintiffs' § 10(b) claim are GRANTED WITH LEAVE TO AMEND.  Plaintiffs have failed to allege scienter and that purported misstatements related to View's practice relative to its product warranties are materially misleading.  Stadium Capital separately fails to allege loss causation, but Sherman has shown loss causation for himself.

### C.    Exchange Act § 14(a) Claim (Count 1)

Plaintiffs bring a claim under § 14(a) and Rule 14a-9 against all Defendants.  *See* SAC ¶¶ 160–98.  "To state a claim under § 14(a) and Rule 14a-9, a plaintiff must establish that '(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.'"  *New York City Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled on the other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)).  Section 14(a) and Rule 14a-9 also include a loss causation requirement.  *Id.*

View and Mulpuri argue that the SAC fails to adequately allege loss causation, transaction causation, negligence, and solicitation.  View Mot. at 8–11.  Prakash joins in View's arguments regarding loss and transaction causation and, in addition, argues that the SAC fails to allege that Prakash acted with the requisite negligence or that he engaged in solicitation.  Prakash Mot. at 4–6.  The CF II Defendants also argue that the SAC fails to adequately allege negligence, solicitation, and loss causation and, in addition, that the § 14(a) claims against the CF II Individual Defendants are exculpated under Delaware law.  CF II Mot. at 3–9.  The Court addresses each argument in turn.

### i.    Negligence

As an initial matter, the parties again disagree about the applicable pleading standard for

23

1  this claim.  Defendants assert that Plaintiffs' claims are grounded in fraud and should be pled in

2  accordance with Rule 9(b)'s heightened pleading standards.  *See* View Mot. at 10; CF II Mot. at 3;

3  Prakash Mot. at 4.  Plaintiffs argue that their § 14(a) claim does not sound in fraud because the

4  SAC alleges distinct courses of conduct for the § 10(b) and § 14(a) claims.  Opp. at 10.

5        The Ninth Circuit has held that "Rule 9(b) applies where a claim is 'grounded in fraud' or

6  'sound[s] in fraud,' even if fraud is not an essential element of the cause of action."  *In re Finjan*

7  *Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023) (alteration in original) (quoting *Vess v. Ciba-*

8  *Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)).  Thus, if the plaintiff alleges that the

9  defendant engaged in fraudulent conduct, then the particularity requirement of Federal Rule of

10  Civil Procedure 9(b) applies.  *See id.*  The Ninth Circuit has also held that the particularity

11  requirement of the PSLRA applies to claims under § 14(e).  However, the Ninth Circuit has held

12  that the heightened plausibility requirement of the PSLRA does not apply to claims under § 14(a)

13  because a plaintiff need only plead negligence, not scienter.  *Id.* at 1058–59.  The Court previously

14  found that the Ninth Circuit's reasoning applies equally to claims under § 14(a).  *See Mehedi*,

15  2023 WL 3592098, at *13.

16        To determine whether a complaint sounds in fraud, the Court "must normally determine,

17  after a close examination of the language and structure of the complaint, whether the complaint

18  'alleges a unified course of fraudulent conduct' and 'relies entirely on that course of conduct as the

19  basis of a claim.'"  *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (quoting

20  *Vess*, 317 F.3d at 1103–04).  "Where . . . a complaint employs the exact same factual allegations to

21  allege violations of section [14] as it uses to allege fraudulent conduct under section 10(b) of the

22  Exchange Act, we can assume that it sounds in fraud."  *Id.*

23        The Court determines that, as pled in the SAC, Plaintiffs' § 14(a) claim sounds in fraud

24  because it is based on the same course of conduct as the § 10(b) claim.  Plaintiffs' § 14(a) claim

25  and § 10(b) claim rely on largely the same factual allegations and the same misleading

26  statements—both claims are based on misstatements of the warranty accrual.  *See* SAC ¶¶ 85–127;

27  SAC Ex. A (identifying misleading statements).  Because the conduct forming the basis for

28  Plaintiffs' § 14(a) claim is the same as the conduct forming the basis of Plaintiffs' § 10(b) claim,

United States District Court
Northern District of California

24

the § 14(a) claim is grounded in fraud and therefore subject to Rule 9(b)'s heightened pleading standard. *See In re Bare Escentuals*, 745 F.Supp.2d at 1068 (heightened pleading standard applies where "there is a remarkable similarity between the conduct forming the basis for plaintiffs' section 11 claims, and the conduct forming a basis for plaintiffs' section 10(b) claims").

Plaintiffs' arguments to the contrary are unavailing. Plaintiffs argue that their § 14(a) claim is based only on statements in the Proxy Statement and their § 10(b) claim is based only on statements other than in the Proxy Statement. Opp. at 10. However, the fact that the same misstatements were published in different places does not convince the Court that Plaintiffs' § 14(a) claim does not sound in fraud. This is merely a "nominal effort[] to disclaim allegations of fraud" that the Court finds "unconvincing where the gravamen of the complaint is fraud and no effort is made to show any other basis for the claims." *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012) (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996)). Plaintiffs also argue that their § 14(a) claim is based on Defendants' duty to ensure accuracy of the Proxy Statement and their § 10(b) claim concerns Prakash's intentional withholding of information from View's Board and PwC. Opp. at 10. But Plaintiffs' § 10(b) claim is not so limited. *See* SAC ¶ 256 (incorporating all allegations in the SAC). Moreover, this argument ignores the fact that both claims are based on the same unified course of fraudulent conduct and the same misstatements. Accordingly, the Court finds that Plaintiffs' Section 14 claim sounds in fraud and therefore must be pled in accordance with Rule 9(b)'s heightened pleading standards.

Having determined the relevant pleading standard, the Court next determines whether Plaintiffs have met this standard with respect to each Defendant.

### a. Mulpuri

View argues that the SAC does not allege particular facts about Mulpuri. View Mot. at 10–11. Plaintiffs argue that Mulpuri had access to information about View's misstated warranty accruals and would have uncovered the misstatement with the due diligence. Opp. at 6–7.

The Court finds that Plaintiffs have not alleged adequate facts that would show that Mulpuri acted negligently. The SAC contains few allegations that are individualized to Mulpuri,

1    and to the extent that it does, those allegations merely confirm that Mulpuri determined that View

2    would pay Installation Costs.  *See, e.g.*, SAC ¶¶ 7–8, 48, 74.  But there are no individualized

3    allegations that show that Mulpuri was aware that View's warranty accruals excluded Installation

4    Costs or that they should have included Installation Costs.  Indeed, Plaintiffs' individualized

5    allegations focus almost entirely on Prakash.  *See, e.g.*, SAC ¶¶ 207–10.  Accordingly, Plaintiffs

6    have failed to allege that Mulpuri was negligent.

7                    b.   Prakash

8           View, Mulpuri, and Prakash argue that the SAC's allegations are insufficient because

9    Plaintiffs do not allege that Prakash was involved in the warranty accrual analysis or that the

10   Warranty Liability Team was unaware of View's decision to cover Installation Costs.  View Mot.

11   at 11; Prakash Mot. at 4–5.  Plaintiffs argue that their allegations against Prakash are "even

12   stronger," pointing to the Audit Committee's determination that Prakash was negligent and the

13   fact that he aware that View would cover Installation Costs and failed to ensure that the Warranty

14   Liability Team considered this decision.  Opp. at 11–12.

15          The Court finds that Plaintiffs have alleged sufficient facts that, when construed in the light

16   most favorable to Plaintiffs, show that Prakash acted negligently.  The SAC alleges that Prakash

17   was aware that View would cover Installation Costs in all cases.  SAC ¶¶ 72–82.  The SAC also

18   alleges that Prakash had a duty to ensure that View properly accounted for and disclosed its

19   liabilities.  *Id.* ¶ 207.  In furtherance of this duty, Prakash assembled the Warranty Liability Team

20   and was responsible for ensuring that the Warranty Liability Team had all necessary information

21   and to approve the final warranty accrual calculation.  *Id.* ¶ 209.  However, in approving the

22   Warranty Liability Team's recommendation and reviewing the Proxy Statement discussing

23   warranty liabilities, Prakash failed to adequately investigate or address the issue of Installation

24   Costs despite his knowledge that View would cover them and his duty to ensure that View

25   properly accounted for and disclosed its liabilities.  *Id.* ¶¶ 210–28.  This inference is confirmed by

26   View's Audit Committee, which determined that Prakash "negligently failed to properly record

27   the liabilities for warranty-related obligations and cost of revenue."  *Id.* ¶ 84.  Thus, the SAC

28   adequately alleges that Prakash was or should have been sufficiently aware of the underlying facts

and his responsibilities such that a reasonable person of ordinary prudence would have taken efforts to ensure that View properly accounted for and disclosed its liabilities with respect to the Installation Costs.

### c.   View

"In the context of Rule 10b-5, we have adopted the general rule of imputation and held that a corporation is responsible for a corporate officer's fraud committed 'within the scope of his employment' or 'for a misleading statement made by an employee or other agent who has actual or apparent authority.'" *ChinaCast*, 809 F.3d at 476 (quoting *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1577 n.28 (9th Cir. 1990) (en banc)).  This general rule is based on principles of agency law that are equally applicable to a claim under § 14(a).  *See Hollinger*, 914 F.3d at 1577. In this case, Prakash's negligence can be imputed to View because the Court may infer that Prakash was acting within the scope of his employment when he failed to ensure that View's recorded warranty accruals reflected Installation Costs.

### d.   CF II Defendants

The CF II Defendants argue that the SAC fails to mention them individually other than to generically allege that each signed the Proxy Statement and that Defendants Lutnick and Jain spoke about SPACs generally.  CF II Mot. at 4.  The CF II Defendants further argue that allegations that they relied on audited financials of an unaffiliated target company in a merger proxy are inadequate to plead their negligence.  *Id.* at 4–6.  Plaintiffs argue that each of the CF II Defendants had a duty to ensure that the Proxy Statement did not materially understate View's warranty accruals and had access to View's books and would have uncovered the alleged misstatement with due diligence.  Opp. at 4–8.

The Court agrees with the CF II Defendants.  In its prior order, the Court instructed Stadium Capital to "make individualized allegations of negligence," meaning that, "[f]or each Defendant, Plaintiff must allege the duty that they owed to the Plaintiff and how that duty was breached."  *Mehedi*, 2023 WL 3592098, at *14.  For the most part, the SAC alleges without differentiation that the Defendants acted negligently.  *See, e.g.*, SAC ¶ 183 ("Each of the Defendants named in this Count acted negligently . . . ."); SAC ¶ 57 ("Each of the CF II

Defendants was provided reasonable access to all of View's properties, books, contracts, tax returns, records and appropriate officers and employees . . . ."). These allegations are group pleading and are inadequate to state a claim under the PSLRA. *See In re Ocera Therapeutics, Inc. Sec. Litig.*, No. 17-CV-06687-RS, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018) ("Plaintiffs must address negligence as to each Defendant (i.e., "lumping together" of Defendants will not be accepted)."), *aff'd*, 806 F. App'x 603 (9th Cir. 2020); *Lapiner v. Camtek, Ltd.*, No. C 08-01327 MMC, 2011 WL 445849, at *3 (N.D. Cal. Feb. 2, 2011) (noting that group pleading is not viable under the PSLRA. Even if the Court were to consider these allegations, the Court would find them insufficient. The mere fact that the CF II Defendants had access to and reviewed View's internal data does not support a reasonable inference that the CF II Defendants had any reason to uncover, with reasonable diligence, that View's warranty accruals were misstated. This is especially true in a case such as this one, where the CF II Defendants appear to have relied on accounting done by PwC. *See* FAC ¶¶ 93, 263; *see also In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d 1248, 1267 (N.D. Cal. 2000) (finding that the defendants' reliance on accounting done by a third-party who was kept in the dark about improprieties negated an inference of negligence). Plaintiffs fail to allege any facts that could plausibly support an inference that a reasonable person exercising due diligence would have discovered the View's warranty accruals were misstated despite audit reports to the contrary.

To the extent that Plaintiffs allege particular facts about any of the CF II Defendants, those facts are not sufficient to allege negligence. For example, Plaintiffs allege that Lutnick publicly promoted the merger and both Lutnick and Jain publicly discussed the advantages of SPACs. *See* SAC ¶¶ 165–68. But these allegations say nothing about Defendants' alleged duty to ensure that the Proxy Statement was accurate. The remaining allegations regarding particular CF II Defendants are boilerplate statements that "[Defendant name] signed the Proxy Statement and subsequent amendments, and otherwise permitted the use of [his/her/their] name in the Proxy Statement, and solicited the votes of shareholders in the Proxy Statement." *See* SAC ¶¶ 171–80. However, the fact that the CF II Defendants signed the Proxy Statement, alone or in combination with the general allegations discussed above, does not plausibly suggest that any of the CF II

28

1  Defendants were negligent.

2  Accordingly, Plaintiffs have failed to allege that any of the CF II Defendants acted

3  negligently.  Although it seems unlikely that Plaintiffs will be able to cure these deficiencies on

4  their third go-around, the Court will allow amendment.

5  ii.   **Loss Causation**

6  As stated above, a plaintiff must establish that the allegedly misleading proxy caused the

7  plaintiff injury in the form of economic loss.  *New York City Emps.' Ret. Sys.*, 593 F.3d at 1022.

8  Defendants argue that the § 14(a) claim has the same defect as the § 10(b) claim—namely that

9  Stadium Capital sold all of the CF II shares that it held as of the January 2021 Record Date, before

10  the any of the alleged drops in stock price.  View Mot. at 8–9.  The Court agrees.  On January 27,

11  2021—that is, the Record Date on which holders of CF II Class A common stock were entitled to

12  vote to approve the merger between View and CF II, *see* SAC ¶ 1—Stadium Capital held 80,000

13  shares of CF II stock.  *See* SAC Ex. B.  However, Stadium Capital sold all of these shares on

14  March 9, 2021, well before the truth of any alleged misstatements was revealed.  *See id.*  Although

15  Stadium Capital bought more View stock, any alleged economic harm from those purchases was

16  not caused by the Proxy Statement because those purchases occurred after the vote solicited by the

17  Proxy Statement.  Thus, any loss that Stadium Capital suffered was not caused by any alleged

18  misstatements in the Proxy Statement, and Stadium Capital has failed to allege loss causation.

19  The Court finds that Sherman has adequately alleged loss causation for his § 14(a) claim

20  because Sherman owned CF II stock as of the January 27, 2021 Record Date and continued to

21  hold those shares through November 9, 2021.  *See* SAC Ex. C (showing that Sherman purchased

22  his shares on January 22, 2021).

23  The CF II Defendants also argue that "neither Plaintiff can establish loss causation

24  because" View's stock had a quick and sustained price recovery.  *See* CF II Mot. at 9.  With

25  respect to Stadium Capital, the Court found that Stadium Capital sold the stock it held on the

26  Record Date before the relevant truth was revealed, so the Court need not address this price

27  recovery argument.  With respect to Sherman, the CF II Defendants' position is puzzling.  Because

28  Sherman continued to hold View stock from the Record Date to the date on which the relevant

1    truth was revealed, any purported price recovery immediately after August 16, 2021 does not

2    undermine his allegations of loss causation.  To the extent that the CF II Defendants' argument

3    might be understood to suggest that View's stock price quickly recovered after the November 9,

4    2021 disclosure, this assertion is incorrect.  *See* ECF No. 182-13 ("Berry Decl. Ex. 13") at 3

5    (View's historical stock price data showing that after November 9, 2021, its stock price fell below

6    $6.40 and continued to fall until June 2, 2022).

### iii.    Transaction Causation

7        View, Mulpuri, and Prakash argue that Plaintiffs fail to allege transaction causation

8    because the SPAC Proxy Statement did not authorize the loss-generating action, here the

9    misstatement of View's warranty accrual.  View Mot. at 9–10; Prakash Mot. at 6.  Plaintiffs argue

10   that the Proxy Statement is an essential link to the accomplishment of the transaction.  Opp. at 17.

11       Under § 14(a), a plaintiff must demonstrate that the allegedly misleading proxies caused it

12   both to engage in the transaction in question (*i.e.*, transaction causation or the essential link

13   requirement) and to suffer economic harm (*i.e.*, loss causation).  *See Grace v. Rosenstock*, 228

14   F.3d 40, 46 (2d Cir. 2000).  Transaction causation, as is relevant here, requires the plaintiff to

15   allege that the purportedly misleading statement caused the shareholder to vote to approve the

16   action.  "Transaction causation is akin to reliance; it focuses on the time of the transaction and

17   'refers to the causal link between the defendant's misconduct and the plaintiff's decision to buy or

18   sell securities.'"  *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d

19   1111, 1118 (9th Cir. 2013) (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,

20   343 F.3d 189, 197 (2d Cir. 2003)).

21       The Court finds that Plaintiffs have adequately alleged transaction causation.  Plaintiffs

22   allege that the Proxy Statement misinformed shareholders about View's financial condition and

23   operations and had class members been informed of the truth, they would have voted against the

24   merger or sold their CF II securities.  SAC ¶ 184.  It is fair to say that the financial condition of a

25   party to a proposed merger would be relevant to a reasonable shareholder and that, if a reasonable

26   shareholder was informed about View's actual financial condition and operations, the shareholder

27   might have determined that the merger should not be approved.  This is sufficient to allege

transaction causation. *See City of Birmingham Relief & Ret. Sys. v. Hastings*, No. 18-CV-02107-BLF, 2019 WL 3815722, at *15 (N.D. Cal. Feb. 13, 2019) (finding transaction causation where proxies falsely informed shareholders that performance bonus plan was designed to take advantage of tax deductions available under 26 U.S.C. § 162(m) and, if shareholders were informed of the truth, "it is fair to say they might not have approved it"); *see also In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F.Supp.2d 260, 292 n.3 (S.D.N.Y. 2010) (finding transaction causation where shareholders were harmed when their shares decreased in value after the truth about a transaction became public and that transaction could not have occurred without the shareholder vote).

### iv. Solicitation

View and Mulpuri argue that the SAC fails to allege that either Mulpuri or the company solicited shareholder votes or that Mulpuri's name had a substantial connection to the solicitation of shareholders. View Mot. at 11. Prakash argues that he did not solicit votes and the use of his name and biography in the Proxy Statement does not have a substantial connection to the solicitation effort. Prakash Mot. at 5–6. The CF II Entity Defendants argue that the SAC merely repeats allegations that the Court previously found inadequate to establish solicitation, that the SAC does not describe particular facts relevant to each of the CF II Entity Defendants, and Defendant Pion cannot have solicited proxies because he resigned before the Proxy was issued. CF II Mot. at 7–8. The CF II Individual Defendants other than Pion do not contest solicitation. *See* CF II Reply at 5. With respect to View, Plaintiffs argue that View (then-CF II) issued the Proxy Statement that solicited shareholder votes. Opp. at 15. With respect to Mulpuri and Prakash, Plaintiffs argue that both Defendants' names and biographies were included in the Proxy Statement and both Defendants were identified as becoming executive officers of View. *Id.* at 15–16. With respect to the CF II Defendants, Plaintiffs argue that they have sufficiently alleged solicitation because CF&Co. was paid to assist obtain stockholder approval for the merger, Cantor and Lutnick were featured in a November 30, 2020 Investor Presentation that was used as part of the solicitation effort for the merger, and that all CF II Entity Defendants should be treated as a "franchise" for solicitation. *Id.* at 13–14.

Section 14(a) makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security . . . registered pursuant to section 78*l* of this title."  Exchange Act § 14(a), 15 U.S.C. § 78n(a).  "[T]he simple appearance of one's name in a proxy statement does not trigger liability for any misstatement appearing therein.  Instead, there must have been 'a substantial connection between the use of the person's name and the solicitation effort.'"  *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 68 (D.C. Cir. 1980) (quoting *Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977)).  Courts have found a substantial connection between the use of the defendant's name and the solicitation effort where the defendant would directly benefit by a favorable vote, such as by becoming a director, or where the defendant has put their reputation at issue.  *See, e.g.*, *id.* at 69 (affirming a finding of liability under § 14(a) where the defendant would take control of the company); *SEC v. Hurgin*, 484 F.Supp.3d 98, 117 (S.D.N.Y. 2020) (denying a motion to dismiss a § 14(a) claim where the complaint alleged that that the defendant put his reputation in issue in the proxy materials, which listed the defendant as a person who would become a director of the merged company); *cf. Mendell v. Greenberg*, 612 F.Supp.1543, 1552 (S.D.N.Y. 1985) (dismissing a § 14(a) claim but acknowledging that a defendant taking control of the corporation or becoming a director is sufficient to establish a substantial connection), *aff'd in part*, 927 F.2d 667 (2d Cir. 1990); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F.Supp.2d 260, 294 (S.D.N.Y. 2010) (dismissing a § 14(a) claim but acknowledging that a defendant putting their reputation at issue in the proxy battle is sufficient to establish a substantial question).

The Court finds that Plaintiffs have adequately alleged solicitation for some, but not all, of the Defendants in this case.  First, Plaintiffs have adequately alleged that View solicited shareholders because View issued the Proxy Statement to solicit shareholders when it was still CF II.  *See* SAC ¶ 62; *see also* SAC ¶ 55 ("CF II and View combined via a business combination with CF II (now referred to as View) as the surviving, public entity.").  Second, Plaintiffs have adequately alleged that the use of Mulpuri's and Prakash's names in the Proxy Statement had a substantial connection to the solicitation effort.  Mulpuri's name was mentioned over 50 times in the Proxy Statement, which included his biography, touted his relevant experience and credentials,

and stated that Mulpuri would become CEO and Chairman of the Board of the merged entity.

SAC ¶ 27.  Similarly, Prakash's name was mentioned over 20 times in the Proxy Statement, which included his biography, touted his experience and credentials, and stated that Prakash would become CFO of the merged entity.  *Id.* ¶ 28.  Consistent with *Falstaff Brewing* and *Hurgin*, Mulpuri and Prakash were named as people that would become executive officers of the merged entity, and their reputations were put at issue in the proxy solicitation through discussion of their background.  Third, the Court finds that Plaintiffs' allegations with respect to CF&Co. are adequate to allege solicitation.  Plaintiffs allege that CF&Co.'s role was to "assist CFII's efforts to obtain any stockholder approval for the proposed Business Combination and assist with press releases and/or filings related to the Business Combination."  SAC ¶ 39.  The Court may reasonably infer that CF&Co. actually carried out its role, which was to assist in the solicitation of shareholder votes.

With respect to the remaining Defendants at issue in Defendants' motions, the Court finds that Plaintiffs have again failed to allege solicitation.  First, Plaintiffs' allegations with respect to Cantor are inadequate because Stadium Capital's allegations are the same as those that the Court found inadequate in dismissing the FAC, with the addition of allegations regarding a November 30, 2020 Investor Presentation, which discussed Cantor's credentials.  *See* SAC ¶ 40; *see also* SAC ¶¶ 165–66 (discussing Cantor's credentials).  However, the fact that Cantor's credentials were touted, without more, is inadequate to allege solicitation.  Second, Plaintiffs again fail to allege any particularized facts about CF Holdings II and CFGM.  Instead, Plaintiffs suggest that all CF II Entity Defendants can be liable for solicitation as members of the same franchise.  *See* Opp. at 13–14.  The Court declines to treat legally distinct entities as one for purposes of this analysis. *See Costanzo v. DXC Tech. Co.*, No. 19-CV-05794-BLF, 2020 WL 4284838, at *8 (N.D. Cal. July 27, 2020).  If Plaintiffs wish to hold CF Holdings II and CFGM liable, they must allege particular facts showing that each Defendant solicited proxies.  Third, the Court finds that Stadium Capital has not alleged sufficient facts to show Defendant Pion solicited proxies.[2]  The SAC fails to allege

---

[2] The Court notes that the CF II Defendants are incorrect that Pion resigned before the Proxy Statement was issued.  Pion resigned on January 31, 2021.  SAC ¶ 32.  The Proxy Statement was

United States District Court
Northern District of California

any particularized facts regarding Pion other than the fact that he signed the Proxy Statement and permitted the use of his name in the Proxy Statement.  SAC ¶¶ 32, 172.  The SAC alleges no facts to show a substantial connection between the use of Pion's name and the solicitation effort.

### v.   Exculpation

The CF II Individual Defendants argue that they are shielded from liability under the exculpation provision of CF II's charter.  CF II Mot. at 6–7.  Stadium Capital responds that the Delaware Code does not apply to a lawsuit under the Exchange Act and the exculpation provision of CF II's charter applies only to breach of fiduciary duty in derivative suits.  Opp. at 17–18.

CF II's charter has an exculpation provision under Del. Code tit. 8 § 102(b)(7) that states:

> A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted under the DGCL as the same exists or may hereafter be amended unless they violated their duty of loyalty to the Corporation or its stockholders, acted in bad faith, knowingly or intentionally violated the law, authorized unlawful payments of dividends, unlawful stock purchases or unlawful redemptions, or derived improper personal benefit from their actions as directors

ECF No. 182-3 ("Berry Decl. Ex. 3") at 6.  "If a corporation includes a 102(b)(7) provision in its charter, its board members will only personally liable for breaches of the duty of loyalty, actions taken in bad faith, or intentional, knowing violations of law."  *Foote v. Mehrotra*, No. CV 21-00169, 2023 WL 7214728, at *9 (D. Del. Nov. 2, 2023).  In the context of derivative lawsuits, courts have uniformly found that similar § 102(b)(7) provisions exculpated directors from § 14(a) claims because those claims are based on negligence, and that the exculpation of these claims meant that the derivative plaintiffs failed to show that directors would face a "substantial likelihood of liability" such that the derivative plaintiffs could show demand futility.  *See, e.g.*, *id.* at *10; *In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 20-CV-08750-MMC, 2022 WL 345066, at *5 (N.D. Cal. Feb. 4, 2022) (collecting cases).

The Court agrees with the CF II Individual Defendants.  Plaintiffs argue that the CF II

---

first filed on December 23, 2020.  *Id.* ¶ 62.

United States District Court
Northern District of California

Individual Defendants' cases are distinguishable because they are derivative cases, but the logic of those cases applies equally to this case.  In those cases, the courts found that the plaintiffs failed to show demand futility *because* the § 14(a) claims were exculpated under the relevant exculpation provision.  *See Foote*, 2023 WL 7214728, at *9; *Wells Fargo*, 2022 WL 345066, at *5.  The determination that § 14(a) claims based on negligence are exculpated is not limited to the derivative context or analyses of demand futility.  To the extent that Plaintiffs rely on *Williams v. Gaylord*, 186 U.S. 157 (1902), and *Edgar v. MITE*, 457 U.S. 624 (1982), those cases are inapposite.  Both cases discuss the internal affairs doctrine, under which States have the authority to regulate a corporation's internal affairs.  *See Williams*, 186 U.S. at 165; *Edgar*, 457 U.S. at 645.  But this conflict of law principle says nothing about the applicability of an exculpation provision to claims under § 14(a).

Accordingly, the Court finds that CF II's exculpation provision, which shields the CF II Individual Defendants from actions stemming from negligence brought by "the corporation *or its stockholders*," shields them from Plaintiffs' § 14(a) claim and will DISMISS the CF II Individual Defendants WITH PREJUDICE.

### vi.     Conclusion

For the reasons stated above, View's and Prakash's motions to dismiss are DENIED with respect to Plaintiffs' § 14(a) claims against View and Prakash.  Plaintiffs' § 14(a) claims against Mulpuri and CF&Co. are DISMISSED WITH LEAVE TO AMEND for failure to adequately allege negligence.  Plaintiffs' § 14(a) claims against CF Holdings II, Cantor, and CFGM are DISMISSED WITH LEAVE TO AMEND for failure to adequately allege negligence and solicitation.  Plaintiffs' § 14(a) claims against Lutnick, Pion, Chan, Jain, Hochberg, and Blechman are DISMISSED WITHOUT LEAVE TO AMEND because those claims are exculpated.  Stadium Capital separately fails to allege loss causation for its § 14(a) claims against all Defendants, but Sherman has shown loss causation for himself.

### D.     Exchange Act § 20(a) Claims (Counts 2 and 4)

Plaintiffs bring a claim under § 20(a) in connection with their § 14(a) claim against the View Individual Defendants and the CF II Defendants and a claim under § 20(a) in connection

with their § 10(b) claim against the View Individual Defendants and the CF II Defendants *except* Blechman and Hochberg.  *See* SAC ¶¶ 199–205, 262–66.  Section 20(a) claims require the plaintiff to establish (1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator.  *See Zucco Partners*, 552 F.3d at 990.  "Whether [the defendant] is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions."  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (alteration in original) (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir.1994)).  "[I]n order to make out a prima facie case, it is not necessary to show actual participation or the exercise of actual power; however, a defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation."  *Id.*  "At the pleading stage, a plaintiff need only demonstrate that the defendant had the authority to exercise actual power, not the exercise itself."  *Bruce v. Suntech Power Holdings Co.*, No. CV 12–04061 RS, 2013 WL 6843610, at *8 (N.D. Cal. Dec. 26, 2013).

All Defendants argue that the failure to allege a primary violation requires dismissal of Plaintiffs' § 20(a) claims.  Mulpuri further argues that Plaintiffs' § 20(a) claims should be dismissed because the SAC fails to allege with particularity how Mulpuri exercised actual authority over or participated in the alleged misconduct.  View Mot. at 12.  The CF II Defendants argue that Plaintiffs have failed to allege facts about any of the CF II Defendants with particularity and that the SAC relies on impermissible boilerplate allegations.  CF II Mot. at 9–10.  Prakash argues that allegations that he reviewed financial statements is not sufficient to allege control person liability.  Prakash Mot. at 6–7.  Plaintiffs argue that allegations that a Defendant had the ability to control or influence a primary violator is sufficient at the motion to dismiss stage and that they have adequately alleged such facts.  Opp. at 27–29.

### i.    Control Person Claim Based on § 10(b)

The Court finds that Plaintiffs' § 20(a) claim based on their § 10(b) claim must be dismissed because, as the Court found above, Plaintiffs have failed to allege a primary violation of § 10(b).  *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012) (noting that

§ 20(a) claims require an underlying primary violation of the securities laws).

        **ii.    Control Person Claim Based on § 14(a)**

On Plaintiffs' § 20(a) claim based on their § 14(a) claim, the Court found above that Plaintiffs have alleged a primary violation against Prakash and View.  The Court must now consider whether Plaintiffs have adequately alleged that each Defendant had power or control over the primary violator.

        a.   Mulpuri

The Court finds that the SAC's allegations regarding Mulpuri are sufficient to establish the control element of a § 20(a) claim.  "Since *Howard*, '[c]ourts have found general allegations concerning an individual's title and responsibilities to be sufficient to establish control at the motion to dismiss stage.'"  *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 1070116, at *13 (N.D. Cal. Feb. 27, 2018) (alteration in original) (quoting *In re Energy Recovery Inc. Sec. Litig.*, No. 15-CV-00265-EMC, 2016 WL 324150, at *25 (N.D. Cal. Jan. 27, 2016)).  "Although a person's being an officer or director does not create any presumption of control, it is a sort of red light."  *Id.* (quoting *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996)).  The SAC alleges that Mulpuri was the CEO of Legacy View, that he became the CEO of the merged entity, and that he signed the Merger Agreement, which was attached to the Proxy Statement.  *See* SAC ¶¶ 27, 102.  The SAC also alleges that Mulpuri's possessed power and authority to control View's public filings and that he was responsible for ensuring that financial information was accurate.  *See id.* ¶¶ 29, 193; *see also* ¶ 264 (alleging generally that "Control Defendants who are natural persons . . . had direct supervisory involvement in the day-to-day operations").  Other courts in this District have found similar allegations sufficient to state a claim at the motion to dismiss stage.  *See, e.g.*, *Hefler*, 2018 WL 1070116, at *14 (finding sufficient allegations that the defendant officers and directors had participated in the drafting, preparation, and approval of various public filings and were responsible for overseeing and controlling the company's conduct); I*n re Energy Recovery Inc. Sec. Litig.*, No. 15-CV-00265-EMC, 2016 WL 324150, at *25 (N.D. Cal. Jan. 27, 2016) (finding sufficient allegations that a defendant CEO ran the day-to-day operations of a company); *see also*

*Kyung Cho v. UCBH Holdings, Inc.*, 890 F.Supp.2d 1190, 1208 (N.D. Cal. 2012) (noting that allegations that a defendant was a manager and exercised "day-to-day control" would be sufficient to establish control person liability on a motion to dismiss). The Court finds these decisions persuasive in light of *Howard*, which instructs that a prima facie case of control person liability does not require actual participation or the exercise of actual power and which other courts have interpreted to require only allegations of authority to exercise actual power to survive a motion to dismiss. *See Howard*, 228 F.3d at 1065; *Hefler*, 2018 WL 1070116, at *13.

To the extent that Mulpuri argues that allegations of actual authority or participation in the alleged misconduct are required, Mulpuri relies on inapposite cases that do not speak to the standard for a motion to dismiss. *See Howard*, 228 F.3d at 1067 (finding insufficient evidence of actual authority on review of a grant of summary judgment); *Burgess v. Premier Corp.*, 727 F.2d 826, 833 (9th Cir. 1984) (finding that, after trial, the evidence was insufficient for directors to reasonably be found controlling persons). It may be that Plaintiffs will not be able to present evidence to demonstrate control or that Mulpuri will be able to assert a good faith defense or lack of participation, but these are issues for later stages of the proceedings.

          b.  Prakash

For similar reasons as Mulpuri, the allegations against Prakash are sufficient to state a claim for control person liability. The SAC alleges that Prakash was the CFO of Legacy View and that he became the CFO of the merged entity. *See* SAC ¶ 28. The SAC also alleges that Prakash was responsible for ensuring that View properly accounted for and disclosed its liabilities for replacing windows with the Defect and that he exercised his authority in this area in reviewing the portion of the Proxy Statement containing the purportedly misleading information. *See* SAC ¶¶ 192, 207, 217; *see also* ¶ 264 (alleging generally that "Control Defendants who are natural persons . . . had direct supervisory involvement in the day-to-day operations"). The Court finds that these allegations are sufficient to state a claim for control person liability at the motion to dismiss stage.

Although Prakash argues that serving as a CFO and signing company filings are insufficient to state a claim, he relies on inapposite case law. *See* Prakash Mot. at 7 (citing *Luna v.*

United States District Court
Northern District of California

*Marvell Tech. Grp.*, No. C 15-05447 WHA, 2017 WL 2171273, at *6 (N.D. Cal. May 17, 2017));

Prakash Reply at 4.  The Court finds that *Luna* is distinguishable because the complaint in that

case not only lacked supporting allegations that the defendants had authority or control, but it had

allegations that tended to contradict any notion of control.  *See Luna v*, 2017 WL 2171273, at *6

(noting that the complaint alleged that the company was "family run and controlled" and that other

defendants "maintained unusually tight control over key decisions").

### c.  CF II Individual Defendants

Although a closer question, the Court finds that the SAC adequately alleges that the CF II

Individual Defendants were control persons for a § 20(a) claim.  The CF II Defendants correctly

note that other courts have found that conclusory or boilerplate allegations that a set of defendants

had the power and ability to control a primary violator are insufficient to state a claim under

§ 20(a).  *See, e.g.*, *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D.

Cal. 2020) (finding insufficient the bare allegation that, by virtue of their positions, directors had

the power and ability to control a primary violator); *In re Volkswagen "Clean Diesel" Mktg.,*

*Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 66281, at *19 (N.D. Cal. Jan.

4, 2017) (finding insufficient allegations that a director was involved in day-to-day operations that

lacked any additional supporting allegations); *Special Situations Fund III QP, L.P. v. Brar*, No.

14-CV-04717-SC, 2015 WL 1393539, at *10 (N.D. Cal. Mar. 26, 2015) (similar).  However,

Plaintiffs have alleged slightly more than generic allegations of control.  Plaintiffs have alleged

that each CF II Individual Defendant was a director of CF II (which became View after the

merger), and signed the Proxy Statement, which contained the purportedly misleading statements.

*See* SAC ¶¶ 31, 171 (Lutnick); SAC ¶¶ 32, 172 (Pion); SAC ¶¶ 33, 173 (Chan); SAC ¶¶ 34, 174

(Jain); ¶¶ 35, 175 (Hochberg); ¶¶ 36, 176 (Blechman).  "Although not all courts agree, numerous

courts have found that allegations that directors signed the statements which contain the material

misrepresentations are sufficient to state Section 20(a) control status."  *Kyung Cho*, 890 F.Supp.2d

at 1208 (collecting cases).  The Court agrees that the allegations that the CF II Individual

Defendants signed the Proxy Statement, which contained the purported material

misrepresentations, is sufficient to establish the control prong of a § 20(a) claim.  "As the court in

*Jacobs* aptly noted, '[i]t does comport with common sense to presume that a person who signs his name to a report has some measure of control over those who write the report.'" *Id.* (quoting *Jacobs v. Coopers & Lybrand, LLP*, No. 97 CIV. 3374 (RPP), 1999 WL 101772, *18 (S.D.N.Y. March 1, 1999)).

### d.   CF II Entity Defendants

The Court concludes that the SAC fails to adequately allege that any of the CF II Entity Defendants were control persons for a § 20(a) claim.  Plaintiffs have failed to allege any particularized facts that would show that CF&Co. had authority or control over the day-to-day operations of CF II.  *Cf.* SAC ¶ 39 (alleging only that CF&Co. served as CF II's financial and capital markets advisor in connection with the merger).  Although a closer question, Plaintiffs allegations against CF Holdings II, Cantor, and CFGM are generalized allegations that these entities controlled CF II by virtue of their positions relative to CF II in the corporate structure. *See, e.g.*, SAC ¶ 38 (alleging that "CF II's initial registration statement admits that [CF Holdings II] controls CF II"); SAC ¶ 40 (alleging that "CF II's initial registration statement admits that 'We, our sponsor [CF Holdings II] and CF&Co are controlled by Cantor'"); SAC ¶ 41 (noting that CFGM "is the managing general partner of Cantor").  But these are the type of generalized and boilerplate allegations that other courts have found lacking.  *See, e.g.*, *Purple Mountain*, 432 F. Supp. 3d at 1106; *In re Volkswagen "Clean Diesel"*, 2017 WL 66281, at *19; *Special Situations Fund III*, 2015 WL 1393539, at *10.  Moreover, Plaintiffs have not alleged any additional facts that are particularized to the CF II Entity Defendants and would show that these Defendants had control over the day-to-day operations of CF II such that they could be control persons.

### iii.   Conclusion

For the reasons stated above, Plaintiffs' § 20(a) claims based on the § 10(b) claim against Prakash, Mulpuri, Lutnick, Pion, Chan, Jain, CF Holdings II, Cantor, CF&Co., and CFGM are DISMISSED WITH LEAVE TO AMEND.  Plaintiffs' § 20(a) claims based on the § 14(a) claim against the CF II Entity Defendants are DISMISSED WITH LEAVE TO AMEND.  Defendants' motions to dismiss are DENIED with respect to Plaintiffs' § 20(a) claims based on the § 14(a) claim against Mulpuri, Prakash, Lutnick, Pion, Chan, Jain, Hochberg, and Blechman.

United States District Court
Northern District of California

40

## V.     ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Defendants View, Inc., and Rao Mulpuri's Motion to Dismiss (ECF No. 181) is GRANTED WITH LEAVE TO AMEND IN PART and DENIED IN PART.

    a.   The motion is DENIED with respect to Plaintiffs' § 14(a) claim against View.

    b.   The motion is GRANTED WITH LEAVE TO AMEND with respect to Plaintiffs' § 14(a) claim against Mulpuri for failure to allege negligence.  The motion is DENIED with respect to View's and Mulpuri's arguments on solicitation and transaction causation.

    c.   The motion is DENIED with respect to Plaintiffs' § 20(a) claim for control person liability based on the § 14(a) claim against Mulpuri.

    d.   The motion is GRANTED WITH LEAVE TO AMEND with respect to Plaintiffs' § 10(b) claim against View and Mulpuri because Plaintiffs have failed to allege scienter.

    e.   The motion is GRANTED WITH LEAVE TO AMEND with respect to Plaintiffs' § 20(a) claim for control person liability based on the § 10(b) claim against Mulpuri because Plaintiffs have failed to allege a primary violation of § 10(b).

    f.   The motion is GRANTED WITH LEAVE TO AMEND with respect to the argument that Stadium Capital has failed to allege loss causation for either its § 10(b) or § 14(a) claim.  However, Sherman's allegations of loss causation are not contested.

2.      Defendants Howard Lutnick, Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg, Charlotte S. Blechman, CF Finance Holdings II, LLC, Cantor Fitzgerald & Co., Cantor Fitzgerald, L.P., and CF Group Management, Inc.'s Motion to Dismiss (ECF No. 183) is GRANTED WITH LEAVE TO AMEND IN PART, GRANTED WITHOUT LEAVE TO AMEND IN PART, and DENIED IN PART.

    a.   The motion is GRANTED WITH LEAVE TO AMEND with respect to

Plaintiffs' § 14(a) claim against CF&Co. for failure to allege negligence.  The motion is DENIED with respect to the argument that CF&Co. failed to allege solicitation.

    b.   The motion is GRANTED WITH LEAVE TO AMEND with respect to Plaintiffs' § 14(a) claim against CF Holdings II, Cantor, and CFGM for failure to allege negligence and solicitation.

    c.   The motion is GRANTED WITHOUT LEAVE TO AMEND with respect to Plaintiffs' § 14(a) claim against Lutnick, Pion, Chan, Jain, Hochberg, and Blechman.  These Defendants are DISMISSED WITH PREJUDICE because the negligence claims against them are exculpated.

    d.   The motion is GRANTED WITH LEAVE TO AMEND with respect to Plaintiffs' § 20(a) claim for control person liability based on the § 14(a) claim against CF Holdings II, Cantor, CF&Co., and CFGM.

    e.   The motion is DENIED with respect to Plaintiffs' § 20(a) claim for control person liability based on the § 14(a) claim against Lutnick, Pion, Chan, Jain, Hochberg, and Blechman.

    f.   The motion is GRANTED WITH LEAVE TO AMEND with respect to Plaintiffs' § 20(a) claim for control person liability based on the § 10(b) claim because Plaintiffs have failed to allege a primary violation of § 10(b).

    g.   The motion is GRANTED WITH LEAVE TO AMEND with respect to the argument that Stadium Capital has failed to allege loss causation for its § 14(a) claim.  However, Sherman's allegations of loss causation are not contested.

3.    Defendant Vidul Prakash's Motion to Dismiss (ECF No. 184) is GRANTED WITH LEAVE TO AMEND IN PART and DENIED IN PART.

    a.   The motion is DENIED with respect to Plaintiffs' § 14(a) claim against Prakash.

    b.   The motion is DENIED with respect to Plaintiffs' § 20(a) claim for control person liability based on the § 14(a) claim against Prakash.

c.   The motion is GRANTED WITH LEAVE TO AMEND with respect to Plaintiffs' § 10(b) claim against Prakash because Plaintiffs have failed to allege scienter.

d.   The motion is GRANTED WITH LEAVE TO AMEND with respect to Plaintiffs' § 20(a) claim for control person liability based on the § 10(b) claim against Prakash because Plaintiffs have failed to allege a primary violation of § 10(b).

e.   The motion is GRANTED WITH LEAVE TO AMEND with respect to the argument that Stadium Capital has failed to allege loss causation for either its § 10(b) or § 14(a) claim.  However, Sherman's allegations of loss causation are not contested.

4.   Plaintiffs may file an amended complaint that addresses the deficiencies identified in this Order within 60 days of the entry of this Order.

5.   The amended complaint shall include a chart listing numerically each alleged false or misleading statement, the speaker, date, reason for claim of falsity and scienter.  The chart shall also cite the paragraphs in the amended complaint where the allegations are made.  Plaintiffs shall also provide the Court a redlined version of the amended complaint.

Dated:  June 28, 2024

_____
BETH LABSON FREEMAN
United States District Judge