JOHN W. BERRY (SBN 295760)
John.Berry@mto.com
JOHN M. GILDERSLEEVE (SBN 284618)
John.Gildersleeve@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

*Attorneys for Defendants View, Inc. and
Rao Mulpuri*

ANNA ERICKSON WHITE (SBN 161385)
AWhite@mofo.com
RYAN M. KEATS (SBN 296463)
RKeats@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:     (415) 268-7000
Facsimile:     (415) 268-7522

*Attorneys for Defendant
Vidul Prakash*

JEFFREY L. STEINFELD (SBN 294848)
JLSteinfeld@winston.com
JAMES P. SMITH III (*pro hac vice*)
JPSmith@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071-1543
Telephone:     (213) 615-1700
Facsimile:     (213) 615-1750

*Attorneys for Defendants Howard W. Lutnick,
Paul Pion, Alice Chan, Anshu Jain, Robert J.
Hochberg, Charlotte S. Blechman, CF Finance
Holdings II, LLC, Cantor Fitzgerald & Co.,
Cantor Fitzgerald, L.P., and CF Group
Management, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., and CF GROUP MANAGEMENT, Inc.,<br><br>    Defendants. | Case No. 5:21-cv-06374-BLF<br><br>CLASS ACTION<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO [1] CERTIFY THE COURT'S ORDER GRANTING RECONSIDERATION (Dkt. 212) FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND [2] STAY PENDING RESOLUTION OF INTERLOCUTORY APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Filed concurrently:<br><br>- [Proposed] Order<br><br>Date:     December 19, 2024<br>Time:     9:00 a.m.<br>Crtrm.:   3<br><br>Judge:    Hon. Beth Labson Freeman |

Case No. 5:21-cv-06374-BLF

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 19, 2024, at 9:00 a.m., before the Honorable Beth Labson Freeman in Courtroom 3 of the United States District Court, 280 South 1st Street, San Jose, CA 95113, Defendants will and hereby do jointly move (1) pursuant to 28 U.S.C § 1292(b), to certify for interlocutory appeal the Court's June 12, 2024 Order granting Plaintiffs' motion for reconsideration, and (2) pursuant to 28 U.S.C. § 1292(b) and the Court's inherent authority, to stay further proceedings in this matter pending resolution of subsequent appellate proceedings.  The Motion is based on the Memorandum of Points and Authorities, the Reply Memorandum, the files and records in this action, and such other matters as may be presented at the hearing.

**ISSUES TO BE DECIDED**

1.  Whether the Court's June 12, 2024 Order granting Plaintiffs' motion for reconsideration (Dkt. No. 212) should be certified under 28 U.S.C. § 1292(b) for immediate interlocutory appeal to resolve the controlling legal question of whether a lead plaintiff with no viable loss causation theory can still have Article III standing to bring securities fraud claims.

2.  Whether, pending resolution of the interlocutory appeal, a stay of further proceedings under 28 U.S.C. § 1292(b) in this Court is warranted.

Case No. 5:21-cv-06374-BLF

DEFENDANTS' JOINT MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL
AND STAY PENDING APPEAL

# TABLE OF CONTENTS

Page

I.    INTRODUCTION.................................................................................................1

II.   BACKGROUND.................................................................................................1

III.  ARGUMENT ......................................................................................................4

    A.    Interlocutory Appeal Is Warranted And Will Benefit This Case ...............................4

        1.    Whether a lead plaintiff has Article III standing even though it has no viable loss causation theory is a controlling question of law ...................4

        2.    A substantial ground for difference of opinion about Article III standing exists ...............................................................................6

        3.    An immediate interlocutory appeal would materially advance the termination of this litigation .......................................................8

    B.    A Stay Would Ensure Judicial Economy And Impose No Burden ...........................9

IV.   CONCLUSION ..................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Adelphia Comms. Corp. Sec. and Deriv. Litig.,*
2006 WL 708303 (S.D.N.Y. Mar. 20, 2006) ..............................................................................4, 5

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.,*
219 F.3d 674 (7th Cir. 2000)..........................................................................................................4

*Ass'n of Irritated Residents v. Fred Schakel Dairy,*
634 F. Supp. 2d 1081 (E.D. Cal. 2008).........................................................................................9

*Bennett v. Spear,*
520 U.S. 154 (1997) .......................................................................................................................7

*Brown v. Medtronic, Inc.,*
628 F.3d 451 (8th Cir. 2010)..........................................................................................................8

*Canela v. Costco Wholesale Corp.,*
2018 WL 3008532 (N.D. Cal. June 15, 2018) .......................................................................5, 6, 9

*Canyon Cnty. v. Syngenta Seeds, Inc.,*
519 F.3d 969 (9th Cir. 2008)..........................................................................................................7

*In re Cement Antitrust Litig.,*
673 F.2d 1020 (9th Cir. 1982)........................................................................................................5

*City of L.A. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
2014 WL 12573322 (C.D. Cal. Apr. 29, 2014)........................................................................9, 10

*Core Optical Techs., LLC v. Juniper Networks Inc.,*
2021 WL 5978761 (N.D. Cal. Dec. 17, 2021) ...........................................................................8, 9

*Couch v. Telescope Inc.,*
611 F.3d 629 (9th Cir. 2010)..........................................................................................................6

*Dillon v. Murphy & Hourihane,*
2014 WL 5408416 (N.D. Cal. Oct. 22, 2014) ...............................................................................5

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) .......................................................................................................................8

*In re Facebook, Inc. IPO Sec. and Deriv. Litig.,*
986 F. Supp. 2d 524 (S.D.N.Y. 2014)............................................................................................4

*ICTSI Oregon, Inc. v. Int'l Longshore and Warehouse Union,*
22 F.4th 1125 (9th Cir. 2022).........................................................................................................8

*In re Impax Labs., Inc. Sec. Litig.*,
  2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ................................................................. 4, passim

*In re Infineon Techs. AG Sec. Litig.*,
  266 F.R.D. 386 (N.D. Cal. 2009) .......................................................................................7, 8

*Koby v. ARS Nat'l Servs., Inc.*,
  2010 WL 5249834 (S.D. Cal. Dec. 23, 2010) ........................................................................10

*Lierboe v. State Farm Mut. Auto Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003)...............................................................................................9

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016)...............................................................................................8

*MacPhee v. MiMedx Grp., Inc.*,
  73 F.4th 1220 (11th Cir. 2023)..............................................................................................8

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011)...............................................................................................7

*Mineworkers' Pension Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018)................................................................................................7

*Omni MedSci, Inc. v. Apple Inc.*,
  2020 WL 759514 (N.D. Cal. Feb. 14, 2020)...........................................................................5

*Porter v. Mabus*,
  2014 WL 669778 (E.D. Cal. Feb. 20, 2014) ..........................................................................5

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011)........................................................................................4, 7, 8

*Rollins v. Dignity Health*,
  2014 WL 6693891 (N.D. Cal. Nov. 26, 2014).....................................................................6, 9

*Spirit of Aloha Temple v. Cnty. of Maui*,
  2019 WL 2146237 (D. Haw. May 16, 2019) ..........................................................................5

*Su v. Siemens Indus., Inc.*,
  2014 WL 2600539 (N.D. Cal. June 10, 2014) ........................................................................9

*Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*,
  2018 WL 11592821 (W.D. Wash. May 15, 2018)....................................................................7

*Taylor v. KeyCorp.*,
  680 F.3d 609 (6th Cir. 2012).................................................................................................8

*U.S. ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
  2019 WL 6973547 (C.D. Cal. Oct. 8, 2019) ..........................................................................10

-iii-    Case No. 5:21-cv-06374-BLF

DEFENDANTS' JOINT MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL
AND STAY PENDING APPEAL

*W.R. Huff Asset Mgmt. Corp Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) ............................................................................................4

*Warth v. Seldin*,
    422 U.S. 490 (1975) .......................................................................................................7

*Williams v. Sisolak*,
    2024 WL 194180 (9th Cir. Jan. 18, 2024) ....................................................................7

**FEDERAL STATUTES**

28 U.S.C § 1292(b) ................................................................................................ 1, *passim*

Exchange Act § 10(b) .....................................................................................................1, 2, 3

Exchange Act § 14(a) .....................................................................................................1, 2, 3

## I.    INTRODUCTION

Defendants respectfully request that the Court certify for interlocutory appeal its June 12, 2024 order granting Plaintiffs' motion for reconsideration (Dkt. No. 212).  That ruling addressed a discrete legal question:  Whether a lead plaintiff who lacks a viable loss causation theory can still have Article III standing to bring securities fraud claims.

That is a pivotal issue in this case.  The Court held in its initial April 2024 order dismissing the Second Amended Complaint that putative lead plaintiff Stadium Capital LLC ("Stadium Capital") had no viable claims because it could not assert loss causation under § 14(a) and § 10(b) of the Exchange Act.  The Court also held in its April 2024 order that, without Article III standing, Stadium Capital could not add so-called "additional plaintiff" David Sherman to save its case from full dismissal.  In its June 12 order, the Court reconsidered whether Stadium Capital had Article III standing despite having no viable loss causation theory, and concluded that it did.

That legal question of Article III standing is up for serious debate.  Several courts have answered the question of whether a lead plaintiff with no loss causation has Article III standing differently than this Court now has.  The issue is also an important one for the Ninth Circuit to address because it has never done so directly, and other Circuits are in disagreement on the issue.

The other requirements for certification under 28 U.S.C. § 1292(b) are also satisfied.  There is no doubt that this is a controlling question of law whose resolution will materially advance this litigation.  Article III standing is a decidedly legal issue, and a decision by the Ninth Circuit that a lead plaintiff who cannot plead loss causation has no Article III standing would terminate this action.

A stay of this case pending conclusion of appellate proceedings is also warranted.  Given the prospect that an appeal could resolve the entire litigation, judicial economy favors a stay.  And Stadium Capital would suffer no prejudice from a stay because relevant evidence will remain preserved during an appeal, and any delays from an appeal are attributable to Stadium Capital's failure to timely raise its Article III arguments.

## II.    BACKGROUND

In February 2022, the Court found that Stadium Capital had shown it had the largest financial interest in the case, and so appointed it to be the lead plaintiff under the PSLRA.  *See* Dkt. No. 67.

Notably, now that it has been determined it cannot establish loss causation, Stadium Capital has no viable claims and cannot satisfy the threshold lead plaintiff requirements that led to its appointment.

In its May 22, 2023 order, the Court dismissed Stadium Capital's Amended Complaint because, among other reasons, it had failed to plead loss causation. *See* Dkt. No. 168. Its loss-causation theory for its § 10(b) claim—that it had been harmed by the stock price drop following View's August 16, 2021 announcement of an audit committee investigation—was "insufficient" because the mere "announcement of an investigation … does not qualify as a corrective disclosure." *Id*. at 35. And its § 14(a) loss causation theory failed because, even though it held View stock on the record date for the de-SPAC merger vote, it sold its shares "months before" the alleged shareholder loss. *See id.* at 24-25.

In response to this ruling, Stadium Capital included a new alleged corrective disclosure in its Second Amended Complaint:  View's November 9, 2021 announcement of its internal investigation findings, which revealed for the first time that, among other things, the company would have to restate its prior financial results.  Dkt. No. 175 ("SAC") ¶¶ 129, 130.  But this did not fix Stadium Capital's loss causation problem because it did not own any View stock on November 9. *See* Dkt. No. 175-2 at 3.  No amount of artful pleading could change the fact that Stadium Capital did not, as a matter of law, suffer any harm at the operative times to establish loss causation.

To avoid dismissal again, Stadium Capital inserted a new, "additional" plaintiff, David Sherman.  SAC ¶ 25.  Stadium Capital had spent almost a year arguing in this Court and the Ninth Circuit that it should lead the putative class because it suffered the greatest financial loss, but added Mr. Sherman, who owned a mere 1,000 shares with small alleged losses, because he held, and did not sell, his stock from January 2021 through the end of the class period.  *See* Dkt. No. 175-3.

In its April 9, 2024 order, the Court dismissed the Second Amended Complaint with prejudice because Stadium Capital still had no viable loss causation theory for any of its claims. Dkt. No. 200 at 14-15.  Stadium Capital had sold all its shares before November 2021, and so could not have suffered any injury based on the alleged November disclosure for its § 10(b) claim.  *Id.* at 14.  And for the § 14(a) claim, it remained the case that Stadium Capital had sold all shares that it held as of the record date, well before any truth was allegedly revealed.  *See id*. at 15-16.

On June 12, the Court granted Stadium Capital's motion for reconsideration. It noted that "other courts have appropriately relied on … loss causation analysis … to determine whether a plaintiff has Article III standing to bring a claim," but concluded that those cases did not apply here. Dkt. No. 212 at 7. The Court held that "loss causation and the Article III standing analysis should be treated distinctly," and only when a "plaintiff both purchased and sold the shares" at prices inflated by the alleged fraud does a plaintiff's case lack both loss causation and Article III standing. *Id*. at 8. Because Stadium Capital had alleged that it held shares on August 16, 2021 and sold those shares at a loss on August 17, 2021, the Court concluded that Stadium Capital sufficiently alleged Article III injury—even though any price drop stemming from the August 16 disclosure, by itself, was insufficient to show that Stadium Capital had been harmed by View's alleged misrepresentations. *Id.* at 10; *see also* Dkt. No. 168 at 35-36.

In its subsequent amended motion-to-dismiss order on June 28, the Court reaffirmed that Stadium Capital has no viable loss causation theory. Dkt. No. 214 at 16-17, 29. But it also held that, because Stadium Capital had Article III standing, the Court would "permit the addition of David Sherman as a named plaintiff." *Id*. at 12. The Court then held that Mr. Sherman had viable loss causation theories. *See id*. at 14, 29.

Ultimately, the Court dismissed the § 10(b) claim on other grounds, but allowed the § 14(a) claim to proceed against certain defendants. *See id*. at 41. Lead Plaintiff has since elected to proceed with only its claim under § 14(a). *See* Dkt. No. 215. Notably, as to that proxy voting claim, Lead Plaintiff lacks both loss causation and Article III traceability because Lead Plaintiff "both purchased and sold" View stock at allegedly inflated values—it purchased and then held shares on the January 2021 record date but sold those voting shares on March 9 before any alleged corrective disclosure deflated the stock price. *See* Dkt. No. 212 (reconsideration order) at 8.

The effect of the Court's June 12 and June 28 orders is that Stadium Capital's sole contribution to the case is its Article III standing to file a complaint; it has no viable claims and is instead wholly reliant on the losses of a small-time shareholder to drive the litigation forward.

## III.     ARGUMENT

### A.     Interlocutory Appeal Is Warranted And Will Benefit This Case

An interlocutory appeal of whether a lead plaintiff with no viable loss causation theory can nevertheless have Article III standing is warranted under 28 U.S.C. § 1292(b).  For an order to be certified for immediate interlocutory appeal, it must involve "'[1] a controlling question of law [2] as to which there is substantial ground for difference of opinion' and [3] where 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'"  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687–88 (9th Cir. 2011) (quoting 28 U.S.C. § 1292(b)) (accepting certification following grant of motion for reconsideration).  All are satisfied here.

#### 1.     Whether a lead plaintiff has Article III standing even though it has no viable loss causation theory is a controlling question of law

The issue of whether a lead plaintiff can have Article III standing even though it cannot establish loss causation is both a question of law and controlling in this case.  A question of law, under § 1292(b), is "something the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000).

Although "[s]ecurities actions in the motion to dismiss stage often cannot be resolved by pure questions of law," "threshold issues such as … standing" are "pure questions of law" that are appropriately certified for immediate appeal.  *In re Facebook, Inc. IPO Sec. and Deriv. Litig.*, 986 F. Supp. 2d 524, 533-34 (S.D.N.Y. 2014).  In *In re Adelphia Comms. Corp. Sec. and Deriv. Litig.*, the court certified for § 1292(b) appeal whether a plaintiff had adequately alleged an injury in fact for Article III standing when the plaintiff had "never suffered a penny of loss" and instead sought to sue "on behalf of its clients."  2006 WL 708303, at *1 (S.D.N.Y. Mar. 20, 2006).  The court held that the Article III standing issue argued in the defendants' motion to dismiss was properly certified because it presented a "discrete legal issue not dependent on disputed facts that can easily be briefed promptly." *Id.* at *4.  The Second Circuit accepted the interlocutory appeal and reversed the district court, concluding that the plaintiff had not adequately alleged its standing to sue. *W.R. Huff Asset Mgmt. Corp Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008).

As in *In re Adelphia*, the question presented for appeal is a pure legal question.  The interplay between a plaintiff's ability to allege loss causation and the resulting effects on that plaintiff's Article III standing to sue is an abstract question that goes beyond "the details of the evidence of facts" in this case and so would be of "general relevance to other" securities class actions.  *Porter v. Mabus*, 2014 WL 669778, at *2 (E.D. Cal. Feb. 20, 2014).  Moreover, while this Court reasoned that in some cases, loss causation and Article III standing inquiries may diverge based on the pled facts, other courts have adopted a categorical legal rule that treats a failure to establish loss causation as *always* fatal to a plaintiff's Article III standing.  *See*, *e.g.*, *In re Impax Labs., Inc. Sec. Litig.*, 2008 WL 1766943, at *7 (N.D. Cal. Apr. 17, 2008) (no Article III standing where plaintiff sold shares after disclosure it alleged was partial corrective disclosure but before ultimate corrective disclosure).  Whether those other courts are correct is a pure legal question, and it is therefore amenable for resolution on interlocutory appeal.  *See Canela v. Costco Wholesale Corp.*, 2018 WL 3008532, at *1 (N.D. Cal. June 15, 2018) (Freeman, J.) (Article III standing to assert PAGA claims was a "purely legal question that does not depend on a material dispute of fact"); *cf. Dillon v. Murphy & Hourihane*, 2014 WL 5408416, at *1 (N.D. Cal. Oct. 22, 2014) (Freeman, J.) (for § 1292(b) certification, "though determination of personal jurisdiction over a party requires some examination of the factual allegations at hand, it is a purely legal question to be determined by the Court").

This question of law is also controlling.  In *Canela*, this Court recognized that Article III standing can be "controlling," explaining that "[a]ll that must be shown in order for a question … to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court."  2018 WL 3008532, at *1 (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)).  In *Canela*, the Article III standing question was "controlling" because, if the Court's decision was reversed on appeal, then the plaintiff would only be allowed to pursue an individual PAGA claim.  *Id.*; *see also Omni MedSci, Inc. v. Apple Inc.*, 2020 WL 759514, at *1 (N.D. Cal. Feb. 14, 2020) ("[s]tanding and subject-matter jurisdiction are controlling issues of law" because reversal would "result in dismissal of the case") (citing *Canela*); *Spirit of Aloha Temple v. Cnty. of Maui*, 2019 WL 2146237, at *2 (D. Haw. May 16, 2019) ("issues relating to jurisdiction" are controlling because "if decided differently on appeal, would terminate a case").

The same is true here—the issue of Article III standing is controlling because its resolution will determine whether this case should proceed or be dismissed. As the Court recognized in its April 2024 dismissal order, if Stadium Capital lacks Article III standing, then the new "additional plaintiff" Mr. Sherman cannot be added "to cure" the loss-causation "deficiency," and the case must be dismissed. Dkt. No. 200 at 18-19.

### 2. A substantial ground for difference of opinion about Article III standing exists

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed." *Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014). Evidence of an intra-circuit split is particularly compelling evidence. *See Canela*, 2018 WL 3008532, at *2 (substantial ground for difference of opinion existed where "courts within this circuit have split on" issue for almost a decade); *see also Couch*, 611 F.3d at 633-34 ("conflicting and contradictory opinions would provide substantial ground for disagreement").

That is true here. The Court's decision granting reconsideration rested on the conclusion that a plaintiff could allege that its injuries were "fairly traceable" to a defendant's conduct even if those same allegations were insufficient to establish loss causation. Dkt. No. 212 at 7. But for over a decade, numerous courts—including within this District—have reached the opposite holding that a plaintiff who suffers no losses connected to the defendants' conduct lacks Article III standing. *See id.* at 7-9 (Court collecting cases and "observ[ing] that other courts have appropriately relied on the loss causation analysis … to determine whether a plaintiff has Article III standing to bring a claim").

*In re Impax Laboratories* is especially salient because it reached that conclusion on facts that are highly analogous to this case. There, the plaintiff, who sold its shares in "August and October 2004," claimed the defendants had partially revealed the truth underlying their alleged fraud in an August 2004 statement and then fully revealed the truth in November 2004. *In re Impax*, 2008 WL 1766943 at *6-7. The court concluded that the August 2004 statement was not actionable for

purposes of loss causation because it did not "reveal[]" any part of the underlying truth, and so concluded the plaintiff lacked Article III standing to assert its claims based on the November 2004 disclosure. *Id*. The court reasoned that Article III required the plaintiff to show "that it personally ha[d] been injured, 'not that injury has been suffered by other, unidentified members of the class.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). And so the plaintiff lacked standing because it "sold all of its shares" before November 2004 and could not "have suffered loss as a result" of that disclosure. *Id.*; *see In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 394 (N.D. Cal. 2009) (plaintiff unable to show loss causation also lacks Article III standing); *see also* Dkt. No. 208 (Defs.' Joint Opp. to Pl. Mot. for Recon). at 6-8 (collecting cases with similar holdings as to standing).

Indeed, the fact that this Court issued two different rulings on the issue of Article III standing—first in its April dismissal order and then in its reconsideration order—is further evidence of a "credible basis for a difference of opinion" where "reasonable judges might differ." *Reese*, 643 F.3d at 688. That is the case here. *See Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 2018 WL 11592821, at *1 (W.D. Wash. May 15, 2018) (granting § 1292(b) certification for constitutional preemption issue following court's reconsideration of prior ruling).

Moreover, although the Court noted in its reconsideration order that it relied on "binding Ninth Circuit and Supreme Court authority" (Dkt. No. 212 at 9 n.2), the Ninth Circuit has not addressed the legal issue that Defendants now move to certify for appeal. Rather, the "binding … authority" the Court relied on stood for the proposition that loss causation analysis is "no more than the familiar test for proximate cause." *Id*. at 7. That authority does not directly address the interplay between loss causation under the federal securities laws and Article III's requirement that an alleged injury be fairly traceable to the defendants' alleged misconduct. *See id*. (citing *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (Article III standing in Endangered Species Act citizen-suits); *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (Article III standing in state-law claims against housing developers); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2008) (interplay between Article III standing and civil RICO statutory standing); *Williams v. Sisolak*, 2024 WL 194180, at *1 (9th Cir. Jan. 18, 2024) (unpublished opinion holding no Article III standing where plaintiffs could not establish injuries were caused by defendants' actions); *Mineworkers'*

-7-                                                    Case No. 5:21-cv-06374-BLF

*Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (Exchange Act case with no discussion of Article III standing); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (same); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (same)).

Indeed, many of these seminal cases, including most notably *Dura*, were good law when *Impax* and *Infineon*—both cases from this District—were decided. *Impax* even cited, and relied on, *Dura*'s rule of "pure logic" to reach its result. *See* 2008 WL 1766943, at \*7 (N.D. Cal. Apr. 17, 2008) (citing *Dura* and concluding plaintiff "cannot have suffered loss" and so lacked Article III standing); *see also Infineon*, 266 F.R.D. at 394 (similar). In other words, while this Court concluded that "binding" authority compelled one result, reasonable judges in this District have considered that same authority to reach the opposite result.

A substantial ground for difference of opinion also exists because the "circuits are in dispute on the question and the [Ninth Circuit] has not spoken on the point[.]" *ICTSI Oregon, Inc. v. Int'l Longshore and Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022). In *Taylor v. KeyCorp*, the Sixth Circuit reached the opposite conclusion of this Court, holding that the plaintiff failed to establish Article III standing because she failed to allege that the defendants caused losses to her stock holdings. 680 F.3d 609, 613 (6th Cir. 2012). In contrast, the Eleventh Circuit in *MacPhee* and the Eighth Circuit in *Brown* have both concluded that a plaintiff can plead an Article III injury even if the defendants' misrepresentations did not cause the plaintiff's losses as a matter of law. *See MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1248 (11th Cir. 2023); *Brown v. Medtronic, Inc.*, 628 F.3d 451, 458 (8th Cir. 2010).

### 3.    An immediate interlocutory appeal would materially advance the termination of this litigation

Finally, the third factor for § 1292(b) certification—whether an interlocutory appeal would "materially advance the termination of the litigation," 28 U.S.C. § 1292(b)—is present when a successful appeal would resolve some or all of the claims in a case. *See, e.g.*, *Reese*, 643 F.3d at 688; *Core Optical Techs., LLC v. Juniper Networks Inc.*, 2021 WL 5978761, at \*1 (N.D. Cal. Dec. 17, 2021) ("granting an immediate appeal would materially advance the litigation" because reversal would "likely (if not certain[ly]) … terminate this litigation"). After all, "[t]he purpose of an

interlocutory appeal is to 'facilitate disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later' in order to 'save the courts and the litigants unnecessary trouble and expense.'" *City of L.A. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2014 WL 12573322, at *10 (C.D. Cal. Apr. 29, 2014).

An interlocutory appeal would resolve the entire case if the Ninth Circuit were to conclude that Stadium Capital lacks Article III standing, just as this Court concluded in its April dismissal order. *See* Dkt. No. 200 at 17-19 (citing *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 2023 (9th Cir. 2003)). Therefore, allowing the appeal to proceed would materially advance the resolution of this case in the most efficient manner possible. *See Core Optical*, 2021 WL 5978761 at *1; *see also Canela*, 2018 WL 3008532, at *2 (Freeman, J.) (interlocutory appeal materially advanced termination of litigation if reversal would limit claims).

**B.    A Stay Would Ensure Judicial Economy And Impose No Burden**

Section 1292(b) provides the Court with the power to stay the proceedings while an appeal is pending. Such stays are warranted if they will achieve "economy of time and effort for [a court], for counsel, and for litigants." *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1094 (E.D. Cal. 2008) (citation omitted). As this Court explained in *Canela*, staying a case after § 1292(b) certification is prudent where "much of the efficiency and benefit of an interlocutory appeal would be lost" if "the parties were required to continue trial preparation." *Canela*, 2018 WL 3008532 at *4.

A stay is warranted here on exactly that basis. Having this case continue while a dispositive interlocutory appeal goes forward would be a waste of judicial resources and the parties' resources. Stadium Capital has elected not to amend and will proceed with its existing complaint, and the parties are primed to incur significant costs in what could be extensive discovery sought by plaintiff. Given the unresolved questions at issue in this case, and the significant costs associated with discovery in securities class actions, "[i]t would be a waste of judicial and party resources to proceed … while the appeal is pending." *Ass'n of Irritated Residents*, 634 F. Supp. 2d at 1094; *see also Rollins,* 2014 WL 6693891, at *5 (granting stay). That is especially true because, if the Ninth Circuit were to take the appeal, it could conclude that the entire case should be dismissed. *See Su*

*v. Siemens Indus., Inc.*, 2014 WL 2600539, at *3 (N.D. Cal. June 10, 2014) (staying proceedings pending appeal because "potential benefits to resolving the disputed legal questions now outweigh the potential benefits of proceeding to trial now and allowing appeal later"); *Koby v. ARS Nat'l Servs., Inc.*, 2010 WL 5249834, at *4 (S.D. Cal. Dec. 23, 2010) (staying proceedings pending appeal where "decision by the Ninth Circuit will likely simplify the issues to be tried").

The equities also favor a stay.  In deciding whether to stay proceedings during a certified interlocutory appeal, courts weigh "the hardship or inequity which a party may suffer in being required to proceed[] against whether a stay would cause undue prejudice or present a clear tactical disadvantage to the non-moving party." *City of L.A.*, 2014 WL 12573322, at *11.  The putative class will suffer no prejudice from a stay.  The proposed stay would maintain the pre-discovery *status quo*, where all relevant evidence has been preserved, Defendants will have filed their answers to the Second Amended Complaint, the parties will have had their Rule 26(f) conference, and the Court will have conducted its initial Case Management Conference.  Moreover, Stadium Capital has little room to complain of delay.  Stadium Capital engaged in lengthy litigation to secure its status as lead plaintiff (despite being unsuitable for the role), failed to cure the pleading defects in its Amended Complaint, unilaterally inserted an "additional plaintiff" to cure its loss causation problem, and did not timely raise the arguments it asserted in its motion for reconsideration.  Any delay to date has been of the Stadium Capital's own making.  It is no position to complain now about a stay while the threshold issue of its own standing is resolved.

On the other side of the coin, Defendants will be substantially prejudiced absent a stay because they will otherwise be subject to "burdensome discovery" that "will have [been] incurred … needlessly, if the Court does not issue a stay and the Ninth Circuit" issues a decision favorable to defendants.  *U.S. ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, 2019 WL 6973547, at *7 (C.D. Cal. Oct. 8, 2019).

## IV.    **CONCLUSION**

Defendants respectfully and jointly request that the Court (a) certify its Reconsideration Order under § 1292(b) for an interlocutory appeal, and (b) stay proceedings pending appeal.

Dated:  July 12, 2024                    Respectfully submitted,


By:    /s/ John W. Berry                          By:    /s/ Ryan Keats
   John W. Berry                                      Anna Erickson White
   John M. Gildersleeve                              Ryan Keats
   MUNGER, TOLLES & OLSON LLP              MORRISON & FOERSTER LLP
   *Attorneys for View, Inc., f/k/a CF Finance*       *Attorneys for Defendant Vidul Prakash*
   *Acquisition Corp. II, and Rao Mulpuri*

By:    /s/ Jeffrey L. Steinfeld
   Jeffrey L. Steinfeld
   James P. Smith III (pro hac vice)
   WINSTON & STRAWN LLP
   *Attorneys for Defendants Howard W.*
   *Lutnick, Paul Pion, Alice Chan, Anshu Jain,*
   *Robert J. Hochberg, Charlotte S. Blechman,*
   *CF Finance Holdings II, LLC, Cantor*
   *Fitzgerald & Co., Cantor Fitzgerald, L.P.,*
   *and CF Group Management, Inc.*


## ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


Dated:  July 12, 2024                    By:     /s/ John W. Berry
                                            John W. Berry

DEFENDANTS' JOINT MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL
AND STAY PENDING APPEAL