Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
Emails: *lking@kaplanfox.com*
         *breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
Emails:  *ffox@kaplanfox.com*
         *dhall@kaplanfox.com*
         *juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium
Capital LLC, Plaintiff David Sherman and the
Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., AND CF GROUP MANAGEMENT, INC., <br><br> Defendants. | Case No.: 5:21-cv-06374-BLF <br><br> **CLASS ACTION** <br><br> **LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)** <br><br> Judge:  Hon. Beth L. Freeman <br> Courtroom:  3, 5th Floor |

Case No. 5:21-cv-06374-BLF

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   LEGAL STANDARD ................................................................................................ 1

III.  ARGUMENT ............................................................................................................ 2

    A.   There is No Controlling Question of Law .................................................... 2

    B.   There is No Substantial Ground for Difference of Opinion ................................. 6

    C.   Interlocutory Review Would Not Materially Advance the Termination of This Litigation ............................................................................................. 9

    D.   A Stay Would Cause Unnecessary Prejudice ............................................... 9

IV.   CONCLUSION ....................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
No. 16-CV-00923-BLF, 2018 WL 2761855 (N.D. Cal. June 8, 2018) ..............................*passim*

*Canela v. Costco Wholesale Corp.*,
No. 13-CV-03598-BLF, 2018 WL 3008532 (N.D. Cal. June 15, 2018) ...................................... 4

*Clinton v. Jones*,
520 U.S. 681 (1997) ........................................................................................................ 10

*Couch v. Telescope, Inc.*,
611 F.3D 629 (9th Cir. 2010)................................................................................. 6, 7, 8

*Dillon v. Murphy & Hourihane*,
No. 14-CV-01908-BLF, 2014 WL 5408416 (N.D. Cal. Oct. 22, 2014)............................... 1, 9

*Henley  v. Jacobs*,
No. C 18-2244 SBA, 2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) ....................................... 2, 9

*Home Depot U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*,
No. 16-CV-04865-BLF, 2019 WL 6171063 (N.D. Cal. Nov. 20, 2019)....................... 1, 2, 3, 7

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982)................................................................................................ 1

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 524 (S.D.N.Y. 2014)..................................................................................... 4

*In re Impax Labs., Inc. Sec. Litig.*,
2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ...................................................................... 3, 7

*In re Infineon Techs. AG Sec. Litig.*,
266 F.R.D. 386 (N.D. Cal. 2009)............................................................................................ 8

*Jewel v. Nat'l Sec. Agency*,
673 F.3d 902 (9th Cir. 2011)................................................................................................... 6

*Ji v. Naver Corp.*,
No. 21-CV-05143-HSG, 2024 WL 251402 (N.D. Cal. Jan. 23, 2024)............................. 2, 3, 8

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)................................................................................................ 5

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ready Pac Foods, Inc.*,
2011 WL 1059284 (C.D. Cal. Mar. 18, 2011) ...................................................................... 7

*Porter v. Mabus*,
No. 1:07-CV-0825 AWI SMS, 2014 WL 669778 (E.D. Cal. Feb. 20, 2014)............................ 4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................................................................................................... 5, 6

*Stahl v. Gibraltar Fin. Corp.*,
967 F.2d 335 (9th Cir. 1992)................................................................................................. 5

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

## TABLE OF AUTHORITIES

**Page(s)**

*Taylor v. KeyCorp*,
  680 F.3d 609 (6th Cir. 2012)................................................................................... 8

**STATUTES**

15 United States Code
  § 78n(a) (Section 14(a) of the Securities Exchange Act of 1934) ................................ 6

28 United States Code
  § 1292(b) ....................................................................................................................... 4

U.S. Constitution
  Article III................................................................................................................... *passim*

**RULES**

Federal Rules of Civil Procedure
  Rule 26(f) .................................................................................................................... 10

**OTHER AUTHORITIES**

United States Courts for the Ninth Circuit,
  2023 Annual Report ...................................................................................................... 9

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

At issue in Defendants' Motion (ECF No. 219) is this Court's straightforward and detailed application of well settled Supreme Court and Ninth Circuit law to the facts in this case. It is not the sort of "exceptional" case that merits interlocutory review. In their search for a controlling question of law, Defendants avoid the central finding of the Court's June 12, 2024 Order (ECF No. 212): that the allegations *in this case* were sufficient to plead Article III standing under controlling law. Therefore, there is not a controlling question of law as to which there is a substantial ground for difference of opinion. Nor would immediate appeal materially advance the ultimate termination of the litigation. Rather, the Court's June 12, 2024 Order addressed a mixed question of law and fact after applying well-established Supreme Court and Ninth Circuit precedent, making it inappropriate for interlocutory review. Contrary to Defendants' assertions, the question of Article III standing is not "up for serious debate", and Defendants' efforts to extend the decisions of other courts far beyond their actual holdings cannot manufacture a disagreement on a question of law where none actually exists. That Defendants disagree with the outcome is insufficient. Defendants' Motion lacks merit and should be denied in its entirety.

## II.   LEGAL STANDARD

It is firmly established that there is a "basic policy of postponing appellate review until after the entry of a final judgment." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) (internal citation omitted). "For a court to grant interlocutory review of an order not otherwise appealable, the party seeking such review has the burden of showing three things: (1) there is a controlling question of law upon which (2) there is a substantial ground for difference of opinion, and (3) the immediate appeal of which will materially advance the ultimate termination of the litigation." *Dillon v. Murphy & Hourihane*, No. 14-CV-01908-BLF, 2014 WL 5408416, at *1 (N.D. Cal. Oct. 22, 2014) (Freeman, J.) (citing 28 U.S.C. § 1292(b)).

"'Because § 1292(b) is a departure from the final judgment rule, this exception must be construed narrowly.'" *Home Depot U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*, No. 16-CV-04865-BLF, 2019 WL 6171063, at *1 (N.D. Cal. Nov. 20, 2019) (Freeman, J.) (quoting *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 957 (N.D. Cal. 2019)). "[T]he district court

should apply the requirements 'strictly' and certify for interlocutory appeal only when 'exceptional circumstances' justify a departure from the well-established policy of postponing appellate review until after a final judgment." *Id.*, at \*1 (internal quotation omitted). "'Even where all of these elements are met, district courts have discretion to deny certification for interlocutory appeal.'" *Id.* (quoting *Flack v. Nutribullet, L.L.C.*, No. 2:18-CV-05829-DDP (SSX), 2019 WL 2568393, at \*1 (C.D. Cal. June 21, 2019)).

## III.   ARGUMENT

### A.    There is No Controlling Question of Law

Although Defendants attempt to frame the issue as a "pure legal question" (Mot. at 5), the question of whether the Second Amended Complaint's allegations are sufficient to establish Stadium Capital's Article III standing "concern[s] the Court's application of the law to the facts alleged in the pleadings—'sometimes referred to as [a] mixed question[] of law and fact.'" *Henley v. Jacobs*, No. C 18-2244 SBA, 2019 WL 8333448, at \*2 (N.D. Cal. Oct. 25, 2019) (internal citations omitted). "Interlocutory appeals are intended to resolve pure questions of law, not challenges to the district court's application of settled law to specific alleged facts." *Ji v. Naver Corp.*, No. 21-CV-05143-HSG, 2024 WL 251402, at \*2 (N.D. Cal. Jan. 23, 2024) (citing *Henley*, 2019 WL 8333448, at \*2 (characterizing a "controlling question of law" as "a purely legal one that can be resolved quickly without delving into a particular case's facts")). Despite their efforts to frame a controlling question of law, Defendants do not dispute that "[a] mixed question of law and fact or the application of law to a particular set of facts by itself is not appropriate for permissive interlocutory review." *Home Depot*, 2019 WL 6171063, at \*2 (citing *Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2017 WL 3168491, at \*1 (N.D. Cal. July 26, 2017)); *Arista Networks, Inc. v. Cisco Sys. Inc.*, No. 16-CV-00923-BLF, 2018 WL 2761855, at \*2 (N.D. Cal. June 8, 2018) (same) (Freeman, J.).

Here, "the Court relie[d] on binding Ninth Circuit and Supreme Court authority to reach [its] conclusion" that the Second Amended Complaint sufficiently plead Stadium Capital's Article III standing. ECF No. 212 at 9 n.2. The Court specifically found that "***[t]his case*** includes factual allegations that may establish an injury that is fairly traceable to Defendants' conduct for

Article III purposes but are not sufficient to plead loss causation." *Id*. at 8 (emphasis added). In other words, this Court applied well-settled Supreme Court and Ninth Circuit law governing Article III standing to the specific allegations in this case, *i.e.*, this Court decided a mixed question of law and fact. Here, "[a]lthough couched as a purely legal question, it appears that [Defendants] simply do not like how this Court applied settled precedent to the facts of this case in deciding the [Plaintiffs' reconsideration motion]." *Home Depot*, 2019 WL 6171063, at *2; *see also Naver Corp.*, 2024 WL 251402, at *2 ("what [Defendants] ultimately take issue with is *how* the Court applied controlling Supreme Court and Ninth Circuit standing standards to the particulars of this case's (alleged) facts.") (emphasis in original); *Arista* 2018 WL 2761855, at *2 (holding that "the Court did not reach a purely legal conclusion detached from the record" where it applied Ninth Circuit precedent to the facts of that case).

In order to cast this Court's decision as a pure question of law (and attempt to flout this Court's factual finding regarding the sufficiency of the factual allegations) Defendants rely on *In re Impax Labs., Inc. Sec. Litig.*, No. C 04-04802 JW, 2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) to argue that "other courts have adopted a categorical legal rule that treats failure to establish loss causation as *always* fatal to a plaintiff's Article III standing." Mot. at 5 (emphasis in original). Defendants stretch *Impax* far beyond its actual holding. Nowhere did the *Impax* court suggest that *in all cases* a failure to establish loss causation is fatal to Article III standing. Defendants ignore that in *Impax*, a case involving Defendants' alleged failure to disclose rebates and credits issued on buproprian sales to Teva, the court specifically found that the earlier alleged disclosure "d[id] not make any implicit or explicit reference to rebates or credits. Thus, there [was] no basis to find that the [earlier] statement revealed that Impax was issuing credits on bupropion products." *Impax*, 2008 WL 1766943, at *6. Therefore, even taking the allegations as true, the alleged harm could not have been fairly traceable to the earlier disclosure because it did not relate to the alleged misstatement. As this Court has already noted, "[i]n such a situation, the fact that the plaintiff's loss cannot be attributable to the alleged misrepresentation is sufficient to show that the plaintiff's injury is not fairly traceable to the defendant's conduct for Article III standing *and* to show that the plaintiff fails to adequately allege loss causation and thus fails to state a claim." ECF No. 212 at 8 (emphasis

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

in original). However, *this case* alleges *different facts*. Here, as the Court noted, it is alleged that on August 16, 2021 View specifically announced an internal investigation into the adequacy of View's previously disclosed warranty accrual, that View's stock price fell when that announcement was made, that Stadium Capital held View stock as of that announcement, and therefore, "[a]ccepting the facts in the second amended complaint as true, the Court f[ound] that Plaintiffs have adequately alleged that Stadium Capital suffered a loss and that the injury can be traced to the announcement of the investigation on August 16, 2021." ECF No. 212 at 10.

Defendants largely rely on out of circuit cases that did not involve mixed questions of law and fact or where the § 1292(b) motion was denied. Opp. at 4-5 (citing *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,* No. 03 MDL 1529 (LMM), 2006 WL 708303, (S.D.N.Y. Mar. 20, 2006) with *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (certifying question of whether an investment advisor has standing to sue on behalf of its clients as a matter of law where plaintiff "[had] not alleged in its complaint that it suffered any injury; rather, the alleged injury was suffered by [plaintiff]'s clients"); *Porter v. Mabus*, No. 1:07-CV-0825 AWI SMS, 2014 WL 669778, at *4 (E.D. Cal. Feb. 20, 2014) (denying motion where "[moving party]'s contention [was] a disagreement with the way the law was applied to the facts of his case"); *Canela v. Costco Wholesale Corp.*, No. 13-CV-03598-BLF, 2018 WL 3008532, at *1 n.1 (N.D. Cal. June 15, 2018) (certifying question "whether a plaintiff can pursue an individual PAGA claim."). Additionally, contrary to Defendants' assertion, the *In re Facebook, Inc., IPO Sec. & Derivative Litig.* court did not state that standing issues are, categorically, "pure questions of law." 986 F. Supp. 2d 524, 533-34 (S.D.N.Y. 2014). Rather, the court there stated that of the "***only four times in the last thirteen years*** [in which] the Second Circuit entertained a Section 1292(b) appeal from an order denying a motion to dismiss in a federal securities class action", those instances concerned "issues such as jurisdiction, standing and statute of limitations." *Id.* (emphasis added).

In their attempt to frame a pure question of law, Defendants effectively contend that a plaintiff that has not sufficiently pled loss causation cannot, as a matter of law, plead Article III standing. Mot. at 5; *see also id.* at 5, 7 (referring to "the interplay" between loss causation and

Article III standing, without citation). But that contention contradicts controlling Supreme Court and Ninth Circuit law that loss causation is a separate and more demanding standard than the "fairly traceable" element of Article III standing. *See* ECF No. 212 at 7 (collecting cases and holding that "the loss causation elements of Sections 10(b) and 14(a) claims require a distinct and more demanding analysis than that of the causation prong of Article III standing."); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (Article III standing "precedes, and does not require, analysis of the merits.") (internal citation omitted). This Court explicitly stated that "in reaching th[e] conclusion [that Stadium Capital had alleged sufficient facts to establish Article III standing], the Court notes that it did not determine [certain questions of loss causation and noted that] it is not necessary to reach [certain questions of loss causation] to determine whether Stadium Capital has Article III standing." ECF No. 212 at 10-11; *see Arista* 2018 WL 2761855, at *2 (in cast[ing] the Court's decision as a pure question of law . . . [Defendants'] contention contradict[ed] the [relevant] Ninth Circuit[] standard . . . and thus provide[d] no basis for an interlocutory appeal"). As such, Defendants' proposed issue for certification improperly assumes that questions of loss causation were determined as part of the Article III analysis (which *precedes* analysis of the merits).

Additionally, even if Defendants had presented a "pure question of law"—they have not—it is not "controlling" as resolution of the issue on appeal would not materially affect the outcome of this litigation because there is no dispute that the proxy solicitation was materially misleading and Stadium Capital held stock as of the record date and was entitled to vote on the merger. As this Court noted, "Defendants [did] not directly address these facts." ECF No. 212 at 9.

Notwithstanding any resolution on appeal, Stadium Capital would still have Article III standing because "[a]s the Supreme Court noted in *Mills* [*v. Elec. Auto-Lite Co.*, 396 U.S. 375, 383 (1970)], "[u]se of a solicitation that is materially misleading *is itself* a violation of law." *Stahl v. Gibraltar Fin. Corp.*, 967 F.2d 335, 337 (9th Cir. 1992) (emphasis in original). Indeed, "[t]he touchstone of a section 14(a) violation is a material misstatement—something "that a reasonable shareholder would consider . . . important in deciding how to vote." *Id.* (citing *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). As set forth in *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016), "the violation of a procedural right granted by statute can be sufficient in some

circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 578 U.S. 330, 342 (2016) (emphasis in original); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 908 (9th Cir. 2011) ("the Supreme Court instructs that a concrete 'injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'"). Here, Stadium has alleged that "[m]embers of the Class eligible to vote on the Business Combination were misled by the false and misleading statements and omissions made by Defendants named in this Count, were denied the opportunity to make a fully informed decision in voting on the Business Combination with CF II without having been advised of material facts." ¶ 196. Such an injury is "'concrete and particularized' and 'actual or imminent', not conjectural or hypothetical." *Spokeo*, 578 U.S. at 330. Indeed, such an injury is nothing like Spokeo's example of an injury that would not be concrete: "[a]n example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Spokeo*, 578 U.S. at 342.

It is noteworthy that Defendants do not cite even a single case where a plaintiff's section 14(a) claim was dismissed for lack of Article III standing where that plaintiff sufficiently pled a materially misleading proxy and that plaintiff was eligible to vote.

### B.    There is No Substantial Ground for Difference of Opinion

Defendants also fail to establish that there are "substantial grounds for difference of opinion" as to the issue they propose for interlocutory appeal. "To determine if a substantial ground for difference of opinion exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope, Inc.* 611 F.3D 629, 633 (9th Cir. 2010). "A substantial ground for difference of opinion may be found where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Arista*, 2018 WL 2761855, at *3 (citing *Couch*, 611 F.3d at 633). "However, the mere fact that other courts have taken a different approach does not demonstrate a substantial difference of opinion under the meaning of § 1292(b)." *Id.* at *3 (citing *Couch*, 611 F.3d at 633 ("[J]ust because counsel contends

that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion [that] support[s] an interlocutory appeal.")).

The legal framework governing Article III standing set forth by the Supreme Court and the Ninth Circuit is well settled. Relying on this binding authority, this Court noted that "the loss causation elements of Sections 10(b) and 14(a) claims require a distinct and more demanding analysis than that of the causation prong of Article III standing." ECF No. 212 at 7. Defendants' position that a failure to plead loss causation must categorically preclude Article III standing is inconsistent with clear Supreme Court and Ninth Circuit law, and reflects nothing more than their "strong disagreement" with the application of well settled law to the facts of this case. *Couch*, 611 F.3d at 633; *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ready Pac Foods, Inc.*, No. CV 09-3220 RSWL MANX, 2011 WL 1059284 (C.D. Cal. Mar. 18, 2011) ("[I]n ruling on motions to certify pursuant to 28 U.S.C. § 1292(b), 'a party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference of opinion.'"). Moreover, "even assuming that the Ninth Circuit has not addressed the precise question [Defendants] seek[] to certify, that fact would be insufficient to support an existence of a 'substantial ground for difference of opinion.'" *Arista*, 2018 WL 2761855, at *3 (citing *Couch*, 611 F.3d at 633 ("[J]ust because a court is the first to rule on a particular question . . . does not mean there is such a substantial difference of opinion.")); *Home Depot*, 2019 WL 6171063, at *3 ("The lack of a case addressing the precise fact pattern presented here does not create a novel issue of law."). And, although self-evident from the distinct and less demanding Article III framework itself that Article III standing can be sufficiently plead in some cases where loss causation has not, as the Court has recognized, the Ninth Circuit *already has explicitly confirmed this*. ECF No. 212 at 7 (citing *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2008) (noting that, while the plaintiff could not show proximate cause, the plaintiff adequately alleged causation for Article III standing)).

The cases cited by Defendants to support their argument that "a substantial ground for difference of opinion" exists involved different facts than those alleged here. As explained above at 4-5, the *facts in Impax*, where the court explicitly found that the earlier disclosure did not relate to the alleged misstatements, differ from the *facts here* where it is alleged that on August 16, 2021

View specifically announced an internal investigation into the adequacy of View's previously disclosed warranty accrual, that View's stock price fell when that announcement was made, and that Stadium Capital held View stock as of that announcement. *See also In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 398 (N.D. Cal. 2009) (at class certification stage, no "standing" for investors who sold their stock prior to June 19, 2022 because "[a]ccording to Plaintiffs' [own] allegations, corrective information about the price fixing scheme began to reach the public on June 19, 2022, when Infineon announced that it had received a grand jury subpoena in connection with an investigation into possible violations of federal antitrust laws"). "That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633; *Naver Corp.*, 2024 WL 251402, at *2 ("That district courts may reach different conclusions when applying these standards to unique factual scenarios is unremarkable, and does not necessitate an immediate appeal. Were it otherwise, parties could seek interlocutory appeal of virtually any ruling with which they disagree, even at the motion to dismiss stage."). Here, there is no dispute that the August 16, 2021 disclosure explicitly related to View's previously disclosed warranty accrual, or that the stock dropped on that date.

Finally, contrary to Defendants' assertion, the circuits are not in dispute on the question. Mot. at 8. The only case Defendants cite to support such a dispute is *Taylor v. KeyCorp*, 680 F.3d 609 (6th Cir. 2012). But *KeyCorp* did not hold that Article III standing cannot be pled as a matter of law when a plaintiff has not sufficiently pled loss causation. Rather, the *KeyCorp* Court simply found that by the complaint's *own allegations* the alleged loss was not traceable to defendants' conduct. 680 F.3d at 613 (plaintiff "earn[ed] a net profit" from "s[elling] over 80% of her KeyCorp holdings at a time she claims the stock was artificially inflated. Accordingly, if the allegations in the complaint are true, [plaintiff] sold the majority of her KeyCorp holdings for *more money* than it was worth, thereby *benefitting* from defendants' alleged breach of fiduciary duty") (emphasis in original); at 614 ("damages based upon an entirely different investment vehicle, such as the S&P 500, are not fairly 'traceable' to the defendants' breach."). In fact, Defendants have not cited *a single case* that has held that a plaintiff can never sufficiently plead Article III standing as a matter of law if it has failed to plead loss causation.

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

### C.     Interlocutory Review Would Not Materially Advance the Termination of This Litigation

Defendants' assertion that an interlocutory appeal could "resolve the entire case" is insufficient. Mot. at 9. "If the Court were to accept that argument, essentially all potentially dispositive interlocutory orders would be automatically appealable." *Henley*, 2019 WL 8333448, at *3 (internal citation and quotation omitted). Here, "an order overturning this Court and dismissing this case for lack of [Article III standing] may terminate the litigation in this forum, but this by itself is not enough to merit interlocutory review." *Dillon*, 2014 WL 5408416, at *2 (citing *Environmental Protection Info. Cntr. v. Pac. Lumber Co.,* 2004 WL 838160, at *3 (denying a motion to certify, stating that "[e]very denial of a dispositive motion *may* result in reversal at the appellate court, which *may,* in turn, conclude the case outright") (emphasis in original)). Defendants do not otherwise explain how interlocutory review would advance this case.

Moreover, permitting an interlocutory appeal in this case would undoubtedly *delay* the ultimate termination of litigation given that the appeal process in the Ninth Circuit has a median time from filing to resolution of 13.7 months.[1] Even if Defendants were somehow successful in their appeal *and* such a favorable ruling for Defendants in the Ninth Circuit left open no factual questions for this Court, the case would not end there. In the event Defendants were somehow able to achieve a dismissal and final judgment in this Court as a result of an interlocutory appeal, other issues would then become ripe for appeal, such as the Court's loss causation findings with respect to Stadium Capital, resulting in even further delay. Proceeding to prepare this case for trial now is far more likely to materially advance the termination of the litigation.

### D.     A Stay Would Cause Unnecessary Prejudice

Defendants' assertion that "[t]he putative class will suffer no prejudice from a stay" is absurd. Mot. at 10. This case has already been pending for nearly 3 years. Contrary to Defendants' assertion, the "delay to date" has not "been of [] Stadium Capital's own making." *Id*. On February 8, 2022, Stadium Capital was appointed Lead Plaintiff. ECF No. 67. A competing movant then sought reconsideration of the Court's appointment order, and when that motion was denied, filed a Petition

---

[1] *See* United States Courts for the Ninth Circuit, 2023 Annual Report at 62, *available at* https://cdn.ca9.uscourts.gov/datastore/judicial-council/publications/AnnualReport2023.pdf

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

for Writ of Mandamus in the Ninth Circuit, and sought a stay of this case. ECF No. 77. The Ninth Circuit granted the petition and *denied* the writ. ECF No. 117. Stadium Capital cannot be faulted for the delay caused by another movant's decision to appeal this Court's sound decision. Nor can Defendants' try to blame Stadium for any delay caused by *their own* request for interlocutory appeal as an "issue of its own standing" Mot. at 10.

On the other hand, Defendants have caused substantial delay to date. On January 4, 2022, Defendant View announced that it expected to issue its restated financial statements, within the first quarter of 2022 (the "Restatement"). ECF No. 73 at 1. After parties agreed that it would be efficient and promote judicial economy for Lead Plaintiff to review the Restatement, after it is filed, before finalizing and filing an amended complaint (*id.* at 2), Defendant View waited until June 15, 2022 to file the Restatement. Additionally, with respect to Article III standing, this Court found that "considering the ambiguity in how the [Article III] issue was raised . . . a party exercising reasonable diligence may not have been sufficiently on notice that View's loss causation arguments were directed at Stadium Capital's standing . . . ." ECF No. 212 at 4. As a result of View's ambiguity, Plaintiffs (and the proposed class) were subjected to the burden and additional delay caused by the need to move the Court for reconsideration.

This case has been delayed long enough and a stay would inflict further prejudice on Plaintiffs and the putative class. *See*, *e.g.*, *Clinton v. Jones*, 520 U.S. 681, 707–08 (1997) (delay increases the danger of prejudice "resulting from the loss of evidence, including the inability of witnesses to recall specific facts, and the possible death of a party"). In fact, although Defendants have not provided formal notice, and Defendants have continued to file documents with the Court on his behalf, Plaintiffs have become aware that Defendant Jain passed away nearly 2 years ago. The parties have already conducted the Rule 26(f) conference, Lead Plaintiff will be serving document requests in the coming weeks, and the parties have begun discussing a protective order. It is time for this case to move forward.

## IV.    CONCLUSION

For all of the foregoing reasons, Lead Plaintiff respectfully requests that the Court deny Defendants' Motion.

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

DATED: July 26, 2024

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

By:   /s/   *Laurence D. King*
            Laurence D. King

Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
*lking@kaplanfox.com*
*breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium Capital LLC,
Plaintiff David Sherman and the Proposed Class*