JOHN W. BERRY (SBN 295760)
John.Berry@mto.com
JOHN M. GILDERSLEEVE (SBN 284618)
John.Gildersleeve@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

JEFFREY L. STEINFELD (SBN 294848)
JLSteinfeld@winston.com
JAMES P. SMITH III (*pro hac vice*)
JPSmith@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071-1543
Telephone:    (213) 615-1700
Facsimile:    (213) 615-1750

*Attorneys for Defendants View, Inc. and Rao Mulpuri*

ANNA ERICKSON WHITE (SBN 161385)
AWhite@mofo.com
RYAN M. KEATS (SBN 296463)
RKeats@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

*Attorneys for Defendants Howard W. Lutnick, Paul Pion, Alice Chan, Anshu Jain, Robert J. Hochberg, Charlotte S. Blechman, CF Finance Holdings II, LLC, Cantor Fitzgerald & Co., Cantor Fitzgerald, L.P., and CF Group Management, Inc.*

*Attorneys for Defendant
Vidul Prakash*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., and CF GROUP MANAGEMENT, Inc.,<br><br>Defendants. | Case No. 5:21-cv-06374-BLF<br><br>CLASS ACTION<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO [1] CERTIFY THE COURT'S ORDER GRANTING RECONSIDERATION (Dkt. 212) FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND [2] STAY PENDING RESOLUTION OF INTERLOCUTORY APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    December 19, 2024<br>Time:    9:00 a.m.<br>Crtrm.:    3<br><br>Judge:    Hon. Beth Labson Freeman |

Case No. 5:21-cv-06374-BLF

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION..........................................................................................................1

II.   ARGUMENT ..............................................................................................................1

      A.    The Standing Issue Is A Controlling Question Of Law .............................................1

            1.    The question presented is a question of law.......................................................1

            2.    The legal question is also controlling.............................................................2

      B.    A Substantial Ground For Difference Of Opinion Exists ........................................3

      C.    An Interlocutory Appeal Would Materially Advance This Litigation ......................5

      D.    A Stay Would Promote Judicial Economy And Impose No Burden ........................5

DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY
FOR INTERLOCUTORY APPEAL AND STAY PENDING APPEAL

## I.    INTRODUCTION

In opposing defendants' joint motion to certify an appeal of the Court's reconsideration ruling, Lead Plaintiff argues that the question defendants seek to certify for appeal is neither legal nor controlling, and that the answer to the question would not advance the resolution of this case. But defendants do not ask the Ninth Circuit to re-consider the facts of this case.  Rather, they seek appellate review of the proper legal analysis for Article III standing when a lead plaintiff has no viable loss causation theory, and thus cannot show it has a redressable injury.  Because an interlocutory appeal of this threshold issue can resolve this case completely, there is no reason to wait until after what could be years of costly litigation to resolve this question.

## II.    ARGUMENT

### A.  The Standing Issue Is A Controlling Question Of Law

**1.  The question presented is a question of law**.  Lead Plaintiff incorrectly argues that defendants seek certification of a "mixed question of law and fact."  Dkt. No. 223 ("Pl. Opp.") at 1, 4. But the question defendants seek to appeal is decidedly a question of law:  whether a lead plaintiff lacks Article III standing when it cannot establish loss causation because its alleged injury, while allegedly traceable to defendants, cannot be redressed by any of the judicial relief the plaintiff seeks.

Defendants seek an appeal of this issue because they contend this Court erred when it applied an Article III standing analysis like the one used in *MacPhee v. MiMedx Group*, 73 F.4th 1220 (11th Cir. 2023).   To establish standing, a plaintiff must show (1) it suffered a "concrete" and "particularized" injury, (2) the injury "was caused by the defendant," and (3) "the injury would likely be redressed by the requested judicial relief."  Dkt. No. 212 at 5.  In *MacPhee*, the Eleventh Circuit held that, when a lead plaintiff owns a company's stock that drops in price, the plaintiff can still have Article III standing even though it has no viable loss causation theory through which it can recover.  *See MacPhee*, 73 F.4th at 1240.  This Court adopted the same analysis, concluding that Lead Plaintiff has standing because it "suffered a loss and identif[ied] plausible links in a chain of causation … showing that Defendants' wrongful conduct is at least a part of the cause of the injury."  Dkt. No. 212 at 10.

This legal framework wrongly assumes that redressability for Article III purposes exists so

long as a traceable injury exists. That assumption squarely conflicts with other Circuit and district court decisions (*see infra*), and the Ninth Circuit has not yet addressed this issue. *See*, *e.g.*, *In re Silver Lake Grp., LLC Sec. Litig.*, 2024 WL 3515766, at *5 (9th Cir. July 24, 2024) (upholding standing but not addressing redressability). Defendants, therefore, seek certification so that the Ninth Circuit can answer this legal question and rule on whether a lead plaintiff without loss causation necessarily lacks Article III standing because its alleged injury is not redressable.

Lead Plaintiff contends this question is not a legal one because it requires the court of appeals to examine issues of fact. *See* Pl. Opp. at 2-3. But defendants do not seek certification so the Ninth Circuit can re-examine how the three-pronged Article III inquiry applies to the particular allegations in this case. Rather, they seek certification so that the court of appeals can examine, for the first time, whether a lead plaintiff with no viable loss causation theory can ever show that it has an injury that is both traceable and redressable. That is a pure legal question. *See*, *e.g.*, *U.S. v. Real Property & Improvements*, 2014 WL 1350914, at *2 (N.D. Cal. 2014) ("[w]hether a district court applied the correct legal standard" is a question of law under § 1292(b)).

**2. The legal question is also controlling**. Clearly, an appellate reversal of this Court's ruling on Article III standing would "result in dismissal of the case." *Omni MedSci v. Apple*, 2020 WL 759514, at *1 (N.D. Cal. 2020). Indeed, when this Court previously held that Lead Plaintiff lacked standing, the Court dismissed the case entirely—which is exactly what would happen if defendants were to prevail in their proposed appeal. *See* Dkt. No. 200.

Lead Plaintiff ignores this straightforward point. Instead, it argues its case could survive an appellate ruling in defendants' favor, claiming that there are sufficient allegations that "the proxy solicitation was materially misleading" and that Lead Plaintiff, which was entitled to vote on the merger, would still have standing to claim it was denied "the opportunity" to cast "a fully informed" vote. Pl. Opp. at 5-6. But this wrongly assumes Lead Plaintiff is like the plaintiff in *Stahl v. Gibraltar Financial*, 967 F.2d 335, 337 (9th Cir. 1992), who sued to enjoin a shareholder vote and thereafter unwind the corporate transaction. Lead Plaintiff has never sought a new vote in this case or to unwind the merger; it seeks only money damages. *See*, *e.g.*, Dkt. No. 175 ¶ 138 (operative complaint seeking "damages" for "economic loss"). Accordingly, a holding on appeal that a

-2-                                    Case No. 5:21-cv-06374-BLF

plaintiff who cannot show loss causation also cannot show standing because it has no injury that can be redressed with damages—the relief Lead Plaintiff actually seeks—would fully dispose of this case.  In any event, neither Lead Plaintiff nor the other plaintiff (Mr. Sherman) could obtain non-monetary relief for the proxy claim here because a § 14(a) claim that seeks "another vote" fails to meet the loss causation requirement and therefore fails as a matter of law.  *See Resnik v. Woertz*, 774 F.Supp.2d 614, 632 (D. Del. 2011).

**B.  <u>A Substantial Ground For Difference Of Opinion Exists</u>**

Lead Plaintiff is also wrong to contend that no substantial ground for difference of opinion exists here.  *See* Pl. Opp. at 6.  Courts disagree widely about whether a lead plaintiff with no loss causation in a securities class action can have Article III standing.

In *Brown v. Medtronic*, the Eighth Circuit rejected the assumption that if a lead plaintiff can trace its shareholder injury to the defendant's alleged fraud through an alleged price drop, then that injury must be redressable and thus sufficient for standing.  Instead, the *Brown* court held that it is legal error to "eliminate the redressability requirement."  628 F.3d 451, 457 (8th Cir. 2010).  In *Brown*, the Eighth Circuit was confronted with two sets of misrepresentations for two different products.  *See id*. at 453-55.  As to the first set, the plaintiff had sold all his shares before a news article revealed that the FDA had not approved the product's use, and so the Eighth Circuit held that the plaintiff's injury could not be traced to the defendants or redressed with any remedy because he had sold his stock at the inflated prices.  *See id*.  But it reached a different conclusion with respect to the second set of misrepresentations because the stockholder still held stock when the defendant revealed the truth by issuing a product recall.  *See id*. at 454.  Therefore, it held, the plaintiff had a "traceable *and* redressable injury sufficient to show standing" *Id.* at 459 (emphasis added).

In contrast, this Court, like the *MacPhee* court, assumed that if a plaintiff alleges that its injury from a stock price drop is traceable to an alleged fraud, then that injury must also be redressable.  Dkt. No. 212 at 10; *MacPhee*, 73 F.4th at 1240.  That standing analysis is directly at odds with the Eighth Circuit's decision in *Brown*.

That difference in legal approaches to the standing inquiry can lead to materially different results.  Here, Lead Plaintiff seeks only money damages for the "economic loss" that it alleges was

the "direct result of Defendants' misconduct" and the "decline in the value of [View's] stock" when alleged misrepresentations were revealed. Dkt. No. 175 at ¶ 138. But Lead Plaintiff's § 14(a) proxy fraud claim is not redressable with that relief. For that claim, Lead Plaintiff alleges the "truth" about the alleged fraud was "revealed" in August and November 2021, well after the supposedly tainted proxy vote in March. *See id*. at ¶¶ 128-30. And Lead Plaintiff sold all the shares it held on the January 27, 2021 record date by March 9, the day after the vote. *See* Dkt. No. 175-2.

Under the legal framework adopted by this Court and *MacPhee*, Lead Plaintiff can be deemed to have standing for its § 14(a) claim simply because it alleges a false proxy and a stock price drop. But that ignores that the remedy Lead Plaintiff seeks—compensation for the price inflation from the alleged fraud—cannot redress its alleged injury. No money damages can redress that injury because Lead Plaintiff held and sold its stock at "inflated" prices, before any "truth" was "revealed." Therefore, under the legal framework used by *Brown* and other courts, Lead Plaintiff would have no standing. *See Brown*, 628 F.3d at 458; *Denning v. Bond Pharmacy*, 50 F.4th 445, 451-52 (5th Cir. 2022) (no standing where injury "not redressable by the damages [plaintiff] seeks"); *Doyle v. Town of Litchfield*, 372 F. Supp. 2d 288, 302-03 (D. Conn. 2005) (similar).

Notably, the Eighth Circuit is not the only court that disagrees with this Court's legal approach to standing in a loss causation case. Two courts in this District also have concluded that investors who fail to establish loss causation lack standing. *See In re Impax Labs. Sec. Litig.*, 2008 WL 1766943, at *6-7 (N.D. Cal. 2007); *In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 394 (N.D. Cal. 2009). And the Sixth Circuit held in *Taylor v. KeyCorp.* that a plaintiff who failed to allege that defendants caused her losses lacked standing because "the question whether [s]he has a cognizable injury sufficient to confer standing is closely bound with the question of whether and how the law will grant [her] relief." 680 F.3d 609, 613 n.3 (6th Cir. 2012). Lead Plaintiff tries to distinguish those cases on their facts (Pl. Opp. at 7-8), but it is the difference in the legal framing of the standing inquiry in those cases that matters for purposes of deciding whether to certify an appeal.

To be sure, defendants recognize that this Court found *Brown* to support its holding that Lead Plaintiff has standing. Dkt. No. 212 at 10. In *Brown*, the plaintiff held stock when the price fell 10-12% on news of the product recall (for the second product), and so the Eighth Circuit held

that the plaintiff had standing, but emphasized it was "neither analyzing damages nor requiring a plaintiff to prove proximate cause" (628 F.3d at 459)—a point cited by this Court in its reconsideration ruling.  But that *Brown* analysis is inapposite because the product recall in *Brown*, which occurred before the plaintiff sold its stock, was a cognizable, standalone corrective disclosure—it established a traceable injury that could also be redressed.  *Id*. at 459.  That is not true for the August 2021 disclosure of the internal investigation in this case, which also preceded stock sales.  As this Court has held, that disclosure was not "sufficient" to act as a corrective disclosure. Dkt. No. 168.  Therefore, while an injury from the August stock price decline may be traceable to defendants' conduct, it is not legally redressable because Lead Plaintiff "cannot attribute its losses to the August 16, 2021 announcement."  Dkt. No. 214 at 17.

**C.  <u>An Interlocutory Appeal Would Materially Advance This Litigation</u>**

Lead Plaintiff also argues that the material advancement of litigation prong cannot be satisfied by just showing the "appeal could resolve the entire case," because otherwise "essentially all … dispositive interlocutory orders would be automatically appealable." Pl. Opp. at 9 (citation omitted).  That is incorrect.  It is well established that if an appeal can resolve a case in its entirety, it would materially advance the litigation.  *See, e.g.*, *Core Optical Techs. v. Juniper Networks*, 2021 WL 5978761, at *1 (N.D. Cal. 2021).  Indeed, the Ninth Circuit has upheld certification when the appeal would not even resolve the whole case, but could limit the claims or reduce the number of parties.  *See Reese v. B.P. Exploration*, 643 F.3d 681, 688 (9th Cir. 2011).  The cases Lead Plaintiff cites are too unique to be relevant here—*Henley v. Jacobs* was a "garden-variety" case about to go to trial (2019 WL 8333448, at *3 (N.D. Cal. 2019)) and the defendant in *Dillon v. Murphy & Hourihane* openly acknowledged it was not seeking to advance the case with the appeal, but only to "clarify" Ninth Circuit law (2014 WL 5408416, at *1 (N.D. Cal. Oct. 22, 2014).

**D.  <u>A Stay Would Promote Judicial Economy And Impose No Burden</u>**

Although Lead Plaintiff asserts generically that it will be prejudiced by a stay, it offers nothing to support that claim.  The parties have litigated for over three years.  And while a brief delay to litigate an appeal that could end the case would not harm Lead Plaintiff, continuing to litigate a case whose plaintiff has lacked standing from the start would clearly prejudice defendants.

-5-                                          Case No. 5:21-cv-06374-BLF

Dated:  August 2, 2024                    Respectfully submitted,


By:      /s/ John W. Berry                By:      /s/ Ryan Keats
    John W. Berry                             Anna Erickson White
    John M. Gildersleeve                      Ryan Keats
    MUNGER, TOLLES & OLSON LLP                MORRISON & FOERSTER LLP
    *Attorneys for View, Inc., f/k/a CF Finance*    *Attorneys for Defendant Vidul Prakash*
    *Acquisition Corp. II, and Rao Mulpuri*

By:      /s/ Jeffrey L. Steinfeld
    Jeffrey L. Steinfeld
    James P. Smith III (pro hac vice)
    WINSTON & STRAWN LLP
    *Attorneys for Defendants Howard W.*
    *Lutnick, Paul Pion, Alice Chan, Anshu Jain,*
    *Robert J. Hochberg, Charlotte S. Blechman,*
    *CF Finance Holdings II, LLC, Cantor*
    *Fitzgerald & Co., Cantor Fitzgerald, L.P.,*
    *and CF Group Management, Inc.*


## ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


Dated:  August 2, 2024              By:      /s/ John W. Berry
                                        John W. Berry

DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY
FOR INTERLOCUTORY APPEAL AND STAY PENDING APPEAL