Case No. _____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VIEW, INC. F/K/A CF FINANCE ACQUISITION CORP. II; RAO MULPURI; VIDUL
PRAKASH; HOWARD W. LUTNICK; PAUL PION; ALICE CHAN; ANSHU JAIN; ROBERT J.
HOCHBERG; AND CHARLOTTE S. BLECHMAN,
*Petitioners*,

*vs.*

STADIUM CAPITAL LLC;
DAVID SHERMAN,
*Respondents*.

On Petition for Permission to Appeal an Order of the
United States District Court for the Northern District of California
No. 5:21-CV-06374-BLF
Hon. Beth Labson Freeman

## PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)

John W. Berry (admission pending)
John M. Gildersleeve
MUNGER, TOLLES & OLSON LLP
  350 South Grand Avenue
  50th Floor
  Los Angeles, CA 90071
  Telephone:  (213) 683-9100
  John.Gildersleeve@mto.com

*Counsel for Petitioners View, Inc.
f/k/a CF Finance Acquisition Corp. II
and Rao Mulpuri*

Jeffrey L. Steinfeld
James P. Smith (admission pending)
WINSTON & STRAWN LLP
  333 South Grand Avenue
  38th Floor
  Los Angeles, CA 90071
  Telephone:  (213) 615-1700
  JLSteinfeld@winston.com

*Counsel for Petitioners Howard W.
Lutnick, Paul Pion, Alice Chan, Anshu
Jain, Robert J. Hochberg, and Charlotte
S. Blechman*

*Additional counsel listed on next page*

Anna Erickson White
Ryan Keats
MORRISON & FOERSTER LLP
  425 Market Street
  San Francisco, CA 94105
  Telephone:   (415) 268-7000
  RKeats@mofo.com

*Counsel for Petitioner Vidul Prakash*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Petitioner View, Inc. f/k/a CF Finance Acquisition Corp. II states that View, Inc. has no parent corporation and no publicly held corporation holds 10% more of the stock or membership interests in View, Inc.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ......................................................... I

INTRODUCTION ........................................................................................... 1

JURISDICTIONAL STATEMENT .......................................................................3

QUESTION PRESENTED ..................................................................................4

STATEMENT OF THE CASE.............................................................................4

ARGUMENT ...............................................................................................10

I.    THE ORDER INVOLVES A CONTROLLING QUESTION OF
      LAW ................................................................................................10

II.   RESOLUTION OF THE QUESTION WOULD MATERIALLY
      ADVANCE THE TERMINATION OF THE LITIGATION .......................12

III.  THERE ARE SUBSTANTIAL GROUNDS FOR DISAGREEMENT
      WITH THE DISTRICT COURT'S HOLDING THAT A PLAINTIFF
      CAN HAVE ARTICLE III STANDING IF IT LACKS A VIABLE
      LOSS-CAUSATION THEORY ................................................................13

CONCLUSION .............................................................................................19

CERTIFICATE OF SERVICE ..........................................................................21

CERTIFICATE OF COMPLIANCE....................................................................22

STATEMENT OF RELATED CASES .................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ............................................................... 11

*Bennett v. Spear*,
520 U.S. 154 (1997) ............................................................................. 14

*Brown v. Medtronic, Inc.*,
628 F.3d 451 (8th Cir. 2010) ........................................................ 17, 18

*Canela v. Costco Wholesale Corp.*,
971 F.3d 845 (9th Cir. 2020) .............................................................. 19

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) .............................................................. 14

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) ..................................................... 12, 13

*Central Delta Water Agency v. United States*,
306 F.3d 938 (9th Cir. 2002) .............................................................. 19

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) .............................................................. 13

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................. 8, 14, 16

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ............................................................. 17

*In re Impax Labs., Inc. Sec. Litig.*,
2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ............................. 15, 16

*In re Infineon Techs. AG Sec. Litig.*,
266 F.R.D. 386 (N.D. Cal. 2009) ........................................................ 16

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020) ............................................................ 18

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) ........................................................8, 12

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) .............................................................14

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ................................................................5

*MacPhee v. MiMedx Group, Inc.*,
  73 F.4th 1220 (11th Cir. 2023) ......................................................17, 18

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) .............................................................14

*Mineworkers' Pension Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018) ..............................................................14

*Polar Int'l Brokerage Corp. v. Reeve*,
  187 F.R.D. 108 (S.D.N.Y. 1999) .........................................................13

*Porter v. Mabus*,
  2014 WL 669778 (E.D. Cal. Feb. 20, 2014) ......................................11

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ..........................................10, 12, 13, 15

*In re Silver Lake Grp. LLC Sec. Litig.*,
  108 F.4th 1178 (9th Cir. 2024) ...........................................................19

*Taylor v. KeyCorp*,
  680 F.3d 609 (6th Cir. 2012) ..............................................................17

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020)............................................................................10

*United States v. Real Property & Improvements*,
  2014 WL 1350914 (N.D. Cal. Apr. 4, 2014).......................................11

*United States v. Woodbury*,
  263 F.2d 784 (9th Cir. 1959) ..............................................................12

*Warth v. Seldin*,
    422 U.S. 490 (1975)........................................................................................16

*Williams v. Sisolak*,
    2024 WL 194180 (9th Cir. Jan. 18, 2024).........................................................14

## FEDERAL STATUTES

15 U.S.C. § 78j(b)........................................................................................4, 6, 8, 14

15 U.S.C. § 78n(a)........................................................................................4, *passim*

28 U.S.C. § 1292(b)........................................................................................1, *passim*

## FEDERAL RULES

Fed. R. App. P. 5(a)(2)........................................................................................3

## INTRODUCTION

This case presents a novel question of Article III standing in a securities class action—a paradigmatic legal issue best resolved through an interlocutory appeal under Section 1292(b). The question identified by the district court in its Section 1292(b) certification order is whether a plaintiff with no viable loss-causation theory can have Article III standing to bring securities-fraud claims. That question is the subject of serious debate. It has divided district courts within the Ninth Circuit. And courts of appeals across the country have disagreed on the relevant standing analysis as well. In fact, the district court in this case first answered the question one way and then later reversed itself. The resolution of the question can dispose of this case. And the issue has far-reaching consequences not just for this case but for all securities cases within the Ninth Circuit. It will determine whether a shareholder who cannot plead a causal connection between his losses and a company's alleged misrepresentations can still plead constitutional standing to bring a lawsuit, on his own behalf or on behalf of a class.

This is a federal securities class action arising out of the merger between View, Inc. ("View") and CF Finance Acquisition Corp. II ("CF II"), a special purpose acquisition company formed for the purpose of acquiring a target company and taking that company public. The putative lead plaintiff, who is a respondent here, claims that certain statements made in the run-up to the merger and in

subsequent public filings about View's warranty-accrual accounting were false and misleading.

But the lead plaintiff's case faces a threshold jurisdictional obstacle. The district court held that the lead plaintiff has no viable loss-causation theory because the lead plaintiff cannot show that its losses were caused by the correction of any allegedly misleading statement—a fundamental prerequisite to establishing any of its securities-fraud claims. The district court therefore dismissed the complaint on the ground that the lead plaintiff lacked standing. Because the lead plaintiff lacked standing, the district court also held that the lead plaintiff could not add a new plaintiff to the case to try to cure its loss-causation problem. But after the lead plaintiff sought reconsideration, the district court reversed course, held that the lead plaintiff had Article III standing even though it lacked a viable loss-causation theory, and allowed the case to proceed with the newly added plaintiff.

The district court then certified its reconsideration order for interlocutory appeal, concluding that all three prongs of 28 U.S.C. § 1292(b) are satisfied. As the district court explained, the issue of whether a plaintiff with no viable loss-causation theory can have Article III standing is a pure issue of law, and resolving that issue will decide whether this case is dismissed or goes forward. The issue is therefore controlling, and resolving it will materially advance the termination of the litigation.

2

Further, as the district court acknowledged, substantial grounds for disagreement on the issue undoubtedly exist. This Court has not previously addressed the interplay between loss causation for a federal securities claim and the requirements of Article III standing. And courts within this Circuit—including the district court in its orders in this very case—have reached opposite outcomes as to whether a securities plaintiff that lacks a viable loss-causation theory also lacks Article III standing.

This case therefore presents a disputed and important issue of law that, if answered in petitioners' favor, will terminate the case. Because all three requirements of Section 1292(b) are met, petitioners respectfully request that the Court grant the petition for permission to appeal.

## JURISDICTIONAL STATEMENT

On August 8, 2024, the district court granted defendants' motion to certify for interlocutory review under Section 1292(b) the court's June 12, 2024 order that granted the lead plaintiff's motion for reconsideration. Dkt. No. 227 ("Certification Order," attached as Exhibit B), at 4-5.[1] This petition is timely filed within ten days of the Certification Order. 28 U.S.C. § 1292(b); *see also* Fed. R. App. P. 5(a)(2).

---

[1] All references to "Dkt. No." in this brief are to the docket in the district court (N.D. Cal. No. 21-CV-06374).

3

## QUESTION PRESENTED

Whether a lead plaintiff who lacks a viable loss-causation theory can still have Article III standing to bring securities-fraud claims.

## STATEMENT OF THE CASE

View became a publicly traded company in March 2021 after a merger with CF II, a special purpose acquisition company or "SPAC."  Dkt. No. 200, at 1.  In August 2021, Asif Mehedi, an alleged former shareholder of View and CF II, filed this putative securities class action, asserting claims against some of the petitioners here: View and two View officers.  Dkt. No. 1.  On February 8, 2022, the district court appointed Stadium Capital LLC to be lead plaintiff under the Private Securities Litigation Reform Act of 1995.  Dkt. No. 67.  The court found that Stadium Capital was the lead-plaintiff candidate with the largest financial interest in the case, based on Stadium Capital's theory of losses.  *Id.*

Stadium Capital then filed an amended complaint.  That complaint added defendants, including the former members of the board of directors of CF II (the remaining petitioners here), and claimed that defendants including View and the two View officer defendants violated Section 10(b) of the Securities Exchange Act of 1934 by allegedly making misleading statements in SEC filings throughout the class period.  Dkt. No. 96.  The complaint also claimed that certain defendants violated Section 14(a) of the Exchange Act by allegedly making misleading

statements in the proxy statement for the View-CF II merger.  The complaint sought money damages; although Stadium Capital alleged the proxy statement issued in connection with the View-CF II merger was misleading, Stadium Capital did not seek to enjoin that merger.

On May 23, 2023, the district court granted the defendants' motions to dismiss the amended complaint with leave to amend.  Dkt. No. 168.  The district court identified several flaws in the pleading, including that Stadium Capital could not establish loss causation on the facts alleged.  The court explained that Stadium Capital's loss-causation theory for the Section 10(b) claim—that Stadium Capital had been harmed by a stock-price drop following View's August 16, 2021 announcement of an audit-committee investigation into its warranty-accrual accounting—was "insufficient" because the mere "announcement of an investigation … does not qualify as a corrective disclosure."  *Id*. at 35 (quoting *Loos v. Immersion Corp.*, 762 F.3d 880, 890 n.3 (9th Cir. 2014)).  The court also held that Stadium Capital's Section 14(a) loss-causation theory failed because Stadium Capital sold the shares it had held at the time of the merger "months before" the purported correction of the statements that were allegedly misleading in the merger proxy statement.  *Id.* at 24-25.

Stadium Capital filed a second amended complaint on August 21, 2023. Dkt. No. 175.  In an effort to cure its loss-causation problems, Stadium Capital—

without leave of the district court—added "additional plaintiff" David Sherman on the caption and alleged that he held his View shares throughout the class period. Stadium Capital also alleged that View's November 9, 2021 announcement of the conclusion of its internal investigation was another corrective disclosure, in addition to the initial announcement of the investigation in August 2021. *Id.* ¶¶ 129, 130. Stadium Capital's second amended complaint again alleged claims under Section 10(b) and Section 14(a) of the Exchange Act and sought "economic loss, i.e. damages, suffered by Plaintiffs and other members of the Class." *Id.* ¶ 138.

On April 9, 2024, the district court granted defendants' motions to dismiss the second amended complaint without leave to amend and entered judgment for defendants. Dkt. Nos. 200, 201. The court again held that Stadium Capital had no viable loss-causation theory. Dkt. No. 200, at 14, 16. As to the Section 10(b) claim, the court reasoned that, even if View's November 9, 2021 announcement revealed the truth of View's warranty-accrual issues to the market, Stadium Capital could not show that it was injured by that disclosure because it had sold its shares in September 2021. *Id.* at 14; Dkt. No. 175-2, at 3. In other words, because Stadium Capital sold its shares of View before the alleged November 2021 corrective disclosure, Stadium Capital "sold its stock before the truth … was revealed" and "was not injured by the alleged misrepresentations." Dkt. No. 200,

at 14.  And as to the Section 14(a) claim, the district court reasoned that it

remained the case that Stadium Capital had sold all shares that it held as of the

time of the merger well before any truth was allegedly revealed.  *Id*. at 15-16.  The

district court therefore concluded that no amount of re-pleading could change the

fact that Stadium Capital did not, as a matter of law, suffer any harm at the

operative times to establish loss causation.

On that basis, the court concluded that Stadium Capital lacked standing to

proceed with this suit.  In the court's words, because Stadium Capital did not suffer

harm from defendants' alleged conduct, Stadium Capital "never had standing to

pursue the § 10(b) claim" and "never had standing to pursue the § 14[(a)] claim."

*Id.* at 14, 15-16, 18.

The district court also rejected Stadium Capital's attempt to add David

Sherman as a plaintiff to try to cure the loss-causation problem.  Unlike Stadium

Capital, which cannot allege loss causation given its stock transaction history, Mr.

Sherman is alleged to have held his (relatively small) holdings of View stock

during the entire class period and never sold.  But the court ruled that a new

plaintiff like Mr. Sherman could not be added "to save a lawsuit from dismissal

where the sole named plaintiff never had standing."  *Id.* at 15, 17-18 (citing

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003)).

Stadium Capital filed a motion for reconsideration of the Article III standing question, which the district court granted on June 12, 2024. Dkt. No. 212 ("Reconsideration Order," attached as Exhibit A). The court agreed with Stadium Capital that "loss causation is a 'separate and more demanding' standard than the 'fairly traceable' element of Article III standing." *Id.* at 7. The court recognized that *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), which addressed loss causation in securities cases, had set out a rule of "pure logic" to analyze when a misrepresentation "will not have led to any loss," *id.* at 342, and that courts could properly rely on that analysis "to determine whether a plaintiff has Article III standing." Reconsideration Order at 7-8. But even though the district court recognized that the loss causation and Article III standing inquiries overlapped, it declined to follow *Dura* for purposes of evaluating Article III standing in this case. *Id.*

The court ultimately ruled that, even though Stadium Capital lacks a viable loss-causation theory, Stadium Capital nonetheless "has Article III standing to pursue its Sections 10(b) and 14(a) claims." *Id.* at 9. The court stated that, because Stadium Capital allegedly "suffered a loss" from its sales of View stock and "identifi[ed] plausible links in a chain of causation linking showing that Defendants' wrongful conduct is at least a part of the cause of the injury," Stadium Capital had adequately pleaded Article III standing. *Id.* at 10-11.

8

On June 28, 2024, the court issued an amended order granting in part and denying in part defendants' motions to dismiss the second amended complaint. Dkt. No. 214.  The court again held that Stadium Capital could not establish loss causation for its Section 10(b) or Section 14(a) claims, because it "was not injured by the alleged misrepresentations." *Id.* at 17, 29.  But in light of the Reconsideration Order, the court held that Stadium Capital nevertheless had standing to bring at least one of those claims.  *Id.* at 11.  And because Stadium Capital had standing for at least one claim, the court concluded that Stadium Capital could keep the case alive by adding David Sherman, who could adequately allege loss causation, as an "additional plaintiff[]."  *Id.* at 11-12.

On August 8, 2024, the district court granted defendants' motion to certify the Reconsideration Order for interlocutory appeal under Section 1292(b).  *See* Certification Order.  The court concluded that "[w]hether a lead plaintiff who lacks a viable loss causation theory can still have Article III standing to bring securities fraud claims" is "a pure question of law"; that there is "substantial ground for difference of opinion" on that question, noting its own "struggle[]" with the issue; and that an appeal would materially advance the case because a "successful appeal … would require dismissal of the entire case." *Id.* at 2-4.  The court also stayed the case pending conclusion of appellate proceedings. *Id.* at 4.

# ARGUMENT

Certification of an order for immediate interlocutory appeal under Section 1292(b) is appropriate where the order "'involves a controlling question of law as to which there is substantial ground for difference of opinion' and where 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'"  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011) (quoting 28 U.S.C. § 1292(b) and accepting certification following grant of motion for reconsideration).  As the district court concluded in the Certification Order, all three requirements are satisfied here.

## I.      The Order Involves A Controlling Question Of Law

To establish Article III standing, a plaintiff must show that (1) it suffered a "concrete" and "particularized" injury, (2) the injury "was caused by the defendant," and (3) "the injury would likely be redressed by the requested judicial relief."  *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020).  As the district court correctly held, the question of whether a lead plaintiff who lacks a viable loss-causation theory can still have Article III standing to bring securities-fraud claims is both a paradigmatic question of law and controlling in this and other similar cases.

First, the question is one of law under Section 1292(b) because this Court "could decide [it] quickly and cleanly without having to study the record."

10

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000).  As the district court correctly noted, "[s]tanding is a constitutional gateway issue, and as such, it is a question of law."  Certification Order at 2.  Whether a plaintiff unable to allege loss causation can still have Article III standing to sue is an abstract question that goes beyond "the details of the evidence of facts" in this case and so would be of "general relevance to other" securities class actions.  *Porter v. Mabus*, 2014 WL 669778, at *2 (E.D. Cal. Feb. 20, 2014).

Moreover, the question presented here does not require the Court to examine disputed issues of fact or retread the application of well-worn law to new facts. Petitioners seek permission to appeal so that this Court can examine, for the first time, whether a lead plaintiff with no viable loss-causation theory can show that it has an injury that is both traceable to defendants' conduct and redressable.  That is a pure legal question.  *See, e.g.*, *United States v. Real Property & Improvements*, 2014 WL 1350914, at *2 (N.D. Cal. Apr. 4, 2014) ("[w]hether a district court applied the correct legal standard" is a question of law under § 1292(b)).

Second, the standing question in this case is controlling.  "[A]ll that must be shown in order for a question [of law] to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court."  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).  There can be no doubt that the threshold question of Article III standing to sue meets this

standard.  *See United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959) (questions of "jurisdiction" are "legal questions which, if decided in favor of the appellant, would end the lawsuit").  As the district court stated, "[a] reversal on appeal would mean that Stadium Capital does not have standing to pursue any of its claims, which this Court already determined would require dismissal of the entire action under *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003)."  Certification Order at 2.  "Therefore, this action would be materially affected by the Ninth Circuit's resolution of the standing issue."  *Id.*

## II. Resolution Of The Question Would Materially Advance The Termination Of The Litigation

Resolving the controlling question of law presented in this case would "materially advance the termination of the litigation."  28 U.S.C. § 1292(b). Although that standard can be satisfied even when resolution of a question does not "have a final, dispositive effect on the litigation," *Reese*, 643 F.3d at 688, here "a successful appeal regarding [the] constitutional gateway issue would require dismissal of the entire case," Certification Order at 3.  It cannot be denied that dismissal materially advances the termination of the litigation—indeed, it constitutes that termination.

Moreover, a successful appeal at this juncture likely would terminate the suit in the most efficient manner by "appreciably shorten[ing] the time, effort," and "expense of conducting" the lawsuit.  *In re Cement Antitrust*, 673 F.2d at 1027.

12

Absent reversal of the order that the district court has certified for appeal, petitioners will incur significant costs in litigating this action and engaging in extensive discovery with the lead plaintiff. *See id.*; *see also Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 118 (S.D.N.Y. 1999) ("most securities class actions" have "the potential to be complex, lengthy, and expensive" due to "costly and lengthy discovery").

III.    **There Are Substantial Grounds For Disagreement With The District Court's Holding That A Plaintiff Can Have Article III Standing If It Lacks A Viable Loss-Causation Theory**

The controlling legal question presented in the order certified by the district court also satisfies the remaining statutory factor because "there is substantial ground for difference of opinion" regarding the district court's conclusion. 28 U.S.C. § 1292(b). The "controlling law is unclear," *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010), and "reasonable jurists" can and have "disagree[d] on [the] issue's resolution," *Reese*, 643 F.3d at 688.

The district court recognized that there is a substantial ground for difference of opinion as to whether a plaintiff that cannot establish loss causation can nevertheless establish Article III standing. As the district court observed, this Court "has not addressed whether a plaintiff that fails to plead loss causation has Article III standing." Certification Order at 3. Although the district court noted that it had relied on a line of cases from this Court and the Supreme Court to

13

conclude that the lead plaintiff had standing, it cautioned against "oversimplify[ing] the legal issue," because "these authorities did not address the interplay between loss causation and Article III standing." *Id.*; *see* Reconsideration Order at 7 (citing *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (Article III standing for Endangered Species Act citizen-suits); *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (Article III standing for state-law claims against housing developers); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2008) (interplay between Article III standing and civil RICO statutory standing); *Williams v. Sisolak*, 2024 WL 194180, at *1 (9th Cir. Jan. 18, 2024) (unpublished opinion holding that no Article III standing existed where plaintiffs could not establish that their injuries were caused by defendants' actions); *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (Exchange Act case with no discussion of Article III standing); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (same); *Dura*, 544 U.S. at 346 (same)).

Absent clear guidance from this Court, the district court "struggled in analyzing the question, issuing two orders that reached" opposite "conclusions." Certification Order at 3. That the district court issued reasoned decisions coming out on both sides of the question is a powerful indication that there is a "credible basis for a difference of opinion" where "reasonable judges might differ." *Reese*, 643 F.3d at 688.

14

Moreover, although a substantial ground for difference of opinion can exist even absent prior authority inconsistent with the district court's ruling, *see Reese*, 643 F.3d at 688, here authority does exist that reaches a different conclusion on the Article III question.  For instance, in *In re Impax Laboratories, Inc. Securities Litigation*, 2008 WL 1766943 (N.D. Cal. Apr. 17, 2008), the court concluded that the plaintiff lacked standing on facts that are highly analogous to those here.  The plaintiff in *Impax*, which sold its shares in "August and October 2004," claimed that the defendants had partially revealed the truth underlying their alleged fraud in an August 2004 statement and then fully revealed the truth in November 2004.  *Id.* at *6-7.  Similar to the court's ruling here regarding the announcement of View's internal investigation, the *Impax* court concluded that the August 2004 statement in that case could not support loss causation because it did not "reveal[]" any of the underlying truth.  *Id.* at *6.  The court in *Impax* also ruled that the plaintiff lacked standing to bring any claim regarding the November 2004 disclosure because the plaintiff "sold all of its shares" before November 2004 and could not "have suffered loss as a result" of that disclosure.  *Id.* at *6-7; *see also* Dkt. No. 208, at 6-8 (collecting cases with similar holdings as to standing).  The court reasoned that Article III required the plaintiff to show "that it personally ha[d] been injured, 'not that injury has been suffered by other, unidentified members of the class.'"  *Impax*, 2008 WL 1766943, at *6 (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

15

The district court in *In re Infineon Technologies AG Securities Litigation*, 266 F.R.D. 386 (N.D. Cal. 2009), reached a similar conclusion to that in *Impax*. There, the court ruled that a plaintiff that was unable to show loss causation because it could not "show loss causally related to the defendants' misrepresentations" also lacked standing on that basis. *Id.* at 398.

Many of the seminal cases on which the district court relied here, including the Supreme Court's decision in *Dura*, were good law when *Impax* and *Infineon* were decided. *Impax* even relied on *Dura* to reach its result. *See Impax*, 2008 WL 1766943, at *7 (concluding that the plaintiff "cannot have suffered loss" under *Dura* and so lacked Article III standing); *see also Infineon*, 266 F.R.D. at 398 (similar). In other words, although the district court here concluded in the certified Reconsideration Order that "binding" authority compelled one result on the Article III standing question, reasoned decisions considering that same authority have reached the opposite result.

A substantial ground for difference of opinion also exists because other "circuits are in dispute on the question." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022). In *Taylor v. KeyCorp*, 680 F.3d 609 (6th Cir. 2012), the Sixth Circuit held that a plaintiff who failed to allege that the defendants caused losses to her stock holdings failed to establish Article III standing. *Id.* at 613. In contrast, the Eleventh Circuit concluded in *MacPhee v.*

16

*MiMedx Group, Inc.*, 73 F.4th 1220 (11th Cir. 2023), that a plaintiff can plead an Article III injury in a securities suit even if the defendants' alleged misrepresentations did not cause the plaintiff's losses as a matter of securities law. *Id.* at 1240, 1248.

In addition to disagreeing over whether a plaintiff can have standing where a defendant did not cause the plaintiff's losses, the courts of appeals also disagree over what makes an injury redressable for a plaintiff to have Article III standing. In *Brown v. Medtronic, Inc.*, 628 F.3d 451 (8th Cir. 2010), the Eighth Circuit stressed that it is legal error to "eliminate the redressability requirement" and held that a plaintiff lacked standing to bring certain claims where his injury could not be redressed by any remedy because he sold his stock before any alleged corrective disclosures.  *Id.* at 457-58.  By contrast, in *MacPhee*, the Eleventh Circuit assumed that a plaintiff in a securities case has a redressable injury so long as the plaintiff alleges that its injury from a stock price drop is traceable to an alleged fraud.  73 F.4th at 1240.

Here, the district court's analysis of Stadium Capital's standing followed *MacPhee* and assumed that if the alleged injury from a stock-price drop is traceable to an alleged fraud, then that injury must also be redressable by money

17

damages, even if the requested remedy is squarely unavailable as a matter of law.[2] Reconsideration Order at 10. But that approach, which has never been endorsed or even addressed by this Court, ignores that the remedy Stadium Capital seeks—compensation for the share-price inflation from the alleged fraud—cannot redress its alleged injury for either its Section 10(b) claim or its Section 14(a) claim. No money damages can redress those injuries because Stadium Capital "cannot attribute its losses to the August 16, 2021 announcement" or the November 2021 disclosure given that Stadium Capital sold its stock before those announcements allegedly revealed any truth to the market. Dkt. No. 214, at 17.

This Court has accepted for interlocutory appeal under Section 1292(b) a number of cases raising similar questions of standing. *See, e.g.*, *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 848 (9th Cir. 2020) (accepting Section 1292(b) appeal of Article III standing issue); *Juliana v. United States*, 947 F.3d 1159, 1166-67 (9th Cir. 2020) (same); *Central Delta Water Agency v. United States*, 306 F.3d 938, 946 (9th Cir. 2002) (same). This Court has likewise recently grappled with standing issues in the specific context of securities class actions. *See In re Silver Lake Grp. LLC Sec. Litig.*, 108 F.4th 1178, 1188-89 (9th Cir. 2024) (addressing requirements to plead Article III standing in insider-trading class action). This

---

[2] Petitioners do not concede that Stadium Capital has established that its injury is traceable to the alleged fraud.

case presents a similarly fundamental question of wide-ranging importance that merits this Court's review.

## CONCLUSION

For the foregoing reasons, petitioners respectfully request that the Court grant their petition for permission to appeal under 28 U.S.C. § 1292(b).

DATED:  August 16, 2024                   Respectfully submitted,

/s/ John M. Gildersleeve                       /s/ Jeffrey L. Steinfeld
  John W. Berry (admission pending)         Jeffrey L. Steinfeld
  John M. Gildersleeve                            James P. Smith (admission pending)
  MUNGER, TOLLES & OLSON LLP            WINSTON & STRAWN LLP
    350 South Grand Avenue                      333 South Grand Avenue
    50th Floor                                          38th Floor
    Los Angeles, CA 90071                       Los Angeles, CA 90071
    Telephone:  (213) 683-9100               Telephone:  (213) 615-1700
    John.Gildersleeve@mto.com               JLSteinfeld@winston.com

  Counsel for Petitioners View, Inc.          Counsel for Petitioners Howard W. Lutnick,
  f/k/a CF Finance Acquisition Corp.         Paul Pion, Alice Chan, Anshu Jain, Robert
  II and Rao Mulpuri[3]                            J. Hochberg, and Charlotte S. Blechman


/s/ Ryan Keats
  Anna Erickson White
  Ryan Keats
  MORRISON & FOERSTER LLP
    425 Market Street
    San Francisco, CA 94105
    Telephone:  (415) 268-7000
    RKeats@mofo.com

  Counsel for Petitioner Vidul
  Prakash

---

[3] Counsel attests that all other parties on whose behalf the filing is submitted concur in the filing's content.

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, I electronically filed the foregoing document with the United States Court of Appeals for the Ninth Circuit by using the CM/Dkt. system.  I further certify that I caused to be served the foregoing petition by both third party commercial carrier for delivery within 3 calendar days and via email on all parties required to be served, including:

Laurence D. King
Blair E. Reed
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
Emails: *lking@kaplanfox.com*
      *breed@kaplanfox.com*

Frederic S. Fox
Donald R. Hall
Jason A. Uris
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
Emails:  *ffox@kaplanfox.com*
      *dhall@kaplanfox.com*
      *juris@kaplanfox.com*

*Counsel for Lead Plaintiff Stadium Capital LLC*

 DATED:  August 16, 2024         */s/ John M. Gildersleeve*
                           John M. Gildersleeve
                           *Counsel for Petitioners View, Inc. and Rao Mulpuri*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the length limits permitted by Ninth Circuit Rules 5-2(b) and 32-3(2).  The petition is 4,301 words, excluding the portions exempted by Fed. R. App. P. 32(f), which does not exceed the 5,600 words allowed for this petition.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.


DATED:  August 16, 2024                    */s/ John M. Gildersleeve*
                                           John M. Gildersleeve
                                           *Counsel for Petitioners View, Inc. and*
                                           *Rao Mulpuri*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, petitioners state that they do not know of any related case pending in this Court.

DATED:  August 16, 2024          */s/ John M. Gildersleeve*

John M. Gildersleeve
*Counsel for Petitioners View, Inc. and*
*Rao Mulpuri*

# EXHIBIT A

1

2

3                       UNITED STATES DISTRICT COURT

4                     NORTHERN DISTRICT OF CALIFORNIA

5                             SAN JOSE DIVISION

6

7    ASIF MEHEDI, et al.,                    Case No.  21-cv-06374-BLF

8                    Plaintiffs,

9         v.                                 **ORDER GRANTING MOTION TO
                                             ALTER OR AMEND THE JUDGMENT
10   VIEW, INC., et al.,                      AND FOR RELIEF FROM A FINAL
                                             JUDGMENT, ORDER, OR
11                   Defendants.              PROCEEDING AND VACATING
                                             JUDGMENT**

12                                           [Re:  ECF No. 203]

13

14        Before the Court is Lead Plaintiff Stadium Capital LLC and named Plaintiff David

15   Sherman's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) and

16   for relief from a final judgment, order, or proceeding under Federal Rule of Civil Procedure 60(b).

17   ECF No. 203 ("Mot.").  Defendants other than View, Inc.[1] filed an opposition to the motion.  ECF

18   No. 208 ("Opp.").  Plaintiffs filed a reply.  ECF No. 211 ("Reply").  The Court took the motion

19   under submission without oral argument.  ECF No. 207; Civ. L.R. 7-1(b).

20        For the reasons below, the Court GRANTS the motion and VACATES the judgment.

21   **I.    BACKGROUND**

22        The background of this case is laid out in detail in the Court's Order granting the motion to

23   dismiss Plaintiffs' second amended complaint.  ECF No. 200 ("MTD SAC").  The Court will

24   provide an abbreviated version here.

25        This is a putative class action for securities fraud against View, Inc. and various

26   individuals connected to View's SEC filings.  Plaintiffs allege that, in various public filings from

27   _____

28   [1] Plaintiffs withdrew their motion with respect to View, Inc. in light of View's filing for Chapter
     11 bankruptcy.  ECF No. 205.

United States District Court
Northern District of California

1  November 20, 2020 to May 17, 2021, Defendants made material misrepresentations to investors

2  concerning a materially misstated and understated warranty accrual related to View's "smart

3  panels." *See, e.g.*, ECF No. 175 ("SAC") ¶¶ 87, 92.

4  On August 18, 2021, the initial complaint was filed in this case. *See* ECF No. 1

5  ("Compl."). On February 8, 2022, the Court appointed Stadium Capital LLC as Lead Plaintiff.

6  ECF No. 67. On July 15, 2022, Stadium Capital filed the first amended complaint. *See* ECF No.

7  96 ("FAC"). On May 2, 2023, the Court granted Defendants' motions to dismiss and dismissed all

8  of Stadium Capital's claims with leave to amend. *See* ECF No. 168. On August 21, 2023,

9  Stadium Capital filed the second amended complaint. *See* SAC. In addition to narrowing the

10  claims to a Section 14(a) claim, a Section 10(b) claim, and their Section 20(a) counterparts, the

11  second amended complaint changed the end of the class period from May 10, 2022 to November

12  9, 2021 and sought to add an additional Named Plaintiff: David Sherman. SAC ¶¶ 26–44.

13  On April 9, 2024, the Court granted Defendants' motions to dismiss without leave to

14  amend. *See* MTD SAC at 19–20. The Court found that, because Stadium Capital sold its shares

15  before the truth of the underlying falsehood was revealed, Stadium Capital was not injured by the

16  alleged misrepresentations and thus lacked standing to pursue any of its claims. *Id.* at 10–16.

17  Because the Court found that Stadium Capital did not have and never had standing to pursue its

18  claims, the addition of David Sherman was not permitted under established law. *See id.* at 16–19.

19  **II.    LEGAL STANDARD**

20  Under Federal Rule of Civil Procedure 59(e), a party may file a motion to alter or amend

21  judgment within 28 days after entry of the judgment. *See* Fed. R. Civ. P. 59(e). The Ninth Circuit

22  has identified "four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such

23  motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if

24  such motion is necessary to present newly discovered or previously unavailable evidence; (3) if

25  such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an

26  intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.

27  2011).

28  "Although Rule 59(e) permits a district court to reconsider and amend a previous order, the

United States District Court
Northern District of California

rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks and citation omitted). Rule 59(e) relief "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *See Kona*, 229 F.3d at 890 (emphasis in original).

Under Federal Rule of Civil Procedure 60(b), the Court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Mere dissatisfaction with the Court's order, or belief that the Court is wrong in its decision, are not grounds for relief under Rule 60(b). *Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981); *Beckway v. DeShong*, No. C07-5072 TEH, 2012 WL 1355744, at *2 (N.D. Cal. Apr. 18, 2012).

## III.    DISCUSSION

Plaintiffs argue that the Court's finding that Stadium Capital did not have standing was "clear error" under Fed. R. Civ. P. 59(e) or "mistake [or] inadvertence" under Fed. R. Civ. P. 60(b) because the Court conflated constitutional standing with statutory standing. Mot. at 1. More precisely, Plaintiffs argue that a failure to plead loss causation is an issue of statutory standing and, because Stadium Capital has constitutional standing, the addition of Sherman as a named plaintiff is appropriate. Mot. at 4–12. Defendants respond that Plaintiffs' motion is

1    procedurally improper because Plaintiffs failed to raise their standing arguments in their

2    opposition to the motion to dismiss. Opp. at 2–3. Defendants also argue that the order dismissing

3    the second amended complaint was correct and that Plaintiffs mischaracterized the law. *Id.* at 3–

4    11.

5         **A.    Whether Plaintiffs' Motion Is Procedurally Improper**

6         Defendants argue that Plaintiffs' motion is procedurally improper because it raises new

7    arguments for the first time that could have reasonably been raised in Plaintiffs' opposition to the

8    motions to dismiss. Opp. at 2–3. Plaintiffs respond that Defendants' arguments were related to

9    loss causation and that Defendants never argued that the August 2021 disclosure was not "fairly

10   traceable" to the alleged misstatements. Reply at 15.

11        "Reconsideration motions may not be used to raise new arguments or introduce new

12   evidence if, with reasonable diligence, the arguments and evidence could have been presented

13   during consideration of the original ruling." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th

14   849, 859 (9th Cir. 2022). To the extent that Defendants raised issues with standing, Defendants'

15   arguments were directed at loss causation and Defendant discussed standing in the last two

16   paragraphs of View's motion to dismiss, in a section arguing that David Sherman cannot be added

17   as a named plaintiff. *See* ECF No. 13. In considering the ambiguity in how the issue was raised

18   and the fact that Plaintiffs were tasked with responding to three separate motions to dismiss raising

19   a significant number of issues, a party exercising reasonable diligence may not have been

20   sufficiently on notice that View's loss causation arguments were directed at Stadium Capital's

21   standing to raise it to the Court in the opposition. Accordingly, the Court will consider Plaintiffs'

22   motion on the merits.

23        **B.    Whether the Order Dismissing the Second Amended Complaint Conflated
              Constitutional Standing and a Merits Inquiry**

24        Plaintiffs first argue that the standing inquiry under Fed. R. Civ. P. 12(b)(1) is distinct from

25   a statutory standing inquiry under Fed. R. Civ. P. 12(b)(6). Mot. at 4. Next, Plaintiffs argue that

26   loss causation is a merits inquiry that requires only dismissal for failure to state a claim rather than

27   a lack of standing. Mot. at 6–7. Defendants respond that Plaintiffs mischaracterize the relevant

28

United States District Court
Northern District of California

4

standard for assessing Article III standing at the pleading stage.  Opp. at 4–5.  Defendants also argue that many courts have held that a shareholder that fails to allege loss causation fails to meet the injury-in-fact and causation requirements for Article III standing.  *Id.* at 6–8.  Finally, Defendants argue that Plaintiffs' reliance on *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023), is misplaced because the Eleventh Circuit's analysis of the causation prong of Article III standing is inconsistent with the Ninth Circuit's standard.  *Id.* at 8–9.

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief."  *Thole v. U. S. Bank N.A*, 590 U.S. 538, 540 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560).  The second element requires the plaintiff to "demonstrat[e] that her injury-in-fact is . . . fairly traceable to the challenged action."  *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)).

As an initial matter, the Court observes that Plaintiffs' invocation of statutory standing in this context is inaccurate.  A "statutory" or "prudential" standing inquiry asks "whether the statute grants the plaintiff the cause of action that he asserts.  In answering that question, we presume that a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.'"  *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 196–97 (2017) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014)).  Analysis of a plaintiff's statutory standing requires a court to "determine, using traditional tools of statutory interpretation" whether a plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue [under a particular statute]."  *Lexmark*, 572 U.S. at 127–28.  A failure to plead statutory standing "shows a failure to state a claim, not a failure to establish standing."  *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023).  In this case, Defendants

United States District Court
Northern District of California

1   did not challenge, nor did the Court determine, whether Stadium Capital is a plaintiff authorized to

2   sue under the Securities Exchange Act.  In arguing that loss causation should not be considered in

3   analyzing Article III standing, Plaintiffs appear to have conflated a merits inquiry with a statutory

4   standing inquiry.  Although statutory standing is a merits inquiry, not every merits inquiry is a

5   question of statutory standing.  Plaintiffs have not pointed the Court to any authority that treats

6   loss causation for Sections 10(b) and 14(a) claims as a question of statutory standing.  In fact, the

7   few cases that the Court could find discussing statutory standing and loss causation treat the two

8   as distinct issues.  *See, e.g.*, *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390

9   F.Supp.3d 432, 446 (S.D.N.Y. 2019); *Zapien v. Washington Mut., Inc.*, No. 07CV385 DMS

10  (CAB), 2008 WL 11509010, at *2 (S.D. Cal. Jan. 17, 2008).  It is more accurate to characterize

11  Plaintiffs' position as arguing that loss causation is a merits inquiry that requires an analysis

12  distinct from that of Article III standing.  *See* Opp. at 6–7 (discussing cases that distinguish

13  between Article III standing and loss causation as a merits inquiry, rather than a statutory standing

14  inquiry) (citing *MacPhee*, 73 F.4th at 1240; *Am. Signature, Inc. v. Moody's Invs. Servs., Inc.*, No.

15  10 CIV. 5095 (PGG), 2023 WL 6661054, at *4 (S.D.N.Y. Oct. 12, 2023)).  Accordingly, the Court

16  must analyze whether Article III standing and loss causation require distinct analyses.

17          Plaintiffs distinguish Article III standing and loss causation in two ways.  First, Plaintiffs'

18  opening brief argues that the *Twombly* and *Iqbal* pleading standard applied in motions under Rule

19  12(b)(6) is inapplicable to a motion challenging Article III standing under Rule 12(b)(1).  Mot. at

20  4 (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)).  However, this position has

21  been expressly rejected by the Ninth Circuit.  Defendants raised a facial challenge to Stadium

22  Capital's standing, in which Defendants accepted as true Plaintiffs' allegations but asserted that

23  they were insufficient to invoke federal jurisdiction.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1121

24  (9th Cir. 2014) (distinguishing between a facial and factual challenge to jurisdictional allegations

25  in a complaint).  The Ninth Circuit has held that "[t]he district court resolves a facial attack as it

26  would a motion to dismiss under Rule 12(b)(6)."  *Id.*; *see also TransUnion*, 594 U.S. at 431 ("A

27  plaintiff must demonstrate standing 'with the manner and degree of evidence required at the

28  successive stages of the litigation.'" (quoting *Lujan*, 504 U.S. at 561)).  In fact, the Ninth Circuit

1   has acknowledged that the portion of *Maya v. Centex* on which Plaintiffs rely is no longer good

2   law. *See Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056 n.1 (9th Cir. 2023). It follows that

3   the Court did not err in applying the *Twombly* and *Iqbal* pleading standard in assessing whether

4   Stadium Capital has standing to pursue its Sections 10(b) and 14(a) claims.

5          Second, Plaintiffs refine their argument in their reply brief to state that loss causation is a

6   "separate and more demanding" standard than the "fairly traceable" element of Article III

7   standing. Reply at 3. On this ground, the Court agrees with Plaintiffs. Whether a plaintiff's

8   injury is "fairly traceable" to the defendant's conduct requires less than a showing of proximate

9   cause. *See Bennett v. Spear*, 520 U.S. 154, 168 (1997) (noting that proximate cause is not

10  equivalent to whether an injury is "fairly traceable" to the defendant); *Maya*, 658 F.3d at 1070

11  (noting that to establish causation for Article III standing, the plaintiff is not required to bear the

12  "heavy . . . burden" of demonstrating proximate cause); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519

13  F.3d 969, 975 n.7 (9th Cir. 2008) (noting that, while the plaintiff could not show proximate cause,

14  the plaintiff adequately alleged causation for Article III standing); *Williams v. Sisolak*, No. 22-

15  16859, 2024 WL 194180, at *1 (9th Cir. Jan. 18, 2024) ("Although [Article III causation] does not

16  require a showing of proximate cause, it does require plaintiffs to establish a line of causation

17  between defendants' action and their alleged harm that is more than attenuated." (internal

18  quotation marks omitted) (quoting *Maya*¸ 658 F.3d at 1070)). The loss causation requirement of

19  the Securities Exchange Act "requires no more than the familiar test for proximate cause."

20  *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018); *Lloyd v.

21  CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (same); *see also Dura Pharms., Inc. v.

22  Broudo*, 544 U.S. 336, 346 (2005) (discussing loss causation as a question of proximate cause). It

23  follows that the loss causation elements of Sections 10(b) and 14(a) claims require a distinct and

24  more demanding analysis than that of the causation prong of Article III standing.

25         The Court pauses to observe that other courts have appropriately relied on the loss

26  causation analysis in *Dura Pharmaceuticals* to determine whether a plaintiff has Article III

27  standing to bring a claim. *See, e.g.*, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010);

28  *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F.Supp.2d

United States District Court
Northern District of California

223, 237 (S.D.N.Y. 2012); *In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 398 (N.D. Cal. 2009); *In re Impax Lab'ys, Inc. Sec. Litig.*, No. C 04-04802 JW, 2008 WL 1766943, at *7 (N.D. Cal. Apr. 17, 2008).  It is not error to rely on *Dura Pharmaceuticals* to analyze Article III standing because that case announced a rule of "pure logic" by which courts may evaluate fraud-on-the-market theories of economic loss.  *Dura Pharms.*, 544 U.S. at 342.  Under that rule, if a plaintiff purchases shares at a price artificially inflated by a misrepresentation and sells those shares before the relevant truth begins to leak out, then the plaintiff will not have suffered any loss as a result of the misrepresentation because the plaintiff both purchased and sold the shares at the inflated rate. *Id.*  In such a situation, the fact that the plaintiff's loss cannot be attributable to the alleged misrepresentation is sufficient to show that the plaintiff's injury is not fairly traceable to the defendant's conduct for Article III standing *and* to show that the plaintiff fails to adequately allege loss causation and thus fails to state a claim.  *See Impax Lab'ys*, 2008 WL 1766943, at *7 (applying *Dura Pharmaceuticals* in analyzing loss causation and standing); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund*, 866 F.Supp.2d at 236 (same).  However, as the Court discusses in more detail in the following section, this case illustrates why loss causation and the Article III standing analysis should be treated distinctly.  This case includes factual allegations that may establish an injury that is fairly traceable to Defendants' conduct for Article III purposes but are not sufficient to plead loss causation.  *See Brown*, 628 F.3d at 457 (acknowledging that "[i]n most cases . . . a plaintiff's standing tracks his cause of action" but noting the importance of not conflating standing with the plaintiff's cause of action because "the concepts are not coextensive" (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009))); *MacPhee*, 73 F.4th at 1240 ("[W]hile a plaintiff may both lack standing and fail to state a claim, it is also true that a plaintiff can meet the requirement for constitutional standing but nonetheless fail to state a claim.").

Accordingly, the Court finds that its prior order granting the motions to dismiss Plaintiffs' second amended complaint for lack of Article III standing clearly erred or was the product of mistake or inadvertence because it analyzed only whether Plaintiffs had adequately alleged loss

1    causation but not whether Stadium Capital had Article III standing.[2]

2    **C.    Whether Stadium Capital Has Article III Standing**

3         The Court next addresses whether Stadium Capital has Article III standing under the

4    appropriate "fairly traceable" standard.  Plaintiffs argue that Stadium Capital has Article III

5    standing for Plaintiffs Section 10(b) claim because they have alleged that Stadium Capital held

6    View stock on August 16, 2021, the date that View announced that its Audit Committee began an

7    investigation into the adequacy of View's previously disclosed warranty accrual, and that View's

8    stock price fell the following day.  *See* Reply at 6, 15.  Plaintiffs also argue that Stadium Capital

9    has Article III standing for Plaintiffs' Section 14(a) claim because they have alleged that Stadium

10   Capital held stock as of January 27, 2021, the record date on which it was entitled to vote on the

11   merger.  *See* Mot. at 9–10.  Defendants do not directly address these facts.

12        "To establish causation, plaintiffs must allege that their injuries are 'fairly traceable' to [the

13   defendant's] conduct and 'not the result of the independent action of some third party not before

14   the court.'  Plaintiffs must thus allege a 'substantial probability' that [the defendant] caused the

15   harm they claim to have suffered."  *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517,

16   525 (9th Cir. 2023) (first quoting *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir.

17   2020); then quoting *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 452–53 (9th Cir. 2021)).

18   "A causation chain does not fail simply because it has several 'links,' provided those links are 'not

19   hypothetical or tenuous' and remain 'plausib[le].'"  *Maya*, 658 F.3d at 1070 (alteration in original)

20   (quoting *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir.2002)).

21        The Court finds that the facts alleged in this case with respect to Stadium Capital, although

22   not sufficient to allege loss causation, are sufficient to demonstrate that Stadium Capital has

23   Article III standing to pursue its Sections 10(b) and 14(a) claims.  The second amended complaint

24   alleges that Stadium Capital held 80,000 shares of CF II stock on January 27, 2021—the Record

25   Date on which holders of CF II class A common stock were entitled to vote on the proposed

26

27   ──────────────

28   [2] Because the Court relies on binding Ninth Circuit and Supreme Court authority to reach this conclusion, it need not address Defendants' argument that the Eleventh Circuit applies a different standard than the Ninth Circuit.  *See* Opp. at 8–9.

United States District Court
Northern District of California

merger between View and CF II.  *See* SAC ¶ 1; ECF No. 175-2 ("SAC Ex. B").  Stadium Capital sold its 80,000 shares on March 9, 2021, but it purchased more shares prior to August 16, 2021.  SAC Ex. B.  On August 16, 2021, View announced that its Audit Committee "began an independent investigation concerning the adequacy of the company's previously disclosed warranty accrual" and that View would not file its Form 10-Q for the second fiscal quarter of 2021.  SAC ¶ 128.  The following day, View's stock price fell $1.26, or over 24%, to close at $3.92.  *Id.*  Although Stadium Capital sold all of its shares on September 24, 2021—prior to the November 9, 2021 announcement that View's warranty accruals were materially misstated— Stadium Capital held View stock as of the August 16, 2021 announcement.  SAC Ex. B. Accepting the facts in the second amended complaint as true, the Court finds that Plaintiffs have adequately alleged that Stadium Capital suffered a loss and that the injury can be traced to the announcement of the investigation on August 16, 2021.  The Court finds *Brown v. Medtronic* instructive.  In *Brown*, the plaintiff alleged that in Fall 2007, shortly after the defendant issued a product recall, stopped marketing the product, and instructed physicians to cease new uses of the product, the stock price dropped.  *Brown*, 628 F.3d at 454.  The plaintiff sold his shares in May and June 2008, prior to a more dramatic price drop in Fall 2008.  *Id.* at 459.  The Eighth Circuit, emphasizing that it was not requiring the plaintiff to prove proximate cause, found that these allegations were sufficient to establish an injury that is fairly traceable to the wrongful act.  *Id.* Consistent with *Brown*, Court holds that the facts above, when accepted as true and all reasonable inferences are drawn in Plaintiffs' favor, are sufficient to establish Article III standing because they show that Stadium Capital suffered a loss and identify plausible links in a chain of causation linking showing that Defendants' wrongful conduct is at least a part of the cause of the injury.  In reaching this conclusion, the Court notes that it did not determine whether the August 16, 2021 disclosure is a corrective or partial corrective disclosure for loss causation and whether Stadium Capital's losses for shares it purchased after the January 27, 2021 Record Date were caused by misrepresentations in the proxy.  These are questions of proximate cause, and while answering them in the negative would show that Stadium Capital cannot state a claim under Sections 10(b) and 14(a), it is not necessary to reach these questions to determine whether Stadium Capital has

United States District Court
Northern District of California

1    Article III standing.

2        Because the Court finds that Stadium Capital has Article III standing to bring its Sections

3    10(b) and 14(a) claims, the Court also finds that *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350

4    F.3d 1018 (9th Cir. 2003) is inapplicable.  Accordingly, the Court will issue an amended order

5    addressing the other arguments raised in Defendants' motions to dismiss.

6    **IV.**     **ORDER**

7        For the foregoing reasons, IT IS HEREBY ORDERED that:

8        1.     Plaintiff Stadium Capital LLC and named Plaintiff David Sherman's motion to

9    alter or amend the judgment under Federal Rule of Civil Procedure 59(e) and for reconsideration

10    under Federal Rule of Civil Procedure 60(b) is GRANTED.

11        2.     The Judgment at ECF No. 201 is hereby VACATED.

12        3.     The Court will issue an Amended Order on Defendants' motions to dismiss that

13    addresses the other arguments for dismissal.

15    Dated:  June 12, 2024

16

17                         BETH LABSON FREEMAN
                            United States District Judge

United States District Court
Northern District of California

11

# EXHIBIT B

1

2

3            **UNITED STATES DISTRICT COURT**

4           **NORTHERN DISTRICT OF CALIFORNIA**

5                 **SAN JOSE DIVISION**

6

7    ASIF MEHEDI, et al.,                      Case No.  21-cv-06374-BLF

8                 Plaintiffs,
                                              **ORDER GRANTING MOTION FOR**
9           v.                                **CERTIFICATION OF**
                                              **INTERLOCUTORY APPEAL AND**
10   VIEW, INC., et al.,                       **STAY OF CASE**

11                Defendants.                  [Re:  ECF No. 219]

12

13          Before the Court is Defendants' motion for certification of an interlocutory appeal of the

14   Court's order granting Plaintiffs' motion to alter or amend the judgment and for relief from a final

15   judgment.  ECF No. 219 ("Mot."); ECF No. 212 ("Order").  Defendants also move for a stay

16   pending appeal.  Plaintiffs oppose the motion.  ECF No. 223 ("Opp.").  Defendants filed a reply.

17   ECF No. 226 ("Reply").  The Court finds the motion suitable for submission without oral

18   argument and VACATES the hearing scheduled for December 19, 2024.  *See* Civ. L.R. 7-1(b).

19          For the reasons stated below, the Court GRANTS the motion, CERTIFIES an interlocutory

20   appeal to the Ninth Circuit, and STAYS the case.

21   **I.     LEGAL STANDARD**

22          Generally, the United States Courts of Appeals have jurisdiction over appeals from "final

23   decisions of the district courts."  28 U.S.C. § 1291.  However, a district court may certify an order

24   for interlocutory review where (1) there is a controlling question of law upon which (2) there is a

25   substantial ground for difference of opinion, and (3) the immediate appeal of which will materially

26   advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b); *In re Cement Antitrust*

27   *Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).  The purpose of § 1292(b) is to provide "immediate

28   appeal of interlocutory orders deemed pivotal and debatable."  *Swint v. Chambers Cnty. Comm'n*,

United States District Court
Northern District of California

1    514 U.S. 35, 46 (1995).  Section 1292(b) certifications should be "applied sparingly and only in

2    exceptional cases."  *United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959).

3    **II.    DISCUSSION**

4           Defendants request that the Court certify its Order for interlocutory review by the Ninth

5    Circuit under 28 U.S.C. § 1292(b) based on the following question:  Whether a lead plaintiff who

6    lacks a viable loss causation theory can still have Article III standing to bring securities fraud

7    claims.

8           **A.    Controlling Question of Law**

9           Defendants argue that Article III standing is a controlling question of law that will

10   determine whether this case should proceed or be dismissed.  Mot. at 4–5.  Plaintiffs argue that the

11   Article III standing issue is not a pure question of law, but rather the application of settled law to

12   the facts of this case.  Opp. at 2–5.  Plaintiffs also argue that any question of law is not controlling

13   because Stadium Capital would still have Article III standing to pursue its claim under Section

14   14(a).  *Id.* at 5–6.

15          The Court agrees with Defendants.  Whether a plaintiff that cannot plead loss causation

16   might still have Article III standing is a pure question of law that does not depend on a material

17   dispute of fact.  Standing is a constitutional gateway issue, and as such it is a question of law.  *See*

18   *City of San Juan Capistrano v. California Pub. Utilities Comm'n*, 937 F.3d 1278, 1280 (9th Cir.

19   2019).  The Court also finds that this issue is controlling.  A reversal on appeal would mean that

20   Stadium Capital does not have standing to pursue any of its claims, which this Court already

21   determined would require dismissal of the entire action under *Lierboe v. State Farm Mut. Auto.*

22   *Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003).  *See* ECF No. 200 at 16–19.  Therefore, this action

23   would be materially affected by the Ninth Circuit's resolution of the standing issue.  *In re Cement*

24   *Antitrust*, 673 F.2d at 1026 ("[A]ll that must be shown in order for a question [of law] to be

25   'controlling' is that resolution of the issue on appeal could materially affect the outcome of

26   litigation in the district court.").  The Court thus finds that the first requirement for § 1292(b) is

27   satisfied.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.    Substantial Ground for Difference of Opinion**

Defendants argue that a substantial ground for difference of opinion exists because other courts have reached different conclusions on whether a plaintiff that fails to allege loss causation has Article III standing and that this Court has issued two different rulings on the issue.  Mot. at 6–8.  Plaintiffs argue that the controlling law is clear and that other courts reached different outcomes than this Court were presented with different facts.  Opp. at 6–8.

The Court finds a substantial ground for difference of opinion.  "To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear."  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).  The Ninth Circuit has not addressed whether plaintiff that fails to plead loss causation has Article III standing, and this Court clearly struggled in analyzing the question, issuing two orders that reached opposition conclusions.  To the extent that Plaintiffs argue that the controlling law is clear, and the Court's Order granting the motion to alter or amend the judgment merely applied settled law to existing facts, Plaintiffs oversimplify the legal issue.  The Court's analysis relied on cases that stand for the general proposition that the "fairly traceable" element of Article III standing is distinct from a showing of proximate cause, but these authorities did not address the interplay between loss causation and Article III standing.  *See* Order at 7.  The Court thus finds that the second requirement for § 1292(b) is satisfied.

**C.    Material Advance of the Ultimate Termination of the Litigation**

Defendants argue that an interlocutory appeal would materially advance the termination of the litigation because the Article III standing issue could resolve the entire case.  Mot. at 8–9.  Plaintiffs argue that an interlocutory appeal would not advance the litigation but would instead delay termination of the litigation given the time it will take to resolve the appeal.  Opp. at 9.

The Court finds that a successful interlocutory appeal would materially advance the termination of the litigation because, as the Court noted above, a successful appeal regarding this constitutional gateway issue would require dismissal of the entire case.  Under these circumstances, the Court finds that the third § 1292(b) requirement is satisfied.  *See Core Optical Techs., LLC v. Juniper Networks Inc.*, No. 21-CV-02428-VC, 2021 WL 5978761, at *1 (N.D. Cal.

3

Dec. 17, 2021) (noting that the third § 1292(b) requirement is met where a reversal on appeal would likely terminate the litigation).

### D. Request for a Stay

Defendants request that the Court stay this case while Defendants pursue an appeal because a stay would preserve judicial and party resources and that the equities favor a stay. Mot. at 9–10. Plaintiffs argue that Stadium Capital was not responsible for any delay in this case, and any further delay of this case would prejudice Plaintiffs and the putative class. Opp. at 9–10.

The Court agrees with Defendants that this case should be stayed pending resolution by the Ninth Circuit. Although the Court acknowledges that a stay would briefly delay the resolution of this case, if the parties were required to continue litigating this case, much of the efficiency and benefit of an interlocutory appeal would be lost. Accordingly, the Court STAYS this case pending a decision by the Ninth Circuit.

## III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' motion for certification of interlocutory appeal (ECF No. 219) of the Court's order granting Plaintiffs' motion to alter or amend the judgment and for relief from a final judgment is GRANTED.

   a. The Court certifies the following issue of controlling law, as to which there are substantial grounds for difference of opinion, the immediate appeal of which will materially advance the ultimate determination of the litigation, thus satisfying the statutory requirements of 28 U.S.C. § 1292(b): Whether a lead plaintiff who lacks a viable loss causation theory can still have Article III standing to bring securities fraud claims.

   b. The Court's order granting Plaintiff's motion to alter or amend the judgment and for relief from a final judgment (ECF No. 211) is hereby amended to include this Order.

   c. Defendants SHALL petition the Ninth Circuit for leave to proceed with the interlocutory appeal within 14 days of the date of this Order.

United States District Court
Northern District of California

4

2.     Defendants' request for a stay pending appeal is hereby GRANTED.  This case is hereby STAYED.  The parties SHALL file a joint status report within 14 days of the earlier of a Ninth Circuit decision denying leave to proceed with the interlocutory appeal or a Ninth Circuit decision ruling on the certified question.

Dated:  August 8, 2024

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

5