Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Emails: *lking@kaplanfox.com*
*breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
Emails: *ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium*
*Capital LLC, Plaintiff David Sherman and the*
*Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., AND CF GROUP MANAGEMENT, INC., <br><br> Defendants. | Case No.: 5:21-cv-06374-BLF <br><br> <u>**CLASS ACTION**</u> <br><br> **NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge: Hon. Beth L. Freeman <br> Courtroom: 1, 5th Floor <br> Date: July 24, 2025 <br> Time: 9:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 24, 2025, at 9:00 a.m., before the Honorable Beth Labson Freeman in Courtroom 1 of the United States District Court, 280 South 1st Street, San Jose, CA 95113, Lead Plaintiff Stadium Capital LLC ("Stadium Capital"), on behalf of itself and all members of the Settlement Class, will and hereby does move the Court (the "Motion") for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"): (i) preliminarily approving the proposed settlement set forth in a Stipulation and Agreement of Settlement, dated April 25, 2025 (the "Stipulation" or "Settlement")[1]; (ii) certifying the Settlement Class pursuant to Rules 23(a) and (b)(3), and appointing Lead Plaintiff and named plaintiff David Sherman ("Sherman", together with Lead Plaintiff, "Plaintiffs") as Class Representatives and the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Class Counsel for the Settlement Class; (iii) approving the form and manner of giving notice of the proposed Settlement to the Settlement Class; (iv) approving the appointment of RG/2 Claims Administration LLC ("RG/2") as Claims Administrator; (v) setting deadlines for Class Members to exercise their rights in connection with the proposed Settlement; and (vi) scheduling a hearing date for final approval of the Settlement and Plan of Allocation and Lead Counsel's application for attorneys' fees and expenses (the "Settlement Fairness Hearing"). Lead Plaintiff conferred with Defendants before filing this Motion and have been informed that Defendants support preliminary approval and do not oppose the relief sought by the Motion. Because the motion is unopposed, Lead Plaintiff believes that it is appropriate for decision on the papers at this time and without a hearing—should the Court so desire.

---

[1] All capitalized terms set forth herein have the same meaning as in the Stipulation, unless otherwise indicated. The Stipulation is attached hereto as Exhibit 1. The proposed Preliminary Approval Order is Exhibit A to the Stipulation. The proposed Settlement Notice, Claim Form, and Summary Settlement Notice are Exhibits A-1 to A-3 to the proposed Preliminary Approval Order, respectively. Unless otherwise noted, all emphasis is added and all internal citations, footnotes and quotation marks are omitted.

This Motion is supported by the Memorandum of Points and Authorities set forth below; the accompanying Declaration of Jason A. Uris in Support of Lead Plaintiff's Motion for Preliminary Approval of Proposed Class Action Settlement, and the exhibits thereto (the "Uris Decl."), attached hereto as Exhibit 2; the Declaration of William W. Wickersham in Support of Lead Plaintiff's Motion for Preliminary Approval of Proposed Class Action Settlement that sets forth additional information required in the District Guidelines[2] concerning RG/2 and the proposed process for the dissemination of notice of the Settlement ("Wickersham Decl."), attached hereto as Exhibit 3; the pleadings and records on file in the Action; and other such matters and argument as the Court may consider at the hearing of this Motion. Additionally, attached hereto as Exhibit 4, is a Compliance Checklist identifying (a) criteria under the N.D. Cal. Procedural Guidance for Class Action Settlements, and (b) the relevant sections of the preliminary approval submissions where the information can be found.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed $11 million cash settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval so that the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Settlement Notice"), the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"), and Proof of Claim and Release form ("Claim Form"), appended as Exhibits A-1 through A-3 to the proposed Preliminary Approval Order, may be disseminated to members of the Settlement Class.

2.      Whether the Court should preliminarily certify the Settlement Class for settlement purposes only and preliminarily appoint Plaintiffs as Class Representatives and Kaplan Fox as Class Counsel.

---

[2] As used herein, the term "District Guidelines" refers to the operative September 5, 2024 version of the Procedural Guidance for Class Action Settlements available on the Court's website.

1    3.    Whether the Court should approve the form and substance of the proposed

2  Settlement Notice, Claim Form, and Summary Notice, as well as the manner of notifying the

3  Settlement Class of the Settlement

4    4.    Whether a Settlement Fairness Hearing should be scheduled to determine whether

5  to grant final approval of the proposed Settlement, the proposed Plan of Allocation, Lead Counsel's

6  motion for attorney's fees and Litigation Expenses, and Plaintiffs' expenses.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.    BACKGROUND ....................................................................................................... 2

    A.    Overview of Procedural History of the Action ...................................................... 2

    B.    Settlement Negotiations and Mediation .............................................................. 6

    C.    The Proposed Settlement ................................................................................... 6

II.   ARGUMENT ........................................................................................................... 8

    A.    The Court Should Grant Preliminary Approval ..................................................... 8

        1.    The Proposed Settlement is the Product of Extensive Arms-Length Negotiations Between Experienced Counsel and with the Assistance of an Experienced Mediator ..................................................... 10

        2.    The Proposed Settlement Falls within the Range of Reasonableness ....... 11

        3.    The Proposed Plan of Allocation Treats Settlement Class Members Equitably ............................................................................................... 14

    B.    The Proposed Settlement Class Satisfies Rule 23 ............................................. 16

        1.    Rule 23(a): Numerosity ........................................................................... 17

        2.    Rule 23(a)(2): Questions of Law or Fact Are Common ............................ 17

        3.    Rule 23(a)(3): Plaintiffs' Claims Are Typical ........................................... 18

        4.    Rule 23(a): Fair and Adequate Representation ........................................ 18

        5.    Rule 23(b)(3): Common Questions of Law or Fact Predominate ............... 19

        6.    Rule 23(b)(3): Superiority ........................................................................ 20

    C.    The Proposed Form and Manner of Notice Satisfies Rule 23(e), Due Process and the PSLRA ................................................................................... 20

    D.    The Selection of the Proposed Claims Administrator ........................................... 22

    E.    Attorneys' Fees, Litigation Expenses, and Plaintiffs' Expenses ........................... 23

III.  PROPOSED SCHEDULE OF EVENTS AND FINAL APPROVAL ............................ 25

IV.   CONCLUSION ....................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5   *Abadilla v. Precigen, Inc.*,
    No. 20-CV-06936-BLF, 2023 WL 7305053 (N.D. Cal. Nov. 6, 2023)................................. 18, 19

6   *Allen v. Bedolla*,
7   787 F.3d 1218 (9th Cir. 2015)........................................................................................... 8

8   *Amchem Prods., Inc. v. Windsor*,
    521 U.S 591 (1997)............................................................................................................ 19

9   *Barnes v. AT&T Pension Benefit Plan – Nonbargained Program*,
10  270 F.R.D. 488 (N.D. Cal. 2010)........................................................................................ 17

11  *Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975)............................................................................................ 17

12  *Castillo v. Bank of Am., NA*,
13  980 F.3d 723 (9th Cir. 2020)............................................................................................ 18

14  *Chavez v. Converse, Inc.*,
    No. 15-cv-03746-NC, 2020 WL 4047863 (N.D. Cal. July 8, 2020)................................ 10

15  *Desai v. Deutsche Bank Sec. Ltd*,
16  573 F.3d 931 (9th Cir. 2009)............................................................................................ 20

17  *Durham v. Sachs Elec. Co.*,
    No. 18-CV-04506-BLF, 2022 WL 2307202 (N.D. Cal. June 27, 2022) ................................ 24, 25

18  *Ellis v. Costco Wholesale Corp.*,
19  657 F.3d 970 (9th Cir. 2011)............................................................................................ 19

20  *Free Range Content, Inc. v. Google, LLC*,
    No. 14-CV-02329-BLF, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ........................ 8

21  *Grant v. Capital Mgmt. Servs., L.P.*,
22  No. 10-cv-2471-WQH (BGS), 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013) ................ 8

23  *Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir.1998)............................................................................ 10, 16, 17, 18

24  *Harris v. Palm Springs Alpine Estates, Inc.*,
25  329 F.2d 909 (9th Cir. 1964)............................................................................................ 17

26  *Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)............................ 8

27  *Hefler v. Wells Fargo & Co.*,
28  No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................ 23

*Huddlestun v. Harrison Glob., LLC*,
No. 17-cv-0253 DMS (WVG), 2018 WL 3752368 (S.D. Cal. Aug. 7, 2018) ................................ 9

*In re Adobe Sys., Inc. Sec. Litig.*,
139 F.R.D. 150 (N.D. Cal. 1991) ................................................................................................ 17

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
No. 12-cv-1737, 2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ...................................................... 18

*In re Comput. Memories Sec. Litig.*,
111 F.R.D. 675 (N.D. Cal. 1986) ................................................................................................ 18

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) .......................................................................................... 17, 19

*In re Extreme Networks, Inc. Sec. Litig.*,
No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................ 11, 16

*In re Heritage Bond Litig.*,
546 F.3d 667 (9th Cir. 2008) ........................................................................................................ 9

*In re LendingClub Sec. Litig.*,
No. C 16-02627 WHA, 2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) ..................................... 9, 10

*In re Linkedin User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................................ 13

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...................................................................................................... 11

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017),
*aff'd*, 2019 WL 1752610 (9th Cir. 2019) ................................................................................... 24

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................................ 12, 13

*In re Online DVDRental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ........................................................................................................ 9

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ......................................... 22

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5183 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ......................................... 13

*In re RH, Inc. Sec. Litig.*,
No. 4:17-00554-YGR, 2019 WL 5538215 (N.D. Cal. Oct. 25, 2019) ......................................... 22

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ...................................................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) ........................................................................................................ 9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
MDL No. 551, 1988 WL 158947 (W.D. Wash. July 28, 1988)............................................ 14

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
No. 3:09-cv-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)......................... 11

*Kang v. Fyson*,
No. 22-15694, 2022 WL 6943174 (9th Cir. 2022) ........................................................ 25

*Kang v. Wells Fargo Bank, N.A.*,
No. 17-CV-06220-BLF, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) ........................... 25

*McPhail v. First Command Fin. Planning, Inc.*,
247 F.R.D. 598 (S.D. Cal. 2007)..................................................................................... 20

*Mild v. PPG Indus., Inc.*, No. 2:18-CV-0,
4231, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ....................................................... 13

*Reynolds v. Direct Flow Med., Inc.*,
No. 17-cv-00204-KAW, 2019 WL 1084179 (N.D. Cal. Mar. 7, 2019)........................... 11

*Satchell v. Fed. Express Corp.*,
No. C03-2659-SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)..................................... 10

*SEB Inv. Mgmt. AB v. Symantec Corp.*, No. C,
18-02902 WHA, 2022 WL 409702 (N.D. Cal. Feb. 10, 2022)...................................... 10

*Siemer v. Assocs. First Cap. Corp.*, No.,
CV97-281, 2001 WL 35948712 (D. Ariz. Mar. 30, 2001) ............................................. 18

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)........................................................................................ 24

*Wahl v. Yahoo! Inc.*,
No. 17-CV-02745-BLF, 2018 WL 6002323 (N.D. Cal. Nov. 15, 2018)........................... 10

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010)........................................................................................ 17

*Wong v. Arlo Techs., Inc.*,
No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ............................ 11, 16

**Statutes**

11 U.S.C. § 362 ............................................................................................................... 3

15 U.S.C. § 78u-4............................................................................................... 14, 15, 21

28 U.S.C. § 1292(b) ...................................................................................................... 4, 5

28 U.S.C. §§1715 (2005), *et seq* ................................................................................... 22

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Fed. R. Civ. P. 59(e) ................................................................................................................. 3

Fed. R. Civ. P. 60(b) ................................................................................................................ 3

- viii -                    Case No. 5:21-cv-06374-BLF

Notice of Unopposed Mot. and Mot. for Prelim. Approval; MPA iso Thereof

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiff respectfully submits this Memorandum of Points and Authorities in support of its unopposed motion for preliminary approval of the Settlement, and entry of the [Proposed] Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order").

The Stipulation provides for a Settlement Fund of $11 million in cash. *See* Stip. ¶1(ss). The $11 million Settlement, which was achieved after an extended arm's-length mediation process conducted under the auspices of a highly experienced mediator, Greg Danilow of Phillips ADR (the "Mediator"), including three mediation sessions in May 2024, September 2024, and January 2025, and continued discussions with the mediator between and after the sessions, is an excellent result in light of the substantial risks that Lead Plaintiff and the Settlement Class would face in proving all of the elements of the asserted claims. *Id*. at ¶¶I-L. The $11 million settlement represents 16.3% to 32.8% of the estimated recoverable damages in this case. Uris Decl., at ¶20. As discussed below, the recovery exceeds the median recovery in securities class action settlements in the Ninth Circuit between 2015 and 2024, and compares favorably to recent securities class action settlements in this District and others, including in cases before this Court.

The $11 million Settlement represents a favorable recovery for the Settlement Class and provides a substantial benefit to the Settlement Class, as compared to the risk that the claims in the Action would produce a smaller recovery, or no recovery, after summary judgment or trial. The Preliminary Approval Order, if approved, would: (i) grant preliminary approval of the proposed Settlement on the terms set forth in the Stipulation; (ii) approve the form and manner of notice of the proposed Settlement to the Settlement Class, approve the proposed form and manner for potential Class Members to seek exclusion from the Settlement or, if not seeking exclusion, to file objections to the Settlement, and approve the proposed Claim Form; (iii) appoint RG/2 as Claims Administrator; and (iv) schedule the Settlement Fairness Hearing and enter a schedule for various deadlines in connection with the process for approval of the Settlement.

Defendants support preliminary approval and do not oppose the relief sought by Lead Plaintiff's motion.

I.     **BACKGROUND**

A.     **Overview of Procedural History of the Action**

On August 18, 2021, the initial complaint was filed in this District on behalf of investors in View. ECF No. 1. On February 8, 2022, this Court issued an Order appointing Stadium Capital as Lead Plaintiff and appointing Kaplan Fox & Kilsheimer ("Kaplan Fox") as Lead Counsel. ECF No. 67. On March 17, 2022, one of the movants that filed a competing motion to be appointed Lead Plaintiff filed a petition for a writ of mandamus requesting that the Ninth Circuit vacate the Court's order appointing Stadium as Lead Plaintiff and moved to stay this Action pending disposition of the mandamus petition. ECF No. 77. On April 11, 2022, the Court denied the stay motion. ECF No. 82. On August 17, 2022, after briefing and oral argument, the Ninth Circuit denied the writ. ECF No 117.

On July 15, 2022, Lead Plaintiff filed the Amended Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"). ECF No. 96. On October 6, 2022, Defendants filed their motions to dismiss the Amended Complaint. ECF Nos. 135, 137, 139, 141, 146. On November 15, 2022 Lead Plaintiff filed its opposition to Defendants' motions to dismiss. ECF No. 149. On December 14, 2022, Defendants filed replies in further support of their motions to dismiss. ECF Nos. 150-154. On April 20, 2023, the Court held oral argument on Defendants' motions to dismiss the Amended Complaint (ECF No. 161), and on May 22, 2023, the Court issued an order granting Defendants' motions to dismiss in full but with leave to amend. ECF No. 168.

The Second Amended Complaint for Violations of the Federal Securities Laws ("Second Amended Complaint") was filed on August 21, 2023. The Second Amended Complaint asserts claims against Defendants under Sections 10(b), 14(a), and 20(a) of the Exchange Act on behalf of a class consisting of (i) all persons or entities who purchased or otherwise acquired View and/or CF II securities between November 30, 2020 and November 9, 2021, inclusive and (ii) all persons or entities who were holders of CF II Class A common stock as of the January 27, 2021 record date (the "Record Date") that were entitled to vote to approve the Business Combination between View and CF II as set forth in the February 16, 2021 Proxy Statement.

On October 2, 2023, Defendants filed motions to dismiss the Second Amended Complaint.

ECF Nos. 181, 183, 184.  On November 14, 2023, Lead Plaintiff filed its opposition to Defendants' motions to dismiss.  ECF No. 185.  On December 8, 2023, Defendants filed replies in further support of their motions to dismiss the Second Amended Complaint.  ECF Nos. 188-90.  On March 14, 2024, the Court held oral argument on Defendants' motions to dismiss the Second Amended Complaint (ECF No. 197), and on April 9, 2024, the Court issued an order granting Defendants' motions to dismiss the Second Amended Complaint without leave to amend, and entered judgment for Defendants and against Plaintiffs.  ECF Nos. 200-01.

On April 17, 2024, Plaintiffs filed a motion for reconsideration under Fed. R. Civ. P. 59(e) and 60(b).  ECF No. 203.[3]  On May 1, 2024, Defendants filed a joint opposition to Plaintiffs' motion for reconsideration.  ECF No. 208.  On May 8, 2024 Plaintiffs filed a reply in further support of their motion for reconsideration.  ECF No. 211.  On June 12, 2024, the Court granted Plaintiffs' motion and vacated the Judgment.  ECF No. 212.  On June 28, 2024, the Court issued an Amended Order on Defendants' motions to dismiss the Second Amended Complaint, granting in part and denying in part Defendants' motions.  ECF No. 214.  In particular, the Court upheld the Section 14(a) claim, and 20(a) claim for control person liability based on the 14(a) claim, with respect to certain Defendants.  The Court granted the motion to dismiss (with leave to amend) with respect to Defendants View, Mulpuri, and Prakash on the 10(b) claim for failure to allege scienter, and with

---

[3] On April 23, 2024 Lead Plaintiff provided notice that, in consideration of View Inc. f/k/a CF Finance Acquisition Corp. II's filing a voluntary petition under the provisions of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Chapter 11 Case"), and in recognition of the automatic stay provided by section 362(a)(1) of the Bankruptcy Code, it is withdrawing Plaintiffs' reconsideration motion solely with respect to View.  ECF No. 205.  On June 18, 2024, the parties jointly provided notice that, as of May 22, 2024, pursuant to the terms of the prepackaged plan and confirmation order in the Chapter 11 Case, Plaintiff's claims were no longer stayed pursuant to the automatic stay (under section 362(a) of the Bankruptcy Code) as to View, with any recovery as to View in this action being limited to and solely to the extent of available insurance.  ECF No. 213.

respect to additional defendants on the 20(a) claim for control person liability based on the 10(b) claim for primary to allege a primary violation of Section 10(b). *Id.*

At the same time, Defendant View sought confirmation, on an expedited basis, of a prepacked plan of reorganization of View, Inc. and its debtor affiliates (the "Plan"). As proposed, the Plan sought to extinguish various claims and causes of action that third parties may have not only against the debtors, but also against a slew of non-debtor third parties. The proposed release, if approved, would have released Plaintiffs' (and the proposed class's) claims in this Action against all of the Defendants (with the exception of Prakash). As a result, on May 8, 2024, Plaintiff filed an extensive objection to the Plan seeking to expressly exclude Plaintiffs' claims in this Action against the non-debtor Defendants from the release and Plan injunction. *In re: View, Inc., et al.*, Case No. 24-10692-CTG (Bankr. D. Del. May 8, 2024), ECF No. 159. Following Plaintiffs' objection and subsequent negotiations with View's bankruptcy counsel, the Plan was amended to include the requested carveout, which included language allowing for Plaintiffs' claims to proceed against View (the Debtor) to the extent of available insurance. *Id.*, ECF No. 213. Additionally, the Plan was also amended to require the debtors and reorganized debtors to preserve documents related to this Action. *In re: View, Inc., et al.*, Case No. 24-10692-CTG (Bankr. D. Del. May 8, 2024) at ECF No. 190 at 57.

Following the Court's denial of Defendants' motions to dismiss in part, the Court set an initial case management conference for October 31, 2024. ECF No. 216. The parties began negotiating a case schedule and Lead Plaintiff served fifty-seven requests for the production of documents on Defendants on August 5, 2024. Uris Decl. ¶ 6.

On July 12, 2024, Defendants filed a joint motion to certify the Court's Order granting reconsideration (ECF No. 212) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and for a stay pending resolution of interlocutory appeal. ECF No. 219. On July 26, 2024, Lead Plaintiff filed its opposition to Defendants' joint motion (ECF No. 223), and on August 2, 2024, Defendants filed a joint reply in further support. ECF No. 226. On August 8, 2024, the Court granted Defendants' joint motion, certified an interlocutory appeal to the Ninth Circuit, and stayed the case. ECF No. 227. On August 12, 2024, Lead Plaintiff filed a motion to lift the stay for the limited

purpose of seeking leave to file a surreply.  ECF No. 228.  On August 14, 2024, the Court granted Lead Plaintiff's motion and confirmed its August 8, 2024 Order.  ECF No. 229.

On August 16, 2024, Defendants filed their petition for permission to appeal under 28 U.S.C. § 1292(b) with the Ninth Circuit.  *Stadium Capital LLC, et al. v. View, Inc. f/k/a CF Finance Acquisition Corp. II, et al.*, No. 24-5051 (9th Cir. 2024), ECF No. 1.  On August 26, 2024, Plaintiffs filed an answer opposing Defendants' petition for permission to appeal and conditional cross-petition.  *Id*., ECF No. 4.[4]  On September 5, 2024, Defendants filed a motion for leave to file a reply in further support of their petition.  *Id*., ECF No. 5. On September 12, 2024, Plaintiffs filed a motion for leave to file a surreply in opposition to Defendants' petition.  *Id*., ECF No. 6.  On September 19, 2024, a Ninth Circuit motions panel granted Defendants' petition for permission to appeal, and granted Plaintiffs' conditional cross-petition. *Id*., ECF No. 7.

On August 22, 2024, the parties in *Siseles v. Lutnick, et al.*, Case No. 2023-1152-JTL (Del. Ch.) (the "*Siseles* Action"), a proposed class action bringing claims for breach of fiduciary duty against certain of the Defendants in this Action, submitted a settlement agreement for approval by the Court of Chancery.  Uris Decl. ¶ 7.  A Settlement Hearing was set for, and occurred on, December 6, 2024.  *Id*.  Based on conversations with counsel for plaintiffs in the *Siseles* Action, Plaintiffs understood that counsel to plaintiffs and defense counsel that negotiated the *Siseles* Settlement Stipulation understood that the *Siseles* release was only intended to release claims that were, or could have been brought, in the *Siseles* Action.  *Id*.  Lead Counsel contacted defense counsel in the *Siseles* Action to request that language be added to the Proposed Order and Final Judgment to make explicit that, for the avoidance of doubt, the claims asserted in this Action under the Securities Exchange Act of 1934 are not being released pursuant to the release in the *Siseles* settlement.  *Id*.  However, defense counsel in the *Siseles* Action would not agree.  *Id*.  Therefore, on November 22, 2024, Plaintiffs filed an objection to the proposed settlement in the *Siseles* Action to the extent it purported to release the Exchange Act claims brought in this Action.  *Siseles v.*

---

[4] The question presented in Plaintiffs' conditional cross-petition was whether the district court erred when it held that Lead Plaintiff had not sufficiently plead loss causation.

*Lutnick, et al.*, Case No. 2023-1152-JTL (Del. Ch.), Transaction ID 75068235.  On December 6, 2024, Lead Counsel appeared at the *Siseles* settlement hearing to present their objection to the proposed settlement.  *Id.*  At the hearing, the Chancery Court confirmed its understanding that "th[e] release is not encompassing the Mehedi action." *Id*.

### B.    Settlement Negotiations and Mediation

In April of 2024, the Parties agreed to discuss a possible resolution of the Action. To facilitate their negotiations, the Parties scheduled a mediation with Greg Danilow of Phillips ADR Enterprises. Stipulation at ¶I; Uris Decl. ¶4.

On May 3, 2024, the parties engaged in a mediation session but did not reach an agreement to settle the Action.  On September 23, 2024, the parties engaged in an additional mediation session but again were unable to reach an agreement to settle. In advance of the mediation, pursuant to Mr. Danilow's instructions (as Mediator), both Lead Plaintiff and Defendants prepared and exchanged comprehensive opening mediation briefs and supporting materials on September 10, and submitted additional reply papers and supporting materials on September 18, 2024.  Lead Counsel also participated in pre-mediation conference calls with the Mediator to review the Parties' positions on specific legal and factual issues raised by the Mediator.  Uris Decl. ¶ 5.

On January 8, 2025, the parties engaged in a third mediation session, and with the assistance of Mr. Danilow, the Parties agreed to resolve the matter for $11 million and executed a term sheet setting forth the material terms of their agreement on January 22, 2025. Stipulation at ¶ I.

### C.    The Proposed Settlement

The Stipulation was executed by the Parties on April 25, 2025.  Pursuant to the Stipulation, within 30 calendar days after the later of (a) entry of the Preliminary Approval Order, and (b) receipt of complete and accurate payment instructions and W-9 for the Settlement Fund, View shall cause to be paid the Settlement Amount into the Escrow Account. *See* Stip. ¶ 10.

In exchange for this payment, upon the Effective Date of the Settlement, Lead and named Plaintiffs and each and every other Settlement Class Member, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall be deemed to have fully, finally, and forever compromised, settled, released, resolved,

relinquished, waived and discharged each and every one of the Released Plaintiff's Claims (including any Unknown Claims) against each and every one of the Released Defendant Parties and shall forever be permanently barred, enjoined, and restrained from commencing, instituting, asserting, maintaining, enforcing, prosecuting, or otherwise pursuing any and all of the Released Plaintiff's Claims against any and all of the Defendant Releasees. *See* Stip. ¶ 5. The definition of Released Plaintiff's Claims and Unknown Claims has been tailored to release only claims that relate to transactions in View and/or CF II securities during the Class Period[5], and claims of persons or entities who were holders of CF II Class A common stock as of the January 27, 2021 record date that were entitled to vote to approve the Business Combination between View and CF II as set forth in the February 16, 2021 Proxy Statement, and all persons or entities who purchased or otherwise acquired View securities pursuant to or traceable to the De-SPAC Registration Statement that were raised, or could have been raised, by Class Members in the Action. *See* Stip. ¶¶ 1(oo) & (aaa). Although the Court granted the motions to dismiss with respect to alleged misstatements subsequent to November 9, 2021, the Settlement utilizes the Class Period and Class definition alleged in the Amended Complaint to avoid collateral litigation of the claims raised in the Action that would undermine the key reason for the Settlement – providing the Parties with "complete peace." Defendants will also release all claims that Defendants could have asserted against any of the Plaintiff Releasees that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Action. *See* Stip. ¶¶ 1(nn) & (aaa).

Rule 23(e)(3) requires the parties to identify all agreements made in connection with the Settlement. In addition to the January 22, 2025 term sheet and the Stipulation, the Parties entered into a confidential Supplemental Agreement, dated as of April 25, 2025, which gives Defendants the right to terminate the Settlement if valid requests for exclusion from persons and entities entitled to be members of the Settlement Class exceed a confidential amount agreed to by the Parties. *See* Stip. ¶ 42. It is standard to keep such agreements confidential so that a large investor, or a group of

---

[5] The Class Period means the period between November 30, 2020 and May 10, 2022, inclusive. This is the class period alleged in the Amended Complaint.

investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. *See, e.g., Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). The Supplemental Agreement can be provided to the Court *in camera* or under seal.

After approval of the Settlement and approval of the Plan of Allocation for the proceeds of the Settlement, the proposed Claims Administrator, RG/2 Claims Administration LLC ("RG/2"), will process all claims received and will apply the plan of allocation approved by the Court at the Settlement Hearing. At the completion of the administration, RG/2 will distribute the Net Settlement Fund to eligible claimants, and will continue to do so as long as it is economically feasible to make distributions. Settlement Notice ¶ 49; District Guidelines ¶8. This is not a "claims-made" settlement and the entire $11 million Settlement Amount is for the benefit of the Settlement Class, regardless of how many claims are submitted. Stipulation ¶ 17. The Settlement does not contain any reversion to Defendants. *Id.*

## II.    ARGUMENT

### A.    The Court Should Grant Preliminary Approval

In the Ninth Circuit, there is a strong judicial policy in favor of settlement of litigation, especially in complex class actions. *See, e.g., Free Range Content, Inc. v. Google, LLC*, No. 14-CV-02329-BLF, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019) ("'[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'") (Freeman, J.) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)); *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at *2 (S.D. Cal. Dec. 11, 2013) ("Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation.") (citation omitted). However, under Federal Rule of Civil Procedure 23(e) the "claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from

1    unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100

2    (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must

3    conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond*

4    *Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

5         A district court's review of a proposed class action settlement is a two-step process. First,

6    the court performs a preliminary review of the terms of the proposed settlement to determine

7    whether to send notice of the proposed settlement to the class. Fed. R. Civ. P. 23(e)(1). Second,

8    after notice and a hearing, the Court determines whether to grant final approval of the settlement.

9    Fed. R. Civ. P. 23(e)(2); *see also Huddlestun v. Harrison Glob., LLC*, No. 17-cv-0253 DMS

10   (WVG), 2018 WL 3752368, at *2 (S.D. Cal. Aug. 7, 2018).

11        A court grants preliminary approval to authorize notice to the Class upon a finding that it

12   "will likely be able" to approve the Settlement as fair, reasonable, and adequate at the final hearing.

13   Fed. R. Civ. P. 23(e)(1)(B). "Preliminary approval is appropriate if 'the proposed settlement [1]

14   appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious

15   deficiencies, [3] does not improperly grant preferential treatment to class representatives or

16   segments of the class, and [4] falls within the range of possible approval.'" *In re LendingClub Sec.*

17   *Litig.*, 2018 WL 1367336, at *2 (N.D. Cal. Mar. 16, 2018) (internal quotation omitted).

18        Later, in connection with the final approval of the Settlement, the Court will have to

19   determine whether the proposed Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P.

20   23(e)(2); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895

21   F.3d 597, 610 (9th Cir. 2018); *In re Online DVDRental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir.

22   2015). In considering whether a settlement is fair, reasonable, and adequate at final approval, Rule

23   23(e)(2) provides that the Court should consider whether: (A) the class representatives and class

24   counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C)

25   the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of

26   trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

27   including the method of processing class-member claims; (iii) the terms of any proposed award of

28   attorney's fees, including timing of payment; and (iv) any agreement required to be identified under

Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(A)-(D).  The Court also considers the factors identified by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), many of which overlap with the Rule 23(e) factors.

Applying the standards set forth above, the Settlement merits preliminary approval.

### 1.    The Proposed Settlement is the Product of Extensive Arms-Length Negotiations Between Experienced Counsel and with the Assistance of an Experienced Mediator

The parties reached the Settlement after extensive arm's length negotiations between experienced counsel and with the assistance of an experienced mediator. As courts in this District have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Chavez v. Converse, Inc.*, 2020 WL 4047863, at *2 (N.D. Cal. July 8, 2020) ("The assistance of an experienced neutral mediator during the settlement process supports the Court's conclusion that the Agreement is non-collusive."); *LendingClub*, 2018 WL 1367336, at *4 ("Another factor weighing in favor of preliminary approval is that the proposed settlement agreement came about as a result of extensive mediation efforts supervised by Chief Magistrate Judge Joseph Spero[.]").  The mediation process involved preparation of comprehensive mediation statements, pre-mediation conference calls with the Mediator, and three separate mediation sessions in May 2024, September 2024, and January 2025.  Uris Decl. ¶ 5.  The September 2024 session was conducted face-to-face in New York City.  *Id.*

Courts have also given considerable weight to the opinion of experienced and informed counsel who support settlement. *See Wahl v. Yahoo! Inc.*, No. 17-CV-02745-BLF, 2018 WL 6002323, at *4 (N.D. Cal. Nov. 15, 2018) ("Plaintiff and Defendants are represented by experienced counsel, whose views on the settlement are entitled to significant weight.") (Freeman, J.); *SEB Inv. Mgmt. AB v. Symantec Corp.*, No. C 18-02902 WHA, 2022 WL 409702, at *7 (N.D. Cal. Feb. 10, 2022) ("Class counsel .  .  . is experienced in securities litigation so their support behind the settlement carries weight.").  Here, Lead Counsel has a thorough understanding of the merits and risks of the Action and has extensive experience in securities litigation. *See* Uris Decl., Ex. A;

www.kaplanfox.com.  Lead Counsel's belief in the fairness and reasonableness of this Settlement should be afforded significant weight.

### 2.    The Proposed Settlement Falls within the Range of Reasonableness

At the preliminary approval stage, the Court need only determine whether the Settlement "falls within the range of possible approval." *Reynolds v. Direct Flow Med., Inc.,* No. 17-cv-00204-KAW, 2019 WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019).  In assessing whether the Settlement is fair, reasonable, and adequate, courts should balance the continuing risks of litigation, the benefits afforded to the Settlement Class, and the immediacy and certainty of the proposed recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Because the $11 million all-cash Settlement represents a favorable recovery for the Class is in light of the risks of the litigation and the potential outcomes at trial, the Settlement falls well within the range of possible approval.

The $11 million settlement represents 16.3% to 32.8% of the estimated recoverable damages in this case.  Uris Decl., at ¶20.  The recovery exceeds the median 7.5% recovery in cases alleging claims under the Exchange Act between 2015 and 2024, and exceeds the median settlement amount of $10.0 million in the Ninth Circuit. *See* Laarni T. Bulan & Eric Tam, *Securities Class Action Settlements: 2023 Review and Analysis*, CORNERSTONE RESEARCH, at 20 (2025), https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf.

The range for this Settlement compares favorably to recent securities class action settlements in this District and before this Court. *See, e.g.,  Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (approving $1.25 million settlement representing "2.35% of the total damages that Lead Plaintiff estimated could have been recovered if his case was successful on all issues of liability and damages in the Litigation.") (Freeman, J.); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving $7 million settlement representing "a recovery of between 5% and 9.5% of non-disaggregated damages") (Freeman, J.); *see also Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (finding 3.5% recovery to be within "the median recovery

1    in securities class actions settled in the last few years"); *In re Omnivision Techs.*, 559 F. Supp. 2d

2    1036, 1042 (N.D. Cal. 2008) (finding 9% recovery to be "higher than the median percentage of

3    investor losses recovered in recent shareholder class action settlements").

4        The $11 million Settlement is an excellent result in light of the substantial risks that Lead

5    Plaintiff and the Settlement Class would face in proving all of the elements of the asserted claims.

6    Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit.

7    They recognize, however, the expense and length of continued proceedings necessary to pursue

8    their claims against Defendants through the Court's ruling on class certification, summary

9    judgment, pre-trial motions, a trial, and appeals, as well as the very substantial risks they would

10   face in establishing liability and damages.

11       Defendants also had substantial loss causation defenses. This case, for example, did not

12   involve a single drop in View's share price in response to a "clean" disclosure that one or more of

13   the Company's prior statements about the Company's warranty-related obligations had been false.

14   Instead, this case involved multiple alleged corrective disclosures with Lead Plaintiff alleging that

15   the truth about Defendants' alleged misstatement emerged gradually as View more fully disclosed

16   the extent and severity of the warranty accrual issue. On the facts alleged, proving loss causation

17   was particularly challenging because View did not report its restated warranty-related accruals until

18   May 31, 2022.  On that same date, View reported "'[r]ecord revenue of $74 million, up 125% year-

19   over-year, and exceeding previous guidance range of $65 million to $70 million.'"  While Lead

20   Plaintiff alleges that the fact that the Company's share price did not fall (but rather increased) on

21   this announcement confirmed that investors understood the earlier alleged partial corrective

22   disclosures as at least partial disclosures of the inaccuracy of the previously reported warranty

23   accruals, the fact that View also announced positive news (which was potentially "confounding")

24   unrelated to the Company's warranty accrual, would likely make proving loss causation with

25   respect to the observed price declines on the alleged partial corrective disclosure dates difficult.

26   Moreover, Defendants likely would have strenuously argued for the exclusion of each of the alleged

27   corrective disclosures on the grounds Lead Plaintiff could not sufficiently link each to Defendants'

28   alleged fraud, and that when any confounding non-fraud related information on those dates are

1  disaggregated the amount of alleged damages are significantly reduced. If these arguments

2  prevailed at class certification, summary judgment, or trial, the Settlement Class could have

3  recovered significantly less or, indeed, nothing.

4      While Lead Counsel is confident that the Settlement Class meets the requirements for

5  certification (*see* §B, *infra*), the Class had not yet been certified, and Lead Counsel are aware that

6  there is a risk the Court could disagree. Even if the Court were to certify the Class, there is always

7  a risk that the Class could be decertified at a later stage in the proceedings. *See, e.g.*, *Omnivision*,

8  559 F. Supp. 2d at 1041 (even if a class is certified, "there is no guarantee the certification would

9  survive through trial, as Defendants might have sought decertification or modification of the

10  class"). Thus, the risks and uncertainty surrounding class certification also support approval of the

11  Settlement, as Defendants undoubtedly would have challenged class certification if the Action had

12  reached that stage.

13      Nonetheless, despite these risks, Lead Plaintiff obtained a $11 million Settlement that

14  represents a meaningful, if not superior result. This recovery must be compared to the real risk that

15  the Settlement Class would recover nothing after summary judgment, trial, and likely appeals,

16  possibly years into the future. *See Mild v. PPG Indus., Inc.*, No. 2:18-CV-04231, 2019 WL

17  3345714, at *6 (C.D. Cal. July 25, 2019) (recognizing the "significant risk that continued litigation

18  might yield a smaller recovery or no recovery at all"); *In re Portal Software, Inc. Sec. Litig.*, No.

19  C-03-5183 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (same). Indeed, even if Lead

20  Plaintiff had prevailed in full on all its claims against Defendants, the chances that it could ever

21  actually recover a significantly larger amount was uncertain at best. For example, View's business

22  had been in sharp decline throughout the pendency of the litigation, and in fact, in April 2024 View

23  filed for Chapter 11 bankruptcy. ECF No. 205.

24      In light of these risks, the amount of the Settlement, and the immediacy of recovery to the

25  Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, and

26  adequate, and in the best interests of the Class. *See, e.g.*, *In re Linkedin User Privacy Litig.*, 309

27  F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its

28  acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.")

(citation omitted); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551, 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) (finding settlement to be in the "best interests of the class . . . before it is subjected further to the vagaries of litigation"). Lead Plaintiff and Lead Counsel believe that the $11 million Settlement provides a substantial benefit to the Class, as compared to the risk that the claims in the Action would produce a smaller recovery, or no recovery, after summary judgment and/or trial.

### 3. The Proposed Plan of Allocation Treats Settlement Class Members Equitably

The Settlement does not improperly grant preferential treatment to Plaintiffs or any segment of the Settlement Class. Under the proposed Plan of Allocation, all Settlement Class Members are treated equally because variations in their share of the Net Settlement Fund are based on their respective transactions in View and/or CF II securities as applied to the calculations in the Plan of Allocation.  Stipulation at Ex. A-1 at 11-19.  At the final Settlement Hearing, the Court will be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to eligible claimants. The Plan of Allocation, which is set forth in full in the Settlement Notice, was drafted with the assistance of Lead Plaintiff's damages expert, based on the measure of damages for claims under the Exchange Act and is a fair, reasonable, and adequate method for allocating the Net Settlement Fund amongst eligible claimants. *See* Settlement Notice, pp. 11 to 12. It treats all Settlement Class Members equitably.

Here, the Plan of Allocation is designed to equitably distribute the Net Settlement Fund among members of the Settlement Class who Class Members who submit valid and timely Claim Forms. The Plan provides for the calculation of a "Recognized Loss" amount for each properly documented purchase or acquisition of View and/or CF II securities during the Class Period, and each properly documented purchase or acquisition of CF II Class A common stock held stock as of the January 27, 2021 record date that were entitled to vote to approve the Business Combination. A claimant's total Recognized Losses will depend on, among other things, when their securities were purchased and/or sold in relation to the disclosure dates alleged in the Action, whether the shares were held through or sold during the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-

4(e) (providing methodology for limiting damages in securities fraud actions), and the value of the shares when they were sold or held.  The sum of a claimant's Recognized Losses is the Claimant's "Recognized Claim." *Id.* at ¶45.

The Recognized Loss formulas are tied to liability and damages. In developing the Plan of Allocation, the Lead Plaintiff's damages expert considered the amount of artificial inflation alleged to be  present in View and/or CF II securities throughout the Class Period that was purportedly caused by the alleged fraud. For shares sold between August 17, 2021 and November 9, 2021, Recognized Loss Amounts for Class Members with 14(a) claims will be discounted to 50% in recognition of the Court's finding that loss causation was not pled for shares held through the August 16, 2021 disclosure that were sold prior to the November 9, 2021 disclosure.  Based upon consultation with Lead Plaintiff's damages expert, all Recognized Loss Amounts for Class members with 10(b) claims will be discounted to 50% in recognition of, among other factors, the Court's dismissal of these claims and the particular challenges to being able to establish liability and damages.[6]  For shares purchased before May 10, 2022 and held through this disclosure, the alleged artificial inflation will be discounted to 10% given the Court's dismissal of these claims and the particular challenges to being able to establish liability and damages.  An inflation table was created and is set forth in the Settlement Notice as part of the Plan of Allocation. The table will be utilized by the Claims Administrator in calculating Recognized Loss amounts for claimants.

The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by claimants in their claim forms, which can be mailed to the Claims Administrator, submitted online using the settlement website, or, for large investors, with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team. Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class Members'

---

[6] Class Members who purchased between November 30, 2020 and January 25, 2021 and who were common shares or unit owners of record on January 27, 2021 will recover only for the loss, if any, calculated pursuant to their 14(a) Claim.

transactional data and a claims process is required. Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each eligible claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all eligible claimants.[7]

Such customary plans of allocation, based on *pro rata* allocations to each class member under a common formula, ensure that each Settlement Class Member's recovery is based upon the relative losses he or she sustained, and that eligible Settlement Class Members will receive distributions calculated in the same manner, and are routinely held to be fair and reasonable. *See, e.g.*, *Wong*, 2021 WL 1531171, at *8 (approving plan of allocation under which "class members who have submitted a Proof of Claim will have their trade information evaluated against the Class definition and the Plan of Allocation to determine their 'Recognized Loss' in order to receive payments on a pro rata portion of the Net Settlement Fund."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (finding *pro rata* allocation "equitable").

If any funds remain after an initial distribution to Authorized Claimants as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective. District Guidelines ¶8. The Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who timely submit valid claims.

**B.       The Proposed Settlement Class Satisfies Rule 23**

At the Settlement Fairness Hearing, Lead Plaintiff will request final approval of the Settlement on behalf of the Settlement Class. Thus, it is appropriate for the Court to consider, at the preliminary approval stage, and solely for the purpose of the Settlement, whether class certification appears to be appropriate. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii)

---

[7] Because eligible claimants will be receiving their *pro rata* share of the Net Settlement Fund and their individual recoveries will depend on the value of all other eligible claimants' recoveries, which will change on a daily basis as claims are processed and verified, it would not be feasible to have the website provide estimates of claim amounts for each class member.

1  commonality; (iii) typicality; and (iv) adequacy of representation. *Wolin v. Jaguar Land Rover N.*

2  *Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the Court must find that at least one of

3  the three conditions of Rule 23(b) is satisfied. *Id*. Under subsection (b)(3), the Court must find that

4  the common questions of law or fact predominate over any questions affecting only individual

5  members and that a class action is superior to other available methods for the fair and efficient

6  adjudication of the controversy. *Id*.

7        This Action satisfies all the factors for certification of a class, and if the Action were to

8  proceed toward trial, class certification would be appropriate. The Ninth Circuit and numerous

9  courts within have held that class actions are generally favored in securities fraud actions. *See, e.g.*,

10  *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975); *In re Adobe Sys., Inc. Sec. Litig.*, 139

11  F.R.D. 150, 152-53 (N.D. Cal. 1991) ("[T]he Ninth Circuit and courts in this district hold a liberal

12  view of class actions in securities litigation."); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628,

13  642 (C.D. Cal. 2009) ("'Rule 23 is . . . liberally construed in a securities fraud context because class

14  actions are particularly effective in serving as private policing weapons against corporate

15  wrongdoing.'").

16                    **1.    Rule 23(a): Numerosity**

17        Rule 23(a)(1) requires that the class be so numerous that joinder of all members is

18  impracticable. "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or

19  inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*,

20  329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). Lead Counsel estimates that there were

21  thousands of purchasers of View and/or CF II securities during the Class Period. The threshold

22  presumption of impracticability of joinder is easily exceeded. *See, e.g., Barnes v. AT&T Pension*

23  *Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 493 n.2 (N.D. Cal. 2010) ("'As a general

24  rule, classes numbering greater than forty individuals satisfy the numerosity requirement.'").

25                    **2.    Rule 23(a)(2): Questions of Law or Fact Are Common**

26        Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed.

27  R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to the class members.

28  *Hanlon*, 150 F.3d at 1019. Generally, courts have liberally construed the commonality prerequisite,

requiring only that "'the named plaintiffs share at least one question of fact or law with the grievances of the proposed class.'" *Siemer v. Assocs. First Cap. Corp.*, No. CV97-281, 2001 WL 35948712, at \*14 (D. Ariz. Mar. 30, 2001). Not all questions of fact and law need be common to satisfy Rule 23(a)(2). *Hanlon*, 150 F.3d at 1019. This factor is "construed permissively . . . [and] [t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*. Rule 23(a)(2) is plainly satisfied here. The central questions in this case—(1) whether the federal securities laws were violated by Defendants' alleged acts, (2) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about View's business and operations, (3) whether the price of View's securities were artificially inflated during the Class Period, and (4) the appropriate measure of damages—are the same for all Class Members.

### 3.   Rule 23(a)(3): Plaintiffs' Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. *In re Comput. Memories Sec. Litig*., 111 F.R.D. 675, 680 (N.D. Cal. 1986); *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12-cv-1737, 2015 WL 224631, at \*5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class."). Here, Plaintiffs' claims are typical to those of the other Members of the Settlement Class. Like all Settlement Class Members, Plaintiffs purchased the publicly traded securities of View and/or CF II during the Class Period or were holders of CF II Class A common stock as of the January 27, 2021 record date that were entitled to vote to approve the Business Combination and claim to have suffered damages due to Defendants' conduct. *Abadilla v. Precigen, Inc.*, No. 20-CV-06936-BLF, 2023 WL 7305053, at \*5 (N.D. Cal. Nov. 6, 2023) (Freeman, J.); *see also Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) ("Under the [typicality] rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.") (citation omitted).

### 4.   Rule 23(a): Fair and Adequate Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Determining adequacy involves the resolution of "two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?") *Precigen*, 2023 WL 7305053, at *5 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)).

Here, Plaintiffs have and will continue to represent the interests of the Settlement Class fairly and adequately. There is no antagonism or conflict of interest between Plaintiffs and the proposed Settlement Class. Plaintiffs and other Settlement Class Members share the common objective of maximizing their recovery from Defendants when considering the totality of the relevant circumstances. Lead Counsel also has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. Kaplan Fox is well qualified to serve as Class Counsel based on its extensive experience in prosecuting securities class actions, as well as based on its representation to date of Plaintiffs and the proposed Settlement Class here. Uris Decl., Ex. A.

### 5.    Rule 23(b)(3): Common Questions of Law or Fact Predominate

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The predominance requirement is "readily met" in securities class actions. *Amchem Prods*., 521 U.S. at 625; *see also Cooper Cos*., 254 F.R.D. at 632 ("[S]ecurities fraud cases fit Rule 23 'like a glove.'") (citation omitted).  Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or fact common to the members of the Settlement Class predominate over any questions affecting individual members. Moreover, damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the

incentive for any individual to bring a solo action . . . . A class action solves this problem . . . .").

Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 6.     Rule 23(b)(3): Superiority

Finally, Rule 23(b)(3) also requires that the action be superior to other available methods for the fair and efficient adjudication of the controversy. The rule lists several matters pertinent to this finding: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Desai v. Deutsche Bank Sec. Ltd*, 573 F.3d 931, 937 (9th Cir. 2009). Each factor weighs in favor of superiority here. *See, e.g., McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007) (noting "class action is the superior method for fair and efficient adjudication" because individual suits would "'clog [ ] the federal courts with innumerable individual suits litigating the same issues repeatedly,'" the plaintiffs assert complex claims that would "be very costly to litigate," and each claim is for a "relatively small amount") (alteration in original) (citation omitted).

Certification of the Settlement Class will allow the Settlement to be administered in an organized and efficient manner. Accordingly, the Court should preliminarily certify the Settlement Class.

### C.     The Proposed Form and Manner of Notice Satisfies Rule 23(e), Due Process and the PSLRA

Lead Plaintiff also seeks approval of the form and substance of the proposed Settlement Notice, Claim Form, and Summary Settlement Notice attached as Exhibits A-1 through A-3 to the Stip., as well as the manner and timing of notifying the Class of the Settlement. The Settlement Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Class Members will have. Consistent with Rule 23(e), the Settlement Notice apprises Class Members of the terms of the Settlement and the options available to them. The Settlement

Notice also satisfies the requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *see* 15 U.S.C. §78u-4(a)(7), in that it, among other things, states the amount of the Settlement on an absolute and per-share basis; states the amount of attorneys' fees and litigation expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id.*

The Settlement Notice also meets the requirements of the Northern District of California Procedural Guidance for Class Action Settlements in that it includes, among other things: (1) "[c]ontact information for class counsel to answer questions"; (2) the address for the settlement website; and (3) "[i]nstructions on how to access the case docket." N.D. Cal. Procedural Guidance for Class Action Settlements, ¶3.  The Settlement Notice also discloses the date, time, and location of the Settlement Fairness Hearing and the procedures and deadlines for exclusions from the Class, the submission of Claim Forms, and objections to any aspect of the Settlement, the Plan of Allocation, the requested attorneys' fees and expenses, or Plaintiffs' expenses.

The proposed method for disseminating notice, which is set forth in the Preliminary Approval Order submitted herewith, also readily meets the standards under the Federal Rules and Due Process. Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement, voluntary dismissal, or compromise. Fed. R. Civ. P. 23(e)(1)(B).

If the Court preliminarily approves the Settlement, Defendants will provide RG/2 with the names and addresses of the record holders or purchasers of View and/or CF II securities during the Class Period, and holders of CF II Class A common stock as of the January 27, 2021 record date for the purpose of identifying and giving notice to the Settlement Class. *See* Stip., ¶25. RG/2 will mail the Notice and Claim Form (the "Notice Packet") to all such identified potential Class Members. RG/2 will also send notice to brokerage firms and other nominees who purchased View

and/or CF II securities during the Class Period, or were holders of CF II Class A common stock as of the January 27, 2021 record date that were entitled to vote to approve the Business Combination, on behalf of other beneficial owners. These nominee purchasers will be required to either forward the Notice Packet to their customers or provide the names and addresses of the beneficial owners to RG/2, which will then promptly send the Notice Packet by first-class mail to such identified beneficial owners. Wickersham Decl., ¶¶4-5. RG/2 will also cause the Summary Notice, which provides an abbreviated description of the Action and the proposed Settlement and explains how to obtain the more detailed Notice, to be published in *PR Newswire* and to be transmitted over the *Investor's Business Daily* within 10 calendar days after the Notice Date. *Id.*, ¶7. RG/2 will also send the Depository Trust Company ("DTC") a Notice and Claim Form for the DTC to publish on its Legal Notice System ("LENS"). LENS provides DTC participants the ability to search and download legal notices as well as receive email alerts based on particular notices or particular CUSIPs once a legal notice is posted. *Id.*, ¶8. In addition, RG/2 will publish the Notice and Claim Form and other materials on a website to be developed for the Settlement. *Id.*, ¶6. Further, the Parties have agreed that, no later than 10 calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. §§ 1715 (2005), *et seq. See* Stip., ¶45.

The proposed plan for providing notice is the same method that has been used in numerous other securities class actions. Courts routinely find that comparable notice programs, combining individual notice by first-class mail to all class members who can reasonably identified supplemented with publication notice, meet all the requirements of Rule 23 and Due Process. *See RH, Inc. Sec. Litig.*, No. 4:17-00554-YGR, 2019 WL 5538215, at *2 (N.D. Cal. Oct. 25, 2019) (approving similar notice plan in securities class action); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the 'best notice practicable under the circumstances'").

### D.   The Selection of the Proposed Claims Administrator

Lead Plaintiff proposes that the notice and claims process be administered by RG/2, an independent settlement and claims administrator with extensive experience handling the

administration of securities class actions. *See* Wickersham Decl., ¶2. Lead Counsel selected RG/2 after a competitive bidding process in which three firms submitted proposals. All the proposals received involved comparable methods of providing notice and claims processing, including use of first-class mail and identifying potential Class Members through brokers and nominee owners. Uris Decl., ¶11. Lead Counsel has engaged RG/2 to serve as notice or settlement administrator in one case in the past two years. *Id.*, ¶21.

Lead Plaintiff submits herewith the Wickersham Decl. on behalf of RG/2 to provide details on the work anticipated to be performed by RG/2 in carrying out these duties and the items required for presentation in the District Guidelines in connection with this Motion. RG/2 estimates that a total of 47,000 Notice Packets will be mailed based on RG/2's analysis of the trading volume of View and/or CF II securities during the Class Period, and that approximately 9,000 claims will be received based on an estimated 20% response rate, which RG/2 finds reasonable and typical. Wickersham Decl., ¶20. Based in part on these estimates, RG/2 estimates that the total notice and administration costs for the Action will be approximately $162,375.00. *Id.*

### E. Attorneys' Fees, Litigation Expenses, and Plaintiffs' Expenses

Lead Counsel intends to seek an award of attorneys' fees of up to 33 $^1/_3$% of the Settlement Fund (*i.e.*, 33 $^1/_3$% of the Settlement Amount, or $3,666,666.67, plus interest earned at the same rate as the Settlement Fund), and payment of Litigation Expenses not to exceed $375,000.00. Uris Decl., at ¶¶14-16. Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and Litigation Expenses, to be filed with the Court 35 days before the Settlement Fairness Hearing.

While Lead Counsel is in the process of doing a final review of its time, Kaplan Fox's lodestar through mid-April 2025 is approximately $4.06 million. Therefore, a 33 $^1/_3$% fee award would represent a negative multiplier of approximately .90. Uris Decl., at ¶¶14-15. If preliminary approval is granted, Lead Counsel will present its lodestar in connection with its fee application at the final approval stage. Given the additional work to be done by Lead Counsel, the ultimate multiplier will likely be lower. The estimated .90 negative multiplier is well below the range of multipliers commonly awarded in class actions and other similar cases. *See, e.g., Hefler v. Wells*

*Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (awarding fee representing a 3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017) (awarding fee representing a 3.66 multiplier), *aff'd*, 2019 WL 1752610 (9th Cir. Apr. 17, 2019); *see generally Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 & n.6 (9th Cir. 2002) (affirming 3.65 multiplier on appeal and finding that multipliers ranged as high as 19.6, with the most common range from 1.0 to 4.0). Moreover, while the benchmark in the Ninth Circuit for attorneys' fees is 25%, as would be further detailed at the final approval stage, Lead Counsel believes several factors support an above-benchmark award, including, *inter alia*, the substantial difficulty and risks of litigation in case, the substantial work performed by Lead Counsel in this and other courts, the substantial recovery for the proposed Settlement Class obtained, and a negative lodestar multiplier. *See, e.g.*, *Durham v. Sachs Elec. Co.*, No. 18-CV-04506-BLF, 2022 WL 2307202, at *8 (N.D. Cal. June 27, 2022) (approving 33% fee) (Freeman, J.).

Lead Counsel also intends to seek payment for Litigation Expenses in an amount not to exceed $375,000.00, which includes costs for experts, mediation fees, online legal and factual research, bankruptcy counsel, travel, among other litigation costs and expenses. Uris Decl., at ¶16. Lead Counsel also intend to seek awards under the PSLRA for Lead Plaintiff Stadium Capital of up to $10,000 and for plaintiff David Sherman of up to $2,500, in reimbursement for the time that Plaintiffs dedicated to the Action. *Id.*, ¶18. Lead Counsel believes such amounts are merited by the substantial work that Plaintiffs did throughout this matter, which will be presented to the Court through declarations in connection with Plaintiffs' request for reimbursement. District Guidelines ¶7. Among other things, such work included assisting Lead Counsel with the preparation of complaints in this matter, consulting with Lead Counsel as requested, and on their own initiative, regarding the status and strategy of the litigation throughout the pendency of this case, monitoring the proceedings on their own behalf and on behalf of the putative class, monitoring developments in the news with respect to Defendants, and consulting with Lead Counsel regarding the terms of the proposed Settlement. Uris Decl., at ¶19. Moreover, the amount of such awards is reasonable because the total amount of the awards in aggregate ($12,500) would amount to just .114% of the

total recovery. *See, Durham v. Sachs Elec. Co.*, No. 18-CV-04506-BLF, 2022 WL 2307202, at *9 (N.D. Cal. June 27, 2022) (finding service award representing .645% of settlement fund reasonable) (Freeman, J.); *Kang v. Wells Fargo Bank, N.A.*, No. 17-CV-06220-BLF, 2021 WL 5826230, at *18 (N.D. Cal. Dec. 8, 2021) (Freeman, J.), *aff'd sub nom. Kang v. Fyson*, No. 22-15694, 2022 WL 6943174 (9th Cir. Oct. 12, 2022) (awarding $10,000 to each of two named plaintiffs).

## III.    PROPOSED SCHEDULE OF EVENTS AND FINAL APPROVAL

Lead Plaintiff respectfully proposes the following schedule for the various Settlement-related events, each of which is reflected in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Settlement Notice and Claim Form ("Notice Date") | 20 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing Summary Settlement Notice | 10 calendar days after Notice Date |
| Deadline for filing papers in support of final approval of the Settlement, plan of allocation, and Lead Counsel's request for attorneys' fees and litigation expenses | 35 calendar days prior to Settlement Fairness Hearing |
| Deadline for request for exclusion from the Settlement Class; or objections to the Settlement, Plan of Allocation, or the request for attorneys' fees and expenses | 21 calendar days before the Settlement Fairness Hearing |
| Deadline for filing reply papers | 14 calendar days prior to Settlement Fairness Hearing |
| Settlement Fairness Hearing | At the Court's earliest convenience, but no fewer than 75 calendar days after entry of Preliminary Approval Order |
| Postmark or online deadline for submitting Claim Forms | 120 calendar days after the Notice Date |

## IV.    CONCLUSION

For the reasons discussed herein, Lead Plaintiff respectfully requests that the Court grant its unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order.

1    DATED: May 1, 2025                Respectfully submitted,

2                                      **KAPLAN FOX & KILSHEIMER LLP**

3                                      By:   /s/  *Laurence D. King*
                                               Laurence D. King
4
                                       Laurence D. King (SBN 206423)
5                                      Blair E. Reed (SBN 316971)
                                       1999 Harrison Street, Suite 1560
6                                      Oakland, CA 94612
                                       Telephone:  415-772-4700
7                                      Facsimile:  415-772-4707
                                       *lking@kaplanfox.com*
8                                      *breed@kaplanfox.com*

9                                      **KAPLAN FOX & KILSHEIMER LLP**
                                       Frederic S. Fox (admitted *pro hac vice*)
10                                     Donald R. Hall (admitted *pro hac vice*)
                                       Jason A. Uris (admitted *pro hac vice*)
11                                     800 Third Avenue, 38th Floor
                                       New York, NY 10022
12                                     Telephone:  212-687-1980
                                       Facsimile:  212-687-7714
13                                     *ffox@kaplanfox.com*
                                       *dhall@kaplanfox.com*
14                                     *juris@kaplanfox.com*

15                                     *Lead Counsel for Lead Plaintiff Stadium Capital LLC,*
                                       *Plaintiff David Sherman and the Proposed Class*
16

17

18

19

20

21

22

23

24

25

26

27

28