Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:  415-772-4707
Emails: *lking@kaplanfox.com*
         *breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
Emails: *ffox@kaplanfox.com*
         *dhall@kaplanfox.com*
         *juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium*
*Capital LLC, Plaintiff David Sherman and the*
*Proposed Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ASIF MEHEDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VIEW, INC. f/k/a CF FINANCE ACQUISITION CORP. II, RAO MULPURI, VIDUL PRAKASH, HOWARD W. LUTNICK, PAUL PION, ALICE CHAN, ANSHU JAIN, ROBERT J. HOCHBERG, CHARLOTTE S. BLECHMAN, CF FINANCE HOLDINGS II, LLC, CANTOR FITZGERALD & CO., CANTOR FITZGERALD, L.P., AND CF GROUP MANAGEMENT, INC.,<br><br>Defendants. | Case No.: 5:21-cv-06374-BLF<br><br><u>**CLASS ACTION**</u><br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. Beth L. Freeman<br>Courtroom:  1, 5th Floor<br>Date:  November 6, 2025<br>Time:  9:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Court's July 18, 2025 Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 258) (the "Preliminary Approval Order"), Lead Plaintiff will and hereby does move the Court, before the Honorable Beth Labson Freeman, on November 6, 2022, at 9:00 a.m. by Zoom videoconference, for entry of (i) an order granting final approval of the proposed settlement (the "Settlement") set forth in the Stipulation of Settlement and Agreement dated April 25, 2025 (ECF No. 246-1) and granting final certification of the proposed Settlement Class; and (2) an order approving the proposed Plan of Allocation.

This Motion is based on this Notice of Motion and Motion (together, the "Motion"); the supporting Memorandum that follows; the Stipulation; the accompanying declarations – including those of Jason A. Uris in Support of (A) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation and (B) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses, dated October 2, 2025 ("Uris Decl."); of Tina Chiango Regarding (A) Mailing of Notice; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received To Date, dated October 2, 2025 ("Chiango Decl."); of Joseph Zicherman in Support of (A) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (B) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Zicherman Decl."); of David Sherman in Support of (A) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (B) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Sherman Decl."); all other prior pleadings and papers in this Action; the arguments of counsel; and any additional information or argument that may be required by the Court.[1]

---

[1] Lead Plaintiff submitted a [Proposed] Final Judgment Approving Class Action Settlement as an exhibit to the Stipulation, which contemplates identifying members of the Class who have sought to be excluded from the Class. *See* ECF No. 246-1 (Exhibit B). Lead Plaintiff will submit an updated proposed Final Judgement Approving Class Action Settlement on reply in order to identify any members of the Settlement Class who have timely sought to be excluded by the October 16, 2025 deadline to do so.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court should grant final approval of the proposed Settlement as fair, reasonable, and adequate under Rule 23(e)(2) and grant final certification of the proposed Settlement Class.

2.     Whether the Court should grant final approval of the Plan of Allocation as fair, reasonable, and adequate.

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ........................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

PRELIMINARY STATEMENT ................................................................................................... 1

SUMMARY OF THE LITIGATION ........................................................................................... 2

ARGUMENT ................................................................................................................................... 2

I.      THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL UNDER RULE 23(E)(2) AND THE NINTH CIRCUIT FACTORS ........................................................ 2

      A.    The Relief that the Settlement Provides for the Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors ....................................................................................................... 5

            1.    The Amount of the Proposed Settlement .................................................... 5

            2.    The Strengths and Weaknesses of Plaintiffs' Case and the Significant Risks of Continued Litigation ....................................................................... 6

            3.    The Complexity, Expense, and Duration of Continued Litigation ............. 9

            4.    Risks of Obtaining and Maintaining Class Action Status ......................... 10

            5.    The Extent of Discovery Completed and the Stage of Proceedings ......... 10

            6.    The Experience and Views of Counsel ..................................................... 12

             7.    Existence of a Government Participant ...................................................... 12

            8.    The reaction of Settlement Class Members to date ................................... 13

      B.    The Remaining Rule 23(e)(2) Factors Support Approval of the Settlement ........ 14

            1.    Plaintiffs and Lead Counsel Have Adequately Represented the Class ..... 14

             2.    The Settlement Is the Product of Arm's Length Negotiations by Informed Counsel ...................................................................................... 14

            3.    The Proposed Method of Distribution and Claims Processing Ensures Equitable Treatment of Settlement Class Members ................................... 15

            4.    The Terms of Any Proposed Award of Attorneys' Fees .......................... 15

            5.    Lead Plaintiff Has Identified All Agreements Made in Connection With the Settlement .................................................................................. 16

II.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ................................. 16

III.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE
        SETTLEMENT CLASS ................................................................................ 19

IV.     NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE
        23, DUE PROCESS, AND THE PSLRA ....................................................... 19

CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadilla v. Precigen, Inc.*,
   No. 20-cv-06936-BLF, 2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ................................. 12, 14

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) .......................................................................................... 2

*Chavez v. Converse, Inc.*,
   No. 15-cv-03746-NC, 2020 WL 4047863 (N.D. Cal. July 8, 2020) ......................................... 15

*Ching v. Siemens Indus., Inc.*,
   No. C 11-4838 MEJ, 2013 WL 6200190 (N.D. Cal. Nov. 27, 2013) ........................................ 19

*Churchill Village L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................ 4, 5, 13, 19

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................... 4, 16

*Davis v. Yelp, Inc.*,
   No. 18-cv-00400-EMC, 2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ..................................... 4

*Destefano v. Zynga, Inc.*,
   No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................................... 5, 9

*Eisen v. Porsche Cars N. Am., Inc.*,
   No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ........................ 11

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ........................................................................................... 14

*Fleming v. Impax Lab'ys Inc.*,
   No. 16-cv-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) ................................... 11

*Free Range Content, Inc. v. Google, LLC*,
   No. 14-cv-02329-BLF, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ..................................... 2

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................ 3

*Grant v. Capital Mgmt. Servs., L.P.*,
   No. 10-cv-2471-WQH (BGS), 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013) ........................... 2

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 4, 5

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ..................................................................................... 10

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4. 2018).........................16

*In re Amgen Inc. Sec. Litig.*,
  No. CV 7-2536 PSG (PLAx), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)..........................9

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  No. 17-md-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019) ......................................4

*In re Extreme Networks, Inc. Sec. Litig.*,
  No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019).................................6, 18

*In re Google LLC Street View Elec. Commc'ns Litig.*,
  No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)..................................13

*In re Heritage Bond Litig.*,
  546 F.3d 667 (9th Cir. 2008)..........................................................................................3

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................................9

*In re LendingClub Securities Litig.*,
  No. C 16-02627 WHA, 2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) ...................................15

*In re LinkedIn User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015).......................................................................................9

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)........................................................................................5, 10

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................6, 8, 10, 16

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................................14

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007).....................................21

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5183 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007).......................................8

*In re Rambus Inc. Derivative Litig.*,
  No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)...................................10

*In re RH, Inc. Sec. Litig.*,
  No. 4:17-00554-YGR, 2019 WL 5538215 (N.D. Cal. Oct. 25, 2019).....................................20

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008)...........................................................................................3

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
MDL No. 2672 CRB (JSC), 2019 WL 2077847 (N.D. Cal. May 10, 2019) ............................... 4

*In re Wells Fargo Collateral Prot. Ins. Litig.*,
No. SAML 17-02797 AG (KESx), 2019 WL 6219875 (C.D. Cal. Nov. 4, 2019).................... 13

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
No. 3:09-cv-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)................................. 6

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................................. 6

*Kuraica v. Dropbox, Inc.*,
No. 19-cv-06348-BLF, 2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) ................................. 13

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012).......................................................................................... 4

*Luna v. Marvell Tech. Grp.*,
No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018)................................. 19

*Mild v. PPG Indus., Inc.*,
No. 2:18-CV-04231-RGK-JEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ....................... 8

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982)....................................................................................... 4, 5

*Redwen v. Sino Clean Energy, Inc.*,
No. 11-3936, 2013 WL 12303367 (C.D. Cal. July 9, 2013)..................................................... 11

*Satchell v. Fed. Express Corp.*,
No. C03–2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..................................... 15

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
No. C 18-02902 WHA, 2022 WL 409702 (N.D. Cal. Feb. 10, 2022) ................................. 12

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994)......................................................................................... 19

*Taafua v. Quantum Glob. Techs., LLC*,
No. 18-cv-06602-VKD, 2021 WL 579862 (N.D. Cal. Feb. 16, 2021) ............................... 13

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)........................................................................................ 6, 9

*Vataj v. Johnson*,
No. 19-cv-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ............................... 13

*Wahl v. Yahoo! Inc.*,
No. 17-cv-02745-BLF, 2018 WL 6002323 (N.D. Cal. Nov. 15, 2018)................................ 12

**TABLE OF AUTHORITIES - (cont.)**

Page(s)

*Wong v. Arlo Techs., Inc.*,
No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ........................... 6, 18

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................................ 17, 20

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

**Other Authorities**

Laarni T. Bulan & Eric Tam,
*Securities Class Action Settlements: 2024 Review and Analysis*,
CORNERSTONE RESEARCH (2025) .......................................................................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff respectfully submits this Memorandum of Points and Authorities in support of its motion for final approval of the proposed Settlement and Plan of Allocation.[2]

## PRELIMINARY STATEMENT

Pursuant to the terms of the Settlement, Lead Plaintiff has obtained a recovery of $11,000,000 in order to resolve all claims at issue in the Action. The Settlement is a very positive result for the Settlement Class, as it represents a significant percentage of the estimated recoverable damages and exceeds the median securities class action settlement in the Ninth Circuit between 2015 and 2024. *See* Uris Decl. ¶¶ 51-52. Although the deadline to object to the Settlement has not yet passed, to date, no Settlement Class Member has objected to the Settlement or Plan of Allocation, nor has any Settlement Class Member elected to opt out of the Settlement. *Id*. ¶ 6.

The decision to settle the case was well-informed by approximately four years of hard-fought litigation that involved a comprehensive investigation, preparation of two detailed amended complaints, two rounds of briefing on Defendants' motions to dismiss the complaints, consulting with experts regarding loss causation and damages issues as well as accounting issues, and a hard-fought settlement process with experienced defense counsel and an experienced Mediator. *See generally* Uris Decl. ¶¶ 5, 11-35, 46-55. In fact, at the time the parties agreed to the Settlement the parties were preparing their respective appeals before the Ninth Circuit merits panel. *Id*. ¶ 78.

The Court granted preliminary approval of the Settlement on July 18, 2025. *See* ECF No. 258. In that Order, the Court approved the process by which Settlement Class Members would receive notice of the Settlement and submit claims and objections. *Id*. To date, the Court-authorized Claims Administrator, RG/2 Claims Administration LLC ("RG/2"), has disseminated 51,557 copies of the Notice and Claim Form to potential Settlement Class Members and nominees. *See* Chiango Decl., attached as Exhibit 1 to the Uris Decl., ¶ 8. The Notice, Claim Form, and other key Settlement documents have been made available on a dedicated website maintained for the Settlement by RG/2. *Id*. ¶ 10. In addition, the Summary Notice was published in *Investor's*

---

[2] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated April 25, 2025 (ECF No. 246-1) (the "Stipulation").

*Business Daily* and transmitted over *PR Newswire*. *Id.* ¶ 9. While the deadlines for submitting claims, exclusions from the Settlement Class, and objections to the Settlement have not yet passed, to date, no Settlement Class Member has objected to the Settlement or Plan of Allocation or requested to opt out. Uris Decl. ¶ 6. Moreover, Plaintiffs fully support the Settlement. *See* Zicherman Decl., attached as Exhibit 7 to the Uris Decl., ¶ 9; Sherman Decl., attached as Exhibit 8 to the Uris Decl., ¶ 10.

Accordingly, Lead Plaintiff submits that the Settlement meets the standards for final approval under Rule 23 and is a fair, reasonable, and adequate result for the Settlement Class, and respectfully requests that the Court grant final approval of the Settlement. In addition, the Plan of Allocation, which was developed with the assistance of Lead Plaintiff's damages expert (and provides for a customary *pro rata* allocation of the Net Settlement Fund based on Settlement Class Members' respective "Recognized Losses"), is a fair and reasonable method for distributing the Net Settlement Fund and should also be approved by the Court.

## SUMMARY OF THE LITIGATION

Lead Counsel respectfully refers the Court to the accompanying Uris Declaration for a detailed description of the procedural history of the Action, the claims asserted, the investigation undertaken by Lead Counsel, the parties' extensive motion practice, the negotiations and settlement conferences resulting in the Settlement and the risks and uncertainties involved in prosecuting the Action through trial. *See generally* Uris Decl., ¶¶ 11-55, 66, 69, 71-79.

## ARGUMENT

### I. The Proposed Settlement Merits Final Approval Under Rule 23(e)(2) and the Ninth Circuit Factors

In the Ninth Circuit, there is a strong judicial policy in favor of settlement of litigation, especially in complex class actions. *See*, *e.g.*, *Free Range Content, Inc. v. Google, LLC*, No. 14-cv-02329-BLF, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019) ("'[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'") (Freeman, J.) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)); *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at *2 (S.D. Cal. Dec. 11,

2013) ("Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation.") (citation omitted).  The settlement of complex cases like this one also promotes efficient utilization of scarce judicial resources and the speedy resolution of claims.  *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continu[ed] . . . litigation" and "produce[s] a prompt, certain, and substantial recovery for the [] class.")

However, under Federal Rule of Civil Procedure 23(e) the "claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

In considering whether a settlement is fair, reasonable, and adequate at final approval, Rule 23(e)(2) provides that the Court should consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(A)-(D).  Additionally, courts in the Ninth Circuit look at the following factors when assessing final approval of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

1    *Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *accord Lane v. Facebook,*

2    *Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

3    (9th Cir. 1998); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.*

4    *Litig.*, MDL No. 2672 CRB (JSC), 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving

5    settlement after considering both the "Rule 23(e)(2) factors … and the factors identified in" Ninth

6    Circuit case law).

7        The Ninth Circuit has explained that courts' review of settlements should be "limited to the

8    extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

9    overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

10   whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. Thus, a

11   settlement hearing should "not to be turned into a trial or rehearsal for trial on the merits," *Officers*

12   *for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and a court "need not 'reach

13   any ultimate conclusions on the contested issues of fact and law which underlie the merits of the

14   dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and

15   expensive litigation that induce consensual settlements.'" *Class Plaintiffs v. City of Seattle*,

16   955 F.2d 1268, 1291 (9th Cir. 1992).

17       At preliminary approval, the Court found that the relevant factors showed that the

18   Settlement was likely fair, reasonable, and adequate, subject to further review at the Fairness

19   Hearing. ECF No. 258.  The Court's conclusion on preliminary approval is equally true now, as

20   nothing has changed between July 17, 2025, and the present to contradict the Court's preliminary

21   findings. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, No.

22   17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn

23   at preliminary approval] stand and counsel equally in favor of final approval now."); *Davis v. Yelp,*

24   *Inc.*, No. 18-cv-00400-EMC, 2023 WL 3063823, at *1 (N.D. Cal. Jan. 27, 2023) (reaffirming

25   finding at preliminary approval stage). As discussed below, the Settlement is fair, reasonable, and

26   adequate and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

27

28

1

2

**A.    The Relief that the Settlement Provides for the Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

3

4

5

6

7

8

The issue considered under Rule 23(e)(2)(C)—whether the "relief provided for the class is adequate"—overlaps considerably with the additional Ninth Circuit factors used to assess final approval of a settlement, and all entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide." *See* Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment; *see also Churchill,* 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026. Here, each of these factors supports approval.

9

**1.    The Amount of the Proposed Settlement**

10

11

12

13

14

15

16

17

18

19

The amount of a settlement "is generally considered the most important [factor], because the critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). In assessing the recovery, a fundamental question is how the value of the settlement compares to the amount the Class potentially could recover at trial, discounted for risk, delay, and expense. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F. 2d at 624.

20

21

22

23

24

Here, the Settlement Amount—$11 million in cash—represents a favorable recovery for the Class in light of the risks.  The $11 million settlement represents 16.3% to 32.8% of the estimated recoverable damages in this case. Uris Decl., at ¶ 51. The high end of the estimated recoverable damages assumes that Lead Plaintiff would prevail entirely on all issues of liability, loss causation and damages in the litigation.  *Id*.

25

26

27

28

Moreover, the recovery exceeds the median 7.5% recovery in cases alleging claims under the Exchange Act between 2015 and 2024, and exceeds the median settlement amount of $10.0 million in the Ninth Circuit. *See* Laarni T. Bulan & Eric Tam, *Securities Class Action Settlements: 2024 Review and Analysis*, CORNERSTONE RESEARCH, at 20 (2025),

https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf.

The $11 million Settlement represents an excellent result for the Class, especially when considered in light of the real risk of lesser recovery (or no recovery at all), and the typical level of recovery in securities class actions. *See, e.g.*, *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (approving $1.25 million settlement representing "2.35% of the total damages that Lead Plaintiff estimated could have been recovered if his case was successful on all issues of liability and damages in the Litigation.") (Freeman, J.); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving $7 million settlement representing "a recovery of between 5% and 9.5% of non-disaggregated damages") (Freeman, J.); *see also Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (finding 3.5% recovery to be within "the median recovery in securities class actions settled in the last few years"); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding 9% recovery to be "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

### 2.    The Strengths and Weaknesses of Plaintiffs' Case and the Significant Risks of Continued Litigation

To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc*., 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The $11 million Settlement is an excellent result in light of the substantial risks that Lead Plaintiff and the Settlement Class would face in proving all of the elements of the asserted claims. Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit. However, in agreeing to settle, Lead Plaintiff and Lead Counsel weighed, among other things, the substantial cash benefit to Settlement Class Members against: (i) the uncertainties associated with

trying complex securities cases; (ii) the difficulties and challenges involved in proving each element of the claims at issue in this particular case; (iii) the difficulties and challenges involved in certifying a class; (iv) the fact that, even if Lead Plaintiff prevailed at summary judgment and trial, any monetary recovery could have been less than the Settlement Amount; and (v) the delays that would follow even a favorable final judgment, including appeals.  Uris Decl. ¶ 47.  For example, the Court's order granting in part and denying in part Defendants' motions to dismiss the Second Amended Complaint (the "MTD Order") dismissed Plaintiffs' 10(b) claims, finding that Plaintiffs failed to allege scienter.  *Id*.  The MTD Order also found that alleged misstatements related to View's practice relative to its product warranties were not materially misleading.  *Id*.  Lead Plaintiff recognizes the expense and length of continued proceedings necessary to pursue its claims against Defendants through the Court's ruling on class certification, summary judgment, pre-trial motions, a trial, and appeals, as well as the very substantial risks they would face in establishing liability and damages.  *Id*.

Defendants also had substantial loss causation defenses. This case, for example, did not involve a single drop in View's share price in response to a "clean" disclosure that one or more of the Company's prior statements about the Company's warranty-related obligations had been false. Instead, this case involved multiple alleged corrective disclosures with Lead Plaintiff alleging that the truth about Defendants' alleged misstatement emerged gradually as View more fully disclosed the extent and severity of the warranty accrual issue. On the facts alleged, proving loss causation was particularly challenging because View did not report its restated warranty-related accruals until May 31, 2022. On that same date, View reported "'[r]ecord revenue of $74 million, up 125% year-over-year, and exceeding previous guidance range of $65 million to $70 million.'" *Id.* ¶ 48. While Lead Plaintiff alleges that the fact that the Company's share price did not fall (but rather increased) on this announcement confirmed that investors understood the earlier alleged partial corrective disclosures as at least partial disclosures of the inaccuracy of the previously reported warranty accruals, the fact that View also announced positive news (which was potentially "confounding") unrelated to the Company's warranty accrual, would likely make proving loss causation with respect to the observed price declines on the alleged partial corrective disclosure dates difficult.

Moreover, Defendants likely would have strenuously argued for the exclusion of each of the alleged corrective disclosures on the grounds Lead Plaintiff could not sufficiently link each to Defendants' alleged fraud, and that when any confounding non-fraud related information on those dates are disaggregated the amount of alleged damages are significantly reduced. If these arguments prevailed at class certification, summary judgment, or trial, the Settlement Class could have recovered significantly less or, indeed, nothing. *Id.*

While Lead Counsel is confident that the Settlement Class meets the requirements for certification, the Class had not yet been certified, and Lead Counsel is aware that there is a risk the Court could disagree. Even if the Court were to certify the Class, there is always a risk that the Class could be decertified at a later stage in the proceedings. *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1041 (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification if the Action had reached that stage.

Nonetheless, despite these risks, Lead Plaintiff obtained a $11 million Settlement that represents a decidedly superior result. Moreover, this recovery must be compared to the real risk that the Class would recover nothing after summary judgment, trial, and likely appeals, possibly years into the future. *See Mild v. PPG Indus., Inc.*, No. 2:18-CV-04231-RGK-JEM, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) (recognizing the "significant risk that continued litigation might yield a smaller recovery or no recovery at all"); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5183 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (same). Moreover, even if Lead Plaintiff had prevailed in full on all its claims against Defendants, the Class's ability to actually collect on a judgment significantly greater than $11 million (let alone one anywhere near the Class's maximum reasonably recoverable damages) is doubtful at best. For example, View's business had been in sharp decline throughout the pendency of the litigation, and in fact, in April 2024 View filed for Chapter 11 bankruptcy.  ECF No. 205.

In sum, the proposed Settlement is fair and reasonable in light of the significant risks of

1    continued litigation.

2    ### 3.    The Complexity, Expense, and Duration of Continued Litigation

3        Courts consistently recognize that the likely duration and costs of continued litigation are

4    key factors in evaluating the reasonableness of a settlement. *See, e.g., Torrisi*, 8 F.3d at 1376

5    (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement

6    fair). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are

7    preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy*

8    *Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015); *see also In re Heritage Bond Litig.*, No. 02-ML-1475

9    DT, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (finding that securities class actions have

10   well-deserved reputation for complexity).

11       Here, without the proposed Settlement, continued litigation would have required further

12   extensive briefing on Defendants' interlocutory appeal (and Plaintiffs' conditional cross-appeal)

13   before the Ninth Circuit, to be followed by (assuming that Plaintiffs prevailed before the Ninth

14   Circuit): (i) the undertaking of comprehensive document discovery that, to a significant degree,

15   would have involved technical materials regarding View's warranty accrual, warranty policy,

16   quality issues identified in 2019 related to defective sealing components for the Company's IGUs,

17   costs View incurred and intended to incur when replacing the Company's insulated glass units

18   (including installation labor and freight costs), View's accounting policies, and due diligence

19   conducted in connection with the Business Combination; (ii) the taking of depositions of numerous

20   View and CF II officers and employees on the details of those same topics; (iii) an expert discovery

21   process that was expected to include, at a minimum, both sides retaining experts on loss causation

22   and damages issues; (iv) full briefing of a contested class certification motion, and related expert

23   discovery; (v) overcoming Defendants' anticipated summary judgment motion (vi) extensive pre-

24   trial motion practice such as motions *in limine* and *Daubert* motions; (vii) trial; and (viii) likely

25   post-trial motions, and thereafter appeals, by the losing side. The continued litigation and appeals

26   would have been costly and would have substantially delayed any recovery for Class Members,

27   possibly for years. *See Zynga*, 2016 WL 537946, at *10; *In re Amgen Inc. Sec. Litig.*, No. CV 7-

28   2536 PSG (PLAx), 2016 WL 10571773, at *3 ("A trial of a complex, fact-intensive case … [as

1    here] … could have taken weeks, and the likely appeals of rulings on summary judgment and at

2    trial could have added years to the litigation.").

3          As opposed to continued litigation, with its risk, expense, and potential delay, the Settlement

4    provides a certain, near-term recovery for the Settlement Class. *See Hartless v. Clorox Co.*, 273

5    F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and delays, an immediate and

6    certain recovery for class members … favors settlement of this action."), *aff'd in part*, 473 F. App'x

7    716 (9th Cir. 2012). This factor favors the Court granting final approval of the Settlement.

8          **4.      Risks of Obtaining and Maintaining Class Action Status**

9          At the time the parties reached the Settlement, Lead Plaintiff had not yet moved for class

10   certification. While Lead Counsel is confident that the Settlement Class meets the requirements for

11   certification, there was no guarantee that the proposed class would be certified and that certification

12   could have been retained through summary judgment and trial. *See also, e.g.,  Omnivision*, 559 F.

13   Supp. 2d at 1041 (even if class were certified, "there is no guarantee the certification would survive

14   through trial, as Defendants might have sought decertification or modification of the class").

15   Indeed, even if the class was certified, Defendants may have petitioned the Ninth Circuit pursuant

16   to Rule 23(f) for an interlocutory appeal. Such appeals can take many months or even over a year

17   to be resolved, and there was a risk that the Ninth Circuit may have reversed the Court's decision

18   on class certification.

19         **5.      The Extent of Discovery Completed and the Stage of Proceedings**

20         In assessing a settlement, courts should consider the stage of the proceedings and the

21   amount of information available to the parties to assess the strengths and weaknesses of their case.

22   *See, e.g., Mego Fin. Corp.*, 213 F. 3d at 458-59; *In re Rambus Inc. Derivative Litig.*, No. C 06-3513

23   JF (HRL), 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009).

24         At the time the Parties agreed to settle, Lead Plaintiff and Lead Counsel had vigorously

25   litigated the Action and had a well-founded and realistic understanding of the strengths and

26   weaknesses of the claims and defenses asserted. The Action has been hotly contested from its

27   inception, more than four years ago. As a result, Lead Plaintiff's and Lead Counsel's knowledge of

28   the strengths and weaknesses of the claims alleged and the stage of the proceedings are more than

adequate to support the Settlement. This knowledge is based on, among other things, Lead Counsel's investigation before filing *two* comprehensive consolidated amended complaints, the briefing and orders on Defendants' various motions to dismiss the AC and SAC; the briefing and orders on Defendants' motion to certify for interlocutory appeal the Court's order granting the Reconsideration Motion; the briefing and orders on Defendants' petition (and Plaintiffs' cross-petition) for interlocutory appeal before the Ninth Circuit; retaining bankruptcy counsel and filing an extensive objection to the prepackaged plan of reorganization before the bankruptcy court; consultations with experts loss causation and damages issues; and extensive settlement negotiations, including three separate mediation sessions, one of which was an all-day mediation session conducted face-to-face in New York City, where the Parties' claims and defenses were fully vetted, preceded by the exchange of detailed mediation statements. *See* Uris Decl. §§ II, IV.

In particular, Lead Counsel conducted an extensive review of publicly available information before filing the complaints, including documents filed publicly by the Company with the U.S. Securities and Exchange Commission; press releases, news articles, analyst reports, and other publicly available information and data concerning View, CF II, and the other Defendants, as well as consultations with experts. AC & SAC, ECF Nos. 96, 175 at 1.

In sum, Lead Plaintiff had a firm understanding of the likelihood of success and the potential recovery at trial at the time the Settlement was entered into. *Fleming v. Impax Lab'ys Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) (finding this factor weighed in favor of approval where "[t]hough the parties ha[d] yet to begin formal discovery, the parties reached settlement after more than four years of litigation in both trial and appellate courts, extensive fact investigation, and mediation sessions with the Hon. Layn R. Phillips (Ret.). . . [and thus t]he Court is persuaded that Plaintiffs' counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, such that the understanding allowed them to assess the likelihood of success on the merits."); *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement where record established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses"); *Redwen v. Sino Clean Energy, Inc.*, No.

11-3936, 2013 WL 12303367, at *7 (C.D. Cal. July 9, 2013) (settlement approved when, as here, "the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative"). This factor supports final approval of the Settlement.

### 6.    The Experience and Views of Counsel

Courts have also given considerable weight to the opinion of experienced and informed counsel who support settlement. *See Wahl v. Yahoo! Inc.*, No. 17-cv-02745-BLF, 2018 WL 6002323, at *4 (N.D. Cal. Nov. 15, 2018) ("Plaintiff and Defendants are represented by experienced counsel, whose views on the settlement are entitled to significant weight.") (Freeman, J.); *SEB Inv. Mgmt. AB v. Symantec Corp.*, No. C 18-02902 WHA, 2022 WL 409702, at *7 (N.D. Cal. Feb. 10, 2022) ("Class counsel . . . is experienced in securities litigation so their support behind the settlement carries weight."). Here, Lead Counsel has a thorough understanding of the merits and risks of the Action and has extensive experience in securities litigation. *See* Uris Decl., Ex. 6; www.kaplanfox.com. Lead Counsel's belief in the fairness and reasonableness of this Settlement should be afforded significant weight.

### 7.    Existence of a Government Participant

Courts have also given consideration to the presence of a governmental participant. *Precigen*, 2023 WL 7305053, at *11. Here, there was no governmental participant in the litigation at the time the initial complaint was filed in August 2021. Nor was there a governmental participant by the time Lead Plaintiff and Lead Counsel filed the comprehensive Amended Complaint on July 15, 2022. Nearly *two years* after the initial complaint in this Action was filed, it was announced that as a result of View's self-reporting its failure to properly account for its warranty accrual, prompt undertaking of remedial measures, and cooperation with SEC staff's investigation, View reached a Settlement with the SEC in connection with which the SEC decided not to impose civil penalties. Uris Decl. ¶ 56. While the cease-and-desist order did find that View had violated Section 14(a) of the Exchange Act, the cease-and-desist order was limited solely to defendant View. Similarly, while the SEC concurrently filed a complaint charging defendant Prakash with violations of Sections 17(a)(3), 14(a), and 14b2-1 of the Exchange Act, that complaint was brought solely

- 12 -

against defendant Prakash. *Id.* Moreover, even with respect to Lead Plaintiff's 14(a) claim against Prakash, Lead Plaintiff still had to plead, and would ultimately need to prove liability, including with respect to loss causation and damages. *Id.* As described in more detail in the Uris Declaration, Lead Plaintiff would have faced substantial challenges in doing so. *Id.* ¶¶47-55.

In sum, while the SEC's investigative work provided an assist nearly two years into this hard-fought litigation, this is decidedly not a case where Plaintiff could have had a "free ride" to any settlement – let alone a better settlement than the $11 million recovery obtained here. Uris Decl., ¶¶ 46-56. Accordingly, this factor does not diminish the approvability of the Settlement. *In re Wells Fargo Collateral Prot. Ins. Litig.*, No. SAML 17-02797 AG (KESx), 2019 WL 6219875, at *3 (C.D. Cal. Nov. 4, 2019).

### 8. The reaction of Settlement Class Members to date

In assessing the fairness of a class action settlement, "courts within the Ninth Circuit typically consider 'the reaction of the class members [to] the proposed settlement.'" *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020); *see also Churchill*, 361 F.3d at 577. Specifically, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v. Dropbox, Inc.*, No. 19-cv-06348-BLF, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021) (Freeman, J.). Here, as of October 2, 2025, although Notice has been mailed to 51,557 potential Class Members and Nominees, ***no*** objections to the Settlement have been submitted, and ***no*** requests for exclusion has been received. Chiango Decl., ¶¶ 8, 12; Uris Decl., ¶ 6. This factor is thus on track to also be strongly supportive of the Settlement. *See, e.g., Vataj v. Johnson*, No. 19-cv-06996-HSG, 2021 WL 5161927, at *7 (N.D. Cal. Nov. 5, 2021) (the "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Taafua v. Quantum Glob. Techs., LLC*, No. 18-cv-06602-VKD, 2021 WL 579862, at *7 (N.D. Cal. Feb. 16, 2021) ("The lack of objections and low number of requested exclusions . . . indicates support among the class members and weighs in favor of approving the settlement."). Should any objections be received after the date of this brief, Lead Plaintiff will address them in reply papers.

**B.      The Remaining Rule 23(e)(2) Factors Support Approval of the Settlement**

**1.      Plaintiffs and Lead Counsel Have Adequately Represented the Class**

Plaintiffs and Lead Counsel have adequately represented the Class as required by Fed. R. Civ. P. 23(e)(2)(A). To determine adequacy, "the Court 'must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Abadilla v. Precigen, Inc.*, No. 20-cv-06936-BLF, 2023 WL 7305053, at *5 (N.D. Cal. Nov. 6, 2023) (Freeman, J.) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)).

Here, Plaintiffs' claims, which are based on a common course of alleged misconduct by Defendants, are typical of those of the Class, and Plaintiffs have no interests antagonistic to those of other Class members. Plaintiffs – like all other Class Members – also have a common interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Lead Counsel have also shown their commitment to the Class by vigorously prosecuting the Action for approximately four years. Uris Decl., ¶¶ 11-35, 66. Lead Plaintiff has also shown its adequacy and commitment to the Class by, *inter alia*, retaining counsel highly experienced in securities class action litigation; reviewing pleadings and briefs; and communicating regularly with Lead Counsel regarding the case, including both litigation and settlement developments. *See generally* Zicherman Decl., ¶¶ 4-5.

**2.      The Settlement Is the Product of Arm's Length Negotiations by Informed Counsel**

The parties reached the Settlement after extensive arm's length negotiations between experienced counsel and with the assistance of an experienced mediator. The mediation process involved preparation of comprehensive mediation statements, pre-mediation conference calls with the Mediator, and three separate mediation sessions in May 2024, September 2024, and January 2025. Uris Decl. ¶ 31-34, 92. The September 2024 session was conducted face-to-face in New York

City. *Id.* ¶ 33. As courts in this District have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03–2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Chavez v. Converse, Inc.*, No. 15-cv-03746-NC, 2020 WL 4047863, at *2 (N.D. Cal. July 8, 2020) ("The assistance of an experienced neutral mediator during the settlement process supports the Court's conclusion that the Agreement is non-collusive."); *In re LendingClub Securities Litig.*, No. C 16-02627 WHA, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018)  ("Another factor weighing in favor of preliminary approval is that the proposed settlement agreement came about as a result of extensive mediation efforts supervised by Chief Magistrate Judge Joseph Spero[.]").

In sum, the extent of the litigation, the arm's-length nature of the negotiations, and the participation of experienced mediators all support a finding that the proposed Settlement is fair, reasonable, and adequate.

### 3. The Proposed Method of Distribution and Claims Processing Ensures Equitable Treatment of Settlement Class Members

The proposed method of distribution and claims processing ensures equitable treatment of Settlement Class Members, as their claims will be processed and the Net Settlement Fund distributed pursuant to a standard method routinely approved in securities class actions. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D); *see also infra* Section § II. The Court-authorized Claims Administrator, RG/2, will review and process all the received Claims, provide each Claimant an opportunity to cure any deficiency in a Claim or request judicial review of a denied Claim, if applicable, and if the Settlement is approved, will distribute Authorized Claimants their *pro-rata* share of the Net Settlement Fund, as calculated under the Plan of Allocation. *See* Uris Decl. ¶¶ 57-61.  This type of claims processing is standard in securities class actions and has long been used and found to be effective.

### 4. The Terms of Any Proposed Award of Attorneys' Fees

The relief provided for the Class in the Settlement is also adequate when the terms and timing of the proposed award of attorney's fees is considered.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the accompanying Fee Memorandum, the requested 33 $^1/_3$% fee is reasonable in

light of *inter alia* Lead Counsel's efforts in obtaining the $11 million cash recovery in the face of significant litigation risk.  Any fee award is also separate from approval of the Settlement, and no Party may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stipulation ¶ 22.

### 5.    Lead Plaintiff Has Identified All Agreements Made in Connection With the Settlement

Lastly, Rule 23(e)(2)(C) asks the Court to consider the Settlement's fairness in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed, the only agreement the Parties entered into in addition to the Stipulation was a confidential Supplemental Agreement regarding requests for exclusion.  Stipulation ¶ 42; ECF No. 246 at 7-8. The Supplemental Agreement gives Defendants the right to terminate the Settlement if the valid requests for exclusion from persons and entities entitled to be members of the Class exceed a confidential amount agreed to by the Parties. *Id*. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g., Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4. 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

## II.    The Plan of Allocation Is Fair and Reasonable

Along with requesting final approval of the Settlement, Lead Plaintiff requests final approval of the Plan of Allocation. Per Rules 23(e)(2)(C)(ii) and (e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other" and be "effective[]." Assessment of the Plan of Allocation "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *OmniVision*, 559 F. Supp. 2d at 1045; *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).

Here, the Plan of Allocation, which is set forth at pages 8-13 of the Settlement Notice, attached as Exhibit A to the Chiango Declaration), was drafted with the assistance of Lead Plaintiff's damages expert, based on the measure of damages for claims under the Exchange Act. Uris Decl. ¶ 57. The objective of the Plan of Allocation is to equitably distribute the Net Settlement

Fund among members of the Settlement Class who Class Members who submit valid and timely Claim Forms. *Id*. ¶ 58. The Plan provides for the calculation of a "Recognized Loss" amount for each properly documented purchase or acquisition of View and/or CF II securities during the Class Period, and each properly documented purchase or acquisition of CF II Class A common stock held stock as of the January 27, 2021 record date that were entitled to vote to approve the Business Combination. *Id*. A claimant's total Recognized Losses will depend on, among other things, when their securities were purchased and/or sold in relation to the disclosure dates alleged in the Action, whether the shares were held through or sold during the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e) (providing methodology for limiting damages in securities fraud actions), and the value of the shares when they were sold or held. The sum of a claimant's Recognized Losses is the Claimant's "Recognized Claim." *Id*.

The Recognized Loss formulas are tied to liability and damages. In developing the Plan of Allocation, the Lead Plaintiff's damages expert considered the amount of artificial inflation alleged to be present in View and/or CF II securities throughout the Class Period that was purportedly caused by the alleged fraud. For shares sold between August 17, 2021 and November 9, 2021, Recognized Loss Amounts for Class Members with 14(a) claims will be discounted to 50% in recognition of the Court's finding that loss causation was not pled for shares held through the August 16, 2021 disclosure that were sold prior to the November 9, 2021 disclosure. Based upon consultation with Lead Plaintiff's damages expert, all Recognized Loss Amounts for Class members with 10(b) claims will be discounted to 50% in recognition of, among other factors, the Court's dismissal of these claims and the particular challenges to being able to establish liability and damages.[3] *Id*. ¶ 59. For shares purchased before May 10, 2022 and held through this disclosure, the alleged artificial inflation will be discounted to 10% given the Court's dismissal of these claims and the particular challenges to being able to establish liability and damages. *Id*. An inflation table was created and is set forth in the Settlement Notice as part of the Plan of Allocation. *Id*. The table will be utilized by the Claims Administrator in calculating Recognized Loss amounts for claimants.

---

[3] Class Members who purchased between November 30, 2020 and January 25, 2021 and who were common shares or unit owners of record on January 27, 2021 will recover only for the loss, if any, calculated pursuant to their 14(a) Claim.

1    *Id.*

2    The Claims Administrator will calculate claimants' Recognized Losses using the

3    transactional information provided by claimants in their claim forms, which can be mailed to the

4    Claims Administrator, submitted online using the settlement website, or, for large investors, with

5    hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team. Because

6    most securities are held in "street name" by the brokers that buy them on behalf of clients, the

7    Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class Members'

8    transactional data and a claims process is required. Because the Settlement does not recover 100%

9    of alleged damages, the Claims Administrator will determine each eligible claimant's *pro rata* share

10    of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the

11    aggregate Recognized Claims of all eligible claimants. *Id.* ¶ 60.

12    Such customary plans of allocation, based on *pro rata* allocations to each class member

13    under a common formula, ensure that each Settlement Class Member's recovery is based upon the

14    relative losses he or she sustained, and that eligible Settlement Class Members will receive

15    distributions calculated in the same manner, and are routinely held to be fair and reasonable. *See,*

16    *e.g.*, *Wong*, 2021 WL 1531171, at *8 (approving plan of allocation under which "class members

17    who have submitted a Proof of Claim will have their trade information evaluated against the Class

18    definition and the Plan of Allocation to determine their 'Recognized Loss' in order to receive

19    payments on a pro rata portion of the Net Settlement Fund."); *In re Extreme Networks, Inc. Sec.*

20    *Litig.*, 2019 WL 3290770, at *8 (finding *pro rata* allocation "equitable").

21    If any funds remain after an initial distribution to Authorized Claimants as a result of

22    uncashed or returned checks or other reasons, subsequent distributions will also be conducted as

23    long as they are cost effective. Northern District of California's Procedural Guidance for Class

24    Action Settlements ¶ 8. If any residual funds remain after all cost-effective distributions of the Net

25    Settlement Fund to Authorized Claimants have been completed, at that time Lead Counsel will

26    propose a *cy pres* recipient for approval by the Court.

27    Notably, 57,557 copies of the Notice, which contains the Plan of Allocation and advises

28    Class Members of their right to object to the Plan, have been mailed to potential Class Members

and Nominees, but no objections to the Plan have been received to date. Chiango Decl., ¶ 8; Uris Decl. ¶ 6.  In sum, Lead Plaintiffs respectfully submit that the proposed Plan of Allocation is fair and reasonable and should be approved.

## III.    The Court Should Grant Final Certification of the Settlement Class

As set forth in Lead Plaintiff's motion for preliminary approval of the Settlement, the Settlement Class satisfies all of the requirements of Rules 23(a) and (b)(3). ECF No. 246 at 16-20; *see also* Preliminary Approval Order, ECF No. 258, ¶¶ 1-4. None of the facts supporting certification of the Settlement Class have changed since Lead Plaintiff submitted its preliminary approval motion. Accordingly, Lead Plaintiff respectfully requests that the Court should finally certify the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

## IV.    Notice of the Settlement Satisfied the Requirements of Rule 23, Due Process, and the PSLRA

The Settlement Notice and Summary Settlement Notice provided to the Class in accordance with the Court's Preliminary Approval Order satisfied all the requirements of due process, Rule 23, and the PSLRA. Notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound" by the Settlement. Rule 23(e)(1)(B). The notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *See Churchill*, 361 F.3d at 575; *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) (same). "The Court must ensure that the parties' notice plan provides for 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort' and that the notice itself explains in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and the binding nature of the class judgment." *Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ, 2013 WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013) (*quoting* Fed. R. Civ. P. 23(c)(2)(B)); *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).

The substance of the Settlement Notice, which the Court preliminarily approved, satisfies Rule 23 and due process. In addition to publication of a summary notice in *Investor's Business Daily* and releasing it via *PR Newswire*, the Claims Administrator mailed 51,557 copies of the Court-approved Settlement Notice to potential Class Members and their nominees who could be identified with reasonable effort. *See* Chiango Decl. ¶ 8. The Claims Administrator also provided all information regarding the Settlement online through the Settlement website, which also provided access to downloadable copies of the Settlement Notice, Claim Form, and other Settlement related documents. *Id*. ¶ 10. Pursuant to the Stipulation and Preliminary Approval Order, Defendants issued notice pursuant to CAFA on or about May 12, 2025. Uris Decl. ¶ 45.

The notice program provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA. Specifically, the Notice and Summary Notice apprise Settlement Class Members of, *inter alia*: (i) the Settlement amount; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated average recovery per affected share; (iv) the maximum amount of attorneys' fees and expenses that will be sought; (v) the identity and contact information for representatives from Lead Counsel to answer questions concerning the Settlement; (vi) the right of Settlement Class Members to request exclusion from the Settlement Class or object to the Settlement; (vii) the binding effect of a judgment on Settlement Class Members; (viii) the dates and deadlines for certain Settlement-related events; and (ix) the opportunity to obtain additional information about the Action and the Settlement by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also detailed the Plan of Allocation and further explained that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Claim Forms under the Plan of Allocation.

Based on the foregoing, the notice program fairly apprises Settlement Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval order, Rule 23, the PSLRA, and due process. *See In re RH, Inc. Sec. Litig.*, No. 4:17-00554-YGR, 2019 WL 5538215, at *2 (N.D. Cal. Oct. 25, 2019) (approving similar notice plan in securities class action); *In re Portal Software, Inc. Sec.*

*Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the 'best notice practicable under the circumstances'").

## CONCLUSION

For these reasons, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement, approve the Plan of Allocation, and grant final certification of the Settlement Class for settlement purposes.

DATED: October 2, 2025                     Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

By:   /s/   *Laurence D. King*
                  Laurence D. King

Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316971)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
*lking@kaplanfox.com*
*breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff Stadium Capital LLC,*
*Plaintiff David Sherman and the Proposed Class*